**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | | |
|---|---|---|
| Phillip Bleicher, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. ____-cv-_____ |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| Michael Gulisano, an individual, | ) | |
| | ) | |
| Defendant. | ) | |

**VERIFIED COMPLAINT**

Plaintiff Phillip Bleicher, by and through his attorneys, complains of Defendant Michael Gulisano and, demanding a trial by jury, states as follows:

**<u>INTRODUCTION</u>**

1.      This action arises from a more-than-ten-year campaign of false and defamatory statements, public doxing, and tortious interference conducted against Plaintiff Phillip Bleicher by Defendant Michael Gulisano — a Florida-licensed attorney whom Plaintiff briefly hired in October 2015 and terminated within weeks for unsatisfactory representation. Defendant's campaign is documented in self-authenticating contemporaneous emails, sworn court filings made by Defendant, and dated PDF captures of Defendant's publicly accessible law-firm website at gulisanolaw.com.

2.      Defendant has published, and continues to publish, on his law-firm website at **https://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/** (the "**Article**"), a thirty-two-page article headlined "*Phillip Bleicher – Criminial,*[sic] *Conman, and Liar*," subheaded "*A Man*

*Who Stole $3 Million from Public Schools, Intentionally Exposes Employees to Aids, Operates Brothels in Residential Homes, Fabricates Evidence in Court, and Evades Taxes*." The Article falsely accuses Plaintiff of crimes for which Plaintiff has never been arrested, charged, indicted, sued, prosecuted, or convicted in any court or tribunal, and no civil or criminal finding sustains any of the accusations. (Exhibit A.)

3. In or about June 2024 — by Defendant's own dating in the publication itself — Defendant materially modified the Article and added a block labeled "2024 Update" that publishes Plaintiff's home address, Plaintiff's unlisted personal cellular telephone number (registered on the National Do Not Call Registry on July 2, 2003 and unlisted for more than twenty years), and Plaintiff's personal email address (the "Doxing Block"). The Doxing Block is expressly framed as contact information "for anyone being subjected to Mr. Bleicher's harassment as of June 2024." Since the publication of the Doxing Block, Plaintiff has received over five hundred ninety-nine (599) harassing telephone calls and voicemails, and hundreds of unsolicited text messages to his unlisted cellular number, all of which Plaintiff has been compelled to block to protect his ability to use his own phone. This conduct violates the Illinois Civil Liability for Doxing Act, 740 ILCS 195/, which took effect January 1, 2024. (Exhibit A.)

4. Defendant's campaign is the product of personal retaliation. Plaintiff terminated Defendant's services in late 2015 after the attorney-client relationship broke down within weeks. Defendant retaliated by filing a sworn court document inflating his fee claim, communicating with opposing counsel in terms that betrayed his own client, sending a series of personal-animus emails (including, in February 2016, "*Can't wait to show you what a real lawyer can do*," and in February 2016, "*you guys tried to scam the wrong attorney*"), and transmitting an "*Open Letter*" accusing Plaintiff of "*tax evasion, mail fraud, forgery, fraud, and perjury*" to approximately ninety federal

and state government and press recipients on March 22, 2016. None of those approximately ninety recipients — including the United States Department of Justice, the United States Attorney General, the Federal Bureau of Investigation, the Internal Revenue Service, and the Attorneys General of Florida and Illinois — has charged, indicted, sued, investigated, or published a single allegation against Plaintiff in the more than ten years since.

5.      Defendant has himself been the subject of findings of dishonesty and bad faith by the federal courts and by the Florida Bar. The United States Court of Appeals for the Eleventh Circuit has expressly found that Defendant "*violated his duty of candor*" and "*acted in bad faith*." *Gulisano v. Burlington, Inc.,* No. 20-12660 (11th Cir. May 12, 2022). The Florida Bar, in File No. 2018-50,205(17E), accepted Defendant's admission of "*minor misconduct*" — specifically that he had "*unreasonably and vexatiously multiplied the proceedings*" — and administered an admonishment and required Defendant to attend Florida Bar Ethics School. Defendant's own Avvo professional profile bears the disclosure: "*Lawyer disciplined by state licensing authority in 2020.*" By contrast, Plaintiff has never been the subject of any judicial finding of fraud upon the court, nor has Plaintiff ever been charged with, indicted for, sued for, or convicted of any offense involving fraud or dishonesty. (Exhibits J, K.)

6.      Plaintiff seeks compensatory damages in an amount in excess of $1,000,000, statutory damages and reasonable attorney's fees under the Illinois Civil Liability for Doxing Act, presumed damages on the defamation per se claim, punitive damages, permanent injunctive relief requiring removal of Plaintiff's personal contact information from gulisanolaw.com and removal or retraction of the Article, costs, and pre- and post-judgment interest.

## JURISDICTION AND VENUE

7.    **Subject-Matter Jurisdiction.** This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a). Plaintiff is a citizen of the State of Illinois. Defendant is a citizen of the State of Florida. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

8.    **Plaintiff's Domicile.** Plaintiff has been a domiciliary of Illinois throughout his entire life. Plaintiff resides at [ADDRESS REDACTED]. Plaintiff has never held a Florida driver's license, has never held any Florida identification card, has never registered to vote in Florida, has never filed Florida resident state-tax returns, and has never had a Florida residence. All of Plaintiff's connections to the State of Florida have been business or litigation contacts in his corporate capacity, not personal contacts.

