**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

PHILLIP BLEICHER,                                                    CASE NO.: 1:26-CV-06287

       Plaintiff,

v.

MICHAEL GULISANO,

       Defendant.

_____/

**DEFENDANT'S MOTION FOR SANCTIONS AGAINST BLEICHER AND HICKS**

Defendant, Michael Gulisano (the "Defendant"), by and through counsel, pursuant to Fed. R. Civ. P. 11, moves for sanctions against Plaintiff, Phillip Bleicher ("Bleicher") and counsel Corinthia Hicks ("Hicks") for the allegations and claims made in the Complaint (ECF No. 1).

1.      On May 28, 2026, Bleicher filed a Complaint, signed by and Hicks, for (1) defamation *per se*; (2) public disclosure of private facts; (3) intrusion upon seclusion; (4) false light invasion of privacy; (5) intentional infliction of emotional distress; (6) tortious interference with prospective economic advantage; and (7) violation of the Doxing Act. *See* ECF No. 1.[1]

2.      The Defendant is a Florida attorney who briefly represented Bleicher's criminal enterprise, Flava Works, Inc. ("Flava Works"), for *less than* two (2) months in 2015. *See* Response to Bar Complaint attached as Exhibit 1. Flava Works is a Florida and Illinois corporation, which produces homosexual pornography featuring African-American and Hispanic men and occasionally minors. *See* Ex. 1. Bleicher also derives a large portion of his ill-gotten gains by filing, or threatening to file, frivolous copyright infringement lawsuits and threatening to "out" closeted homosexual man unless they pay him settlements. *See* Ex. 1.

---

[1] All of the claims asserted in the Complaint filed by Hicks consist of "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3.      At the outset, the Complaint includes completely irrelevant allegations pertaining to two unrelated cases the Defendant worked on, which Bleicher had no involvement with and clearly has no bearing on any of his claims. Presumably, Bleicher and Hicks included this irrelevant information in a blatant attempt to try and embarrass the Defendant or to prejudice the Court against him.

4.      The Complaint also includes an entirely false recitation of the Defendant's representation of Bleicher's criminal enterprise—Flava Works. *See* ECF No. 1 at 5–7, ¶ 13–19. If Hicks had performed even a rudimentary investigation into the claims, she would have known those statements were false. The only accurate statement in the Complaint about the Defendant's representation of Flava Works is that it was brief.

5.      The Defendant withdrew from representing Flava Works—he was *not* fired— after Bleicher asked him to *fabricate* evidence in a pending case in the Southern District of Florida so that he could avoid paying sanctions of $10,000.00 imposed against his company. To add insult to injury, Bleicher never compensated the Defendant for the legal services he provided before withdrawal. Bleicher and Hicks knew or should have known the claims in the Complaint—that $1,000 was an "inflated" fee for the Defendant's services—would have no factual support. *See* ECF No. 7–9 at ¶ 20–28.

6.      In 2016, Bleicher spitefully filed a frivolous bar complaint against the Defendant and against two (2) other attorneys that represented Flava Works in that case. The Florida Bar found *no* merit to Bleicher's allegations against the Defendant or the two (2) other attorneys. In 2024, Bleicher filed another frivolous bar complaint against the Defendant based on the allegations forming the basis of the claims in the Complaint. The Florida Bar again found *no* merit to Bleicher's allegations.

7.      Putting all that aside, the gist of Bleicher's Complaint centers on two (2) factual

2

allegations. First, it alleges the Defendant posted a "defamatory" blog post concerning Bleicher in 2017. *See* ECF No. 1 at 8, ¶ 25 ("The Article itself—which Defendant has continuously published … since approximately 2017 ….").

8.      Shockingly, Hicks omits that the article is actually a *reproduction* of the Defendant's response to the frivolous 2017 bar complaint Bleicher filed against him. *See* Ex. 1. Under Florida law, bar complaints and responses thereto are *public* records. As such, Bleicher has no expectation of privacy concerning the matters in the article whereas the Defendant's speech is protected under the First Amendment and the Constitution of Illinois. *See* Ex. 1.

