# The Law Offices of Michael Gulisano, PLLC

5613 NW 117th Ave., Coral Springs, FL 33076
561-271-1678 · gulisanomichael@gmail.com

---

Via Certified Mail, Return Receipt # 7013 0600 0001 6451 3948

March 17, 2016

Maura Canter, Esquire
The Florida Bar
Attorney Consumer Assistance Program
651 East Jefferson Street
Tallahassee, FL 32399-2300

Re:     *Florida Bar File No. 2016-50,697(17E)*
        *Response to Phillip Bleicher's False and Slanderous Allegations and Open Letter to Governmental Agencies Regarding Mr. Bleicher's Ongoing Illegal Activities*

Dear Ms. Canter:

I was overwhelmed with sadness to learn that the Florida Bar would entertain the obviously false and slanderous allegations made by Phillip Bleicher ("Mr. Bleicher"). In actuality, the defamatory "complaint" brought by Mr. Bleicher is the culmination of his failed attempt to blackmail and fraudulently extort three Florida attorneys, including myself. *See* Bleicher's Blackmail attached as Exhibit A. Mr. Bleicher's attempted blackmail included a copy of the instant complaint, a "press release" in which Mr. Bleicher makes libelous statements about me, and a hastily put together and facially dismissible proposed "malpractice" complaint. *Id.* These documents were accompanied with a letter, *which unlawfully demanded $10,000 hush money in exchange for not filing the frivolous Bar complaint and "malpractice" lawsuit. Id.* Mr. Bleicher made *identical blackmail attempts* against fellow Florida attorneys Ursula Jackson ("Ms. Jackson") and Matthew Zukowsky ("Mr. Zukowsky"). *Id.*

*Mr. Bleicher's real issue with me is that I did what I was ethically and legally required to do rather than the unethical and illegal actions he wanted me to take to assist in his ongoing crimes and fraud.* Additionally, Mr. Bleicher is motived by revenge. After he refused to pay me $500 for my two months' of work, I filed a charging lien on his case. *See* Charging Lien attached as Exhibit B. Before quickly dispatching with his ridiculous character assassination attempt, it is important that the Bar consider the background to this matter, which Mr. Bleicher conveniently omits from his perjurious statements. Before doing so, I address the disclosure of confidential information that I must make to clear my good name.

## I. Mr. Bleicher's Actions Require or Allow Disclosure of Confidential Information

Florida Rule of Professional Conduct 4-1.6 provides that "[a] lawyer shall not reveal information relating to representation of a client except as stated . . . ." Fla. R. Pro. Cond. 4-1.6(a). However, "[a] lawyer *shall reveal* such information . . . necessary *to prevent a client from committing a crime*." *Id.* at (b)(1) (emphasis added). Additionally, "[a] lawyer *may reveal* such information . . . necessary *to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and client*; *to respond to allegations in any proceeding concerning the lawyer's representation of the client*; or *to comply with the Rules of Professional Conduct*." *Id.* at (c)(2); (4); (5) (emphasis added).

# Exhibit 1

# The Law Offices of Michael Gulisano, PLLC

Alas, in addressing Mr. Bleicher's outrageously slanderous filth, I have no choice but to dismantle his revenge fantasy with truth, logic, and the disclosure of his multitude of ongoing criminal activities. Considering he is swindling the IRS, committing perjury in Federal Court, and violating numerous State and Federal laws, it is quite odd Mr. Bleicher would want to make this a matter of public record. Nevertheless, the disclosures that follow are permissible under the above-cited rules.

## II. <u>Open Letter to Governmental Agencies Concerning Mr. Bleicher's Illegal Activities</u>

Before I vindicate myself, I must advise you of the character of the man who has levied these false claims against me. Mr. Bleicher is a snake oil peddling conman. In the words of one of his many outspoken critics, "*Bleicher and his company are also well-known for frivolous lawsuits against detractors or, against those who amplify outside findings and facts, and using underhanded moves, abusing the law . . . .*" *See* Gonzalez, Jagged Press attached as Exhibit C (emphasis added). Although his falsified tax returns fooled the IRS otherwise for several years, Mr. Bleicher makes a very comfortable living in the production and distribution of homosexual pornography through his various companies.

Mr. Bleicher is the CEO of Flava Works, Inc. ("Flava Works"). Flava Works is a Florida and Illinois corporation, which produces homosexual pornography featuring African-American and Hispanic men. Flava Works produces a quarterly magazine, FlavaMen, which showcases its models and contains editorials from contributing writers. *See* FlavaMen attached as Exhibit D. Flava Works also operates several websites offering pornographic images and videos, including Cocodorm.com, PapiCock.com, ThugBoy.com, CocoBoyz.com, RawRods.com, MixItUpBoy.com, TopThugs.com, FlavaCams.com, and FlavaMen.com. Thugsforsex.com is Flava Work's online dating portal for men of color. However, most of the controversy surrounding Flava Works has to do with Cocodorm, a live interactive residence where models are hired to live together in a dorm-like environment.

A. <u>Mr. Bleicher Intentionally Exposes Unwitting Performers to HIV and Exploits Minorities – or as the Chicago Department of Public Health calls it – Borderline "Illegal Servitude"</u>

Mr. Bleicher forbids performers from using condoms. He also does not believe in testing his performers for HIV or informing performers that co-performers are HIV positive before "performances." In November 2005, the Chicago Department of Public Health (the "CDPH") received reports of the transmission of HIV occurring in a resident of a Chicago apartment reported as a non-adherent carrier. The CDPH's investigation revealed the interworking of Mr. Bleicher's operations. *See* CDPH, *Investigation of a Cluster of Syphilis and HIV Infections associated with an Internet Pornography Website* attached as Exhibit E.

As the CDPH found, Mr. Bleicher's internet-based pornography business featured young Black and Latino men. *See* Ex. E. These men were employed as "models" and lived together at a residential apartment, which was referred to as a "dormitory." *Id.* In exchange for room, board, and modest wages, the "models" allowed Mr. Bleicher to videotape and photograph them having sex with each other in the "dormitory." *Id.* Mr. Bleicher's website featured free previews, members only services, photos, live webcams, live video chat, streaming video, stories, and web logs. *Id.* The website also sold porno magazines, calendars, and DVDs. *Id.* Additionally the website broadcast live daily sex acts. *Id.* Mr. Bleicher also doubled as a pimp, using his "models" in a private male escort service. *Id.*

Exhibit 1

# The Law Offices of Michael Gulisano, PLLC

Page 3 of 17

---

The CDPH identified nineteen "models" from Mr. Bleicher's business. *See* Ex. E. All were African-American. *Id.* Nine of the "models" (47%) had HIV. *Id.* Another nine of the "models" (47%) had syphilis. *Id.* Three of the "models" had both HIV and syphilis. *Id.*

Unfortunately, the CDPH's investigation was hampered by Mr. Bleicher's interference. *Id.* He forbid employees and "models" from speaking with the CDPH. *Id.* He was also non-responsive to CDPH's requests to work with them to jointly develop a corrective action plan. *Id.* This prompted the issuance of a Notice of City Inspection to assess Mr. Bleicher's brothel for compliance with health, safety, business, and licensing codes. *Id. Additional concern was raised over Mr. Bleicher's apparent exploitation of his "models," and the nature of their work. Id.* The CDPH's claimed that *Mr. Bleicher's company was practicing what bordered on "illegal servitude." Id.* "[P]rominent African-American leaders have also been critical of Bleicher, who is white, for what they call the exploitation of young black and Latino men." *See* Ex. C. "Most of them are reportedly at-risk youths, runaways, homeless and easily manipulated." *Id.* On April 20, 2006, the CDPH issued a cease and desist order prohibiting Flava Works from operating in Chicago. *See* Cease and Desist Order attached as Exhibit F.

B. Mr. Bleicher's Fraudulent Charity Stole more than $3 Million from Schools Nationwide

In January 2006, the Illinois Attorney General filed a civil suit against Mr. Bleicher charging him with operating a fraudulent charity that bilked schools nationwide out of millions of dollars. *See* Fraudulent Charity Allegedly Collected More Than $3 Million; Used Proceeds to Make Purchases for International Travel and at a Liposuction Clinic attached as Exhibit G. Mr. Bleicher was the founder of the now-defunct charity, Student Leadership Network (the "Network"), which was promoted as offering conferences and leadership programs for student council members. *Id.* Through the Network, Mr. Bleicher contacted schools across the Country and persuaded some to sign up for the program. *Id.*

Mr. Bleicher then sent fraudulent invoices to the schools and, in addition to cashing those checks, created forged copies of the checks to withdraw additional funds from the schools' bank accounts. *See* Ex. G. Mr. Bleicher successfully cashed many of the checks before the schools and banks realized what happened. *Id. Mr. Bleicher and his co-conspirators collected more than $3 million dollars for goods and services that they never delivered. Id.* The civil suit against Mr. Bleicher was later dropped when officials decided to pursue Federal criminal charges instead. *Id.*

C. Fun in the Sun: Mr. Bleicher Flees to Miami

In May 2006, Mr. Bleicher fled to Miami to avoid the civil and criminal repercussions of the above-referenced matters. Once in Miami, Mr. Bleicher resumed operations and launched a new homosexual brothel based out of a residential home. According to the Miami Herald, "CocoDorm offers its young, muscular males $1,200 a month along with free room and board while requiring they masturbate and have group sex in front of cameras." *See* Miami Herald Articles attached as Exhibit H. The City began receiving complaints from the brothel's neighboring residents, mostly families with young children. *Id.* In May 2007, the Miami Department of Code Enforcement visited the residence and imposed citations for: (1) illegal rooming house; (2) adult entertainment not permitted in C-1 zone property; (3) failure to maintain exterior of property; (4) failure to maintain lot

Exhibit 1

# The Law Offices of Michael Gulisano, PLLC

Page 4 of 17

in safe, clean condition and prevent the accumulation of debris, trash or dense growth of grass; *and (5) illegally operating a business in a residential zone*. *Id.* (emphasis added).

Miami eventually ruled that Flava Works was "illegally running an adult entertainment business out of a single-family home . . . and ordered that those operations cease." *See* Ex. H. Not one to comply with the law voluntarily, Mr. Bleicher sued Miami in Federal Court and in an admittedly brilliant maneuver, reframed the argument as a *First Amendment issue* rather than the *zoning issue* it was. *Id.* Flava Works also argued that it was not running an adult-oriented business out of the house and that its "business transactions" did not "take place" in the residential neighborhood, but rather in "virtual space." *Id.*

In January 2009, the Southern District ruled in its favor, "[b]ecause the public offering by Flava Works, Inc. occurs via cocodorm.com in cyberspace, and not in a particular geographic location, the City of Miami zoning ordinance cannot be applied to the 503 residence." However, in June 2010 the Eleventh Circuit reversed, holding that regardless of whether Flava Works was an adult entertainment establishment, *it was a business operation*, and Miami's zoning ordinances *forbid operating a business in a residential zone*. Mr. Bleicher did not let this set back faze him. He continued to illegally operate Flava Works in Miami for several more years. According to Mr. Bleicher, Flava Works returned to Chicago in October 2014. If this is true, he is operating in violation of the CDPH's cease and desist order still in effect. *See* Ex. F.

D. <u>Mr. Bleicher Manufactured Evidence in Federal Court</u>

Always itching to employ his forgery skills, Mr. Bleicher did so in, *Flava Works, Inc. v. Momient*, 11-cv-06306 (Ill. N.D. 2011). There, the Northern District of Illinois determined that Mr. Bleicher *forged the defendant's signature on a contract* in order to win a pending lawsuit. *See* Order attached as Exhibit I. Mr. Bleicher then had his attorney *submit the forgery to the Court as evidence*. *Id.* Referring to Mr. Bleicher's conduct, the Court stated, "*[w]hat we have, then, is the most egregious fraud on the court that this Court has encountered in its nearly 33 years on the bench.*" *Id.* (emphasis added). *"Fortunately courts are rarely called upon to consider fraud on-the-court conduct of the type engaged in by Flava."* *Id.* (emphasis added). "What, then, is the appropriate judicial response to such an egregious abuse of the judicial system by such a blatant fraud on the Court?" *Id.* The response was dismissal of Mr. Bleicher's action. *Id.*

E. <u>Mr. Bleicher Evades State and Federal Income Taxes</u>

Mr. Bleicher does not believe in giving Uncle Sam his cut. Throughout the above-described incidents, Mr. Bleicher has evaded and continues to evade State and Federal income taxes. Through falsified tax returns, Mr. Bleicher has deprived both State and Federal governments out of millions in tax revenue. For example, in 2014 Flava Works generated in excess of $423,000 in income. *See* 2014 Tax Return attached as Exhibit J. However, this income was *conveniently* offset by nearly $433,000 in expenses. *Id.* With gross income of about -$10,000, Flava Works did not pay any taxes for 2014. *Id.* According to its tax returns, Flava Works runs at or near a deficit every year yet somehow the company has managed to stay in business for over a decade. The IRS and State agencies eventually caught on. In April 2015, Mr. Bleicher entered into a settlement agreement with the IRS. He is currently on a payment plan with them for over $500,000 in unpaid back taxes.

Exhibit 1

# The Law Offices of Michael Gulisano, PLLC

However, it is clear the IRS is unaware of the full extent of Mr. Bleicher's tax avoidance.

Although Mr. Bleicher was advised numerous times, by prior attorneys and I, to simply pay the judgment described below, he steadfastly refused with no apparent legal justification. This was odd since the $30,000 judgment is pocket change to his company. *See* Ex. J. I now know that Mr. Bleicher cannot satisfy the judgment because he has and is continuing to commit tax fraud as well as other Federal and State crimes. Since Mr. Bleicher professes poverty to the outside world, if he paid a $30,000 (now $40,000) judgment, it could potentially alert governmental agencies, particularly the IRS, to take a closer look at Flava Works. Mr. Bleicher believes he cannot take that risk. He knows he would not fare well in Federal prison.

F. Mr. Bleicher Fraudulently Concealed and Continues to Fraudulently Conceal Assets

In order to avoid service in the declaratory action mentioned below, Mr. Bleicher administratively dissolved Flava Works in Florida in October 2015. Additionally, in order to avoid payment of the judgment discussed below, Illinois attorney Juneitha Shambee ("Ms. Shambee") advised Mr. Bleicher to fraudulently conceal most of Flava Work's assets by moving them into various shell corporations he also owns. Flava Works is only one of a dozen dummy corporations Mr. Bleicher uses to facilitate his crimes. These entities include, at least, Flavaworks, Flava Works Worldwide, Blactino Media, Tube Media Labs, and Lukebaby Productions. However, the difference is in name only, each including Flava Works is the alter ego of Mr. Bleicher.

### III. **Flava Works, Inc. v. A4A Reseau, Inc. – a Procedural History**

I was the fourth Florida attorney, and fifth attorney overall, in less than two years to be involved in Mr. Bleicher's lawsuit, *Flava Works, Inc. v. A4A Reseau, Inc.*, No. 14-cv-23208 (Fla. S.D. 2014), which is currently pending in the Southern District of Florida (the "Lawsuit"). *See* Docket attached as Exhibit K (individual docket entries will be referred to by docket number).

Ms. Jackson, the first Florida attorney Mr. Bleicher used in the Lawsuit, filed a one-count complaint for copyright infringement in February 2014. On January 16, 2015, the defendants, represented by John Bradley ("Mr. Bradley") filed an answer. *See* Doc. No. 21. *Four days after the answer was filed, Mr. Bleicher instructed Ms. Jackson to file a voluntary dismissal*. *See* Doc. No. 22. Mr. Bleicher falsely stated to the Court that he fired Ms. Jackson the same day. *See* Doc. No. 36. However, I was told by Mr. Bleicher that Ms. Jackson "disappeared." I believe this was likely after she encountered the same or similar issues with him as I did.

Throughout the Lawsuit, Mr. Bleicher has been assisted in his fraudulent conduct by Ms. Shambee, who was recently admitted to the Florida Bar. *On January 21, 2015, Ms. Shambee committed gross malpractice by using the identical complaint to initiate a new action based on the same claims against the same defendants* in Illinois, *Flava Works, Inc. v. A4A Reseau, Inc.*, 15-cv-00610 (Ill. N.D. 2015). *See* Complaints attached as Exhibit L. Ms. Shambee negligently or intentionally disregarded Federal Rule of Civil Procedure 41, which provides "*[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied*." Fed. R. Civ. Pro. 41(d)

# Exhibit 1

# The Law Offices of Michael Gulisano, PLLC

---

(emphasis added). This error was compounded by Ms. Shambee's additional failure to review controlling case law in the Eleventh Circuit, *which holds that attorney fees are recoverable as "costs" under Rule 41(d)*. Ms. Shambee's actions cost Mr. Bleicher $30,000. *See* Doc. No. 36. It is Ms. Shambee's negligence that Mr. Bleicher has attempted to pin on each of the Florida attorneys mentioned in this response and ultimately lead to his blackmail attempts and bar complaints. *See* Ex. A.

Immediately, Mr. Bradley pounced on Ms. Shambee's blunder and, pursuant to Rule 41(d), sought a stay of the newly filed Illinois action and recovery of his client's costs, including attorney fees in the Lawsuit. *See* Doc. No. 24. Mr. Bradley also filed a declaratory judgment action in the Southern District, solely for the purpose of keeping the matter in Miami. *See A4A Reseau, Inc. v. Flava Works, Inc., Phillip Bleicher*, No. 15-cv-20245 (Fla. S.D. 2015). Mr. Bradley also appeared in the Illinois lawsuit and successfully had the action transferred to Miami. Upon transfer, the matter was assigned case number 15-cv-21592. Mr. Bleicher then attempted to file a pro se motion for an extension of time to respond to Mr. Bradley's motion. *See* Doc. No. 25. On February 25, 2015, the Court struck Mr. Bleicher's filing since corporations must be represented by counsel. *See* Doc. No. 26. The Court gave Mr. Bleicher until March 4 to find replacement counsel and to respond to Mr. Bradley's motion. *Id.*

Mr. Bleicher failed to comply with the Court's order. *See* Doc. No. 27. Consequently, on March 5, 2015, the Court granted Mr. Bradley's motion as to the entitlement to attorney fees. *See* Doc. No. 28. The Court requested supporting material as to the amount to be awarded. *Id.* Mr. Bleicher's second Florida attorney was Mr. Zukowsky. Mr. Zukowsky filed a motion for Ms. Shambee to appear pro hac vice on March 6. *See* Doc. No. 34. The motion was denied because, among other reasons, Ms. Shambee did not comply with the Local Rule requiring certification that she has studied the Court's Local Rules. *See* Doc. No. 35.

Ms. Shambee or Mr. Zukowsky filed a response opposing Mr. Bradley's *already granted* motion for attorney fees, as well as, a motion to vacate the order itself. *See* Doc. No. 29; 33. The Court denied the motion to vacate stating:

> On March 5 . . . after the Court had entered its Order Granting Defendants' Motion for Attorneys' Fees, Plaintiff filed a Motion to Vacate that Order pursuant to Rule 60(b) . . . . Rule 60(b) also contains a "catch−all" provision allowing reconsideration for "any other reason that justifies relief." Plaintiff appears to invoke this "catch−all" provision, arguing that it should be entitled to relief because: (1) it "has attempted profusely to retain an attorney," which it finally did on March 4, 2015, the day the Response was due; and (2) new counsel attempted to file a Response, but could not do so because he is not authorized to file through CM/ECF. *The Court finds that Plaintiff has not satisfied the Rule 60(b) standard for relief from the Court's Order. . . . Plaintiff had a full month between the date on which Defendants filed their Motion for Attorneys' Fees . . . and the extended deadline to file a Response . . . to secure an attorney who could timely file a Response. Plaintiff's alleged inability to secure an attorney within that period that could timely file a Response does not constitute an "extraordinary circumstances" entitling it to relief.*

# Exhibit 1

# The Law Offices of Michael Gulisano, PLLC

*See* Doc. No. 36 (emphasis added) (grammatical alternations made). Mr. Bradley then filed a motion seeking $43,566.75 in fees, to which Mr. Zukowsky filed a response. *See* Doc. No. 39; 44; 45. The Court determined that the reasonable amount of attorney fees was $28,060.57 and entered a judgment for that amount against Flava Works (the "Judgment"). *See* Doc. No. 46.

*Mr. Bleicher than began a series of maneuvers with the sole purpose of eluding his court ordered obligation to pay the Judgment.* Mr. Bleicher's primary argument, which I later learned was patently false, was that his company was broke and no money was coming in due to the defendants' alleged ongoing copyright infringement. First, Mr. Bleicher failed to complete a judgment debtor worksheet without legal justification. This forced Mr. Bradley to file a motion to compel, which the Court granted. *See* Doc. No. 51; 58. Mr. Bradley then sought discovery to aide collection on the Judgment. *See* Doc. No. 60; 61. Among other things, Mr. Bradley sought Flava Works bank statements, which would support of refute Mr. Bleicher's claim of insolvency. Mr. Bleicher neither provided the discovery nor objected to it within the applicable time limits. This forced Mr. Bradley to file a motion to compel the discovery. *See* Doc. No. 60.

Mr. Zukowsky subsequently withdrew. *See* Doc. No. 76; 77. Mr. Bleicher's third Florida attorney was Joshua Sheskin ("Mr. Sheskin"). *See* Doc. No. 59. At Mr. Bleicher's insistence, Mr. Sheskin filed *another motion seeking to vacate the order granting attorney fees*. *See* Doc. No. 63. Although the Court ordered Mr. Bleicher to complete the worksheet by July 9, he did not do so until September 2. *See* Doc. No. 71. Mr. Sheskin withdrew on October 8, 2015. *See* Doc. No. 78. Although I originally responded to his misleading Craigslist ad in July, I was not hired by Mr. Bleicher until October 9. *See* Doc. No. 79. At the time of my appearance, Mr. Bleicher had not paid the Judgment and Mr. Bradley's discovery requests were still outstanding. The second motion to vacate the order awarding attorney fees was also pending.

Mr. Bleicher is a pathological liar and quite good at it. Prior to entering my appearance, I participated in a conference call with Mr. Bleicher and Ms. Shambee. *My sole mistake in this matter was taking their false explanation of the proceedings and finger pointing as the truth.* Both feed me false stories that Mr. Bradley was a "bully" who "intimated" the prior attorneys into quitting out of frustration. Both claimed Ms. Jackson, Mr. Zukowsky, and Mr. Sheskin had committed malpractice. I know what you are thinking, "three lawyers in a row committed malpractice?" Yes, Mr. Bleicher is that convincing of a liar. Mr. Bleicher was insistent that I needed to immediately file a motion to substitute myself into the case and remove Mr. Sheskin. *I later came to learn that Mr. Bleicher fired Mr. Sheskin to prevent him from turning over discovery, including Flava Works' bank records, which Mr. Sheskin had received the day before.* I also later came to learn that Mr. Bleicher never had any intention of complying with any of the Court's orders.

During my conversation with Mr. Bleicher and Ms. Shambee, they did not even seem cognizant of the need to provide discovery. Rather, *their sole concern was having the Judgment overturned.* However, I advised them that I could not argue the second motion to vacate in good faith because (1) the Court already denied an identical motion to do so (Doc. No. 33; 36); and (2) either no new grounds were being raised or the new grounds were irrelevant. I advised them the deadline to appeal the Judgment had already passed when they contacted me. However, I specifically asked why, if they believed the Judgment was incorrect and a motion to vacate had already been denied, had they not appealed to the Circuit Court. *Neither provided an intelligible answer.*

# Exhibit 1

# The Law Offices of Michael Gulisano, PLLC

Page 8 of 17

I also specifically asked them why the case was dismissed in Florida and then re-filed in Illinois the next day. *Neither provided an intelligible answer. However, Ms. Shambee admitted that before refilling in Illinois, she failed to research the controlling case law in the Eleventh Circuit that subjected her client to the Judgment.* Mr. Bleicher's selling point to his attorneys is a 25% share of any judgment. *I have since come to learn that Ms. Shambee's motivation in dismissing and refiling the action in Chicago was to ensure herself a larger portion of the potential recovery by cutting out any Florida attorney.*

Moments after appearing in the case, Mr. Bradley peppered me with several strongly worded emails seeking agreement on a hearing date for his pending second motion to compel. On October 19, after we could not reach agreement, the Court held a telephonic conference for the sole purpose of scheduling a hearing on Mr. Bradley's motion. *See* Doc. No. 81; 82. During the conference, the Court expressed great displeasure with Mr. Bleicher's antics and set the matter for hearing on November 20. *See* Doc. No. 83. However, *the Court specifically stated to me that if Mr. Bleicher did not provide the discovery thereby obviating the need for a hearing, the Court would enter additional sanctions against Flava Works and maybe even against me personally*.

Immediately following the phone conference, I informed Mr. Bleicher of the Court's statements. *Therefore, Mr. Bleicher had an entire month to provide the outstanding discovery, which again consisted of bank statements, tax returns, and internal corporate documents.* Mr. Bleicher maintained throughout both Mr. Sheskin's representation and mine that he was encountering great difficulty in obtaining the statements *for his own bank accounts*. This of course is strange since it is possible to obtain bank statements online in a matter of minutes.

As the November 20 hearing approached, I become increasingly concerned over Mr. Bleicher's "inability" to obtain copies of his own bank statements. However, in an epiphany, I thought of an obvious solution to his difficulties: subpoena the records. Therefore, I prepared subpoenas for each bank and the IRS and sent them off. *See* Subpoenas attached as Exhibit M. I thought Mr. Bleicher would be delighted by my ingenious approach. However, when he learned about the subpoenas, Mr. Bleicher was unusually outraged. I know now he had this reaction because of his ongoing tax evasion and fraudulent concealment of assets.

In any event, my efforts were largely successful and most of the previously "unobtainable" bank records were obtained prior to the hearing. Shortly before the hearing date, Mr. Bleicher and Ms. Shambee insisted that I file a motion for protective order and that the bank records be heavily redacted and marked as "for attorney's eyes only," despite my advice that there were no grounds for doing so. As I told them, the discovery had been outstanding for months and the failure to timely object to the requests acts as a waiver of any non-privilege objections. In addition, the names of individuals on the bank statements were not "trade secrets."

On November 19, 2015, I filed a motion to withdraw for the ethical and legal reasons discussed below. *See* Doc. No. 91. The motion was denied by the Court. *See* Doc. No. 92. Thus, I was required to attend the hearing on November 20. The details of what transpired at the hearing are discussed below. At the conclusion of the hearing, the Court granted Mr. Bradley's motion and awarded him an additional $10,000 in attorney fees. *See* Order attached as Ex. N. Mr. Bleicher was ordered to provide the outstanding discovery by November 30 and to pay the $10,000 by December 10. *Id.*

# Exhibit 1

# The Law Offices of Michael Gulisano, PLLC

As we exited the courthouse, Mr. Bleicher thanked me and assured me that a check for my services had been placed in the mail. *He further indicated that he alone would be obtaining the outstanding discovery.* A few days after the hearing, Mr. Bleicher sent me an email asking if the order had been "entered" yet. As stated, *the Court announced its ruling at the hearing*. Although Mr. Bleicher was present at the hearing and took copious notes during it, including the deadlines, he professed confusion over the ruling and appeared angered that I had not immediately forwarded him the PDF version of the ruling announced orally at hearing. I apologized for not getting it to him but as I explained: (1) the Order was entered the day before Thanksgiving; (2) I came down with a cold on Thanksgiving and sat at the dinner table wrapped in a blanket; and (3) the PDF order *did not differ in any way from the Court's oral ruling, which he had taken notes on*.

Following the hearing, Mr. Bleicher failed to pay the $10,000 sanction. He also failed to timely provide the outstanding discovery. Meanwhile, I still had not received payment despite Mr. Bleicher's claim that a check had been mailed. Finally, on December 15, after Mr. Bleicher failed to respond to my follow-up request for payment, I filed a charging lien. *See* Ex. B. This ended my involvement with this matter or so I thought until receiving Mr. Bleicher's blackmail demands. *See* Ex. A. I was baffled to learn that Mr. Bleicher was not satisfied with my work. *If I did not request the statements directly from the banks myself, the November 20 hearing would have been very different*. In other words, *but for my unilateral efforts to obtain and provide outstanding discovery,* without Mr. Bleicher's assistance and as I now know active resistance, a larger judgment would have been entered against Flava Works.

Simultaneously with Mr. Bleicher's extortion attempt, his co-conspirator Ms. Shambee requested my consent to removal from the notice list. After indicating that I would not, Ms. Shambee filed a motion to remove Ms. Jackson and myself from the docket. *See* Doc. No. 108. I filed a response in opposition. *See* Doc. No. 113. The Court granted the request to remove Ms. Jackson but denied the request to remove me from the docket. *See* Doc. No. 115. The baseless filings did not end there. Ms. Shambee filed a motion to reconsider the order denying her request to remove me from the docket. *See* Doc. No. 116. I again filed a response and the Court denied the motion. *See* Doc. No. 117; 121.

## IV. Mr. Bleicher's Complaint is Part of a Failed Attempt, Conspired with Ms. Shambee, to Extort and Blackmail Three Florida Attorneys including Myself

Finally, I will refute Mr. Bleicher's inventive but false allegations against me. I note several of the "exhibits" referenced to in Mr. Bleicher's complaint were not attached to the copy I received.

A. I Never Failed to Communicate with Mr. Bleicher or his Co-Conspirator Ms. Shambee. Conversely, Mr. Bleicher's Unbearable Oversight Impairs the Professional Judgment of the Attorney's he Hires

Florida Rule of Professional Conduct 4-1.4, provides "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." Fla. R. Pro. Cond. 4-1.4(a). *See also* Fla. R. Pro. Cond. 4-1.13(a) (emphasis added) ("[a] lawyer employed or retained by an organization *represents the organization* acting through its duly authorized constituents."). However, "*[a] lawyer shall not permit a person who* recommends, *employs*, or pays the lawyer to render legal services for another *to direct or regulate the lawyer's*

# Exhibit 1

# The Law Offices of Michael Gulisano, PLLC

*professional judgment in rendering such legal services*." Fla. R. Pro. Cond. 4-5.4(d) (emphasis added). Initially I note that Mr. Bleicher's extensive oversight of the attorneys he hires plainly violates Rule 4-5.4(d), which prohibits a non-attorney from impairing the independent professional judgment of an attorney.

Either way, Mr. Bleicher falsely alleges that I did not communicate with him during the two months I represented his seedy business. *However, he does not point to a single instance in which I failed to do so. He does not because his allegations are imaginary and contrary to reality.* Mr. Bleicher or Ms. Shambee was included on every significant communication I sent in this matter. It is true that Mr. Bleicher was not included *on selected communications with opposing counsel or the Court*, this was done because I felt it would have been improper to do so on these specific communications. However, even where Mr. Bleicher was not directly included, Ms. Shambee was. Therefore, Mr. Bleicher's claims that I failed to communicate with him are without merit.

B. <u>There was no Improper Judicial Communication, Mr. Bleicher either Misunderstands or, more likely, takes a Docket Entry out of Context</u>

Mr. Bleicher is referencing docket entry 89. However, he does so out of content. He also neglects to mention the procedures established in the Lawsuit, which state "[t]he Discovery Procedures . . . in this matter *require that source materials for discovery hearings be delivered via handdelivery or through a document that is emailed to the [Magistrate's] CM/ECF mailbox . . .*" *See* Doc. No. 68 (emphasis added).

