**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

PHILLIP BLEICHER,                                                    CASE NO.: 1:26-CV-06287

      Plaintiff,

v.

MICHAEL GULISANO,

      Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS

Defendant, Michael Gulisano (the "Defendant"), by and through counsel, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), moves to dismiss the Complaint (ECF No. 1) filed by Plaintiff, Phillip Bleicher ("Bleicher"), in its entirety with prejudice, for the reasons that follow.

1.      Bleicher filed a Complaint for (1) defamation *per se*; (2) public disclosure of private facts; (3) intrusion upon seclusion; (4) false light invasion of privacy; (5) intentional infliction of emotional distress ("IIED"); (6) tortious interference with prospective economic advantage ("Tortious Interference"); and (7) violation of the Doxing Act. *See* ECF No. 1.

2.      The Defendant is a Florida attorney who briefly represented Bleicher's criminal enterprise, Flava Works, Inc. ("Flava Works"), in 2015, for *less than* two (2) months on a copyright infringement action in the Southern District of Florida known as *A4A Reseau, Inc. v. Flava Works, Inc., et al.*, No. 15-cv-20245 (Fla. S.D. 2015) (the "FL Case"). *See* Response to Bar Complaint attached as Exhibit 1; Defendant's Declaration attached as Exhibit 2.

3.      Flava Works is a Florida and Illinois corporation, which produces homosexual pornography featuring African-American and Hispanic men and occasionally minors. *See* Exs. 1; 2. Bleicher derives a large portion of his ill-gotten gains by filing, or threatening to file, frivolous copyright infringement lawsuits and, in some instances, by also threatening to "out"

closeted homosexual man unless they pay him settlements. *See* Exs. 1; 2.

4.      At the outset, the Complaint includes completely irrelevant allegations pertaining to two unrelated cases the Defendant worked on, which Bleicher had *no* involvement with and that clearly have *no* bearing on any of his claims. Presumably, Bleicher included these irrelevant allegations for the improper purposes of trying to embarrass the Defendant, to prejudice the Court against him, and to extract a settlement.

5.      The Complaint includes an entirely false recitation of the Defendant's representation of Flava Works. *See* ECF No. 1 at 5–7, ¶ 13–19. The only accurate statement about the representation is that it was brief. *See* Exs. 1; 2. The Defendant withdrew from representing Flava Works in the FL Case—he was not fired—after Bleicher asked him to *fabricate* evidence to avoid paying sanctions of $10,000.00 imposed against Flava Works. *See* Exs. 1; 2. Bleicher never compensated the Defendant for the services he provided before withdrawal.

6.      In 2016, after the Defendant refused to fabricate evidence and withdrew from the FL Case, Bleicher spitefully filed a frivolous bar complaint against him and two (2) other attorneys that represented Flava Works in that matter. *See* Exs. 1; 2. The Florida Bar found *no* merit to Bleicher's allegations against the Defendant or the two (2) other attorneys. *See* Exs. 1; 2. In 2024, Bleicher filed another frivolous bar complaint against the Defendant based on the allegations forming the basis of the claims in the Complaint and the Florida Bar again found *no* merit to Bleicher's allegations. *See* Exs. 1; 2. This Court should dismiss those claims as well.

**FACTUAL ALLEGATIONS**

7.      Putting all that aside, the gist of Bleicher's Complaint centers on two (2) factual allegations. First, it alleges the Defendant posted a "defamatory" blog post in 2017 on his law firm's website concerning Bleicher. *See* ECF No. 1 at 8, ¶ 25 ("The Article itself—which Defendant has continuously published … since approximately 2017 …."). Shockingly, the

2

Complaint omits that the article is actually a *reproduction* of the Defendant's response to the frivolous bar complaint Bleicher filed against him in 2016. *See* Exs. 1; 2.

8. In Florida, bar complaints and responses thereto are *public* records. *See* R. Regulating Fla. Bar 3-7.3(g); 4 Fla. Jur. Attorneys at Law § 229 (emphasis added) ("When bar counsel does not pursue an inquiry or dismisses a disciplinary case, such action will be deemed a finding of no probable cause for further disciplinary proceedings and *the matter will become public information*."). As such, Bleicher had no expectation of privacy concerning the matters in the article—a reproduction of a public record—whereas the Defendant's speech is protected under the First Amendment and Constitutions of Illinois and Florida.

