**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| PHILLIP BLEICHER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL GULISANO, an individual,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:26-cv-06287<br><br>Hon. John F. Kness<br><br>Magistrate Judge Young B. Kim |

**PLAINTIFF'S MOTION TO RESTRICT AND STRIKE SCANDALOUS MATTER FROM THE RECORD (ECF NOS. 12, 12-1, 13-1, 15) UNDER THE COURT'S INHERENT AUTHORITY, TO ENFORCE FED. R. CIV. P. 5.2, AND FOR AN ORDER TO SHOW CAUSE REGARDING THE CONDUCT OF DEFENDANT, AN ATTORNEY SEEKING PRO HAC VICE ADMISSION**

## INTRODUCTION

Defendant Michael Gulisano is a Florida attorney. He has been sanctioned by two different federal courts: suspended for one year from practice before the United States Bankruptcy Court for the Southern District of Florida and fined $40,000 for "unreasonably and vexatiously" multiplying proceedings, and sanctioned $19,549.12 under Rule 11 in a judgment the Eleventh Circuit affirmed after finding that he "violated his duty of candor" and "acted in bad faith." *Gulisano v. Burlington, Inc.*, 34 F.4th 935 (11th Cir. 2022). He has admitted, in writing, to the Florida Bar, that he knowingly made a false statement of fact or law to a tribunal. R. Regulating Fla. Bar 4-3.3(a)(1). He is not admitted to practice before this Court; his application for pro hac vice admission (ECF No. 11) is pending — and, as shown below, the sworn description of his disciplinary history he gave this Court omits every one of those material facts.

In the three weeks since he filed that application, this not-yet-admitted attorney has used this Court's public docket to brand Plaintiff a child predator. He has done it in a motion, in a 76-

page exhibit filed twice, in an email to counsel, and in a two-page filing whose only stated purpose was to propose briefing dates. In that filing, captioned "Defendant's Proposed Briefing Schedule," he calls Plaintiff "a homosexual kiddie-porn kingpin" engaged in "rampant homosexual pedophilia, which continues to endanger the vulnerable youth of Illinois." (ECF No. 15 ¶¶ 3, 7.) A proposed briefing schedule requires two dates and a signature. Defendant supplied an accusation of child sexual abuse — an accusation he has never sourced, against a man who has never been arrested for, charged with, or convicted of any offense described in his filings. (Compl. ¶ 106.)

The escalation is documented and dated: "at-risk youths" in his 2016 letter (vulnerability, not age); a sworn "occasionally minors," citing a letter that contains no such statement (ECF No. 12 ¶ 2; ECF No. 13-2 ¶ 3 (declaration under penalty of perjury, citing nothing)); "your pedophile client" in a Thursday, August 20, 2026 scheduling email to Plaintiff's counsel; a Saturday, August 22 edit to the website at issue soliciting readers who "were one of his victims, especially if you were underage," to "contact me"; and ECF No. 15 on Monday, August 24. Each step escalated the same manufactured accusation. Not one had a litigation function.

This is not advocacy. It is the conduct sued upon, migrated onto the Court's own docket — where Defendant evidently believes a caption and a PageID will do for him what his website already does. The docket is a public record of judicial business; it is not a continuation of Defendant's website by other means.

The same filings violate this Court's privacy rules outright. Exhibit 1 places a non-party corporation's federal income-tax return on the public docket with its taxpayer-identification number unredacted — Fed. R. Civ. P. 5.2(a)(1) — together with an individual's name and street address. Defendant redacted that same number where it appears on the face of the form and left it exposed in the schedules: he knew the rule, performed the redaction, and stopped. All of this from

a defendant being sued for publishing a man's private identifiers to invite harassment. (Compl. ¶ 56.)

Plaintiff asks the Court to strike or seal the offending material, to strike the scandalous paragraphs, to require Rule 5.2-compliant redaction of anything refiled — and to order Defendant to show cause why his conduct, and the representations in his pending pro hac vice application, do not warrant further action under the Court's inherent authority.

## BACKGROUND

### *A. The movant behind these filings*

1. Defendant is a Florida attorney (Fla. Bar No. 87573) appearing for himself, with an application for pro hac vice admission pending (ECF No. 11). His record, established by court orders and his own written admissions, follows.

