**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Phillip Bleicher, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:26-cv-06287 |
| | ) | |
| v. | ) | Hon. John F. Kness |
| | ) | |
| Michael Gulisano, an individual, | ) | Magistrate Judge Young B. Kim |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |

**FIRST AMENDED AND SUPPLEMENTAL VERIFIED COMPLAINT**

(Filed as of right, Fed. R. Civ. P. 15(a)(1)(B); alternatively as a supplemental pleading, Fed. R. Civ. P. 15(d))

Plaintiff Phillip Bleicher, by and through his attorneys, complains of Defendant Michael Gulisano and, demanding a trial by jury, states as follows:

## INTRODUCTION

1. This action arises from a more-than-ten-year campaign of false and defamatory statements, public doxing, and tortious interference conducted against Plaintiff Phillip Bleicher by Defendant Michael Gulisano — a Florida-licensed attorney whom Plaintiff briefly hired in October 2015 and terminated within weeks for unsatisfactory representation. Defendant's campaign is documented in self-authenticating contemporaneous emails, sworn court filings made by Defendant, and dated PDF captures of Defendant's publicly accessible law-firm website at gulisanolaw.com.

2. Defendant has published, and continues to publish, on his law-firm website at https://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/ (the "Article"), a thirty-two-page article headlined "Phillip Bleicher – Criminial,[sic] Conman, and Liar," subheaded "A Man Who Stole $3 Million from Public Schools, Intentionally Exposes Employees to Aids, Operates Brothels in Residential Homes, Fabricates Evidence in Court, and Evades Taxes." The Article falsely

accuses Plaintiff of crimes for which Plaintiff has never been arrested, charged, indicted, sued, prosecuted, or convicted in any court or tribunal, and no civil or criminal finding sustains any of the accusations. (Exhibit A.)

3. In or about June 2024 — by Defendant's own dating in the publication itself — Defendant materially modified the Article and added a block labeled "2024 Update" that publishes Plaintiff's home address, Plaintiff's unlisted personal cellular telephone number (registered on the National Do Not Call Registry on July 2, 2003 and unlisted for more than twenty years), and Plaintiff's personal email address (the "Doxing Block"). The Doxing Block is expressly framed as contact information "for anyone being subjected to Mr. Bleicher's harassment as of June 2024." Since the publication of the Doxing Block, Plaintiff has received at least six hundred seventy-nine (679) harassing telephone calls and voicemails, and hundreds of unsolicited text messages to his unlisted cellular number, all of which Plaintiff has been compelled to block to protect his ability to use his own phone. This conduct violates the Illinois Civil Liability for Doxing Act, 740 ILCS 195/, which took effect January 1, 2024. (Exhibit A.)

4. Defendant's campaign is the product of personal retaliation. Plaintiff terminated Defendant's services in late 2015 after the attorney-client relationship broke down within weeks. Defendant retaliated by filing a sworn court document inflating his fee claim, communicating with opposing counsel in terms that betrayed his own client, sending a series of personal-animus emails (including, in February 2016, "Can't wait to show you what a real lawyer can do," and in February 2016, "you guys tried to scam the wrong attorney"), and transmitting an "Open Letter" accusing Plaintiff of "tax evasion, mail fraud, forgery, fraud, and perjury" to approximately ninety federal and state government and press recipients on March 22, 2016. None of those approximately ninety recipients — including the United States Department of Justice, the United States Attorney

General, the Federal Bureau of Investigation, the Internal Revenue Service, and the Attorneys General of Florida and Illinois — has charged, indicted, sued, investigated, or published a single allegation against Plaintiff in the more than ten years since.

5. Defendant has himself been the subject of findings of dishonesty and bad faith by the federal courts, and has admitted violating rules of professional conduct before the Florida Bar. The United States Court of Appeals for the Eleventh Circuit expressly found that Defendant "violated his duty of candor" and affirmed the district court's determination that Defendant "acted in bad faith." *Gulisano v. Burlington, Inc.,* 34 F.4th 935 (11th Cir. 2022). Separately, in The Florida Bar File No. 2018-50,205(17E), Defendant tendered and the grievance committee accepted an Admission of Minor Misconduct in which Defendant admitted violating Rule 4-3.3(a)(1) of the Rules Regulating The Florida Bar — knowingly making a false statement of fact or law to a tribunal — together with Rules 4-3.4(a), 4-3.4(c), and 4-8.4(a).

6. Plaintiff seeks compensatory damages in an amount in excess of $1,000,000; damages and reasonable attorney's fees under the Illinois Civil Liability for Doxing Act, 740 ILCS 195/15(b); presumed damages on the defamation per se claim; punitive damages; permanent injunctive relief, upon final judgment and on the findings required by 740 ILCS 195/20, barring Defendant from publishing Plaintiff's personally identifiable information, and, as to statements adjudicated false and defamatory, barring their republication; costs; and pre- and post-judgment interest.

## JURISDICTION AND VENUE

7. Subject-Matter Jurisdiction. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a). Plaintiff is a citizen of the State of Illinois. Defendant is a citizen of the State of Florida. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

8. Plaintiff's Domicile. Plaintiff has been a domiciliary of Illinois throughout his entire life. Plaintiff resides at [ADDRESS REDACTED]. Plaintiff has never held a Florida driver's license, has never held any Florida identification card, has never registered to vote in Florida, and has never filed Florida resident state-tax returns. Plaintiff's connections to the State of Florida have arisen from his companies' business operations and litigation.

9. Personal Jurisdiction. This Court has personal jurisdiction over Defendant under Illinois's long-arm statute, 735 ILCS 5/2-209, and the Due Process Clause of the Fourteenth Amendment. Defendant purposefully directed his tortious conduct at Illinois and at an Illinois resident, with knowledge that the injury would be felt in Illinois. *See Calder v. Jones,* 465 U.S. 783 (1984). Defendant knew Plaintiff resides in Chicago, Illinois; Defendant has published Plaintiff's Chicago home address on the Article since June 2024. The harm to Plaintiff and the harassment campaign Defendant invited have occurred and continue to occur in Illinois — at Plaintiff's Illinois home, to his Illinois cellular telephone, and on Plaintiff's Illinois-based personal and professional activities. Defendant's own publications target Illinois: the Article rests its accusations on Illinois institutions (the Chicago Department of Public Health, the Illinois Attorney General), asserts that Plaintiff is presently "operating in violation of" a Chicago cease-and-desist order, advises readers holding claims against an Illinois bankruptcy estate that Plaintiff "committed fraud on the court," and reproduces a distribution list addressed to the Mayor of Chicago, the Illinois Attorney General, the Chicago Department of Public Health, and the Chicago Sun-Times. Defendant edited the Article at least seven times between August 11 and August 22, 2026, while this Illinois action was pending, and in a filing in this Court declared that Plaintiff's alleged conduct "continues to endanger the vulnerable youth of Illinois." (ECF No. 15 ¶ 7.) (Exhibit A.)

10. Venue. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and injuries giving rise to the claims occurred in this district.

## PARTIES

11. Plaintiff Phillip Bleicher ("Plaintiff") is a natural person and a citizen of the State of Illinois. Plaintiff resides at [ADDRESS REDACTED].

12. Defendant Michael Gulisano ("Defendant") is a natural person and a citizen of the State of Florida. Defendant is licensed to practice law in Florida (Florida Bar No. 87573) and conducts his law practice as Gulisano Law, PLLC, from offices at 1489 W Palmetto Park Rd Ste 500, Boca Raton, Florida 33486-3326. Defendant owns and operates the law-firm website at gulisanolaw.com on which the publications at issue in this Complaint were and are published.

## FACTUAL ALLEGATIONS

### A. The Brief 2015 Engagement

13. In June 2015, Plaintiff placed a classified advertisement seeking a part-time attorney for copyright-infringement enforcement work at his then-corporation, Flava Works, Inc.

14. Defendant responded on July 9, 2015. On October 7, 2015, Plaintiff hired Defendant as a part-time contract attorney with a requirement that Defendant submit invoices documenting hours worked and case-by-case detail. On October 8, 2015, Defendant filed a Notice of Substitution of Counsel substituting himself in as co-counsel of record for Flava Works, Inc. in the matter *Flava Works, Inc. v. A4A Reseau, Inc., et al.,* Case No. 1:14-cv-23208-JAL (S.D. Fla.)

**(the "Underlying Case"). (Exhibit E.)**

### B. The Discovery Hearing of November 20, 2015 and Defendant's Conduct Leading Up to It

15. On October 9, 2015 — one day after substituting in as counsel — Defendant emailed Bradley Legal Group, P.A., opposing counsel in the Underlying Case, and admitted in writing: "I was just retained and have not completely familiarized myself with the case." (Exhibit E.)

16. On October 23, 2015, while still acting as counsel of record for Flava Works, Inc., Defendant emailed John F. Bradley, Esq., opposing counsel in the Underlying Case, and stated: "I know you are counting on this money. I am trying my best to get you paid." In the same email, Defendant called his own client "destitute" and disparaged prior counsel as "too intimated [sic] by your legal prowess." (Exhibit E.)

17. On November 19, 2015 — the day before a scheduled discovery hearing — Defendant filed a Motion to Withdraw as Plaintiff's Counsel (Doc. 91 in the Underlying Case) on two grounds (the "Withdrawal Motion"): (a) "The Plaintiff has refused to follow the advice of the undersigned, resulting in irreconcilable differences"; and (b) "the undersigned has developed a conflict of interest that precludes further representation of the Plaintiff in this matter." Both grounds were unfounded. Defendant did not provide Plaintiff with notice of the Withdrawal Motion before filing it. Plaintiff learned of the Withdrawal Motion only after independently checking the public court docket on the evening of November 19, 2015.