9.    **Personal Jurisdiction.** This Court has personal jurisdiction over Defendant under Illinois's long-arm statute, 735 ILCS 5/2-209, and the Due Process Clause of the Fourteenth Amendment. Defendant purposefully directed his tortious conduct at Illinois and at an Illinois resident, with knowledge that the injury would be felt in Illinois. *See Calder v. Jones,* 465 U.S. 783 (1984). Defendant knew Plaintiff resides in Chicago, Illinois; Defendant has published Plaintiff's Chicago home address on the Article since June 2024. The harm to Plaintiff and the harassment campaign Defendant invited have occurred and continue to occur in Illinois — at Plaintiff's Illinois home, to his Illinois cellular telephone, and on Plaintiff's Illinois-based personal and professional activities. (Exhibit A.)

10.    **Venue.** Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and injuries giving rise to the claims occurred in this district.

## PARTIES

11. **Plaintiff Phillip Bleicher** ("**Plaintiff**") is a natural person and a citizen of the State of Illinois. Plaintiff resides at [ADDRESS REDACTED].

12. **Defendant Michael Gulisano** ("**Defendant**") is a natural person and a citizen of the State of Florida. Defendant is licensed to practice law in Florida (Florida Bar No. 87573) and conducts his law practice as Gulisano Law, PLLC, from offices at 1489 W Palmetto Park Rd Ste 500, Boca Raton, Florida 33486-3326. Defendant owns and operates the law-firm website at gulisanolaw.com on which the publications at issue in this Complaint were and are published.

## FACTUAL ALLEGATIONS

### A. The Brief 2015 Engagement

13. In June 2015, Plaintiff placed a classified advertisement seeking a part-time attorney for copyright-infringement enforcement work at his then-corporation, Flava Works, Inc.

14. Defendant responded on July 9, 2015. On October 7, 2015, Plaintiff hired Defendant as a part-time contract attorney with a requirement that Defendant submit invoices documenting hours worked and case-by-case detail. On October 8, 2015, Defendant filed a Notice of Substitution of Counsel substituting himself in as co-counsel of record for Flava Works, Inc. in the matter *Flava Works, Inc. v. A4A Reseau, Inc., et al.,* Case No. 1:14-cv-23208-JAL (S.D. Fla.) (the "**Underlying Case**"). (Exhibit E.)

### B. The Discovery Hearing of November 20, 2015 and Defendant's Conduct Leading Up to It

15. On October 9, 2015 — one day after substituting in as counsel — Defendant emailed Bradley Legal Group, P.A., opposing counsel in the Underlying Case, and admitted in writing: "*I was just retained and have not completely familiarized myself with the case.*" (Exhibit E.)

16.     On October 23, 2015, while still acting as counsel of record for Flava Works, Inc., Defendant emailed John F. Bradley, Esq., opposing counsel in the Underlying Case, and stated: "*I know you are counting on this money. I am trying my best to get you paid*." In the same email, Defendant called his own client "*destitute*" and disparaged prior counsel as "*too intimated* [sic] *by your legal prowess*." (Exhibit E.)

17.     On November 19, 2015 — the day before a scheduled discovery hearing — Defendant filed a Motion to Withdraw as Plaintiff's Counsel (Doc. 91 in the Underlying Case) on two grounds (the "**Withdrawal Motion**"): (a) "*The Plaintiff has refused to follow the advice of the undersigned, resulting in irreconcilable differences*"; and (b) "*the undersigned has developed a conflict of interest that precludes further representation of the Plaintiff in this matter*." Both grounds were unfounded. Defendant did not provide Plaintiff with notice of the Withdrawal Motion before filing it. Plaintiff learned of the Withdrawal Motion only after independently checking the public court docket on the evening of November 19, 2015.

18.     On November 20, 2015, Plaintiff — having learned of the Withdrawal Motion the night before, and being unable to reach Defendant by phone or email despite repeated attempts — flew last-minute from Chicago to Miami to attend the discovery hearing in person. At the hearing, Magistrate Judge Jonathan Goodman of the United States District Court for the Southern District of Florida denied Defendant's Withdrawal Motion "*without prejudice*," and Defendant was required to participate in the hearing as counsel of record. Defendant admitted on the record that he was "*the fifth attorney*" Plaintiff's then-corporation had retained in the Underlying Case and that he had "*got a little frustrated and wanted to withdraw*." *See* Transcript of Discovery Hearing, *Flava Works, Inc. v. A4A Reseau, Inc.,* No. 1:14-cv-23208-JAL (S.D. Fla. Nov. 20, 2015), at pp. 4-5, 27, 36. (Exhibit M.)

19.     Following the November 20, 2015 hearing, Plaintiff terminated Defendant's representation.

**C. Defendant's Pattern of Fraud Upon the Court — The Inflated Fee Claim**

20.     Defendant has a documented pattern of misrepresenting material facts to federal courts. On May 12, 2022, the United States Court of Appeals for the Eleventh Circuit, in a published opinion, expressly found that Defendant "*violated his duty of candor*" and "*acted in bad faith*" in his litigation conduct in a separate matter. *Gulisano v. Burlington, Inc.,* No. 20-12660, slip op. at 16 (11th Cir. May 12, 2022). The Eleventh Circuit's finding is consistent with the documentary record of Defendant's contradictory representations to the federal court in the Underlying Case: (Exhibit J.)

21.     **a.** Defendant's only written invoice in the Underlying Case is dated November 19, 2015 and totals $500.00 in fees (line items billed at $25.00 per hour for approximately seventeen hours of work — although $25.00 × 17 hours equals only $425.00, not the $500.00 Defendant invoiced). (Exhibit E.)