9.      Moreover, Hicks knew or should have known—but shockingly also *omits*—that none of the alleged "defamatory" statements were *not* made by the Defendant. *See* Ex. 1. The statements are citations and quotations to third-party publications and news reports chronicling Bleicher's lifelong egregious criminality and frivolous litigation.[2]

10.     Second, the Complaint alleges that the Defendant "updated" the "defamatory" article "[i]n … June 2024 … Defendant materially modified the Article and added a block labeled '2024 Update' that publishes Plaintiff's home address … personal cellular telephone number … and … personal email address (the 'Doxing Block')." ECF No. 1 at 2, ¶ 3.

11.     By Bleicher and Hicks's own admission, the only thing that changed in June 2024 was the addition of a publicly available address, phone number, and email. However, the alleged "defamatory" statements published in 2017 have never been altered since publication.

---

[2] As a public figure, Bleicher would ordinarily have to establish actual malice to prevail on a defamation claim. *See, e.g.*, Ex. 1 at 33 (Jagged Press article stating, "Bleicher and his company are also well-known for frivolous lawsuits against detractors or, against those who amplify outside findings and facts, and using underhanded moves, abusing the law …."); Ex. 1 at 37–44 (Chicago Department of Public Health documenting how Bleicher exposed his "performers" to HIV and the shutdown of his illegal brothel); Ex. 1 at 45–46 (Illinois Attorney General documenting how Bleicher's fraudulent charity stole more than $3 million from schools); Ex. 1 at 47–48 (News Bank article noting Miami's attempts to shut down Bleicher's illegal brothel operating out of a residential house).

**General False and Sanctionable Claims in the Complaint**

12.     Bleicher and Hicks knew or should have known that they would neither be unable to establish damages of $1,000,000 nor damages in excess of $75,000. *See* ECF No. 1 at 4, ¶ 7; ECF No. 1 at 3, ¶ 6 & 28, ¶ A.

13.     Bleicher and Hicks knew or should have known that they would be unable to establish the Defendant is subject to personal jurisdiction in this District. *See* ECF No. 1 at 4, ¶ 9.

14.     Bleicher and Hicks knew or should have known that they would be unable to establish the complete diversity jurisdiction necessary to maintain an action under 28 U.S.C. § 1332. *See* ECF No. 1 at 4, ¶ 7.

**The Plaintiff's Defamation *Per Se* Claim has no basis in Law or Fact**

15.     In Illinois, defamation actions are subject to a one-year statute of limitations. *See* 735 ILCS 5/13-201 ("Actions for slander, libel or publication … shall be commenced within one year next after the cause of action accrued"); *Peal v. Lee*, 403 Ill. App. 3d 197, 207 (2010) ("The statute of limitations to file a defamation claim is one year"). "[I]n defamation cases the cause of action accrues and the statute of limitations begins to run on the *date of publication* of the defamatory material." *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 334 N.E.2d 160, 161 (Ill. 1975) (emphasis added).

16.     Bleicher and Hicks admit in the Complaint that the allegedly "defamatory" statements were published in 2017. Specifically, "[t]he Article itself — which Defendant has *continuously published … since approximately 2017 ….*" ECF No. 1 at 8, ¶ 25 (emphasis added). Therefore, they knew or should have known that the defamation claim is time-barred because it was filed outside of the applicable one-year statute of limitations, which began to run in 2017, whereas Bleicher filed suit in 2026.

17.     In a thinly veiled attempt to avoid the clear bar presented by the statute of

4

limitations, Bleicher and Hicks claim, "[e]ach modification or republication of the Article—including the addition of the Doxing Block in or about June 2024—constitutes a separate, actionable publication." ECF No. 1 at 25, ¶ 108. They knew or should have known that this statement not only has no basis in law or fact but also directly contradicts Illinois law on this issue. *See Tom Olesker's Exciting World of Fashion, Inc.*, 334 N.E.2d at 161.