On October 23, in accordance with those discovery procedures, I emailed source material for the upcoming November 20 discovery hearing to the Magistrate's email. Specifically, I sent copies of the subpoenas I propounded to rebut Mr. Bradley's assertion that we were not even attempting to provide discovery. This prompted the following docket entry from the Court:

> On October 23 . . . Plaintiff's counsel emailed the Chambers' e-file inbox, copying all other counsel, stating that certain subpoenas had been issued (and attaching the subpoenas) that would obviate the need for a hearing. If, indeed, these subpoenas moot the need for a hearing . . . then opposing counsel . . . may cancel the hearing (and/or withdraw the pending discovery motion) with an official, on-the-record filing, or, if not satisfied fully, may file an amended notice of hearing that indicates certain issues (but not all) have been resolved. *If Plaintiff's counsel is merely providing additional source material for the hearing, then submission of these to the e-file inbox is fine.*

*See* Doc. No. 89 (emphasis added). Mr. Bleicher makes the ridiculously hilarious, and false, assertion that this "severely prejudiced us and made us look unprofessional." *Mr. Bleicher was "severely prejudiced" by Ms. Shambee's malpractice and was made to look "unprofessional" by his own dilatory tactics and false testimony not by my submission of source material to the Magistrate in accordance with the discovery procedures in place.* Therefore, Mr. Bleicher's allegations regarding an "improper" communication with a judge are without merit.

C. <u>I did not Fail to Address "Other Litigation," I advised Mr. Bleicher of his Options, he did not</u>

Exhibit 1

# The Law Offices of Michael Gulisano, PLLC

Page 11 of 17

<u>Affirmatively Request any Action, and the Lawsuit was Stayed Until he Paid the Judgment, which he Cannot do Without Raising the IRS's Suspicion</u>

Mr. Bleicher claims I did not take action based on his November 4, 2015 email, asserting new copyright infringements. In his email, Mr. Bleicher rants:

> Adam4Adam is up to it again. They are using more copyrighted images to promote and link to products which are not Flava Works. I want to get an injunction against them filed and also go after their web host Soft Layer. Now they are just fucking with us. In our face!

Like all of Mr. Bleicher's slanderous assertions, this allegation is false and contradicted by evidence. *To begin with, Mr. Bleicher never asked me to take specific action regarding these alleged new infringements*. Additionally, Mr. Bleicher does not state what hypothetical action I should have voluntarily done. Nevertheless, although I did not respond to this particularly delightful email, *I did have a specific phone conversation with Mr. Bleicher about the matter and his options*. In what turned out to be more free legal services that unjustly enriched this con artist, I told him that if his allegations were true, they could constitute a separate cause of action. I told Mr. Bleicher that meant he could file a *separate* lawsuit seeking recovery based on these alleged new copyright infringements. However, I told him that the defendants might seek a stay if he did file a new action.

Alternatively, *assuming any of Mr. Bleicher's copyright allegations have factual merit*, I told him it was possibly a continuation of pre-existing copyright violations. In which case, I advised Mr. Bleicher an injunction or temporary restraining order might be available in the existing actions. However, given the fact that the he voluntarily dismissed the Lawsuit filed in Florida, the re-filed action in Illinois was stayed until he paid the Judgment, and that his dilatory tactics were wearing thin with the Court, I advised Mr. Bleicher that it would likely better to seek a remedy in a separate action. Finally, Mr. Bleicher had yet to pay me for two months' worth of work and has since balked at my "unreasonable" $500 invoice. What additional free legal work does Mr. Bleicher suggest I should have done for his porn empire? *Mr. Bleicher's "models" might be indentured servants exploited for his profit but at least they get modest wages*. Therefore, Mr. Bleicher's allegation that I failed to address "other litigation" is without merit.

D. <u>Mr. Bleicher Complains but does not Cite Anything "Erroneous" in my $500 Invoice, which he has Unreasonably and Spitefully Refused to Pay</u>

Mr. Bleicher claims that I had "concerns and reservations about attending a hearing in front of Judge Goodman." Mr. Bleicher then states my "concern and reservation" was due to the fact that he never paid me. Although it is true Mr. Bleicher did not pay me, I never said, "why should I attend when I haven't even been paid yet?" *Rather, my "concerns and reservations" about attending the hearing were solely due to the fact that the Magistrate specifically stated during the October 19 telephonic conference that he would impose sanctions against both Mr. Bleicher and myself if we did not provide the outstanding discovery*. Although Mr. Bleicher had yet to pay me for my two months' worth of work, my concern, *communicated to him on several occasions prior to the hearing* was that I could not afford sanctions imposed against me and my reservation, *also communicated to him on several occasions prior to the hearing* was seeing additional sanctions imposed against him.

# Exhibit 1

# The Law Offices of Michael Gulisano, PLLC

Page 12 of 17

---

*Mr. Bleicher calls for a forensic audit of my $500 invoice.* He claims my one page invoice, requesting only $500 for two months of work, was "vague and riddled with numerous errors and untruths." However, Mr. Bleicher does not point to a single error. I did attend the November 20 hearing, which was necessitated by Mr. Bleicher's continued obstinacy and intentional failure to comply with multiple court orders. Further, Mr. Bleicher faults me for not billing in fractional hourly increments. First, Mr. Bleicher never stated this was a requirement. Second, he was only paying $25 an hour not $250. Flava Works had over $423,000 in income in 2014. *See* Ex. J. This begs the question, *why would a company that generates nearly $500,000 a year actively seek young or recently admitted attorneys at $25 an hour, assuming unlike me they are actually paid, to protect its intellectual property and prosecute highly complex cases alleging copyright violations?* Because Mr. Bleicher believes those attorneys are more easily manipulated and less likely to question his crimes.

Mr. Bleicher alleges "[I] submitted a false statement . . . claiming [I] was owed $1,000." Presumably, Mr. Bleicher is referring to my charging lien. *See* Ex. B. However, I did in fact perform *at least* $1,000 worth, *probably more*, of legal services for Mr. Bleicher. Mr. Bleicher was intimately involved in every aspect of the case during the entirety of my representation. He is fully aware of the work I did. Even if he was not, the work is documented. Admittedly, I did not keep extensive contemporaneous time records. *In recognition of this, I was willing to reduce my fee by half as a compromise.* That is why I only requested $500. *Mr. Bleicher's attempt to use my kindness against me is an excellent example of his unsavory and malicious character.* However, after he stiffed me on $500, despite being in the top 1% of wage earners himself, I demanded payment in full. Consequently, to ensure payment I filed a charging lien seeking $1,000. *See* Ex. B.

Mr. Bleicher commits further perjury by stating I "was asked to submit a detailed and corrected invoice." *Mr. Bleicher never made any such request.* Interestingly, Mr. Bleicher submits my $500 invoice as an exhibit to his slanderous complaint but does not include the alleged correspondence asking me to resubmit it. *Mr. Bleicher's actual response to receipt of my invoice is another example of his propensity to falsify the truth*: "our accountant will take care of it."

Finally, Mr. Bleicher's bait and switch Craigslist ad belies his frugal arguments. The ad states Flava Works would pay $25 an hour for ten to twenty hours per week. I worked two months for Mr. Bleicher's pornographic slave-ring. According to his own ad, Mr. Bleicher would have expected to pay for 100 to 200 hours of work during that time. However, my $500 reduced invoice equates to only 20 hours of work, while my $1,000 actual invoice equals 40 hours. *The truth of the matter is that Mr. Bleicher thought he could take advantage of me, as he does with his "models." However, as this response demonstrates, Mr. Bleicher has seriously miscalculated the situation.* Therefore, Mr. Bleicher's allegations regarding my $500 invoice are without merit.

E. I was Required or Allowed to Withdraw Representation Without Mr. Bleicher's "Knowledge" or "Permission" for Half a Dozen Reasons, including his Use of My Services to Perpetrate a Crime or Fraud

Mr. Bleicher states "unbeknownst to me and without permission," I filed a motion to withdraw. *This is the only true statement contained in Mr. Bleicher's complaint.* However, neither advance notice nor "permission" were required. Mr. Bleicher is not familiar with Florida Rule of Professional Conduct 4-1.16, which *requires* an attorney to "withdraw from the representation of a client if *the*

Exhibit 1

# The Law Offices of Michael Gulisano, PLLC
Page 13 of 17

---

*representation will result in violation of the Rules of Professional Conduct or law*." Fla. R. Pro. Cond. 4-1.16(a)(1). Rule 4-1.16 also *permits* an attorney to withdraw if:

> (1) the client persists in a course of action involving the lawyer's services that *the lawyer reasonably believes is criminal or fraudulent*; (2) the client *has used the lawyer's services to perpetrate a crime or fraud*; (3) a client insists upon pursuing an objective that *the lawyer considers repugnant or imprudent*; (4) the client *fails substantially to fulfill an obligation* to the lawyer regarding the lawyer's services . . . ; (5) the representation *will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client* . . . .

Fla. R. Pro. Cond. 4-1.16(b)(1–6) (emphasis added). However, "[w]hen ordered to do so by a tribunal, a lawyer shall continue representation." Fla. R. Pro. Cond. 4-1.16(c).

I was ethically required to withdraw because my continued representation would have resulted in violation of the Rules of Professional Conduct and the law. Additionally, I was permitted to withdraw for several reasons. First, Mr. Bleicher persisted in a course of action involving my services that I reasonably believed was criminal and fraudulent. Second, Mr. Bleicher used my services to perpetrate a crime and fraud. Third, Mr. Bleicher insisted on pursuing an objective that I considered imprudent. Fourth, Mr. Bleicher failed substantially to fulfill his obligations to me in regards to my services. Fifth, continued representation had been rendered unreasonably difficult by Mr. Bleicher and continued representation without pay would have caused me to suffer an unreasonable financial burden. Unfortunately, the Court denied my motion to withdraw. *See* Doc. No. 92. Consequently, I was still required to attend and did attend the November 20 hearing.

Mr. Bleicher also takes issue with the substantive statements in my motion to withdraw. He *actually* claims my statement that he refused to follow my advice is false. He also claims I "offer[] (and cannot prove) no emails [sic] or phone communications where we refused to follow his advice . . . ." He also cites a lack of evidence to support my claim that "a conflict of interest" precluded further representation. *However, at the time, I felt it would not have been proper to "offer" the above details.* Once again, Mr. Bleicher attempts to use my kindness against me. Now however, I am more than happy to shed light on Mr. Bleicher's criminal and unethical behavior.

Mr. Bleicher asked me to take actions intended solely to disrupt the tribunal. *See* Fla. R. Pro. Cond. 4-3.5(c) ("A lawyer shall not engage in conduct intended to disrupt a tribunal."). Mr. Bleicher and Ms. Shambee asked me to engage in dilatory practices that would have brought "the administration of justice into disrepute" for "*the purpose of frustrating an opposing party's attempt to obtain rightful redress or repose*." Fla. R. Pro. Cond. 4-3.2 (emphasis added). As I explained to them, "[r]ealizing financial or other benefit from otherwise improper delay in litigation is not a legitimate interest of the client." *Id.* (emphasis added).

Rule 4-3.3 requires candor towards tribunals and proscribes attorneys from taking many of the actions Mr. Bleicher requested or expected me to do. These included, "mak[ing] a false statement of material fact or law to a tribunal," "fail[ing] to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client," and "permit[ing] any witness . . . to offer testimony or other evidence that the lawyer knows to be false." Fla. R. Pro.

# Exhibit 1

# The Law Offices of Michael Gulisano, PLLC

Cond. 4-3.3(a)(1); (2); (4). Mr. Bleicher does not understand, "[a] lawyer may refuse to offer evidence that the lawyer reasonably believes is false." Fla. R. Pro. Cond. 4-3.3(c).

Mr. Bleicher asked me to take actions contrary to Rule 4-3.4, which requires attorneys to deal fairly with opposing counsel. To that end, "[a] lawyer shall not *unlawfully obstruct another party's access to evidence or otherwise unlawfully alter, destroy, or conceal a document or other material* that the lawyer knows or reasonably should know is relevant to a pending . . . proceeding; *nor counsel or assist another person to do any such act*." Fla. R. Pro. Cond. 4-3.4(a) (emphasis added). "A lawyer shall not *fabricate evidence, counsel or assist a witness to testify falsely . . . .*" Fla. R. Pro. Cond. 4-3.4(b) (emphasis added). "A lawyer shall not *knowingly disobey an obligation under the rules of a tribunal . . . .*" Fla. R. Pro. Cond. 4-3.4(c) (emphasis added). "A lawyer shall not *intentionally fail to comply with a legally proper discovery request by an opposing party*." Fla. R. Pro. Cond. 4-3.4(d) (emphasis added).

Finally, Mr. Bleicher asked me to take actions contrary to Rule 4-4.1, which requires attorneys to be truthful in statements made to others. Consequently, a lawyer shall not knowingly "make a false statement of material fact or law to a third person" or "fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client . . . ." Fla. R. Pro. Cond. 4-4.1(a); (b). Therefore, Mr. Bleicher's assault on my motion to withdraw is without merit.

F. The November 20, 2015 Hearing: Mr. Bleicher Commits Perjury with Reckless Abandon

Mr. Bleicher states he "was requesting *to review what [I] was going to discuss* with Judge Goodman and *to make sure he was prepared for the hearing*." The fact Mr. Bleicher admits he wanted to "review" my in-court oral arguments is in line with his obsessive oversight and interference with the professional opinion of the attorneys he hires. *See* Fla. R. Pro. Cond. 4-5.4(d). To begin with, contrary to Mr. Bleicher's assertions, *he attends most if not all hearings in his cases*. In any event, since I did not want to be sanctioned and (at the time) I did not want Mr. Bleicher to be sanctioned, *my main goal following the October 19 telephonic hearing was to obtain the outstanding discovery, provide it as required by court order, and in doing so avoid the November 20 hearing.*

Mr. Bleicher knew about the possibility of the November 20 hearing via correspondence from me on October 19. Mr. Bleicher stated to me during a conversation that he would personally attend the hearing if it went forward. *I now know Mr. Bleicher never had any intention of providing discovery, so he knew since October 19 that the hearing would be taking place*. Even assuming Mr. Bleicher bought a plane ticket "last minute," *he does not submit anything to support it*, that decision was intentional. I have since come to learn that Mr. Bleicher lives an extravagant lifestyle and routinely spends thousands of dollars on a daily basis. In addition to being false, it is absurd that this wealthy individual, *who stiffed me out of $500*, was in any way damaged by purchasing a plane ticket to perjure himself in Federal Court. Finally, Mr. Bleicher intentionally filed the Lawsuit in Florida. *Mr. Bleicher's feigned outrage over being required to travel to Florida to prosecute a case he filed in Florida defies belief.*

*Mr. Bleicher's recitation of the November 20 hearing is pure fiction in its entirety.* This includes the false and wildly implausible allegations regarding statements made by the Court and myself. At no

## Exhibit 1

# The Law Offices of Michael Gulisano, PLLC

point did I say I was unfamiliar with the case. Rather, I recall saying something to effect that "I did not know *what* I was getting into." As stated, the "what" I was referring to was a client that not only would refuse to follow my advice but also seek to use my services to perpetuate a crime and fraud. At no point was I "chastised" by the Magistrate, nor did he ever state my "actions border on malpractice." I also urge you to obtain the transcript.

*Of the multitude of blatantly false, defamatory, and imaginary allegations spewed by this hateful man, Mr. Bleicher's claim that I "was ill-prepared" for the hearing might bother me the most.* Preparedness was not the problem; rather there *was no valid legal reason* for not providing the discovery, consisting largely of bank statements and internal company documents, which had been outstanding for several months by the date of the hearing. *See* Fla. R. Pro. Cond. 4-3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, *unless there is a basis for doing so that is not frivolous . . . .*") (emphasis added). Again, Mr. Bleicher was told this multiple times in advance of the hearing.

Mr. Bleicher did do a lot of speaking at the hearing. However, he did so on his own volition and because he fancies himself an attorney. I believe hijacking the hearing was Mr. Bleicher's intention all along. If I had known this in advance, I would have told him not to offer false testimony. *Quite frankly, if I had known in advance that he intended to steal the microphone, "Kanye West" me, and perjure himself in open court, I would not have driven down to Miami and wasted half a day for a fraudulent shyster like Mr. Bleicher.* I again note that the Court stated in advance that sanctions would be imposed against both Mr. Bleicher and I as counsel if it ruled in Mr. Bradley's favor. *At the conclusion of the hearing, the Court followed through and once again sanctioned Mr. Bleicher. See* Doc. No. 94. *Interestingly, the Court did not sanction me. Id.*

G. <u>Mr. Bleicher has Confused My Certificates of Service with his Tax Returns but Unlike his Falsified Returns, my Certificates hold up to an Audit</u>

For someone who has cheated the IRS out of millions of dollars in taxes, tricked schools out of millions of dollars in funds, infected dozens of people with HIV, and fabricated evidence in Federal Court, Mr. Bleicher is surprisingly liberal with his use of the word "fraud" and referring to things as "false." Federal Rule of Civil Procedure 5(a)(1)(d) provides that "a written motion," "must be served on every party." Rule 5(b)(1) provides in turn, "[i]f a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party." Rule 5(b)(2) states "[a] paper is served under this rule by . . . sending it by electronic means if the person consented in writing . . . ." Finally, anyone registered with a CM/ECF account must consent in writing to service by electronic transmission.

First, the Court did not order service be made on Mr. Bleicher directly. Second, Mr. Bleicher has been repeatedly made aware by several courts in different states that a corporation must be represented by counsel. Third, Mr. Bradley represents the defendants. Fourth, Mr. Bradley is registered with a CM/ECF account thereby consenting to electronic service. Consequently, the only individual entitled to notice in the Lawsuit at the time of any of my filings was Mr. Bradley. Moreover, service was allowed, and made, by electronic means. Finally, even if we assumed Mr. Bleicher were correct, *which the above conclusively demonstrates is not the case*, he neither alleges nor has he suffered any prejudice by the alleged failure to serve him with copies of pleadings.

Exhibit 1

# The Law Offices of Michael Gulisano, PLLC

Therefore, Mr. Bleicher's attack against the validity of my certificate of services is without merit.

H. <u>Mr. Bleicher Mistakenly Believes that a Prior Counsel's Continued Inclusion on a Service List Triggers an "Obligation to Notify the Bar of Ethical Issues with Other Attorneys"</u>

Florida Rule of Professional Conduct 4-8.3 states, "[a] lawyer having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the appropriate professional authority." Fla. R. Pro. Cond. 4-8.3(a). Contrary to Mr. Bleicher's delusions otherwise, other than Ms. Shambee, no Florida attorney involved in the Lawsuit did anything to justify such action.

*For a man who habitually avoids his obligations and then blames others for the consequences that result, Mr. Bleicher is obsessed with the supposed "obligations" of others.* Mr. Bleicher's final perjurious allegation is that I failed my "obligation to notify the bar of ethical issues with other attorneys." What is the supposed "ethical issues with other attorneys" Mr. Bleicher speaks of? *Ms. Jackson's "failure" to remove herself from the Lawsuit's service list after being "fired." In other words, Mr. Bleicher is upset that Ms. Jackson continued to receive electronic notifications regarding court filings after representation was terminated.* Once again, Mr. Bleicher neither alleges nor has he suffered any prejudice by Ms. Jackson's continued receipt of electronic service. However, more importantly, Ms. Jackson's continued receipt of filings is not an ethical violation. Therefore, Mr. Bleicher's allegations that I did not notify the Bar of "ethical issues" with other attorneys is without merit.

In conclusion, it should be abundantly clear that Mr. Bleicher is either (1) lying under oath or (2) delusional. *I respectfully submit that given his well-documented history of fraud, deceit, and deception, the former is the correct proposition*. Like me, you are probably wondering why Mr. Bleicher is not currently in a Federal penitentiary. I hope that one of the agencies included in this correspondence can correct that. In full disclosure, since he forced me to do the necessary investigation and compile the facts and evidence needed to do so, once these slanderous allegations are dispatched with, I will be filing suit against Mr. Bleicher and Ms. Shambee. Regardless, please do not hesitate to contact me with other questions concerning this matter. Thank you for your attention.

Sincerely,

*s/ Michael Gulisano*

Michael Gulisano, Esquire

enc.

cc:    Flava Works, Inc. c/o Philip Bleicher, Juneitha Shambee
       John Francis Bradley, Esquire
       Ursula Jackson, Esquire
       Matthew Zukowsky, Esquire

# Exhibit 1

# The Law Offices of Michael Gulisano, PLLC

Page 17 of 17

Joshua Sheskin, Esquire
Chicago Department of Public Health (under separate cover)
Rahm Emanuel, Major of Chicago (under separate cover)
Miami Department of Code Enforcement (under separate cover)
Tomas Regalado, Major of Miami (under separate cover)
Federal Bureau of Investigations (under separate cover)
Internal Revenue Service (under separate cover)
D.L. Campbell, Revenue Officer, Internal Revenue Service (under separate cover)
United States Department of Justice (under separate cover)
Loretta Lynch, United States Attorney General (under separate cover)
Lisa Madigan, Illinois Attorney General (under separate cover)
Pamela Bondi, Florida Attorney General (under separate cover)
Jamie Alistair Gonzalez, JAGGED Press (under separate cover)
Miami Herald (under separate cover)
Chicago Sun-Times (under separate cover)

# Exhibit 1



FlavaWorks
3526 South Prairie Ave. Chicago IL 60653
PO BOX 2495, Chicago IL 60690 ☼ www.FlavaWorks.com ☼ 305-438-9450 ☼ FAX: 305-438-9470 ☼ Toll Free: 1-877-352-8278

January 31, 2016

**SETTLEMENT DEMAND**

Michael Gulisano, Esquire
Fla. Bar No. 87573
5613 NW 117th Ave.
Coral Springs, FL 33076
561-271-1678
gulisanomichael@gmail.com

*Sent via U.S. Mail, Email*

**RE: Settlement Demand before Lawsuit and Complaint are filed**

Dear Mr. Gulisano:

As you know, I am the CEO of Flava Works, Inc. (a producer of online adult entertainment) (hereinafter "Flava Works") and I hired you as a Staff Attorney in October 2015. During that time I noticed that you have filed with the court and made claims that are false and untrue - unethical behavior for a licensed Florida Attorney.

We are prepared to file a complaint against you with the Florida Bar and a complaint against you in The United States District Court for the Southern District of Florida for Malpractice, Breach of Contract and other claims.

However, before we file these actions, we will offer you this **one time settlement offer**. If you reject our settlement offer, we expect to serve you with a complaint and commence litigation against you. *To reiterate: if you act promptly you will avoid being named as a Defendant in this public lawsuit.*

**To settle this matter now, we will accept a settlement on the following terms:**

**Settlement Offer: $7,500.00**
**Expiration of this Offer: February 3, 2016 at 5:00pm EDT (Close of Business), Payment arrangements can be made.**
**Settlement Terms: Complete Release of all claims (known and unknown)**

This offer is only available until February 3, 2016. At that time, the **settlement demand will increase** to *no less* than **$25,000.00 PLUS our attorney's** fees and all court costs.

We have a prepared Settlement Agreement and Release, which if you agree to settle before we commence litigation, we will send you for your review - or you may draft and share with us your own.

---

FlavaWorks
3526 South Prairie Ave. Chicago IL 60653
PO BOX 2495, Chicago IL 60690 ☼ www.FlavaWorks.com ☼ 305-438-9450 ☼ FAX: 305-438-9470 ☼ Toll Free: 1-877-352-8278

However, our deadline on a settlement agreement in terms is firm - **February 3, 2016 at 5:00pm EDT (Close of Business).**

If we do not have an agreement by then, you can expect that we will commence litigation and complaints against you in all and every available forum.

Sincerely,

Phillip Bleicher,
Chief Executive Officer
Flava Works
3526 South Prairie Ave
Chicago IL 60653
305-438-9450 Ext 305

Exhibit A
Exhibit 1



**FlavaWorks**
3526 South Prairie Ave, Chicago IL 60653
PO BOX 2495, Chicago IL 60690 ✿ www.FlavaWorks.com ✿ 305-438-9450 ✿ FAX: 305-438-9470 ✿ Toll Free: 1-877-352-8276

February 1, 2016

### SETTLEMENT DEMAND

Matthew Zukowsky
Fla. Bar No. 0112311
Association Financial Services
4770 Biscayne Blvd, Ste 700
Miami, FL 33137
mzukowsky@afslc.com
matthew.zukowsky@gmail.com

*Sent via U.S. Mail, Email*

**RE: Settlement Demand before Lawsuit and Complaint are filed**

Dear Mr. Zukowsky:

As you know, I am the CEO of Flava Works, Inc. (a producer of online adult entertainment) (hereinafter "Flava Works") and I hired you as a Staff Attorney in March 2015. During that time I noticed that you missed several court ordered deadlines, wiretapped phones with opposing counsel and have filed with the court and made claims that are false and untrue - unethical behavior for a licensed Florida Attorney.

We are prepared to file a complaint against you with the Florida Bar and a complaint against you in The United States District Court for the Southern District of Florida for Malpractice, Breach of Contract and other claims.

However, before we file these actions, we will offer you this **one time settlement offer**. If you reject our settlement offer, we expect to serve you with a complaint and commence litigation against you. *To reiterate: if you act promptly you will avoid being named as a Defendant in this public lawsuit.*

**To settle this matter now, we will accept a settlement on the following terms:**

**Settlement Offer: $17,500.00**
**Expiration of this Offer: February 3, 2016 at 5:00pm EDT (Close of Business), Payment arrangements can be made.**
**Settlement Terms: Complete Release of all claims (known and unknown)**

This offer is only available until February 3, 2016. At that time, the **settlement demand will increase** to *no less* than **$50,000.00 PLUS our attorney's** fees and all court costs.

---

**FlavaWorks**
3526 South Prairie Ave, Chicago IL 60653
PO BOX 2495, Chicago IL 60690 ✿ www.FlavaWorks.com ✿ 305-438-9450 ✿ FAX: 305-438-9470 ✿ Toll Free: 1-877-352-8276

We have a prepared Settlement Agreement and Release, which if you agree to settle before we commence litigation, we will send you for your review - or you may draft and share with us your own. However, our deadline on a settlement agreement in terms is firm - **February 3, 2016 at 5:00pm EDT (Close of Business).**

If we do not have an agreement by then, you can expect that we will commence litigation and complaints against you in all and every available forum.

Sincerely,

Phillip Bleicher,
Chief Executive Officer
Flava Works
3526 South Prairie Ave
Chicago IL 60653
305-438-9450 Ext 305

# Exhibit 1



**FlavaWorks**
3526 South Prairie Ave, Chicago IL 60653
PO BOX 2495, Chicago IL 60690 ☼ www.FlavaWorks.com ☼ 305-438-9450 ☼ FAX: 305-438-9470 ☼ Toll Free: 1-877-352-8276

February 4, 2016

The Florida Bar
Attorney/Consumer Assistance Program (ACAP)
651 East Jefferson Street
Tallahassee, Florida 32399-2300

RE: Complaint against Florida Attorney - Michael Gulisano,
Florida Bar # 87573

To Whom It May Concern:

I am writing today to file a formal complaint and ask that the Florida Bar open an investigation into the law practice of Michael Gulisano and his malpractice, unprofessional actions which has severely prejudiced our pending case in the Southern District of Florida, CASE NO. 14-23208-CIV-LENARD/GOODMAN

On October 5, 2015, I personally hired Michael Gulisano as a "PART-TIME STAFF ATTORNEY" and among other things, to represent Flava Works, Inc. in the above captioned matter. (See Exhibit #A – Craigslist Advertisement and "Congratulations Michael!" Email dated October 7, 2015)

**FAILURE TO COMMUNICATE WITH CLIENT**
A condition of Michael Gulisano's employment was communication –as our company is based in Chicago, Illinois, which is also where I personally reside, Mr. Gulisano was to keep me in the loop of all telephone calls, emails with opposing counsel in the above mentioned matter and I was to review all documents before they were sent off to opposing counsel or filed with the court.

From the onset – Mr. Gulisano's communication was lacking and unprofessional.

I first noticed this on November 4, 2015, when I received a subpoena from PNC Bank – stating that Mr. Gulisano had subpoenaed documents that would be sent directly to opposing counsel – without my knowledge or approval. (See Exhibit #B –email dated November 4, 2015).

Additional - his failure to address other litigation, as our Staff Attorney, he was hired to handle all in-house litigation – however when I emailed him about other copyright infringement cases - on a new case – he simply ignored my email. (See Exhibit #C - email dated November 4, 2015).

**IMPROPER COMMUNCATION WITH JUDGE**
Mr. Gulisano emailed the Judge directly – which he was reprimand by the Judge for doing so – on the docket – which severely prejudiced us and made us look unprofessional. (See Exhibit #D –email dated November 4, 2015).

**ERRONEOUS BILLING**
As a Staff Attorney, we instructed him that we pay twice per month, specifically we stated upon



**FlavaWorks**
3526 South Prairie Ave, Chicago IL 60653
PO BOX 2495, Chicago IL 60690 ☼ www.FlavaWorks.com ☼ 305-438-9450 ☼ FAX: 305-438-9470 ☼ Toll Free: 1-877-352-8276

hiring him that "Our payroll is done twice a month on the 20th (for the 1-15th) and the 5th (for the 16-30)". (See Exhibit #A – Craigslist Advertisement and "Congratulations Michael!" Email dated October 7, 2015).

On or about November 18, 2015, Mr. Gulisano contacted Juneitha Shambee who is employed as a Staff Attorney in Flava Works' Chicago, Illinois office and stated his concern and reservations about attending a hearing in front of Judge Goodman on Friday, November 20, 2015 – stating "why should I attend when I haven't even been paid yet". For Mr. Gulisano to voice his concern that he had not been paid to his coworkers – implying that he had submitted the required detailed invoices and Flava Works' was failing to pay him for his time - was false.

Shortly after Ms. Shambee brought this to my attention, I emailed him requesting an invoice. (See Exhibit #E –email dated November 18, 2015).

Finally, on November 19, 2015, he submitted the attached invoice. (See Exhibit #F –Invoice dated November 19, 2015).

This invoice is vague and riddled with numerous errors and untruths. For instance, he incorrectly bills for a hearing in the future which has not happened (November 20, 2015) and he bills for a span of over a month – from October 10, 2015 to November 19, 2015 "Multiple correspondence with Defendant's counsel, Court, Co-Counsel, and Client" – eleven hours.

After he submitted the invoice – he was asked to submit a detailed and corrected invoice, which should contain the hours he worked, what cases he worked on and what he did in detail. This was also outlined in our hiring agreement which specifically stated "we just need an invoice of your hours you worked and for what cases (we will need you to keep a log of all the hours you work on a case for billing purposes in regards to settlements and judgements)." (See Exhibit #A – Craigslist Advertisement and "Congratulations Michael!" Email dated October 7, 2015)

As of February 1, 2016, Mr. Gulisano has only submitted the attached invoice dated November 19, 2016, he has not submitted the corrected detailed invoice that was requested from him, and furthermore submitted a false statement on December 15, 2015 claiming he was owed $1,000.00 (See Exhibit #G – NOTICE OF ATTORNEY'S CHARGING LIEN dated December 15, 2015).

**FAILURE TO FOLLOW FLORIDA BAR RULES -**
**FILED MOTION TO WITHDRAW WITHOUT CLIENT KNOWLEDGE**
Unbeknownst to me and without my permission, Michael Gulisano filed a Motion to withdraw on or about November 20, 2015, one day before he and I were to appear before Judge Goodman as stated above. (See Exhibit #H – MOTION TO WITHDRAW AS PLAINTIFF'S COUNSEL dated November 19, 2015).

I live in Chicago, Illinois and I hired Michael Gulisano to represent our corporation – I had no intention of flying to Miami on November 20, 2015. However, throughout the day on November 19, 2015 I was requesting to review what Mr. Gulisano was going to discuss and review with Judge Goodman and to make sure he was prepared for the hearing - I called and emailed Mr. Gulisano several times in order to review what he was going to say for the hearing. Mr. Gulisano did not return any emails or phone calls.