9. Shockingly, the Complaint also omits that *none* of the alleged "defamatory" statements were actually *made* by the Defendant. *See* Exs. 1; 2. The statements, which are *all* true, are actually citations and quotations to *third-party* publications and news reports chronicling Bleicher's lifelong egregious criminality and frivolous litigation.[1] *See* Exs. 1; 2.

10. Second, the Complaint alleges that the Defendant "updated" the "defamatory" article "[i]n … June 2024 … Defendant materially modified the Article and added a block labeled '2024 Update' that publishes Plaintiff's home address … personal cellular telephone number … and … personal email address (the 'Doxing Block')." ECF No. 1 at 2, ¶ 3.

11. Bleicher forfeited any expectation to privacy by putting that information in public records, to wit, his frivolous 2016 and 2024 bar complaints against the Defendant. More importantly, by Bleicher's own admission, the only thing that changed in June 2024 was the

---

[1] As a public figure, Bleicher would ordinarily have to establish actual malice to prevail on a defamation claim. *See, e.g.*, Ex. 1 at 33 (Jagged Press article stating, "Bleicher and his company are also well-known for frivolous lawsuits against detractors or, against those who amplify outside findings and facts, and using underhanded moves, abusing the law …."); Ex. 1 at 37–44 (Chicago Department of Public Health documenting how Bleicher exposed his "performers" to HIV and the shutdown of his illegal brothel in Chicago); Ex. 1 at 45–46 (Illinois Attorney General documenting how Bleicher's fraudulent charity stole more than $3 million from schools); Ex. 1 at 47–48 (News Bank article noting Miami's attempts to shut down Bleicher's illegal brothel operating out of a Miami residential house).

addition of his publicly available address, phone number, and email. However, the alleged "defamatory" statements published in 2017 have never been altered since publication.

**MEMORANDUM OF LAW**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "the complaint must 'state a claim for relief that is plausible on its face.'" *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must "plead particularized factual content, not conclusory allegations, that allows the court to plausibly infer the defendant is liable for the alleged misconduct." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). In ruling on a motion to dismiss, the Court may appropriately consider affirmative defenses "evident on the face of the pleadings." *Dickens v. Illinois*, 753 F. App'x 390, 392 (7th Cir. 2018) (court properly considered a statute of limitations affirmative defense in dismissing complaint).

**I. The Court Lacks Personal Jurisdictional Over the Defendant Warranting Dismissal**

The Complaint alleges specific *in personam* jurisdiction is established because the Defendant intentionally directed tortious activities at Bleicher in Illinois or the assertion of jurisdiction comports with the due process clauses of the Illinois and U.S. Constitutions. *See* 735 ILCS 5/2-209. "Because Illinois authorizes personal jurisdiction to the maximum extent allowed by the Illinois and federal constitutions, this inquiry collapses into the due process inquiry below." *Donmar, Inc. v. Swanky Ptnrs., Inc.*, No. 02-C-1482, 2002 U.S. Dist. LEXIS 15308, at *5 (N.D. Ill. Aug. 19, 2002). "Federal due process requirements are met when (1) the defendant has sufficient minimum contacts with the forum state such that he has purposefully availed himself of the benefits and protections of the forum state's law; (2) the claim arises out of defendant's specific contacts with the forum state; and (3) the exercise of jurisdiction is reasonable." *Id.* at *6.

4

"The effects doctrine provides that personal jurisdiction over a defendant is proper when the defendant's intentional, tortious acts are expressly aimed at the forum state and they cause harm to the plaintiff, which harm the defendant knows is likely to be suffered." *Donmar, Inc.*, 2002 U.S. Dist. LEXIS 15308, at *7 (citation omitted). "However, the Seventh Circuit has clearly drawn a line between the commission of a tort affecting interests in Illinois and the commission of a tort that merely inflicts economic injury in Illinois." *Id.* at *7–8 (citation omitted). "An Illinois court does not acquire jurisdiction … simply because an economic loss is felt in Illinois when all the conduct contributing to the injury occurred outside Illinois." *Id.* at *8 (quotation omitted). "Courts generally exercise personal jurisdiction over defendants maintaining web sites that actively do business over the Internet. In general, courts do not exercise jurisdiction over merely passive web sites." *Id.* at *10 (citations omitted).