2. **The 2017 suspension and $40,000 sanction.** By order of September 6, 2017, the United States Bankruptcy Court for the Southern District of Florida found that Defendant had "unreasonably and vexatiously multiplied the proceedings," 28 U.S.C. § 1927, suspended him from practice before that court for one year, and imposed a $40,000.00 monetary sanction. In the ensuing Florida Bar proceeding (TFB No. 2018-50,205), Defendant tendered a written Admission of Minor Misconduct in which he admitted violating Rule 4-3.3(a)(1) — knowingly making a false statement of fact or law to a tribunal — together with Rules 4-3.4(a), 4-3.4(c), and 4-8.4(a). Defendant's response to that sanction is itself instructive: he commenced a district-court proceeding against the Chapter 7 trustee in his own name — captioned Gulisano v. Bakst — in which he moved, ex parte, to have the trustee sanctioned (denied); resisted the garnishment of his own firm; and filed successive motions to vacate on four shifting theories, every one stricken. His ensuing appeal to the

Eleventh Circuit was dismissed for want of prosecution when he failed to file a brief. Gulisano v. Bakst, No. 9:17-cv-81301 (S.D. Fla.) (Middlebrooks, J.), appeal dismissed, No. 18-13537 (11th Cir. Oct. 4, 2018).

3. **The Rule 11 sanction, affirmed on appeal.** In *Gulisano v. Burlington, Inc.*, 34 F.4th 935 (11th Cir. 2022), the Eleventh Circuit affirmed a $19,549.12 Rule 11 sanction against Defendant personally. The district court found that he had "attempt[ed] to conflate various distinct corporate entities in order to recover an award of damages obtained through a default judgment against a non-existent corporate entity," and that his conduct was "both frivolous and dishonest"; the Court of Appeals held his position "legally and factually frivolous," found that he "violated his duty of candor," and concluded that the district court "correctly determined that Gulisano acted in bad faith." The district court referred him to the Florida Bar.

4. **What his sworn application told this Court.** On ECF No. 11, Defendant checked "Yes" to the question whether he has ever been "censured, suspended, disbarred, or otherwise disciplined by any court," and attached a "Brief Description of the Incident(s)" that he signed under the form's declaration: "I declare under penalty of perjury that the foregoing is true and correct." That sworn description recounts the bankruptcy matter as follows: "my mistake was not seeking approval from the trustee before reaching the settlement of the elderly couple's claim"; "I gained no financial benefit from the settlement"; and "the Florida Bar accepted an admission of 'minor misconduct,' which required attendance at an ethics CLE." It recounts the 2020 matter as follows: "I mistakenly misnamed a corporate defendant in the pleadings," and "[t]he District Court did not accept my position and granted a motion for sanctions filed by the Defendant."

5. What the sworn description does not say is what the record says. It nowhere discloses that the sanctioning court suspended him from practice for one year. It nowhere discloses the $40,000.00 monetary sanction, or the court's finding that he "unreasonably and vexatiously multiplied the proceedings." It nowhere discloses that his Florida Bar admission included Rule 4-3.3(a)(1) — knowingly making a false statement of fact or law to a tribunal. And as to Burlington, it nowhere discloses the amount of the sanction ($19,549.12), the published Eleventh Circuit decision affirming it, that court's holdings that his position was "legally and factually frivolous," that he "violated his duty of candor," and that he "acted in bad faith," or the district court's referral of him to the Florida Bar — citing "misnomer rule" case law as though the frivolous position had been reasonable. The words "suspended," "one year," "$40,000," and "$19,549.12" appear nowhere in it. This Court is entitled to decide his admission on a complete and candid record. It does not have one.