18. On November 20, 2015, Plaintiff — having learned of the Withdrawal Motion the night before, and being unable to reach Defendant by phone or email despite repeated attempts — flew last-minute from Chicago to Miami to attend the discovery hearing in person. At the hearing, Magistrate Judge Jonathan Goodman of the United States District Court for the Southern District of Florida denied Defendant's Withdrawal Motion "without prejudice," and Defendant was required to participate in the hearing as counsel of record. Defendant admitted on the record that he was "the fifth attorney" Plaintiff's then-corporation had retained in the Underlying Case and

that he had "got a little frustrated and wanted to withdraw." See Transcript of Discovery Hearing, *Flava Works, Inc. v. A4A Reseau, Inc.,* No. 1:14-cv-23208-JAL (S.D. Fla. Nov. 20, 2015), at pp. 4-5, 27, 36. (Exhibit M.)

19. Following the November 20, 2015 hearing, Plaintiff terminated Defendant's representation.

**C. Defendant's Pattern of Fraud Upon the Court — The Inflated Fee Claim**

20. Defendant has a documented pattern of misrepresenting material facts to federal courts. On May 12, 2022, the United States Court of Appeals for the Eleventh Circuit, in a published opinion, expressly found that Defendant "violated his duty of candor" and affirmed the district court's determination that Defendant "acted in bad faith" in his litigation conduct in a separate matter. *Gulisano v. Burlington, Inc.,* 34 F.4th 935 (11th Cir. 2022).

21. a. Defendant's only itemized invoice in the Underlying Case — captioned "INVOICE FOR FLAVA WORKS FOR OCTOBER, NOVEMBER" and itemizing work through the November 20, 2015 discovery hearing — states, in its own words, "TOTAL: 20 Hours = $500.00." The Article itself confirms the underlying rate, in Defendant's own words: "he was only paying $25 an hour not $250." (Exhibits A, E.)

22. b. On December 15, 2015, however, Defendant filed in the Underlying Case a Notice of Attorney's Charging Lien (Doc. 99 in 1:14-cv-23208-JAL) over his signature as "MICHAEL GULISANO, ESQUIRE, Fla. Bar No. 87573," in which he stated to the Court — under penalty of Federal Rule of Civil Procedure 11 — that "the undersigned has incurred fees of $1,000." The Charging Lien claimed $1,000 against any fee recovery by Plaintiff's then-corporation. (Exhibit C.)

23. c. Approximately seven weeks later, on February 2, 2016, Defendant emailed Plaintiff and demanded payment of only "$500 for the work I performed in this matter by the end of the week." (Exhibit E.)

24. d. Approximately three months after that, on March 11, 2016, Defendant filed a sworn pleading in the same federal court (Doc. 117 in 1:14-cv-23208-JAL) in which he expressly stated, at paragraph 7: "the undersigned only requested $500 instead of the $1,000 actually incurred." (Exhibit D.)

25. e. The Article itself — which Defendant has continuously published on gulisanolaw.com since approximately 2017 — likewise concedes the amount in controversy was $500. Defendant wrote, in his own words on the Article: "Mr. Bleicher refused to pay me the $500 I billed him (a ridiculously small amount for a month's worth of work)." (Exhibit A.)

26. f. On February 21, 2019, Plaintiff proactively emailed Defendant to ask whether any invoices remained outstanding. Defendant replied that the "outstanding balance is $1,000" but offered to accept "$500 in full satisfaction." Plaintiff replied in writing: "we prefer to pay what is owed, so the $1,000.00 is fine. Please send me a detailed invoice and I will send payment." Defendant never sent the detailed invoice. Plaintiff followed up on March 7, 2019; Defendant never responded. (Exhibit E.)

27. Defendant therefore made two materially different sworn representations to the same federal court in the same case on the same subject (his attorney's fees on the Underlying Case): a claim of $1,000 in the December 15, 2015 Charging Lien (Doc. 99) and an express admission of $500 in the March 11, 2016 Response (Doc. 117). Each filing was made over Defendant's own electronic signature as a member of the Florida Bar. (Exhibits C, D.)

28. By contrast, Plaintiff has never been the subject of any judicial finding of fraud upon the court, nor has Plaintiff ever been charged with, indicted for, sued for, or convicted of any offense involving fraud or dishonesty. The Article's public premise that Plaintiff "refused to pay" Defendant is contradicted on its face by Plaintiff's documented written offer to pay the full $1,000 — an offer Defendant himself ignored.

**D. The Onset of Defendant's Retaliation Campaign (February–March 2016)**

29. Plaintiff filed a fee-dispute inquiry with the Attorney/Consumer Assistance Program of the Florida Bar on February 1, 2016, captioned as Florida Bar File No. 2016-50,697(17E). Plaintiff separately posted a first-person client review of Defendant's legal services on Avvo, the lawyer-rating service, on February 24, 2016. Defendant responded with the following documented pattern of personal-animus communications, each captured in real time on Plaintiff's email:

30. a. February 1, 2016 — Defendant emailed, in response to Plaintiff's settlement demand: "Can't wait to show you what a real lawyer can do." (Exhibit E.)

31. b. February 2, 2016 — Defendant emailed Plaintiff demanding $500 by end of week, and added: "QUOTE ME ON THIS, if I am named a defendant in a meritless 'malpractice' complaint…I will IMMEDIATELY add you as a defendant end of story…You guys tried to scam the wrong attorney." (Exhibit E.)

32. c. February 24, 2016 — Defendant emailed Plaintiff and announced his intent to forward false accusations to federal law-enforcement authorities: "Consequently, the Federal Bureau of Investigations, [sic] the Internal Revenue Service, and other state and federal governmental entities will now be alerted to your criminal activities, including tax evasion, concealment of assets, perjury, mail fraud, and extortion. To speed up the process, I will be cc'ing those authorities to my response. You made your bed and now you must lie in it." (Exhibit E.)

33. d. March 11, 2016 — Defendant emailed Plaintiff: "I have also offered to represent the other attorneys victimized by you and your client." That statement constitutes Defendant's contemporaneously-stated intent to represent parties whose interests are adverse to his former client — a position from which Defendant has never retracted. (Exhibit E.)

**E. The March 22, 2016 Mass Email to Approximately Ninety Recipients**

34. On March 22, 2016, Defendant transmitted by email an "Open Letter to Governmental Agencies Concerning Phillip Bleicher's Criminal Activities" (the "Open Letter") to approximately ninety (90) federal and state government and press recipients, including but not limited to: the United States Department of Justice; the United States Attorney General; the Federal Bureau of Investigation Miami Field Office; the Federal Bureau of Investigation Chicago Field Office; the Internal Revenue Service; the Attorneys General of Florida and Illinois; the Mayor of Chicago; the Mayor of Miami; the Chicago Department of Public Health; the Miami-Dade Department of Code Enforcement; the Miami Herald; the Chicago Sun-Times; and dozens of additional government and press recipients. (Exhibit E.)

35. The body of Defendant's mass email read, in pertinent part: "I write to each of you in hope that one of you can stop the ongoing criminal activities being perpetuated by PHILLIP BLEICHER and his company FLAVA WORKS in Florida and Illinois, including, tax evasion, mail fraud, forgery, fraud, and perjury." Defendant offered to provide each recipient with "bank statements, tax returns, and contradictory sworn statements" supporting his accusations.

36. In the more than ten years since Defendant transmitted the Open Letter, no recipient agency, office, or publication has charged, indicted, sued, investigated, or published a single allegation against Plaintiff arising from Defendant's mass mailing. The complete failure of every

authority Defendant invoked to find any merit in his accusations is itself probative of their falsity and of Defendant's reckless disregard for the truth.

**F. The Continuously-Published Defamatory Article**

37. At a date no later than 2017, Defendant published the Article on his law-firm website at gulisanolaw.com. The Article is approximately thirty-two (32) pages long when printed, signed by Defendant as "Michael Gulisano, Esquire," and hosted on Defendant's law-firm website under the firm's branding and adjacent to its legal-services menu. The Article has been continuously published at all relevant times. (Exhibit A.)

38. The Article contains the following false and defamatory statements of fact concerning Plaintiff (among others): (Exhibit A.)

39. a. That Plaintiff "Stole $3 Million from Public Schools";

40. b. That Plaintiff "Intentionally Exposes Employees to Aids" [sic];

41. c. That Plaintiff "Operates Brothels in Residential Homes";

42. d. That Plaintiff "Fabricates Evidence in Court";

43. e. That Plaintiff "Evades Taxes" through "falsified tax returns";

44. f. That Plaintiff attempted to extort Defendant for "$10,000 hush money" and made "identical blackmail attempts against fellow Florida attorneys";

45. g. That Plaintiff has committed "perjury in Federal Court"; and

46. h. That Plaintiff is a "world-class scumbag and career-criminal," a "snake oil peddling conman," a "monster," a "fraudulent shyster," and a "hateful man."

47. Each of the foregoing statements is false. Plaintiff has never been arrested, charged, indicted, sued, prosecuted, or convicted in any court or tribunal in the United States or elsewhere for any of the criminal offenses Defendant attributes to him in the Article. No civil judgment,

criminal judgment, indictment, administrative finding, or formal accusation by any prosecuting or regulatory authority sustains any of Defendant's accusations.

**G. The June 2024 Doxing Block — Sourced from Plaintiff's Confidential Bar Complaint**

48. On May 20, 2024, Plaintiff filed a new disciplinary complaint with the Florida Bar concerning the Article, captioned RFA No. 24-12445. Plaintiff's complaint papers prominently included Plaintiff's home address ([REDACTED ADDRESS]), Plaintiff's personal cellular telephone number ((312) XXX-XXXX), and Plaintiff's personal email address ([REDACTED EMAIL]), in the header, the signature block, and the witness-information section of the complaint. **(Exhibit F.)**

49. Pursuant to the Florida Bar's standard disciplinary procedures, the Bar transmitted copies of Plaintiff's complaint papers — including the foregoing personally identifiable information — to Defendant as the respondent attorney. The Florida Bar acknowledged receipt of the complaint on May 31, 2024, closed the complaint on procedural grounds (Florida Bar Rule 3-7.16(a)(1)) without reaching the merits, and copied Defendant on the closure letter.