22.     **b.** On December 15, 2015, however, Defendant filed in the Underlying Case a *Notice of Attorney's Charging Lien* (Doc. 99 in 1:14-cv-23208-JAL) over his signature as "*MICHAEL GULISANO, ESQUIRE, Fla. Bar No. 87573*," in which he stated to the Court — under penalty of Federal Rule of Civil Procedure 11 — that "*the undersigned has incurred fees of $1,000.*" The Charging Lien claimed **$1,000** against any fee recovery by Plaintiff's then-corporation. (Exhibit C.)

23. **c.** Approximately seven weeks later, on February 2, 2016, Defendant emailed Plaintiff and demanded payment of only "*$500 for the work I performed in this matter by the end of the week.*" (Exhibit E.)

24. **d.** Approximately three months after that, on March 11, 2016, Defendant filed a sworn pleading in the same federal court (Doc. 117 in 1:14-cv-23208-JAL) in which he expressly stated, *at paragraph 7*: "*the undersigned only requested $500 instead of the $1,000 actually incurred.*" (Exhibit D.)

25. **e.** The Article itself — which Defendant has continuously published on gulisanolaw.com since approximately 2017 — likewise concedes the amount in controversy was $500. Defendant wrote, in his own words on the Article: "*Mr. Bleicher refused to pay me the $500 I billed him (a ridiculously small amount for a month's worth of work).*" (Exhibit A.)

26. **f.** On February 21, 2019, Plaintiff proactively emailed Defendant to ask whether any invoices remained outstanding. Defendant replied that the "*outstanding balance is $1,000*" but offered to accept "*$500 in full satisfaction.*" Plaintiff replied in writing: "*we prefer to pay what is owed, so the $1,000.00 is fine. Please send me a detailed invoice and I will send payment.*" Defendant never sent the detailed invoice. Plaintiff followed up on March 7, 2019; Defendant never responded. (Exhibit E.)

27. Defendant therefore made two materially different sworn representations to the same federal court in the same case on the same subject (his attorney's fees on the Underlying Case): a claim of **$1,000** in the December 15, 2015 Charging Lien (Doc. 99) and an express admission of **$500** in the March 11, 2016 Response (Doc. 117). Each filing was made over Defendant's own electronic signature as a member of the Florida Bar. (Exhibits C, D.)

28. By contrast, Plaintiff has never been the subject of any judicial finding of fraud upon the court, nor has Plaintiff ever been charged with, indicted for, sued for, or convicted of any offense involving fraud or dishonesty. The Article's public premise that Plaintiff "*refused to pay*" Defendant is contradicted on its face by Plaintiff's documented written offer to pay the full $1,000 — an offer Defendant himself ignored.

**D. The Onset of Defendant's Retaliation Campaign (February–March 2016)**

29. Plaintiff filed a fee-dispute inquiry with the Attorney/Consumer Assistance Program of the Florida Bar on February 1, 2016, captioned as Florida Bar File No. 2016-50,697(17E). Plaintiff separately posted a first-person client review of Defendant's legal services on Avvo, the lawyer-rating service, on February 24, 2016. Defendant responded with the following documented pattern of personal-animus communications, each captured in real time on Plaintiff's email:

30. **a. February 1, 2016 —** Defendant emailed, in response to Plaintiff's settlement demand: "*Can't wait to show you what a real lawyer can do.*" (Exhibit E.)

31. **b. February 2, 2016 —** Defendant emailed Plaintiff demanding $500 by end of week, and added: "*QUOTE ME ON THIS, if I am named a defendant in a meritless 'malpractice' complaint…I will IMMEDIATELY add you as a defendant end of story…You guys tried to scam the wrong attorney.*" (Exhibit E.)

32. **c. February 24, 2016 —** Defendant emailed Plaintiff and announced his intent to forward false accusations to federal law-enforcement authorities: "*Consequently, the Federal Bureau of Investigations,* [sic] *the Internal Revenue Service, and other state and federal governmental entities will now be alerted to your criminal activities, including tax evasion,*

*concealment of assets, perjury, mail fraud, and extortion. To speed up the process, I will be cc'ing those authorities to my response. You made your bed and now you must lie in it*." (Exhibit E.)

33.    **d. March 11, 2016** — Defendant emailed Plaintiff: "*I have also offered to represent the other attorneys victimized by you and your client*." That statement constitutes Defendant's contemporaneously-stated intent to represent parties whose interests are adverse to his former client — a position from which Defendant has never retracted. (Exhibit E.)

**E. The March 22, 2016 Mass Email to Approximately Ninety Recipients**

34.    On March 22, 2016, Defendant transmitted by email an "*Open Letter to Governmental Agencies Concerning Phillip Bleicher's Criminal Activities*" (the "**Open Letter**") to approximately ninety (90) federal and state government and press recipients, including but not limited to: the United States Department of Justice; the United States Attorney General; the Federal Bureau of Investigation Miami Field Office; the Federal Bureau of Investigation Chicago Field Office; the Internal Revenue Service; the Attorneys General of Florida and Illinois; the Mayor of Chicago; the Mayor of Miami; the Chicago Department of Public Health; the Miami-Dade Department of Code Enforcement; the *Miami Herald*; the *Chicago Sun-Times*; and dozens of additional government and press recipients. (Exhibit E.)