18.     Moreover, by Bleicher and Hick's own admission, the only thing that changed in June 2024 was the *addition* of Bleicher's personal identifiable information but *not* any changes to the alleged "defamatory" statements published in 2017. *See* ECF No. 1 at 2, ¶ 3. However, any claim for defamation would still be time-barred even *if* the limitations period began in June 2024. Surely, Hicks knew or should have known that a recitation of personal identifiable information is not a "statement" subject to defamation.

19.     Further, Bleicher and Hicks knew or should have known that the defamation claim would also fail as a matter of law for *at least* two (2) additional reasons. First, a true or "substantially true" statement cannot form the basis for a defamation claim. *See Moore v. People for the Ethical Treatment of Animals, Inc.*, 402 Ill. App. 3d 62, 71 (2010); *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. App. 2d 381, 402 (2008) ("a statement is not actionable unless it is [both] factual and false"). "Truth is an absolute defense to a defamation action." *Younge v. Berman*, 267 N.E.3d 346, 358 (Ill. App. 2d 2025) (citation omitted). "Under this reasoning, a statement is not actionable if it is substantially true, meaning the 'gist' or 'sting' of the statement at issue is true." *Id.* (citation omitted).

20.     Second, "opinions that do not misstate facts are protected not only by Illinois law but also by the First Amendment, and that is so even when the opinions concern one of the five defamation *per se* categories under Illinois law." *Bd. of Forensic Document Exam'rs, Inc. v. ABA*, 922 F.3d 827, 832 (7th Cir. 2019). Thus, statements which "fail to amount to verifiable assertions

5

of fact" and "lack[] readily understood meaning" are protected statements of opinion that do not give rise to a defamation claim. *Madison v. Frazier*, 539 F.3d 646, 655 (7th Cir. 2008).

21. Here, Bleicher and Hicks knew or should have known that the defamation claim would not be supported by law or fact because: (1) the allegedly defamatory statements are true; and/or (2) the statements consist of the Defendant's subjective opinions about Bleicher's character and are not verifiable statements of fact. *Compare* Ex. 1 *with Younge*, 267 N.E.3d at 358 (emphasis added) ("[W]ith one exception, the information contained in the aforementioned cover letter is substantially true, as shown by the *relevant attachments adjoining the letter*.").

### The Plaintiff's Privacy Claims have no basis in Law or Fact

22. "Illinois courts recognize four ways to state a cause of action for invasion of privacy: '(1) intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) public disclosure of private facts; and (4) publicity placing another in a false light.'" *Cooney v. Chi. Pub. Schs*, 943 N.E.2d 23, 31–32 (Ill. App. 3d 2010) (quotation omitted).

23. The Complaint asserts three (3) of the four (4) ways to state a cause of action for invasion of privacy under Illinois law. However, privacy actions are subject to a one-year statute of limitations. *See* 735 ILCS 5/13-201 ("Actions for … publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued").

24. Therefore, Bleicher and Hicks knew or should have known that each of the three (3) privacy claims are time-barred because they were filed outside of the applicable one-year statute of limitations, which began to run in 2017, whereas Bleicher filed suit in 2026.

25. By Bleicher and Hick's own admission, the only thing that changed in June 2024 was the addition of Bleicher's personal identifiable information but *not* any changes to the alleged "defamatory" statements published in 2017. *See* ECF No. 1 at 2, ¶ 3. Even *if* the limitations period began to run in June 2024, the privacy claims would still be time-barred.

26.     Further, each of Bleicher and Hick's privacy claims are based on the same statements and allegations that form the basis of the defamation claim. *See Osundairo v. Geragos*, 447 F. Supp. 3d 727, 738 (N.D. Ill. 2020) ("Where an unsuccessful defamation *per se* claim is the basis of his false-light claim, plaintiff's false light invasion of privacy claim fails as well."); *Gracia v. SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1062 (7th Cir. 2021) ("[W]hen a false light invasion of privacy claim follows an unsuccessful defamation claim, the false light claim must also fail.").