# Exhibit 1



I was worried that Mr. Gulisano was not going to show up and Judge Goodman would sanction our company. In fact, later that night as I was checking Pacer - I learned Mr. Gulisano filed a Motion to withdraw. On that motion he stated he consulted with us - which was false – he had not emailed, or telephoned me about withdrawing.

Mr. Gulisano's motion was denied by the court – however the problem is that he claimed in his Certificate of Service that he notified the client by U.S. Mail – he did not.

Mr. Gulisano also made two false claims in his motion to withdraw as counsel:

1) He falsely claimed that *"The Plaintiff has refused to follow the advice of the undersigned, resulting in irreconcilable differences."* This is false and he offers (and cannot prove) no emails or phone communications where we refused to follow his advice or where we had any irreconcilable differences.

2) He falsely claimed *"the undersigned has developed a conflict of interest that precludes further representation of the Plaintiff in this matter."* He offers no details on this and there is no email or phone communication between Mr. Gulisano and Flava Works, Inc.

Mr. Gulisano submitted this on November 19, 2015 electronically – but there is no communication – by email, phone or U.S. Mail where Mr. Gulisano submitted a copy of the Motion to Withdraw. I believe this is in violation of Florida Bar rules – and/or Federal Rules of Civil Procedure – where an Attorney must first notify the client of their intent to withdraw as attorney. Mr. Gulisano did not notify us in any way, period.

**NOVEMBER 20, 2015 HEARING**
As stated above, I had no intention of attending this hearing, however because Mr. Gulisano refused to return any of my emails or phone calls – and because I learned (by thankfully checking Pacer the evening of November 19, 2015) that Mr. Gulisano filed a fallacious Motion to Withdraw as counsel, I quickly booked a flight for Miami, FL and attended the hearing (incurring large airfare costs for purchasing a last minute ticket!). At the hearing Mr. Gulisano – made several statements in open court before Judge Goodman that he didn't know the extent of the case and was not prepared to represent Flava Works, - claiming that Opposing Counsel should be more cooperative as he tries to catch up with the case.

Judge Goodman chastised Mr. Gulisano saying that his actions border on malpractice and he has an ethical and fiduciary responsibility to represent the client – which includes reading all pleadings and documents.

Mr. Gulisano was ill-prepared for this hearing – even though he had several weeks to do so. I would encourage you to pull the transcript of this hearing and you will hear that I ended up speaking much more in open court than my attorney Mr. Gulisano – because he was not prepared, unorganized and unprofessional. This type of unprofessionalism is grounds for a Malpractice claim against him.



**MAKING FALSE STATEMENTS**
In Mr. Gulisano's December 15, 2016 filing, Mr. Gulisano stated that he was owed $1,000.00 for attorney's fees – however this statement is untrue as stated above. Mr. Gulisano has only submitted one invoice which was for $500.00 and that invoice he was instructed to re-submit with details instead of vague descriptions – which he never re-submitted. *(See Exhibit #F –Invoice dated November 19, 2015).*

**FILING FALSE CERTFICATE OF SERVICES**
On this same December 15, 2015 filing, Mr. Gulisano stated that in his certificate of service that he notified all parties involved – however we never received this notice by U.S. Mail as required and stated.

**OBLIGATION TO NOTIFY THE BAR OF ETHICAL ISSUES WITH OTHER ATTORNEYS**
I believe there is a Florida Bar Rule that requires current attorneys to notify the Florida Bar of ethical violations made by other attorneys – Mr. Gulisano failed to do so. In regards to Attorney Ursala Jackson – who is listed as an Attorney on this case mentioned above – she was terminated nearly a year ago – and she has failed to remove herself from the docket – but she still receives communication from opposing counsel and CMF. Mr. Gulisano was told several times about her scandalous behavior but I believe Mr. Gulisano took no action with the Florida Bar,

In closing, I urge you to open up an investigation into Mr. Gulisano's attorney misconduct and especially for his unprofessional behavior, erroneous billing, and nefarious filings which I believe violate several of the Florida Bar Rules and Federal Rules of Civil Procedure

Should you have any questions, need any additional documents or sworn statements, please do not hesitate to contact me at 305-438-9450 Ext 305 or by mail at the address below.

Sincerely,

Phillip Bleicher
CEO
Flava Works, Inc.
3526 South Prairie Ave
Chicago IL 60653

# Exhibit 1



**FlavaWorks**
3526 South Prairie Ave. Chicago IL 60653
PO BOX 2495, Chicago IL 60690 ☼ www.FlavaWorks.com ☼ 305-438-9450 ☼ FAX: 305-438-9470 ☼ Toll Free: 1-877-352-8276

February 4, 2016

The Florida Bar
Attorney/Consumer Assistance Program (ACAP)
651 East Jefferson Street
Tallahassee, Florida 32399-2300

RE: Complaint against Florida Attorney - Matthew Zukowsky,
Florida Bar # 0112311

To Whom It May Concern:

I am writing today to file a formal complaint and ask that the Florida Bar open an investigation into the law practice of Matthew Zukowsky and his malpractice, unprofessional actions which has severely prejudiced our pending cases in the Southern District of Florida, CASE NO. 114-cv-23208-JAL, 115-cv-20245-MGC, and 115-cv-21592-MGC.

On February 24, 2015, Matthew Zukowsky applied for the position and was subsequently hired for the position of "PART-TIME STAFF ATTORNEY" and among other things, to represent Flava Works, Inc. in the above captioned matters – all involving Flava Works, Inc. vs A4A Reseau, Inc., A4a Network, Inc., And Marc Parent.

**ATTORNEY MISCONDUCT - MISSING COURT DEADLINES**
Mr. Zukowsky was hired to represent Flava Works in the above stated actions and he was to file his appearance and file Defendants' Motion to Set Aside Dismissal or Show Cause which was previously drafted. All he needed to do was review the motion, sign and file in court by close of business on March 4, 2015. *(See attached Exhibit A).*

Mr. Zukowsky, through his ignorance, thought he could file these documents online via CM/ECF, however he had not completed the mandatory training or was given an ID to file by March 4, 2015 when the documents were required to be filed.

As a Florida Licensed Attorney – Mr. Zukowsky should have looked further into the requirements of filing electronically before committing to file electronically instead of filing the documents on March 4, 2015 in person with the court. By failing to review the requirements in time, Mr. Zukowsky was unable to file the document in the court online, and he physically filed them the next date on March 5, 2015 late. Because of his late filing, the court denied the motions due to the fact that certain criteria were not met. Therefore, with that denial because of Mr. Zukowsky's actions of filing the motion and his appearance late, Flava Works, Inc. was ordered to pay $28,060.57 in attorney's fees to opposing counsel in the case 114-cv-23208-JAL. *(See attached Exhibit B)*

This is not the first deadline or error Mr. Zukowsky made with the United States District Court Southern District of Florida.

Another example of Mr. Zukowsky's failure to meet deadlines and file court documents on time was his

---

**FlavaWorks**
3526 South Prairie Ave. Chicago IL 60653
PO BOX 2495, Chicago IL 60690 ☼ www.FlavaWorks.com ☼ 305-438-9450 ☼ FAX: 305-438-9470 ☼ Toll Free: 1-877-352-8276

failure to respond to emails from the opposing counsel regarding discovery issues on June 19, 2015 and July 23, 2015. Mr. Zukowsky never responded to these emails and phone calls and furthermore never informed Flava Works of these issues until opposing counsel filed a motion for sanctions and additional attorney's fees for the failure to respond to these discovery issues. *(See attached Exhibit C)*

Another example was on July 14, 2015, Mr. Zukowsky's also failed to file a motion to reconsider before the deadline date of July 14, 2015 in order to avoid the judgement entered against Flava Works, Inc. in this matter. Instead – filing this the next day of July 15, 2015. *(See attached Exhibit D)*

This type of unorganized unprofessionalism should be grounds for disbarment at the very least and Mr. Zukowsky's should be made to pay for the attorney's fees of opposing counsel for his continuous ignorance.

**FAILURE TO COMMUNICATE WITH CLIENT**
A condition of Matthew Zukowsky's employment was communication –as our company is based in Chicago, Illinois, which is also where I personally reside, Mr. Zukowsky was to keep me in the loop of all telephone calls, emails with opposing counsel in the above mentioned matter and I was to review all documents before they were sent off to opposing counsel or filed with the court.

From the onset – Mr. Zukowsky's communication was lacking and unprofessional.

I first noticed this on April 6, 2015, when I received an email from Mr. Zukowsky asking me if I had seen an order that came from the court nearly a week earlier on March 31, 2015. How would I of seen that order when only our attorney Mr. Zukowsky is on the email distribution list of CM/ECF – as I am not an attorney – I do not receive these emails. *(See attached Exhibit E)*

**ATTORNEY MISCONDUCT – FAILURE TO CONFER WITH CLIENT**
On June 26, 2015, Mr. Zukowsky Agreed to a hearing on July 20, 2015 that required my presence in person, however he did not consult with me prior to this. I live in Chicago, Illinois and must fly to Miami, FL for any required court hearings.

When confronted about agreeing with opposing counsel and the court – Mr. Zukowsky's response was "They called me and said they absolutely needed an answer right then and there." I find this hard to believe in civil litigation – if the client lives out of state, there should be some leniency for them to be consulted on available dates to attend hearing in person. *(See attached Exhibit F)*

**WIRETAPING**
I never gave Mr. Zukowsky permission to record my telephone calls and I am confident opposing counsel never gave him permission either – however on July 14, 2015, Mr. Zukowsky emailed me copies of two telephone calls he had with opposing counsel John F. Bradley – claiming that since he works for a collection company he was permitted to record his telephone calls without the other parties' consent. I am not an attorney but I searched the law online and found that "Florida's wiretapping law is a "two-party consent" (Fla. Stat. ch. 934.03) – which I guess means both parties must consent to being recorded.

Anyway, Mr. Zukowsky emailed me these audio recordings and told me to listen to them, which I did. It does

---

Exhibit 1

**FlavaWorks**
3526 South Prairie Ave, Chicago IL 60653
PO BOX 2435, Chicago IL 60690 ☼ www.FlavaWorks.com ☼ 305-438-9450 ☼ FAX: 305-438-9470 ☼ Toll Free: 1-877-352-8276

not portray Mr. Zukowsky in a positive light – first he sounds like a coward who is weak, second it sounds like he did something wrong and he was guilty of not conferring with opposing counsel. Shortly thereafter, opposing counsel filed motions asking for sanctions and attorney's fees saying our attorney Mr. Zukowsky failed to meet and confer under the Florida Bar rules.

For your review, I have created a private link via dropbox which contains these recorded phone calls. They are available here: https://www.dropbox.com/sh/1liw6joq1c1bqtx/AACbn9Q-ayUF0X3W2J-VIIfca?dl=0

I assume opposing counsel is unaware of these recorded conversations, and if he were to learn of them he may file his own complaint with the Florida Bar over professional misconduct.

**FAILURE TO FOLLOW FLORIDA BAR AND LOCAL RULES**
On several occasions Mr. Zukowsky submitted documents on our behalf which were incorrect or formatted inappropriately – making Flava Works, Inc. look unorganized and unprofessional.

For example Mr. Zukowsky filed on or around April 21, 2015 and the clerk responded on the docket: "Clerks Notice to Filer re [47] Notice (Other). Proposed Order Docketed as Main Document; CORRECTIVE ACTION REQUIRED - Filer must File a Notice of Striking, then resubmit the proposed order as instructed in the CM/ECF Administrative Procedures. Please see FLSD website for forms. (cqs)" *(See attached Exhibit G)*

This is only one of several misfiling's Mr. Zukowsky had filed. Reviewing the dockets for the above mentioned cases reveals several of these misfiling's and failure to follow local rules.

**ERRONEOUS AND DECEPTIVE BILLING PRACTICES**
As a Staff Attorney, we instructed him that we pay twice per month, specifically we stated upon hiring him that *"Our payroll is done twice a month on the 20th (for the 1-15th) and the 5th (for the 16-30)"*. *(See attached Exhibit H)*

On or about March 17, 2015, Mr. Zukowsky submitted his first invoice to Flava Works, Inc. which he claimed that he 'edited' documents. Subsequent invoices dated May 14, 2015, June 5, 2015, etc. all are vague and riddled with numerous errors and untruths in which Mr. Zukowsky claimed he performed work which he had not. *(See attached Exhibit I)*

Flava Works hired two additional outside attorneys, Judy Marsie-Hazen and Alexis Read which were hired to draft and research motions. After they would collectively prepare these motions and research, they would submit this to Mr. Zukowsky for his approval and for him to add his signature block and file. *(See attached Exhibit J)*

However, on several occasions, Mr. Zukowsky was unaware on how to add the signature block and asked that Flava Works, Inc. do it for him. It should not be the client's responsibility to add a signature block to a legal document for that attorney to file - but we did several times at his request. Please investigate this matter to see if that is within the Florida Bar Rules – as I suspect they are not. Furthermore, Mr. Zukowsky would not review the prepared motions but would simplify file them.

---

**FlavaWorks**
3526 South Prairie Ave, Chicago IL 60653
PO BOX 2435, Chicago IL 60690 ☼ www.FlavaWorks.com ☼ 305-438-9450 ☼ FAX: 305-438-9470 ☼ Toll Free: 1-877-352-8276

Attached please find copies of invoices from Judy Marsie-Hazen and Alexis Read which correctly claim and take credit for researching, drafting and preparing several motions which were in turn sent to Mr. Zukowsky. Mr. Zukowsky would then improperly bill Flava Works for the same work which was billed and paid to both Judy Marsie-Hazen and Alexis Read. Taking credit on several invoices for work he had not performed and which Mr. Zukowsky has no attorney/client work product to show for it *(See attached Exhibit K)*

Finally, I have attached copies of Mr. Zukowsky's invoices in which Mr. Zukowsky billed in whole hour increments instead of fifteen or half hour increments. *(See attached Exhibit L)*

**FILING FALSE CERTFICATE OF SERVICES**
On several instances, Mr. Zukowsky, filed documents with the court and falsified the certificate of Service, saying he notified opposing counsel and Flava Works, Inc. of his filings – stating that in his certificate of service that he notified all parties involved – however we never received notices by U.S. Mail as required and stated. *(See attached Exhibit M)*

**OBLIGATION TO NOTIFY THE BAR OF ETHICAL ISSUES WITH OTHER ATTORNEYS**
I believe there is a Florida Bar Rule that requires current attorneys to notify the Florida Bar of ethical violations made by other attorneys – Mr. Zukowsky failed to do so. In regards to Attorney Ursala Jackson – who is listed as an Attorney on this case mentioned above – she was terminated nearly a year ago – and she has failed to remove herself from the docket – but she still receives communication from opposing counsel and CMF. Mr. Gulisano was told several times about her scandalous behavior but I believe Mr. Zukowsky took no action with the Florida Bar. *(See attached Exhibit N)*

In closing, I urge you to open up an investigation into Mr. Zukowsky's attorney misconduct and especially for his unprofessional behavior, erroneous billing, and nefarious filings which I believe violate several of the Florida Bar Rules and Federal Rules of Civil Procedure

Should you have any questions, need any additional documents or sworn statements, please do not hesitate to contact me at 305-438-9450 Ext 305 or by mail at the address below.

Sincerely,

Phillip Bleicher
CEO
Flava Works, Inc.
3526 South Prairie Ave
Chicago IL 60653

Exhibit 1



**FOR IMMEDIATE RELEASE**

CONTACT:
Phillip Bleicher
Flava Works
305-438-9470
Legal@FlavaWorks.com

### FLAVAWORKS SUES ATTORNEY MICHAEL GULISANO FOR MALPRACTICE
*Takes aggressive legal stand against incompetent attorneys!*

**MIAMI (FEBRUARY 4, 2016)** – Flava Works has announced today that it is filing a lawsuit against its' former attorney, Michael Gulisano for malpractice claims, filing false documents and making false claims. Michael Gulisano was hired to represent Flava Works in its' action against Adam4Adam.com – however Flava Works' learned of several nefarious filings and false statements made by Florida Attorney Michael Gulisano which lead Flava Works to fire and file a lawsuit against him.

In addition, Flava Woks has filed a formal complaint with the Florida Bar and recommended that they take action and suspend or terminate Michael Gulisano's law license in the State of Florida.

"For too long we have hired attorneys who we entrusted with our copyright litigation – and for one of these attorney's to file false documents and make false claims under our good name must stop here. That's why we're taking a stand and filing this lawsuit" Says Chief Executive Officer, Phillip Bleicher

For more information, visit http://www.FlavaWorks.com/legal/

###



**FOR IMMEDIATE RELEASE**

CONTACT:
Phillip Bleicher
Flava Works
305-438-9470
Legal@FlavaWorks.com

### FLAVAWORKS SUES ATTORNEY MATTHEW ZUKOWSKY FOR MALPRACTICE
*Takes aggressive legal stand against incompetent attorneys!*

**MIAMI (FEBRUARY 4, 2016)** – Flava Works has announced today that it is filing a lawsuit against its' former attorney, Matthew Zukowsky for malpractice claims, missing court ordered deadlines, erroneous billing, wiretapping and making false claims. Matthew Zukowsky was hired to represent Flava Works in its' action against Adam4Adam.com – however Flava Works' learned of several nefarious filings and false statements made by Florida Attorney Matthew Zukowsky which lead Flava Works to fire and file a lawsuit against him.

In addition, Flava Woks has filed a formal complaint with the Florida Bar and recommended that they take action and suspend or terminate Matthew Zukowsky's law license in the State of Florida.

"For too long we have hired attorneys who we entrusted with our copyright litigation – and for one of these attorney's to wiretap opposing counsel, and miss several court ordered deadlines under our good name must stop. That's why we're taking a stand and filing this lawsuit" Says Chief Executive Officer, Phillip Bleicher

For more information, visit http://www.FlavaWorks.com/legal/

###

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Flava Works, Inc. and )
Phillip Bleicher, )
                         )
         Plaintiffs, )      Case No. _____
                         )
      v. )      **COMPLAINT**
                         )
                         )      **JURY TRIAL DEMANDED**
Michael Gulisano )      **CLAIM AMOUNT IN EXCESS**
                         )      **OF $75,000.00**
                         )
         Defendants. )

**COMPLAINT**

Plaintiffs, FLAVA WORKS, INC. (herein "FLAVA" or "FWI"), hereby complains against Defendant, MICHAEL GULISANO, (herein "GULISANO") and, demanding trial by jury, seeks relief as follows:

**NATURE OF CASE**

1. This is a legal malpractice case. Through this Complaint, FWI seeks to recover the more than $38,234 of damages cause by Defendant's lack of representation. MICHAEL GULISANO's lawyering failures were both pervasive and egregious. He materially contributed to the court's order of judgment against FWI in case number 14-cv-23208 in the Southern District of Florida (herein "SDFL"), causing FWI to be liable for the judgment amount of $38,234 and a subsequent stay on FWI's subsequent case under 15-cv-20345. With its subsequent case stayed under 15-cv-20345, FWI has been unable to seek the redress from the court, continues to suffer financially in regards to FWI's damaged property and has incurred further costs and damages as a result of the Defendant's misrepresentation to which FWI detrimentally relied. MICHAEL GULISANO must be held accountable for the damages he caused.

**PARTIES**

2. FLAVA WORKS, INC. is an Illinois corporation that maintains it principal place of business in Chicago, Illinois. At all relevant times to this action, FWI was a Florida corporation that held its principal place of business in Chicago, Illinois. FWI operated as a production company which produced adult content and distributed its products through various distribution outlets.

3. MICHAEL GULISANO is an attorney, licensed to practice in law in Florida, Bar Number 87573. At all times relevant, MICHAEL GULISANO, upon information and belief, engaged in the practice of law in Florida.

**JURISDICTION AND VENUE**

4. This court is vested with jurisdiction of this case pursuant to Fla. Stat. §48.193.

5. Venue is proper in this court pursuant to Fla Stat. §47.011.

**FACTS**

6. Opposing parties in case number 14-v-23208 (herein "subject case") file a motion in the previously closed case, causing FWI the need for legal representation in Florida.

7. FWI filed a motion for extensions of time to respond to the opposing parties' motion due to the fact that FWI was pro se and could not proceed pro se under Florida laws.

8. FWI was granted the motion and continued to seek representation.

9. FWI placed an advertisement in the classifieds on Craigslist.com for a "Part

# Exhibit 1

Time Attorney Wanted for Copyright Infringement Cases" on or about late June 2015.

10. MICHAEL GULISANO answered the advertisement by applying for the position on or about July 9, 2015. He was later retained by FWI on October 9, 2015.

11. MICHAEL GULISANO informed FWI that he was licensed in Florida and that he was licensed in the SDFL.

12. FWI informed MICHAEL GULISANO that he needed to completely communicate with FWI in all matters, emails and communications

13. Furthermore, MICHAEL GULISANO billed FWI for work not performed by GULISANO demanding payment of thereof.

14. MICHAEL GULISANO also filed several documents with the court which were untrue and contained untrue statements of fact.

15. MICHAEL GULISANO also failed to adequately prepare for a planned hearing on November 20, 2015,

**FIRST CLAIM FOR RELIEF**

**(Breach of Contract: MICHAEL GULISANO)**

16. The allegations in paragraphs 1-15 above are incorporated herein by reference.

17. MICHAEL GULISANO, upon accepting employment with FWI, and more specifically, the case in the subject case, created a contract with FWI to provide competent legal representation.

18. MICHAEL GULISANO, by creating a contract with FWI, owed a duty of competence and diligence to FWI. FWI detrimentally relied on the agreement between FWI and GULISANO and MICHAEL GULISANO was fully aware of FWI's reliance.

19. MICHAEL GULISANO, by failing to file all necessary documents in a timely manner, filing erroneous documents and stating untrue facts in documents filed, placing FWI in a sensitive place with this matter due to the status of the case at the time and the upcoming deadlines in the case, failed to fulfill that duty causing damages to FWI.

20. Due to MICHAEL GULISANO breach of contract with FWI, FWI incurred additional costs and attorney fees, including a judgment from the court in the amount in excess of $38,234 for the opposing parties' attorney fees.

**SECOND CLAIM FOR RELIEF**
**(Professional Negligence: MICHAEL GULISANO)**

21. The allegations on paragraphs 1-20 are incorporated herein by reference.

22. MICHAEL GULISANO owed a duty to FWI to provide competent and diligent legal representation for FWI.

23. The duties owed by MICHAEL GULISANO include, but are not limited to:

a) To timely and accurately file all necessary documents with the court upon the acceptance of the duty to do so.

b) To timely communicate with FWI the status of the case and to answer any questions or address and concerns of FWI in a timely manner.

c) To competently and timely advise FWI during the duration of the legal representation.

d) To fully and promptly advise FWI of its obligation to provide all necessary documentation.

# Exhibit 1

24. Through the conduct alleged in this Complaint, GULISANO breached his duty of both ordinary and exceptional care and diligence to FWI.

25. As a proximate cause of GULISANO breach, FWI has suffered injury and damages in the principal amount of $38,234, plus interest, attorney fees and costs.

**THIRD CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty: MICHAEL GULISANO)**

26. The allegations in paragraphs 1-25 are incorporated herein by reference.

27. As legal counsel for FWI, MICHAEL GULISANO owed FWI an unqualified fiduciary duty of loyalty, due care and good faith. This duty required, at a minimum, that he (a) take all action legally necessary and appropriate to protect FWI's interest in the case numbered 14-cv-23208, (b) refrain from conduct that could expose FWI to unnecessary or unreasonable financial harm, and (c) act solely in FWI's best interests.

28. Throughout the subject case, MICHAEL GULISANO representation of FWI was tainted by misrepresentation, non-communication and untimeliness that prevented FWI from receiving the full benefit of zealous legal representation to which it was entitled.

29. Through the conduct alleged in this Complaint, MICHAEL GULISANO has breach his fiduciary duty to FWI, as a proximate result of which FWI has suffered injury and damages in the principal amount in excess of $38,234, plus interest, attorney fees and costs.

30. If it is determined that the conduct of MICHAEL GULISANO is willful and malicious, or manifests a knowing and reckless indifference toward, and a disregard of FWI's rights, punitive damages in an amount equal to at least three hundred percent (300%) of FWI's proven compensatory damages should be awarded.

WHEREFORE, FWI demands (a) trial by jury, (b) judgement against MICHAEL GULISANO for compensatory damages in the principal amount in excess of $38,234, punitive damages, interest, attorney fees, costs and (c) such further relief as this Court deems just.

DATED: _____

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| Flava Works, Inc. and | ) | |
| Phillip Bleicher, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. _____ |
| | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| MATTHEW ZUKOWSKY | ) | **CLAIM AMOUNT IN EXCESS** |
| | ) | **OF $75,000.00** |
| | ) | |
| Defendants. | ) | |

### COMPLAINT

Plaintiffs, FLAVA WORKS, INC. (herein "FLAVA" or "FWI"), hereby complains against Defendant, MATTHEW ZUKOWSKY, (herein "ZUKOWSKY") and, demanding trial by jury, seeks relief as follows:

### COMPLAINT

Plaintiffs, FLAVA WORKS, INC. (herein "FLAVA" or "FWI"), hereby complains against Defendant, MATTHEW ZUKOWSKY, (herein "ZUKOWSKY") and, demanding trial by jury, seeks relief as follows:

### NATURE OF CASE

1. This is a legal malpractice case. Through this Complaint, FWI seeks to recover the more than $38,000 of damages cause by Defendant's lack of representation. MATTHEW ZUKOWSKY's lawyering failures were both pervasive and egregious. He materially contributed to the court's order of judgment against FWI in case number 14-cv-23208 in the Southern District of Florida (herein "SDFL"), causing FWI to be liable for the judgment amount of $38,234 and a

subsequent stay on FWI's subsequent case under 15-cv-20345. With its subsequent case stayed under 15-cv-20345, FWI has been unable to seek the redress from the court, continues to suffer financially in regards to FWI's damaged property and has incurred further costs and damages as a result of the Defendant's misrepresentation to which FWI detrimentally relied. MATTHEW ZUKOWSKY must be held accountable for the damages he caused.

### PARTIES

2. FLAVA WORKS, INC. is an Illinois corporation that maintains it principal place of business in Chicago, Illinois. At all relevant times to this action, FWI was a Florida corporation that held its principal place of business in Chicago, Illinois. FWI operated as a production company which produced adult content and distributed its products through various distribution outlets.

3. ZUKOWSKY is an attorney, license to practice in law in Florida. At all times relevant, ZUKOWSKY, upon information and belief, engaged in the practice of law in Florida.

### JURISDICTION AND VENUE

4. This court is vested with jurisdiction of this case pursuant to Fla. Stat. §48.193.

5. Venue is proper in this court pursuant to Fla Stat. §47.011.

### FACTS

6. Opposing parties in case number 14-v-23208 (herein "subject case") file a motion in the previously closed case, causing FWI the need for legal representation in Florida.

7. FWI filed a motion for extension of time to respond to the opposing parties' motion due to the fact that FWI was pro se and could not proceed pro se under Florida laws.

8. FWI was granted the motion and continued to seek representation.

9. FWI placed an advertisement in the classifieds on Craigslist.com for a "Part Time Attorney Wanted for Copyright Infringement Cases" on or about February 2015.

10. ZUKOWSKY answered the advertisement by applying for the position on or about February 24, 2015. He was later retained by FWI on March 3, 2015.

# Exhibit 1

11. ZUKOWSKY informed FWI that he was licensed in Florida and that he was licensed in the SDFL.

12. FWI informed ZUKOWSKY that it needed a document filed on or before March 4, 2015. ZUKOWSKY stated that he would be able to do so. On March 3, 2015, FWI forward the previously drafted document that needed to be filed in court by March 4, 2015 to ZUKOWSKY for review, signature and filing.

13. ZUKOWSKY did not inform FWI that he was not able to file though the SDFL electronic filing system.

14. ZUKOWSKY received an email on MARCH 5, 2015 that he was not registered to electronically file documents on the court's system.

15. ZUKOWSKY, by not looking further into the requirements of filing, failed to in timely manner receive the message. By failing to review the message in time, ZUKOWSKY was unable to file the document in the court, physically since the court had closed for the day by time the message was reviewed.

16. Therefore, ZUKOWSKY physically filed the documents on the following day, March 5, 2015.

17. After filing the documents, the court denied the motions due to the fact that certain criteria were not met.

18. Furthermore, ZUKOWSKY billed FWI for work not performed by ZUKOWSKY demanding payment of thereof.

19. ZUKOWSKY also failed to respond to emails from the opposing counsel regarding discovery issues on June 19, 2015 and July 23, 2015.

20. ZUKOWSKY also failed to file a motion to reconsider before the deadline date of July 14, 2015 in order to avoid the judgement entered against FWI in this matter.

### FIRST CLAIM FOR RELIEF
**(Breach of Contract: MATTHEW ZUKOWSKY)**

21. The allegations in paragraphs 1-20 above are incorporated herein by reference.

22. ZUKOWSKY, upon accepting employment with FWI, and more specifically, the case in the subject case, created a contract with FWI to provide competent legal representation.

23. ZUKOWSKY, by creating a contract with FWI, owed a duty of competence and diligence to FWI. FWI detrimentally relied on the agreement between FWI and ZUKOWSKY and ZUKOWSKY was fully aware of FWI's reliance.

24. ZUKOWSKY, by failing to file all necessary documents in a timely manner, placing FWI in a sensitive place with this matter due to the status of the case at the time and the upcoming deadlines in the case, failed to fulfill that duty causing damages to FWI.

25. ZUKOWSKY, by failing to file his appearance and the forwarded documents needed to be filed in the subject case and failing to advise FWI that he was unable to file on the SDFL court's electronic filing systems in a timely manner, placed a hardship on FWI that left it liable on a judgement entered by the court.

26. Due to ZUKOWSKY's breach of contract with FWI, FWI incurred additional costs and attorney fees, including a judgment from the court in the amount in excess of $38,234 for the opposing parties' attorney fees.

### SECOND CLAIM FOR RELIEF
**(Professional Negligence: MATTHEW ZUKOWSKY)**

27. The allegations on paragraphs 1-26 are incorporated herein by reference.

28. ZUKOWSKY owed a duty to FWI to provide competent and diligent legal representation for FWI.

29. The duties owed by ZUKOWSKY include, but are not limited to:

    a) To timely and accurately file all necessary documents with the court upon the

# Exhibit 1

acceptance of the duty to do so.

b) To timely communicate with FWI the status of the case and to answer any questions or address and concerns of FWI in a timely manner.

c) To competently and timely advise FWI during the duration of the legal representation.

d) To fully and promptly advise FWI of its obligation to provide all necessary documentation.

30. Through the conduct alleged in this Complaint, ZUKOWSKY breached his duty of both ordinary and exceptional care and diligence to FWI.

31. As a proximate cause of ZUKOWSKY's breach, FWI has suffered injury and damages in the principal amount of $38,234, plus interest, attorney fees and costs.

### THIRD CLAIM FOR RELIEF
**(Breach of Fiduciary Duty: MATTHEW ZUKOWSKY)**

32. The allegations in paragraphs 1-31 are incorporated herein by reference.

33. As legal counsel for FWI, ZUKOWSKY owed FWI an unqualified fiduciary duty of loyalty, due care and good faith. This duty required, at a minimum, that he (a) take all action legally necessary and appropriate to protect FWI's interest in the case numbered 14-cv-23208, (b) refrain from conduct that could expose FWI to unnecessary or unreasonable financial harm, and (c) act solely in FWI's best interests.

34. Throughout the subject case, ZUKOWSKY's representation of FWI was tainted by misrepresentation, non-communication and untimeliness that prevented FWI from receiving the full benefit of zealous legal representation to which it was entitled.