Here, Bleicher admits that the Defendant is a Florida attorney who briefly represented his company Flava Works in Florida in 2015. He admits that he filed bar complaints against the Defendant in Florida in 2016 and 2024. He admits that the alleged "defamatory" article—a reproduction of a public record—was published in Florida in 2017. The Defendant is not licensed to practice law in Illinois and, as such, it cannot reasonably be argued that an article on the website for his Florida law firm was directed towards residents of Illinois or intended to conduct business in it. *See be2 LLC v. Ivanov*, 642 F.3d 555, 558-59 (7th Cir. 2011) ("Beyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way target the forum state's market."). The Defendant submits a declaration challenging the alleged basis for jurisdiction. *See* Ex. 2. The Defendant has never been to Illinois, he has never purposefully availed himself of the privilege of conducting business in this State, and could not have reasonably anticipated being brought into its courts. *See* Ex. 2.

The Defendant had no reason to know republication of a Florida public record and

5

intended for a Florida audience would cause suffering in Illinois, merely economic injury, so the effects doctrine does not confer personal jurisdiction. *See* Ex. 2. *See also, Donmar, Inc.*, 2002 U.S. Dist. LEXIS 15308, at *8–9 ("Swanky Partners has conducted all activity outside of Illinois. Other than the maintenance of a web site (which cannot be said to have been 'aimed at the forum state'), there is no evidence of any contacts with Illinois. Furthermore, the injury alleged by plaintiff is purely economic and thus is not enough to allow the effects doctrine to confer personal jurisdiction."). In short, Bleicher's claims arise from actions and transactions that occurred in Florida and the Defendant lacks minimum contacts and purposeful availment with Illinois that would comport with due process. Consequently, the Defendant is not subject to personal jurisdiction in this District. Therefore, the Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

**II. The Defamation *Per Se* Claim Fails as a Matter of Law and Must be Dismissed**

In Illinois, defamation actions are subject to a one-year statute of limitations. *See* 735 ILCS 5/13-201 ("Actions for slander, libel or publication … shall be commenced within one year next after the cause of action accrued"); *Peal v. Lee*, 403 Ill. App. 3d 197, 207 (2010) ("The statute of limitations to file a defamation claim is one year"). In Illinois, "in defamation cases the cause of action accrues and the statute of limitations begins to run on the *date of publication* of the defamatory material." *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 334 N.E.2d 160, 161 (Ill. 1975) (emphasis added).

Here, the Complaint admits that the allegedly "defamatory" statements were published in 2017. Specifically, "[t]he Article itself — which Defendant has continuously published … since approximately 2017 …." ECF No. 1 at 8, ¶ 25 (emphasis added). Therefore, the defamation claim is time-barred because it was filed outside of the applicable one-year statute of limitations, which began to run in 2017, whereas Bleicher filed suit in 2026. In a thinly veiled

attempt to avoid the clear bar presented by the statute of limitations, Bleicher claims, "[e]ach modification or republication of the Article—including the addition of the Doxing Block in or about June 2024—constitutes a separate, actionable publication." ECF No. 1 at 25, ¶ 108.

However, this statement directly contradicts Illinois law on this issue. *See Tom Olesker's Exciting World of Fashion, Inc.*, 334 N.E.2d at 161. Moreover, by Bleicher's own admission, the only thing that changed in June 2024 was the addition of his personally identifiable information ("PII") but *not* any changes to the alleged "defamatory" statements published in 2017. *See* ECF No. 1 at 2, ¶ 3. Surely, Bleicher does not assert that a recitation of PII is a "statement" subject to defamation. Even if he did allege the limitations period began in June 2024, the claim for defamation would *still* be time-barred since suit was not filed until 2026. Therefore, the defamation claim must be dismissed with prejudice for being time-barred.