***B. Exhibit 1: the defamation, filed twice as an "exhibit"***

6. Exhibit 1, filed identically at ECF Nos. 12-1 and 13-1, is a seventeen-page letter Defendant wrote in 2016, styled in part an "Open Letter to Governmental Agencies Regarding Mr. Bleicher's Ongoing Illegal Activities." Defendant did not confine it to the Florida Bar inquiry it nominally answered: its own distribution block (Exhibit 1 at 17, PageID #309) records that he sent it "under separate cover" to the Chicago Department of Public Health; Rahm Emanuel, Mayor of Chicago; the Illinois Attorney General, Lisa Madigan; the Chicago Sun-Times; the Federal Bureau of Investigation; the Internal Revenue Service; the United States Department of Justice and Attorney General Loretta Lynch; the Florida Attorney General; Miami officials; and the press (the Miami Herald and others) — and he

then published it on his law firm website, where he has maintained and expanded it for a decade. It is the publication at the center of this lawsuit. He has now filed it, twice.

7. Exhibit 1 and the motion paragraphs that adopt it accuse Plaintiff personally of, among other things: running a "criminal enterprise"; acting as a "pimp" operating "brothel[s]" and a "pornographic slave-ring" amounting to "illegal servitude"; intentionally exposing performers to HIV; stealing $3 million from schools; forging evidence; evading taxes; and belonging "in a Federal penitentiary." Every one of these is a company-level, civil, dropped, or unadjudicated matter recast as a personal crime — the same conflation of a corporation with an individual for which the Eleventh Circuit affirmed sanctions against this Defendant. Plaintiff has never been arrested for, charged with, or convicted of any of it. (Compl. ¶ 106.)

***C. The manufactured escalation: "at-risk youths" to "kiddie-porn kingpin" in three filings***

8. Defendant's own documents chart the escalation: (a) Exhibit 1 (2016), quoting an article: "at-risk youths, runaways, homeless" — vulnerability, not age; (b) ECF No. 12 ¶ 2 and his Declaration, ECF No. 13-2 ¶ 3 (Aug. 7, 2026, the latter under penalty of perjury): pornography "featuring … occasionally minors" — an accusation of child exploitation that appears nowhere in the seventeen-page letter cited for it (the Declaration cites nothing at all); (c) August 11, 2026 website edit (mid-litigation): the "pedophilia" accusation and an invocation of Jeffrey Epstein — language still live on the page today ("I know he's lonely without his friend, Jeffery Epstein"); (d) August 20, 2026 email to Plaintiff's counsel: "your pedophile client"; (e) August 22, 2026 website edit: a solicitation, placed beneath Plaintiff's photograph, that "victims, especially if you were underage … contact me" — an attorney publicly soliciting purported child victims of the opposing party in his own

pending case; (f) ECF No. 15 (Aug. 24, 2026): "kiddie-porn kingpin"; "rampant homosexual pedophilia." Each version is more specific and more criminal than the last. None cites a source, because there is none: no charge, no arrest, no finding, by anyone, ever.

### *D. The mid-litigation website campaign: Plaintiff's copyrighted photographs, ignored takedown notices, and attacks on counsel and the Court's docket*

9. While his motions were pending, Defendant edited the article at issue at least seven times (his server records edits on August 11, 13, 15, 17, 19, 21, and 22, 2026). He added Plaintiff's photographs — and, after Plaintiff's August 18 DMCA notices to his host, swapped in a 2009 photograph in which Plaintiff holds the copyright, still live, while publishing a companion post branding Plaintiff a "copyright troll." He named Plaintiff's counsel, published her email, and wrote that she "supports his pedophilia." His page now advertises this Court's docket — "Motion to Dismiss!!! Motion for Sanctions!!!" — as content. Plaintiff does not ask the Court to adjudicate the copyright disputes here; the record bears on preservation and on Section VI.

### *E. The Rule 5.2 violation*

10. Exhibit 1 reproduces, as its sub-exhibit "J," the 2014 federal income-tax return (Form 1120S) of non-party Flava Works, Inc. Defendant redacted the taxpayer-identification number on the face of the form — and left it fully exposed on the return's Schedule K-1 and supporting statements, at ECF No. 13-1, PageID ##349–350 (identically at ECF No. 12-1), together with an individual shareholder's name and street address.

## ARGUMENT

### I. The Court's inherent authority over its own records — and its document-by-document control of what the public docket carries — supplies the power; Rule 12(f) supplies the standard.