50. Within days of receiving the Florida Bar closure letter, Defendant retaliated. In or about June 2024 — by Defendant's own dating in the publication itself — Defendant materially modified the Article and added a new block labeled "2024 Update" (the "Doxing Block"). The Doxing Block reads, in pertinent part: (Exhibits A, F.) "For anyone being subjected to Mr. Bleicher's harassment as of June 2024, he allegedly can be directly contacted by mail at: [redacted Chicago, Illinois street address]; by phone at: (312) XXX-XXXX; and by email at: [redacted personal email]." The full, unredacted text of the Doxing Block is set forth in Exhibit B-1.

51. The Doxing Block publishes the following items of Plaintiff's personally identifiable information without his consent: (a) Plaintiff's home address; (b) Plaintiff's personal cellular telephone number, which has been registered on the National Do Not Call Registry since July 2,

2003 and is not listed in any public directory; and (c) Plaintiff's personal email address, which is not used for any public-facing or business purpose.

52. Defendant did not obtain Plaintiff's consent — express, implied, or otherwise — to publish any of this information. The express framing of the Doxing Block — "for anyone being subjected to Mr. Bleicher's harassment" — makes clear that Defendant published the information with the intent to direct, invite, and facilitate third-party harassment of Plaintiff.

53. The personally identifiable information Defendant published in the Doxing Block — Plaintiff's home address, unlisted cellular telephone number, and personal email address — was identical to the contact information Plaintiff had provided to the Florida Bar in his May 20, 2024 disciplinary complaint papers against Defendant. Defendant received that confidential disciplinary-process information from the Florida Bar in May 2024 and republished it on his publicly accessible law-firm website within weeks. The contact information Defendant published was not independently sourced; it was obtained from, and was identical to, the disclosures Plaintiff made to the Florida Bar in the lawful exercise of his right to file a disciplinary complaint against Defendant.

54. At the time Defendant published the Doxing Block in or about June 2024, Plaintiff had not publicly identified his home address as his residence. The street address Defendant published had been registered solely as the business address of Plaintiff's companies. By publishing the address under the heading "for anyone being subjected to Mr. Bleicher's harassment as of June 2024, he allegedly can be directly contacted by mail at," Defendant intentionally and falsely exposed Plaintiff's private home location to third parties who would not otherwise have known where Plaintiff resides.

55. Dated PDF captures preserve the timeline of the Doxing Block conclusively. A capture of the Article dated May 20, 2024 does not contain the Doxing Block. Captures of the Article dated July 2025 and April 14, 2026 both contain the Doxing Block. The "as of June 2024" date set forth in the Doxing Block itself is Defendant's own contemporaneous admission of the publication date. (Exhibits A, B.)

**H. The Resulting Harassment Campaign**

56. Since the publication of the Doxing Block in or about June 2024, Plaintiff has received at least six hundred seventy-nine (679) harassing and unsolicited telephone calls and voicemails — at least five hundred ninety-nine (599) of which had been received by the filing of the original Complaint on May 28, 2026 —, and hundreds of unsolicited text messages to his unlisted cellular telephone number, all of which Plaintiff has been compelled to block to protect his ability to use his own phone.

**(Exhibit I.)**

57. Representative examples include calls from the following telephone numbers, preserved on Plaintiff's iPhone block list: +1 (201) 528-2030; +1 (202) 920-1856; +1 (202) 987-9850; +1 (202) 987-9853; +1 (202) 987-9877; +1 (202) 987-9878 (six consecutive Washington, D.C.-area numbers from sequential extensions, characteristic of a robocall ring); +1 (203) 267-9937; +1 (206) 326-0219; +1 (207) 309-9134; +1 (208) 470-5071; +1 (209) 254-2860; and approximately 565 additional numbers preserved on Plaintiff's iPhone block list and call records.

58. This pattern of harassment is the foreseeable, predictable, and intended consequence of Defendant's publication of Plaintiff's home address, unlisted cellular telephone number, and personal email address on a public website under a headline labeling Plaintiff a "Criminial,[sic] Conman, and Liar" and inviting third parties to "contact" Plaintiff directly.

59. Plaintiff has suffered, and continues to suffer, significant emotional distress, sleep disruption, anxiety, fear of escalation, and economic injury as a direct and proximate result of the Doxing Block and the resulting harassment.

**I. The Eight-Year Pattern of Adverse Parties Weaponizing the Article**

60. Beginning in 2018 and continuing through the date of this Complaint, Defendant's Article has been repeatedly used by parties adverse to Plaintiff as a litigation and intimidation tool against him. Plaintiff has preserved direct documentary evidence of at least six separate instances in which adverse parties have cited, linked, or transmitted the Article to attack Plaintiff or his attorneys: (Exhibit A.)

61. a. November 8, 2018 — An individual using the email address dthomas@gmail.com, the target of a copyright cease-and-desist demand from Plaintiff's company, responded with a link to the Article, writing: "don't listen to this guy. http://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/." (Exhibit E.)

62. b. May 22, 2019 — An individual using the email address daniel.weller.allanic@gmail.com, the target of a copyright cease-and-desist demand from Plaintiff's company, responded with a link to the Article, writing: "Your reputation precedes you, Phillip: https://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/." (Exhibit E.)

63. c. February 4, 2022 — An individual using the proton-mail address vertexglacier@protonmail.com, identifying as "Nathan Smith," sent an unsolicited email titled "Heads up about Phillip Bleicher" to Heather L. Blaise, Esq., of Blaise & Nitschke, P.C., who was then assisting Plaintiff and his company in intellectual-property enforcement matters. The email cited and linked to the Article, sought to dissuade Attorney Blaise from continuing the representation, and was forwarded to Plaintiff by Attorney Blaise on February 8, 2022.

64. d. December 9, 2022 — An individual using the email address novawild4fun@gmail.com, the target of a copyright cease-and-desist demand from Plaintiff's company, responded with allegations directly paralleling the Article: "Your reputation precedes you. I've heard how you take advantage of runaways and kids who are down on their luck."

65. e. April 5, 2023 — An individual using the email address awfulbiguy@yahoo.com, the target of a copyright cease-and-desist demand from Plaintiff's company, responded with the phrase "borderline extortion tactics you have resorted to" — directly mirroring the Article's accusations.

66. f. April 14, 2026 — An individual using the email address lilryan10788@gmail.com, the target of a copyright cease-and-desist demand, responded by writing: "Feel free to contact my lawyer here's a link. https://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/" — explicitly representing that Defendant is "my lawyer" and providing the Article URL as referral. (Exhibit G.)

67. g. May 2026 (real-time, as of the filing of the original Complaint) — On the public discussion forum r/askgaybros (a subreddit of www.reddit.com), at least three Reddit users have actively engaged in coordinated doxing and harassment of Plaintiff in a thread titled "Is gay-torrents.org down?" — referring to a private intellectual-property infringement website Plaintiff's companies have enforced against. The harassment includes the following acts within seven days of the filing of the original Complaint: (Exhibit H.)

68. (i) Reddit user 'kjs0705' posted, six days before the filing of the original Complaint: "Flava Works makes mediocre content and can't compete with others and fan sites. They basically go around suing and extorting money from people to survive. The site is the latest target. It wouldn't be surprising if they uploaded their own content and then sued. Their owner is a long time crook," together with a direct hyperlink to Defendant's Article at

https://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/. This Reddit posting expressly cites Defendant's Article as its authority and source.

69. (ii) Reddit user 'V3Qn117x0UFQ' (a randomly-generated username consistent with a new sockpuppet account) replied, four days before the filing of the original Complaint, by circulating a photograph identified as Plaintiff ("dude on the left," linking to a Wikimedia Commons photograph from a 2009 Blatino Awards event), and adding the comment "so pathetic." The same user posted a separate comment accusing Plaintiff: "scum bag as fuck too - they would allow file downloads with tracing inside and then use it to blackmail high profile execs."

70. (iii) Reddit user 'JeanLeBon65' (an account created approximately nine months ago with two karma points, consistent with a sockpuppet or throwaway account) posted, the day before the filing of the original Complaint: "Does anyone have a photo of the owner of Flava Works? His name is Philip Bleicher," followed approximately six hours later by the reply: "ok i found is the white guy" along with the same Wikimedia Commons photograph link circulated by 'V3Qn117x0UFQ.'

71. These three Reddit communications, occurring within a seven-day window contemporaneous with the filing of the original Complaint, constitute direct evidence that Defendant's Article is being actively used by Plaintiff's adversaries — including parties hostile to Plaintiff's intellectual-property enforcement activities — to identify, defame, and target Plaintiff for further harassment. The 'kjs0705' Reddit user expressly invokes Defendant's Article as authority for accusations of "extorting money" and characterizing Plaintiff as "a long time crook."

72. Each of these documented instances is a direct and foreseeable consequence of Defendant's continuing publication of the Article. The Article has, by Defendant's design and

continued active maintenance, functioned for the past eight years as a tool used by Plaintiff's adversaries against Plaintiff's lawful personal and business activities.

**J. Defendant's Independent Pattern of Professional Misconduct**

73. Defendant's conduct toward Plaintiff is part of a broader pattern of professional misconduct documented in publicly available judicial and disciplinary records.

74. In 2018, Defendant tendered an Admission of Minor Misconduct under Florida Bar Rule 3-5.1(b)(5) in The Florida Bar Discipline Case No. 2018-50,205(17E), admitting that he had "unreasonably and vexatiously multiplied the proceedings" while representing debtors in a separate bankruptcy matter. The Florida Bar grievance committee accepted Defendant's admission and recommended an admonishment, attendance at the Florida Bar's Ethics School, and payment of $1,250 in administrative costs. The Florida Bar's public record reflects that the admonishment was administered on March 16, 2020. Defendant's own Avvo professional profile, as of June 4, 2024 and continuing, publicly discloses: "Lawyer disciplined by state licensing authority in 2020."