35.    The body of Defendant's mass email read, in pertinent part: "*I write to each of you in hope that one of you can stop the ongoing criminal activities being perpetuated by PHILLIP BLEICHER and his company FLAVA WORKS in Florida and Illinois, including, tax evasion, mail fraud, forgery, fraud, and perjury*." Defendant offered to provide each recipient with "*bank statements, tax returns, and contradictory sworn statements*" supporting his accusations.

36. In the more than ten years since Defendant transmitted the Open Letter, no recipient agency, office, or publication has charged, indicted, sued, investigated, or published a single allegation against Plaintiff arising from Defendant's mass mailing. The complete failure of every authority Defendant invoked to find any merit in his accusations is itself probative of their falsity and of Defendant's reckless disregard for the truth.

## F. The Continuously-Published Defamatory Article

37. At a date no later than 2017, Defendant published the Article on his law-firm website at gulisanolaw.com. The Article is approximately thirty-two (32) pages long when printed, signed by Defendant as "*Michael Gulisano, Esquire*," and hosted on Defendant's law-firm website under the firm's branding and adjacent to its legal-services menu. The Article has been continuously published at all relevant times. (Exhibit A.)

38. The Article contains the following false and defamatory statements of fact concerning Plaintiff (among others): (Exhibit A.)

39. **a.** That Plaintiff "Stole $3 Million from Public Schools";

40. **b.** That Plaintiff "Intentionally Exposes Employees to Aids" [sic];

41. **c.** That Plaintiff "Operates Brothels in Residential Homes";

42. **d.** That Plaintiff "Fabricates Evidence in Court";

43. **e.** That Plaintiff "Evades Taxes" through "falsified tax returns";

44. **f.** That Plaintiff attempted to extort Defendant for "$10,000 hush money" and made "identical blackmail attempts against fellow Florida attorneys";

45.     **g.** That Plaintiff has committed "perjury in Federal Court"; and

46.     **h.** That Plaintiff is a "world-class scumbag and career-criminal," a "snake oil peddling conman," a "monster," a "fraudulent shyster," and a "hateful man."

47.     Each of the foregoing statements is false. Plaintiff has never been arrested, charged, indicted, sued, prosecuted, or convicted in any court or tribunal in the United States or elsewhere for any of the criminal offenses Defendant attributes to him in the Article. No civil judgment, criminal judgment, indictment, administrative finding, or formal accusation by any prosecuting or regulatory authority sustains any of Defendant's accusations.

**G. The June 2024 Doxing Block — Sourced from Plaintiff's Confidential Bar Complaint**

48.     On May 20, 2024, Plaintiff filed a new disciplinary complaint with the Florida Bar concerning the Article, captioned RFA No. 24-12445. Plaintiff's complaint papers prominently included Plaintiff's home address ([REDACTED ADDRESS]), Plaintiff's personal cellular telephone number ((312) XXX-XXXX), and Plaintiff's personal email address ([REDACTED EMAIL]), in the header, the signature block, and the witness-information section of the complaint. (Exhibit F.)

49.     Pursuant to the Florida Bar's standard disciplinary procedures, the Bar transmitted copies of Plaintiff's complaint papers — including the foregoing personally identifiable information — to Defendant as the respondent attorney. The Florida Bar acknowledged receipt of the complaint on May 31, 2024, closed the complaint on procedural grounds (Florida Bar Rule 3-7.16(a)(1)) without reaching the merits, and copied Defendant on the closure letter.

50.     Within days of receiving the Florida Bar closure letter, Defendant retaliated. In or about June 2024 — by Defendant's own dating in the publication itself — Defendant materially

modified the Article and added a new block labeled "*2024 Update*" (the "**Doxing Block**"). The Doxing Block reads, in pertinent part: (Exhibits A, F.)

> "*For anyone being subjected to Mr. Bleicher's harassment as of June 2024, he allegedly can be directly contacted by mail at: [redacted Chicago, Illinois street address]; by phone at: (312) XXX-XXXX; and by email at: [redacted personal email].*"

The full, unredacted text of the Doxing Block is set forth in Exhibit B-1.

51.     The Doxing Block publishes the following items of Plaintiff's personally identifiable information without his consent: (a) Plaintiff's home address; (b) Plaintiff's personal cellular telephone number, which has been registered on the National Do Not Call Registry since July 2, 2003 and is not listed in any public directory; and (c) Plaintiff's personal email address, which is not used for any public-facing or business purpose.

52.     Defendant did not obtain Plaintiff's consent — express, implied, or otherwise — to publish any of this information. The express framing of the Doxing Block — "*for anyone being subjected to Mr. Bleicher's harassment*" — makes clear that Defendant published the information with the intent to direct, invite, and facilitate third-party harassment of Plaintiff.

53.     The personally identifiable information Defendant published in the Doxing Block — Plaintiff's home address, unlisted cellular telephone number, and personal email address — was identical to the contact information Plaintiff had provided to the Florida Bar in his May 20, 2024 disciplinary complaint papers against Defendant. Defendant received that confidential disciplinary-process information from the Florida Bar in May 2024 and republished it on his publicly accessible law-firm website within weeks. The contact information Defendant published was not independently sourced; it was obtained from, and was identical to, the disclosures Plaintiff

made to the Florida Bar in the lawful exercise of his right to file a disciplinary complaint against Defendant.

54.     At the time Defendant published the Doxing Block in or about June 2024, Plaintiff had not publicly identified his home address as his residence. The street address Defendant published had been registered solely as the business address of Plaintiff's companies. By publishing the address under the heading "*for anyone being subjected to Mr. Bleicher's harassment as of June 2024, he allegedly can be directly contacted by mail at,*" Defendant intentionally and falsely exposed Plaintiff's private home location to third parties who would not otherwise have known where Plaintiff resides.