27.     Since defamation and privacy claims rise and fall together, Bleicher and Hicks knew or should have known that each of the privacy claims would fail as a matter of law for the same substantive reasons, identified above, that cause the defamation claim to fail. The remaining privacy claims are equally doomed.

28.     "To support the intrusion theory, plaintiffs must allege: (1) an unauthorized intrusion into seclusion; (2) the intrusion would be highly offensive to a reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused the plaintiffs anguish and suffering." *Cooney*, 943 N.E.2d at 32 (citation omitted). "Public disclosure of private facts requires that '(1) publicity was given to the disclosure of private facts; (2) the facts were private, and not public, facts; and (3) the matter made public was such as to be highly offensive to a reasonable person.'" *Id.* (quotation omitted). "While the theories contain different elements, both the intrusion and public disclosure torts require 'private' matters or facts." *Id.*

29.     The intrusion upon seclusion claim fails for additional reasons. "Private facts must be alleged. Without private facts, the other three elements of the tort need not be reached. Because the analysis begins with the predicate, private facts, it also ends there if no private facts are involved." *Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1017 (Ill. App. 3d 2004).

30.     Under Illinois law, "matters of public record such as names and dates of birth have *not been held* to be private facts." *Cooney*, 943 N.E.2d at 32 (emphasis added). "[N]one of the

7

"personal" information furnished … *names*, *telephone numbers*, *addresses* or social security numbers-have been held to be private facts." *Busse*, 813 N.E.2d at 1017 (emphasis added).

31.     Therefore, to the extent Bleicher and Hicks assert that publishing Bleicher's name, address, phone number, and/or email address are actionable as an "intrusion upon seclusion" or "public disclosure of private facts," they knew or should have known that allegation would not support those claims under Illinois law. *See Cooney*, 943 N.E.2d at 32; *Busse*, 813 N.E.2d at 1017.

32.     The disclosure of private facts claim would also fail since the article is a matter of legitimate public concern, which has helped countless people since 2017, being conned and extorted by Bleicher. *See Doe v. TCF Bank Ill.*, 707 N.E.2d 220, 221 (Ill. App. 3d 1999) (adding a fourth element that "the matter published was not of legitimate public concern"). Many have reached out to the Defendant to thank him for making this vital information available.

**The Plaintiff's Intentional Infliction of Emotional Distress Claim has no basis in Law or Fact**

33.     In Illinois, there are "three elements necessary to state a cause of action for intentional infliction of emotional distress …. 'First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress.'" *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. App. 2d 2003) (quotation omitted).

34.     "[T]he applicable statute of limitations for intentional infliction of emotional distress is two years …." *Feltmeier*, 798 N.E.2d at 85 (citing 735 ILCS 5/13-202). Here, Bleicher and Hicks knew or should have known that the claim for intentional infliction of emotional distress ("IIED") was time-barred because it was filed outside of the applicable two-year statute of limitations, which began to run in 2017, whereas Bleicher filed suit in 2026.

35.     Bleicher's IIED claim would also fail as a matter of law. "Illinois case law makes clear that under no circumstances would 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' qualify as outrageous conduct." *Feltmeier*, 798 N.E.2d at 80–81 (quotation omitted). "Rather, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community." *Id.* (citation omitted).

36.     Bleicher and Hicks and Hicks knew or should have known that true statements and the Defendant's personal opinions based on those true statements would not support a claim for IIED as a matter of law—let alone—rise to the level as to be "so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community."

37.     To the extent Bleicher and Hicks claim that the June 2024 "update" to the allegedly "defamatory" post published in 2017 constitutes IIED, they knew or should have known that posting publically available personal information cannot—as a matter of law—rise to the level as to be "so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community."