35. Through the conduct alleged in this Complaint, ZUKOWSKY has breach his fiduciary duty to FWI, as a proximate result of which FWI has suffered injury and damages in the principal amount in excess of $38,234, plus interest, attorney fees and costs.

36. If it is determined that the conduct of ZUKOWSKY is willful and malicious, or manifests a knowing and reckless indifference toward, and a disregard of FWI's rights, punitive damages in an amount equal to at least three hundred percent (300%) of FWI's proven compensatory damages should be awarded.

WHEREFORE, FWI demands (a) trial by jury, (b) judgement against URSULA ZUKOWSKY for compensatory damages in the principal amount in excess of $38,234, punitive damages, interest, attorney fees, costs and (c) such further relief as this Court deems just.

DATED: _____

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

FLAVA WORKS, INC.,                                    CASE NO.: 1:14-cv-23208-JAL

     Plaintiff,

v.

A4A RESEAU, INC. ET AL.,

     Defendants.

_____/

**NOTICE OF ATTORNEY'S CHARGING LIEN**

The undersigned counsel hereby gives notice of the imposition of a charging lien against the fee, if any, received by Plaintiff, Flava Works, Inc. (the "Plaintiff") and states as follows:

1.     The undersigned agreed to represent the Plaintiff on an hourly fee basis.

2.     As of the date of this notice, the undersigned has incurred fees of $1,000.

3.     As of the date of this notice, the Plaintiff has refused to pay the undersigned.

4.     "The charging lien is an equitable right to have costs and fees due an attorney for services in the suit secured to him in the judgment or recovery in that particular suit." *Naftzger v. Elam*, 41 So. 3d 944, 946 (Fla. 2d DCA 2010) (quotation omitted).

5.     "A summary proceeding in the original action represents the preferred method of enforcing an attorney's charging lien in Florida." *Santini v. Cleveland Clinic*, 65 So. 3d 22, 35 (Fla. 4th DCA 2011) (quotation omitted).

6.     Therefore, "notice of the charging lien must be filed or the lien pursued in the action before entry of a final judgment or dismissal of the case." *Naftzger*, 41 So. 3d at 946.

7.     "So long as the notice of lien is filed before the case goes to final judgment or is dismissed, 'The lien is chargeable against any person who, at the time notice of intent to claim a lien

---

50-2010-CA-010716-XXXXMB

is given, holds monies or property which become proceeds of a judgment to be entered in the future.'" *Gordon C. Brydger, P.A. v. Wolfe*, 847 So. 2d 1074, 1076 (Fla. 4th DCA 2003) (quotation omitted).

8.     Finally, this notice is also intended to inform defense counsel of the charging lien. If an opposing party who has notice of a charging lien settles with the party charged with the lien and the party charged subsequently fails to pay, the lien may be enforceable against the opposing party as well. *Gaebe, Murphy, Mullen & Antonelli v. Bradt*, 704 So. 2d 618, 619 (Fla. 4th DCA 1997).

**WHEREFORE**, the undersigned provides notice to all parties and their counsel that he is imposing a charging lien against the fee, if any, received by the Plaintiff for $1,000 or the quantum meruit value of his services rendered and any additional or alternative relief the Court deems just and proper.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on December 15, 2015 on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing and to all pro se parties, if any, via U.S. mail.

Respectfully submitted by:

_____s/Michael Gulisano_____
MICHAEL GULISANO, ESQUIRE
Fla. Bar No. 87573
5613 NW 117th Ave.
Coral Springs, FL 33076
561-271-1678
gulisanomichael@gmail.com

2

**Exhibit 1**

# Journalist & Lifestyle Brand, Jamie Alistair Gonzalez, Seeks Legal Relief from "Bullying" & Harassment

*October 30, 2014 by* *JAGGED PRESS*

**NEW YORK – Jamie Alistair Gonzalez** (Jamie Alistair Napoléon-Gonzalez V.), a Lifestyle Brand, and name in Fashion, Art, and Creative Direction, also a Journalist and Academic, who is known to family, close friends, and to **Jehovah's Witnesses**\* as simply, Jim "Jimmy" Gonzalez, now seeks **immediate** legal protection from harassment and **"bullying."**

In 2010, Gonzalez met with empathy and anguish the sufferings of a friend in need and was moved to show compassion by standing behind **Cody McCart** as he made difficult choices in his life – for which Gonzalez was sued by a third party, the owner of a porn company, **Philip Beicher**.

Philip Bleicher and **Flava Works, Inc.** are not unknown to the authorities and public officials, nor are Bleicher's tactics. In 2006, **The Chicago Department of Public Health** accused Bleicher and his company of encouraging their actors to perform unsafe sex acts helping spread STD's. The Chicago Department of Public Health's report at the time also included reports that the company was practicing what bordered on "illegal servitude."

**Christopher Brown**, then Assistant Commissioner for HIV/AIDS/STD programs at CDPH, said "health officials acted after uncovering 'credible' evidence that models at FlavaWorks.com, which also operated **CocoBoyz Dorm Room** online, were HIV-positive, were engaging in unsafe sex practices and were spreading HIV, syphilis and gonorrhea through contact with individuals outside the business."

Brown said CDPH's initial involvement came in late December 2005 after HIV service providers called CDPH to express "concerns that

some of their clients could be seen on the website engaging in unsafe sex."

"We also became aware of cases of HIV linked to some of the models," Brown said.

Brown said the business owner had been "less than cooperative" with city officials in efforts to stop the spread of HIV and other diseases and get "CocoBoyz" models in for counseling, treatment and testing.

"Our main concern was the dorm," Brown said. "Our goal is to immediately look at the models, screen them and address their needs."

"We had evidence and reports from what I would consider credible sources that there was HIV and STDs among the models at CocoBoyz dorm room, and unsafe sex could be viewed right there on the website," Brown said.

Equally distressing were, reports at the time, centering around the conditions under which the young men worked. Most of them are reportedly at-risk youths, runaways, homeless and easily manipulated.

The Chicago Department of Public Health report regarding Bleicher and his company FlavaWorks, Inc., stated, "The on-site inspection was met with resistance by a representative of the business owner, and city officials were dismissed from the premises. Cease and desist orders were immediately issued from the Department of Business Affairs for licensing violations, and from CDPH until the business practices no longer posed a threat to the health and safety of its workforce and to the general public. CDPH officials arranged for a special clinic for all employees of the business and other persons exposed to infection to offer voluntary STD and HIV testing, medical evaluation, and prophylactic treatment for possible infection. Despite this, the employees of the dormitory did not attend the special clinic. The business owner disbanded the dormitory on the next day after the inspection; the owner and models were seen moving out of building, and the website was temporarily shut down. As of May 2006, the business was reported to have relocated to another state. CDPH



Exhibit C1

officials contacted the health departments in other jurisdiction to inform them of the identified cluster of syphilis and HIV infections."

The CDPH also revealed then, "There are also allegations that the business used unusual labor contracts with its models, which, according to one source, "at least bordered on 'illegal servitude.'"" Reports said, "The 30-day contracts allegedly required the models to perform a certain number of sexual acts in exchange for a stipend. But, when the models tried to collect the stipends, they were told they were being charged for such things as food and bed linens, leaving them, in some cases, in debt rather than collecting money. They were then pressured to sign new contracts."

Bleicher and his company are also well-known for frivolous lawsuits against detractors or, against those who amplify outside findings and facts, and using underhanded moves, abusing the law, disregarding without respect the precious time of the court, holding it in contempt. For example, bloggers like **Jasmyne Cannick,** and possibly **Bernard Tarver**, who also reported the event, were also sued years ago for even reporting on The Chicago Department of Public Health's 2006 report.

**Cody Kyler**, as McCart was also known, decided to move away from being a live-in adult actor with Flava Works, Inc. to an independent young adult, ending up on the streets of Chicago.

McCart sought help from **The Center on Halsted's Gay Youth Center** and the **Youth Futures – The Law Project of the Chicago Coalition for the Homeless**, and later other professionals, to receive assistance in his separation and difficult rehabilitation to a completely different lifestyle to the one he had grown encumbered by, not knowing the way out.

In a perplexing move, Flava Works, Inc. and its owner Phillip Bleicher chose to sue Gonzalez claiming damages, a friend of McCart's who has spent a lifetime in Christian Ministry, a duly appointed ordained minister who even served under a legal "vow of poverty and obedience" for onwards of eight years, as a member of a religious order whose requirements are conditioned upon high moral standards,

placing principles of service, self-sacrifice, and helping those in need, above all other things, as a way of life – sued by Bleicher for showing compassion.

Spring, Summer and Fall of 2010 for Gonzalez showed a significant dive for the worse in his already severely debilitating health consequences from **9/11/2001** and **The World Trade Center Disaster**, which include PTSD, anxiety, and an obvious sensitivity to emotional distress. That trauma of 2010, the unrelenting harassment by Bleicher, severely affected relationships, even with his dearest and closest of friends, in fact, professional relationships, best friends, partners – especially in Los Angeles, in Hollywood. He was/is now himself a victim of harassment, intimidation, "bullying," and unending targeting from McCart's former associates, more specifically, Bleicher himself – who continues until today to attack Gonzalez because of his loss of McCart.

"So, if $500,000 in damages is what Bleicher demands from a critically disabled person, I wish him the best of luck.  Medications alone for these rare physiological incurable autoimmune illnesses as a result of toxic exposure are bad and expensive enough, then considering that he and his methods of intimidation and harassment have helped worsen those conditions, I am assuming he might be happy to help pay for that medical care," said Gonzalez. He continues, "Four years of continued psychological and then even related physical trauma as a result of that stress, of a disabled 9/11 victim and volunteer rescuer, pursued by, Bleicher and associates – an almost certified purveyor of an arrangement that was found to be, by The Chicago Public Health Department, of extremely horrible conditions – from all angles. And the CPHD described the operations as something that "at least bordered on 'illegal servitude,'" amongst other possible civil and human rights violations.  And whose "operations" were a public health threat that was so horrendous, with an accompanying long list of disgraceful, dangerous, public harm and disregard for human dignity, is outright "bullying," a crime, intimidation, menacing, and simply, deeply unethical bordering on malice."

# Exhibit 1

The logical step, however, for Bleicher, would be to pursue redemption of losses from the organizations that helped McCart, if he feels wronged, or the legal firms that represent him, and stop harassing, bullying, and causing emotional distress on a friend of Cody's who has had a lifetime of Christian service, who seeks to help others, in goodness and loving kindness, even as those face great turmoil, especially when they are freeing themselves from abusive circumstances.  Every person should be free to avail themselves of our **First Amendment rights**, Freedom of Religion, the accompanying Clergyman-Communicant Privilege, **Freedom of the Press**, **Freedom of Speech**, and the overbearing unabashed **rights to privacy and to self-determination** found therein, along with many more.

Therefore, to obtain some relief, Gonzalez sought a "**STALKING NO CONTACT ORDER**"  (an order of protection) against Bleicher, his associates, and any of his representatives, as Bleicher's claims are legally baseless.  "Any Law Student, Law Scholar, Judge, Constitutional Expert, Supreme Court Scholar, would readily admit or recognize, and rightly should be aware of an often unknown fact to any layman, that Jehovah's Witnesses have gladly, painstakingly, and persistently, taken almost all of the First Amendment challenges and cases to the **U.S. Supreme Court** to defend and protect such fundamental rights, winning a very impressive number of victories, many several dozens, in majority decisions during trying times for this nation, even choosing prison to protect those rights for all persons in this land. Therefore setting legal precedence and protections for well over half a century. And continue to do so in courts all over the world, **jamie.us.org** sends you to some coverage of that work on their official website **JW.org**. A body of law and ethics of which Bleicher is seemingly dismissive," said Gonzalez.

*__Jehovah's Witnesses__, incidentally, share the same religious faith with prodigious musician **Prince**, winners **Venus and Serena Williams**, **Michael Jackson**'s mother **Catherine**, and sister **Rebbie**, and as was **Mickey Spillane**. **President Eisenhower** was raised in a family of*

*Jehovah's Witnesses, his mother remained one until her death, at which time Eisenhower said of his mom, 'the woman was a saint,' she believed in peace, not war. Eisenhower didn't practice as he became older, only being baptized until weeks after his inauguration as **President of the United States in 1953**, in the Presbyterian faith. Rapper **The Notorious B.I.G.**, **Naomi Campell**, **Janet Jackson**, **The Wayans brothers**, were all raised Jehovah's Witness, but no longer practice the religion. However, all of these persons, and many other high profile individuals, who believe in serving others and helping their fellow man through the arts or in any other way they can, do so, publicly, or privately, with dedication and with a strong gift of talent, unparalleled, and with tremendous brilliant strategic minds. For example, in **2011**, **Rebbie Jackson** embarked on the "**Pick Up the Phone Tour**," which is dedicated to **teens who have committed suicide** all over the U.S.*

*(World famous Model **Coco Rocha**, **George Benson**, **Sly and the Family Stone** guitarist **Larry Graham** are all active Jehovah's Witness and Graham has been a great influence in the life of **Prince**.)*

**RELATED RELEASES**:

Former Member of Religious Order – Now also a Brand and Journalist – is Sued for Showing Christian Charity

Former Member of Religious Order – Now a Lifestyle Brand in Creativity – is Sued for Showing Christian Charity

**PRESS CONTACT**: **e**. **PRESS@HUMANRIGHTSPAO.ORG**

**p**. (917) 965-5200; **t**. **@HRPAORG**; **f**. facebook.com/humanrightspaorg

# Exhibit 1

THE HOTTEST BLACK & LATINO MEN

# FLAVAMEN

www.FlavaMen.com

**FALL 2006** Vol.2 No.3

**Cover Model**

# S DOB

**Also Inside This Issue**

Brent+Mr Saukei

Danger

Ruan

Gerald

U.S. $7.95 • CANADA $10.95
for mature readers over the age of 18

0 74470 04506 9

6 3>

THE HOTTEST BLACK & LATINO MEN

# FLAVAMEN

www.FlavaMen.com

**FALL 2008** Vol.4 No.3

COVER
MODEL

# N'TICE

**PLUS**

FREAKZILLA

MIKEAL RACE

ANUBIS

U.S. $7.95 • CANADA $10.95
for mature readers over the age of 18

0 74470 04506 9

8 3>

Exhibit D



Exhibit 1

## Investigation of a Cluster of Syphilis and HIV Infections Associated with an Internet Pornography Site – Chicago, 2005-2006

**William Wong, MD**
**Division of STD/HIV/AIDS**
**Chicago Department of Public Health**
**City of Chicago**



## Sentinel Events

- In November 2005, Chicago Department of Public Health (CDPH) received first report of the possible transmission of HIV occurring in a resident of a North-side Chicago apartment reported as a non-adherent carrier.

- In December 2005 to March 2006, CDPH disease control investigations link 2 HIV and 3 syphilis cases in persons residing at the same address; a syphilis case-patient names 22 sexual contacts as a part of an Internet Pornography Business

Exhibit E


1

## Internet-based Pornography Business

- Feature young Black and Latino men who have sex with men
- Men employed as "models" and paid to have sex at local "dormitory" for room, board, money
- Website features: free previews, members only services, photos, live webcams, live video chat, streaming video, stories, and web logs
- Offered sale of popular magazines, calendars, DVDs
- Scheduled sex acts broadcast live daily on Internet
- Related to private male escort service

## Objectives

- To determine extent of outbreak

- To identify additional opportunities for disease intervention

- To prevent further transmission of syphilis and HIV in the city

2

Exhibit 1

## Methods

- Investigations were conducted by Disease Intervention Specialists (DIS) according to CDC STD Intervention Guidelines

- Data obtained from:
  - Laboratory and provider surveillance reports
  - Disease intervention interview records
  - Medical chart review

- Epidemiologic Visual Case Analysis and cluster analysis

## Results

- Dense sexual and social network involving 47 individuals with evidence of disease transmission

- Identified 19 employees of an Internet pornography business

  - Median age: 23 years (range 19-35)
  - All were African-American MSM

  - 9 (47%) HIV cases
  - 9 (47%) syphilis cases
  - Including 3 co-infections with syphilis/HIV

3

# Exhibit 1



## **Summary**

- Among 47 individuals in the network

  - 13 (28%) HIV cases
    - including 3 newly diagnosed HIV positive
  - 16 (34%) syphilis cases
    - 2 primary, 4 secondary, 10 early latent cases
  - 6 (13%) co-infections with syphilis/HIV
  - 3 (6%) gonorrhea cases

Exhibit 1

## Limitations

- Interview data relied on self-report

- All contacts may not be named

- All contacts were not interviewed

- All contacts were not tested

## Health Department Interventions

- Mounting STD/HIV case investigations, community provider reports of continuing HIV exposures associated with the business

- Limited success intervening with clients and business owner; business owner made CDPH interactions forbidden among employees

- Owner non-response to CDPH orders to
    - Contact the health department to arrange a meeting
    - Attend a scheduled meeting to develop corrective action plan

- Prompts issuance of Notice of City Inspection to assess compliance with health, safety, business, and licensing codes

5

Exhibit 1



*Source:  Chicago Free Press, Front Page*
*April 26, 2006*

## Discussion

- Evidence of disease transmission
- Mandate to respond to community reports of disease transmission
- Public Health responsibility to prevent and contain disease in the community
- Communicable diseases can be prevented by intervening with known sources or sites of infection
- Concern over exploitation of models, and nature of the work

6

Exhibit 1

## Epilogue

**The House Next Door**
(May 9, 2007)



**Porn House Illegal, City Rules**   **The Miami Herald**
(August 15, 2007)

   **The Best Little Sex Dorm in Miami**
(August 16, 2007)

**Miami orders porn house shut down**   **The Miami Herald**
(August 15, 2007)

## Acknowledgements

**Co-Authors**

| | |
|---|---|
| Gus Conda | Jason Sanford |
| Laurie L. Anderson | Antonio King |
| Patrick Price | Nilsa Irizarry |
| Daniel Pohl | Beau Gratzer, MPP |
| Gregory Huhn, MD MPH | Wendi Wright, MJ JD |
| Christopher Brown, MBA MPH | |

7

# Exhibit 1



**City of Chicago**
**Richard M. Daley, Mayor**

**Department of Public Health**

Terry Mason, M.D., F.A.C.S.
Commissioner

333 South State Street
Chicago, Illinois 60604
(312) 747-9884
(312) 747-9888 (24 hours)

http://www.cityofchicago.org/health

BY ORDER OF THE COMMISSIONER OF HEALTH:

Chapter 2-112 of the Municipal Code of the City of Chicago provides that:
2-112-080. The commissioner of health shall have the power to exercise the general police power of the City of Chicago to correct, by whatever means are necessary, any health hazard that presents an immediate risk to the life or health of one or more citizens of the City of Chicago.

2-112-170. The commissioner of health may cause all persons reported to it as having or suspected of having a communicable disease to be examined, and may impose such restrictions upon, and exercise such supervision over such persons as shall be necessary to protect other persons…

2112-340. Any person who shall violate any rule, order, or sanitary regulation of the department of health or the board of health shall be fined not less than $100.00 nor more than $500.00 for each offense.

Due to recent reports of HIV and syphilis among the workforce at Flava Works, Inc., the business is hereby ORDERED TO CEASE AND DESIST conducting the business of Flava Works Inc. within the city of Chicago until such time as the Chicago Department of Public Health can confirm that the business no longer poses a threat to the health and safety of its workforce and to the general public

All Flava Works, Inc. employees or contractors known as "Coco Boyz" and all Flava Works, Inc., workforce members who have or may have had sexual contact with any Coco Boy are hereby ORDERED TO SUBMIT TO BE EXAMINED FOR COMMUNICABLE DISEASES, including HIV, syphilis, gonorrhea and chlamydia at 1:00 PM on Friday, April 21, 2006 at the Chicago Department of Public Health Lakeview Clinic, 2861 N. Clark Street, Chicago, Illinois

If you do not follow this order, we will request the City of Chicago Corporation Counsel to file a petition for a court order in the circuit court of Cook County to close Flava Works, Inc. Pending the court's decision, violators will be subject to arrest and Flava Works, Inc., at 933 West Irving Park, Units C and D in Chicago must remain closed. In addition, you will be subject to fines for each violation of this order of up to $500 per violation, per day.

Terry Mason, M.D., F.A.C.S.
Commissioner

Date: 4/20/06





Exhibit F



**ILLINOIS ATTORNEY GENERAL LISA MADIGAN**

**PRESS RELEASE**

www.IllinoisAttorneyGeneral.gov

**For Immediate Release**
**Contact: Melissa Merz**
**312-814-3118**
**877-844-5461 (TTY)**
**January 10, 2006**

**MADIGAN: FRAUDULENT CHARITY ALLEGEDLY COLLECTED MORE THAN $3 MILLION; USED PROCEEDS TO MAKE PURCHASES FOR INTERNATIONAL TRAVEL AND AT A LIPOSUCTION CLINIC**

Chicago – Attorney General Lisa Madigan today announced that her office has obtained a preliminary injunction to freeze the assets of an allegedly fraudulent charitable organization and prevent its officers and directors from continuing to allow the organization's funds to be used for non-charitable purposes and personal use.

Cook County Circuit Court Judge Anthony Young has issued preliminary injunctions against the trustees of a now dissolved Chicago-based not-for-profit corporation, Student Leadership Network (SLN). On December 29, 2005, Madigan's office reached an agreement with defendant trustees Phillip Bleicher, Elizabeth Bruen, and Julie Evans that froze all of SLN's bank accounts, enjoined them from soliciting on behalf of charity, and prohibited the use of SLN funds to pay their attorneys' fees. Today, Judge Young entered a similar order against defendant trustees Kimberly Simmons Gray and Barbara Morel as well as a Temporary Restraining Order against defendant trustees Izell Robinson, Aaron Sumrall, and Brandon Bruner.

Madigan filed a lawsuit and a Motion for a Temporary Restraining Order, Preliminary Injunction, and Appointment of a Receiver in Cook County Circuit Court on Wednesday, December 21. The lawsuit charges the defendants with violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, the Illinois Solicitation for Charity Act and the Illinois Charitable Trust Act.

Madigan's lawsuit alleges the defendants, posing as a legitimate youth leadership organization, solicited schools nationwide and collected more than $3 million dollars for goods and services that they never delivered. Schools that paid SLN's invoices allegedly never received the promised goods and services, including a student advisor kit, leadership magazine, student council charter certificate, membership cards, nomination forms, directories, access to an online magazine, discounts on conferences and unlimited support and

1 of 3

assistance.

Instead, Madigan's lawsuits alleges, the defendants sent fraudulent invoices to the schools and created cloned checks to withdraw additional funds from the schools' bank accounts. According to Madigan's complaint, at least two of the trustees withdrew funds from the organization's bank accounts to pay for international travel to Rio de Janeiro, and purchase items at department stores, boutiques, a liposuction clinic, a movie theater and a custom wig store.

"We allege that SLN engaged in outright fraud in selling educational products that never materialized," Madigan said. "Money for our schools is scarce. These con artists took limited resources to pay for products that have no business being paid for by schools that think they are buying products that will help children learn."

According to financial documents filed by SLN with the Office of the Attorney General's Charitable Trusts Division, the allegedly bogus charity had gross public revenue totaling $3,126,075 for fiscal years 2000-2003. SLN was a registered not-for-profit corporation until it was dissolved this past summer.

Madigan's lawsuit alleges the defendants solicited funds from schools in Illinois and across the nation by sending fraudulent invoices to the schools' front offices. The invoices allegedly misled schools because they contained language such as "renewal," "past due," and "overdue" to create the appearance that the schools had previously established business relationship with the company. In addition, the invoices imitated the language and format of invoices used by the National Association of Secondary School Principals (NASSP), a legitimate student leadership organization.

To increase their profits, the defendants allegedly forged unauthorized imitations of the checks sent as payments by the schools and then deposited both the original and cloned checks for payment. The cloned checks, which allegedly bore the same check numbers as the original checks, would often be made out for a greater dollar amount than the original check. Schools whose checks were cloned paid twice for goods and services that SLN never intended to provide, Madigan's lawsuit alleges.

Madigan's lawsuit asks the court to prohibit the defendants from soliciting on behalf of charity and from further violating Illinois' consumer protection and charitable trust laws. The lawsuit seeks a civil penalty of $50,000 and additional penalties of $2,000 per violation of the Solicitation Act and $50,000 for each violation of the Consumer Fraud and Deceptive Business Practices Act or Charitable Trust Act found to have been committed with the intent to defraud. Finally, Madigan's lawsuit asks the court to order the defendants to pay restitution to consumers.

Madigan's office was assisted by investigators from the Chicago Board of Education's Office of the Inspector General. Bureau Chief Chaka Patterson and Assistant Attorneys General Harpreet Khera, David Cole and Erin Alexander

2 of 3

**Exhibit 1**

are handling the case for Madigan's Special Litigation Bureau.

-30-

Return to January 2006 Press Releases

Exhibit 1



### *MIAMI CODE ENFORCEMENT*
### PORN HOUSE ILLEGAL, CITY RULES

*Miami Herald, The (FL) - August 15, 2007*
- Author/Byline: LAURA MORALES llmorales@MiamiHerald.com
- Edition: Final
- Section: Metro & State
- Page: 1B

- Abstract: A porn producer argued that male models performing sex acts for the Web in an Edge- water home don't represent an adult entertainment business. Code enforcers didn't buy it.
The residents of Northeast 27th Street in Edgewater may not have neighbors like Pretty Ricky, Jerzey Flyrt and Nick Da Kannon for much longer.

After 10 hours of listening to evidence and arguments, Miami's Code Enforcement Board ruled late Monday that Phillip Bleicher's Flava Works, an Internet porn production and distribution company, is illegally running an adult entertainment business out of a single-family home at 503 NE 27th St. -- zoned for residential use -- and ordered that those operations cease.

"I think the city has met its burden of showing a link between the house on 27th Street and the website," board member Oscar Rodriguez Fonts said before moving to deny a motion, made by Flava Works attorney James Benjamin, to dismiss citations posted by city code inspectors in May.

The website is CocoDorm.com, where visitors can, for a fee, watch live video streams from the Edgewater house, where chiseled young males are paid $1,200, plus room, board and meals, to live in the two-story home for a month and have sex with each other on schedule.

Monday's hearing was the third in the sex-house case. Assistant City Attorney Victoria Mendez argued that Bleicher also was running an illegal rooming house, but that violation was dismissed.

Benjamin argued that the house, leased by Flava Works from owner Angel Barrios, was not part of the adult entertainment operation. He cited a Tampa case where the 11th Circuit Court of Appeals ruled that VoyeurDorm.com, a female version of CocoDorm, was not guilty of similar violations.

He also argued that business transactions don't happen at the house and that all sales and distribution take place at Flava Works' office at 2610 N. Miami Ave.

"No member of the public came to the location to view, buy, trade or obtain any adult entertainment," Benjamin said.

But Mariano Loret de Mola, the city's director of code enforcement, testified that, on one occasion, he saw a man he recognized as "Dorm Dude" Breion, who is prominently featured on the website's main page, walk up to the Edgewater house and punch in a code to let himself in.

That, and the differences between Miami's and Tampa's laws, scuttled Benjamin's argument.

"Miami's adult entertainment ordinance encompasses Internet activity in a way the Tampa ordinance did not," Rodriguez Fonts said.

Benjamin said he intends to file an appeal within the next few days. "But we're not sure where we're going to file the appeal yet," he said. "We're not going to put our tail between our legs and go away. The activity is protected by the First Amendment."

Mendez said the decision would not be enforced immediately.

"The city has no problem with giving them two weeks to get their business affairs in order," she said.

- Caption: JOHN VANBEEKUM/MIAMI HERALD STAFF BEHIND CLOSED DOORS: Miami officials say an Internet porn company is illegally running an adult entertainment business at 503 NE 27th St.

- Record: 343463
- Copyright: Copyright (c) 2007 The Miami Herald



### MIAMI: Miami fights to shutter house where online porn is filmed - Miami's yearlong quest to close down a house used by an adult website has prompted a federal court battle -- while the site continues to operate.

*Miami Herald, The (FL) - August 14, 2008*
- Author/Byline: MICHAEL VASQUEZ, mrvasquez@MiamiHerald.com
- Edition: D1
- Page: A1

A stroll down Northeast 27th Street doesn't feel X-rated, but it's here -- along a quiet, bayfront residential street -- that Miami has declared war against Internet porn.

For about a year, Miami city leaders have tried to evict "Khali Kreme," "Sincere Luv" and the other "dorm dudes" of Cocodorm.com, a gay porn site that films out of a red-brick colonial-style house.

From the outside, nothing about the home's appearance suggests it's different from its neighbors. But inside, multiple webcams capture occupants' almost every move -- from household chores to regularly scheduled sexual encounters.

Miami's Code Enforcement Board last year declared the home an adult business, one operating illegally in a residential area. The city ordered it shut down.

Cocodorm responded by suing in federal court, alleging Miami violated the website's First Amendment rights. One expert says it's a lawsuit Cocodorm has a shot at winning, as case law is on the website's side.

Cocodorm argues its Edgewater home can't be called an adult business because, unlike a run-of-the-mill strip club, the public is not invited in. Those who want to see Cocodorm's "hottest and horniest" do so via the Internet, with a credit card.

Avoiding the adult-business label is key, because Miami's zoning code limits such establishments to industrial areas and requires they obtain city approval. Should the courts agree with Miami, the operation would likely be closed.

'NOT GOOD'

"What they are doing is not good for the neighborhood," laments Miami Code Enforcement Director Mariano Loret de Mola.

That conclusion is far from certain, and U.S. District Court Judge Marcia Cooke recently rejected a city effort to dismiss Cocodorm's suit.

Cocodorm's legal position rests on a 2001 federal appeals-court case involving Voyeurdorm.com, a similar website operating in Tampa.

Like Miami, Tampa tried to use its adult-business zoning laws to shut down a webcam-filled house, in this case occupied by women.

But the appeals court, ruling in the website's favor, found that Voyeurdorm's customers weren't gathering at the Tampa home -- or anywhere else in Tampa.

"As a practical matter, zoning restrictions are indelibly anchored in particular geographic locations," the court wrote. With Voyeurdorm, the court added, 'the public offering occurs over the Internet in 'virtual space.' "

Last year, Miami's legal staff persuaded the city's Code Enforcement Board to classify Cocodorm as an adult business -- despite the Tampa decision. Assistant City Attorney Victoria Méndez told the board that wording differences between the Miami and Tampa laws meant the situations weren't identical, and Miami's law was stronger.

Evans Anyanwu, a New Jersey Internet attorney who followed the Voyeurdorm case, isn't convinced. Anyanwu reviewed both Miami and Tampa's laws after speaking with a reporter.

"To me, it's the same exact case," he said. "The city of Miami has an uphill fight."

Miami's legal team declined to comment, but in court filings the city argues it has a right to determine appropriate locations for an enterprise it describes as "sex-for-money open to the world."

A jury trial is set for December, but Cocodorm's attorneys are hoping to settle matters sooner. The website plans to file legal arguments Thursday asking the judge to grant summary judgment in its favor.

Cocodorm offers its young, muscular males $1,200 a month -- along with free room and board -- while requiring they masturbate and

have group sex in front of the cameras.

Models enjoy complimentary groceries, cable TV and use of an X-Box 360, the website promises.

Those over 25 aren't welcome, but education is. "Models should have some smarts," the website says. "You should AT LEAST have a high school diploma or GED."

Mail-order DVD sales are handled not from the home, but at a warehouse space on North Miami Avenue -- further proof, Cocodorm said, that there's no "business" being run at the house.

Phillip Bleicher -- director of Flava Works, the company behind Cocodorm -- came to the door at that warehouse location but declined to speak with a reporter, referring questions to his attorneys.

The models at Cocodorm were also mum. "I don't do interviews. Sorry, babe," said one.