Bleicher's defamation claim also fails as a matter of law for at least two (2) additional reasons. First, a true or "substantially true" statement cannot form the basis for a defamation claim. *See Moore v. People for the Ethical Treatment of Animals, Inc.*, 402 Ill. App. 3d 62, 71 (2010); *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. App. 2d 381, 402 (2008) ("a statement is not actionable unless it is [both] factual and false"). "Truth is an absolute defense to a defamation action." *Younge v. Berman*, 267 N.E.3d 346, 358 (Ill. App. 2d 2025) (citation omitted). "Under this reasoning, a statement is not actionable if it is substantially true, meaning the 'gist' or 'sting' of the statement at issue is true." *Id.* (citation omitted).

Second, "opinions that do not misstate facts are protected not only by Illinois law but also by the First Amendment, and that is so even when the opinions concern one of the five defamation *per se* categories under Illinois law." *Bd. of Forensic Document Exam'rs, Inc. v. ABA*, 922 F.3d 827, 832 (7th Cir. 2019). Thus, statements which "fail to amount to verifiable assertions of fact" and "lack[] readily understood meaning" are protected statements of opinion that do

7

not give rise to a defamation claim. *Madison v. Frazier*, 539 F.3d 646, 655 (7th Cir. 2008).

Here, Bleicher's defamation claim also fails because: (1) the allegedly defamatory statements—quotations or citations to news organizations and governmental entities—are true; and/or (2) the statements consist of the Defendant's subjective opinions about Bleicher's character and are not verifiable statements of fact. *Compare* Ex. 1 *with Younge*, 267 N.E.3d at 358 (emphasis added) ("[W]ith one exception, the information contained in the aforementioned cover letter is substantially true, as shown by the relevant attachments adjoining the letter."). Therefore, the defamation claim must be dismissed for failing to state a claim.

**III. The Privacy Claims Fail as a Matter of Law and Must be Dismissed**

"Illinois courts recognize four ways to state a cause of action for invasion of privacy: '(1) intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) public disclosure of private facts; and (4) publicity placing another in a false light.'" *Cooney v. Chi. Pub. Schs*, 943 N.E.2d 23, 31–32 (Ill. App. 3d 2010) (quotation omitted). In Illinois, privacy actions are subject to a one-year statute of limitations. *See* 735 ILCS 5/13-201 ("Actions for … publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued"). Bleicher's Complaint asserts three (3) of the four (4) ways to state a cause of action for invasion of privacy under Illinois law.

Here, each of Bleicher's three (3) privacy claims are time-barred because they were filed outside of the applicable one-year statute of limitations, which began to run in 2017, whereas Bleicher filed suit in 2026. By Bleicher's own admission, the only thing that changed in June 2024 was the addition of his PII *not* any changes to the alleged "defamatory" statements published in 2017. *See* ECF No. 1 at 2, ¶ 3. Even *if* the limitations period began to run in June 2024, the privacy claims would still be time-barred since suit was filed until 2026. Therefore, the privacy claims must be dismissed with prejudice for being time-barred.

Further, each of Bleicher's privacy claims are based on the same statements and allegations that form the basis of the defamation claim. *See Osundairo v. Geragos*, 447 F. Supp. 3d 727, 738 (N.D. Ill. 2020) ("Where an unsuccessful defamation *per se* claim is the basis of his false-light claim, plaintiff's false light invasion of privacy claim fails as well."); *Gracia v. SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1062 (7th Cir. 2021) (same). Since defamation and privacy claims rise and fall together, Bleicher's privacy claims fail as a matter of law for the same substantive reasons, identified above, that cause the defamation claim to fail. The privacy claims are doomed for additional reasons.

"To support the intrusion theory, plaintiffs must allege: (1) an unauthorized intrusion into seclusion; (2) the intrusion would be highly offensive to a reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused the plaintiffs anguish and suffering." *Cooney*, 943 N.E.2d at 32 (citation omitted). "Public disclosure of private facts requires that '(1) publicity was given to the disclosure of private facts; (2) the facts were private, and not public, facts; and (3) the matter made public was such as to be highly offensive to a reasonable person.'" *Id.* (quotation omitted). "While the theories contain different elements, both the intrusion and public disclosure torts require '*private*' matters or facts." *Id.* (emphasis added).