11. The power invoked here is, first, the Court's inherent authority over its own records and proceedings. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991). What a public docket carries is for the Court — not the parties — to decide, document by document: the presumption of public access exists so the public can monitor the courts, and it is the Court that weighs, item by item, whether particular material belongs in its public record. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944–45 (7th Cir. 1999); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 567–68 (7th Cir. 2000); *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545–47 (7th Cir. 2002). Rule 12(f) supplies the governing standard — "redundant, immaterial, impertinent, or scandalous matter" — and may be applied by the Court "on its own," Fed. R. Civ. P. 12(f)(1); in this Circuit, "[a]llegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice." *Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 664 (7th Cir. 1992). The matter here does both. Because the offending material sits in motions and exhibits rather than a pleading, Plaintiff grounds the relief in the Court's inherent power and its control of its docket, and invokes Rule 12(f) for its standard and by analogy — not as the exclusive source of authority. Material that is irrelevant to the pending motions, defamatory of a party, and violative of Rule 5.2 fails every rationale for public filing.

**II. Exhibit 1 (ECF Nos. 12-1, 13-1) should be restricted or sealed — or, in the alternative, stricken: it proves nothing his motions need and republishes everything this suit challenges.**

12. Defendant's motions argue limitations, personal jurisdiction, pleading sufficiency, and frivolousness — questions resolved on the face of the pleadings. None requires seventeen pages of invective and fourteen sub-exhibits of decades-old material. Defendant offers Exhibit 1 to prove his accusations are "true" — but truth is the merits of the defamation claim, to be litigated on evidence, not established by refiling the accusation with a court caption on it.

13. What filing Exhibit 1 *does* accomplish is republication and amplification. The Article on Defendant's website is the subject of this suit; Exhibit 1 is its text. Filed twice, it now sits permanently on a public federal docket that Defendant's website links to and quotes by name. The Court should not permit its docket to serve as the distribution arm of the publication being sued upon. The request is particularized, not blanket: the scandalous matter pervades the seventeen-page letter itself (PageID ##293–309 — including the accusations catalogued above at PageID ##294–297, 300, and 303–304), and the Rule 5.2-violating material sits at PageID ##345–350; the remaining attachments travel with the letter and serve no independent function on these motions. Plaintiff will comply with Local Rule 26.2's procedure — provisional restriction, with any public version redacted and a good-cause statement per item. If any discrete portion of Exhibit 1 is genuinely necessary to a motion, Defendant may refile that portion, redacted, with a showing of need.

**III. The scandalous paragraphs of ECF No. 12, the Declaration at ECF No. 13-2 ¶ 3, and ECF No. 15 should be stricken.**

14. ECF No. 15 is two pages. Its stated purpose required two dates. Defendant instead used it to call Plaintiff "a homosexual kiddie-porn kingpin" (¶ 3) and to accuse him of "rampant homosexual pedophilia, which continues to endanger the vulnerable youth of Illinois" (¶ 7). Those sentences do no procedural work; they exist to defame, to prejudice, and to be quoted. Striking them costs the motion nothing.

15. ECF No. 12 ¶¶ 2–3 warrant the same treatment. The sworn assertion that Plaintiff's former company produced pornography "featuring … occasionally minors" (ECF No. 12 ¶ 2; ECF No. 13-2 ¶ 3) cites Exhibit 1 — whose seventeen-page letter contains no such statement (his Declaration repeats it under penalty of perjury with no citation at all). Its only comparable passages concern "[e]xploit[ing] Minorities" (race, not age) and "at-risk youths." A sworn, sourceless accusation of child exploitation, refuted by the very exhibit cited for it, is the precise evil the scandalous-matter rule exists to reach.

16. The five-day sequence eliminates any doubt about purpose: Thursday, August 20, 4:13 p.m. — "your pedophile client" by email; Friday–Sunday — a weekend of silence; Saturday, August 22, 6:26 p.m. (his server's own timestamp) — the "underage … victims … contact me" solicitation added to the website; Monday, August 24 — ECF No. 15. An attorney used a federal filing as the fourth installment of a week-long campaign. That is what "presented … to harass" looks like on a calendar.