**(Exhibits K, L.)**

75. On May 12, 2022, the United States Court of Appeals for the Eleventh Circuit issued a published opinion in *Gulisano v. Burlington,* Inc., 34 F.4th 935 (11th Cir. 2022), affirming the imposition of Federal Rule of Civil Procedure 11 sanctions against Defendant for filing a frivolous motion and conducting a bad-faith collection effort against corporate entities never named in the underlying action. The district court found that Defendant had "attempt[ed] to conflate various distinct corporate entities in order to recover an award of damages obtained through a default judgment against a non-existent corporate entity," and characterized that conduct as "both frivolous and dishonest." The Court of Appeals affirmed, holding that Defendant "violated his duty of candor" and that the district court "correctly determined that Gulisano acted in bad faith."

**K. Continuing Publication**

76. The Article, including the Doxing Block, remains published on gulisanolaw.com as of the filing of the original Complaint and has been continuously available to Internet users at all relevant times. The footer of the website displays a copyright year of 2026, reflecting Defendant's continuing active maintenance of the website. (Exhibit A.)

77. The addition of the Doxing Block in or about June 2024 was the publication of new matter that had not previously appeared in the Article, and is independently actionable as of that date. Plaintiff does not allege that the continued availability of previously published material constitutes a continuing or repeated publication. See 740 ILCS 165/1; *Pippen v. NBCUniversal Media, LLC,* 734 F.3d 610, 615 (7th Cir. 2013).

**COUNT I**

**(Violation of the Illinois Civil Liability for Doxing Act, 740 ILCS 195/)**

78. Plaintiff repeats and re-alleges paragraphs 1 through 77 above as if fully set forth herein.

79. The Illinois Civil Liability for Doxing Act, 740 ILCS 195/1 et seq., effective January 1, 2024, creates a private civil cause of action. An individual engages in doxing when he “intentionally publishes another person's personally identifiable information without the consent of the person whose information is published and: (1) the information is published with the intent that it be used to harm or harass the person whose information is published and with knowledge or reckless disregard that the person whose information is published would be reasonably likely to suffer death, bodily injury, or stalking; and (2) the publishing of the information: (i) causes the person whose information is published to suffer significant economic injury or emotional distress or to fear serious bodily injury or death of the person or a family or household member of the person; or (ii) causes the person whose information is published to suffer a substantial life

disruption; and (3) the person whose information is published is identifiable from the published personally identifiable information itself." 740 ILCS 195/10(a).

80. Defendant published Plaintiff's name — together with Plaintiff's home address, unlisted cellular telephone number, and personal email address — in a single, linked block of text. The Act defines "personally identifiable information" as information that can be used to distinguish or trace a person's identity, "such as name, prior legal name, alias, mother's maiden name, and date or place of birth[,] in combination with any other information that is linked or linkable to a person such as … home address, phone number, email address." 740 ILCS 195/5. Defendant published precisely that combination: Plaintiff is named throughout the Article, and the Doxing Block links his name to his home address, telephone number, and email address.

81. Defendant intentionally published Plaintiff's personally identifiable information on his publicly accessible law-firm website without Plaintiff's consent.

82. Defendant published the personally identifiable information with intent to harm and harass Plaintiff, as established on the face of the Doxing Block itself, which expressly invites contact "for anyone being subjected to Mr. Bleicher's harassment," and as established by the surrounding context of the Article. (Exhibit A.)

83. Defendant knew, or recklessly disregarded the substantial likelihood, that publishing Plaintiff's home address, unlisted cellular telephone number, and personal email address on a publicly accessible website under such a headline would expose Plaintiff to harassment, stalking, threats, and intimidation.

84. Defendant's publication caused Plaintiff significant economic injury and emotional distress, and caused Plaintiff to fear serious bodily injury, within the meaning of 740 ILCS 195/10(a)(2)(i) — including without limitation at least 679 harassing telephone calls, text

messages, and voicemails to Plaintiff's unlisted cellular telephone number; protracted anxiety, sleep disruption, and mental suffering that is neither trivial nor transitory, 740 ILCS 195/5; the loss of business and professional opportunities described herein; and the expense of security and mitigation measures.

85. No statutory exception applies. Defendant did not transmit Plaintiff's personally identifiable information to law enforcement to report criminal activity; the publication is not a report of unlawful conduct; and publication of Plaintiff's private contact information has no legitimate informational or expressive purpose protected by the First Amendment or the Illinois Constitution.

86. Plaintiff is entitled to damages and any other appropriate relief, including injunctive relief, costs, and reasonable attorney's fees. 740 ILCS 195/15(b), 195/20.

**COUNT II**

**(Public Disclosure of Private Facts)**

87. Plaintiff repeats and re-alleges paragraphs 1 through 86 above as if fully set forth herein.

88. Under Illinois common law, the elements of public disclosure of private facts are: (a) the defendant gave publicity to private facts about the plaintiff; (b) the matters publicized were private, not public; and (c) the matters publicized would be highly offensive to a reasonable person.

89. Plaintiff's home address, unlisted cellular telephone number, and personal email address, as aggregated and published by Defendant, are private facts and not matters of public record or public concern. Plaintiff's cellular number has been registered on the National Do Not Call Registry since July 2, 2003 and is not published in any directory; Plaintiff's residence is not publicly identified as his home; and his personal email address is not published for public contact. Plaintiff does not contend that a name, telephone number, or address is invariably private. *Cf.*

*Busse v. Motorola, Inc.,* 813 N.E.2d 1013, 1017 (Ill. App. Ct. 2004); *Cooney v. Chicago Public Schools,* 943 N.E.2d 23, 32 (Ill. App. Ct. 2010). Those cases addressed the inadvertent disclosure of identifying data absent any invitation to act upon it. Here, Defendant compiled Plaintiff's otherwise-unlisted contact channels into a single block, published them on a commercial website beneath the heading "Criminial, Conman, and Liar," and expressly directed readers to use them to "directly contact" Plaintiff regarding claimed "harassment." It is the aggregation and the invitation, not the individual data points, that constitute the disclosure alleged here.

90. Defendant gave publicity to these private facts by publishing them on a publicly accessible, search-engine-indexed website that has been continuously available to Internet users since approximately June 2024.

91. Publication of Plaintiff's home address, unlisted cellular telephone number, and personal email address — on a webpage labeling Plaintiff a "Criminial, Conman, and Liar" and inviting third parties to "contact" Plaintiff in connection with alleged "harassment" — would be highly offensive to a reasonable person.

92. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages including emotional distress, economic injury, and impairment of his personal and professional life.

## COUNT III

## (Intrusion Upon Seclusion)

93. Plaintiff repeats and re-alleges paragraphs 1 through 92 above as if fully set forth herein.

94. Under Illinois law, the elements of intrusion upon seclusion are: (a) an unauthorized intrusion into the plaintiff's seclusion; (b) the intrusion is highly offensive to a reasonable person;

(c) the matter intruded upon is private; and (d) the intrusion causes anguish and suffering. *Lawlor v. North American Corp. of Illinois,* 2012 IL 112530.

95. By publishing Plaintiff's home address, unlisted cellular telephone number, and personal email address with the express purpose of directing third parties to contact Plaintiff at those private channels, Defendant has invaded Plaintiff's seclusion by proxy: each harassing call, voicemail, text message, or email Plaintiff has received and continues to receive is a direct and foreseeable result of Defendant's conduct.

96. Defendant's conduct is highly offensive to a reasonable person, and the cellular-telephone, home-address, and personal-email channels intruded upon are private.

97. The ongoing harassment campaign — including at least 679 harassing communications to date — has caused Plaintiff anguish, anxiety, sleep disruption, and emotional suffering.

**COUNT IV**

**(False Light Invasion of Privacy)**

98. Plaintiff repeats and re-alleges paragraphs 1 through 97 above as if fully set forth herein.

99. Under Illinois law, the elements of false light invasion of privacy are: (a) the defendant's actions placed the plaintiff in a false light before the public; (b) the false light is highly offensive to a reasonable person; and (c) the defendant acted with knowledge that the statements were false or with reckless disregard for their truth or falsity. *Lovgren v. Citizens First Nat'l Bank of Princeton*, 126 Ill. 2d 411, 419–20, 534 N.E.2d 987, 990 (1989).

100. Through the Article and the Doxing Block, Defendant has placed Plaintiff before the public in a false light — as a person who "Intentionally Exposes Employees to Aids," a tax evader, a person who has "infected dozens of people with HIV," a school-fund thief, an evidence forger, a

perjurer, and a serial blackmailer. None of those characterizations is true. Each is highly offensive to a reasonable person. (Exhibit A.)

101. Defendant acted with actual malice. Defendant's actual malice is established by, among other things: (a) the retaliatory origin and timing of the Article (initiated immediately after Plaintiff's lawful exercise of his rights to post an Avvo review and file a Florida Bar complaint); (b) Defendant's own contemporaneous February 1, 2016 "Can't wait to show you what a real lawyer can do" message; (c) Defendant's February 24, 2016 "You made your bed and now you must lie in it" message; (d) the complete failure of every government and press recipient of Defendant's March 22, 2016 mass mailing to ever sustain a single one of Defendant's accusations in the ten years since; (e) the absence of any criminal or civil finding supporting Defendant's accusations; (f) the inflammatory non-factual epithets used in the Article; and (g) Defendant's status as a licensed attorney trained in defamation law.

102. As a direct and proximate result, Plaintiff has suffered damages to be proven at trial.

## COUNT V

### (Defamation Per Se)

103. Plaintiff repeats and re-alleges paragraphs 1 through 102 above as if fully set forth herein.

104. Under Illinois law, a statement is defamatory per se if it imputes (a) the commission of a criminal offense; (b) infection with a loathsome disease; (c) inability to perform or want of integrity in the discharge of duties of office or employment; (d) prejudice in trade, profession, or business; or (e) fornication or adultery. Damages are presumed when a statement is defamatory per se. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579–80, 852 N.E.2d 825, 839 (2006).