55.     Dated PDF captures preserve the timeline of the Doxing Block conclusively. A capture of the Article dated May 20, 2024 does not contain the Doxing Block. Captures of the Article dated July 2025 and April 14, 2026 both contain the Doxing Block. The "*as of June 2024*" date set forth in the Doxing Block itself is Defendant's own contemporaneous admission of the publication date. (Exhibits A, B.)

**H. The Resulting Harassment Campaign**

56.     Since the publication of the Doxing Block in or about June 2024, Plaintiff has received at least five hundred ninety-nine (599) harassing and unsolicited telephone calls and voicemails, and hundreds of unsolicited text messages to his unlisted cellular telephone number, all of which Plaintiff has been compelled to block to protect his ability to use his own phone. (Exhibit I.)

57.     Representative examples include calls from the following telephone numbers, preserved on Plaintiff's iPhone block list: +1 (201) 528-2030; +1 (202) 920-1856; +1 (202) 987-

9850; +1 (202) 987-9853; +1 (202) 987-9877; +1 (202) 987-9878 (six consecutive Washington, D.C.-area numbers from sequential extensions, characteristic of a robocall ring); +1 (203) 267-9937; +1 (206) 326-0219; +1 (207) 309-9134; +1 (208) 470-5071; +1 (209) 254-2860; and approximately 565 additional numbers preserved on Plaintiff's iPhone block list and call records.

58.     This pattern of harassment is the foreseeable, predictable, and intended consequence of Defendant's publication of Plaintiff's home address, unlisted cellular telephone number, and personal email address on a public website under a headline labeling Plaintiff a "*Criminial,*[sic] *Conman, and Liar*" and inviting third parties to "*contact*" Plaintiff directly.

59.     Plaintiff has suffered, and continues to suffer, significant emotional distress, sleep disruption, anxiety, fear of escalation, and economic injury as a direct and proximate result of the Doxing Block and the resulting harassment.

I. The Eight-Year Pattern of Adverse Parties Weaponizing the Article

60.     Beginning in 2018 and continuing through the date of this Complaint, Defendant's Article has been repeatedly used by parties adverse to Plaintiff as a litigation and intimidation tool against him. Plaintiff has preserved direct documentary evidence of at least six separate instances in which adverse parties have cited, linked, or transmitted the Article to attack Plaintiff or his attorneys: (Exhibit A.)

61.     a. November 8, 2018 — An individual using the email address dthomas@gmail.com, the target of a copyright cease-and-desist demand from Plaintiff's company, responded with a link to the Article, writing: "*don't listen to this guy*. http://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/." (Exhibit E.)

62.	b.	**May 22, 2019** — An individual using the email address daniel.weller.allanic@gmail.com, the target of a copyright cease-and-desist demand from Plaintiff's company, responded with a link to the Article, writing: "*Your reputation precedes you, Phillip*: https://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/." (Exhibit E.)

63.	c.	**February 4, 2022** — An individual using the proton-mail address vertexglacier@protonmail.com, identifying as "*Nathan Smith*," sent an unsolicited email titled "*Heads up about Phillip Bleicher*" to Heather L. Blaise, Esq., of Blaise & Nitschke, P.C., who was then assisting Plaintiff and his company in intellectual-property enforcement matters. The email cited and linked to the Article, sought to dissuade Attorney Blaise from continuing the representation, and was forwarded to Plaintiff by Attorney Blaise on February 8, 2022.

64.	d.	**December 9, 2022** — An individual using the email address novawild4fun@gmail.com, the target of a copyright cease-and-desist demand from Plaintiff's company, responded with allegations directly paralleling the Article: "*Your reputation precedes you. I've heard how you take advantage of runaways and kids who are down on their luck*."

65.	e. **April 5, 2023** — An individual using the email address awfulbiguy@yahoo.com, the target of a copyright cease-and-desist demand from Plaintiff's company, responded with the phrase "*borderline extortion tactics you have resorted to*" — directly mirroring the Article's accusations.

66.	f.	**April 14, 2026** — An individual using the email address lilryan10788@gmail.com, the target of a copyright cease-and-desist demand, responded by writing: "*Feel free to contact my lawyer here's a link. https://gulisanolaw.com/phillip-bleicher-*

criminial-conman-liar/" — explicitly representing that Defendant is "*my lawyer*" and providing the Article URL as referral. (Exhibit G.)

67.     **g. May 2026 (real-time, as of the filing of this Complaint)** — On the public discussion forum r/askgaybros (a subreddit of www.reddit.com), at least three Reddit users have actively engaged in coordinated doxing and harassment of Plaintiff in a thread titled "*Is gay-torrents.org down?*" — referring to a private intellectual-property infringement website Plaintiff's companies have enforced against. The harassment includes the following acts within seven days of the filing of this Complaint: (Exhibit H.)

68.     **(i) Reddit user 'kjs0705'** posted, six days before the filing of this Complaint: "*Flava Works makes mediocre content and can't compete with others and fan sites. They basically go around suing and extorting money from people to survive. The site is the latest target. It wouldn't be surprising if they uploaded their own content and then sued. Their owner is a long time crook,*" together with a direct hyperlink to Defendant's Article at https://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/. This Reddit posting expressly cites Defendant's Article as its authority and source.