### The Plaintiff's Tortious Interference with Prospective Economic Advantage Claim has no basis in Law or Fact

38.     "It is clear from Illinois case law that, in order to state a viable claim of tortious interference with a prospective economic advantage, a defendant must specifically intend to interfere with the same expectancy that is thwarted by their conduct." *Younge*, 267 N.E.3d at 356. *See J. Eck & Sons, Inc. v. Reuben H. Donnelley Corp.*, 572 N.E.2d 1090, 1093 (Ill. App. 3d 1991) ("The requisite intent … is defendant's knowledge of a reasonable business expectancy and defendant's subsequent intentional interference which prevents the expectancy from ripening

9

into a valid business relationship.").

39. "When considering such a claim, 'the focus is on the conduct of the party interfering with the expectancy.'" *Younge*, 267 N.E.3d at 354 (quotation omitted). "It is insufficient for a plaintiff to merely allege that a defendant indeed interfered with a business expectancy; the plaintiff must instead allege that the defendant 'acted intentionally with the purpose of injuring the plaintiff's expectancy.'" *Id.* (quotation omitted).

40. The statute of limitations for a claim for tortious interference with a prospective economic advantage is five (5) years. *See Colucci v. Chi. Crime Comm'n*, 334 N.E.2d 461, 469–70 (Ill. App. 3d 1975). Bleicher and Hicks knew or should have known that the claim for tortious interference with a prospective economic advantage was time-barred because it was filed outside of the applicable five-year statute of limitations, which began to run in 2017, whereas Bleicher filed suit in 2026.

41. Moreover, Bleicher and Hicks knew or should have known that they would never be able to establish: (1) the necessary intent to support a claim for tortious interference; (2) that the Defendant directly caused any loss of any legitimate business; or (3) that any loss of any legitimate business was *actually* caused by the Defendant's response to Bleicher's 2017 frivolous bar complaint. They also knew or should have known the vast majority of Bleicher's "business" consists of fraud, extortion, and other illegal and illegitimate acts that cannot support a tortious interference claim as a matter of law.

42. To the extent Bleicher and Hicks allege that publishing Bleicher's address, phone number, and email in June 2024 constituted tortious interference with a prospective economic advantage, they knew or should have known that posting publically available personal information cannot—as a matter of law—support such a claim.

10

**The Plaintiff's Doxing Act Claim has no basis in Law or Fact**

43.     Finally, Bleicher brings a claim under the Doxing Act. This is the *only* claim—*out of seven (7)*—not clearly and obviously barred by the statute of limitations. However, Bleicher and Hicks knew or should have known that the Doxing Act claim would fail, as a matter of law, for numerous reasons.

44.     The Doxing Act requires that "the information is published with the *intent* that it be used to harm or harass the person whose information is published *and with knowledge or reckless disregard* that the person whose information is published would be reasonably likely to suffer death, bodily injury, or stalking." 740 ILCS 195/10(a)(1) (emphasis added).

> We read a Doxing Act claim to have six elements: (1) intentional publication of personally identifiable information; (2) the published information identifies a person without reliance on extrinsic sources; (3) lack of consent to the publication; (4) intent to harm or harass; (5) knowledge or reckless disregard of a reasonable likelihood of death, bodily injury, or stalking to the person whose information is published; and (6) one or more of the listed harms results.

*D'Ambrosio v. Meta Platforms Inc.*, No. 25-2231, 2026 U.S. App. LEXIS 14045, at *13–14 (7th Cir. May 15, 2026).

45.     Bleicher and Hicks knew or should have known that the alleged "doxing" would not be actionable because: (1) the published information relies on extrinsic sources; (2) Bleicher consented to the publication by voluntarily supplying the information in public records; (3) the Defendant published the information to inform the public, not with the intent to harm or harass; (4) the Defendant had no knowledge of nor did he recklessly disregard a reasonable likelihood of death, bodily injury, or stalking; and (5) none of the statutorily listed harms have occurred.