Attorney Jamie Benjamin, who represents Cocodorm, is confident Miami will have trouble proving webcams constitute a business.

"There is no adult entertainment there," he said. "Nobody goes to a brick-and-mortar place and buys something. There's no customers there."

Bleicher has had legal tangles in the past.

In 2006, Illinois Attorney General Lisa Madigan got a judge to freeze the assets of a Bleicher-affiliated Chicago charity, Student Leadership Network. The attorney general accused the charity of scamming more than $3 million from schools across the nation.

Instead of financing youth-leadership efforts, the charity allegedly spent its money at a liposuction clinic and a custom wig store and to pay for a trip to Rio de Janeiro. A criminal investigation is ongoing.

Benjamin said Bleicher was one of many members on the board, and that the allegations are just that. No charges have been filed, he said, "because there's nothing that was done that was improper, whatsoever."

UNDER SCRUTINY

A dorm-style porn website Bleicher ran in Chicago also came under scrutiny. The all-male, black and Latino site -- essentially the same business model as Cocodorm -- was shut down by the Chicago Department of Public Health after the agency uncovered high rates of sexually transmitted diseases among the "models."

Benjamin said the health issues have been mischaracterized.

"Everybody that was a prospective employee was tested," Benjamin said. "And yes, some came back positive, but the people who came back positive never worked there."

Christopher Brown, assistant commissioner at the Chicago health department, tells a different story. "They were active patients being seen for HIV, and then they could be seen on this website," he said. "So the doctors, I think, were concerned."

In Miami, the Cocodorm website tells those wishing to live at the house that they must bring health test results with them and that safe sex must be practiced at all times.

Cocodorm's neighbors along Northeast 27th Street voiced mixed opinions about whether the city should shut the house down.

Several said as long as Cocodorm's activities stay behind closed doors, it's not a problem, but one complained of dorm residents partying outside the house.

Meanwhile, only steps away from Cocodorm, where the street meets the bay, another dorm -- of a different kind -- is poised to open.

It's the Residencia Jesús Maestro, a male Catholic dorm. Acting Director Efrain Zabala said the dorm will house those pursuing the priesthood, but also local college students who have other careers in mind but want to live in a dorm that nurtures faith.

Daily personal prayer and annual spiritual exercises are a requirement, and "female companions" are off-limits in some parts of the building. "It offers a more wholesome environment," Zabala said.

What does Zabala think of his soon-to-be neighbor? "I'm not at liberty to speak about it," the church official said.

- *Provided By:  The McClatchy Company*
- *Index terms:  local; front; state; Edgewater; Chicago Department of Public Health*
- *Locations:  Miami; Tampa; Chicago; Rio de Janeiro*
- *Personal names:  Mariano Loret; Marcia Cooke; Victoria Méndez; Phillip Bleicher; Jamie Benjamin; Lisa Madigan; Christopher Brown; Efrain Zabala*

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FLAVA WORKS, INC.,                    )
                                      )
            Plaintiff,                )
                                      )
    v.                                )    No.  11 C 6306
                                      )
LEE MOMIENT,                          )
                                      )
            Defendant.                )

MEMORANDUM OPINION AND ORDER

This pitched battle between two competing producers and purveyors of truly hardcore pornographic materials began with the filing of a Complaint by Flava Works, Inc. ("Flava") charging that defendant Lee Momient, Jr. ("Momient") had infringed Flava's copyrights in its salacious materials[1] by reproducing them in Momient's competing commercial websites.  After a good many procedural skirmishes (for example, Flava's filing of successive versions of its Complaint in lieu of responding to Momient's motions to dismiss), Flava's Third Amended Complaint ("TAC") generated an Answer coupled with no fewer than 21 purported Affirmative Defenses plus a Counterclaim advanced by Momient.[2]  As the Counterclaim would have it, Momient and not Flava owns the

_____

[1]  "Salacious" is used here with the meaning set out in the second--not the first--definition of that adjective in Webster's Third New International Dictionary.

[2]  This Court has continued to decline Momient's efforts to obtain pro bono representation through this Court's trial bar. Nothing in his pleadings or general conduct in the litigation reflects an inability on his part to handle the case on his own--quite the contrary is true.

disputed pornographic materials, which Momient has registered with the United States Copyright Office, so that Flava and not Momient is the copyright infringer.[3]

That brings the matter to its present posture, in which this Court issued a brief March 18, 2013 memorandum order that denied Flava's motion to dismiss Momient's counterclaim--now his Amended Counterclaim ("ACc")--and ordered that his pleading be answered instead.  That generated a March 28 response by Flava that for the first time asserted that Momient had entered into a Commission Work Agreement with Flava going back to 2005, in which Momient had agreed to "work made for hire" terms as defined in Section 101 of the Copyright Act of 1976.

That was indeed a surprising (and very late) development in a lawsuit that was then 1-1/2 years old--after all, that agreement and commitment would normally have been expected to be referred to (and perhaps be added as an exhibit) in an initial

_____

[3]  This opinion will not address what may be characterized as moral issues, such as:

    1.  Why should or does the United States Copyright Office provide registration for, and thus confer enforcement rights for the purveyors of, hard core pornography?

    2.  Under the circumstances presented here, why should federal courts not apply in pari delicto treatment (or as Mercutio had it in Romeo & Juliet, "A plague o' both your houses!") to refuse legal relief to both parties?

Discussion of such issues is eschewed here because this Court, as it must, takes the law in those respects as the established authorities have defined it.

2

Exhibit 1

complaint charging copyright violation, for it could well be dispositive in Flava's favor on its own claim as well as scotching any possible claim on Momient's part. Understandably that then led to this Court's immediate issuance of an April 1 memorandum order calling on Flava to submit copies of the Commission Work Agreement plus "any additional documentary evidence that is available to establish (or to negate) Flava's copyright violation claim or Momient's copyright violation Counterclaim."

When that material was filed and Flava's counsel came in thereafter on a motion that aspects of it should be filed under seal (as he had originally intended), Momient vehemently denied in open court that he had entered into any claimed Commission Work Agreement. Instead Momient asserted that the purported signature on that document was really his actual signature on a quite _different_ document--a printed form of Model Contract and Release that had been entered into between the parties back in 2005.

According to Momient, his signature on that other document had been lifted and fraudulently placed on a typewritten single-spaced document captioned "Commission Work 'Work for Hire' Agreement."[4]  This Court looked at the two documents while the

---

[4]  That latter document was Ex. 1 to Flava's most recent submission, while Momient identified the original (and assertedly transposed) signature as appearing on page 4 of Flava's Ex. 2.

3

parties were before it and orally rejected Momient's contention, pointing out that his bizarre (and quite illegible) form of signature regularly ended with a long "tail" stretching out to the right and that the tail on the Ex. 1 signature was virtually a straight line, while the signature that this Court understood Momient to be referring to in Ex. 2 ended with a prolonged tail that was obviously curved.

Now Momient has noticed up for presentment on April 17 his own motion to file a number of documents under seal--documents that demonstrate beyond any possible dispute that Flava's Ex. 1, the purported Commission Work Agreement containing the detailed "work for hire" provision as its paragraph 4, is indeed a skilled forgery.  In that respect it turns out that this Court's oral in-court statement was simply mistaken, because it had been looking at the wrong page in Ex. 2.  By way of explanation, when Momient made his oral in-court accusation, this Court had Flava's submission before it, with all of the exhibits demarcated by physical tabs protruding from the right-hand edge of pages in that submission.  When Momient referred to the fourth page in Ex. 2, this Court lifted the Ex. 2 tab and counted four pages from there (none of the pages within the exhibit were numbered) and looked at the signature on that page.  Momient's current filing has caused this Court to go back to the document, and it found that the "Ex. 2" tab was not on a separate page, as is most

4

## Exhibit 1

often the case, but was actually affixed to the first page of the exhibit. Hence the "fourth page of Ex. 2," to which Momient referred, is actually the third page after the tab--and that page contains a bona fide signature by Momient that has indisputably been transposed onto a totally bogus document.[5]

What we have, then, is the most egregious fraud on the court that this Court has encountered in its nearly 33 years on the bench. What, then, is the appropriate judicial response to such an egregious abuse of the judicial system by such a blatant fraud on the Court?

Despite (or perhaps because of) the gravity of the offense involved, this Court does not write on a clean slate in that regard. Two decades ago the Supreme Court expounded on courts' inherent power to impose sanctions for bad-faith conduct in Chambers v. NASCO, Inc., 501 U.S. 32 (1991). Here, for example, are relevant excerpts from Chambers, id at 44, 44-45:

> Of particular relevance here, the inherent power also allows a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court. See Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944); Universal Oil Products Co. v. Root Refining Co., 328 U.S. 575, 580, 66 S.Ct. 1176, 1179, 90 L.Ed. 1447 (1946). This "historic power of equity to set aside fraudulently

---

[5] If any proof were needed beyond the extraordinarily detailed presentation in Momient's proposed April 17 presentation (and it is not), the genuine Model Contract and Release that contains Momient's actual signature was dated April 24, 2005, while the phony Commission Work Agreement is backdated as well (it bears a fictitious August 11, 2005 date).

5

begotten judgments," Hazel-Atlas, 322 U.S., at 245, 64 S.Ct., at 1001, is necessary to the integrity of the courts, for "tampering with the administration of justice in [this] manner...involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." Id., at 246, 64 S.Ct., at 1001. Moreover, a court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud. Universal Oil, supra, 328 U.S., at 580, 66 S.Ct., at 1179.

                    *        *        *

Because of their very potency, inherent powers must be exercised with restraint and discretion. See Roadway Express, supra, 447 U.S., at 764, 100 S.Ct., at 2463. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. As we recognized in Roadway Express, outright dismissal of a lawsuit, which we had upheld in Link, is a particularly severe sanction, yet is within the court's discretion.

There is more, but it would unnecessarily and unduly lengthen this opinion to enlarge on the potential imposition of sanctions other than dismissal, on which this opinion will focus.[6]

Fortunately courts are rarely called upon to consider fraud-on-the-court conduct of the type engaged in by Flava. But research has turned up an Eighth Circuit case, Pope v. Fed. Express Corp., 974 F.2d 982 (8th Cir. 1992), that dealt with highly comparable conduct (id. at 983):

> Based on expert testimony and demonstrative evidence,

---

[6] Nor is anything said by the dissenting Justices in Chambers that detracts from its force in the excerpts quoted in the text of this opinion. Instead their disagreement focused on other aspects of the majority opinion regarding other potential sanctions.

6

Exhibit 1

the district court ruled that this note could not have been handwritten by defendant Collins, and instead had been manufactured as a cut and paste composite of other documents. The district court concluded that Pope lied during her October 12, 1989, supplemental deposition when she stated, under oath, that the original document with the "handwritten" innuendo, had been left on her desk, presumably by defendant Collins. The district court further ruled that Pope knew, before she produced the document, that it was a manufactured document, and that Pope produced the document with intent to mislead the court.

And the Court of Appeals, id. at 984 went on to hold (citing Chambers as authority):

Dismissal of Pope's lawsuit is a severe sanction, yet under the circumstances we cannot find that such a sanction constitutes an abuse of the district court's discretion. The dismissal of Pope's suit was based on the district court's finding that manufactured evidence and perjured testimony had been introduced in an attempt to enhance the case through fraudulent conduct. When a litigant's conduct abuses the judicial process, the Supreme Court has recognized dismissal of a lawsuit to be a remedy within the inherent power of the court. We affirm the district court's dismissal of Pope's Title VII action.

In sum, then, this Court anticipates the dismissal of Flava's TAC and its action against Momient with prejudice. But although it is difficult to conceive any predicate for Flava's refutation of the skillfully-put-together presentation that demonstrates its fraud, this Court will give Flava the opportunity to do so.

Two related aspects of this litigation should also be addressed briefly here. One has to do with the possibility of other sanctions on the plaintiff's side of the "v." sign, and the

7

other has to do with the status of Momient's ACc.

As for the first possibility, this Court anticipates that it may receive input from the parties (although nonlawyer Momient cannot of course recover attorney's fees under Fed. R. Civ. P. 11 or otherwise). And although nothing that has taken place before this Court suggests that Flava's attorney Meanith Huon would have played any role in the fraud discussed here, inquiry may perhaps be directed to him both to confirm that and to provide information as to the generation of the bogus document (in that regard the question of attorney-client privilege need not bar such inquiry for more than one reason, a matter that does not require further elaboration at this point).

As for the other side of the "v." sign, the dismissal of Flava's action through the exercise of inherent judicial power does not necessarily assure the success of Momient's ACc. It remains possible, as a matter or fact or law or both, that Momient's role in the development and production of the disputed material while he was affiliated with Flava was indeed subject to a "work for hire" limitation that precluded his ownership and hence any valid copyright interest on his part. That too remains for future determination.

Milton I. Shadur
Senior United States District Judge

Date: April 16, 2013

8

Exhibit 1

## Form 1120S — U.S. Income Tax Return for an S Corporation

**Form 1120S**

► Do not file this form unless the corporation has filed or is attaching Form 2553 to elect to be an S corporation.
► Information about Form 1120S and its separate instructions is at www.irs.gov/form1120s.

Department of the Treasury — Internal Revenue Service

OMB No. 1545-0123

**2014**

For calendar year 2014 or tax year beginning _____, 2014, ending _____

A S election effective date: 11/03/04

B Business activity code number (see instrs): 512100

C Check if Schedule M-3 attached ☐

TYPE OR PRINT:
Name: Flava Works, Inc.
Number, street, and room or suite no. If a P.O. box, see instructions: 3526 South Prairie Ave
City or town, state or province, country, and ZIP or foreign postal code: Chicago IL 60653

D Employer Identification Number: [redacted]
E Date incorporated: 11/03/04
F Total assets (see instructions): $ 192,772.

G Is the corporation electing to be an S corporation beginning with this tax year? ☐ Yes ☒ No If 'Yes,' attach Form 2553 if not already filed

H Check if: (1) ☐ Final return (2) ☐ Name change (3) ☒ Address change (4) ☐ Amended return (5) ☐ S election termination or revocation

I Enter the number of shareholders who were shareholders during any part of the tax year ► 1

Caution. Include only trade or business income and expenses on lines 1a through 21. See the instructions for more information.

**Income**

| | | | |
|---|---|---|---|
| 1a | Gross receipts or sales | 1a | 474,769. |
| b | Returns and allowances | 1b | 20,984. |
| c | Balance. Subtract line 1b from line 1a | 1c | 453,785. |
| 2 | Cost of goods sold (attach Form 1125-A) | 2 | 29,890. |
| 3 | Gross profit. Subtract line 2 from line 1c | 3 | 423,895. |
| 4 | Net gain (loss) from Form 4797, line 17 (attach Form 4797) | 4 | |
| 5 | Other income (loss) (see instrs — att statement) | 5 | |
| 6 | Total income (loss). Add lines 3 through 5 | 6 | 423,895. |

**Deductions** (see instructions)

| | | | |
|---|---|---|---|
| 7 | Compensation of officers (see instructions - attach Form 1125-E) | 7 | |
| 8 | Salaries and wages (less employment credits) | 8 | 16,512. |
| 9 | Repairs and maintenance | 9 | 5,044. |
| 10 | Bad debts | 10 | 2,409. |
| 11 | Rents | 11 | 75,221. |
| 12 | Taxes and licenses | 12 | 6,541. |
| 13 | Interest | 13 | 119. |
| 14 | Depreciation not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | 14 | |
| 15 | Depletion (Do not deduct oil and gas depletion.) | 15 | |
| 16 | Advertising | 16 | 35,340. |
| 17 | Pension, profit-sharing, etc, plans | 17 | |
| 18 | Employee benefit programs | 18 | 657. |
| 19 | Other deductions (attach statement) .STMT | 19 | 292,061. |
| 20 | Total deductions. Add lines 7 through 19 | 20 | 433,904. |
| 21 | Ordinary business income (loss). Subtract line 20 from line 6 | 21 | -10,009. |

**Tax and Payments**

| | | | |
|---|---|---|---|
| 22a | Excess net passive income or LIFO recapture tax (see instructions) | 22a | |
| b | Tax from Schedule D (Form 1120S) | 22b | |
| c | Add lines 22a and 22b (see instructions for additional taxes) | 22c | |
| 23a | 2014 estimated tax payments and 2013 overpayment credited to 2014 | 23a | |
| b | Tax deposited with Form 7004 | 23b | |
| c | Credit for federal tax paid on fuels (attach Form 4136) | 23c | |
| d | Add lines 23a through 23c | 23d | |
| 24 | Estimated tax penalty (see instructions). Check if Form 2220 is attached ► ☐ | 24 | |
| 25 | Amount owed. If line 23d is smaller than the total of lines 22c and 24, enter amount owed | 25 | |
| 26 | Overpayment. If line 23d is larger than the total of lines 22c and 24, enter amount overpaid | 26 | |
| 27 | Enter amount from line 26 Credited to 2015 estimated tax ► Refunded ► | 27 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer: [signature] Date: 9-15-15 Title: CEO

May the IRS discuss this return with the preparer shown below (see instructions)? ☐ Yes ☐ No

**Paid Preparer Use Only**

Print/Type preparer's name: _____ Preparer's signature: _____ Date: _____ Check ☐ if self-employed PTIN: _____
Firm's name ► Self-Prepared
Firm's address ► _____ Firm's EIN ► _____ Phone no. _____

BAA For Paperwork Reduction Act Notice, see separate instructions.
SPSA0112 08/06/14
Form 1120S (2014)

---

## Form 1120S (2014) Flava Works, Inc.

Page 2

### Schedule B — Other Information (see instructions)

| | | Yes | No |
|---|---|---|---|
| 1 | Check accounting method: a ☐ Cash b ☒ Accrual c ☐ Other (specify) ► _____ | | |
| 2 | See the instructions and enter the: a Business activity ► Distributor / wholesaler b Product or service ► Videos | | |
| 3 | At any time during the tax year, was any shareholder of the corporation a disregarded entity, a trust, an estate, or a nominee or similar person? If "Yes," attach Schedule B-1, Information on Certain Shareholders of an S Corporation | | X |
| 4 | At the end of the tax year, did the corporation: | | |
| a | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total stock issued and outstanding of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If 'Yes,' complete (i) through (v) below | | X |

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage of Stock Owned | (v) If Percentage in (iv) is 100%, Enter the Date (if any) a Qualified Subchapter S Subsidiary Election Was Made |
|---|---|---|---|---|
| | | | | |

b Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If 'Yes,' complete (i) through (v) below ... X

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum % Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |

| | | Yes | No |
|---|---|---|---|
| 5a | At the end of the tax year, did the corporation have any outstanding shares of restricted stock? | | X |
| | If 'Yes,' complete lines (i) and (ii) below. | | |
| | (i) Total shares of restricted stock ► _____ | | |
| | (ii) Total shares of non-restricted stock ► _____ | | |
| b | At the end of the tax year, did the corporation have any outstanding stock options, warrants, or similar instruments? | | X |
| | If 'Yes,' complete lines (i) and (ii) below. | | |
| | (i) Total shares of stock outstanding at the end of the tax year ► _____ | | |
| | (ii) Total shares of stock outstanding if all instruments were executed ► _____ | | |
| 6 | Has this corporation filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? | | X |
| 7 | Check this box if the corporation issued publicly offered debt instruments with original issue discount ► ☐ If checked, the corporation may have to file Form 8281, Information Return for Publicly Offered Original Issue Discount Instruments. | | |
| 8 | If the corporation: (a) was a C corporation before it elected to be an S corporation or the corporation acquired an asset with a basis determined by reference to the basis of the asset (or the basis of any other property) in the hands of a C corporation and (b) has net unrealized built-in gain in excess of the net recognized built-in gain from prior years, enter the net unrealized built-in gain reduced by net recognized built-in gain from prior years (see instructions) ► $ _____ | | |
| 9 | Enter the accumulated earnings and profits of the corporation at the end of the tax year $ _____ | | |
| 10 | Does the corporation satisfy both of the following conditions? | | |
| a | The corporation's total receipts (see instructions) for the tax year were less than $250,000 | | |
| b | The corporation's total assets at the end of the tax year were less than $250,000 | | X |
| | If 'Yes,' the corporation is not required to complete Schedules L and M-1. | | |
| 11 | During the tax year, did the corporation have any non-shareholder debt that was canceled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? | | X |
| | If 'Yes,' enter the amount of principal reduction $ _____ | | |
| 12 | During the tax year, was a qualified subchapter S subsidiary election terminated or revoked? If 'Yes,' see instructions | | X |
| 13a | Did the corporation make any payments in 2014 that would require it to file Form(s) 1099? | X | |
| b | If 'Yes,' did the corporation file or will it file required Forms 1099? | X | |

Form 1120S (2014)
SPSA0112 12/23/14

**Exhibit I**
**Exhibit 1**

## Page 3

Form 1120S (2014)  Flava Works, Inc.

**Schedule K** | **Shareholders' Pro Rata Share Items** | | **Total amount**
---|---|---|---

**Income (Loss)**

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) (page 1, line 21) | 1 | -10,009. |
| 2 | Net rental real estate income (loss) (attach Form 8825) | 2 | |
| 3a | Other gross rental income (loss) | 3a | |
| b | Expenses from other rental activities (attach statement) | 3b | |
| c | Other net rental income (loss). Subtract line 3b from line 3a | 3c | |
| 4 | Interest income | 4 | 0. |
| 5 | Dividends:  a Ordinary dividends | 5a | 0. |
| | b Qualified dividends | 5b | 0. |
| 6 | Royalties | 6 | 5,313. |
| 7 | Net short-term capital gain (loss) (attach Schedule D (Form 1120S)) | 7 | |
| 8a | Net long-term capital gain (loss) (attach Schedule D (Form 1120S)) | 8a | 0. |
| b | Collectibles (28%) gain (loss) | 8b | 0. |
| c | Unrecaptured section 1250 gain (attach statement) | 8c | |
| 9 | Net section 1231 gain (loss) (attach Form 4797) | 9 | |
| 10 | Other income (loss) (see instructions)      Type ► | 10 | |

**Deductions**

| | | | |
|---|---|---|---|
| 11 | Section 179 deduction (attach Form 4562) | 11 | |
| 12a | Charitable contributions ... Contribution (100%) | 12a | 5,094. |
| b | Investment interest expense | 12b | |
| c | Section 59(e)(2) expenditures  (1) Type ► _____ (2) Amount ► | 12c (2) | |
| d | Other deductions (see instructions)... Type ► | 12d | |

**Credits**

| | | | |
|---|---|---|---|
| 13a | Low-income housing credit (section 42(j)(5)) | 13a | |
| b | Low-income housing credit (other) | 13b | |
| c | Qualified rehabilitation expenditures (rental real estate) (attach Form 3468, if applicable) | 13c | |
| d | Other rental real estate credits (see instrs)    Type ► | 13d | |
| e | Other rental credits (see instrs)    Type ► | 13e | |
| f | Biofuel producer credit (attach Form 6478) | 13f | |
| g | Other credits (see instructions)    Type ► | 13g | |

**Foreign Trans-actions**

| | | | |
|---|---|---|---|
| 14a | Name of country or U.S. possession    ► | | |
| b | Gross income from all sources | 14b | |
| c | Gross income sourced at shareholder level | 14c | |
| | Foreign gross income sourced at corporate level | | |
| d | Passive category | 14d | |
| e | General category | 14e | |
| f | Other (attach statement) | 14f | |
| | Deductions allocated and apportioned at shareholder level | | |
| g | Interest expense | 14g | |
| h | Other | 14h | |
| | Deductions allocated and apportioned at corporate level to foreign source income | | |
| i | Passive category | 14i | |
| j | General category | 14j | |
| k | Other (attach statement) | 14k | |
| | Other information | | |
| l | Total foreign taxes (check one): ►  ☐ Paid  ☐ Accrued | 14l | |
| m | Reduction in taxes available for credit (attach statement) | 14m | |
| n | Other foreign tax information (attach statement) | | |

**Alternative Minimum Tax (AMT) items**

| | | | |
|---|---|---|---|
| 15a | Post-1986 depreciation adjustment | 15a | |
| b | Adjusted gain or loss | 15b | |
| c | Depletion (other than oil and gas) | 15c | |
| d | Oil, gas, and geothermal properties — gross income | 15d | |
| e | Oil, gas, and geothermal properties — deductions | 15e | |
| f | Other AMT items (attach statement) | 15f | |

**Items Affecting Shareholder Basis**

| | | | |
|---|---|---|---|
| 16a | Tax-exempt interest income | 16a | 0. |
| b | Other tax-exempt income | 16b | |
| c | Nondeductible expenses | 16c | 2,881. |
| d | Distributions (attach stmt if required) (see instrs) | 16d | |
| e | Repayment of loans from shareholders | 16e | |

BAA    SPSA0134  08/06/14    Form **1120S** (2014)

## Page 4

Form 1120S (2014)  Flava Works, Inc.

**Schedule K** | **Shareholders' Pro Rata Share Items** (continued) | | **Total amount**
---|---|---|---

**Other Information**

| | | | |
|---|---|---|---|
| 17a | Investment income | 17a | 5,313. |
| b | Investment expenses | 17b | |
| c | Dividend distributions paid from accumulated earnings and profits | 17c | |
| d | Other items and amounts (attach statement) | | |

**Reconciliation**

| | | | |
|---|---|---|---|
| 18 | Income/loss reconciliation. Combine the amounts on lines 1 through 10 in the far right column. From the result, subtract the sum of the amounts on lines 11 through 12d and 14l | 18 | -9,790. |

**Schedule L** | **Balance Sheets per Books**

| Assets | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|
| | (a) | (b) | (c) | (d) |
| 1  Cash | | -675. | | 5,271. |
| 2a  Trade notes and accounts receivable | 10,262. | | 11,481. | |
| b  Less allowance for bad debts | 0. | 10,262. | 0. | 11,481. |
| 3  Inventories | | 151,311. | | 176,019. |
| 4  U.S. government obligations | | 0. | | 0. |
| 5  Tax-exempt securities (see instructions) | | 0. | | 0. |
| 6  Other current assets (attach stmt) | | | | |
| 7  Loans to shareholders | | 75. | | 0. |
| 8  Mortgage and real estate loans | | 0. | | 0. |
| 9  Other investments (attach statement) .Ln 9.St | | 11,534. | | 1. |
| 10a  Buildings and other depreciable assets | 0. | | 0. | |
| b  Less accumulated depreciation | 0. | 0. | 0. | 0. |
| 11a  Depletable assets | | | | |
| b  Less accumulated depletion | | | | |
| 12  Land (net of any amortization) | | 0. | | 0. |
| 13a  Intangible assets (amortizable only) | 0. | | 0. | |
| b  Less accumulated amortization | 0. | 0. | 0. | 0. |
| 14  Other assets (attach stmt) | | | | |
| 15  Total assets | | 172,507. | | 192,772. |
| **Liabilities and Shareholders' Equity** | | | | |
| 16  Accounts payable | | 467. | | 813. |
| 17  Mortgages, notes, bonds payable in less than 1 year | | 0. | | 0. |
| 18  Other current liabilities (attach stmt) .Ln 18.St | | 14,741. | | 0. |
| 19  Loans from shareholders | | 0. | | 0. |
| 20  Mortgages, notes, bonds payable in 1 year or more | | | | |
| 21  Other liabilities (attach statement)...Ln 21.St | | 350,197. | | 353,836. |
| 22  Capital stock | | 100. | | 100. |
| 23  Additional paid-in capital | | 529,431. | | 598,762. |
| 24  Retained earnings | | | | -12,671. |
| 25  Adjustments to shareholders' equity (att stmt) .Ln.25 St | | -722,429. | | -748,068. |
| 26  Less cost of treasury stock | | 0. | | 0. |
| 27  Total liabilities and shareholders' equity | | 172,507. | | 192,772. |

SPSA0134  12/23/14    Form **1120S** (2014)

# Exhibit 1

Form 1120S (2014)  Flava Works, Inc.          ▇▇▇▇    Page 5

**Schedule M-1** Reconciliation of Income (Loss) per Books With Income (Loss) per Return

Note. The corporation may be required to file Schedule M-3 (see instructions)

| | | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss) per books | -12,671. | 5 | Income recorded on books this year not included on Schedule K, lines 1 through 10 (itemize): | |
| 2 | Income included on Schedule K, lines 1, 2, 3c, 4, 5a, 6, 7, 8a, 9, and 10, not recorded on books this year (itemize): | | | a Tax-exempt interest $ _____ 0. | |
| | | | | | 0. |
| 3 | Expenses recorded on books this year not included on Schedule K, lines 1 through 12, and 14l (itemize): | | 6 | Deductions included on Schedule K, lines 1 through 12 and 14l, not charged against book income this year (itemize): | |
| a | Depreciation . . . . $ _____ | | | a Depreciation . . $ _____ | |
| b | Travel and entertainment. $ _____ 2,881. | | | | |
| | | 2,881. | 7 | Add lines 5 and 6. | 0. |
| 4 | Add lines 1 through 3 . . . . | -9,790. | 8 | Income (loss) (Schedule K, ln 18). Ln 4 less ln 7 | -9,790. |

**Schedule M-2** Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed (see instructions)

| | | (a) Accumulated adjustments account | (b) Other adjustments account | (c) Shareholders' undistributed taxable income previously taxed |
|---|---|---|---|---|
| 1 | Balance at beginning of tax year . . . . . . . . . | | | |
| 2 | Ordinary income from page 1, line 21 . . . . . . | | | |
| 3 | Other additions . . . . . . . . STMT . . . . . . | 5,313. | 0. | |
| 4 | Loss from page 1, line 21 . . . . . . . . | 10,009. | | |
| 5 | Other reductions . . . . . . STMT . . . . . . | 7,975. | | |
| 6 | Combine lines 1 through 5 . . . . . . . . | -12,671. | 0. | |
| 7 | Distributions other than dividend distributions . . . | | | |
| 8 | Balance at end of tax year. Subtract line 7 from line 6 . . | -12,671. | 0. | |

SPSA0134  12/23/14                 Form 1120S (2014)

---

Form **1125-A**

(Rev December 2012)

Department of the Treasury
Internal Revenue Service

**Cost of Goods Sold**

► Attach to Form 1120, 1120-C, 1120-F, 1120S, 1065, or 1065-B.
► Information about Form 1125-A and its instructions is at *www.irs.gov/form1125a.*

OMB No. 1545-2225

Name

Flava Works, Inc.       Employer identification number ▇▇▇▇

| | | | |
|---|---|---|---|
| 1 | Inventory at beginning of year . . . . . . . . . . . . . . . . . . . . . | 1 | |
| 2 | Purchases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 | 29,890. |
| 3 | Cost of labor . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 | |
| 4 | Additional section 263A costs (attach schedule) . . . . . . . . . . . . . . | 4 | |
| 5 | Other costs (attach schedule) . . . . . . . . . . . . . . . . . . . . | 5 | |
| 6 | Total. Add lines 1 through 5 . . . . . . . . . . . . . . . . . . . . . | 6 | 29,890. |
| 7 | Inventory at end of year . . . . . . . . . . . . . . . . . . . . . . | 7 | |
| 8 | Cost of goods sold. Subtract line 7 from line 6. Enter here and on Form 1120, page 1, line 2 or the appropriate line of your tax return (see instructions) . . . . . . . . . . . . . . . . | 8 | 29,890. |

9 a  Check all methods used for valuing closing inventory:

(i)  [X] Cost

(ii)  [ ] Lower of cost or market

(iii)  [ ] Other (Specify method used and attach explanation) . . . ► _____

b  Check if there was a writedown of subnormal goods . . . . . . . . . . . . . . . . . . . . . . . . . . . ► [ ]

c  Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) . . . . . . . . ► [ ]

d  If the LIFO inventory method was used for this tax year, enter amount of closing inventory computed under LIFO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9d |

e  If property is produced or acquired for resale, do the rules of section 263A apply to the entity (see instructions)? . . . . . . . [ ] Yes [ ] No

f  Was there any change in determining quantities, cost, or valuations between opening and closing inventory? If 'Yes,' attach explanation . . . . . . . . . . . . . . . . . . . . . . . . . . . . [ ] Yes [X] No

BAA  For Paperwork Reduction Act Notice, see instructions.          Form **1125-A** (Rev 12-2012)

CPCZ0401  12/26/12

Exhibit 1

## SCHEDULE D (Form 1120S)

**Capital Gains and Losses and Built-in Gains**

► Attach to Form 1120S.
► Use Form 8949 to list your transactions for lines 1b, 2, 3, 8b, 9, and 10.
► Information about Schedule D and its separate instructions is at www.irs.gov/form1120s.