"Private facts must be alleged. Without private facts, the other three elements of the tort need not be reached. Because the analysis begins with the predicate, private facts, it also ends there if no private facts are involved." *Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1017 (Ill. App. 3d 2004). Under Illinois law, "matters of public record such as names and dates of birth have *not been held* to be private facts." *Cooney*, 943 N.E.2d at 32 (emphasis added). "[N]one of the "personal" information furnished … names, telephone numbers, addresses or social security numbers-*have been held to be private facts*." *Busse*, 813 N.E.2d at 1017 (emphasis added).

Here, to the extent Bleicher asserts that publishing his name, address, phone number,

9

and/or email address are actionable as an "intrusion upon seclusion" or "public disclosure of private facts," such allegations do not support either claim. *See Cooney*, 943 N.E.2d at 32; *Busse*, 813 N.E.2d at 1017. The disclosure of private facts claim would also fail since the article is a matter of legitimate public concern, which has helped people since 2017 from being conned and extorted by Bleicher. *See Doe v. TCF Bank Ill.*, 707 N.E.2d 220, 221 (Ill. App. 3d 1999) (adding a fourth element that "the matter published was not of legitimate public concern"). Many of them have reached out to the Defendant to thank him for making this vital information available. *See* Ex 2. Therefore, all of the privacy claims must be dismissed for failing to state claims.

**IV. The IIED Claim Fails as Matter of Law and Must be Dismissed**

> [In Illinois] three elements necessary to state a cause of action for [IIED] …. "First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress."

*Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. App. 2d 2003) (quotation omitted). "[T]he applicable statute of limitations for [IIED] is two years …." *Feltmeier*, 798 N.E.2d at 85 (citing 735 ILCS 5/13-202). Here, Bleicher's claim for IIED is time-barred because it was filed outside of the applicable two-year statute of limitations, which began to run in 2017, whereas Bleicher filed suit in 2026. Therefore, the IIED claim must be dismissed for being time-barred. Moreover, the IIED claim would also fail as a matter of law.

"Illinois case law makes clear that under no circumstances would 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' qualify as outrageous conduct." *Feltmeier*, 798 N.E.2d at 80–81 (quotation omitted). "Rather, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community." *Id.* (citation omitted).

10

Here, quotations and citations to *true* statements made by *third* party news organizations and governmental entities, as well as, the Defendant's personal opinions based on those true statements cannot support a claim for IIED as a matter of law. It cannot seriously be claimed that such conduct rises to the level as to be "so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community." To the extent Bleicher claims that the June 2024 "update" to the allegedly "defamatory" post published in 2017 constitutes IIED, posting publically available PPI of a public figure cannot—as a matter of law— rise to the level as to be "so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community." Therefore, the IIED claim must be dismissed for failing to state a claim.

**V. The Tortious Interference Claim Fails as a Matter of Law and Must be Dismissed**

"It is clear from Illinois case law that, in order to state a viable claim of tortious interference with a prospective economic advantage, a defendant must specifically intend to interfere with the same expectancy that is thwarted by their conduct." *Younge*, 267 N.E.3d at 356. *See J. Eck & Sons, Inc. v. Reuben H. Donnelley Corp.*, 572 N.E.2d 1090, 1093 (Ill. App. 3d 1991) ("The requisite intent … is defendant's knowledge of a reasonable business expectancy and defendant's subsequent intentional interference which prevents the expectancy from ripening into a valid business relationship.").

"When considering such a claim, 'the focus is on the conduct of the party interfering with the expectancy.'" *Younge*, 267 N.E.3d at 354 (quotation omitted). "It is insufficient for a plaintiff to merely allege that a defendant indeed interfered with a business expectancy; the plaintiff must instead allege that the defendant 'acted intentionally with the purpose of injuring the plaintiff's expectancy.'" *Id.* (quotation omitted). The statute of limitations for a claim for Tortious Interference is five (5) years. *See Colucci v. Chi. Crime Comm'n*, 334 N.E.2d 461, 469–70

11

(Ill. App. 3d 1975).