17. **Repetition is not evidence.** Rule 11(b)(3) requires that every factual contention in a filing "ha[ve] evidentiary support." Across three filings and an email, Defendant has offered none for the accusation he keeps escalating. His sworn "occasionally minors" (ECF No. 13-2 ¶

3) cites a letter that refutes it. ECF No. 15's "kiddie-porn kingpin" and "rampant homosexual pedophilia" cite nothing at all. If evidence existed that Plaintiff had committed crimes against children, an attorney would be expected to present it — to a prosecutor, not a scheduling motion. Instead, Defendant's method is repetition: say it on the website, say it in an email, say it in a motion, then cite the motion on the website. An accusation does not become true, or litigable, by being filed. It becomes scandalous matter and, from an attorney, a certification violation. Fed. R. Civ. P. 11(b)(3).

## IV. Rule 5.2 requires redaction of the taxpayer-identification number — a violation Defendant's own partial redaction proves he understood.

18. Rule 5.2(a)(1) commands that filings limit a taxpayer-identification number to its last four digits; and Rule 5.2(e)(1) independently empowers the Court, for good cause, to require redaction of additional information — so even were the exposed number characterized as the corporation's rather than an individual's, the Court may order it redacted, particularly where, as here, it sits beside an individual's name and street address. The rule is mandatory; it protects non-parties; and its enforcement is the Court's own prerogative — Plaintiff asserts no personal right in the material and simply brings the violation to the Court's attention so it may act on its own docket, as Rule 5.2 and Rule 12(f)(1) permit it to do sua sponte. Exhibit 1 violates it on its face at ECF No. 13-1, PageID ##349–350 (identically at ECF No. 12-1). And the violation is not oversight: Defendant blacked out the same number on the form's first pages and left it exposed in the schedules. This is not a lawyer unaware of the obligation. It is a lawyer who performed the redaction and stopped.

19. Plaintiff raises this narrowly, as a matter of docket integrity: the return belongs to non-party Flava Works, Inc. and its bankruptcy estate; Plaintiff asserts no interest in it and takes

no position on its contents. But the Court should weigh who filed it and why: a defendant sued for publishing private identifiers to invite harassment has now filed a third party's tax identifiers and an individual's street address, unredacted, in motions that cite not a line of them.

**V. Plaintiff's own private identifiers should be sealed for good cause.**

20. Plaintiff's home address, unlisted cellular number, and personal email — the "Doxing Block" at the heart of this suit — appear in this record only because Plaintiff had to file the Article as evidence (Compl. Ex. A). Those identifiers are not Rule 5.2(a) items, but Rule 5.2(d)–(f) and Local Rule 26.2 authorize redaction and sealing on good cause, and the good cause is the gravamen of this case: the Complaint alleges the identifiers were published beneath an invitation to use them, and that at least 599 harassing communications followed. (Compl. ¶ 56.) Plaintiff accordingly requests leave to substitute a public, redacted version of any exhibit reproducing his identifiers — his own included — with unredacted versions maintained under seal, so the docket does not republish the very information this suit challenges.

**VI. The Court should order Defendant to show cause: this record is unacceptable from any litigant, and it comes from an attorney currently asking this Court to admit him.**

21. Defendant signs every filing "Michael Gulisano, Esquire," invokes his bar number, and asks this Court to admit him pro hac vice. The standards that come with that signature are not aspirational. An attorney may not use a court's docket to publish accusations of child sexual abuse that he cannot source; may not swear to a factual assertion refuted by his own cited exhibit; may not file a non-party's unredacted tax identifiers; and may not submit,

under penalty of perjury, a description of his disciplinary history that omits its every material term.

22. **The attacks on Plaintiff's counsel are their own ground for concern.** On ECF No. 11, Defendant swore: "I have read the Rules of Professional Conduct for the Northern District of Illinois and the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, and will faithfully adhere to them." Since making that promise, he has: branded Plaintiff's counsel "complicit counsel Hicks" in a court filing (ECF No. 15 ¶ 5; see also ¶ 3); published on his website that she "gladfully accepts Mr. Bleicher's blood money and supports his pedophilia and scams," alongside her email address; sent her the August 20 email calling her client a "pedophile"; and demanded $75,000 from her personally, jointly and severally (ECF No. 12 at 15). Publicly accusing opposing counsel of supporting pedophilia, and seeking a five-figure sanction against her for signing a complaint, is not adherence to those standards. He is trying to price her out of the representation and to make an example of any lawyer who would take Plaintiff's case.