105. The statements set forth above attributing to Plaintiff the commission of state and federal crimes — including tax fraud, theft of school funds, blackmail and extortion, perjury, evidence fabrication, and illegal-business operation — impute the commission of multiple criminal offenses and falsely impute a want of integrity and a lack of ability in Plaintiff's trade, profession, and business. Plaintiff does not plead the "loathsome communicable disease" category: the Article asserts that Plaintiff exposed others to HIV, not that Plaintiff is himself infected.

106. Each statement is false. Plaintiff has never been arrested, charged, indicted, sued, prosecuted, or convicted in any court or tribunal for any of those offenses.

107. Defendant published each statement with knowledge of its falsity or with reckless disregard for its truth or falsity, in retaliation for Plaintiff's exercise of his lawful rights.

108. The Doxing Block, first published in or about June 2024, and the statements imputing pedophilia to Plaintiff, first published on or about August 11, 2026 and expanded through August 24, 2026, are new matter that had not previously appeared in the Article. Each was published for the first time on those dates and is independently actionable as of that date. Plaintiff does not allege that the continued availability of previously published material constitutes a continuing or repeated publication. See 740 ILCS 165/1; *Pippen v. NBCUniversal Media, LLC,* 734 F.3d 610, 615 (7th Cir. 2013).

109. As a direct and proximate result of Defendant's publication of defamatory statements per se, damages are presumed. In addition, Plaintiff has suffered actual and concrete losses, including: the loss of identified professional engagements and client relationships in the intellectual-property enforcement field; the refusal of identified counsel and business counterparties to associate with Plaintiff or his businesses after being shown the Article; diminished value of Plaintiff's business interests; the cost of reputation-mitigation and security

measures; and emotional distress. Plaintiff will identify each such lost engagement, counterparty, and amount with particularity following discovery of Defendant's communications with third parties.

## COUNT VI

### (Intentional Infliction of Emotional Distress)

110. Plaintiff repeats and re-alleges paragraphs 1 through 109 above as if fully set forth herein.

111. Under Illinois law, the elements of intentional infliction of emotional distress are: (a) the defendant's conduct was extreme and outrageous; (b) the defendant intended to cause severe emotional distress or knew of a high probability of causing severe emotional distress; and (c) the conduct caused severe emotional distress. *McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E.2d 806, 809 (1988).

112. Defendant's conduct — a sustained, multi-year, escalating online campaign falsely accusing Plaintiff of grave crimes for which Plaintiff has never been charged; mass-mailing those false accusations to approximately ninety government and press recipients; publishing a thirty-two-page "article" attacking Plaintiff on the website of a licensed Florida law firm; and adding to that article in June 2024 Plaintiff's home address, unlisted cellular telephone number, and personal email address with the express invitation "for anyone being subjected to Mr. Bleicher's harassment" to contact him directly — is extreme and outrageous and beyond all bounds of decency.

113. Defendant intended to cause Plaintiff severe emotional distress and knew of the high probability that his conduct would cause such distress.

114. Defendant's conduct has caused, and continues to cause, Plaintiff severe emotional distress, including anxiety, sleep disruption, fear of escalation, anguish, and significant life disruption.

**COUNT VII**

**(Tortious Interference with Prospective Economic Advantage)**

115. Plaintiff repeats and re-alleges paragraphs 1 through 114 above as if fully set forth herein.

116. Under Illinois law, the elements of tortious interference with prospective economic advantage are: (a) the plaintiff's reasonable expectancy of a valid business relationship or prospective economic advantage; (b) the defendant's knowledge of that expectancy; (c) intentional and unjustified interference by the defendant; and (d) damages. *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 511, 568 N.E.2d 870, 877 (1991).

117. Plaintiff, as the Chief Executive Officer and operator of his Illinois corporations, has reasonable expectancies of valid business relationships with customers, business counterparties, advertising and platform partners, and existing and prospective intellectual-property enforcement counterparts.

118. Defendant knows of those expectancies, having previously represented Plaintiff's predecessor corporation in connection with that corporation's intellectual-property enforcement litigation.

119. Defendant has intentionally and unjustifiably interfered with those expectancies by (a) publishing and continuing to publish the Article in a manner designed to damage Plaintiff's reputation and business activities, and (b) facilitating the use of the Article by parties adverse to

Plaintiff in his businesses' intellectual-property enforcement matters, as documented in subsection I above. (Exhibit A.)

120. As a direct and proximate result of Defendant's tortious interference, Plaintiff has suffered concrete losses, including identified prospective engagements and client relationships that were not consummated after the third party received or reviewed the Article, lost enforcement value in Plaintiff's businesses' intellectual-property claims, increased legal and mitigation costs, and damage to goodwill, in amounts to be proven at trial.

**SUPPLEMENTAL FACTUAL ALLEGATIONS (Events Since Filing)**

121. On August 7, 2026, Defendant filed his own March 17, 2016 "Open Letter to Governmental Agencies" — the source document from which the Article was later derived — as an exhibit to his motions (ECF Nos. 12-1, 13-1). Plaintiff does *not* assert that court filing as an act of defamation; Plaintiff alleges it as evidence of Defendant's continuing malice and improper purpose, and because it authenticates Defendant's authorship of the Open Letter and places its Illinois distribution list into this Court's record.

122. On or about August 11, 2026 — while this action was pending — Defendant took the Article offline and re-published a materially edited version at the same public URL. The Article's own content-management metadata records the modification as **2026-08-11T21:45:18Z**; a third-party change-monitoring service independently recorded the edit that evening.

123. The August 11 version retains and re-publishes Plaintiff's Illinois home address, unlisted Illinois cellular number, and personal email address (the "Doxing Block"), instructing the public: "for anyone being subjected to harassment by one or more of Mr. Bleicher's criminal enterprises, as of June 2024, you can directly contact those criminal enterprises" at that address, telephone number, and email. Plaintiff's home address, personal cellular number, and personal

email address are not among the identifiers for which redaction is required by Fed. R. Civ. P. 5.2(a); accordingly, Plaintiff has redacted them in this public filing and will, on the Court's leave, provide an unredacted copy under seal pursuant to Fed. R. Civ. P. 5.2(d) and (f) and Local Rule 26.2.

124. The August 11 version adds new, false, and defamatory statements not previously published, stating verbatim: "**Apparently, Bluehost supports pedophiles and con-artists like Phillip Bleicher, over its own customers of 10+ years.**" The adverb "Apparently" does not convert the statement into protected opinion. The version also refers to Plaintiff's "pedophilia" and repeatedly labels Plaintiff's businesses "Mr. Bleicher's criminal enterprises." Defendant separately disparages Plaintiff's web host (the host "stands with the Jeffery Epstein class and against the victims of human trafficking"); Plaintiff pleads that language as context establishing the defamatory gist, and pleads the "pedophile"/"pedophilia" and "criminal enterprises" statements as imputations of and concerning Plaintiff.

125. The August 11 version, for the first time, names Plaintiff's counsel of record and states that she "supports his pedophilia and scams against honest hardworking Americans." Plaintiff alleges this solely as further evidence of Defendant's malice and improper purpose.

126. The August 11 version characterizes Plaintiff as the "alter ego" and "head of the corporation" of Flava Works, Inc., and states, conditionally, that "if Mr. Bleicher alleges claims … not disclosed to the bankruptcy court, then Mr. Bleicher committed fraud on the court." These statements continue Defendant's practice of restating corporate and civil matters as Plaintiff's personal crimes. Plaintiff has never been arrested, charged, indicted, or convicted of any offense arising from any matter in the Article.

127. The Article, as re-published on August 11, 2026, continues to display the distribution list of Defendant's March 17, 2016 Open Letter, showing that Defendant addressed it to Illinois officials and media — including the Chicago Department of Public Health, the Mayor of Chicago, the Illinois Attorney General, and the Chicago Sun-Times (¶ 34) — and that list remains published today. The Article remains configured for search-engine indexing.

128. The June 2024 Doxing Block and the August 2026 updates are new statements, first published on those dates, and are independently actionable as of those dates. Illinois has adopted the Uniform Single Publication Act, 740 ILCS 165/1, which the Seventh Circuit has predicted the Illinois Supreme Court would apply to Internet publications. *Pippen v. NBCUniversal Media, LLC,* 734 F.3d 610, 615 (7th Cir. 2013). That rule bars treating unchanged material left online as continuously republished; it does not immunize new matter. Plaintiff does not allege that the mere continued availability of the 2017 Article restarts any limitations period. Plaintiff alleges that Defendant composed and published new content on new dates — the Doxing Block in June 2024, the statements imputing pedophilia on or about August 11, 2026, the photograph of Plaintiff on or about August 17, 2026, and the statements and solicitation described below, published on or about August 19 through 22, 2026 — each of which is a separate publication of matter not previously published. *See* Restatement (Second) of Torts § 577A cmt. d.

129. The August 11 statements imputing pedophilia are false. Plaintiff has never been arrested, charged, indicted, prosecuted, or convicted of any offense involving a minor, child sexual abuse, or human trafficking, in any court or tribunal.

130. Plaintiff is a private figure, and the statements do not concern a matter of legitimate public concern. Defendant published them at least negligently, and in fact with actual malice, as shown by his editing and escalation of the Article after suit was filed rather than retraction.

131. As a direct and proximate result of the August 11, 2026 re-publication, Plaintiff has suffered additional injury to reputation, additional harassing contacts to his Illinois cellular number, and additional emotional distress, and remains exposed to continuing harm while the Article remains published.

132. On or about August 13, 2026, Defendant again edited the Article, removing the sentence that had attacked his web host by name but retaining both the Doxing Block and the statements imputing pedophilia to Plaintiff.