69.     **(ii) Reddit user 'V3Qn117x0UFQ'** (a randomly-generated username consistent with a new sockpuppet account) replied, four days before the filing of this Complaint, by circulating a photograph identified as Plaintiff ("*dude on the left,*" linking to a Wikimedia Commons photograph from a 2009 Blatino Awards event), and adding the comment "*so pathetic.*" The same user posted a separate comment accusing Plaintiff: "*scum bag as fuck too - they would allow file downloads with tracing inside and then use it to blackmail high profile execs.*"

70.     **(iii) Reddit user 'JeanLeBon65'** (an account created approximately nine months ago with two karma points, consistent with a sockpuppet or throwaway account) posted, the day before the filing of this Complaint: "*Does anyone have a photo of the owner of Flava Works? His name is Philip Bleicher*," followed approximately six hours later by the reply: "*ok i found is the white guy*" along with the same Wikimedia Commons photograph link circulated by 'V3Qn117x0UFQ.'

71.     These three Reddit communications, occurring within a seven-day window contemporaneous with the filing of this Complaint, constitute direct evidence that Defendant's Article is being actively used by Plaintiff's adversaries — including parties hostile to Plaintiff's intellectual-property enforcement activities — to identify, defame, and target Plaintiff for further harassment. The 'kjs0705' Reddit user expressly invokes Defendant's Article as authority for accusations of "extorting money" and characterizing Plaintiff as "a long time crook."

72.     Each of these documented instances is a direct and foreseeable consequence of Defendant's continuing publication of the Article. The Article has, by Defendant's design and continued active maintenance, functioned for the past eight years as a tool used by Plaintiff's adversaries against Plaintiff's lawful personal and business activities.

## J. Defendant's Independent Pattern of Professional Misconduct

73.     Defendant's conduct toward Plaintiff is part of a broader pattern of professional misconduct documented in publicly available judicial and disciplinary records.

74.     In 2018, Defendant tendered an Admission of Minor Misconduct under Florida Bar Rule 3-5.1(b)(5) in The Florida Bar Discipline Case No. 2018-50,205(17E), admitting that he had "*unreasonably and vexatiously multiplied the proceedings*" while representing debtors in a

separate bankruptcy matter. The Florida Bar grievance committee accepted Defendant's admission and recommended an admonishment, attendance at the Florida Bar's Ethics School, and payment of $1,250 in administrative costs. The Florida Bar's public record reflects that the admonishment was administered on March 16, 2020. Defendant's own Avvo professional profile, as of June 4, 2024 and continuing, publicly discloses: "*Lawyer disciplined by state licensing authority in 2020*." (Exhibits K, L.)

75.     On May 12, 2022, the United States Court of Appeals for the Eleventh Circuit issued a published opinion in *Gulisano v. Burlington, Inc.,* No. 20-12660 (11th Cir. May 12, 2022), affirming the imposition of Federal Rule of Civil Procedure 11 sanctions against Defendant for filing a frivolous motion and conducting a bad-faith collection effort against corporate entities never named in the underlying lawsuit. The Eleventh Circuit expressly found that Defendant "*violated his duty of candor*" and "*acted in bad faith*." (Exhibit J.)

**K. Continuing Publication**

76.     The Article, including the Doxing Block, remains published on gulisanolaw.com as of the filing of this Complaint and has been continuously available to Internet users at all relevant times. The footer of the website displays a copyright year of 2026, reflecting Defendant's continuing active maintenance of the website. (Exhibit A.)

77.     Each act of publication, modification, or republication of the Article — including the addition of the Doxing Block in or about June 2024 and each subsequent transmission of the Article URL to third parties — constitutes a separate, actionable publication.

**COUNT I**

**(Violation of the Illinois Civil Liability for Doxing Act, 740 ILCS 195/)**

**78.**     Plaintiff repeats and re-alleges paragraphs 1 through 77 above as if fully set forth herein.

**79.**     The Illinois Civil Liability for Doxing Act, 740 ILCS 195/ (the "**Doxing Act**"), effective January 1, 2024, creates a private civil cause of action against any person who intentionally publishes another person's personally identifiable information, without consent, with intent to harm or harass, and knowing of or recklessly disregarding the likelihood that the publication will result in harassment, stalking, bodily injury, or death, where the publication causes the target significant emotional distress, economic injury, fear of substantial bodily injury, or substantial life disruption.

**80.**     Plaintiff's home address, unlisted cellular telephone number, and personal email address are each "personally identifiable information" within the meaning of the Doxing Act.

**81.**     Defendant intentionally published Plaintiff's personally identifiable information on his publicly accessible law-firm website without Plaintiff's consent.

**82.**     Defendant published the personally identifiable information with intent to harm and harass Plaintiff, as established on the face of the Doxing Block itself, which expressly invites contact "*for anyone being subjected to Mr. Bleicher's harassment*," and as established by the surrounding context of the Article. (Exhibit A.)

**83.**     Defendant knew, or recklessly disregarded the substantial likelihood, that publishing Plaintiff's home address, unlisted cellular telephone number, and personal email address on a publicly accessible website under such a headline would expose Plaintiff to harassment, stalking, threats, and intimidation.

84.     Defendant's publication caused Plaintiff significant emotional distress, economic injury, fear of substantial bodily injury, and substantial life disruption — including without limitation more than 599 harassing telephone calls, text messages, and voicemails to Plaintiff's unlisted cellular telephone number; ongoing anxiety, sleep disruption, and emotional distress; the need to alter daily life and communications routines; and economic injury including increased risk to Plaintiff's personal and professional security.