46.     In regards to that last point, Bleicher and Hicks allege in conclusory fashion, "Defendant's publication caused Plaintiff significant emotional distress, economic injury, fear of

11

substantial bodily injury, and substantial life disruption—including without limitation more than 599 harassing telephone calls, text messages, and voicemails to Plaintiff's unlisted cellular telephone number; ongoing anxiety, sleep disruption, and emotional distress; the need to alter daily life and communications routines; and economic injury including increased risk to Plaintiff's personal and professional security." ECF No. 1 at 21, ¶ 84.

47.     However, "emotional distress," "*fear* of substantial bodily injury," "harassing telephone calls, text messages, and voicemails," "anxiety, sleep disruption, and emotional distress [actually listed twice]," "alter[ing] daily life and communications routines," and generic "economic injury [also listed twice]" are not enumerated harms under the Doxing Act.

48.     Since Bleicher and Hicks concede that neither death nor bodily injury has occurred, the only remaining harm under the Doxing Act would be "stalking." However, the alleged harm is not identified in the Complaint with the specificity required to maintain the claim and any attempt at amendment would be futile.

49.     "[S]talking requires two or more acts in which a *person 'directly, indirectly, or through third parties*, by any action, method, device, or means follows, monitors, observes, surveils, [or makes a true threat of unlawful violence about] … a person, engages in other non-consensual contact, or interferes with or damages a person's property or pet.'" *D'Ambrosio*, 2026 U.S. App. LEXIS 14045 at *15–16 (citations omitted) (emphasis added).

50.     However, the Complaint does not allege that the Defendant "stalked" Bleicher. Bleicher and Hicks' attempts to impose liability on the Defendant for phone calls or emails made by *unnamed* third parties is extremely problematic and presents insurmountable evidentiary issues. The Complaint does not allege that the Defendant specifically enlisted these unnamed third parties to "stalk" Bleicher.

51.     Moreover, the Complaint "makes no effort to explain how someone could

12

reasonably infer from [the Defendant's] alleged conduct that []he intended to put him in reasonable fear of death, bodily injury, or stalking. Nor does he explain how posting h[is] impressions of [Bleicher and his response to a 2017 bar complaint] accomplishes that purpose. None of the post[] attributed to [the Defendant] contain a call to action, much less a call to action for … anyone else to harm [Bleicher] or his family." *D'Ambrosio*, 2026 U.S. App. LEXIS 14045 at *17–18.

52.     Bleicher and Hicks knew or should have known the allegations in the Complaint actually refute any claim of "stalking" since—in nearly every instance—the alleged "stalker" was *responding* to Bleicher's attempts to extort settlements *from* the alleged "stalker," as is, his modus operandi. *See supra* ¶ 2; ECF No. 1 at 15–18, ¶ 61–72. This at last exposes the real motivation behind the baseless claims Bleicher and Hicks make in the Complaint—Bleicher is angry that some of the individuals that he targeted to defraud saw a 2017 response to a bar complaint and were able to avoid being victimized by him.

53.     Thus, Bleicher and Hicks knew or should have known that none of the alleged harm in the Complaint constitutes "stalking" under the Doxing Act. In fact, the *entire* point of the Defendant publishing, in 2017, his response to Bleicher's frivolous bar complaint, as well as, the "update" in June 2024 to include his contact information—was for people to avoid *any* interaction with Bleicher and assist the victims of his rampant criminal acts and vexatious litigation.

54.     Bleicher and Hicks also knew or should have known that the Doxing Act claim is not actionable since the alleged conduct is protected by *at least* three (3) exceptions to that law. First, "[i]t is not an offense … for an individual to disseminate the personally identifiable information for the purpose of, or in connection with, the reporting of conduct reasonably believed to be unlawful." 740 ILCS 195/10(b)(2).

13

55.     Second, "[i]t is not an offense … for an individual to provide a person's personally identifiable information in connection with activity protected under the United States … or the Illinois Constitution pertaining to speech …." 740 ILCS 195/10(b)(3). Third, "[n]othing in this Act shall be construed in any manner to prohibit any activity protected under the Constitution of the United States or … Illinois …." 740 ILCS 195/10(c)(3).