Department of the Treasury
Internal Revenue Service

OMB No. 1545-0123

**2014**

Name

Flava Works, Inc.

number

### Part I — Short-Term Capital Gains and Losses — Assets Held One Year or Less

See instructions for how to figure the amounts to enter on the lines below.

This form may be easier to complete if you round off the cents to whole dollars.

| | (d) Proceeds (sales price) | (e) Cost (or other basis) | (g) Adjustments to gain or loss from Form(s) 8949, Part I, line 2, column (g) | (h) Gain or (loss). Subtract column (e) from column (d) and combine the result with column (g) |
|---|---|---|---|---|
| 1a Totals for all short-term transactions reported on Form 1099-B for which basis was reported to the IRS and for which you have no adjustments (see instructions). However, if you choose to report all these transactions on Form 8949, leave this line blank and go to line 1b . . . . . . . . . . . | | | | |
| 1b Totals for all transactions reported on Form(s) 8949 with **Box A** checked. . . . . . . | | | | |
| 2 Totals for all transactions reported on Form(s) 8949 with **Box B** checked. . . . . . . | | | | |
| 3 Totals for all transactions reported on Form(s) 8949 with **Box C** checked. . . . . . . | | | | |

4 Short-term capital gain from installment sales from Form 6252, line 26 or 37 . . . . . . . . . . . . . . . . **4**

5 Short-term capital gain or (loss) from like-kind exchanges from Form 8824 . . . . . . . . . . . . . . . . **5**

6 Tax on short-term capital gain included on line 23 below . . . . . . . . . . . . . . . . . . . . . **6**

7 **Net short-term capital gain or (loss).** Combine lines 1a through 6 in column (h). Enter here and on Form 1120S, Schedule K, line 7 or 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

### Part II — Long-Term Capital Gains and Losses — Assets Held More Than One Year

See instructions for how to figure the amounts to enter on the lines below.

This form may be easier to complete if you round off the cents to whole dollars.

| | (d) Proceeds (sales price) | (e) Cost (or other basis) | (g) Adjustments to gain or loss from Form(s) 8949, Part II, line 2, column (g) | (h) Gain or (loss). Subtract column (e) from column (d) and combine the result with column (g) |
|---|---|---|---|---|
| 8a Totals for all long-term transactions reported on Form 1099-B for which basis was reported to the IRS and for which you have no adjustments (see instructions). However, if you choose to report all these transactions on Form 8949, leave this line blank and go to line 8b . . . . . . . . . . . | | | | |
| 8b Totals for all transactions reported on Form(s) 8949 with **Box D** checked . . . . . . | | | | |
| 9 Totals for all transactions reported on Form(s) 8949 with **Box E** checked . . . . . . | | | | |
| 10 Totals for all transactions reported on Form(s) 8949 with **Box F** checked . . . . . . | | | | |

11 Long-term capital gain from installment sales from Form 6252, line 26 or 37 . . . . . . . . . . . . . . . **11**

12 Long-term capital gain or (loss) from like-kind exchanges from Form 8824 . . . . . . . . . . . . . . . . **12**

13 Capital gain distributions (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . **13**   0.

14 Tax on long-term capital gain included on line 23 below . . . . . . . . . . . . . . . . . . . . . **14**

15 **Net long-term capital gain or (loss).** Combine lines 8a through 14 in column (h). Enter here and on Form 1120S, Schedule K, line 8a or 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**   0.

BAA **For Paperwork Reduction Act Notice, see the Instructions for Form 1120S.**

Schedule D (Form 1120S) 2014

---

Schedule D (Form 1120S) 2014   Flava Works, Inc.

Page 2

### Part III — Built-in Gains Tax (See instructions **before** completing this part.)

16 Excess of recognized built-in gains over recognized built-in losses (attach computation statement) . . . . . . . . . . . . . . . . . **16**

17 Taxable income (attach computation statement) . . . . . . . . . . . . . . . . . . . . . . . . . . **17**

18 Net recognized built-in gain. Enter the smallest of line 16, line 17, or line 8 of Schedule B . . . . . . . . . . . . . . . **18**

19 Section 1374(b)(2) deduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**

20 Subtract line 19 from line 18. If zero or less, enter -0- here and on line 23 . . . . . . . . . . . . . . . **20**

21 Enter 35% of line 20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

22 Section 1374(b)(3) business credit and minimum tax credit carryforwards from C corporation years . . . . . . . . . **22**

23 **Tax.** Subtract line 22 from line 21 (if zero or less, enter -0-). Enter here and on Form 1120S, page 1, line 22b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**

Schedule D (Form 1120S) 2014

Exhibit 1

## Schedule K-1 (Form 1120S) — 2014

Final K-1 ☐  Amended K-1 ☐  OMB No. 1545-0123  671113

**Schedule K-1 (Form 1120S)** — 2014

Department of the Treasury, Internal Revenue Service

For calendar year 2014, or tax year beginning _____ , 2014 ending _____

**Shareholder's Share of Income, Deductions, Credits, etc** ► See page 2 of form and separate instructions.

### Part I — Information About the Corporation

A. Corporation's employer identification number

B. Corporation's name, address, city, state, and ZIP code
Flava Works, Inc.
3526 South Prairie Ave
Chicago, IL 60653

C. IRS Center where corporation filed return
Cincinnati, OH 45999-0013

### Part II — Information About the Shareholder

D. Shareholder's identifying number

E. Shareholder's name, address, city, state, and ZIP code
Philip Bleicher
3526 South Prairie Ave
Chicago, IL 60653

F. Shareholder's percentage of stock ownership for tax year . . . . . . . . . . . 100.00000 %

### Part III — Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items

| # | Item | Amount |
|---|------|--------|
| 1 | Ordinary business income (loss) | -10,009. |
| 2 | Net rental real estate income (loss) | |
| 3 | Other net rental income (loss) | |
| 4 | Interest income | 0. |
| 5a | Ordinary dividends | 0. |
| 5b | Qualified dividends | 0. |
| 6 | Royalties | 5,313. |
| 7 | Net short-term capital gain (loss) | |
| 8a | Net long-term capital gain (loss) | 0. |
| 8b | Collectibles (28%) gain (loss) | 0. |
| 8c | Unrecaptured section 1250 gain | |
| 9 | Net section 1231 gain (loss) | |
| 10 | Other income (loss) | |
| 11 | Section 179 deduction | |
| 12 | Other deductions — G | 5,094. |
| 13 | Credits | |
| 14 | Foreign transactions | |
| 15 | Alternative minimum tax (AMT) items | |
| 16 | Items affecting shareholder basis — A | 0.  C | 2,881. |
| 17 | Other information — A | 5,313. |

*See attached statement for additional information.

BAA  For Paperwork Reduction Act Notice, see Instructions for Form 1120S.   Schedule K-1 (Form 1120S) 2014

SPSA0412  11/19/14



Schedule K-1 (Form 1120S) 2014  Flava Works, Inc.   20-1837529   Page 2

Schedule K-1 (Form 1120S) 2014

SPSA0412  11/28/14

## Exhibit 1

## Page 1

Flava Works, Inc.   20-1837529                     1

**Form 1120S, Page 1, Line 19**
**Other Deductions**

| | |
|---|---|
| Accounting | 10,198. |
| Bank charges | 11,687. |
| Computer services and supplies | 40. |
| Dues and subscriptions | 1,266. |
| Gifts | 5,094. |
| Legal and professional | 10,024. |
| Meals and entertainment (50%) | 2,882. |
| Meals and entertainment (100%) | 4,830. |
| Outside services/independent contractors | 145,973. |
| Parking fees and tolls | 5,058. |
| Postage | 13,108. |
| Printing | 1,712. |
| Supplies | 19,554. |
| Telephone | 22,462. |
| Travel | 26,764. |
| Uniforms | 10,260. |
| Dorm Operations | 661. |
| Photo Accessories | 406. |
| Miscellaneous | 82. |
| **Total** | **292,061.** |

**Other Investments:**
**1120S, Schedule L, Line 9**

| Other Investments: | Beginning of tax year | End of tax year |
|---|---|---|
| Security Deposit | 8,031. | 0. |
| Bank Suspense | 3,503. | 1. |
| Total | 11,534. | 1. |

**Other Current Liabilities:**
**1120S, Schedule L, Line 18**

| Other Current Liabilities: | Beginning of tax year | End of tax year |
|---|---|---|
| Credit Cards | 14,741. | 0. |
| Total | 14,741. | 0. |

**Other Liabilities:**
**1120S, Schedule L, Line 21**

| Other Liabilities: | Beginning of tax year | End of tax year |
|---|---|---|
| Payroll Tax Liabilities | 350,197. | 353,836. |
| Total | 350,197. | 353,836. |

## Page 2

Flava Works, Inc.   20-1837529                     2

Adjustments to shareholders' equity:
**1120S, Schedule L, Line 25**

| Adjustments to Shareholders' Equity: | Beginning of tax year | End of tax year |
|---|---|---|
| Capital Draws | -36,915. | -62,553. |
| Prior Year Retained Earnings | -618,618. | -685,515. |
| 2013 Net Income | -66,896. | |
| Total | -722,429. | -748,068. |

**Form 1120S, Page 5, Schedule M-2, Line 3**
**Schedule M-2, Other Additions**

| | | |
|---|---|---|
| Royalty income | 5,313. | |
| Tax exempt interest | | 0. |
| Total | 5,313. | 0. |

**Form 1120S, Page 5, Schedule M-2, Line 5**
**Schedule M-2, Other Reductions**

| | | |
|---|---|---|
| Charitable contributions | 5,094. | |
| Meals and entertainment | 2,881. | |
| Total | 7,975. | |

# Exhibit 1

Case: 1:14-cv-23208-JAL   As of: 03/14/2016 11:19 AM EDT   1 of 14

CLOSED,JG,REF_DISCOV

**U.S. District Court**
**Southern District of Florida (Miami)**
**CIVIL DOCKET FOR CASE #: 1:14−cv−23208−JAL**

Flava Works, Inc. v. A4A Reseau, Inc. et al
Assigned to: Judge Joan A. Lenard
Referred to: Magistrate Judge Jonathan Goodman
Cause: 17:0101 Copyright Infringement

Date Filed: 08/29/2014
Date Terminated: 01/21/2015
Jury Demand: Plaintiff
Nature of Suit: 820 Copyright
Jurisdiction: Federal Question

**Plaintiff**

**Flava Works, Inc.**

represented by **Joshua Howard Sheskin**
J.H. Zidell P.A.
300 71st Street
Suite 605
Miami Beach, FL 33141
305−865−6766
Fax: 305−865−7167
Email: jsheskin.jhzidellpa@gmail.com
*TERMINATED: 10/09/2015*
*LEAD ATTORNEY*

**Juneitha Shambee**
Shambee Law Office, Ltd.
P.O. Box 91
Evanston, IL 60204
773−741−3602
Email: shambeelaw@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ursula Christie Jackson**
The Law Office of Ursula C. Jackson,
P.L.L.C.
2525 Ponce De Leon Boulevard
Coral Gables, FL 33134
(855) 218−8456
Email: ujacksonlaw@aol.com
*TERMINATED: 02/22/2016*
*LEAD ATTORNEY*

**Matthew Howard Zukowsky**
Matthew H. Zukowsky, P.A.
4770 Biscayne Blvd.
Ste. 700
Miami, FL 33137
(561) 445−9471
Email: matthew.zukowsky@gmail.com
*TERMINATED: 10/05/2015*

**Michael Gulisano**
The Law Offices of Michael Gulisano,
PLLC
5613 NW 117th Ave
Coral Springs, FL 33076
561−271−1678
Email: gulisanomichael@gmail.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

---

Case: 1:14-cv-23208-JAL   As of: 03/14/2016 11:19 AM EDT   2 of 14

**A4A Reseau, Inc.**

represented by **John Francis Bradley**
Bradley Legal Group, P.A.
15 Northeast 13 Avenue
Fort Lauderdale, FL 33301
954−523−6160
Fax: 523−6190
Email: jb@bradlegal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**A4A Network, Inc.**

represented by **John Francis Bradley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Marc Parent**

represented by **John Francis Bradley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/29/2014 | 1 | COMPLAINT against All Defendants. Filing fees $ 400.00 receipt number 113C−7034774, filed by Flava Works, Inc.. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit Exhibit A−Plaintiff's Registered Copyrights, # 3 Exhibit Exhibit B−Defendant's Registered Service Mark, # 4 Exhibit Exhibit C−Images, # 5 Exhibit Exhibit D−Plaintiff's Takedown Notices, # 6 Certification)(Jackson, Ursula) (Entered: 08/29/2014) |
| 08/29/2014 | 2 | Judge Assignment to Judge Joan A. Lenard (vjk) (Entered: 09/02/2014) |
| 08/29/2014 | 3 | FORM AO 121 SENT TO DIRECTOR OF U.S. COPYRIGHT OFFICE (vjk) (Entered: 09/02/2014) |
| 10/06/2014 | 4 | NOTICE of Filing Proposed Summons(es) by Flava Works, Inc. (Jackson, Ursula) (Entered: 10/06/2014) |
| 10/06/2014 | 5 | NOTICE of Filing Proposed Summons(es) by Flava Works, Inc. (Jackson, Ursula) (Entered: 10/06/2014) |
| 10/06/2014 | 6 | NOTICE of Filing Proposed Summons(es) by Flava Works, Inc. (Jackson, Ursula) (Entered: 10/06/2014) |
| 10/06/2014 | 7 | Summons Issued as to A4A Reseau, Inc.. (cqs) (Entered: 10/06/2014) |
| 10/06/2014 | 8 | Summons Issued as to A4A Network, Inc.. (cqs) (Entered: 10/06/2014) |
| 10/06/2014 | 9 | NOTICE of Filing Proposed Summons(es) by Flava Works, Inc. (Jackson, Ursula) (Entered: 10/06/2014) |
| 10/06/2014 | 10 | Summons Issued as to Marc Parent, (cqs) (Entered: 10/06/2014) |
| 11/06/2014 | 11 | Defendant's MOTION TO DISMISS 1 Complaint, FOR FAILURE TO STATE A CLAIM , MOTION to Strike 1 Complaint, , MOTION for More Definite Statement by A4A Network, Inc., A4A Reseau, Inc., Marc Parent. Attorney John Francis Bradley added to party A4A Network, Inc.(pty:dft), Attorney John Francis Bradley added to party A4A Reseau, Inc.(pty:dft), Attorney John Francis Bradley added to party Marc Parent(pty:dft). Responses due by 11/24/2014 (Bradley, John) (Entered: 11/06/2014) |
| 11/19/2014 | 12 | NOTICE of Compliance *Rule 7.1 Disclosure* by A4A Reseau, Inc., A4A Network, Inc., Marc Parent (Bradley, John) (Entered: 11/19/2014) |

Exhibit 1

Case: 1:14-cv-23208-JAL   As of: 03/14/2016 11:19 AM EDT   3 of 14

| | | |
|---|---|---|
| 11/21/2014 | 13 | Plaintiff's MOTION for Extension of Time to File Response/Reply by Flava Works, Inc.. (Attachments: # 1 Text of Proposed Order)(Jackson, Ursula) (Entered: 11/21/2014) |
| 11/24/2014 | 14 | ORDER GRANTING 13 Plaintiff's Motion for an Extension of Time in Which to Respond to Motion to Dismiss, Failure to State a Claim and Motion for More Definite Statement. Plaintiff shall have until and including January 2, 2014 to file a response. This entry constitutes the ENDORSED ORDER in its entirety. Signed by Judge Joan A. Lenard on 11/24/2014. (gie) (Entered: 11/24/2014) |
| 12/31/2014 | 15 | Motion For Extentention of Time to Respond re 13 Plaintiff's MOTION for Extension of Time to File Response/Reply , 11 Defendant's MOTION TO DISMISS 1 Complaint, FOR FAILURE TO STATE A CLAIM MOTION to Strike 1 Complaint, MOTION for More Definite Statement filed by Flava Works, Inc.. (Attachments: # 1 Text of Proposed Order)(Jackson, Ursula)Relief and text Modified on 1/5/2015 (cqs). (Entered: 12/31/2014) |
| 12/31/2014 | 16 | Second MOTION for Extension of Time to File Response/Reply/Answer as to 14 Order on Motion for Extension of Time to File Response/Reply/Answer, 15 Response in Support of Motion, by Flava Works, Inc.. (Attachments: # 1 Text of Proposed Order)(Jackson, Ursula) (Entered: 12/31/2014) |
| 01/05/2015 | 17 | Clerks Notice to Filer re 15 Response in Support of Motion,. **Wrong Event Selected − Document is a Motion**; ERROR − The Filer selected the wrong event. A motion event must always be selected when filing a motion. The correction was made by the Clerk. It is not necessary to refile this document. (cqs) (Entered: 01/05/2015) |
| 01/05/2015 | 18 | ORDER GRANTING 16 Plaintiff's Motion for Extension of Time in Which to Respond to Defendant's Motion to Dismiss, Failure to State a Claim, and Motion for More Definite Statement. Plaintiff shall have until and including January 20, 2015 to file a Response. This entry constitutes the ENDORSED ORDER in its entirety. Responses due by 1/20/2015 Signed by Judge Joan A. Lenard on 1/5/2015. (gie) (Entered: 01/05/2015) |
| 01/05/2015 | 19 | ORDER DENYING AS MOOT 15 Plaintiff's Motion for an Extension of Time in Which to Respond to Motion to Dismiss, Failure to State a Claim and Motion for More Definite Statement in light of the Court's 18 Order on Plaintiff's Second Motion of the same title. (See D.E. 16 .) Signed by Judge Joan A. Lenard on 1/5/2015. (gie) (Entered: 01/05/2015) |
| 01/16/2015 | 20 | *Defendants'* ANSWER and Affirmative Defenses to Complaint by A4A Network, Inc., A4A Reseau, Inc., Marc Parent. (Bradley, John) (Entered: 01/16/2015) |
| 01/16/2015 | 21 | ORDER REGARDING FORMATTING OF FILINGS. The body of all filings shall be (1) double−spaced (with the exception of block quotations), and (2) printed in 12−point or larger type in an easily−readable font. Consistent with Local Rule 5.1, footnotes may be single−spaced but must be at least 12−point font. Furthermore, all filings are limited to forty−six (46) lines of footnoted material, which is equal to one full page of single−spaced, 12−point font text. All page limitations set forth by the Local Rules shall be observed. Non−compliant filings may be stricken from the record. All filings shall certify that the filing complies with the Local Rules and the Court's Orders. This entry constitutes the ENDORSED ORDER in its entirety. Signed by Judge Joan A. Lenard on 1/16/2015. (gie) (Entered: 01/16/2015) |
| 01/20/2015 | 22 | NOTICE of Voluntary Dismissal *Without Prejudice* by Flava Works, Inc. (Jackson, Ursula) (Entered: 01/20/2015) |
| 01/21/2015 | 23 | ORDER DISMISSING CASE WITHOUT PREJUDICE. On January 20, 2015, Plaintiff filed a 22 Notice of Voluntary Dismissal Without Prejudice, wherein it stated its intention to voluntarily dismiss this case without prejudice. Because Defendants have filed an answer 20 in this case and because the 22 Notice of Dismissal is not signed by all parties who have appeared, pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, the "action may be dismissed at the plaintiff's request only by court order." Accordingly, upon review of the 22 Notice, and pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, it is ORDERED AND ADJUDGED that: (1) this case is DISMISSED WITHOUT |

Case: 1:14-cv-23208-JAL   As of: 03/14/2016 11:19 AM EDT   4 of 14

| | | |
|---|---|---|
| | | PREJUDICE; (2) all pending motions are DENIED AS MOOT; and (3) this case is now CLOSED. This entry constitutes the ENDORSED ORDER in its entirety. Signed by Judge Joan A. Lenard on 1/21/2015. (gie)<br><br>**NOTICE: If there are sealed documents in this case, they may be unsealed after 1 year or as directed by Court Order, unless they have been designated to be permanently sealed. See Local Rule 5.4 and Administrative Order 2014−69.** (Entered: 01/21/2015) |
| 02/04/2015 | 24 | MOTION for Attorney Fees ( Responses due by 2/23/2015), MOTION to Reopen Case , MOTION to Set Aside 23 Order Dismissing Case,,,, 22 Notice of Voluntary Dismissal by A4A Network, Inc., A4A Reseau, Inc., Marc Parent. (Attachments: # 1 Exhibit, # 2 Exhibit)(Bradley, John). Added MOTION to Consolidate Cases on 2/4/2015 (cqs). (Entered: 02/04/2015) |
| 02/24/2015 | 25 | STRICKEN MOTION for Extension of Time to File Response/Reply/Answer as to 24 MOTION for Attorney Fees MOTION to Reopen Case MOTION to Set Aside 23 Order Dismissing Case,,,, 22 Notice of Voluntary Dismissal MOTION to Consolidate Cases by Flava Works, Inc..(Pro Se) (cqs) Modified on 2/25/2015 Stricken per de# 26 (dj). (Entered: 02/24/2015) |
| 02/25/2015 | 26 | ORDER STRIKING 25 Motion for Extension of Time to Respond. On August 29, 2014, Plaintiff filed a one−count 1 Complaint alleging copyright infringement by the three Defendants. On January 21, 2015, the Court entered an Order Dismissing this case without prejudice pursuant to Plaintiff's 22 Notice of Voluntary Dismissal Without Prejudice, filed January 20, 2015. (See D.E. 23.) Also on January 21, 2015, Plaintiff filed a virtually identical lawsuit against the same Defendants in the United States District Court for the Northern District of Illinois in Case No. 15−cv−00610. Also on January 21, 2015, A4A Reseau, Inc. and Marc Parent, who are Defendants in the instant Action, filed a Complaint for Declaratory Relief against Plaintiff Flava Works, Inc., and its principal, Phillip Bleicher. (See A4A Reseau, Inc. v. Bleicher, Case No. 15−cv−20245−COOKE (S.D. Fla. Jan. 21, 2015). On February 4, 2015, Defendants filed a 24 Motion to Set Aside Dismissal, to Reinstate Action, to Consolidate Actions, and to Award Attorneys' Fees. On February 24, 2015, Plaintiffs' principal, Phillip Bleicher, filed the instant Motion for Extension of Time to Respond, in which he states that Plaintiff relieved its former counsel, Ursula Jackson, on January 20, 2015—the same day it filed its Motion for Voluntary Dismissal—and has been unable to find replacement counsel to respond to Defendants' Motion. Because a corporation can only act through counsel, Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385 (11th Cir. 1985), it is ORDERED AND ADJUDGED that Plaintiff's Motion for Enlargement of Time is STRICKEN from the record.<br><br>It is FURTHER ORDERED AND ADJUDGED that Plaintiff shall have until and including March 4, 2015 to hire counsel and respond to Defendants' Motion to Set Aside Dismissal or SHOW CAUSE why the Court should not award Defendants attorneys' fees pursuant to Federal Rule of Civil Procedure 41(d)(1), which states: "If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court... may order the plaintiff to pay all or part of the costs of that previous action[.]" This entry constitutes the ENDORSED ORDER in its entirety. Signed by Judge Joan A. Lenard on 2/25/2015. (gie) (Entered: 02/25/2015) |
| 03/04/2015 | 27 | NOTICE by A4A Network, Inc., A4A Reseau, Inc., Marc Parent re 26 Order on Motion for Extension of Time to File Response/Reply/Answer,,,,,,, *of Non−Compliance by Plaintiff with Endorsed Order and L.R. 3.8 S.D.F.L* (Attachments: # 1 Exhibit Exhibit 1) (Bradley, John) (Entered: 03/05/2015) |
| 03/05/2015 | 28 | ORDER GRANTING IN PART AND DENYING IN PART 24 Defendants' Motion to Set Aside Dismissal, to Reinstate Action, to Consolidate Actions, and to Award Attorneys' Fees ("Motion"). Defendants' 24 Motion is GRANTED solely to the extent it requests attorney's fees pursuant to Federal Rule of Civil Procedure 41(d), and DENIED to the extent it requests the Court to set aside dismissal, reinstate this action, and to consolidate the cases. Defendants shall have until and including March 16, 2015, to submit affidavits and supporting documentation to support its attorneys' fees request. This entry constitutes the ENDORSED ORDER |

# Exhibit 1

Case: 1:14-cv-23208-JAL   As of: 03/14/2016 11:19 AM EDT   5 of 14

| | | |
|---|---|---|
| | | in its entirety. Signed by Judge Joan A. Lenard on 3/5/2015. (gie) (Entered: 03/05/2015) |
| 03/05/2015 | 34 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Juneitha Shambee. Filing Fee $ 75.00. Receipt # 96158. (ksa) (Entered: 03/06/2015) |
| 03/06/2015 | 29 | RESPONSE In Opposition To Motion To Set Aside, Reinstate Action and Attorney fees with attached Notice of Deficiency. by Flava Works, Inc.. (cqs) (Entered: 03/06/2015) |
| 03/06/2015 | 30 | NOTICE Of Filing by Flava Works, Inc. re 29 Response/Reply (Other) with attached deficiency notice.. Attorney Matthew Howard Zukowsky added to party Flava Works, Inc.(pty:pla). (cqs) (Entered: 03/06/2015) |
| 03/06/2015 | 31 | MOTION for Extension of Time to File Response by Flava Works, Inc.. (cqs) (Entered: 03/06/2015) |
| 03/06/2015 | 32 | NOTICE of Attorney Appearance by Matthew Howard Zukowsky on behalf of Flava Works, Inc. (cqs) (Entered: 03/06/2015) |
| 03/06/2015 | 33 | MOTION to Vacate 28 Order on Motion for Attorney Fees, Order on Motion to Reopen Case, Order on Motion to Set Aside, Order on Motion to Consolidate Cases,,,,,,,,, by Flava Works, Inc.. Responses due by 3/23/2015 (cqs) (Entered: 03/06/2015) |
| 03/06/2015 | 35 | ORDER DENYING without prejudice 34 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing of Attorney Juneitha Shambee. Movant, Matthew H. Zukowsky, is not authorized to file through CM/ECF and did not sign the Motion with an original signature as required by the Local Rules and CM/ECF Administrative Procedures. Additionally, Attorney Juneitha Shambee did not attach a Certification that she has studied the Local Rules, as required by the Local Rules. Accordingly, the Motion is DENIED WITHOUT PREJUDICE. Notice of Termination delivered by US Mail to Juneitha Shambee. This entry constitutes the ENDORSED ORDER in its entirety. Signed by Judge Joan A. Lenard on 3/6/2015. (gie) (Entered: 03/06/2015) |
| 03/06/2015 | 36 | ORDER DENYING AS MOOT Plaintiff's 31 Motion for Extension of Time to Respond, and DENYING Plaintiff's 33 Motion to Vacate the Order Grating Defendant's Motion for Attorney's Fees. On January 20, 2015, Plaintiff filed a 22 Notice of Voluntary Dismissal Without Prejudice. The same day—before the Court had dismissed this case—Plaintiff relieved its Florida counsel, Ursula Jackson. (See D.E. 25 at para. 2.) The next day—January 21, 2015—the Court entered an Order Dismissing this Case Without Prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. (D.E. 23.) The dismissal was entered pursuant to Rule 41(a)(2) because Plaintiff had already filed an Answer to the Complaint. (See D.E. 20 .) Also on January 21, 2015, Plaintiff re-filed its Action against Defendants in the Northern District of Illinois in case number 15-cv-00610. Thus, on February 4, 2015, Defendants filed a Motion in which they requested, inter alia, Attorneys' Fees pursuant to Rule 41(d), which states: "If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court... may order the plaintiff to pay all or part of the costs of that previous action[.]" On February 23, 2015, Plaintiff's owner and CEO, Phillip Bleicher, filed a 25 Motion for Extension of Time to Respond to Defendant's Motion, which the Court struck from the record on grounds that a corporation can act only through counsel. (See D.E. 26 (citing Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385 (11th Cir. 1985)). The Court granted Bleicher until March 4, 2015 to hire new counsel and to respond to Defendants' Motion for Attorney's Fees or show cause why the Court should not award Defendants attorneys' fees. (See id.) Due to Plaintiff's failure to timely respond or show cause why the Court should not award Defendants attorneys' fees, on March 5, 2015, the Court granted Plaintiff's Motion for Attorneys' Fees (but denied the motion in all other respects). Plaintiffs' Motion for Extension of Time to Respond is therefore DENIED AS MOOT. |

Case: 1:14-cv-23208-JAL   As of: 03/14/2016 11:19 AM EDT   6 of 14

| | | |
|---|---|---|
| | | On March 5, 2015, after the Court had entered its Order Granting Defendants' Motion for Attorneys' Fees, Plaintiff filed a 33 Motion to Vacate that Order pursuant to Rule 60(b), which permits a Court to relieve a party from a Court Order upon grounds including mistake, newly discovered evidence, and fraud. Rule 60(b) also contains a "catch−all" provision allowing reconsideration for "any other reason that justifies relief." Plaintiff appears to invoke this "catch−all" provision, arguing that it should be entitled to relief because: (1) it "has attempted profusely to retain an attorney," which it finally did on March 4, 2015, the day the Response was due; and (2) new counsel attempted to file a Response, but could not do so because he is not authorized to file through CM/ECF. The Court finds that Plaintiff has not satisfied the Rule 60(b) standard for relief from the Court's Order. "Rule 60(b)(6) is an extraordinary remedy[.]" Ritter v. Smith, 811 F.2d 1398, 1400 (11th Cir. 1987). Plaintiff had a full month between the date on which Defendants filed their Motion for Attorneys' Fees, February 4, 2015, and the extended deadline to file a Response, March 4, 2015, to secure an attorney who could timely file a Response. Plaintiff's alleged inability to secure an attorney within that period that could timely file a Response does not constitute an "extraordinary circumstances" entitling it to relief. Plaintiffs' Motion to Vacate is therefore DENIED. This entry constitutes the ENDORSED ORDER in its entirety. Signed by Judge Joan A. Lenard on 3/6/2015. (gie) (Entered: 03/06/2015) |
| 03/10/2015 | 37 | NOTICE Of Filing Certification of Juneitha Shambee, Esq by Flava Works, Inc. (cqs) (Entered: 03/10/2015) |
| 03/10/2015 | 38 | Clerk's Notice of Filing Deficiency Re: 37 Notice (Other) filed by Flava Works, Inc.. Document(s) missing required signature(s) (Fed.R.Civ.P. 11(a)). (cqs) (Entered: 03/10/2015) |
| 03/16/2015 | 39 | MOTION for Attorney Fees by A4A Network, Inc., A4A Reseau, Inc., Marc Parent. Responses due by 4/2/2015 (Attachments: # 1 Exhibit Ex A − Bellavance affidavit, # 2 Exhibit Ex B − Fattorosi Affidavit, # 3 Exhibit Ex C − Bradley Affidavit, # 4 Exhibit Ex D − Weiss Affidavit)(Bradley, John) (Entered: 03/16/2015) |
| 03/31/2015 | 40 | NOTICE of Change of Address by Matthew Howard Zukowsky (Zukowsky, Matthew) (Entered: 03/31/2015) |
| 03/31/2015 | 41 | NOTICE by Flava Works, Inc. PLAINTIFFS MOTION AND INCORPORATED MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS MOTION TO DETERMINE REASONABLENESS OF ATTORNEYS FEES AWARDED TO DEFENDANTS (Zukowsky, Matthew) (Entered: 03/31/2015) |
| 03/31/2015 | 42 | STRICKEN MOTION for Leave to File PLAINTIFFS MOTION IN RESPONSE TO DEFENDANTS MOTION TO DETERMINE REASONABLENESS OF ATTORNEYS FEES AWARDED DEFENDANTS by Flava Works, Inc.. (Attachments: # 1 Exhibit EXHIBIT A−DOCKET, # 2 Affidavit EXHIBIT B−AFFIDAVIT, # 3 Exhibit EXHIBIT C−DEFENDANTS MOTION, # 4 Affidavit)(Zukowsky, Matthew) Modified on 4/1/2015 stricken per de 43 (dj). (Entered: 03/31/2015) |
| 03/31/2015 | 43 | ORDER STRIKING without prejudice 42 Plaintiff's Motion for Leave to File Plaintiff's Motion in Response to Defendant's Motion to Determine Reasonableness of Attorneys' Fees ("Motion"). On January 16, 2015, the Court issued an Order Regarding Formatting of Filings that, inter alia, requires the body of all filings to be double−spaced. (See D.E. 21.) Plaintiff's Motion is not double−spaced. Additionally, it is unclear why Plaintiff is filing a motion for permission to file a motion in response to Defendant's Motion, when it could simply file a Response to Defendant's Motion as a matter of right. See L.R. S.D. Fla. 7.1(c). In any event, it is ORDERED AND ADJUDGED that Plaintiff's Motion for Leave to File Plaintiff's Motion in Response to Defendant's Motion to Determine Reasonableness of Attorneys' Fees is STRICKEN without prejudice for failure to comply with the Court's January 16, 2015 Order. This entry constitutes the ENDORSED ORDER in its entirety. Signed by Judge Joan A. Lenard on 3/31/2015. (gie) (Entered: 03/31/2015) |