Here, Bleicher's claim for Tortious Interference is time-barred because it was filed outside of the applicable five-year statute of limitations, which began to run in 2017, whereas Bleicher filed suit in 2026. Therefore, the Tortious Interference claim must be dismissed for being time-barred. Moreover, the claim also fails as a matter of law since Bleicher could never establish: (1) the necessary intent to support a claim for Tortious Interference; (2) that the Defendant directly caused any loss of any legitimate business; or (3) that any loss of any legitimate business was *actually* caused by the Defendant's reproduction of his response to Bleicher's 2016 frivolous bar complaint, which is a public record.

In regards to the latter two (2) points, the vast majority of Bleicher's "business" consists of fraud, extortion, and other illegal and illegitimate acts that cannot support a Tortious Interference claim. *See* Ex. 1. Even if there were facts to support a claim for Tortious Interference, that claim would likely belong to Flava Works *not* Bleicher personally. To the extent Bleicher alleges that publishing his address, phone number, and email in June 2024 constituted Tortious Interference—posting publically available PPI of a public figure cannot as a matter of law—support such a claim. Therefore, the Tortious Interference claim must be dismissed for failing to state a claim.

## VI. The Doxing Act Claim Fails as a Matter of Law and Must be Dismissed

Finally, Bleicher brings a claim under the Illinois Doxing Act—the *only* claim out of seven (7)—not clearly barred by the statute of limitations. However, the claim fails, as a matter of law, for numerous reasons. The Doxing Act requires that "the information is published with the intent that it be used to harm or harass the person whose information is published and with knowledge or reckless disregard that the person whose information is published would be reasonably likely to suffer death, bodily injury, or stalking." 740 ILCS 195/10(a)(1).

12

> We read a Doxing Act claim to have six elements: (1) intentional publication of personally identifiable information; (2) the published information identifies a person without reliance on extrinsic sources; (3) lack of consent to the publication; (4) intent to harm or harass; (5) knowledge or reckless disregard of a reasonable likelihood of death, bodily injury, or stalking to the person whose information is published; and (6) one or more of the listed harms results.

*D'Ambrosio v. Meta Platforms Inc.*, No. 25-2231, 2026 U.S. App. LEXIS 14045, at *13–14 (7th Cir. May 15, 2026).

Here, Bleicher's alleged "doxing" is not be actionable because: (1) the published information relies on, cites to, and directly quotes extrinsic sources; (2) Bleicher consented to the publication by voluntarily supplying the information in public records; (3) the Defendant published the information to inform the public, not with the intent to harm or harass; (4) the Defendant had no knowledge of nor did he recklessly disregard a reasonable likelihood of death, bodily injury, or stalking; and (5) none of the statutorily listed harms have occurred.

In regards to that last point, Bleicher alleges in conclusory fashion:

> Defendant's publication caused Plaintiff significant emotional distress, economic injury, fear of substantial bodily injury, and substantial life disruption—including without limitation more than 599 harassing telephone calls, text messages, and voicemails to Plaintiff's unlisted cellular telephone number; ongoing anxiety, sleep disruption, and emotional distress; the need to alter daily life and communications routines; and economic injury including increased risk to Plaintiff's personal and professional security.

ECF No. 1 at 21, ¶ 84. It is highly unlikely, and the Defendant disputes, the Doxing Act was meant to apply to public figures such as Bleicher. However, "emotional distress," "*fear* of substantial bodily injury," "harassing telephone calls, text messages, and voicemails," "anxiety, sleep disruption, and emotional distress [actually listed twice]," "alter[ing] daily life and communications routines," and generic "economic injury [also listed twice]" are not enumerated harms under the Doxing Act.