23. Every element of this record is a repetition, not a first offense. His filings conflate a corporation with an individual exactly as *Burlington* sanctioned; his motion practice multiplies proceedings exactly as § 1927 was invoked against him before; and his candor on ECF No. 11 fails exactly as he once admitted to the Florida Bar.

24. Plaintiff therefore respectfully requests that the Court exercise its inherent authority, *Chambers*, 501 U.S. at 43–46, and its authority over admissions to its bar, to order Defendant to show cause — at a hearing, if the Court deems one appropriate — why (a) his pro hac vice application (ECF No. 11) should not be denied, or held pending complete and candid disclosure of his disciplinary history; and (b) his conduct in this litigation

should not be addressed under the Court's inherent power and referred to the appropriate disciplinary authorities. Plaintiff seeks no Rule 11 sanction by this motion — the Rule 11 issues raised by Defendant's own motion are joined in the briefing on ECF No. 12 — but does request, in Section VII, the fees this motion should never have been necessary to incur.

**VII. Meet-and-confer; fees; relief requested.**

25. There was no good-faith conferral to be had: Defendant's sole outreach was the August 20, 4:13 p.m. email calling Plaintiff "your pedophile client," sent Thursday evening; he filed ECF No. 15 the following Monday complaining of "96 hours" of silence — over a weekend. Communications with this Defendant are appropriately kept in writing and on the record. A litigant who escalates from email, to website, to court filing in five days will not stop on request.

26. **Plaintiff should not bear the cost of cleaning up Defendant's filings.** This motion exists only because Defendant filled the docket with scandalous matter, unredacted identifiers, and a misleading admission application. The Court's inherent authority includes the power to assess attorney's fees against a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). Plaintiff expressly asks the Court to make that predicate bad-faith finding on the escalation chronicled above. In the alternative, and to the extent it applies to an attorney conducting his own case, 28 U.S.C. § 1927 renders an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" personally liable for the excess fees his conduct causes — the very statute under which Defendant has been sanctioned before; *cf. Eberhardt v. Walsh,* 122 F.4th 681 (7th Cir. 2024) (affirming a fee sanction against an attorney litigating his own case). Plaintiff accordingly requests the reasonable attorney's fees and costs

incurred in bringing this motion. The fees occasioned by Defendant's frivolous Motion for Sanctions are separately sought, under Rule 11(c)(2), in Plaintiff's opposition to that motion.

27. Plaintiff respectfully requests that the Court: (i) restrict or seal Exhibit 1 at ECF Nos. 12-1 and 13-1 (or, in the alternative, strike it); (ii) strike ECF No. 12 ¶¶ 2–3, ECF No. 13-2 ¶ 3, and ECF No. 15 ¶¶ 3, 7; (iii) order that any refiling of the Exhibit 1 material comply with Rule 5.2 and redact the individual's street address; (iv) order Defendant to show cause as set out in Section VI, at a hearing if the Court deems one appropriate; (v) direct Defendant to preserve all versions, revision histories, and server logs of the web pages and posts at issue and all related communications; (vi) admonish Defendant that further scandalous or immaterial matter in filings will invite sanctions under the Court's inherent power; (vii) find that Defendant's conduct described herein was undertaken in bad faith and award Plaintiff the reasonable attorney's fees and costs incurred in bringing this motion under the Court's inherent authority, or alternatively under 28 U.S.C. § 1927; and (viii) grant such further relief as is just. A proposed order is being submitted to chambers in Word format, and Plaintiff's briefing-schedule statement accompanies this motion, each in accordance with the Court's procedures.

Dated: August 25, 2026

Respectfully submitted,
/s/ Corinthia Hicks
Corinthia Hicks, Esq. (ARDC No. 6352965)
2705 W. Fulton St. #3N, Chicago, IL 60612
Tel: 305-438-9450 · Fax: 305-438-9470
Corinthia@FlavaWorks.com
Counsel for Plaintiff Phillip Bleicher

## CERTIFICATE OF SERVICE

I certify that on August 25, 2026, I electronically filed the foregoing using the CM/ECF system and separately served Defendant by email at michael@gulisanolaw.com.

/s/ Corinthia Hicks