133. On or about August 15, 2026 — days after Plaintiff reported the Doxing Block to Defendant's web host — Defendant edited the Article to remove Plaintiff's Illinois home address, unlisted cellular number, and email address. Defendant's removal of that information, after this action was filed and after the host complaint, does not moot Count I: the information had been published continuously from June 2024 until August 2026; the resulting harm, including at least 599 harassing contacts, had already occurred; and Defendant remains free to republish it, as his repeated edits demonstrate.

134. On or about August 17, 2026 — an edit time-stamped by Defendant's own web server at 6:04 p.m. — Defendant again escalated. For the first time in the Article's history, Defendant published a photograph of Plaintiff, captioned "This is the only known photo of Phillip Bleicher that has not been scrubbed from the internet," positioned alongside the statements imputing "pedophilia" to Plaintiff. The photograph is an original work authored by, and copyrighted to, Plaintiff, and was used without his authorization.

135. By publishing Plaintiff's photograph beside an accusation of pedophilia, Defendant has continued and aggravated his targeting of Plaintiff. A facial photograph paired with a "pedophile" label enables members of the public to identify and locate Plaintiff in person, and thereby heightens

the reasonable likelihood of bodily injury or stalking that the Doxing Act addresses, 740 ILCS 195/10(a) — notwithstanding Defendant's removal of the contact information two days earlier.

136. Defendant's own website contradicts the sworn representations he has made in this action. The Article states that Plaintiff "refused to pay me the $500 I billed him," while Defendant has sworn to this Court that the fee he billed was "$1,000." (ECF No. 12 ¶ 5; ECF No. 13-2 ¶ 4.) His own 2015–2016 writings frame the same contradiction: his Notice of Attorney's Charging Lien told the federal court he had incurred fees of "$1,000" that Plaintiff "refused to pay" (Exhibit C), while his sworn Florida Bar response stated that he "only requested $500 instead of the $1,000 actually incurred" (Exhibit D).

137. Each of the edits described above and below — on or about August 11, 13, 15, 17, 19, 21, and 22, 2026 — is a separate act of publication and republication of the Article and its defamatory content. Together they establish that the Article is not a static 2016 publication but one that Defendant actively controls, edits, and republishes, contrary to his sworn characterization of his website as a "passive" site intended only for Florida residents. (ECF No. 13-2 ¶¶ 12–13.) Dated change captures of each of these edits, and of the edits alleged below, are compiled in Exhibit N.

138. On or about August 19, 2026, Defendant edited the Article again. He replaced the photograph caption with a new caption describing "a recently recovered photo" in which Plaintiff "can be seen leaching off his 'performers'" at the "infamous 'FlavaMen Blatino Awards' ceremony held in Atlanta, Georgia on September 5, 2009," naming Plaintiff and two other individuals; and by August 22, 2026 the photograph displayed with the Article was the FlavaMen Blatino Awards 2009 photograph — an original work in which Plaintiff holds the copyright — displayed beneath the Article's accusations. Defendant published that photograph without Plaintiff's authorization.

139. On Thursday, August 20, 2026 at 4:13 p.m., Defendant emailed Plaintiff's counsel of record — ostensibly to propose a briefing schedule in this action — and in the body of that email described his pending motion as one “against you and your pedophile client.” Defendant thereby repeated, in litigation correspondence, the same accusation of child sexual abuse that he publishes on his website. (Exhibit S.)

140. On or about August 21, 2026, Defendant edited the Article again, rewording his attack on Plaintiff's counsel to state that she “gladfully accepts Mr. Bleicher's blood money and supports his pedophilia and scams against honest hardworking Americans” — retaining the imputation of “pedophilia” to Plaintiff and continuing to name Plaintiff's counsel.

141. On August 22, 2026 — an edit Defendant's own content-management system records at 2026-08-22T22:26:22Z — Defendant added to the Article, verbatim: “As of 2026, in light of his relentless obsession to harass me for opposing pedophilia, I have reconsidered my prior stance on this matter. If you were one of Mr. Bleicher's countless victims, especially if you were underage at the time, please feel free to contact me. Mr. Bleicher and his criminal enterprises must be held accountable for the injuries he caused you.” The same day, Defendant published a separate post on his firm's website, titled “Fair Use Exception to U.S. Copyright Law,” describing Plaintiff as a “copyright troll.” Plaintiff had served a signed notice under the Digital Millennium Copyright Act on Defendant's web host on August 18, 2026, identifying both photographs, and re-submitted it in the host's required form on August 23, 2026 (host ref. ABU-182060). Defendant removed the first photograph but has kept the FlavaMen Blatino Awards photograph live — and his “Fair Use” post, published the same day as the solicitation, confirms that he knows of Plaintiff’s copyright claim and is publishing the photograph anyway. (Exhibit N.)

142. The August 19 through 22 statements are false and defamatory per se. Plaintiff has never been arrested, charged, indicted, prosecuted, or convicted of any offense involving a minor, child sexual abuse, or human trafficking, in any court or tribunal; he has no "victims"; and the solicitation's premise — that Plaintiff has "countless victims," including persons who were "underage at the time" — imputes the gravest of criminal offenses. Each statement was published for the first time on the date identified and is independently actionable as of that date.

143. The August 22 solicitation also escalates the danger the Doxing Act addresses: Defendant, having previously armed the public with Plaintiff's home address and unlisted cellular number, now expressly invites strangers — including persons claiming to have been "underage" — to come forward against Plaintiff by name. The solicitation is designed to recruit accusers and to manufacture the very "victims" Defendant's publications presuppose, and it heightens the reasonable likelihood of stalking or bodily injury to Plaintiff. 740 ILCS 195/10(a). Defendant himself has located that audience in Illinois: his August 24, 2026 filing in this Court asserts that Plaintiff's "rampant homosexual pedophilia … continues to endanger the vulnerable youth of Illinois." (ECF No. 15 ¶ 7.)

**DEFENDANT'S POST-FILING SUBMISSIONS (ECF NOS. 14, 15, AND 18)**

144. On August 10, 2026, while this action was pending, Defendant filed a document captioned "Notice of Filing Judicial Rulings Establishing Bleicher Is the Alter Ego of Flava Works and Committed Bankruptcy Fraud" (ECF No. 14), attaching two orders from *Flava Works, Inc. v. A4A Reseau, Inc.,* No. 14-23208-CIV (S.D. Fla.).

145. Defendant represents that his Exhibit 2 "established that Plaintiff, Philip Bleicher filed bankruptcy in this District in 2022," and that Plaintiff "thereby commit[ted] fraud on the court." That exhibit establishes no such thing. It states only that "Bleicher submitted a notice to the court,

attaching a voluntary petition for bankruptcy which was filed in the Northern District of Illinois," and that "[t]he bankruptcy case was dismissed on August 2, 2022." (ECF No. 14-2.) It identifies no debtor, states no date of filing, and contains no finding of fraud.

146. Plaintiff has never filed a personal bankruptcy petition. The bankruptcy referenced in Defendant's exhibit was filed by the corporation, not by Plaintiff: *In re Flava Works, Inc.,* No. 21 B 08585 (Bankr. N.D. Ill.) (Cassling, J.). The order entered in that case states that "[t]he Debtor filed a Chapter 11 petition on July 17, 2021, designating itself as an S-corporation and small business debtor under 11 U.S.C. § 101(51D)." The petition was filed in 2021; August 2, 2022 is the date the case was dismissed.

147. Because Plaintiff was not the debtor, Plaintiff's personal claims were never property of that bankruptcy estate, and no schedule filed by the corporate debtor could have listed them. The Bankruptcy Court's order further reflects that the Debtor's retained counsel "filed the required Schedules, Statement of Financial Affairs, and other required documents," and that the Debtor's plans "provide for payment of 100% of the claims of all creditors." No court has found that Plaintiff or the Debtor committed fraud on any court in that proceeding.

148. In addition, the conduct pleaded in this action — including the June 2024 publication of Plaintiff's home address, cellular number, and email address, and the 2026 statements imputing pedophilia to Plaintiff — occurred after August 2, 2022, and therefore could not have been property of any bankruptcy estate.

149. Defendant further represents that the attached orders "establish[]" that Plaintiff "is the alter ego of Flava Works." Defendant omits that a judge of this District considered that same finding, between these same parties, and declined to give it preclusive effect. In *In re Flava Works, Inc.,* the Bankruptcy Court held that "[a]bsent an adequate showing … the doctrine of collateral

estoppel is not properly applied here," and that the movant "ha[d] not met its burden to establish that the prior litigation involved the same issue or that such issue was essential to the final judgment entered by the Florida federal court." The court found "no facts to suggest that Phillip Bleicher engaged in a sham transaction when he formed the Debtor as a corporation."

150. Defendant also omits that the report he attached recognized that the Debtor "is a corporation," that the alter-ego reference appeared in an analysis of service of process upon a corporation under Fla. Stat. § 48.081(1)(a), and that "neither the attorney's fees nor the costs may be taxed against Phillip Bleicher as an impleaded third party." (ECF No. 14-1.) The impleader order underlying that reference states that impleader "does not in itself establish liability on the part of the impleaded third parties."

151. Defendant's characterization of these orders is materially misleading. Each order he attaches concerns a corporation — its liability to creditors, and the service of process upon it — and the bankruptcy he invokes was filed by a corporation. Defendant nonetheless offers all of it to this Court as proof of what Plaintiff did personally. That conflation of Flava Works, Inc. with Plaintiff is the gravamen of this action: the Article itself conflates corporate, civil, dropped, and unadjudicated matters with crimes attributed to Plaintiff personally.

152. Defendant has been sanctioned for this precise practice. In *Gulisano v. Burlington, Inc.,* 34 F.4th 935 (11th Cir. 2022), the district court found that Defendant had "attempt[ed] to conflate various distinct corporate entities in order to recover an award of damages obtained through a default judgment against a non-existent corporate entity," and held that conduct "both frivolous and dishonest." The Eleventh Circuit affirmed. Defendant's conflation of Plaintiff with Flava Works, Inc. — in the Article, in his motions, and in ECF No. 14 — is a continuation of the same practice.