85.     No statutory exception applies. Defendant did not transmit Plaintiff's personally identifiable information to law enforcement to report criminal activity; the publication is not a report of unlawful conduct; and publication of Plaintiff's private contact information has no legitimate informational or expressive purpose protected by the First Amendment or the Illinois Constitution.

86.     Plaintiff is entitled to actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees under 740 ILCS 195/.

## COUNT II
### (Public Disclosure of Private Facts)

87.     Plaintiff repeats and re-alleges paragraphs 1 through 86 above as if fully set forth herein.

88.     Under Illinois common law, the elements of public disclosure of private facts are: (a) the defendant gave publicity to private facts about the plaintiff; (b) the matters publicized were private, not public; and (c) the matters publicized would be highly offensive to a reasonable person.

89.     Plaintiff's home address, unlisted cellular telephone number (registered on the National Do Not Call Registry on July 2, 2003), and personal email address are private facts and not matters of public record or public concern.

90.     Defendant gave publicity to these private facts by publishing them on a publicly accessible, search-engine-indexed website that has been continuously available to Internet users since approximately June 2024.

91.     Publication of Plaintiff's home address, unlisted cellular telephone number, and personal email address — on a webpage labeling Plaintiff a "*Criminial, Conman, and Liar*" and inviting third parties to "*contact*" Plaintiff in connection with alleged "*harassment*" — would be highly offensive to a reasonable person.

92.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages including emotional distress, economic injury, and impairment of his personal and professional life.

**COUNT III**
**(Intrusion Upon Seclusion)**

93.     Plaintiff repeats and re-alleges paragraphs 1 through 92 above as if fully set forth herein.

94.     Under Illinois law, the elements of intrusion upon seclusion are: (a) an unauthorized intrusion into the plaintiff's seclusion; (b) the intrusion is highly offensive to a reasonable person; (c) the matter intruded upon is private; and (d) the intrusion causes anguish and suffering. *Lawlor v. North American Corp. of Illinois,* 2012 IL 112530.

95.     By publishing Plaintiff's home address, unlisted cellular telephone number, and personal email address with the express purpose of directing third parties to contact Plaintiff at those private channels, Defendant has invaded Plaintiff's seclusion by proxy: each harassing call, voicemail, text message, or email Plaintiff has received and continues to receive is a direct and foreseeable result of Defendant's conduct.

96.     Defendant's conduct is highly offensive to a reasonable person, and the cellular-telephone, home-address, and personal-email channels intruded upon are private.

97.     The ongoing harassment campaign — including more than 599 harassing communications to date — has caused Plaintiff anguish, anxiety, sleep disruption, and emotional suffering.

## COUNT IV
### (False Light Invasion of Privacy)

98.     Plaintiff repeats and re-alleges paragraphs 1 through 97 above as if fully set forth herein.

99.     Under Illinois law, the elements of false light invasion of privacy are: (a) the defendant's actions placed the plaintiff in a false light before the public; (b) the false light is highly offensive to a reasonable person; and (c) the defendant acted with knowledge that the statements were false or with reckless disregard for their truth or falsity.

100.    Through the Article and the Doxing Block, Defendant has placed Plaintiff before the public in a false light — as a person who "Intentionally Exposes Employees to Aids," a tax evader, a person who has "infected dozens of people with HIV," a school-fund thief, an evidence

forger, a perjurer, and a serial blackmailer. None of those characterizations is true. Each is highly offensive to a reasonable person. (Exhibit A.)

101.    Defendant acted with actual malice. Defendant's actual malice is established by, among other things: (a) the retaliatory origin and timing of the Article (initiated immediately after Plaintiff's lawful exercise of his rights to post an Avvo review and file a Florida Bar complaint); (b) Defendant's own contemporaneous February 1, 2016 "*Can't wait to show you what a real lawyer can do*" message; (c) Defendant's February 24, 2016 "*You made your bed and now you must lie in it*" message; (d) the complete failure of every government and press recipient of Defendant's March 22, 2016 mass mailing to ever sustain a single one of Defendant's accusations in the ten years since; (e) the absence of any criminal or civil finding supporting Defendant's accusations; (f) the inflammatory non-factual epithets used in the Article; and (g) Defendant's status as a licensed attorney trained in defamation law.

102.    As a direct and proximate result, Plaintiff has suffered damages to be proven at trial.

## COUNT V
### (Defamation Per Se)

103.    Plaintiff repeats and re-alleges paragraphs 1 through 102 above as if fully set forth herein.

104.    Under Illinois law, a statement is defamatory per se if it imputes (a) the commission of a criminal offense; (b) infection with a loathsome disease; (c) inability to perform or want of integrity in the discharge of duties of office or employment; (d) prejudice in trade, profession, or

business; or (e) fornication or adultery. Damages are presumed when a statement is defamatory per se.

105. The statements set forth above attributing to Plaintiff the commission of state and federal crimes — including tax fraud, theft of school funds, blackmail and extortion, perjury, evidence fabrication, exploitation of minorities and unwitting performers, illegal-business operation, and intentional transmission of HIV — impute the commission of multiple criminal offenses, falsely impute Plaintiff with a loathsome disease, and falsely impute a want of integrity in Plaintiff's personal and business affairs. (Exhibit A.)

106. Each statement is false. Plaintiff has never been arrested, charged, indicted, sued, prosecuted, or convicted in any court or tribunal for any of those offenses.

107. Defendant published each statement with knowledge of its falsity or with reckless disregard for its truth or falsity, in retaliation for Plaintiff's exercise of his lawful rights.

108. Each modification or republication of the Article — including the addition of the Doxing Block in or about June 2024 — constitutes a separate, actionable publication.