56.     Bleicher and Hicks knew or should have known that the Doxing Act claim would not be supported by law or fact because: (1) the Defendant was reporting conduct reasonably believed to be unlawful; (2) the Defendant provided the information in connection with activity protected under the Constitutions of the U.S. and Illinois pertaining to speech; and (3) the interpretation of the Doxing Act, as advocated by them, would prohibit activities protected under the Constitutions of the U.S. and Illinois.

## MEMORANDUM OF LAW

"Rule 11 permits a court to impose sanctions on an attorney who presents to the court a … motion … that contains claims, defenses, and other legal contentions that are not warranted by either existing law or a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *Bautista v. Star Cruises*, 696 F. Supp. 2d 1274, 1277–78 (S.D. Fla. 2010) (citing Fed. R. Civ. P. 11(b)(1)). "Rule 11 also permits the imposition of sanctions if the factual contentions contained in the … motion … do not have evidentiary support." *Id.* at 1278 (citing Fed. R. Civ P. 11(b)(2)).

"The purpose of Rule 11 is to deter baseless filings." *Powrzanas v. Jones Util. & Contracting Co.*, 834 F. App'x 500, 507 (11th Cir. 2020). Specifically, Rule 11 "requires that an attorney … filing a pleading certify that the filing is not presented for any improper purpose." *Id.* (internal quotation marks omitted). *See also, In re Ames*, 993 F.3d 27, 34 (1st Cir. 2021) ("Under Rule 11, a court may impose sanctions on a lawyer 'for advocating a frivolous position,

14

pursuing an unfounded claim, or filing a lawsuit for some improper purpose.'"). A party's decision to file a frivolous lawsuit for the sole purpose of forcing a settlement may qualify as an improper purpose. *See Scott v. Vantage Corp.*, 64 F.4th 462, 472 (3d Cir. 2023).

> [A] court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous — in view of the facts or law — and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry.

*Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996).

Here, Bleicher and Hicks knew or should have known that the claims made in the Complaint were not warranted by either existing law or a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. Bleicher and Hicks also knew or should have known that the factual contentions contained in the Complaint did not have evidentiary support. As demonstrated above, the claims made by Bleicher and Hicks in the Complaint are objectively frivolous and they were aware or should have aware that the claims were frivolous. To the extent Hicks claims otherwise, she would have been aware that the claims were frivolous had she made a reasonable inquiry before filing the Complaint. In short, the Complaint advocates frivolous positions, pursues unfounded claims, and is a frivolous lawsuit filed for the sole improper purpose of forcing a settlement. Consequently, Bleicher and Hicks have both violated Fed. R. Civ. P. 11 warranting the imposition of sanctions. Therefore, the Court should grant this Motion for Sanctions.

**WHEREFORE**, the Defendant respectfully requests that the Court enter an order imposing sanctions of $75,000.00 against Bleicher and Hicks, jointly and severally, pursuant to Fed. R. Civ. P. 11, for their violations and the fees and costs incurred by the Defendant in this action.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served but not filed, on May 31, 2026, pursuant to Fed. R. Civ. P. 11(c)(2), on Corinthia Hicks, counsel for the Plaintiff, via email to corinthia@flavaworks.com.

Respectfully Submitted By:

Gulisano Law, PLLC
1489 W. Palmetto Park Road, Suite 500
Boca Raton, FL 33486
954-947-3972 – office
michael@gulisanolaw.com – email

s/ Michael Gulisano
Michael Gulisano, Esquire
Florida Bar No.: 87573
(Application for admission *pro hac vice* forthcoming)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on August 7, 2026 on all counsel of record via transmission of a Notice of Electronic Filing generated by CM/ECF.

Respectfully Submitted By:

Gulisano Law, PLLC
1489 W. Palmetto Park Road, Suite 500
Boca Raton, FL 33486
954-947-3972 – office
michael@gulisanolaw.com – email

s/ Michael Gulisano
Michael Gulisano, Esquire
Florida Bar No.: 87573
(Application for admission *pro hac vice* forthcoming)