# Exhibit 1

Case: 1:14-cv-23208-JAL   As of: 03/14/2016 11:19 AM EDT   7 of 14

| | | |
|---|---|---|
| 04/07/2015 | 44 | NOTICE by Flava Works, Inc. *PLAINTIFFS MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS MOTION TO DETERMINE REASONABLENESS OF ATTORNEYS FEES AWARDED TO DEFENDANTS* (Zukowsky, Matthew) (Entered: 04/07/2015) |
| 04/07/2015 | 45 | RESPONSE/REPLY *PLAINTIFFS MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS MOTION TO DETERMINE REASONABLENESS OF ATTORNEYS FEES AWARDED TO DEFENDANTS* by Flava Works, Inc.. (Attachments: # 1 Exhibit EXHIBIT A−DOCKET, # 2 Exhibit EXHIBIT B−AFFIDAVIT, # 3 Exhibit EXHIBIT C−DEFENDANTS MOTION, # 4 Exhibit EXHIBIT D−AFFIDAVIT)(Zukowsky, Matthew) (Entered: 04/07/2015) |
| 04/07/2015 | 46 | ORDER GRANTING 39 Defendants' Motion to Determine Reasonableness of Attorney's Fees Awarded to Defendants. Signed by Judge Joan A. Lenard on 4/7/2015. (gie) (Entered: 04/07/2015) |
| 04/21/2015 | 47 | (STRICKEN PER DE#49)NOTICE by A4A Network, Inc., A4A Reseau, Inc. re 46 Order on Motion for Attorney Fees *Execution* (Bradley, John) Modified on 4/22/2015 (cqs). (Entered: 04/21/2015) |
| 04/21/2015 | 48 | Clerks Notice to Filer re 47 Notice (Other). **Proposed Order Docketed as Main Document**; CORRECTIVE ACTION REQUIRED − Filer must File a Notice of Striking, then resubmit the proposed order as instructed in the CM/ECF Administrative Procedures. Please see FLSD website for forms. (cqs) (Entered: 04/21/2015) |
| 04/21/2015 | 49 | NOTICE of Striking 48 Clerks Notice of Docket Correction and Instruction to Filer − Attorney, 47 Notice (Other) filed by A4A Network, Inc., A4A Reseau, Inc. by A4A Reseau, Inc., Marc Parent, A4A Network, Inc. (Bradley, John) (Entered: 04/21/2015) |
| 06/10/2015 | 50 | WRIT of Execution issued signed by DEPUTY CLERK (cqs) (Entered: 06/10/2015) |
| 06/19/2015 | 51 | MOTION to Compel *Plaintiff/Judgment Debtor to Complete Form 1.977 (Fact Information Sheet)* by A4A Network, Inc., A4A Reseau, Inc., Marc Parent. Responses due by 7/9/2015 (Attachments: # 1 Exhibit "A")(Bradley, John) (Entered: 06/19/2015) |
| 06/19/2015 | 52 | THIS CAUSE is before the Court on Defendants' Motion to Compel Plaintiff/Judgment Debtor to Complete Fla. R. Civ. P. Form 1.977 − Fact Information Sheet ("Motion"). Therein, Defendant' indicates that it conferred with Plaintiff pursuant to Local Rule 7.1, and that Plaintiff objected to the relief requested in the Motion. Accordingly, it is ORDERED AND ADJUDGED that if Plaintiff wishes to oppose Defendant's 51 Motion it shall file a Response on or before June 26, 2015. The Response shall not exceed 5 double−spaced pages, excluding signature block and certificates. This entry constitutes the ENDORSED ORDER in its entirety. Signed by Judge Joan A. Lenard on 6/19/2015. (gie) (Entered: 06/19/2015) |
| 06/23/2015 | 53 | MOTION for Extension of Time to File Response/Reply/Answer *Defendants Motion to Compel Plaintiff/Judgment Debtor to Complete Fla. R. Civ. P. Form 1.977* by Flava Works, Inc.. (Zukowsky, Matthew) (Entered: 06/23/2015) |
| 06/23/2015 | 54 | ORDER GRANTING 53 Motion for Extension of Time to Respond. Plaintiff shall have until and including July 6, 2015, to file a response to Defendant's Motion to Compel Plaintiff/Judgment Debtor to Complete Fla. R. Civ. P. Form 1.977. However, the Parties are reminded that Local Rule 7.1(a)(3) requires a pre−filing conferral and a certificate attesting to the conferral (or explaining the efforts taken to have one). Although the motion does not contain the required certificate of conferral, the Court will nevertheless grant it. This entry constitutes the ENDORSED ORDER in its entirety. Responses due by 7/6/2015 Signed by Judge Joan A. Lenard on 6/23/2015. (gie) (Entered: 06/23/2015) |
| 07/06/2015 | 55 | NOTICE by Flava Works, Inc. *PLAINTIFFS RESPONSE IN OPPOSTION TO DEFENDANTS MOTION TO COMPEL PLAINTIFF/JUDGMENT DEBTOR TO COMPLETE FLA. R. CIV. P. FORM 1.977 FACT INFORMATION SHEET* (Zukowsky, Matthew) (Entered: 07/06/2015) |

Case: 1:14-cv-23208-JAL   As of: 03/14/2016 11:19 AM EDT   8 of 14

| | | |
|---|---|---|
| 07/06/2015 | 56 | RESPONSE in Opposition re 51 MOTION to Compel *Plaintiff/Judgment Debtor to Complete Form 1.977 (Fact Information Sheet)* filed by Flava Works, Inc.. Replies due by 7/16/2015. (Zukowsky, Matthew) (Entered: 07/06/2015) |
| 07/14/2015 | 57 | REPLY to Response to Motion re 51 MOTION to Compel *Plaintiff/Judgment Debtor to Complete Form 1.977 (Fact Information Sheet)* filed by A4A Network, Inc., A4A Reseau, Inc., Marc Parent. (Bradley, John) (Entered: 07/14/2015) |
| 07/20/2015 | 58 | ORDER GRANTING 51 Defendant's Motion to Compel Plaintiff/Judgment Debtor to Complete Fla. R. Civ. P. Form 1.977 — Fact Information Sheet. Signed by Judge Joan A. Lenard on 7/20/2015. (gie) (Entered: 07/20/2015) |
| 07/24/2015 | 59 | NOTICE of Attorney Appearance by Joshua Howard Sheskin on behalf of Flava Works, Inc.. Attorney Joshua Howard Sheskin added to party Flava Works, Inc.(pty:pla). (Sheskin, Joshua) (Entered: 07/24/2015) |
| 07/24/2015 | 60 | MOTION to Compel *Discovery Response to Request for Production In Aid of Execution* by A4A Network, Inc., A4A Reseau, Inc., Marc Parent. Responses due by 8/10/2015 (Attachments: # 1 Exhibit "A" (Request to Produce))(Bradley, John) (Entered: 07/24/2015) |
| 07/24/2015 | 61 | MOTION to Enforce Judgment *Motion for Proceedings Supplementary* by A4A Network, Inc., A4A Reseau, Inc., Marc Parent. Responses due by 8/10/2015 (Attachments: # 1 Exhibit "A" (Judgment Lien Certificate), # 2 Exhibit "B" (Recorded Order), # 3 Exhibit "C" (Articles of Dissolution), # 4 Exhibit "D" (Affidavit of Phillip Bleicher), # 5 Exhibit "E" (Flava Works, Inc. in IL), # 6 Exhibit "F" (P. Bleicher's email), # 7 Exhibit "G" (Domains), # 8 Exhibit "H" (Affidavit of John Bradley))(Bradley, John) (Entered: 07/24/2015) |
| 07/27/2015 | 62 | ORDER REFERRING to Magistrate Judge Jonathan Goodman 60 Motion to Compel a Discovery Response to First Request for Production in Aid of Execution and 61 Motion for Proceedings Supplementary. This entry constitutes the ENDORSED ORDER in its entirety. Signed by Judge Joan A. Lenard on 7/27/2015. (gie) (Entered: 07/27/2015) |
| 08/13/2015 | 63 | RESPONSE in Opposition re 61 MOTION to Enforce Judgment *Motion for Proceedings Supplementary*, 24 MOTION for Attorney Fees MOTION to Reopen Case MOTION to Set Aside 23 Order Dismissing Case,,,,, 22 Notice of Voluntary Dismissal MOTION to Consolidate Cases, 39 MOTION for Attorney Fees , 60 MOTION to Compel *Discovery Response to Request for Production In Aid of Execution* , 33 MOTION to Vacate 28 Order on Motion for Attorney Fees, Order on Motion to Reopen Case, Order on Motion to Set Aside, Order on Motion to Consolidate Cases,,,,,,, *Response and Rule 60 Motion* filed by Flava Works, Inc.. Replies due by 8/24/2015. (Attachments: # 1 Exhibit Defendants Declaratory Action &Current Action)(Sheskin, Joshua) (Entered: 08/13/2015) |
| 08/13/2015 | 64 | RESPONSE in Opposition re 61 MOTION to Enforce Judgment *Motion for Proceedings Supplementary*, 60 MOTION to Compel *Discovery Response to Request for Production In Aid of Execution Motion in Opposition to Discovery* filed by Flava Works, Inc.. Replies due by 8/24/2015. (Sheskin, Joshua) (Entered: 08/13/2015) |
| 08/24/2015 | 65 | REPLY to Response to Motion re 60 MOTION to Compel *Discovery Response to Request for Production In Aid of Execution* filed by A4A Network, Inc., A4A Reseau, Inc., Marc Parent. (Attachments: # 1 Exhibit "A", # 2 Exhibit "B")(Bradley, John) (Entered: 08/24/2015) |
| 08/24/2015 | 66 | REPLY to Response to Motion re 61 MOTION to Enforce Judgment *Motion for Proceedings Supplementary and 63 Motion In Opposition of Proceedings Supplementary* filed by A4A Network, Inc., A4A Reseau, Inc., Marc Parent. (Bradley, John) (Entered: 08/24/2015) |
| 08/28/2015 | 67 | RESPONSE/REPLY to 63 Response in Opposition to Motion,,, *Response in Opposition to Motion for Reconsideration of the Award of Attorneys' Fees* by A4A Network, Inc., A4A Reseau, Inc., Marc Parent. (Bradley, John) (Entered: 08/28/2015) |

# Exhibit 1

| 09/02/2015 | 68 | ORDER re Discovery Procedures. From this point forward (excepting already−filed motions), all discovery disputes shall follow the attached updated discovery procedures order. Signed by Magistrate Judge Jonathan Goodman on 9/2/2015. (tr00) (Entered: 09/02/2015) |
| 09/02/2015 | 69 | SUPPLEMENT to 67 Response/Reply (Other), 63 Response in Opposition to Motion,,, *REQUEST FOR JUDICIAL NOTICE* by A4A Network, Inc., A4A Reseau, Inc., Marc Parent (Attachments: # 1 Exhibit "A" (Order Staying Case), # 2 Exhibit "B" (Endorsed Order Administratively Closing Case))(Bradley, John) (Entered: 09/02/2015) |
| 09/02/2015 | 70 | NOTICE of Compliance *PLAINTIFF'S NON−COMPLIANCE WITH S.D. FLA. L.R. 7.1(a)(3) AND ORDER [DE−54]* by A4A Network, Inc., A4A Reseau, Inc., Marc Parent re 63 Response in Opposition to Motion,,, filed by Flava Works, Inc. (Bradley, John) (Entered: 09/02/2015) |
| 09/02/2015 | 71 | NOTICE of Compliance *With Order to Fill Out Form 1.977* by Flava Works, Inc. re 58 Order on Motion to Compel (Attachments: # 1 Exhibit Proof of Timely Mailing, # 2 Exhibit Proof of Timely Mailing, # 3 Exhibit Attached Documents, # 4 Exhibit Attached Documents) (Sheskin, Joshua) (Entered: 09/02/2015) |
| 09/04/2015 | 72 | ORDER Referring Case for Discovery Matters to Magistrate Judge Jonathan Goodman. Signed by Judge Joan A. Lenard on 09/04/15. (dp) (Entered: 09/04/2015) |
| 09/04/2015 | 73 | Request for Judicial Notice/SUPPLEMENT to 58 Order on Motion to Compel, 71 Notice of Compliance, *REQUEST FOR JUDICIAL NOTICE* by A4A Network, Inc., A4A Reseau, Inc., Marc Parent (Attachments: # 1 Exhibit "A" (Flava's letter to Fifth Third Bank), # 2 Exhibit "B" (USPS tracking of letter to PNC Bank), # 3 Exhibit "C" (USPS tracking of letter to TD Bank), # 4 Exhibit "D" (USPS tracking of letter to Fifth Third Bank))(Bradley, John)Event and Text Modified on 9/8/2015 (cqs). (Entered: 09/04/2015) |
| 09/09/2015 | 74 | NOTICE of Compliance */Request for Judicial Notice* by Flava Works, Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Sheskin, Joshua) (Entered: 09/09/2015) |
| 09/09/2015 | 75 | NOTICE of Filing Discovery: Supplment to Notice of Complaince DE 71, and In Opposition to DE 73 by Flava Works, Inc.. (Attachments: # 1 Affidavit Affidavit of Paul Duval)(Sheskin, Joshua) (Entered: 09/09/2015) |
| 10/02/2015 | 76 | MOTION to Withdraw as Attorney by Matthew H. Zukowsky. by Flava Works, Inc.. Responses due by 10/19/2015 (Attachments: # 1 Proposed Order)(Zukowsky, Matthew) (Entered: 10/02/2015) |
| 10/05/2015 | 77 | ORDER GRANTING 76 Motion to Withdraw as Counsel for Plaintiff, Flava Works, Inc. Attorney Matthew H. Zukowsky and his firm, Matthew H. Zukowky, P.A. are hereby relieved of any further responsibility in this matter. This entry constitutes the ENDORSED ORDER in its entirety. Signed by Judge Joan A. Lenard on 10/5/2015. (gie) (Entered: 10/05/2015) |
| 10/08/2015 | 78 | First MOTION to Withdraw as Attorney *For Flava Works, Inc.,* by Joshua H. Sheskin. by Flava Works, Inc.. Responses due by 10/26/2015 (Sheskin, Joshua) (Entered: 10/08/2015) |
| 10/09/2015 | 79 | UNSTIPULATED Joint MOTION for Substitution of Counsel by Flava Works, Inc.. Attorney Michael Gulisano added to party Flava Works, Inc.(pty:pla). Responses due by 10/26/2015 (Attachments: # 1 Text of Proposed Order)(Gulisano, Michael) (Entered: 10/09/2015) |
| 10/09/2015 | 80 | ORDER GRANTING 79 Joint Motion for Substitution of Plaintiff's Counsel. Michael Gulisano is hereby substituted as counsel of record for Plaintiff, Flava Works, Inc., in place of Joshua Howard Sheskin, Esquire, who is relieved of any further responsibility in this matter. Attorney Sheskin's 78 Motion to Withdraw as Counsel is therefore DENIED AS MOOT. This entry constitutes the ENDORSED ORDER in its entirety. Signed by Judge Joan A. Lenard on 10/9/2015. (gie) (Entered: 10/09/2015) |

| 10/19/2015 | 81 | ENDORSED ORDER setting Telephonic Scheduling Conference Re: Discovery Matters for 10/19/2015 at 04:00 PM in the Miami Division before Magistrate Judge Jonathan Goodman. This hearing is being held solely for the purpose of **scheduling** a discovery hearing because of defense counsel's representation that his office has contacted opposing counsel several times to confer about setting a discovery hearing on specific dates, but has not received a direct response as to plaintiff's counsel's availability. The hearing will not address the substance of the parties' discovery disputes, only the issue of scheduling. The parties shall abide by the following call−in procedure: (1) dial 1−888−684−8852; (2) enter Access Code Number 8004594, followed by the # sign; and (3) enter Security Code Number 1213, followed by the # sign. No cellular telephone use is permitted. All counsel shall have their calendars available so that the Court can pinpoint a specific hearing date workable to all counsel and the Court. Signed by Magistrate Judge Jonathan Goodman on 10/19/2015. (tr00) (Entered: 10/19/2015) |
| 10/19/2015 | 82 | Paperless Minute Entry for proceedings held before Magistrate Judge Jonathan Goodman: Telephone Conference held on 10/19/2015. (Digital 16:00:39.) (mso) (Entered: 10/19/2015) |
| 10/20/2015 | 83 | NOTICE of Hearing by ATTORNEY: Discovery Hearing set for 11/20/2015 04:30 PM in Miami Division before Magistrate Judge Jonathan Goodman. (Bradley, John) (Entered: 10/20/2015) |
| 10/21/2015 | 84 | (STRICKEN PER DE # 86)NOTICE by Flava Works, Inc. re 83 Notice of Hearing by Attorney *of filing Correspondence Regarding Hearing* (Gulisano, Michael)Text Modified on 10/21/2015 (cqs). (Entered: 10/21/2015) |
| 10/21/2015 | 85 | Clerks Notice to Filer re 84 Notice (Other). **Document Not Captioned**; CORRECTIVE ACTION REQUIRED − The Filer must File a Notice of Striking, then refile the document with the proper caption pursuant to Local Rules. (cqs) (Entered: 10/21/2015) |
| 10/21/2015 | 86 | NOTICE of Striking 84 Notice (Other) filed by Flava Works, Inc. by Flava Works, Inc. (Gulisano, Michael) (Entered: 10/21/2015) |
| 10/21/2015 | 87 | (STRICKEN PER ORDER DE # 88)NOTICE by Flava Works, Inc. re 83 Notice of Hearing by Attorney *of Filing Correspondence Regarding Hearing* (Attachments: # 1 Exhibit) (Gulisano, Michael) Text Modified on 10/22/2015 (cqs). (Entered: 10/21/2015) |
| 10/21/2015 | 88 | ENDORSED ORDER STRIKING 87 Notice (Other) filed by Flava Works, Inc. The Discovery Procedures [ECF No. 68 ] in this matter require that source materials for discovery hearings be delivered via handdelivery or through a document that is emailed to the CM/ECF mailbox (goodman@flsd.uscourts.gov), **not** through filings on the docket. Signed by Magistrate Judge Jonathan Goodman on 10/21/2015. (tr00) (Entered: 10/21/2015) |
| 10/23/2015 | 89 | ENDORSED ORDER re email from Plaintiff's counsel sent to the Court's e−file inbox on October 23, 2015. On October 20, 2015, Defendant noticed a Discovery Hearing to be held before the Undersigned on November 20, 2015. [ECF No. 83 ]. On October 21, 2015, Plaintiff filed a Notice of Filing [ECF No. 87 ] consisting of correspondence between the parties concerning the issues in dispute for the Discovery Hearing, which was stricken [ECF No. 88 ] by the Undersigned for failure to comply with the Discovery Procedures Order, requiring source material to be emailed to the Chambers' e−file inbox, not filed on the docket. On October 23, 3015, Plaintiff's counsel emailed the Chambers' e−file inbox, copying all other counsel, stating that certain subpoenas had been issued (and attaching the subpoenas) that would obviate the need for a hearing. If, indeed, these subpoenas moot the need for a hearing, then Plaintiff's counsel should confer with opposing counsel who set the hearing, and then opposing counsel, if satisfied, may cancel the hearing (and/or withdraw the pending discovery motion) with an official, on−the−record filing, or, if not satisfied fully, may file an amended notice of hearing that indicates certain issues (but not all) have been resolved. If Plaintiff's counsel is merely providing additional source material for the hearing, then submission of these to the e−file inbox is fine. The Court will not, however, cancel a hearing because one party states in an email to chambers that certain subpoenas resolve the disputed discovery issues. Such an action must be done with an official |

# Exhibit 1

Case: 1:14-cv-23208-JAL   As of: 03/14/2016 11:19 AM EDT   11 of 14

| | | |
|---|---|---|
| | | filing on the record. Signed by Magistrate Judge Jonathan Goodman on 10/23/2015. (tr00) (Entered: 10/23/2015) |
| 11/19/2015 | 90 | NOTICE of Hearing by ATTORNEY: Discovery Hearing set for 11/20/2015 04:30 PM in Miami Division before Magistrate Judge Jonathan Goodman. Motion Hearing set for 11/20/2015 04:30 PM in Miami Division before Magistrate Judge Jonathan Goodman. (Bradley, John) (Entered: 11/19/2015) |
| 11/19/2015 | 91 | MOTION to Withdraw as Attorney by Michael Gulisano. by Flava Works, Inc.. Responses due by 12/7/2015 (Gulisano, Michael) (Entered: 11/19/2015) |
| 11/20/2015 | 92 | ORDER DENYING WITHOUT PREJUDICE 91 Motion to Withdraw as Plaintiff's Counsel. As a corporate entity, Plaintiff Flava Works, Inc. is prohibited from proceeding without counsel. See Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385 (11th Cir. 1985). Because a corporation cannot appear pro se, but can only act through agents, id., it is ORDERED AND ADJUDGED that Plaintiff's 91 Motion to Withdraw as Plaintiff's Counsel is DENIED WITHOUT PREJUDICE. This entry constitutes the ENDORSED ORDER in its entirety. Signed by Judge Joan A. Lenard on 11/20/2015. (gie) (Entered: 11/20/2015) |
| 11/20/2015 | 93 | Paperless Minute Entry for proceedings held before Magistrate Judge Jonathan Goodman: Discovery Hearing held on 11/20/2015. (Digital 16:05:14.) (mso) (Entered: 11/20/2015) |
| 11/23/2015 | 94 | POST−DISCOVERY HEARING ADMINISTRATIVE ORDER. Signed by Magistrate Judge Jonathan Goodman on 11/23/2015. (tr00) (Entered: 11/23/2015) |
| 11/24/2015 | | Set Deadlines Per DE#94. See Order For Details. Miscellaneous Deadline 11/30/2015. (cqs) (Entered: 11/24/2015) |
| 12/11/2015 | 95 | NOTICE by A4A Network, Inc., A4A Reseau, Inc., Marc Parent re 94 Order of Non−Compliance (Bradley, John) (Entered: 12/11/2015) |
| 12/11/2015 | | Attorney Juneitha Shambee representing Flava Works, Inc. (Plaintiff) Activated. (Shambee, Juneitha) (Entered: 12/11/2015) |
| 12/11/2015 | 96 | (STRICKEN PER DE# 97)Plaintiff's MOTION for Extension of Time To Pay Rule 37 Fee by Flava Works, Inc.. Responses due by 12/31/2015 (Attachments: # 1 Text of Proposed Order)(Shambee, Juneitha) Text Modified on 12/14/2015 (cqs). (Entered: 12/11/2015) |
| 12/14/2015 | 97 | ENDORSED ORDER striking 96 Motion for Extension of Time for failure to comply with Local Rule 7.1's requirement that counsel "make reasonable effort to confer" before filing a motion. (emphasis added). Counsel's attempted conferral — sending a single email to opposing counsel on a Saturday afternoon and not receiving a response within eight hours — does not constitute a "reasonable effort." Signed by Judge Joan A. Lenard on 12/14/2015. (tr00) (Entered: 12/14/2015) |
| 12/15/2015 | 98 | ORDER DENYING 63 Motion for Reconsideration of the Award of Attorneys' Fees. On January 21, 2015, the Court entered an Order Dismissing this Case Without Prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) upon Plaintiff's Notice of Voluntary Dismissal. The same day, Plaintiff re−filed its Action against Defendants in the Northern District of Illinois in case number 15−cv−00610. On April 7, 2015, the Court entered an Order granting Defendants $28,060.57 in attorneys fees pursuant to Rule 41(d), which states: "If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court... may order the plaintiff to pay all or part of the costs of that previous action[.]" Plaintiff now seeks reconsideration under Rule 60(b) of the attorneys' fee award. (D.E. 63 .) Rule 60(b) allows for reconsideration upon grounds including mistake, newly discovered evidence, and fraud. Fed. R. Civ. P. 60(b). Rule 60(b) also contains a "catch−all" provision allowing reconsideration for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The Eleventh Circuit has stated that relief under Rule 60(b)(6) "is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances." Griffin v. Swim−Tech Corp., 722 F.2d 677, 680 (11th Cir. 1984) (citing Ackermann v. United States, 340 U.S. 193, 202 (1950)). "The |

Case: 1:14-cv-23208-JAL   As of: 03/14/2016 11:19 AM EDT   12 of 14

| | | |
|---|---|---|
| | | party seeking relief has the burden of showing that absent such relief, an 'extreme' and 'unexpected' hardship will result." Id. (citing United States v. Swift &Co., 286 U.S. 106, 119 (1932)). Plaintiff has not established that he is entitled to relief from the Court's April 7, 2015, Order. Plaintiffs' 63 Motion for Reconsideration of the Award of Attorneys' Fees is DENIED. This entry constitutes the ENDORSED ORDER in its entirety. Signed by Judge Joan A. Lenard on 12/15/2015. (gie) (Entered: 12/15/2015) |
| 12/15/2015 | 99 | NOTICE by Flava Works, Inc. NOTICE OF ATTORNEYS CHARGING LIEN (Gulisano, Michael) (Entered: 12/15/2015) |
| 12/16/2015 | 100 | MOTION to Alter Judgment by A4A Network, Inc., A4A Reseau, Inc., Marc Parent. Responses due by 1/4/2016 (Bradley, John) (Entered: 12/16/2015) |
| 12/17/2015 | 101 | Second MOTION for Extension of Time to Pay Rule 37 Fees by Flava Works, Inc.. Responses due by 1/4/2016 (Shambee, Juneitha) (Entered: 12/17/2015) |
| 12/17/2015 | 102 | ENDORSED ORDER denying Plaintiff's 101 Second Motion for Extension of Time to Pay Rule 37 Fees because the Motion (1) is untimely, (2) does not offer legal support for the requested enlargement, and (3) does not explain why Plaintiff would be in a better position to pay the money on January 31, 2016. Signed by Magistrate Judge Jonathan Goodman on 12/17/2015. (tr00) (Entered: 12/17/2015) |
| 12/21/2015 | 103 | ENDORSED ORDER setting Telephonic Status Conference Re: Discovery Matters for 12/22/2015 at 06:00 PM in the Miami Division before Magistrate Judge Jonathan Goodman. This hearing is being held solely for the purpose of scheduling a discovery hearing because of defense counsel's representation that his office has contacted opposing counsel several times to confer about setting a discovery hearing (related to Plaintiff's alleged non−compliance with a Post−Discovery Hearing Order) on specific dates (that range from December through the end of January), but Plaintiff's counsel purports to be unavailable for every single one. For the hearing, Plaintiff's counsel shall have a precise list of every purported conflict with the Court's available discovery hearing dates (specifically, the conflicts alleged for 12/30/2015, 12/31/2015, 1/8/2016, 1/15/2016, 1/22/2016 and 1/29/2016). The hearing will not address the substance of the parties' discovery dispute, only the issue of scheduling. The parties shall abide by the following call−in procedure: (1) dial 1−888−684−8852; (2) enter Access Code Number 8004594, followed by the # sign; and (3) enter Security Code Number 1213, followed by the # sign. No cellular telephone use is permitted. All counsel shall have their calendars available so that the Court can pinpoint a specific hearing date workable to all counsel and the Court. Signed by Magistrate Judge Jonathan Goodman on 12/21/2015. (tr00) (Entered: 12/21/2015) |
| 12/22/2015 | 104 | Paperless Minute Entry for proceedings held before Magistrate Judge Jonathan Goodman: Telephonic Status Conference held on 12/22/2015. Juneitha Shambee for the Plaintiff. John Francis Bradley for the Defendant. (Digital 18:02:32 − 18:13:36.) (wc) (Entered: 12/23/2015) |
| 12/24/2015 | 105 | NOTICE of Hearing by ATTORNEY: Discovery Hearing set for 2/5/2016 10:00 AM in Miami Division before Magistrate Judge Jonathan Goodman. (Bradley, John) (Entered: 12/24/2015) |
| 01/06/2016 | 106 | ORDER DENYING 100 Defendants/Judgment Creditors' Motion to Amend Judgment Pursuant to Fed. R. Civ. P. 59(e). Signed by Judge Joan A. Lenard on 1/6/2016. (gie) (Entered: 01/06/2016) |
| 01/07/2016 | 107 | Notification of Ninety Days Expiring by A4A Network, Inc., A4A Reseau, Inc., Marc Parent re 61 MOTION to Enforce Judgment Motion for Proceedings Supplementary filed by A4A Network, Inc., A4A Reseau, Inc., Marc Parent, 63 Response in Opposition to Motion,,, filed by Flava Works, Inc., 66 Reply to Response to Motion, filed by A4A Network, Inc., A4A Reseau, Inc., Marc Parent (Bradley, John) (Entered: 01/07/2016) |
| 02/02/2016 | 108 | MOTION to Strike or Remove Attorney of Record by Flava Works, Inc.. Responses due by 2/19/2016 (Attachments: # 1 Affidavit)(Shambee, Juneitha) (Entered: 02/02/2016) |