13

Since Bleicher concedes that neither death nor bodily injury has occurred, the only possible remaining harm under the Doxing Act would be "stalking." However, the alleged harm is not identified in the Complaint with the specificity required to maintain the claim and any attempt at amendment would be futile. "[S]talking requires two or more acts in which a person 'directly, indirectly, or through third parties, by any action, method, device, or means follows, monitors, observes, surveils, [or makes a true threat of unlawful violence about] … a person, engages in other non-consensual contact, or interferes with or damages a person's property or pet.'" *D'Ambrosio*, 2026 U.S. App. LEXIS 14045 at *15–16 (citations omitted).

Here, the Complaint does not allege that the Defendant "stalked" Bleicher. Bleicher's attempt to impose liability on the Defendant for phone calls or emails made by unnamed third parties is extremely problematic and presents insurmountable evidentiary issues. Any statements these unnamed third parties allegedly *made* linking their actions to the Defendant's article would be inadmissible hearsay. Regardless, the Complaint does not allege that the Defendant enlisted these unnamed third parties to "stalk" Bleicher. Moreover, the Complaint "makes no effort to explain how someone could reasonably infer from [the Defendant's] alleged conduct that []he intended to put him in reasonable fear of death, bodily injury, or stalking. Nor does he explain how posting h[is] impressions of [Bleicher and his response to a 2017 bar complaint] accomplishes that purpose. None of the post[] attributed to [the Defendant] contain a call to action, much less a call to action for … anyone else to harm [Bleicher] or his family." *D'Ambrosio*, 2026 U.S. App. LEXIS 14045 at *17–18.

The allegations in the Complaint actually refute any claim of "stalking" since—in nearly every instance—the alleged "stalker" was *responding* to Bleicher's non-consensual contact attempting to extort settlements *from* the alleged "stalker," as is, his modus operandi. *See supra* ¶ 2; ECF No. 1 at 15–18, ¶ 61–72. This at last exposes the real motivation behind Bleicher's

baseless claims—he is angry that *some* of the individuals (who are not identified and cannot be cross-examined) that he targeted to defraud—allegedly saw a 2016 response to his frivolous bar complaint against the Defendant and were able to avoid being extorted by him. In fact, the *entire* point of the Defendant publishing, in 2017, his response to Bleicher's frivolous bar complaint, as well as, the "update" in June 2024 to include his contact information—was for people to avoid *any* interaction with Bleicher and assist the victims of his rampant criminal acts and vexatious litigation by screening his attempts to contact them. *See* Ex. 2.

Thus, none of the alleged harm in the Complaint constitutes "stalking" under the Doxing Act. The Doxing Act claim is also not actionable since the alleged conduct is protected by *at least* three (3) exceptions to that law. First, "[i]t is not an offense … for an individual to disseminate the [PPI] for the purpose of, or in connection with, the reporting of conduct reasonably believed to be unlawful." 740 ILCS 195/10(b)(2). Second, "[i]t is not an offense … for an individual to provide a person's [PPI] in connection with activity protected under the United States … or the Illinois Constitution pertaining to speech …." 740 ILCS 195/10(b)(3). Third, "[n]othing in this Act shall be construed … to prohibit any activity protected under the Constitution of the United States or … Illinois …." 740 ILCS 195/10(c)(3).

Here, Bleicher's Doxing Act claim also fails because: (1) the Defendant was reporting conduct reasonably believed to be unlawful; (2) the Defendant provided the information in connection with activity protected under the Constitutions of the U.S. and Illinois pertaining to speech; and (3) the interpretation of the Doxing Act, as advocated by Bleicher, would prohibit activities protected under the Constitutions of the U.S. and Illinois. Therefore, the Doxing Act claim must be dismissed for failing to state a claim.

**WHEREFORE**, the Defendant respectfully requests that the Court enter an order dismissing the Plaintiff's Complaint (ECF No. 1) with prejudice.

15

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on August 7, 2026 on all counsel of record via transmission of a Notice of Electronic Filing generated by CM/ECF.

Respectfully Submitted By:

Gulisano Law, PLLC
1489 W. Palmetto Park Road, Suite 500
Boca Raton, FL 33486
954-947-3972 – office
michael@gulisanolaw.com – email

s/ Michael Gulisano
Michael Gulisano, Esquire
Florida Bar No.: 87573
(Application for admission *pro hac vice* forthcoming)