153. On August 24, 2026, Defendant filed a two-page document captioned "Defendant's Proposed Briefing Schedule" (ECF No. 15). A proposed briefing schedule requires dates and a signature. Defendant's filing instead states that Plaintiff is "a homosexual kiddie-porn kingpin" (¶ 3) engaged in "rampant homosexual pedophilia, which continues to endanger the vulnerable youth of Illinois" (¶ 7), and refers to Plaintiff's counsel of record as "complicit counsel Hicks" (¶ 5). No tribunal, anywhere, has ever made any such finding about Plaintiff, and Defendant's filing cites nothing for it.

154. The quoted statements bear no relation to any relief sought in ECF No. 15 or to any scheduling issue in this action. Plaintiff pleads them principally as evidence of Defendant's actual malice, improper purpose, and continuing course of harassment. In the alternative, and to the extent the statements fall outside the scope of any litigation privilege — a privilege that extends only to matter having "some relation to the proceeding," Restatement (Second) of Torts §§ 586–587 — Plaintiff pleads the statements in ECF No. 15 ¶¶ 3 and 7 as independently actionable publications of defamation per se.

155. ECF No. 15 completes an escalation that Defendant manufactured across his own writings: his 2016 Open Letter accused Plaintiff's former company of exploiting "at-risk youths" — a reference to race and vulnerability, not age; his August 7, 2026 sworn filings converted that into pornography "featuring … occasionally minors" (ECF No. 12 ¶ 2; ECF No. 13-2 ¶ 3), an accusation his own cited exhibit refutes; his August 20, 2026 email converted it into "your pedophile client"; his August 22, 2026 website edit solicited "victims, especially if you were underage"; and his August 24, 2026 filing converted it into "kiddie-porn kingpin." No child-related accusation of any kind appears anywhere in Defendant's writings — not in the Article across ten years, not in his 2016 Open Letter, not in his 2016 mass mailing to approximately ninety

government and press recipients — before August 7, 2026. The first such accusation appeared in Defendant's filings in this action, and every escalation since has been made in litigation documents or in website edits made while this action was pending. On August 25, 2026, Plaintiff moved to restrict and strike the scandalous matter from the record and for an order that Defendant show cause regarding his conduct.

156. The escalation did not stop there. On August 25, 2026 — within hours of Plaintiff's motion to strike — Defendant filed a "Motion to Strike" directed at Plaintiff's briefing-schedule statement (ECF No. 18). In it, Defendant escalated "occasionally minors" to an assertion that Plaintiff's former company produces pornography featuring "occasionally underage boys" (¶ 2); asserted, for the first time anywhere, that Defendant "has been contacted by multiple victims of Bleicher who were underage when they were victimized by him and forced to engage in nonconsensual homosexual acts" (¶ 6); asserted that "[m]ore than one of those underage victims referred to Bleicher as 'Baby Epstein'" (¶ 7); and announced that Defendant "will be seeking to have Hicks disqualified as Bleicher's counsel" (¶ 9). The filing identifies no declarant, no name, no date, no communication, and no exhibit for any of it.

157. Defendant's own article refutes his new assertion. Its "2024 Update" states that Defendant "received dozens of phone calls and emails from Mr. Bleicher's victims since posting this article back in 2016," and that Defendant told them: "I respectfully request that you not contact me. This article states everything I know and I am not willing to discuss issues with Mr. Bleicher." In nine years, Defendant — a licensed attorney — has reported no such "victim" to any law-enforcement or child-protection authority anywhere; instead, on August 22, 2026, he began soliciting them for litigation. Public records corroborate the falsity: in response to Plaintiff's Illinois Freedom of Information Act request (No. R005603-081226), the Cook County State's

Attorney's Office confirmed in writing on August 13, 2026 that, after a reasonable search, it "has not located any records" of any matter arising from the "Student Leadership Network" charity — the subject of Defendant's school-fund-theft accusation — and its search identified no matter of any kind involving Plaintiff arising at any time in the last two decades. A parallel public-records request to the City of Miami (Request No. 26-5424), seeking any correspondence or referral from Defendant concerning Plaintiff, is pending. The State's Attorney's written response is in Plaintiff's possession and available to the Court on request. The assertions in ECF No. 18 ¶¶ 2, 6, and 7 are false, bear no relation to the relief sought in that filing (the striking of a briefing-schedule statement), and are pleaded, like the statements in ECF No. 15, principally as evidence of actual malice and continuing harassment and, in the alternative and to the extent outside any litigation privilege (¶ 154), as independently actionable publications of defamation per se.

## DEFENDANT'S INFRINGEMENT OF PLAINTIFF'S COPYRIGHTED PHOTOGRAPH AND HIS FALSE DMCA COUNTER-NOTIFICATION

158. The Photograph. On September 5, 2009, at the FlavaMen Blatino Awards in Atlanta, Georgia, a professional photographer engaged by Flava Works, Inc. took a photograph depicting Plaintiff with Toccara Jones and Warren Bullock (the "Photograph"). Flava Works, Inc. owned all rights in the Photograph from its creation.

159. Flava Works, Inc. published the Photograph in FlavaMen Magazine, Vol. 5, No. 3 (Fall 2009), a collective work registered with the United States Copyright Office as Registration No. TX 7-145-774 (effective April 26, 2010), naming Flava Works, Inc. as author and claimant of the "collective work which may include text, editing, compilation, and contribution(s) in which copyright has been transferred to the claimant." (Exhibit T.) Flava Works, Inc. also authorized

release of the Photograph on Wikimedia Commons under the Creative Commons Attribution-ShareAlike 3.0 Unported license on or about October 20, 2009, with permission confirmed through the Wikimedia volunteer-response system. Plaintiff is filing an application to register the Photograph as an individual work and will supplement upon issuance.

160. In 2022, Flava Works, Inc. sold and assigned its intellectual-property catalog, including its copyright registrations and the Photograph, to Plaintiff personally; the assignment is recorded with the United States Copyright Office as Document No. V15032D534 (recorded February 14, 2025). Plaintiff owns the copyright in the Photograph.

161. The Creative Commons license under which the Photograph was released to the public is a conditional license: it requires every user to provide attribution to the designated author and to include a copy of, or the Uniform Resource Identifier for, the license with every copy (CC BY-SA 3.0 §§ 4(a), 4(c)), and it terminates automatically upon any breach of its terms (id. § 7(a)).

162. On or about August 19 through 22, 2026, Defendant copied the Photograph from Wikimedia Commons and published it on his law firm's website, hosted at gulisanolaw.com/wp-content/uploads/Blatinoawards.jpg and displayed on the Article, beneath the caption alleged above (¶ 138). Defendant provided no attribution to the designated author and no copy of or link to the license, on the image, in the caption, or anywhere on the page — verified by inspection on August 26, 2026. Any rights Defendant might have had under the Creative Commons license therefore never vested or terminated automatically, and his reproduction, public display, and distribution of the Photograph are unauthorized. Defendant knew of the license conditions: he located and quoted the Wikimedia Commons page itself, which prints them.

163. On August 18, 2026, Plaintiff served Defendant's web host with a notice under the Digital Millennium Copyright Act identifying the Photograph and a second photograph of

Plaintiff; Plaintiff re-submitted the notice in the host's required form on August 23, 2026 (host ref. ABU-182060). Defendant removed the second photograph but has kept the Photograph live. On or about August 25, 2026, Defendant served a counter-notification, signed under penalty of perjury, in which he asserted among other things that the Photograph “is not protected by any copyright” — while attaching the Wikimedia Commons page showing the Creative Commons license and the permission ticket — asserted that his use is “non-commercial” fair use although the display is on his law firm's commercial website, and sought “restoration” of material that had never been removed. (Exhibit U.)

164. On August 26, 2026, the host advised that, in reliance on Defendant's counter-notification, it will cease disabling or will restore the material within ten to fourteen business days unless notified that an action has been filed seeking a court order to restrain Defendant from engaging in infringing activity relating to the material. This Complaint, including Count IX and the accompanying request for preliminary and permanent injunctive relief, is such an action, and Plaintiff is delivering notice of it to the host.

**SUPPLEMENT TO COUNT I (Illinois Civil Liability for Doxing Act, 740 ILCS 195)**

165. Plaintiff incorporates the foregoing. The Act took effect January 1, 2024; Count I rests on the June 2024 Doxing Block and the August 11, 2026 re-publication, not on the 2017 Article.

166. Defendant intentionally published Plaintiff's name in combination with his home address, unlisted cellular number, and email address — “personally identifiable information” as defined by 740 ILCS 195/5 — without Plaintiff's consent, “with the intent that it be used to harm or harass” Plaintiff (the Doxing Block expressly invites the public to “directly contact” him), and “with knowledge or reckless disregard that” Plaintiff “would be reasonably likely to suffer death, bodily injury, or stalking.” 740 ILCS 195/10(a)(1).

167. The at least 679 harassing telephone contacts to Plaintiff's unlisted Illinois cellular number (¶ 56) are not pleaded as a required element. They are evidence that the risk Defendant disregarded was real and in fact materialized: Defendant published Plaintiff's unlisted number beneath an invitation to "directly contact" him, and hundreds of unwanted communications followed. Those contacts are also "non-consensual contact" within the "course of conduct" definition the Act incorporates, including acts committed "directly, indirectly, or through third parties." 720 ILCS 5/12-7.3(c)(1). (Plaintiff does not rely on the "communicates to or about" clause severed in People v. Relerford, 2017 IL 121094.)

168. The publication caused Plaintiff to suffer significant economic injury and emotional distress and to fear serious bodily injury, satisfying 740 ILCS 195/10(a)(2)(i), and Plaintiff is identifiable from the published personally identifiable information itself, 740 ILCS 195/10(a)(3). Plaintiff does not rely on the separate "substantial life disruption" prong of Section 10(a)(2)(ii).