109. As a direct and proximate result of Defendant's publication of defamatory statements per se, damages are presumed. In addition, Plaintiff has suffered actual damages including damage to reputation, loss of business and goodwill, loss of professional opportunities, and emotional distress.

## COUNT VI
### (Intentional Infliction of Emotional Distress)

110. Plaintiff repeats and re-alleges paragraphs 1 through 109 above as if fully set forth herein.

111. Under Illinois law, the elements of intentional infliction of emotional distress are: (a) the defendant's conduct was extreme and outrageous; (b) the defendant intended to cause severe emotional distress or knew of a high probability of causing severe emotional distress; and (c) the conduct caused severe emotional distress.

112. Defendant's conduct — a sustained, multi-year, escalating online campaign falsely accusing Plaintiff of grave crimes for which Plaintiff has never been charged; mass-mailing those false accusations to approximately ninety government and press recipients; publishing a thirty-two-page "*article*" attacking Plaintiff on the website of a licensed Florida law firm; and adding to that article in June 2024 Plaintiff's home address, unlisted cellular telephone number, and personal email address with the express invitation "*for anyone being subjected to Mr. Bleicher's harassment*" to contact him directly — is extreme and outrageous and beyond all bounds of decency.

113. Defendant intended to cause Plaintiff severe emotional distress and knew of the high probability that his conduct would cause such distress.

114. Defendant's conduct has caused, and continues to cause, Plaintiff severe emotional distress, including anxiety, sleep disruption, fear of escalation, anguish, and significant life disruption.

## COUNT VII
### (Tortious Interference with Prospective Economic Advantage)

115. Plaintiff repeats and re-alleges paragraphs 1 through 114 above as if fully set forth herein.

116. Under Illinois law, the elements of tortious interference with prospective economic advantage are: (a) the plaintiff's reasonable expectancy of a valid business relationship or prospective economic advantage; (b) the defendant's knowledge of that expectancy; (c) intentional and unjustified interference by the defendant; and (d) damages.

117. Plaintiff, as the Chief Executive Officer and operator of his Illinois corporations, has reasonable expectancies of valid business relationships with customers, business counterparties, advertising and platform partners, and existing and prospective intellectual-property enforcement counterparts.

118. Defendant knows of those expectancies, having previously represented Plaintiff's predecessor corporation in connection with that corporation's intellectual-property enforcement litigation.

119. Defendant has intentionally and unjustifiably interfered with those expectancies by (a) publishing and continuing to publish the Article in a manner designed to damage Plaintiff's reputation and business activities, and (b) facilitating the use of the Article by parties adverse to Plaintiff in his businesses' intellectual-property enforcement matters, as documented in subsection I above. (Exhibit A.)

120. As a direct and proximate result of Defendant's tortious interference, Plaintiff has suffered damages including lost business value, lost enforcement value, increased legal costs, lost professional opportunities, and damage to goodwill, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment in his favor and against Defendant as follows:

A. Compensatory damages in an amount in excess of $1,000,000, to be proven at trial, exclusive of interest and costs;

B. Statutory damages, actual damages, and reasonable attorney's fees and costs pursuant to the Illinois Civil Liability for Doxing Act, 740 ILCS 195/;

C. Presumed damages on the defamation per se claim;

D. Punitive damages in an amount sufficient to punish Defendant and to deter similar conduct;

E. Preliminary and permanent injunctive relief ordering Defendant to (i) immediately remove from the gulisanolaw.com website Plaintiff's home address, cellular telephone number, and personal email address; (ii) remove the Article from the gulisanolaw.com website and from any other publicly accessible platform under Defendant's control; (iii) refrain from republishing any of the foregoing in substantially similar form; (iv) issue a public retraction in a form approved by the Court; and (v) submit to the Court a list of all third parties to whom Defendant has transmitted or linked the Article;

F. Pre-judgment and post-judgment interest as allowed by law;

G. Plaintiff's costs of suit; and

H. Such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: May 28, 2026.

Respectfully submitted,

By: /s/ Corinthia Hicks

    CORINTHIA HICKS, ESQ.
    *Illinois Bar No. 635.2965*
    *Admitted to the U.S. District Court for the*
    *Northern District of Illinois*
    *2705 West Fulton Street*
    *Chicago, IL 60612-2003*
    *Tel: (305) 438-9450*
    *Email: corinthia@flavaworks.com*

    *Counsel for Plaintiff Phillip Bleicher*

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2026, I caused a true and correct copy of the foregoing Complaint to be served upon Defendant Michael Gulisano by U.S. Mail, postage prepaid, and by email at the following addresses:

    Michael Gulisano, Esq.
    Gulisano Law, PLLC
    1489 W Palmetto Park Rd, Ste 500
    Boca Raton, FL 33486-3326
    Email: gulisanomichael@gmail.com

By: /s/ Corinthia Hicks

    CORINTHIA HICKS, ESQ.
    *Counsel for Plaintiff*

## VERIFICATION PURSUANT TO 28 U.S.C. § 1746

**I, Phillip Bleicher, being the Plaintiff in this action, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that:**

1.     I am the Plaintiff in this action and am competent to testify to the matters set forth herein.

2.     I have read the foregoing Verified Complaint and know its contents.

3.     The factual allegations set forth in the Verified Complaint are true and correct to the best of my knowledge, information, and belief.

4.     I make this verification based upon my personal knowledge and upon information and belief formed after reasonable inquiry.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 28, 2026.

PHILLIP BLEICHER

Plaintiff