# Exhibit 1

Case: 1:14-cv-23208-JAL   As of: 03/14/2016 11:19 AM EDT   13 of 14

| | | |
|---|---|---|
| 02/04/2016 | 109 | NOTICE of Hearing by ATTORNEY: Discovery Hearing set for 2/5/2016 10:00 AM in Miami Division before Magistrate Judge Jonathan Goodman. (Bradley, John) (Entered: 02/04/2016) |
| 02/05/2016 | 110 | Paperless Minute Entry for proceedings held before Magistrate Judge Jonathan Goodman: Discovery Hearing held on 2/5/2016. (mso) (Entered: 02/05/2016) |
| 02/08/2016 | 111 | SECOND POST−DISCOVERY HEARING ORDER. Signed by Magistrate Judge Jonathan Goodman on 2/8/2016. (tr00) (Entered: 02/08/2016) |
| 02/08/2016 | 112 | ORDER granting 61 Motion for Proceedings Supplementary. Signed by Magistrate Judge Jonathan Goodman on 2/8/2016. (tr00) (Entered: 02/08/2016) |
| 02/08/2016 | | Set Deadlines Per DE#111. Miscellaneous Deadline 2/12/2016. (cqs) (Entered: 02/08/2016) |
| 02/09/2016 | 113 | RESPONSE to Motion re 108 MOTION to Strike *or Remove Attorney of Record* filed by Flava Works, Inc.. Replies due by 2/19/2016. (Gulisano, Michael) (Entered: 02/09/2016) |
| 02/13/2016 | 114 | NOTICE by Flava Works, Inc. *Notice of Service of Affidavit* (Attachments: # 1 Affidavit) (Shambee, Juneitha) (Entered: 02/13/2016) |
| 02/22/2016 | 115 | ORDER GRANTING IN PART AND DENYING IN PART 108 Motion to Remove Attorney. Plaintiff seeks to remove its former attorneys Ursula Jackson and Michael Gulisano from the Notice List in this case. Ms. Jackson filed no response to Plaintiff's Motion, and its request to remove her as attorney of record is granted. Mr. Gulisano did file a Response 113 and wishes to remain on the Notice List as he has an outstanding charging lien against Plaintiff. (See D.E. 99 .) Mr. Gulisano alleges that Plaintiff has refused to pay him for $1,000 in services rendered, refused Mr. Gulisano's offer to settle for $500, and instead "attempted to blackmail [Mr. Gulisano] by threatening to make false and defamatory allegations to the Florida Bar unless [Mr. Gulisano] paid the Plaintiff $7,500." (Resp. para. 9.) Thus, Mr. Gulisano wishes to remain on the Notice List "in order to monitor the docket and when appropriate enforce his lien." (Id. para. 10.) Plaintiff did not file a reply. Accordingly, upon review of the Motion, Response, and the record, it is ORDERED AND ADJUDGED that Plaintiff's 108 Motion to Remove Attorney is GRANTED with respect to Attorney Ursula Jackson, but DENIED with respect to Attorney Michael Gulisano. The Clerk shall remove Attorney Ursula Jackson from the Notice List, but shall not remove attorney Michael Gulisano from the Notice List. This entry constitutes the ENDORSED ORDER in its entirety. Signed by Judge Joan A. Lenard on 2/22/2016. (gie) (Entered: 02/22/2016) |
| 02/22/2016 | | Attorney Ursula Christie Jackson terminated Per DE#115. (cqs) (Entered: 02/22/2016) |
| 03/10/2016 | 116 | MOTION for Reconsideration re 115 Order on Motion to Strike,,,,,, by Flava Works, Inc.. (Attachments: # 1 Affidavit)(Shambee, Juneitha) (Entered: 03/10/2016) |
| 03/11/2016 | 117 | (STRICKEN PER DE # 122)RESPONSE in Opposition re 116 MOTION for Reconsideration re 115 Order on Motion to Strike,,,,,, *and Request for Sanctions* filed by Flava Works, Inc.. Replies due by 3/21/2016. (Attachments: # 1 Exhibit Black Mail, # 2 Exhibit Example of Bleicher's Forged Evidence, # 3 Exhibit Example of Bleicher's Fraud)(Gulisano, Michael)Text Modified on 3/14/2016 (cqs). (Entered: 03/11/2016) |
| 03/11/2016 | 118 | (STRICKEN PER DE#122) MOTION for Sanctions (for image see DE#117.) by Flava Works, Inc.. (cqs)Text Modified on 3/11/2016 (cqs).Text Modified on 3/14/2016 (cqs). (Entered: 03/11/2016) |
| 03/11/2016 | 119 | Clerks Notice to Filer re 117 Response in Opposition to Motion,. **Two or More Document Events Filed as One**; ERROR − Only one event was selected by the Filer but more than one event was applicable to the document filed. The docket entry was corrected by the Clerk. It is not necessary to refile this document but in the future, the Filer must select all applicable events. (cqs) (Entered: 03/11/2016) |

Case: 1:14-cv-23208-JAL   As of: 03/14/2016 11:19 AM EDT   14 of 14

| | | |
|---|---|---|
| 03/11/2016 | 120 | MOTION to Amend/Correct 116 MOTION for Reconsideration re 115 Order on Motion to Strike,,,,,, by Flava Works, Inc.. Responses due by 3/28/2016 (Attachments: # 1 Exhibit Amended Motion to Reconsider, # 2 Affidavit Phillip Bleicher)(Shambee, Juneitha) (Entered: 03/11/2016) |
| 03/11/2016 | 121 | ORDER DENYING 116 Plaintiff's Motion to Reconsider this Court's Partial Denial on Plaintiff's Motion to Strike Attorney, DENYING AS MOOT 120 Plaintiff's Motion for Leave to Amend, and REFERRING to Magistrate Judge Jonathan Goodman Attorney Michael Gulisano's 117 Motion for Sanctions (see D.E. 118). On February 22, 2016, the Court entered an Order which, inter alia, denied Plaintiff's 108 Motion to Remove its former Attorney, Michael Gulisano, from the Notice List in this case. (D.E. 115.) Mr. Gulisano stated in his 113 Response to that Motion that he had an outstanding charging lien against Plaintiff and wished to remain on the Notice List "in order to monitor the docket and when appropriate enforce his lien." Plaintiff did not file a Reply, and the Court denied its request to remove Mr. Gulisano from the Notice List. (D.E. 115.) On March 10, 2016, Plaintiff filed the instant 116 Motion for Reconsideration on the grounds that the Court's February 22, 2016 Order was based upon "a clear error of fact." Plaintiff appears to argue that the Court erred by finding that Plaintiff in fact owed Mr. Gulisano the money at issue in the charging lien. (D.E. 116 at 3.) However, the Court made no such finding and therefore the Court's Order was not based upon a clear error of fact. The Court also notes that instant Motion violates at least two of the local rules. First, it violates Local Rule 5.1(a)(4) &(b), which requires electronic filings to contain one−inch margins at the top, bottom, and each side. S.D. Fla. L.R 5.1(a)(4) &(b). Second, it violates Local Rule 7.1(a)(3), which requires a pre−filing conferral and a certificate attesting to the conferral (or explaining the efforts taken to have one). S.D. Fla. L.R. 7.1(a)(3). In any event, having considered the Motion, Response, and the record, the Court finds that Plaintiff has not established that it is entitled to reconsideration under Federal Rules of Civil Procedure 59 and/or 60. It is therefore ORDERED AND ADJUDGED that Plaintiff's 116 Motion to Reconsider this Court's Partial Denial on Plaintiff's Motion to Strike Attorney is DENIED. On March 11, 2016, Plaintiff filed a 120 Motion for Leave to Amend its Motion for Reconsideration to add the Rule 7.1(a)(3) conferral. That Motion is DENIED AS MOOT. Finally, it is ORDERED AND ADJUDGED that Mr. Gulisano's 117 Motion for Sanctions is REFERRED to Magistrate Judge Jonathan Goodman. This entry constitutes the ENDORSED ORDER in its entirety. Signed by Judge Joan A. Lenard on 3/11/2016. (gie) (Entered: 03/11/2016) |
| 03/11/2016 | 122 | ENDORSED ORDER striking [117/ 118 Motion for Sanctions for failure to comply with Local Rule 7.1's conferral requirement. Additionally, movant requests sanctions partially on the basis of Federal Rule of Civil Procedure 11. However, there is no indication that the "safe harbor" provision of Rule 11 has been satisfied. *See* Fed. R. Civ. P. 11(c)(2) ("The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."). Signed by Magistrate Judge Jonathan Goodman on 3/11/2016. (tr00) (Entered: 03/11/2016) |

# Exhibit 1

Case 1:14-cv-23208-JAL   Document 1   Entered on FLSD Docket 08/29/2014   Page 1 of 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FLAVA WORKS, INC.,

Plaintiff,

vs.

A4A RESEAU, INC.
A4A NETWORK, INC.
MARC PARENT

Defendants.
_____/

CASE NO.:  1:14-CV-23208-XXXX

**COMPLAINT**

**JURY TRIAL DEMANDED**

### INTRODUCTION

Plaintiff, FLAVA WORKS, INC. (hereinafter "Plaintiff", "Flava Works"or "Flava"), and for its Complaint against the Defendants, A4A RESEAU, INC., A4A NETWORK, INC., and  MARC PARENT, (hereinafter "Defendants") states as follows:

### NATURE OF THE ACTION

1. This is an action for copyright infringement pursuant to the Copyright Act, 17 U.S.C. Section 101 *et seq.*.

2. Plaintiff brings this action for Defendants to cease and desist copying, infringing, promoting, encouraging, enabling and/or facilitating the infringement of Plaintiff's copyrighted works on the worldwide Internet.

### THE PARTIES

**(THE PLAINTIFF, FLAVA WORKS, INC.)**

3. Plaintiff, Flava Works, Inc., is a corporation incorporated under the laws of the State of Florida with its principal place of business at 2610 North Miami Avenue, Miami,

Case 1:14-cv-23208-JAL   Document 1   Entered on FLSD Docket 08/29/2014   Page 2 of 10

Florida 33127, and an office at 933 W. Irving Park Road, Ste. C, Chicago, Illinois 60613.

**(THE DEFENDANTS, A4A RESEAU, INC. AND A4A NETWORK, INC.)**

4. On information and belief, Defendants, A4A RESEAU, Inc. and A4A NETWORK, Inc., are Canadian corporations that created, own or operate the website Adam4Adam.com.

**(THE DEFENDANT, MARC PARENT)**

5. On information and belief, Defendant, Marc Parent is the registered owner, director, president and principal of the above mentioned corporations and website.

### JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1331 arising from a federal question.

7. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1338  in accordance with the Copyright Act, 17 U.S.C. Section 101 *et seq..*, and 28 U.S.C. Section 1367 arising from supplemental jurisdiction.

8. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1332 arising from diversity citizenship and the amount in controversy exceeds $75,000.00.

9. The doctrine of extraterritoriality does not apply if at least some part of the infringement occurs in the United States.  Shropshire v. Canning, 809 F.Supp.2d. 1139 (N.D. Cal. 2011).

10. On information and belief, this Court has personal jurisdiction over the Defendants due to an active registered trademark within the United States Patent and



Exhibit I
Exhibit 1

Trademark Office for "Adam4Adam".

11. This Court has personal jurisdiction pursuant to Section 48.13 of Florida's Long Arm Statute requiring "sufficient minimum contacts" of a continuous and systematic nature, purposeful availment and comports with notions of fair play and substantial justice. International Shoe v.  Washington, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. (1945).

12. A website that is interactive and commercial in nature that promotes the company or that solicits users from other jurisdictions to engage in a business relationship engaged is an intentional and continuous business contact that subjects the website to personal jurisdiction of the federal courts in those jurisdictions.  Publications International Ltd.. v. Burke/Triolo, Inc., 121 F.Supp.2d 1178 (N.D. Illinois 2000).  On information and belief, Adam4Adam is an interactive and commercial website that promotes Defendants' products or services and allows users to join as a user of the website.

13. On information and belief, Defendants actively target the Florida market and its consumers.

14. On information and belief, Defendants entered into an affiliate agreement with Plaintiff, Flava Works, Inc.

15. On information and belief, this Court has personal jurisdiction over the Defendants due their status as account holders   or subscribers with a United States based corporation which is a server operator, managed host and cloud computing provider.

### STATEMENT OF FACTS

16. Plaintiff is a corporation that produces adult entertainment in the form of

DVDs, magazines, websites, pictures, streaming video and various other media.

17. Plaintiff distributes its adult entertainment through various distributors and licensees, as well as through its websites:  www.FlavaMen.com, www.CocoDorm.com, www.CocoStore.com, www.PapiCock.com, and www.ThugBoy.com, among others.

18. Plaintiff has applied for and has registered various copyrights and trademarks for its works.  See attached Exhibit "A" for Plaintiff's works with registered copyrights.

19. The Internet is a worldwide network of millions of computers and computer networks that enable its users to communicate with one another through the transmission of information from one computer to another.

20. On information and belief, Defendants, A4A RESEAU, Inc. and A4A NETWORK, Inc., created, owns and operates the website Adam4Adam.com, which is an American online dating website designed for men to meet other men "for friendship, romance or a hot hookup".  Its goods and/or services are listed as a community social club, online/offline dating service and computer dating service via online personals.

21. On August 20, 2003, the Defendant, Marc Parent, applied for a wordmark for "Adam4Adam" within the United States Patent and Trademark Office.

22. On May 3, 2005, the Defendant, Marc Parent, was issued a service mark for "Adam4Adam" by the United States Patent and Trademark Office for use in commerce. See Exhibit "B" for Defendant's registered service mark.

23. Plaintiff prominently displays its copyright on its website, publications and films and is legally available solely to its authorized distributors and licensees.

24. At all relevant times, on information and belief, Defendants made copies of Plaintiff's copyrighted images and published the images for advertising purposes.  There

## Exhibit 1

are approximately two dozen copyrighted works illegally used by the Defendants. See attached Exhibit "C" for the aforementioned images.

25. On information and belief, when a user clicks on the aforesaid advertisements, the user is redirected to another website. Plaintiff alleges, Defendants either own, operate or control the website to which the user is redirected or the Defendants are paid by third parties for redirecting the web traffic.

26. On information and belief, Defendants generate advertising revenue from the traffic to its own website. At all material times, Plaintiff avers, Defendants used Flava's copyrighted materials on its site to generate increased traffic for Adam4Adam.com.

27. Plaintiff has sent Defendants the requisite takedown notices pursuant to 17 U.S.C. Section 512 *et seq.*, Digital Millennium Copyright Act. See attached Exhibit "D" for the aforementioned correspondence.

### CAUSE OF ACTION

**(Copyright Infringement-17 U.S.C. Section 501)**

28. Plaintiff incorporates and re-alleges paragraphs 1-27 of this Complaint verbatim by reference.

29. An intellectual property violation, to wit: direct copyright infringement, is a strict liability offense requiring no intent or state of mind.

30. Plaintiff holds the copyright on each of the infringed works alleged in this action.

31. Plaintiff is the owner and producer of the images illegally and improperly reproduced and distributed by Defendants through their websites.

32. Plaintiff prominently displays its copyright on its website, publications and films and is legally available solely to its authorized distributors and licensees.

33. Defendants reproduced, copyrighted works by and through servers and/or other hardware owned, operated or controlled by their corporations or relationships with third parties.

35. Defendants reproductions and distributions of the works were done without authorized licensure or approval from the Plaintiff.

36. Defendants either knew or should have reasonably known they did not have authorization to use, employ, capitalize, exploit or derive any benefit from Plaintiff Flava's, copyrighted material. Defendant, Marc Parent, as registered owner of a service mark work issued by the United States Patent and Trademark Office, further knew or should have known his acts constituted copyright infringement or a violation of intellectual property law.

37. Defendants engaged in intentional, knowing, negligent or willfully blind conduct sufficient to demonstrate an active engagement in the improper collection, distribution and use of Plaintiff Flava Works, Inc.'s copyrighted material.

38. It is remote and unlikely the Defendants employed reasonable examination and control measures, including the utilization of a word filter; (which checks the file name during the uploading of files to the servers with regard to whether the author, the title or name violates any copyright or trademark) the lack of which suggests culpability.

39. The quality and quantity of the copyrighted images advertised to Internet users on Defendants' Adam4Adam website increased the amount of traffic and generated revenue for the Defendants.

## Exhibit 1

40. Plaintiff Flava's copyright works are unique and valuable property having no readily determinable market value.

41. Defendants infringement harms Plaintiff's business reputation and goodwill.

42. Defendants conduct interferes with Plaintiff's exclusive right to reproduce, distribute and display the copyrighted works.

43. Defendants conscious disregard for Plaintiff's intellectual property rights is purposefully wrongful, illegal, continuous and unremitting.

44. Defendants aforesaid conduct constitutes copyright infringement that this Court may remedy under Sections 106 and 501 of the Copyright Act.

### PRAYER FOR RELIEF

**WHEREFORE:** As a result of the injury suffered by Plaintiff Flava Works Inc.'s business enterprise stemming from Defendants actions of direct copyright infringement, Plaintiff respectfully requests that this Honorable Court enter an Order of the following:

1. A judgment in favor of Plaintiff, Flava Works, Inc. against the Defendants.

2. A temporary restraining order, preliminary injunction and/or permanent injunction against the Defendants and their aliases, agents, servants, representatives, employees, attorneys, parents, subsidiaries, related companies, partners, successors, assigns and all persons acting for, with, by, through or under Defendants and each of them during the pendency of this action as preliminarily and permanently thereafter from:

A. Restraining and enjoining Defendants from posting on any website(s) material that infringes on Plaintiff Flava Works, Inc.'s intellectual property, as well as from facilitating the posting on any website(s) by third parties infringing material, and/or links

which enable the easy access to Plaintiff Flava Works, Inc.'s intellectual property that is located on third party websites;

B. Restraining and enjoining Defendants from distributing, reproducing, using, copying, streaming, making available for download or otherwise exploiting Flava Works, Inc.'s intellectual property, including Plaintiff's copyrighted works, trademarks, trade dress or any other product or symbol with the indicia of Plaintiff's ownership, through the use of their website or otherwise;

C. Restraining and enjoining Defendants from doing any other act through his website(s) or otherwise, which shall confuse, deceive, cause mistake, etc., among the relevant trade and general public as to the association, sponsorship and/or approval between Plaintiff and any website(s);

D. Restraining and enjoining Defendants from using, copying or otherwise exploiting Plaintiff's copyrights and copyrighted works;

E. Restraining and enjoining Defendants from using, disclosing, converting, appropriating, retaining, selling, transferring or copying and property of the Plaintiff's;

F. Restraining and enjoining Defendants from using any of the Plaintiff's marks attached hereto or any colorable imitation of any of the marks in connection with the distribution of images and content at Defendants website;

G. Restraining and enjoining Defendants from doing any other act or thing likely to, or calculated to, induce the belief that Defendants or Defendant's business is in any way affiliated, connected to or associated with Plaintiff or Plaintiff's business;

H. Restraining and enjoining Defendants from unfairly competing or

## Exhibit 1

tortiously interfering with Plaintiff and Plaintiff's contractual or business relationships in any manner.

3. Requiring  Defendants to submit to the Court and to serve upon Plaintiff a report written under oath, setting forth in detail the manner and form in which Defendant has complied with the terms of this injunction;

4. Requiring Defendants to cease operation of the website domain "Adam4Adam.com" and to transfer domain ownership of "Adam4Adam.com" immediately to Plaintiff;

5. Requiring Defendants to forfeit their use and/or possession of the U.S. trademark "Adam4Adam" issued by the United States Patent and Trademark Office.

6. Disgorging Defendants of any profits, gains or advantages derived from their illegal and unethical infringement of Flava Works intellectual property;

7. Award Plaintiff actual damages proximately resulting from the Defendants infringement, the amount of which is to be proven at trial, or statutory damages (treble for each willful violation pursuant to 15 U.S.C. Section 504(c)(2), as the Plaintiff may elect as a matter of right;

8. Award punitive damages as deemed just and proper by this Court as a result of Defendants willful misconduct;

9. Award Plaintiff reasonable attorney's fees pursuant to 17 U.S.C. Section 505 and 15 U.S.C. Section 11 17(a);

10. Award Plaintiff the cost of this action;

11. Award any additional and further relief which this Court deems to be just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues properly triable by jury in this action, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated:  August 25, 2014

Respectfully submitted,
s/ Ursula C. Jackson, Esq.
Florida Bar No. 734330
The Law Office of Ursula C.Jackson, PLLC.
2525 Ponce De Leon Boulevard
Coral Gables, FL 33134
Telephone:  1.855.218.8456
Fax:  305.200.8701
Email: uj.flavaworks@gmail.com.
Attorney for Plaintiff

Flava Works, Inc.
2610 North Miami Avenue
Miami, FL 33127

Exhibit 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

Flava Works, Inc.,                          )
               Plaintiff,              )    Case No.
                                 )
                                 )
     v.                                     )    **COMPLAINT**
                                 )
A4A RÉSEAU INC.,                       )
A4A NETWORK INC.,                     )
MARC PARENT                            )
                                 )    **JURY TRIAL DEMANDED**
                                 )
           Defendants.               )

**COMPLAINT**

Plaintiff, Flava Works, Inc. (hereinafter "Plaintiff" or "Flava"), and for its Complaint against the Defendants, A4A RESEAU, INC. and A4A NETWORK, INC., states as follows:

**NATURE OF THE ACTION**

1.    This is an action for copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq.*.

2.    Plaintiff brings this action to stop Defendants from copying, infringing, promoting, encouraging, enabling and/or facilitating the infringement of Plaintiff's copyrights on the worldwide Internet.

**THE PARTIES**

3.    Plaintiff, Flava Works, Inc. ("Flava"), is a corporation incorporated under the laws of the State of Florida with its principal place of business at 833 SW 14th Ave, Miami, Florida 33135, and at 933 W. Irving Park Rd., Ste. C, Chicago, Illinois 60613.

4.    On information and belief, Defendants, A4A RESEAU, INC. and A4A NETWORK, INC., are Canadian corporations that created, own or operate the website Adam4Adam.com.

5.    On information and belief, Defendants infringed Flava's copyrighted images by making copies of Flava's images and publishing the copyrighted images for advertisement purposes.

**JURISDICTION AND VENUE**

6.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, § 1338 and § 1367 and pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq.*

7.    On information and belief, Defendants actively targeted the Illinois market and consumers.

8.    This Court has jurisdiction over Defendants, because Defendants are subject to personal jurisdiction in the State of Illinois under the Illinois Long Arm Statute. On information and belief, Defendants entered into an affiliate agreement with Flava.

9.    A website that is interactive and commercial in nature that promotes the company or that solicits users from other jurisdictions to engage in a business relationship engaged in an intentional and continuous business contact that subjects the website to personal jurisdiction of the federal courts in those jurisdictions. Publications International, Ltd. v. Burke/Triolo, Inc., 121 F. Supp. 2d 1178 (N.D. Illinois 2000). On information and belief, Adam4Adam is an

# Exhibit 1

interactive and commercial website that promotes Defendants' products or services and allows users to join as a user of the website.

**FACTUAL BACKGROUND**

10. Plaintiff is a corporation that produces adult entertainment in the form of DVDs, magazines, websites, pictures, streaming video and various other media.

11. Plaintiff distributes its adult entertainment through various distributors and licensees, as well as through its websites: www.FlavaMen.com, www.CocoDorm.com, www.CocoStore.com, www.PapiCock.com, and www.ThugBoy.com, among others.

12. Plaintiff has applied for and has registered various copyrights for its works. See attached Exhibit "A" for works with registered copyrights.

13. On information and belief, Defendants,A4A RESEAU, INC. and A4A NETWORK, INC., created, owns and operates the website Adam4Adam.com, which is an American online dating website designed for men to meet other men "for friendship, romance, or a hot hookup.

14. At all relevant times, on information and belief, Defendants made copies of Plaintiff's copyrighted images and published the images for advertising purposes. Exhibit "B".

15. On information and belief, when a user clicks on the aforesaid advertisements, the users is redirected to another website, outside of Plaintiff's website, who is the owner of the images used for the advertisements. On information and belief, Defendants either own, operate, or control the website to which the user is redirected or the Defendants are paid by third parties for redirecting the web traffic.

16. On information and belief, Defendants, generate advertising revenue from the traffic to its website. On information and belief, at all relevant times, Defendants used Flava's copyright materials on its site to generate increased traffic for Adam4Adam.com.

17. Plaintiff, Flava Works, Inc., has sent Defendants takedown notices pursuant to 17 U.S.C. § 512 *et seq.*, the Digital Millennium Copyright Act. Exhibit "C".

**COUNT I**

**(Direct Copyright Infringement as to Defendants– 17 U.S.C. § 501.)**

1-17. Plaintiff incorporates and re-alleges paragraphs 1-18 of this Complaint as paragraphs 1-17 of Count I.

18. Defendants' conduct interferes with Plaintiff's exclusive right to reproduce, distribute and display the copyrighted works.

19. Defendants' conduct constitutes copyright infringement that this Court may remedy under Sections 106 and 501 of the Copyright Act.

20. Defendants' aforesaid activities constitute infringement of Plaintiff's copyrights.

21. As a result of the injury suffered by Plaintiff's business from Defendants' actions of direct copyright infringement, Plaintiff is entitled to recover actual and/or statutory damages, which shall be determined at trial, and costs of this action, including reasonable attorney's fees, as well as injunctive relief to prevent future infringement.

**WHEREFORE** Plaintiff, Flava Works, Inc. respectfully requests that this Honorable Court enter the following:

1. A judgment in its favor of Plaintiff, Flava Works, Inc. and against the Defendants.

Exhibit 1

2. For a temporary restraining order, preliminary injunction, and permanent injunction against Defendants and their aliases, agents, servants, representatives, employees, attorneys, parents, subsidiaries, related companies, partners, successors, predecessors, assigns, and all persons acting for, with, by, through, or under Defendants and each of them during the pendency of this action as preliminary injunction and permanently thereafter from:

a. Restraining and enjoining Defendants from posting on any website(s) material that infringes Flava Works' intellectual property, as well as from facilitating the posting on any website(s) by third parties infringing material and/or links which enable the easy access to Flava Works' intellectual property that is located on third party websites;

b. Restraining and enjoining Defendants from otherwise distributing, reproducing, using, copying, streaming, making available for download, or otherwise exploiting Flava Works' intellectual property, including Plaintiff's copyrighted works, trademarks, trade dress, or any other product or symbol with the indicia of Plaintiff's ownership, through use of their website(s) or otherwise;

c. Restraining and enjoining Defendants from doing any other act, through his website(s) or otherwise, which shall confuse, deceive, cause mistake, etc. among the relevant trade and general public as to the association, sponsorship and/or approval between Plaintiff and any website(s);

d. Restraining and enjoining Defendants from otherwise using, copying or otherwise exploiting Plaintiff's copyrights and copyrighted works;

e. Restraining and enjoining Defendants from otherwise using, disclosing. converting, appropriating. retaining. selling, transferring or copying any property of Plaintiffs;

f. Restraining and enjoining Defendants from otherwise Using any of the Plaintiff's marks attached hereto or any colorable imitation of any of the marks in connection with the distribution of images and content at Defendants' website;

g. Restraining and enjoining Defendants from otherwise doing any other act or thing likely to, or calculated to, induce the belief that Defendants or Defendants' business is in any way affiliated, connected associated with Plaintiff, or Plaintiff's business;

h. Restraining and enjoining Defendants from otherwise unfairly competing with plaintiffs in any manner.

3. Requiring Defendants to submit to the Court and to serve upon Plaintiff a report, written under oath, setting forth in detail the manner and form in which Defendant has complied with the terms of this injunction;

4. Requiring Defendants to cease operation of the website domain Adam4Adam.com and to transfer ownership of Adam4Adam.com immediately to Plaintiff;

5. Disgorging Defendants of any profits they may have made as a result of his infringement of Flava Works' intellectual property;

6. Awarding Plaintiff the actual damages sustained by Plaintiff as a result of Defendants' infringement of Flava Works' intellectual property, the amount of which is to be determined at trial;

# Exhibit 1

7. Awarding Plaintiff compensatory and punitive damages, as deemed just and proper by this Court, as a result of the willful misconduct on the part of the Defendants;

8. Awarding Plaintiff the costs of this action, together with reasonable attorney's fees;

9. Awarding Plaintiff enhanced statutory damages, pursuant to 15 U.S.C. § 504(c)(2) of the Copyright Act, for Defendants' willful infringement of Plaintiff's copyrighted works;

10. Requiring within ten (10) days after the entry of an order for either preliminary or permanent injunction, Defendants be required to turn over any files bearing any of Plaintiff's trademarks;

11. Ordering that the domain name Adam4Adam.com be transferred to Plaintiff.

12. Awarding any such other and further relief as this Court deems just, reasonable and equitable.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff demands a trial by jury of all issues properly triable by jury in this action, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED:        January 21, 2015            Respectfully Submitted

<u>s/ Juneitha Shambee, Esq.</u>
Shambee Law Office, Ltd.
P.O. Box 91
Evanston, Illinois 60204-0091
(773) 741-3602
ARDC: 6308145

Exhibit 1

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

FLAVA WORKS, INC.
*Plaintiff*
v.
A4A RESEAU, INC. ET AL.
*Defendant*

Civil Action No. 1:14-cv-23208-JAL

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: PNC Bank

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: January 2012 to December 2014 bank statements and copies of any and all cancelled checks for the account held by Flava Works, Inc.  Please contact John Bradley, jb@bradlegal.com or Joanna Lubczanska, joanna@bradlegal.com for any inquires. (954) 523-6160 (phone), (954) 523-6190 (fax).

| Place: BRADLEY LEGAL GROUP, P.A.<br>15 Northeast 13th Avenue<br>Ft. Lauderdale, Florida 33301 | Date and Time:<br>11/06/2015 9:00 am |
| --- | --- |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
| --- | --- |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 10/23/2015

CLERK OF COURT

OR

_____
*Signature of Clerk or Deputy Clerk*

/s Michael Gulisano
_____
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff FLAVA WORKS, INC., , who issues or requests this subpoena, are:
Michael Gulisano, Esquire, 5613 NW 117th Ave., Coral Springs, FL 33076, 561-271-1678, gulisanomichael@gmail.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

---

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

FLAVA WORKS, INC.
*Plaintiff*
v.
A4A RESEAU, INC. ET AL.
*Defendant*

Civil Action No. 1:14-cv-23208-JAL

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Fifth Third Bank

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: January 2012 to October 2013 bank statements and copies of any and all cancelled checks for the account held by Flava Works, Inc. Please contact John Bradley, jb@bradlegal.com or Joanna Lubczanska, joanna@bradlegal.com for any inquires. (954) 523-6160 (phone), (954) 523-6190 (fax).

| Place: BRADLEY LEGAL GROUP, P.A.<br>15 Northeast 13th Avenue<br>Ft. Lauderdale, Florida 33301 | Date and Time:<br>11/06/2015 9:00 am |
| --- | --- |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
| --- | --- |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 10/23/2015

CLERK OF COURT

OR

_____
*Signature of Clerk or Deputy Clerk*

/s Michael Gulisano
_____
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff FLAVA WORKS, INC., , who issues or requests this subpoena, are:
Michael Gulisano, Esquire, 5613 NW 117th Ave., Coral Springs, FL 33076, 561-271-1678, gulisanomichael@gmail.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).



Exhibit M
Exhibit 1

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | | |
|---|---|---|
| FLAVA WORKS, INC. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 1:14-cv-23208-JAL |
| A4A RESEAU, INC. ET AL. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                    TD Bank

_____
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: August 2015 bank statement and copies of any and all cancelled checks for the account held by Flava Works, Inc.  Please contact John Bradley, jb@bradlegal.com or Joanna Lubczanska, joanna@bradlegal.com for any inquires. (954) 523-6160 (phone), (954) 523-6190 (fax).

| Place: BRADLEY LEGAL GROUP, P.A. | Date and Time: |
|---|---|
| 15 Northeast 13th Avenue | |
| Ft. Lauderdale, Florida 33301 | 11/06/2015 9:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

      The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     10/23/2015

|          *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | /s Michael Gulisano |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Plaintiff
FLAVA WORKS, INC.,_____ , who issues or requests this subpoena, are:

Michael Gulisano, Esquire, 5613 NW 117th Ave., Coral Springs, FL 33076, 561-271-1678, gulisanomichael@gmail.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# Exhibit 1