169. No exemption applies. The Act's law-enforcement provision is § 10(b)(1). The § 10(b)(2) exemption for dissemination "in connection with … the reporting of conduct reasonably believed to be unlawful" does not apply: Defendant had no reasonable belief that Plaintiff committed any offense — his own Exhibit 1 identifies no charge or conviction — and publishing a private person's home address and cellular number with an invitation to "directly contact" them is not "reporting," nor constitutionally protected news-gathering or petitioning (§ 10(b)(3)).

170. Section 15(b) creates Plaintiff's private right of action and entitles him to "damages and any other appropriate relief, including reasonable attorney's fees." 740 ILCS 195/15(b). Section 20 authorizes injunctive relief. 740 ILCS 195/20.

## COUNT VIII

### (Defamation Per Se — Imputation of Pedophilia)

171. Plaintiff repeats and re-alleges paragraphs 1 through 170.

172. A statement is defamatory *per se* under Illinois law if it imputes the commission of a criminal offense or prejudices a person in his trade, profession, or business; damages are presumed. *Solaia*, 221 Ill. 2d 558, 579–80, 852 N.E.2d 825, 839 (2006).

173. Defendant's August 11, 2026 statement — "Apparently, Bluehost supports pedophiles and con-artists like Phillip Bleicher" — and his reference to Plaintiff's "pedophilia" impute grave criminal offenses involving the sexual abuse of children and prejudice Plaintiff in his profession. The statements are defamatory *per se*, are false (¶ 129), are not capable of an innocent construction, and are not protected opinion. *Chapski v. Copley Press, Inc.*, 92 Ill. 2d 344, 352, 442 N.E.2d 195, 199 (1982). Defendant's August 22, 2026 addition — soliciting "victims, especially if you were underage at the time," to contact him concerning Plaintiff (¶ 141) — repeats and amplifies the same imputation and is likewise defamatory per se; and, in the alternative and to the extent unprivileged (¶ 154), the statements in ECF No. 15 ¶¶ 3 and 7 and ECF No. 18 ¶¶ 2, 6, and 7 are further such imputations.

174. Plaintiff is a private figure and need not prove actual malice; in the alternative, and for presumed and punitive damages, Defendant acted at least negligently and in fact with actual malice (¶ 130). *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347–50 (1974).

175. In the alternative (defamation per quod): if extrinsic context is required to establish the defamatory meaning, Plaintiff alleges the statements are defamatory per quod and pleads special damages under Fed. R. Civ. P. 9(g) as follows. On or about February 4, 2022, a third party transmitted the Article to Heather L. Blaise, Esq., of Blaise & Nitschke, P.C., then assisting Plaintiff and his company in intellectual-property enforcement matters, for the express purpose of

dissuading her from continuing that representation (¶ 63). Plaintiff further alleges the loss of prospective professional engagements and business counterparties who declined to associate with Plaintiff or his companies after receiving or reviewing the Article, and the costs incurred for reputation mitigation, security measures, and replacement communications channels following publication of the Doxing Block. The identity of each such counterparty, the engagements lost, and the amounts at issue depend on Defendant's communications with third parties and on third-party records presently outside Plaintiff's knowledge; Plaintiff will identify them with particularity upon discovery.

176. As a direct and proximate result, damages are presumed, and Plaintiff has suffered actual damages including injury to reputation, loss of business and professional opportunity, and severe emotional distress. Plaintiff is entitled to punitive damages.

**COUNT IX**
**(Copyright Infringement — 17 U.S.C. § 501)**

177. Plaintiff repeats and re-alleges paragraphs 1 through 176 above as if fully set forth herein.

178. Plaintiff owns the copyright in the Photograph, a component contribution of the registered collective work FlavaMen Magazine, Vol. 5, No. 3 (Registration No. TX 7-145-774, effective April 26, 2010), by assignment recorded as Document No. V15032D534. The certificate of registration constitutes prima facie evidence of the validity of the copyright. 17 U.S.C. § 410(c). Plaintiff has additionally applied for registration of the Photograph as an individual work and will supplement this pleading upon issuance of that registration.

179. Defendant has reproduced, publicly displayed, and distributed the Photograph on his law firm's website without authorization, in violation of 17 U.S.C. § 106(1), (3), and (5), and continues to do so. Defendant's conduct infringes Plaintiff's copyright under 17 U.S.C. § 501.

180. Defendant's infringement is willful: he took the Photograph from a page that prints the license conditions he ignored; he continued the display after Plaintiff's August 18 and August 23, 2026 notices; and he published a post describing Plaintiff's copyright claims while keeping the Photograph live.

181. Plaintiff has been damaged and Defendant has profited from the unauthorized use, in amounts to be proven at trial. Plaintiff is entitled to damages and Defendant's profits under 17 U.S.C. § 504, to costs and, to the extent permitted, attorney's fees under 17 U.S.C. § 505, and to preliminary and permanent injunctive relief under 17 U.S.C. § 502 restraining Defendant from engaging in infringing activity relating to the Photograph, including its reproduction, public display, or distribution on gulisanolaw.com or any other system or network.

**COUNT X**

**(Misrepresentation in DMCA Counter-Notification — 17 U.S.C. § 512(f))**

182. Plaintiff repeats and re-alleges paragraphs 1 through 181 above as if fully set forth herein.

183. In his August 25, 2026 counter-notification, signed under penalty of perjury, Defendant knowingly and materially misrepresented that the material had been removed or disabled as a result of mistake or misidentification — swearing, among other things, that the Photograph "is not protected by any copyright." That sworn assertion is refuted by the very exhibit Defendant attached to his own counter-notification, which reproduces the Wikimedia Commons page showing the Creative Commons license under which the Photograph was released and the recorded permission of the copyright holder. There was no mistake and no misidentification: Plaintiff's notice identified

the precise image Defendant had copied, and Defendant — who located and quoted the Commons page that prints the license (¶ 162), who published a "Fair Use" post that presupposes a subsisting copyright in the very works he had been told to remove (¶ 141), and who is a licensed attorney — knew the Photograph was protected when he swore otherwise. At a minimum, Defendant acted with willful blindness to the falsity of his sworn statements. (Exhibit U; ¶¶ 162–163.)

184. Defendant's web host has stated that, in reliance on Defendant's counter-notification, it will cease disabling access to or will restore the material. 17 U.S.C. § 512(g).

185. As a result of Defendant's knowing material misrepresentations and the host's reliance on them, Plaintiff has been injured, including through the continued display of the Photograph and the costs and attorney's fees incurred in responding. Under 17 U.S.C. § 512(f), Defendant is liable to Plaintiff for any damages, including costs and attorneys' fees, incurred by Plaintiff as the result of those misrepresentations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for judgment in his favor and against Defendant as follows:

A. Compensatory damages in an amount in excess of $1,000,000, to be proven at trial, exclusive of interest and costs;

B. Damages and any other appropriate relief, including reasonable attorney's fees and costs, pursuant to the Illinois Civil Liability for Doxing Act, 740 ILCS 195/15(b) and 195/20;C. Presumed damages on the defamation per se claim;

D. Punitive damages in an amount sufficient to punish Defendant and to deter similar conduct;

E. Permanent injunctive relief, upon final judgment and following the evidentiary hearing required by 740 ILCS 195/20(a), enjoining Defendant from publishing Plaintiff's personally identifiable information — his name in combination with his home address, cellular telephone number, or personal email address — on gulisanolaw.com or on any other platform under Defendant's control, such injunction to contain the findings and the durational limit required by 740 ILCS 195/20(a) and (b);

F. Upon final judgment, and as to statements adjudicated false and defamatory, a permanent injunction barring Defendant from republishing those specific statements. *See McCarthy v. Fuller,* 810 F.3d 456, 461-62 (7th Cir. 2015);

G. Pre-judgment and post-judgment interest as allowed by law;

H. Plaintiff's costs of suit; and

I. Such other and further relief as the Court deems just and equitable.

As to Count VIII and the supplemental allegations, Plaintiff further prays for compensatory and presumed damages; punitive damages; the injunctive relief described in paragraphs E and F above, on the terms and subject to the findings required by 740 ILCS 195/20 *and McCarthy v. Fuller,* 810 F.3d 456, 461-62 (7th Cir. 2015); reasonable attorney's fees and costs; and such other relief as the Court deems just. As to Counts IX and X, Plaintiff further prays for preliminary and permanent injunctive relief under 17 U.S.C. § 502 restraining Defendant from engaging in infringing activity relating to the Photograph, including its reproduction, public display, or distribution on gulisanolaw.com or any other system or network; damages and profits under 17 U.S.C. § 504; damages, including costs and attorneys' fees, under 17 U.S.C. § 512(f); costs and, to the extent permitted, attorney's fees under 17 U.S.C. § 505; and such other relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: August 28, 2026.

Respectfully submitted,

By: /s/ Corinthia Hicks

CORINTHIA HICKS, ESQ.
ARDC No. 6352965
Admitted to the U.S. District Court for the
Northern District of Illinois
Chicago, IL 60612-2003
Tel: (305) 438-9450
Email: corinthia@flavaworks.com
Counsel for Plaintiff Phillip Bleicher

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2026, I caused a true and correct copy of the foregoing First Amended and Supplemental Verified Complaint to be filed via the Court's CM/ECF system, which will serve all counsel of record, and served by email at the following addresses:

Michael Gulisano, Esq.
Gulisano Law, PLLC
1489 W Palmetto Park Rd, Ste 500
Boca Raton, FL 33486-3326
Email: gulisanomichael@gmail.com

By: /s/ Corinthia Hicks

CORINTHIA HICKS, ESQ.

Counsel for Plaintiff

## VERIFICATION

I, Phillip Bleicher, declare under penalty of perjury under the laws of the United States (28 U.S.C. § 1746) that the factual allegations in this First Amended and Supplemental Verified Complaint are true and correct to the best of my knowledge, information, and belief. Executed on August 28, 2026.

Phillip Bleicher

Dated: August 28, 2026

/s/ Corinthia Hicks
Corinthia Hicks, Esq. — Counsel for Plaintiff