# EXHIBIT INDEX

First Amended and Supplemental Verified Complaint

Bleicher v. Gulisano, No. 1:26-cv-06287 (N.D. Ill.)



| Exhibit | Description | Page |
| --- | --- | --- |
| **Ex. A** | The Article (Live, April 14, 2026) - Redacted | **2** |
| **Ex. B** | Pre-Doxing Capture of the Article (May 20, 2024) | **30** |
| **Ex. B-1** | Unredacted Doxing Block - not publicly filed (Fed. R. Civ. P. 5.2) | **63** |
| **Ex. C** | Charging Lien Doc 99 - Claims $1,000 | **64** |
| **Ex. D** | Sworn Response Doc 117 - Admits Only $500 | **67** |
| **Ex. E** | Email Evidence Compilation (2015-2019), with Invoice | **72** |
| **Ex. F** | FL Bar Closure Letter (RFA 24-12445) - Redacted | **80** |
| **Ex. G** | lilryan10788 Email (April 14, 2026) | **83** |
| **Ex. H** | Reddit r/askgaybros Thread (May 2026) | **85** |
| **Ex. I** | Declaration of Phillip Bleicher | **87** |
| **Ex. J** | 11th Cir. Opinion - Gulisano v. Burlington, No. 20-12660 | **90** |
| **Ex. K** | FL Bar Admission of Minor Misconduct | **109** |
| **Ex. L** | FL Bar Report of Minor Misconduct | **112** |
| **Ex. M** | Transcript - Nov. 20, 2015 Discovery Hearing | **118** |
| **Ex. N** | Article Edit History, Aug. 11-22, 2026 (§ 1746 Declaration) | **127** |
| **Ex. S** | Email, Gulisano to Hicks, Aug. 20, 2026 - Excerpt (Highlighted) | **151** |
| **Ex. T** | Certificate of Registration TX 7-145-774 | **153** |
| **Ex. U** | DMCA Counter-Notification (Aug. 25, 2026) | **156** |



18 Exhibits | 163 Total Pages | Assembled August 28, 2026

# EXHIBIT A

## The Article (live) — gulisanolaw.com/phillip-bleicher-criminial-conman-liar/

*Bleicher v. Gulisano*

*Cited at Complaint ¶¶ 2, 37, 50, 55, 76*

### Contents


| | |
|---|---|
| **Part 1** | **Live capture of the continuously-published Article, dated April 14, 2026**<br>Source: https://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/ — twenty-seven (27)-page printout of the Article as it appears, live, on Defendant's law-firm website. The capture includes the headline "Phillip Bleicher – Criminial, Conman, and Liar," the sub-headline "Intentionally Exposes Employees to Aids," and the "2024 Update" block publishing Plaintiff's home address, unlisted personal cellular telephone number, and personal email address. Signed by "Michael Gulisano, Esquire." |

Gulisano Law, PLLC

Better Legal Talent and Quality Work than the Large Firms. More Focus and Attention to Each Matter than the Small Firms.

# Phillip Bleicher – Criminial, Conman, and Liar

## Phillip Bleicher – A Man Who Stole $3 Million from Public Schools, Intentionally Exposes Employees to Aids, Operates Brothels in Residential Homes, Fabricates Evidence in Court, and Evades Taxes

In November 2015, I responded to a Craigslist ad from a company looking for an attorney to assist in its litigation for alleged infringements of its intellectual property. The ad was posted by the world-class scumbag and career-criminal Phillip Bleicher. For about one month, I worked on one of Mr. Bleicher's numerous frivolous lawsuits, in which he extorts money out of innocent parties by threatening excessive litigation. After I had already done the work, Mr. Bleicher *refused to pay me the $500 I billed him* (a ridiculously small amount for a month's worth of work). In addition to refusing to pay me anything, it became clear to me that Mr. Bleicher was using my services, and the services of other attorneys via Craigslist, to assist in his ongoing criminal activities. Consequently, I terminated my representation of Mr. Bleicher.

That is when shit got real. Mr. Bleicher attempted to blackmail me, demanding several thousand dollars otherwise he threatened file a bogus bar complaint against me, as well as, defame my name on the internet with slanderous and false allegations.

I made the following counter-offer to Mr. Bleicher: "go fuck yourself and pay me for the work I did." Mr. Bleicher then filed a bar complaint against me. The complaint was dismissed after I submitted the following response to the Florida Bar with copies to several news organizations and government agencies.

How Mr. Bleicher is not in prison is mind-boggling. The public must be made aware of this man and in order to do so, I reproduce my response here verbatim with links to the exhibits supporting my claims against this monster:

## Response to Mr. Bleicher's False Complaint and Revelation of His Transgressions

March 17, 2016

Maura Canter, Esquire
The Florida Bar
Attorney Consumer Assistance Program
651 East Jefferson Street
Tallahassee, FL 32399-2300

Re: *Florida Bar File No. 2016-50,697(17E)*
*Response to Phillip Bleicher's False and Slanderous Allegations and Open Letter to Governmental Agencies Regarding Mr. Bleicher's Ongoing Illegal Activities*

Dear Ms. Canter:

I was overwhelmed with sadness to learn that the Florida Bar would entertain the obviously false and slanderous allegations made by Phillip Bleicher ("Mr. Bleicher"). In actuality, the defamatory "complaint" brought by Mr. Bleicher is the culmination of his failed attempt to blackmail and fraudulently extort three Florida attorneys, including myself. *See* Bleicher's Blackmail attached as Exhibit A. Mr. Bleicher's attempted blackmail included a copy of the instant complaint, a "press release" in which Mr. Bleicher makes libelous statements about me, and a hastily put together and facially dismissible proposed "malpractice" complaint. *Id.* These documents

were accompanied with a letter, which unlawfully demanded $10,000 hush money in exchange for not filing the frivolous Bar complaint and "malpractice" lawsuit. *Id.* Mr. Bleicher made identical blackmail attempts against fellow Florida attorneys Ursula Jackson ("Ms. Jackson") and Matthew Zukowsky ("Mr. Zukowsky"). *Id.*

Mr. Bleicher's real issue with me is that I did what I was ethically and legally required to do rather than the unethical and illegal actions he wanted me to take to assist in his ongoing crimes and fraud. Additionally, Mr. Bleicher is motived by revenge. After he refused to pay me $500 for my two months' of work, I filed a charging lien on his case. *See* Charging Lien attached as Exhibit B. Before quickly dispatching with his ridiculous character assassination attempt, it is important that the Bar consider the background to this matter, which Mr. Bleicher conveniently omits from his perjurious statements. Before doing so, I address the disclosure of confidential information that I must make to clear my good name.

## I. Mr. Bleicher's Actions Require or Allow Disclosure of Confidential Information

Florida Rule of Professional Conduct 4-1.6 provides that "[a] lawyer shall not reveal information relating to representation of a client except as stated . . . ." Fla. R. Pro. Cond. 4-1.6(a). However, "[a] lawyer shall reveal such information . . . necessary to prevent a client from committing a crime." *Id.* at (b)(1) (emphasis added). Additionally, "[a] lawyer may reveal such information . . . necessary to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and client; to respond to allegations in any proceeding concerning the lawyer's representation of the client; or to comply with the Rules of Professional Conduct." *Id.* at (c)(2); (4); (5) (emphasis added).

Alas, in addressing Mr. Bleicher's outrageously slanderous filth, I have no choice but to dismantle his revenge fantasy with truth, logic, and the disclosure of his multitude of ongoing criminal activities. Considering he is swindling the IRS, committing perjury in Federal Court, and violating numerous State and Federal laws, it is quite odd Mr. Bleicher would want to make this a matter of public record.

Nevertheless, the disclosures that follow are permissible under the above-cited rules.

## II. Open Letter to Governmental Agencies Concerning Mr. Bleicher's Illegal Activities

Before I vindicate myself, I must advise you of the character of the man who has levied these false claims against me. Mr. Bleicher is a snake oil peddling conman. In the words of one of his many outspoken critics, "Bleicher and his company are also well-known for frivolous lawsuits against detractors or, against those who amplify outside findings and facts, and using underhanded moves, abusing the law . . . ." *See* Gonzalez, Jagged Press attached as Exhibit C (emphasis added). Although his falsified tax returns fooled the IRS otherwise for several years, Mr. Bleicher makes a very comfortable living in the production and distribution of homosexual pornography through his various companies.

Mr. Bleicher is the CEO of Flava Works, Inc. ("Flava Works"). Flava Works is a Florida and Illinois corporation, which produces homosexual pornography featuring African-American and Hispanic men. Flava Works produces a quarterly magazine, FlavaMen, which showcases its models and contains editorials from contributing writers. *See* FlavaMen attached as Exhibit D. Flava Works also operates several websites offering pornographic images and videos, including Cocodorm.com, PapiCock.com, ThugBoy.com, CocoBoyz.com, RawRods.com, MixItUpBoy.com, TopThugs.com, FlavaCams.com, and FlavaMen.com. Thugsforsex.com is Flava Work's online dating portal for men of color. However, most of the controversy surrounding Flava Works has to do with Cocodorm, a live interactive residence where models are hired to live together in a dorm-like environment.

A. Mr. Bleicher Intentionally Exposes Unwitting Performers to HIV and Exploits Minorities – or as the Chicago Department of Public Health calls it – Borderline "Illegal Servitude"

Mr. Bleicher forbids performers from using condoms. He also does not believe in testing his performers for HIV or informing performers that co-performers are HIV

positive before "performances." In November 2005, the Chicago Department of Public Health (the "CDPH") received reports of the transmission of HIV occurring in a resident of a Chicago apartment reported as a non-adherent carrier. The CDPH's investigation revealed the interworking of Mr. Bleicher's operations. *See* CDPH, Investigation of a Cluster of Syphilis and HIV Infections associated with an Internet Pornography Website attached as Exhibit E.

As the CDPH found, Mr. Bleicher's internet-based pornography business featured young Black and Latino men. *See* Ex. E. These men were employed as "models" and lived together at a residential apartment, which was referred to as a "dormitory." *Id.* In exchange for room, board, and modest wages, the "models" allowed Mr. Bleicher to videotape and photograph them having sex with each other in the "dormitory." *Id.* Mr. Bleicher's website featured free previews, members only services, photos, live webcams, live video chat, streaming video, stories, and web logs. *Id.* The website also sold porno magazines, calendars, and DVDs. *Id.* Additionally the website broadcast live daily sex acts. *Id.* Mr. Bleicher also doubled as a pimp, using his "models" in a private male escort service. *Id.* The CDPH identified nineteen "models" from Mr. Bleicher's business. *See* Ex. E. All were African-American. *Id.* Nine of the "models" (47%) had HIV. Id. Another nine of the "models" (47%) had syphilis. *Id.* Three of the "models" had both HIV and syphilis. *Id.*

Unfortunately, the CDPH's investigation was hampered by Mr. Bleicher's interference. *Id.* He forbid employees and "models" from speaking with the CDPH. *Id.* He was also non-responsive to CDPH's requests to work with them to jointly develop a corrective action plan. *Id.* This prompted the issuance of a Notice of City Inspection to assess Mr. Bleicher's brothel for compliance with health, safety, business, and licensing codes. *Id.* Additional concern was raised over Mr. Bleicher's apparent exploitation of his "models," and the nature of their work. *Id.* The CDPH's claimed that Mr. Bleicher's company was practicing what bordered on "illegal servitude." *Id.* "[P]rominent African-American leaders have also been critical of Bleicher, who is white, for what they call the exploitation of young black and Latino men." *See* Ex. C. "Most of them are reportedly at-risk youths, runaways, homeless and easily manipulated." *Id.* On April 20, 2006, the CDPH issued a cease and desist order prohibiting Flava Works from operating in Chicago. *See* Cease and Desist Order attached as Exhibit F.

B. Mr. Bleicher's Fraudulent Charity Stole more than $3 Million from Schools Nationwide

In January 2006, the Illinois Attorney General filed a civil suit against Mr. Bleicher charging him with operating a fraudulent charity that bilked schools nationwide out of millions of dollars. *See* Fraudulent Charity Allegedly Collected More Than $3 Million; Used Proceeds to Make Purchases for International Travel and at a Liposuction Clinic attached as Exhibit G. Mr. Bleicher was the founder of the now-defunct charity, Student Leadership Network (the "Network"), which was promoted as offering conferences and leadership programs for student council members. *Id.* Through the Network, Mr. Bleicher contacted schools across the Country and persuaded some to sign up for the program. *Id.*

Mr. Bleicher then sent fraudulent invoices to the schools and, in addition to cashing those checks, created forged copies of the checks to withdraw additional funds from the schools' bank accounts. *See* Ex. G. Mr. Bleicher successfully cashed many of the checks before the schools and banks realized what happened. *Id.* Mr. Bleicher and his co-conspirators collected more than $3 million dollars for goods and services that they never delivered. *Id.* The civil suit against Mr. Bleicher was later dropped when officials decided to pursue Federal criminal charges instead. *Id.*

C. Fun in the Sun: Mr. Bleicher Flees to Miami

In May 2006, Mr. Bleicher fled to Miami to avoid the civil and criminal repercussions of the above-referenced matters. Once in Miami, Mr. Bleicher resumed operations and launched a new homosexual brothel based out of a residential home. According to the Miami Herald, "CocoDorm offers its young, muscular males $1,200 a month along with free room and board while requiring they masturbate and have group sex in front of cameras." *See* Miami Herald Articles attached as Exhibit H. The City began receiving complaints from the brothel's neighboring residents, mostly families with young children. *Id.* In May 2007, the Miami Department of Code Enforcement visited the residence and imposed citations for: (1) illegal rooming house; (2) adult entertainment not permitted in C-1 zone property; (3) failure to maintain exterior of property; (4) failure to maintain lot in safe, clean condition and prevent the

accumulation of debris, trash or dense growth of grass; and (5) illegally operating a business in a residential zone. *Id.* (emphasis added).

Miami eventually ruled that Flava Works was "illegally running an adult entertainment business out of a single-family home . . . and ordered that those operations cease." *See* Ex. H. Not one to comply with the law voluntarily, Mr. Bleicher sued Miami in Federal Court and in an admittedly brilliant maneuver, reframed the argument as a First Amendment issue rather than the zoning issue it was. *Id.* Flava Works also argued that it was not running an adult-oriented business out of the house and that its "business transactions" did not "take place" in the residential neighborhood, but rather in "virtual space." *Id.*

In January 2009, the Southern District ruled in its favor, "[b]ecause the public offering by Flava Works, Inc. occurs via cocodorm.com in cyberspace, and not in a particular geographic location, the City of Miami zoning ordinance cannot be applied to the 503 residence." However, in June 2010 the Eleventh Circuit reversed, holding that regardless of whether Flava Works was an adult entertainment establishment, it was a business operation, and Miami's zoning ordinances forbid operating a business in a residential zone. Mr. Bleicher did not let this set back faze him. He continued to illegally operate Flava Works in Miami for several more years. According to Mr. Bleicher, Flava Works returned to Chicago in October 2014. If this is true, he is operating in violation of the CDPH's cease and desist order still in effect. *See* Ex. F.

D. Mr. Bleicher Manufactured Evidence in Federal Court

Always itching to employ his forgery skills, Mr. Bleicher did so in, *Flava Works, Inc. v. Momient*, 11-cv-06306 (Ill. N.D. 2011). There, the Northern District of Illinois determined that Mr. Bleicher forged the defendant's signature on a contract in order to win a pending lawsuit. *See* Order attached as Exhibit I. Mr. Bleicher then had his attorney submit the forgery to the Court as evidence. *Id.* Referring to Mr. Bleicher's conduct, the Court stated, "[w]hat we have, then, is the most egregious fraud on the court that this Court has encountered in its nearly 33 years on the bench." *Id.* (emphasis added). "Fortunately courts are rarely called upon to consider fraud on-the-court conduct of the type engaged in by Flava." *Id.* (emphasis added). "What,

then, is the appropriate judicial response to such an egregious abuse of the judicial system by such a blatant fraud on the Court?" *Id.* The response was dismissal of Mr. Bleicher's action. *Id.*

E. Mr. Bleicher Evades State and Federal Income Taxes

Mr. Bleicher does not believe in giving Uncle Sam his cut. Throughout the above-described incidents, Mr. Bleicher has evaded and continues to evade State and Federal income taxes. Through falsified tax returns, Mr. Bleicher has deprived both State and Federal governments out of millions in tax revenue. For example, in 2014 Flava Works generated in excess of $423,000 in income. *See* 2014 Tax Return attached as Exhibit J. However, this income was conveniently offset by nearly $433,000 in expenses. *Id.* With gross income of about -$10,000, Flava Works did not pay any taxes for 2014. *Id.* According to its tax returns, Flava Works runs at or near a deficit every year yet somehow the company has managed to stay in business for over a decade. The IRS and State agencies eventually caught on. In April 2015, Mr. Bleicher entered into a settlement agreement with the IRS. He is currently on a payment plan with them for over $500,000 in unpaid back taxes. However, it is clear the IRS is unaware of the full extent of Mr. Bleicher's tax avoidance.

Although Mr. Bleicher was advised numerous times, by prior attorneys and I, to simply pay the judgment described below, he steadfastly refused with no apparent legal justification. This was odd since the $30,000 judgment is pocket change to his company. *See* Ex. J. I now know that Mr. Bleicher cannot satisfy the judgment because he has and is continuing to commit tax fraud as well as other Federal and State crimes. Since Mr. Bleicher professes poverty to the outside world, if he paid a $30,000 (now $40,000) judgment, it could potentially alert governmental agencies, particularly the IRS, to take a closer look at Flava Works. Mr. Bleicher believes he cannot take that risk. He knows he would not fare well in Federal prison.

F. Mr. Bleicher Fraudulently Concealed and Continues to Fraudulently Conceal Assets

In order to avoid service in the declaratory action mentioned below, Mr. Bleicher administratively dissolved Flava Works in Florida in October 2015. Additionally, in order to avoid payment of the judgment discussed below, Illinois attorney Juneitha

Shambee ("Ms. Shambee") advised Mr. Bleicher to fraudulently conceal most of Flava Work's assets by moving them into various shell corporations he also owns. Flava Works is only one of a dozen dummy corporations Mr. Bleicher uses to facilitate his crimes. These entities include, at least, Flavaworks, Flava Works Worldwide, Blactino Media, Tube Media Labs, and Lukebaby Productions. However, the difference is in name only, each including Flava Works is the alter ego of Mr. Bleicher.

## III. Flava Works, Inc. v. A4A Reseau, Inc. – a Procedural History

I was the fourth Florida attorney, and fifth attorney overall, in less than two years to be involved in Mr. Bleicher's lawsuit, *Flava Works, Inc. v. A4A Reseau, Inc.*, No. 14-cv-23208 (Fla. S.D. 2014), which is currently pending in the Southern District of Florida (the "Lawsuit"). *See* Docket attached as Exhibit K (individual docket entries will be referred to by docket number.

Ms. Jackson, the first Florida attorney Mr. Bleicher used in the Lawsuit, filed a one-count complaint for copyright infringement in February 2014. On January 16, 2015, the defendants, represented by John Bradley ("Mr. Bradley") filed an answer. *See* Doc. No. 21. Four days after the answer was filed, Mr. Bleicher instructed Ms. Jackson to file a voluntary dismissal. *See* Doc. No. 22. Mr. Bleicher falsely stated to the Court that he fired Ms. Jackson the same day. *See* Doc. No. 36. However, I was told by Mr. Bleicher that Ms. Jackson "disappeared." I believe this was likely after she encountered the same or similar issues with him as I did.

Throughout the Lawsuit, Mr. Bleicher has been assisted in his fraudulent conduct by Ms. Shambee, who was recently admitted to the Florida Bar. On January 21, 2015, Ms. Shambee committed gross malpractice by using the identical complaint to initiate a new action based on the same claims against the same defendants in Illinois, *Flava Works, Inc. v. A4A Reseau, Inc.*, 15-cv-00610 (Ill. N.D. 2015). *See* Complaints attached as Exhibit L. Ms. Shambee negligently or intentionally disregarded Federal Rule of Civil Procedure 41, which provides "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of

that previous action; and (2) may stay the proceedings until the plaintiff has complied." Fed. R. Civ. Pro. 41(d) (emphasis added). This error was compounded by Ms. Shambee's additional failure to review controlling case law in the Eleventh Circuit, which holds that attorney fees are recoverable as "costs" under Rule 41(d). Ms. Shambee's actions cost Mr. Bleicher $30,000. *See* Doc. No. 36. It is Ms. Shambee's negligence that Mr. Bleicher has attempted to pin on each of the Florida attorneys mentioned in this response and ultimately lead to his blackmail attempts and bar complaints. *See* Ex. A.

Immediately, Mr. Bradley pounced on Ms. Shambee's blunder and, pursuant to Rule 41(d), sought a stay of the newly filed Illinois action and recovery of his client's costs, including attorney fees in the Lawsuit. *See* Doc. No. 24. Mr. Bradley also filed a declaratory judgment action in the Southern District, solely for the purpose of keeping the matter in Miami. *See A4A Reseau, Inc. v. Flava Works, Inc., Phillip Bleicher*, No. 15-cv-20245 (Fla. S.D. 2015). Mr. Bradley also appeared in the Illinois lawsuit and successfully had the action transferred to Miami. Upon transfer, the matter was assigned case number 15-cv-21592. Mr. Bleicher then attempted to file a pro se motion for an extension of time to respond to Mr. Bradley's motion. *See* Doc. No. 25. On February 25, 2015, the Court struck Mr. Bleicher's filing since corporations must be represented by counsel. *See* Doc. No. 26. The Court gave Mr. Bleicher until March 4 to find replacement counsel and to respond to Mr. Bradley's motion. *Id.*

Mr. Bleicher failed to comply with the Court's order. *See* Doc. No. 27. Consequently, on March 5, 2015, the Court granted Mr. Bradley's motion as to the entitlement to attorney fees. *See* Doc. No. 28. The Court requested supporting material as to the amount to be awarded. *Id.* Mr. Bleicher's second Florida attorney was Mr. Zukowsky. Mr. Zukowsky filed a motion for Ms. Shambee to appear pro hac vice on March 6. *See* Doc. No. 34. The motion was denied because, among other reasons, Ms. Shambee did not comply with the Local Rule requiring certification that she has studied the Court's Local Rules. *See* Doc. No. 35.

Ms. Shambee or Mr. Zukowsky filed a response opposing Mr. Bradley's already granted motion for attorney fees, as well as, a motion to vacate the order itself. *See* Doc. No. 29; 33. The Court denied the motion to vacate stating:

On March 5 . . . after the Court had entered its Order Granting Defendants' Motion for Attorneys' Fees, Plaintiff filed a Motion to Vacate that Order pursuant to Rule 60(b) . . . . Rule 60(b) also contains a "catch-all" provision allowing reconsideration for "any other reason that justifies relief." Plaintiff appears to invoke this "catch-all" provision, arguing that it should be entitled to relief because: (1) it "has attempted profusely to retain an attorney," which it finally did on March 4, 2015, the day the Response was due; and (2) new counsel attempted to file a Response, but could not do so because he is not authorized to file through CM/ECF. The Court finds that Plaintiff has not satisfied the Rule 60(b) standard for relief from the Court's Order. . . . Plaintiff had a full month between the date on which Defendants filed their Motion for Attorneys' Fees . . . and the extended deadline to file a Response . . . to secure an attorney who could timely file a Response. Plaintiff's alleged inability to secure an attorney within that period that could timely file a Response does not constitute an "extraordinary circumstances" entitling it to relief.

*See* Doc. No. 36 (emphasis added) (grammatical alternations made). Mr. Bradley then filed a motion seeking $43,566.75 in fees, to which Mr. Zukowsky filed a response. *See* Doc. No. 39; 44; 45. The Court determined that the reasonable amount of attorney fees was $28,060.57 and entered a judgment for that amount against Flava Works (the "Judgment"). *See* Doc. No. 46.

Mr. Bleicher than began a series of maneuvers with the sole purpose of eluding his court ordered obligation to pay the Judgment. Mr. Bleicher's primary argument, which I later learned was patently false, was that his company was broke and no money was coming in due to the defendants' alleged ongoing copyright infringement. First, Mr. Bleicher failed to complete a judgment debtor worksheet without legal justification. This forced Mr. Bradley to file a motion to compel, which the Court granted. *See* Doc. No. 51; 58. Mr. Bradley then sought discovery to aide collection on the Judgment. *See* Doc. No. 60; 61. Among other things, Mr. Bradley sought Flava Works bank statements, which would support of refute Mr. Bleicher's claim of insolvency. Mr. Bleicher neither provided the discovery nor objected to it within the applicable time limits. This forced Mr. Bradley to file a motion to compel the discovery. *See* Doc. No. 60.

Mr. Zukowsky subsequently withdrew. *See* Doc. No. 76; 77. Mr. Bleicher's third Florida attorney was Joshua Sheskin ("Mr. Sheskin"). *See* Doc. No. 59. At Mr. Bleicher's insistence, Mr. Sheskin filed another motion seeking to vacate the order granting attorney fees. See Doc. No. 63. Although the Court ordered Mr. Bleicher to complete the worksheet by July 9, he did not do so until September 2. *See* Doc. No. 71. Mr. Sheskin withdrew on October 8, 2015. *See* Doc. No. 78. Although I originally responded to his misleading Craigslist ad in July, I was not hired by Mr. Bleicher until October 9. *See* Doc. No. 79. At the time of my appearance, Mr. Bleicher had not paid the Judgment and Mr. Bradley's discovery requests were still outstanding. The second motion to vacate the order awarding attorney fees was also pending.

Mr. Bleicher is a pathological liar and quite good at it. Prior to entering my appearance, I participated in a conference call with Mr. Bleicher and Ms. Shambee. My sole mistake in this matter was taking their false explanation of the proceedings and finger pointing as the truth. Both feed me false stories that Mr. Bradley was a "bully" who "intimated" the prior attorneys into quitting out of frustration. Both claimed Ms. Jackson, Mr. Zukowsky, and Mr. Sheskin had committed malpractice. I know what you are thinking, "three lawyers in a row committed malpractice?" Yes, Mr. Bleicher is that convincing of a liar. Mr. Bleicher was insistent that I needed to immediately file a motion to substitute myself into the case and remove Mr. Sheskin. I later came to learn that Mr. Bleicher fired Mr. Sheskin to prevent him from turning over discovery, including Flava Works' bank records, which Mr. Sheskin had received the day before. I also later came to learn that Mr. Bleicher never had any intention of complying with any of the Court's orders.

During my conversation with Mr. Bleicher and Ms. Shambee, they did not even seem cognizant of the need to provide discovery. Rather, their sole concern was having the Judgment overturned. However, I advised them that I could not argue the second motion to vacate in good faith because (1) the Court already denied an identical motion to do so (Doc. No. 33; 36); and (2) either no new grounds were being raised or the new grounds were irrelevant. I advised them the deadline to appeal the Judgment had already passed when they contacted me. However, I specifically asked why, if they believed the Judgment was incorrect and a motion to vacate had already been denied, had they not appealed to the Circuit Court. Neither provided an intelligible answer.

I also specifically asked them why the case was dismissed in Florida and then re-filed in Illinois the next day. Neither provided an intelligible answer. However, Ms. Shambee admitted that before refilling in Illinois, she failed to research the controlling case law in the Eleventh Circuit that subjected her client to the Judgment. Mr. Bleicher's selling point to his attorneys is a 25% share of any judgment. I have since come to learn that Ms. Shambee's motivation in dismissing and refilling the action in Chicago was to ensure herself a larger portion of the potential recovery by cutting out any Florida attorney.

Moments after appearing in the case, Mr. Bradley peppered me with several strongly worded emails seeking agreement on a hearing date for his pending second motion to compel. On October 19, after we could not reach agreement, the Court held a telephonic conference for the sole purpose of scheduling a hearing on Mr. Bradley's motion. *See* Doc. No. 81; 82. During the conference, the Court expressed great displeasure with Mr. Bleicher's antics and set the matter for hearing on November 20. *See* Doc. No. 83. However, the Court specifically stated to me that if Mr. Bleicher did not provide the discovery thereby obviating the need for a hearing, the Court would enter additional sanctions against Flava Works and maybe even against me personally.

Immediately following the phone conference, I informed Mr. Bleicher of the Court's statements. Therefore, Mr. Bleicher had an entire month to provide the outstanding discovery, which again consisted of bank statements, tax returns, and internal corporate documents. Mr. Bleicher maintained throughout both Mr. Sheskin's representation and mine that he was encountering great difficulty in obtaining the statements for his own bank accounts. This of course is strange since it is possible to obtain bank statements online in a matter of minutes.

As the November 20 hearing approached, I become increasingly concerned over Mr. Bleicher's "inability" to obtain copies of his own bank statements. However, in an epiphany, I thought of an obvious solution to his difficulties: subpoena the records. Therefore, I prepared subpoenas for each bank and the IRS and sent them off. *See* Subpoenas attached as Exhibit M. I thought Mr. Bleicher would be delighted by my ingenious approach. However, when he learned about the subpoenas, Mr. Bleicher

was unusually outraged. I know now he had this reaction because of his ongoing tax evasion and fraudulent concealment of assets.

In any event, my efforts were largely successful and most of the previously "unobtainable" bank records were obtained prior to the hearing. Shortly before the hearing date, Mr. Bleicher and Ms. Shambee insisted that I file a motion for protective order and that the bank records be heavily redacted and marked as "for attorney's eyes only," despite my advice that there were no grounds for doing so. As I told them, the discovery had been outstanding for months and the failure to timely object to the requests acts as a waiver of any non-privilege objections. In addition, the names of individuals on the bank statements were not "trade secrets."

On November 19, 2015, I filed a motion to withdraw for the ethical and legal reasons discussed below. *See* Doc. No. 91. The motion was denied by the Court. *See* Doc. No. 92. Thus, I was required to attend the hearing on November 20. The details of what transpired at the hearing are discussed below. At the conclusion of the hearing, the Court granted Mr. Bradley's motion and awarded him an additional $10,000 in attorney fees. Mr. Bleicher was ordered to provide the outstanding discovery by November 30 and to pay the $10,000 by December 10.

As we exited the courthouse, Mr. Bleicher thanked me and assured me that a check for my services had been placed in the mail. He further indicated that he alone would be obtaining the outstanding discovery. A few days after the hearing, Mr. Bleicher sent me an email asking if the order had been "entered" yet. As stated, the Court announced its ruling at the hearing. Although Mr. Bleicher was present at the hearing and took copious notes during it, including the deadlines, he professed confusion over the ruling and appeared angered that I had not immediately forwarded him the PDF version of the ruling announced orally at hearing. I apologized for not getting it to him but as I explained: (1) the Order was entered the day before Thanksgiving; (2) I came down with a cold on Thanksgiving and sat at the dinner table wrapped in a blanket; and (3) the PDF order did not differ in any way from the Court's oral ruling, which he had taken notes on.

Following the hearing, Mr. Bleicher failed to pay the $10,000 sanction. He also failed to timely provide the outstanding discovery. Meanwhile, I still had not received

payment despite Mr. Bleicher's claim that a check had been mailed. Finally, on December 15, after Mr. Bleicher failed to respond to my follow-up request for payment, I filed a charging lien. *See* Ex. B. This ended my involvement with this matter or so I thought until receiving Mr. Bleicher's blackmail demands. *See* Ex. A. I was baffled to learn that Mr. Bleicher was not satisfied with my work. If I did not request the statements directly from the banks myself, the November 20 hearing would have been very different. In other words, but for my unilateral efforts to obtain and provide outstanding discovery, without Mr. Bleicher's assistance and as I now know active resistance, a larger judgment would have been entered against Flava Works.

Simultaneously with Mr. Bleicher's extortion attempt, his co-conspirator Ms. Shambee requested my consent to removal from the notice list. After indicating that I would not, Ms. Shambee filed a motion to remove Ms. Jackson and myself from the docket. *See* Doc. No. 108. I filed a response in opposition. *See* Doc. No. 113. The Court granted the request to remove Ms. Jackson but denied the request to remove me from the docket. *See* Doc. No. 115. The baseless filings did not end there. Ms. Shambee filed a motion to reconsider the order denying her request to remove me from the docket. *See* Doc. No. 116. I again filed a response and the Court denied the motion. *See* Doc. No. 117; 121.

## IV. Mr. Bleicher's Complaint is Part of a Failed Attempt, Conspired with Ms. Shambee, to Extort and Blackmail Three Florida Attorneys including Myself

Finally, I will refute Mr. Bleicher's inventive but false allegations against me. I note several of the "exhibits" referenced to in Mr. Bleicher's complaint were not attached to the copy I received.

A. <u>I Never Failed to Communicate with Mr. Bleicher or his Co-Conspirator Ms. Shambee. Conversely, Mr. Bleicher's Unbearable Oversight Impairs the Professional Judgment of the Attorney's he Hires</u>

Florida Rule of Professional Conduct 4-1.4, provides "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." Fla. R. Pro. Cond. 4-1.4(a). *See also* Fla. R. Pro. Cond. 4-1.13(a) (emphasis added) ("[a] lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents."). However, "[a] lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services." Fla. R. Pro. Cond. 4-5.4(d) (emphasis added). Initially I note that Mr. Bleicher's extensive oversight of the attorneys he hires plainly violates Rule 4-5.4(d), which prohibits a non-attorney from impairing the independent professional judgment of an attorney.

Either way, Mr. Bleicher falsely alleges that I did not communicate with him during the two months I represented his seedy business. However, he does not point to a single instance in which I failed to do so. He does not because his allegations are imaginary and contrary to reality. Mr. Bleicher or Ms. Shambee was included on every significant communication I sent in this matter. It is true that Mr. Bleicher was not included on selected communications with opposing counsel or the Court, this was done because I felt it would have been improper to do so on these specific communications. However, even where Mr. Bleicher was not directly included, Ms. Shambee was. Therefore, Mr. Bleicher's claims that I failed to communicate with him are without merit.

B. <u>There was no Improper Judicial Communication, Mr. Bleicher either Misunderstands or, more likely, takes a Docket Entry out of Context</u>

Mr. Bleicher is referencing docket entry 89. However, he does so out of content. He also neglects to mention the procedures established in the Lawsuit, which state "[t]he Discovery Procedures . . . in this matter require that source materials for discovery hearings be delivered via handdelivery or through a document that is emailed to the [Magistrate's] CM/ECF mailbox . . ." *See* Doc. No. 68 (emphasis added).

On October 23, in accordance with those discovery procedures, I emailed source material for the upcoming November 20 discovery hearing to the Magistrate's email. Specifically, I sent copies of the subpoenas I propounded to rebut Mr. Bradley's assertion that we were not even attempting to provide discovery. This prompted the following docket entry from the Court:

On October 23 . . . Plaintiff's counsel emailed the Chambers' e-file inbox, copying all other counsel, stating that certain subpoenas had been issued (and attaching the subpoenas) that would obviate the need for a hearing. If, indeed, these subpoenas moot the need for a hearing . . . then opposing counsel . . . may cancel the hearing (and/or withdraw the pending discovery motion) with an official, on-the-record filing, or, if not satisfied fully, may file an amended notice of hearing that indicates certain issues (but not all) have been resolved. If Plaintiff's counsel is merely providing additional source material for the hearing, then submission of these to the e-file inbox is fine.

*See* Doc. No. 89 (emphasis added). Mr. Bleicher makes the ridiculously hilarious, and false, assertion that this "severely prejudiced us and made us look unprofessional." Mr. Bleicher was "severely prejudiced" by Ms. Shambee's malpractice and was made to look "unprofessional" by his own dilatory tactics and false testimony not by my submission of source material to the Magistrate in accordance with the discovery procedures in place. Therefore, Mr. Bleicher's allegations regarding an "improper" communication with a judge are without merit.

C. I did not Fail to Address "Other Litigation," I advised Mr. Bleicher of his Options, he did not Affirmatively Request any Action, and the Lawsuit was Stayed Until he Paid the Judgment, which he Cannot do Without Raising the IRS's Suspicion

Mr. Bleicher claims I did not take action based on his November 4, 2015 email, asserting new copyright infringements. In his email, Mr. Bleicher rants:

*Adam4Adam is up to it again. They are using more copyrighted images to promote and link to products which are not Flava Works. I want to get an injunction against them filed and also go after their web host Soft Layer. Now they are just fucking with us. In our face!*

Like all of Mr. Bleicher's slanderous assertions, this allegation is false and contradicted by evidence. To begin with, Mr. Bleicher never asked me to take specific action regarding these alleged new infringements. Additionally, Mr. Bleicher does not state what hypothetical action I should have voluntarily done. Nevertheless, although I did not respond to this particularly delightful email, I did have a specific phone conversation with Mr. Bleicher about the matter and his options. In what turned out to be more free legal services that unjustly enriched this con artist, I told him that if his allegations were true, they could constitute a separate cause of action. I told Mr. Bleicher that meant he could file a separate lawsuit seeking recovery based on these alleged new copyright infringements. However, I told him that the defendants might seek a stay if he did file a new action.

Alternatively, assuming any of Mr. Bleicher's copyright allegations have factual merit, I told him it was possibly a continuation of pre-existing copyright violations. In which case, I advised Mr. Bleicher an injunction or temporary restraining order might be available in the existing actions. However, given the fact that the he voluntarily dismissed the Lawsuit filed in Florida, the re-filed action in Illinois was stayed until he paid the Judgment, and that his dilatory tactics were wearing thin with the Court, I advised Mr. Bleicher that it would likely better to seek a remedy in a separate action. Finally, Mr. Bleicher had yet to pay me for two months' worth of work and has since balked at my "unreasonable" $500 invoice. What additional free legal work does Mr. Bleicher suggest I should have done for his porn empire? Mr. Bleicher's "models" might be indentured servants exploited for his profit but at least they get modest wages. Therefore, Mr. Bleicher's allegation that I failed to address "other litigation" is without merit.

D. Mr. Bleicher Complains but does not Cite Anything "Erroneous" in my $500 Invoice, which he has Unreasonably and Spitefully Refused to Pay

Mr. Bleicher claims that I had "concerns and reservations about attending a hearing in front of Judge Goodman." Mr. Bleicher then states my "concern and reservation" was due to the fact that he never paid me. Although it is true Mr. Bleicher did not pay me, I never said, "why should I attend when I haven't even been paid yet?" Rather, my "concerns and reservations" about attending the hearing were solely due to the fact that the Magistrate specifically stated during the October 19 telephonic

conference that he would impose sanctions against both Mr. Bleicher and myself if we did not provide the outstanding discovery. Although Mr. Bleicher had yet to pay me for my two months' worth of work, my concern, communicated to him on several occasions prior to the hearing was that I could not afford sanctions imposed against me and my reservation, also communicated to him on several occasions prior to the hearing was seeing additional sanctions imposed against him.

Mr. Bleicher calls for a forensic audit of my $500 invoice. He claims my one page invoice, requesting only $500 for two months of work, was "vague and riddled with numerous errors and untruths." However, Mr. Bleicher does not point to a single error. I did attend the November 20 hearing, which was necessitated by Mr. Bleicher's continued obstinacy and intentional failure to comply with multiple court orders. Further, Mr. Bleicher faults me for not billing in fractional hourly increments. First, Mr. Bleicher never stated this was a requirement. Second, he was only paying $25 an hour not $250. Flava Works had over $423,000 in income in 2014. *See* Ex. J. This begs the question, why would a company that generates nearly $500,000 a year actively seek young or recently admitted attorneys at $25 an hour, assuming unlike me they are actually paid, to protect its intellectual property and prosecute highly complex cases alleging copyright violations? Because Mr. Bleicher believes those attorneys are more easily manipulated and less likely to question his crimes.

Mr. Bleicher alleges "[I] submitted a false statement . . . claiming [I] was owed $1,000." Presumably, Mr. Bleicher is referring to my charging lien. *See* Ex. B. However, I did in fact perform at least $1,000 worth, probably more, of legal services for Mr. Bleicher. Mr. Bleicher was intimately involved in every aspect of the case during the entirety of my representation. He is fully aware of the work I did. Even if he was not, the work is documented. Admittedly, I did not keep extensive contemporaneous time records. In recognition of this, I was willing to reduce my fee by half as a compromise. That is why I only requested $500. Mr. Bleicher's attempt to use my kindness against me is an excellent example of his unsavory and malicious character. However, after he stiffed me on $500, despite being in the top 1% of wage earners himself, I demanded payment in full. Consequently, to ensure payment I filed a charging lien seeking $1,000. *See* Ex. B.

Mr. Bleicher commits further perjury by stating I "was asked to submit a detailed and corrected invoice." Mr. Bleicher never made any such request. Interestingly, Mr. Bleicher submits my $500 invoice as an exhibit to his slanderous complaint but does not include the alleged correspondence asking me to resubmit it. Mr. Bleicher's actual response to receipt of my invoice is another example of his propensity to falsify the truth: "our accountant will take care of it."

Finally, Mr. Bleicher's bait and switch Craigslist ad belies his frugal arguments. The ad states Flava Works would pay $25 an hour for ten to twenty hours per week. I worked two months for Mr. Bleicher's pornographic slave-ring. According to his own ad, Mr. Bleicher would have expected to pay for 100 to 200 hours of work during that time. However, my $500 reduced invoice equates to only 20 hours of work, while my $1,000 actual invoice equals 40 hours. The truth of the matter is that Mr. Bleicher thought he could take advantage of me, as he does with his "models." However, as this response demonstrates, Mr. Bleicher has seriously miscalculated the situation. Therefore, Mr. Bleicher's allegations regarding my $500 invoice are without merit.

E. I was Required or Allowed to Withdraw Representation Without Mr. Bleicher's "Knowledge" or "Permission" for Half a Dozen Reasons, including his Use of My Services to Perpetrate a Crime or Fraud

Mr. Bleicher states "unbeknownst to me and without permission," I filed a motion to withdraw. This is the only true statement contained in Mr. Bleicher's complaint. However, neither advance notice nor "permission" were required. Mr. Bleicher is not familiar with Florida Rule of Professional Conduct 4-1.16, which requires an attorney to "withdraw from the representation of a client if the representation will result in violation of the Rules of Professional Conduct or law." Fla. R. Pro. Cond. 4-1.16(a)(1). Rule 4-1.16 also permits an attorney to withdraw if:

(1) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent; (2) the client has used the lawyer's services to perpetrate a crime or fraud; (3) a client insists upon pursuing an objective that the lawyer considers repugnant or imprudent; (4) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services . . . ;

(5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client . . . .

Fla. R. Pro. Cond. 4-1.16(b)(1–6) (emphasis added). However, "[w]hen ordered to do so by a tribunal, a lawyer shall continue representation." Fla. R. Pro. Cond. 4-1.16(c).

I was ethically required to withdraw because my continued representation would have resulted in violation of the Rules of Professional Conduct and the law. Additionally, I was permitted to withdraw for several reasons. First, Mr. Bleicher persisted in a course of action involving my services that I reasonably believed was criminal and fraudulent. Second, Mr. Bleicher used my services to perpetrate a crime and fraud. Third, Mr. Bleicher insisted on pursuing an objective that I considered imprudent. Fourth, Mr. Bleicher failed substantially to fulfill his obligations to me in regards to my services. Fifth, continued representation had been rendered unreasonably difficult by Mr. Bleicher and continued representation without pay would have caused me to suffer an unreasonable financial burden. Unfortunately, the Court denied my motion to withdraw. *See* Doc. No. 92. Consequently, I was still required to attend and did attend the November 20 hearing.

Mr. Bleicher also takes issue with the substantive statements in my motion to withdraw. He actually claims my statement that he refused to follow my advice is false. He also claims I "offer[] (and cannot prove) no emails [sic] or phone communications where we refused to follow his advice . . . ." He also cites a lack of evidence to support my claim that "a conflict of interest" precluded further representation. However, at the time, I felt it would not have been proper to "offer" the above details. Once again, Mr. Bleicher attempts to use my kindness against me. Now however, I am more than happy to shed light on Mr. Bleicher's criminal and unethical behavior.

Mr. Bleicher asked me to take actions intended solely to disrupt the tribunal. *See* Fla. R. Pro. Cond. 4-3.5(c) ("A lawyer shall not engage in conduct intended to disrupt a tribunal."). Mr. Bleicher and Ms. Shambee asked me to engage in dilatory practices that would have brought "the administration of justice into disrepute" for "the purpose of frustrating an opposing party's attempt to obtain rightful redress or repose." Fla. R. Pro. Cond. 4-3.2 (emphasis added). As I explained to them,

"[r]ealizing financial or other benefit from otherwise improper delay in litigation is not a legitimate interest of the client." *Id.* (emphasis added).

Rule 4-3.3 requires candor towards tribunals and proscribes attorneys from taking many of the actions Mr. Bleicher requested or expected me to do. These included, "mak[ing] a false statement of material fact or law to a tribunal," "fail[ing] to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client," and "permit[ing] any witness . . . to offer testimony or other evidence that the lawyer knows to be false." Fla. R. Pro. Cond. 4-3.3(a)(1); (2); (4). Mr. Bleicher does not understand, "[a] lawyer may refuse to offer evidence that the lawyer reasonably believes is false." Fla. R. Pro. Cond. 4-3.3(c).

Mr. Bleicher asked me to take actions contrary to Rule 4-3.4, which requires attorneys to deal fairly with opposing counsel. To that end, "[a] lawyer shall not unlawfully obstruct another party's access to evidence or otherwise unlawfully alter, destroy, or conceal a document or other material that the lawyer knows or reasonably should know is relevant to a pending . . . proceeding; nor counsel or assist another person to do any such act." Fla. R. Pro. Cond. 4-3.4(a) (emphasis added). "A lawyer shall not fabricate evidence, counsel or assist a witness to testify falsely . . . ." Fla. R. Pro. Cond. 4-3.4(b) (emphasis added). "A lawyer shall not knowingly disobey an obligation under the rules of a tribunal . . . ." Fla. R. Pro. Cond. 4-3.4(c) (emphasis added). "A lawyer shall not intentionally fail to comply with a legally proper discovery request by an opposing party." Fla. R. Pro. Cond. 4-3.4(d) (emphasis added).

Finally, Mr. Bleicher asked me to take actions contrary to Rule 4-4.1, which requires attorneys to be truthful in statements made to others. Consequently, a lawyer shall not knowingly "make a false statement of material fact or law to a third person" or "fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client . . . ." Fla. R. Pro. Cond. 4-4.1(a); (b). Therefore, Mr. Bleicher's assault on my motion to withdraw is without merit.

F. <u>The November 20, 2015 Hearing: Mr. Bleicher Commits Perjury with Reckless Abandon</u>

Mr. Bleicher states he "was requesting to review what [I] was going to discuss with Judge Goodman and to make sure he was prepared for the hearing." The fact Mr. Bleicher admits he wanted to "review" my in-court oral arguments is in line with his obsessive oversight and interference with the professional opinion of the attorneys he hires. *See* Fla. R. Pro. Cond. 4-5.4(d). To begin with, contrary to Mr. Bleicher's assertions, he attends most if not all hearings in his cases. In any event, since I did not want to be sanctioned and (at the time) I did not want Mr. Bleicher to be sanctioned, my main goal following the October 19 telephonic hearing was to obtain the outstanding discovery, provide it as required by court order, and in doing so avoid the November 20 hearing.

Mr. Bleicher knew about the possibility of the November 20 hearing via correspondence from me on October 19. Mr. Bleicher stated to me during a conversation that he would personally attend the hearing if it went forward. I now know Mr. Bleicher never had any intention of providing discovery, so he knew since October 19 that the hearing would be taking place. Even assuming Mr. Bleicher bought a plane ticket "last minute," he does not submit anything to support it, that decision was intentional. I have since come to learn that Mr. Bleicher lives an extravagant lifestyle and routinely spends thousands of dollars on a daily basis. In addition to being false, it is absurd that this wealthy individual, who stiffed me out of $500, was in any way damaged by purchasing a plane ticket to perjure himself in Federal Court. Finally, Mr. Bleicher intentionally filed the Lawsuit in Florida. Mr. Bleicher's feigned outrage over being required to travel to Florida to prosecute a case he filed in Florida defies belief.

Mr. Bleicher's recitation of the November 20 hearing is pure fiction in its entirety. This includes the false and wildly implausible allegations regarding statements made by the Court and myself. At no point did I say I was unfamiliar with the case. Rather, I recall saying something to effect that "I did not know what I was getting into." As stated, the "what" I was referring to was a client that not only would refuse to follow my advice but also seek to use my services to perpetuate a crime and fraud. At no point was I "chastised" by the Magistrate, nor did he ever state my "actions border on malpractice." I also urge you to obtain the transcript.

Of the multitude of blatantly false, defamatory, and imaginary allegations spewed by this hateful man, Mr. Bleicher's claim that I "was ill-prepared" for the hearing might bother me the most. Preparedness was not the problem; rather there was no valid legal reason for not providing the discovery, consisting largely of bank statements and internal company documents, which had been outstanding for several months by the date of the hearing. *See* Fla. R. Pro. Cond. 4-3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous . . . .") (emphasis added). Again, Mr. Bleicher was told this multiple times in advance of the hearing.

Mr. Bleicher did do a lot of speaking at the hearing. However, he did so on his own volition and because he fancies himself an attorney. I believe hijacking the hearing was Mr. Bleicher's intention all along. If I had known this in advance, I would have told him not to offer false testimony. Quite frankly, if I had known in advance that he intended to steal the microphone,"Kanye West" me, and perjure himself in open court, I would not have driven down to Miami and wasted half a day for a fraudulent shyster like Mr. Bleicher. I again note that the Court stated in advance that sanctions would be imposed against both Mr. Bleicher and I as counsel if it ruled in Mr. Bradley's favor. At the conclusion of the hearing, the Court followed through and once again sanctioned Mr. Bleicher. *See* Doc. No. 94. Interestingly, the Court did not sanction me. *Id.*

G. <u>Mr. Bleicher has Confused My Certificates of Service with his Tax Returns but Unlike his Falsified Returns, my Certificates hold up to an Audit</u>

For someone who has cheated the IRS out of millions of dollars in taxes, tricked schools out of millions of dollars in funds, infected dozens of people with HIV, and fabricated evidence in Federal Court, Mr. Bleicher is surprisingly liberal with his use of the word "fraud" and referring to things as "false." Federal Rule of Civil Procedure 5(a)(1)(d) provides that "a written motion," "must be served on every party." Rule 5(b)(1) provides in turn, "[i]f a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party." Rule 5(b)(2) states "[a] paper is served under this rule by . . . sending it by electronic means if the person consented in writing . . . ." Finally, anyone

registered with a CM/ECF account must consent in writing to service by electronic transmission.

First, the Court did not order service be made on Mr. Bleicher directly. Second, Mr. Bleicher has been repeatedly made aware by several courts in different states that a corporation must be represented by counsel. Third, Mr. Bradley represents the defendants. Fourth, Mr. Bradley is registered with a CM/ECF account thereby consenting to electronic service. Consequently, the only individual entitled to notice in the Lawsuit at the time of any of my filings was Mr. Bradley. Moreover, service was allowed, and made, by electronic means. Finally, even if we assumed Mr. Bleicher were correct, which the above conclusively demonstrates is not the case, he neither alleges nor has he suffered any prejudice by the alleged failure to serve him with copies of pleadings. Therefore, Mr. Bleicher's attack against the validity of my certificate of services is without merit.

H. Mr. Bleicher Mistakenly Believes that a Prior Counsel's Continued Inclusion on a Service List Triggers an "Obligation to Notify the Bar of Ethical Issues with Other Attorneys"

Florida Rule of Professional Conduct 4-8.3 states, "[a] lawyer having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the appropriate professional authority." Fla. R. Pro. Cond. 4-8.3(a). Contrary to Mr. Bleicher's delusions otherwise, other than Ms. Shambee, no Florida attorney involved in the Lawsuit did anything to justify such action.

For a man who habitually avoids his obligations and then blames others for the consequences that result, Mr. Bleicher is obsessed with the supposed "obligations" of others. Mr. Bleicher's final perjurious allegation is that I failed my "obligation to notify the bar of ethical issues with other attorneys." What is the supposed "ethical issues with other attorneys" Mr. Bleicher speaks of? Ms. Jackson's "failure" to remove herself from the Lawsuit's service list after being "fired." In other words, Mr. Bleicher is upset that Ms. Jackson continued to receive electronic notifications regarding court filings after representation was terminated. Once again, Mr. Bleicher

neither alleges nor has he suffered any prejudice by Ms. Jackson's continued receipt of electronic service. However, more importantly, Ms. Jackson's continued receipt of filings is not an ethical violation. Therefore, Mr. Bleicher's allegations that I did not notify the Bar of "ethical issues" with other attorneys is without merit.

In conclusion, it should be abundantly clear that Mr. Bleicher is either (1) lying under oath or (2) delusional. I respectfully submit that given his well-documented history of fraud, deceit, and deception, the former is the correct proposition. Like me, you are probably wondering why Mr. Bleicher is not currently in a Federal penitentiary. I hope that one of the agencies included in this correspondence can correct that. In full disclosure, since he forced me to do the necessary investigation and compile the facts and evidence needed to do so, once these slanderous allegations are dispatched with, I will be filing suit against Mr. Bleicher and Ms. Shambee. Regardless, please do not hesitate to contact me with other questions concerning this matter. Thank you for your attention.

Sincerely,

*s/ Michael Gulisano*

Michael Gulisano, Esquire

enc.

cc: Flava Works, Inc. c/o Philip Bleicher, Juneitha Shambee
John Francis Bradley, Esquire
Ursula Jackson, Esquire
Matthew Zukowsky, Esquire
Joshua Sheskin, Esquire
Chicago Department of Public Health (under separate cover)
Rahm Emanuel, Major of Chicago (under separate cover)
Miami Department of Code Enforcement (under separate cover)
Tomas Regalado, Major of Miami (under separate cover)
Federal Bureau of Investigations (under separate cover)
Internal Revenue Service (under separate cover)

D.L. Campbell, Revenue Officer, Internal Revenue Service (under separate cover)
United States Department of Justice (under separate cover)
Loretta Lynch, United States Attorney General (under separate cover)
Lisa Madigan, Illinois Attorney General (under separate cover)
Pamela Bondi, Florida Attorney General (under separate cover)
Jamie Alistair Gonzalez, JAGGED Press (under separate cover)
Miami Herald (under separate cover)
Chicago Sun-Times (under separate cover)

## 2024 Update

In 2024, eight years after my run-in with conman Mr. Bleicher, he attempted to file another bar complaint against me. This time on the basis that the above article, substantiated by citation to numerous supporting authorities, "defames" him! Luckily, Mr. Bleicher's complaint was once again dismissed.

I have received dozens of phone calls and emails from Mr. Bleicher's victims since posting this article back in 2016. However, if you are one of Mr. Bleicher's countless victims, I respectfully request that you not contact me. This article states everything I know and I am not willing to discuss issues with Mr. Bleicher.

For anyone being subjected to Mr. Bleicher's harassment as of June 2024, he allegedly can be directly contacted by mail at: [redacted] by phone at: [redacted]; and by email at: [redacted]

Gulisano / / Legal News, Miscellaneous

Gulisano Law, PLLC / Privacy Policy / Copyright © 2026. All Rights Reserved.

# EXHIBIT B

## Pre-Doxing Capture of the Article — May 20, 2024

*Bleicher v. Gulisano*

*Cited at Complaint ¶ 55*

### Contents


| | |
|---|---|
| **Part 1** | **Wayback Machine capture of the Article dated May 20, 2024**<br>Source: web.archive.org capture of https://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/ taken May 20, 2024 — the same date Plaintiff filed Florida Bar disciplinary complaint RFA No. 24-12445. This capture establishes that, as of May 20, 2024, the Article did not yet contain the “2024 Update” block publishing Plaintiff’s home address, unlisted cellular telephone number, and personal email address. It is offered to fix the timeline of the Doxing Block. |

# Phillip Bleicher – Criminial, Conman, and Liar

Gulisano

## Phillip Bleicher – A Man Who Stole $3 Million from Public Schools, Intentionally Exposes Employees to Aids, Operates Brothels in Residential Homes, Fabricates Evidence in Court, and Evades Taxes

In November 2015, I responded to a Craigslist ad from a company looking for an attorney to assist in its litigation for alleged infringements of its intellectual property. The ad was posted by the world-class scumbag and career-criminal Phillip Bleicher. For about one month, I worked on one of Mr. Bleicher's numerous frivolous lawsuits, in which he extorts money out of innocent parties by threatening excessive litigation. After I had already done the work, Mr. Bleicher *refused to pay me the $500 I billed him* (a ridiculously small amount for a month's worth of work). In addition to refusing to pay me anything, it became clear to me that Mr. Bleicher was using my services, and the services of other attorneys via Craigslist, to assist in his ongoing criminal activities. Consequently, I terminated my representation of Mr. Bleicher.

That is when shit got real. Mr. Bleicher attempted to blackmail me, demanding several thousand dollars otherwise he threatened file a bogus bar complaint against me, as well as, defame my name on the internet with slanderous and false allegations.

I made the following counter-offer to Mr. Bleicher: "go fuck yourself and pay me for the work I did." Mr. Bleicher then filed a bar complaint against me. The complaint was dismissed after I submitted the following response to the

Case: 1:26-cv-06287 Document #: 1-1 Filed: 05/28/26 Page 32 of 123 PageID #:62


Florida Bar with copies to several news organizations and government agencies.

How Mr. Bleicher is not in prison is mind-boggling. The public must be made aware of this man and in order to do so, I reproduce my response here verbatim with links to the exhibits supporting my claims against this monster:

## Response to Mr. Bleicher's False Complaint and Revelation of His Transgressions

March 17, 2016

Maura Canter, Esquire
The Florida Bar
Attorney Consumer Assistance Program
651 East Jefferson Street
Tallahassee, FL 32399-2300

Re: *Florida Bar File No. 2016-50,697(17E)*
*Response to Phillip Bleicher's False and Slanderous Allegations and Open Letter to Governmental Agencies Regarding Mr. Bleicher's Ongoing Illegal Activities*

Dear Ms. Canter:

I was overwhelmed with sadness to learn that the Florida Bar would entertain the obviously false and slanderous allegations made by Phillip Bleicher ("Mr. Bleicher"). In actuality, the defamatory "complaint" brought by Mr. Bleicher is the culmination of his failed attempt to blackmail and fraudulently extort three Florida attorneys, including myself. *See* Bleicher's Blackmail attached as Exhibit A. Mr. Bleicher's attempted blackmail included a copy of the instant complaint, a "press release" in which Mr. Bleicher makes libelous

statements about me, and a hastily put together and facially dismissible proposed "malpractice" complaint. *Id.* These documents were accompanied with a letter, which unlawfully demanded $10,000 hush money in exchange for not filing the frivolous Bar complaint and "malpractice" lawsuit. *Id.* Mr. Bleicher made identical blackmail attempts against fellow Florida attorneys Ursula Jackson ("Ms. Jackson") and Matthew Zukowsky ("Mr. Zukowsky"). *Id.*

Mr. Bleicher's real issue with me is that I did what I was ethically and legally required to do rather than the unethical and illegal actions he wanted me to take to assist in his ongoing crimes and fraud. Additionally, Mr. Bleicher is motived by revenge. After he refused to pay me $500 for my two months' of work, I filed a charging lien on his case. *See* Charging Lien attached as Exhibit B. Before quickly dispatching with his ridiculous character assassination attempt, it is important that the Bar consider the background to this matter, which Mr. Bleicher conveniently omits from his perjurious statements. Before doing so, I address the disclosure of confidential information that I must make to clear my good name.

## I. Mr. Bleicher's Actions Require or Allow Disclosure of Confidential Information

Florida Rule of Professional Conduct 4-1.6 provides that "[a] lawyer shall not reveal information relating to representation of a client except as stated . . . ." Fla. R. Pro. Cond. 4-1.6(a). However, "[a] lawyer shall reveal such information . . . necessary to prevent a client from committing a crime." *Id.* at (b)(1) (emphasis added). Additionally, "[a] lawyer may reveal such information . . . necessary to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and client; to respond to allegations in any proceeding concerning the lawyer's representation of the client; or to comply with the Rules of Professional Conduct." *Id.* at (c)(2); (4); (5)

(emphasis added).

Alas, in addressing Mr. Bleicher's outrageously slanderous filth, I have no choice but to dismantle his revenge fantasy with truth, logic, and the disclosure of his multitude of ongoing criminal activities. Considering he is swindling the IRS, committing perjury in Federal Court, and violating numerous State and Federal laws, it is quite odd Mr. Bleicher would want to make this a matter of public record. Nevertheless, the disclosures that follow are permissible under the above-cited rules.

## II. Open Letter to Governmental Agencies Concerning Mr. Bleicher's Illegal Activities

Before I vindicate myself, I must advise you of the character of the man who has levied these false claims against me. Mr. Bleicher is a snake oil peddling conman. In the words of one of his many outspoken critics, "Bleicher and his company are also well-known for frivolous lawsuits against detractors or, against those who amplify outside findings and facts, and using underhanded moves, abusing the law . . . ." *See* Gonzalez, Jagged Press attached as Exhibit C (emphasis added). Although his falsified tax returns fooled the IRS otherwise for several years, Mr. Bleicher makes a very comfortable living in the production and distribution of homosexual pornography through his various companies.

Mr. Bleicher is the CEO of Flava Works, Inc. ("Flava Works"). Flava Works is a Florida and Illinois corporation, which produces homosexual pornography featuring African-American and Hispanic men. Flava Works produces a quarterly magazine, FlavaMen, which showcases its models and contains editorials from contributing writers. *See* FlavaMen attached as Exhibit D. Flava Works also operates several websites offering pornographic images and videos, including Cocodorm.com, PapiCock.com, ThugBoy.com,

CocoBoyz.com, RawRods.com, MixItUpBoy.com, TopThugs.com, FlavaCams.com, and FlavaMen.com. Thugsforsex.com is Flava Work's online dating portal for men of color. However, most of the controversy surrounding Flava Works has to do with Cocodorm, a live interactive residence where models are hired to live together in a dorm-like environment.

A. Mr. Bleicher Intentionally Exposes Unwitting Performers to HIV and Exploits Minorities – or as the Chicago Department of Public Health calls it – Borderline "Illegal Servitude"

Mr. Bleicher forbids performers from using condoms. He also does not believe in testing his performers for HIV or informing performers that co-performers are HIV positive before "performances." In November 2005, the Chicago Department of Public Health (the "CDPH") received reports of the transmission of HIV occurring in a resident of a Chicago apartment reported as a non-adherent carrier. The CDPH's investigation revealed the interworking of Mr. Bleicher's operations. *See* CDPH, Investigation of a Cluster of Syphilis and HIV Infections associated with an Internet Pornography Website attached as Exhibit E.

As the CDPH found, Mr. Bleicher's internet-based pornography business featured young Black and Latino men. *See* Ex. E. These men were employed as "models" and lived together at a residential apartment, which was referred to as a "dormitory." *Id.* In exchange for room, board, and modest wages, the "models" allowed Mr. Bleicher to videotape and photograph them having sex with each other in the "dormitory." *Id.* Mr. Bleicher's website featured free previews, members only services, photos, live webcams, live video chat, streaming video, stories, and web logs. *Id.* The website also sold porno magazines, calendars, and DVDs. *Id.* Additionally the website broadcast live daily sex acts. *Id.* Mr. Bleicher also doubled as a pimp, using his "models" in a private male escort service. *Id.* The CDPH identified

nineteen "models" from Mr. Bleicher's business. *See* Ex. E. All were African-American. *Id.* Nine of the "models" (47%) had HIV. Id. Another nine of the "models" (47%) had syphilis. *Id.* Three of the "models" had both HIV and syphilis. *Id.*

Unfortunately, the CDPH's investigation was hampered by Mr. Bleicher's interference. *Id.* He forbid employees and "models" from speaking with the CDPH. *Id.* He was also non-responsive to CDPH's requests to work with them to jointly develop a corrective action plan. *Id.* This prompted the issuance of a Notice of City Inspection to assess Mr. Bleicher's brothel for compliance with health, safety, business, and licensing codes. *Id.* Additional concern was raised over Mr. Bleicher's apparent exploitation of his "models," and the nature of their work. *Id.* The CDPH's claimed that Mr. Bleicher's company was practicing what bordered on "illegal servitude." *Id.* "[P]rominent African-American leaders have also been critical of Bleicher, who is white, for what they call the exploitation of young black and Latino men." *See* Ex. C. "Most of them are reportedly at-risk youths, runaways, homeless and easily manipulated." *Id.* On April 20, 2006, the CDPH issued a cease and desist order prohibiting Flava Works from operating in Chicago. *See* Cease and Desist Order attached as Exhibit F.

B. Mr. Bleicher's Fraudulent Charity Stole more than $3 Million from Schools Nationwide

In January 2006, the Illinois Attorney General filed a civil suit against Mr. Bleicher charging him with operating a fraudulent charity that bilked schools nationwide out of millions of dollars. *See* Fraudulent Charity Allegedly Collected More Than $3 Million; Used Proceeds to Make Purchases for International Travel and at a Liposuction Clinic attached as Exhibit G. Mr. Bleicher was the founder of the now-defunct charity, Student Leadership Network (the "Network"), which was promoted as offering conferences and

leadership programs for student council members. *Id.* Through the Network, Mr. Bleicher contacted schools across the Country and persuaded some to sign up for the program. *Id.*

Mr. Bleicher then sent fraudulent invoices to the schools and, in addition to cashing those checks, created forged copies of the checks to withdraw additional funds from the schools' bank accounts. *See* Ex. G. Mr. Bleicher successfully cashed many of the checks before the schools and banks realized what happened. *Id.* Mr. Bleicher and his co-conspirators collected more than $3 million dollars for goods and services that they never delivered. *Id.* The civil suit against Mr. Bleicher was later dropped when officials decided to pursue Federal criminal charges instead. *Id.*

C. Fun in the Sun: Mr. Bleicher Flees to Miami

In May 2006, Mr. Bleicher fled to Miami to avoid the civil and criminal repercussions of the above-referenced matters. Once in Miami, Mr. Bleicher resumed operations and launched a new homosexual brothel based out of a residential home. According to the Miami Herald, "CocoDorm offers its young, muscular males $1,200 a month along with free room and board while requiring they masturbate and have group sex in front of cameras." *See* Miami Herald Articles attached as Exhibit H. The City began receiving complaints from the brothel's neighboring residents, mostly families with young children. *Id.* In May 2007, the Miami Department of Code Enforcement visited the residence and imposed citations for: (1) illegal rooming house; (2) adult entertainment not permitted in C-1 zone property; (3) failure to maintain exterior of property; (4) failure to maintain lot in safe, clean condition and prevent the accumulation of debris, trash or dense growth of grass; and (5) illegally operating a business in a residential zone. *Id.* (emphasis added).

Miami eventually ruled that Flava Works was "illegally running an adult entertainment business out of a single-family home . . . and ordered that those operations cease." *See* Ex. H. Not one to comply with the law voluntarily, Mr. Bleicher sued Miami in Federal Court and in an admittedly brilliant maneuver, reframed the argument as a First Amendment issue rather than the zoning issue it was. *Id.* Flava Works also argued that it was not running an adult-oriented business out of the house and that its "business transactions" did not "take place" in the residential neighborhood, but rather in "virtual space." *Id.*

In January 2009, the Southern District ruled in its favor, "[b]ecause the public offering by Flava Works, Inc. occurs via cocodorm.com in cyberspace, and not in a particular geographic location, the City of Miami zoning ordinance cannot be applied to the 503 residence." However, in June 2010 the Eleventh Circuit reversed, holding that regardless of whether Flava Works was an adult entertainment establishment, it was a business operation, and Miami's zoning ordinances forbid operating a business in a residential zone. Mr. Bleicher did not let this set back faze him. He continued to illegally operate Flava Works in Miami for several more years. According to Mr. Bleicher, Flava Works returned to Chicago in October 2014. If this is true, he is operating in violation of the CDPH's cease and desist order still in effect. *See* Ex. F.

D. Mr. Bleicher Manufactured Evidence in Federal Court

Always itching to employ his forgery skills, Mr. Bleicher did so in, *Flava Works, Inc. v. Momient*, 11-cv-06306 (Ill. N.D. 2011). There, the Northern District of Illinois determined that Mr. Bleicher forged the defendant's signature on a contract in order to win a pending lawsuit. *See* Order attached as Exhibit I. Mr. Bleicher then had his attorney submit the forgery to the Court as evidence. *Id.* Referring to Mr. Bleicher's conduct, the Court stated,

"[w]hat we have, then, is the most egregious fraud on the court that this Court has encountered in its nearly 33 years on the bench." *Id.* (emphasis added). "Fortunately courts are rarely called upon to consider fraud on-the-court conduct of the type engaged in by Flava." *Id.* (emphasis added). "What, then, is the appropriate judicial response to such an egregious abuse of the judicial system by such a blatant fraud on the Court?" *Id.* The response was dismissal of Mr. Bleicher's action. *Id.*

E. Mr. Bleicher Evades State and Federal Income Taxes

Mr. Bleicher does not believe in giving Uncle Sam his cut. Throughout the above-described incidents, Mr. Bleicher has evaded and continues to evade State and Federal income taxes. Through falsified tax returns, Mr. Bleicher has deprived both State and Federal governments out of millions in tax revenue. For example, in 2014 Flava Works generated in excess of $423,000 in income. *See* 2014 Tax Return attached as Exhibit J. However, this income was conveniently offset by nearly $433,000 in expenses. *Id.* With gross income of about -$10,000, Flava Works did not pay any taxes for 2014. *Id.* According to its tax returns, Flava Works runs at or near a deficit every year yet somehow the company has managed to stay in business for over a decade. The IRS and State agencies eventually caught on. In April 2015, Mr. Bleicher entered into a settlement agreement with the IRS. He is currently on a payment plan with them for over $500,000 in unpaid back taxes. However, it is clear the IRS is unaware of the full extent of Mr. Bleicher's tax avoidance.

Although Mr. Bleicher was advised numerous times, by prior attorneys and I, to simply pay the judgment described below, he steadfastly refused with no apparent legal justification. This was odd since the $30,000 judgment is pocket change to his company. *See* Ex. J. I now know that Mr. Bleicher cannot satisfy the judgment because he has and is continuing to commit tax fraud as well as other Federal and State crimes. Since Mr. Bleicher professes

poverty to the outside world, if he paid a $30,000 (now $40,000) judgment, it could potentially alert governmental agencies, particularly the IRS, to take a closer look at Flava Works. Mr. Bleicher believes he cannot take that risk. He knows he would not fare well in Federal prison.

F. Mr. Bleicher Fraudulently Concealed and Continues to Fraudulently Conceal Assets

In order to avoid service in the declaratory action mentioned below, Mr. Bleicher administratively dissolved Flava Works in Florida in October 2015. Additionally, in order to avoid payment of the judgment discussed below, Illinois attorney Juneitha Shambee ("Ms. Shambee") advised Mr. Bleicher to fraudulently conceal most of Flava Work's assets by moving them into various shell corporations he also owns. Flava Works is only one of a dozen dummy corporations Mr. Bleicher uses to facilitate his crimes. These entities include, at least, Flavaworks, Flava Works Worldwide, Blactino Media, Tube Media Labs, and Lukebaby Productions. However, the difference is in name only, each including Flava Works is the alter ego of Mr. Bleicher.

## III. Flava Works, Inc. v. A4A Reseau, Inc. – a Procedural History

I was the fourth Florida attorney, and fifth attorney overall, in less than two years to be involved in Mr. Bleicher's lawsuit, *Flava Works, Inc. v. A4A Reseau, Inc.*, No. 14-cv-23208 (Fla. S.D. 2014), which is currently pending in the Southern District of Florida (the "Lawsuit"). *See* Docket attached as Exhibit K (individual docket entries will be referred to by docket number.

Ms. Jackson, the first Florida attorney Mr. Bleicher used in the Lawsuit, filed a one-count complaint for copyright infringement in February 2014. On January 16, 2015, the defendants, represented by John Bradley ("Mr.

Bradley") filed an answer. *See* Doc. No. 21. Four days after the answer was filed, Mr. Bleicher instructed Ms. Jackson to file a voluntary dismissal. *See* Doc. No. 22. Mr. Bleicher falsely stated to the Court that he fired Ms. Jackson the same day. *See* Doc. No. 36. However, I was told by Mr. Bleicher that Ms. Jackson "disappeared." I believe this was likely after she encountered the same or similar issues with him as I did.

Throughout the Lawsuit, Mr. Bleicher has been assisted in his fraudulent conduct by Ms. Shambee, who was recently admitted to the Florida Bar. On January 21, 2015, Ms. Shambee committed gross malpractice by using the identical complaint to initiate a new action based on the same claims against the same defendants in Illinois, *Flava Works, Inc. v. A4A Reseau, Inc.*, 15-cv-00610 (Ill. N.D. 2015). *See* Complaints attached as Exhibit L. Ms. Shambee negligently or intentionally disregarded Federal Rule of Civil Procedure 41, which provides "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied." Fed. R. Civ. Pro. 41(d) (emphasis added). This error was compounded by Ms. Shambee's additional failure to review controlling case law in the Eleventh Circuit, which holds that attorney fees are recoverable as "costs" under Rule 41(d). Ms. Shambee's actions cost Mr. Bleicher $30,000. *See* Doc. No. 36. It is Ms. Shambee's negligence that Mr. Bleicher has attempted to pin on each of the Florida attorneys mentioned in this response and ultimately lead to his blackmail attempts and bar complaints. *See* Ex. A.

Immediately, Mr. Bradley pounced on Ms. Shambee's blunder and, pursuant to Rule 41(d), sought a stay of the newly filed Illinois action and recovery of his client's costs, including attorney fees in the Lawsuit. *See* Doc. No. 24. Mr. Bradley also filed a declaratory judgment action in the Southern District, solely for the purpose of keeping the matter in Miami. *See A4A Reseau, Inc.*

Case: 1:26-cv-06287 Document #: 1-1 Filed: 05/28/26 Page 42 of 123 PageID #:72

*v. Flava Works, Inc., Phillip Bleicher*, No. 15-cv-20245 (Fla. S.D. 2015). Mr. Bradley also appeared in the Illinois lawsuit and successfully had the action transferred to Miami. Upon transfer, the matter was assigned case number 15-cv-21592. Mr. Bleicher then attempted to file a pro se motion for an extension of time to respond to Mr. Bradley's motion. *See* Doc. No. 25. On February 25, 2015, the Court struck Mr. Bleicher's filing since corporations must be represented by counsel. *See* Doc. No. 26. The Court gave Mr. Bleicher until March 4 to find replacement counsel and to respond to Mr. Bradley's motion. *Id.*

Mr. Bleicher failed to comply with the Court's order. *See* Doc. No. 27. Consequently, on March 5, 2015, the Court granted Mr. Bradley's motion as to the entitlement to attorney fees. *See* Doc. No. 28. The Court requested supporting material as to the amount to be awarded. *Id.* Mr. Bleicher's second Florida attorney was Mr. Zukowsky. Mr. Zukowsky filed a motion for Ms. Shambee to appear pro hac vice on March 6. *See* Doc. No. 34. The motion was denied because, among other reasons, Ms. Shambee did not comply with the Local Rule requiring certification that she has studied the Court's Local Rules. *See* Doc. No. 35.

Ms. Shambee or Mr. Zukowsky filed a response opposing Mr. Bradley's already granted motion for attorney fees, as well as, a motion to vacate the order itself. *See* Doc. No. 29; 33. The Court denied the motion to vacate stating:

On March 5 . . . after the Court had entered its Order Granting Defendants' Motion for Attorneys' Fees, Plaintiff filed a Motion to Vacate that Order pursuant to Rule 60(b) . . . . Rule 60(b) also contains a "catch–all" provision allowing reconsideration for "any other reason that justifies relief." Plaintiff appears to invoke this "catch–all" provision, arguing that it should be entitled to relief because: (1) it "has attempted profusely to retain an attorney," which

it finally did on March 4, 2015, the day the Response was due; and (2) new counsel attempted to file a Response, but could not do so because he is not authorized to file through CM/ECF. The Court finds that Plaintiff has not satisfied the Rule 60(b) standard for relief from the Court's Order. . . . Plaintiff had a full month between the date on which Defendants filed their Motion for Attorneys' Fees . . . and the extended deadline to file a Response . . . to secure an attorney who could timely file a Response. Plaintiff's alleged inability to secure an attorney within that period that could timely file a Response does not constitute an "extraordinary circumstances" entitling it to relief.

*See* Doc. No. 36 (emphasis added) (grammatical alternations made). Mr. Bradley then filed a motion seeking $43,566.75 in fees, to which Mr. Zukowsky filed a response. *See* Doc. No. 39; 44; 45. The Court determined that the reasonable amount of attorney fees was $28,060.57 and entered a judgment for that amount against Flava Works (the "Judgment"). *See* Doc. No. 46.

Mr. Bleicher than began a series of maneuvers with the sole purpose of eluding his court ordered obligation to pay the Judgment. Mr. Bleicher's primary argument, which I later learned was patently false, was that his company was broke and no money was coming in due to the defendants' alleged ongoing copyright infringement. First, Mr. Bleicher failed to complete a judgment debtor worksheet without legal justification. This forced Mr. Bradley to file a motion to compel, which the Court granted. *See* Doc. No. 51; 58. Mr. Bradley then sought discovery to aide collection on the Judgment. *See* Doc. No. 60; 61. Among other things, Mr. Bradley sought Flava Works bank statements, which would support of refute Mr. Bleicher's claim of insolvency. Mr. Bleicher neither provided the discovery nor objected to it within the applicable time limits. This forced Mr. Bradley to file a motion to compel the discovery. *See* Doc. No. 60.

Mr. Zukowsky subsequently withdrew. *See* Doc. No. 76; 77. Mr. Bleicher's third Florida attorney was Joshua Sheskin ("Mr. Sheskin"). *See* Doc. No. 59. At Mr. Bleicher's insistence, Mr. Sheskin filed another motion seeking to vacate the order granting attorney fees. See Doc. No. 63. Although the Court ordered Mr. Bleicher to complete the worksheet by July 9, he did not do so until September 2. *See* Doc. No. 71. Mr. Sheskin withdrew on October 8, 2015. *See* Doc. No. 78. Although I originally responded to his misleading Craigslist ad in July, I was not hired by Mr. Bleicher until October 9. *See* Doc. No. 79. At the time of my appearance, Mr. Bleicher had not paid the Judgment and Mr. Bradley's discovery requests were still outstanding. The second motion to vacate the order awarding attorney fees was also pending.

Mr. Bleicher is a pathological liar and quite good at it. Prior to entering my appearance, I participated in a conference call with Mr. Bleicher and Ms. Shambee. My sole mistake in this matter was taking their false explanation of the proceedings and finger pointing as the truth. Both feed me false stories that Mr. Bradley was a "bully" who "intimated" the prior attorneys into quitting out of frustration. Both claimed Ms. Jackson, Mr. Zukowsky, and Mr. Sheskin had committed malpractice. I know what you are thinking, "three lawyers in a row committed malpractice?" Yes, Mr. Bleicher is that convincing of a liar. Mr. Bleicher was insistent that I needed to immediately file a motion to substitute myself into the case and remove Mr. Sheskin. I later came to learn that Mr. Bleicher fired Mr. Sheskin to prevent him from turning over discovery, including Flava Works' bank records, which Mr. Sheskin had received the day before. I also later came to learn that Mr. Bleicher never had any intention of complying with any of the Court's orders.

During my conversation with Mr. Bleicher and Ms. Shambee, they did not even seem cognizant of the need to provide discovery. Rather, their sole concern was having the Judgment overturned. However, I advised them that I could not argue the second motion to vacate in good faith because (1) the

Court already denied an identical motion to do so (Doc. No. 33; 36); and (2) either no new grounds were being raised or the new grounds were irrelevant. I advised them the deadline to appeal the Judgment had already passed when they contacted me. However, I specifically asked why, if they believed the Judgment was incorrect and a motion to vacate had already been denied, had they not appealed to the Circuit Court. Neither provided an intelligible answer.

I also specifically asked them why the case was dismissed in Florida and then re-filed in Illinois the next day. Neither provided an intelligible answer. However, Ms. Shambee admitted that before refilling in Illinois, she failed to research the controlling case law in the Eleventh Circuit that subjected her client to the Judgment. Mr. Bleicher's selling point to his attorneys is a 25% share of any judgment. I have since come to learn that Ms. Shambee's motivation in dismissing and refilling the action in Chicago was to ensure herself a larger portion of the potential recovery by cutting out any Florida attorney.

Moments after appearing in the case, Mr. Bradley peppered me with several strongly worded emails seeking agreement on a hearing date for his pending second motion to compel. On October 19, after we could not reach agreement, the Court held a telephonic conference for the sole purpose of scheduling a hearing on Mr. Bradley's motion. *See* Doc. No. 81; 82. During the conference, the Court expressed great displeasure with Mr. Bleicher's antics and set the matter for hearing on November 20. *See* Doc. No. 83. However, the Court specifically stated to me that if Mr. Bleicher did not provide the discovery thereby obviating the need for a hearing, the Court would enter additional sanctions against Flava Works and maybe even against me personally.

Immediately following the phone conference, I informed Mr. Bleicher of the

Court's statements. Therefore, Mr. Bleicher had an entire month to provide the outstanding discovery, which again consisted of bank statements, tax returns, and internal corporate documents. Mr. Bleicher maintained throughout both Mr. Sheskin's representation and mine that he was encountering great difficulty in obtaining the statements for his own bank accounts. This of course is strange since it is possible to obtain bank statements online in a matter of minutes.

As the November 20 hearing approached, I become increasingly concerned over Mr. Bleicher's "inability" to obtain copies of his own bank statements. However, in an epiphany, I thought of an obvious solution to his difficulties: subpoena the records. Therefore, I prepared subpoenas for each bank and the IRS and sent them off. *See* Subpoenas attached as Exhibit M. I thought Mr. Bleicher would be delighted by my ingenious approach. However, when he learned about the subpoenas, Mr. Bleicher was unusually outraged. I know now he had this reaction because of his ongoing tax evasion and fraudulent concealment of assets.

In any event, my efforts were largely successful and most of the previously "unobtainable" bank records were obtained prior to the hearing. Shortly before the hearing date, Mr. Bleicher and Ms. Shambee insisted that I file a motion for protective order and that the bank records be heavily redacted and marked as "for attorney's eyes only," despite my advice that there were no grounds for doing so. As I told them, the discovery had been outstanding for months and the failure to timely object to the requests acts as a waiver of any non-privilege objections. In addition, the names of individuals on the bank statements were not "trade secrets."

On November 19, 2015, I filed a motion to withdraw for the ethical and legal reasons discussed below. *See* Doc. No. 91. The motion was denied by the Court. *See* Doc. No. 92. Thus, I was required to attend the hearing on

November 20. The details of what transpired at the hearing are discussed below. At the conclusion of the hearing, the Court granted Mr. Bradley's motion and awarded him an additional $10,000 in attorney fees. Mr. Bleicher was ordered to provide the outstanding discovery by November 30 and to pay the $10,000 by December 10.

As we exited the courthouse, Mr. Bleicher thanked me and assured me that a check for my services had been placed in the mail. He further indicated that he alone would be obtaining the outstanding discovery. A few days after the hearing, Mr. Bleicher sent me an email asking if the order had been "entered" yet. As stated, the Court announced its ruling at the hearing. Although Mr. Bleicher was present at the hearing and took copious notes during it, including the deadlines, he professed confusion over the ruling and appeared angered that I had not immediately forwarded him the PDF version of the ruling announced orally at hearing. I apologized for not getting it to him but as I explained: (1) the Order was entered the day before Thanksgiving; (2) I came down with a cold on Thanksgiving and sat at the dinner table wrapped in a blanket; and (3) the PDF order did not differ in any way from the Court's oral ruling, which he had taken notes on.

Following the hearing, Mr. Bleicher failed to pay the $10,000 sanction. He also failed to timely provide the outstanding discovery. Meanwhile, I still had not received payment despite Mr. Bleicher's claim that a check had been mailed. Finally, on December 15, after Mr. Bleicher failed to respond to my follow-up request for payment, I filed a charging lien. *See* Ex. B. This ended my involvement with this matter or so I thought until receiving Mr. Bleicher's blackmail demands. *See* Ex. A. I was baffled to learn that Mr. Bleicher was not satisfied with my work. If I did not request the statements directly from the banks myself, the November 20 hearing would have been very different. In other words, but for my unilateral efforts to obtain and provide outstanding discovery, without Mr. Bleicher's assistance and as I now know

active resistance, a larger judgment would have been entered against Flava Works.

Simultaneously with Mr. Bleicher's extortion attempt, his co-conspirator Ms. Shambee requested my consent to removal from the notice list. After indicating that I would not, Ms. Shambee filed a motion to remove Ms. Jackson and myself from the docket. *See* Doc. No. 108. I filed a response in opposition. *See* Doc. No. 113. The Court granted the request to remove Ms. Jackson but denied the request to remove me from the docket. *See* Doc. No. 115. The baseless filings did not end there. Ms. Shambee filed a motion to reconsider the order denying her request to remove me from the docket. *See* Doc. No. 116. I again filed a response and the Court denied the motion. *See* Doc. No. 117; 121.

## IV. Mr. Bleicher's Complaint is Part of a Failed Attempt, Conspired with Ms. Shambee, to Extort and Blackmail Three Florida Attorneys including Myself

Finally, I will refute Mr. Bleicher's inventive but false allegations against me. I note several of the "exhibits" referenced to in Mr. Bleicher's complaint were not attached to the copy I received.

A. I Never Failed to Communicate with Mr. Bleicher or his Co-Conspirator Ms. Shambee. Conversely, Mr. Bleicher's Unbearable Oversight Impairs the Professional Judgment of the Attorney's he Hires

Florida Rule of Professional Conduct 4-1.4, provides "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." Fla. R. Pro. Cond. 4-1.4(a). *See also* Fla. R. Pro. Cond. 4-1.13(a) (emphasis added) ("[a] lawyer employed or retained by an organization represents the organization acting through its

duly authorized constituents."). However, "[a] lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services." Fla. R. Pro. Cond. 4-5.4(d) (emphasis added). Initially I note that Mr. Bleicher's extensive oversight of the attorneys he hires plainly violates Rule 4-5.4(d), which prohibits a non-attorney from impairing the independent professional judgment of an attorney.

Either way, Mr. Bleicher falsely alleges that I did not communicate with him during the two months I represented his seedy business. However, he does not point to a single instance in which I failed to do so. He does not because his allegations are imaginary and contrary to reality. Mr. Bleicher or Ms. Shambee was included on every significant communication I sent in this matter. It is true that Mr. Bleicher was not included on selected communications with opposing counsel or the Court, this was done because I felt it would have been improper to do so on these specific communications. However, even where Mr. Bleicher was not directly included, Ms. Shambee was. Therefore, Mr. Bleicher's claims that I failed to communicate with him are without merit.

B. There was no Improper Judicial Communication, Mr. Bleicher either Misunderstands or, more likely, takes a Docket Entry out of Context

Mr. Bleicher is referencing docket entry 89. However, he does so out of content. He also neglects to mention the procedures established in the Lawsuit, which state "[t]he Discovery Procedures . . . in this matter require that source materials for discovery hearings be delivered via handdelivery or through a document that is emailed to the [Magistrate's] CM/ECF mailbox . . ." *See* Doc. No. 68 (emphasis added).

On October 23, in accordance with those discovery procedures, I emailed

source material for the upcoming November 20 discovery hearing to the Magistrate's email. Specifically, I sent copies of the subpoenas I propounded to rebut Mr. Bradley's assertion that we were not even attempting to provide discovery. This prompted the following docket entry from the Court:

On October 23 . . . Plaintiff's counsel emailed the Chambers' e-file inbox, copying all other counsel, stating that certain subpoenas had been issued (and attaching the subpoenas) that would obviate the need for a hearing. If, indeed, these subpoenas moot the need for a hearing . . . then opposing counsel . . . may cancel the hearing (and/or withdraw the pending discovery motion) with an official, on-the-record filing, or, if not satisfied fully, may file an amended notice of hearing that indicates certain issues (but not all) have been resolved. If Plaintiff's counsel is merely providing additional source material for the hearing, then submission of these to the e-file inbox is fine.

*See* Doc. No. 89 (emphasis added). Mr. Bleicher makes the ridiculously hilarious, and false, assertion that this "severely prejudiced us and made us look unprofessional." Mr. Bleicher was "severely prejudiced" by Ms. Shambee's malpractice and was made to look "unprofessional" by his own dilatory tactics and false testimony not by my submission of source material to the Magistrate in accordance with the discovery procedures in place. Therefore, Mr. Bleicher's allegations regarding an "improper" communication with a judge are without merit.

C. I did not Fail to Address "Other Litigation," I advised Mr. Bleicher of his Options, he did not Affirmatively Request any Action, and the Lawsuit was Stayed Until he Paid the Judgment, which he Cannot do Without Raising the IRS's Suspicion

Mr. Bleicher claims I did not take action based on his November 4, 2015 email, asserting new copyright infringements. In his email, Mr. Bleicher rants:

*Adam4Adam is up to it again. They are using more copyrighted images to promote and link to products which are not Flava Works. I want to get an injunction against them filed and also go after their web host Soft Layer. Now they are just fucking with us. In our face!*

Like all of Mr. Bleicher's slanderous assertions, this allegation is false and contradicted by evidence. To begin with, Mr. Bleicher never asked me to take specific action regarding these alleged new infringements. Additionally, Mr. Bleicher does not state what hypothetical action I should have voluntarily done. Nevertheless, although I did not respond to this particularly delightful email, I did have a specific phone conversation with Mr. Bleicher about the matter and his options. In what turned out to be more free legal services that unjustly enriched this con artist, I told him that if his allegations were true, they could constitute a separate cause of action. I told Mr. Bleicher that meant he could file a separate lawsuit seeking recovery based on these alleged new copyright infringements. However, I told him that the defendants might seek a stay if he did file a new action.

Alternatively, assuming any of Mr. Bleicher's copyright allegations have factual merit, I told him it was possibly a continuation of pre-existing copyright violations. In which case, I advised Mr. Bleicher an injunction or temporary restraining order might be available in the existing actions. However, given the fact that the he voluntarily dismissed the Lawsuit filed in Florida, the re-filed action in Illinois was stayed until he paid the Judgment, and that his dilatory tactics were wearing thin with the Court, I advised Mr. Bleicher that it would likely better to seek a remedy in a separate action. Finally, Mr. Bleicher had yet to pay me for two months' worth of work and has since balked at my "unreasonable" $500 invoice. What additional free legal work does Mr. Bleicher suggest I should have done for his porn empire? Mr. Bleicher's "models" might be indentured servants exploited for his profit but at least they get modest wages. Therefore, Mr. Bleicher's allegation that I

failed to address "other litigation" is without merit.

D. Mr. Bleicher Complains but does not Cite Anything "Erroneous" in my $500 Invoice, which he has Unreasonably and Spitefully Refused to Pay

Mr. Bleicher claims that I had "concerns and reservations about attending a hearing in front of Judge Goodman." Mr. Bleicher then states my "concern and reservation" was due to the fact that he never paid me. Although it is true Mr. Bleicher did not pay me, I never said, "why should I attend when I haven't even been paid yet?" Rather, my "concerns and reservations" about attending the hearing were solely due to the fact that the Magistrate specifically stated during the October 19 telephonic conference that he would impose sanctions against both Mr. Bleicher and myself if we did not provide the outstanding discovery. Although Mr. Bleicher had yet to pay me for my two months' worth of work, my concern, communicated to him on several occasions prior to the hearing was that I could not afford sanctions imposed against me and my reservation, also communicated to him on several occasions prior to the hearing was seeing additional sanctions imposed against him.

Mr. Bleicher calls for a forensic audit of my $500 invoice. He claims my one page invoice, requesting only $500 for two months of work, was "vague and riddled with numerous errors and untruths." However, Mr. Bleicher does not point to a single error. I did attend the November 20 hearing, which was necessitated by Mr. Bleicher's continued obstinacy and intentional failure to comply with multiple court orders. Further, Mr. Bleicher faults me for not billing in fractional hourly increments. First, Mr. Bleicher never stated this was a requirement. Second, he was only paying $25 an hour not $250. Flava Works had over $423,000 in income in 2014. *See* Ex. J. This begs the question, why would a company that generates nearly $500,000 a year actively seek young or recently admitted attorneys at $25 an hour, assuming

unlike me they are actually paid, to protect its intellectual property and prosecute highly complex cases alleging copyright violations? Because Mr. Bleicher believes those attorneys are more easily manipulated and less likely to question his crimes.

Mr. Bleicher alleges "[I] submitted a false statement . . . claiming [I] was owed $1,000." Presumably, Mr. Bleicher is referring to my charging lien. *See* Ex. B. However, I did in fact perform at least $1,000 worth, probably more, of legal services for Mr. Bleicher. Mr. Bleicher was intimately involved in every aspect of the case during the entirety of my representation. He is fully aware of the work I did. Even if he was not, the work is documented. Admittedly, I did not keep extensive contemporaneous time records. In recognition of this, I was willing to reduce my fee by half as a compromise. That is why I only requested $500. Mr. Bleicher's attempt to use my kindness against me is an excellent example of his unsavory and malicious character. However, after he stiffed me on $500, despite being in the top 1% of wage earners himself, I demanded payment in full. Consequently, to ensure payment I filed a charging lien seeking $1,000. *See* Ex. B.

Mr. Bleicher commits further perjury by stating I "was asked to submit a detailed and corrected invoice." Mr. Bleicher never made any such request. Interestingly, Mr. Bleicher submits my $500 invoice as an exhibit to his slanderous complaint but does not include the alleged correspondence asking me to resubmit it. Mr. Bleicher's actual response to receipt of my invoice is another example of his propensity to falsify the truth: "our accountant will take care of it."

Finally, Mr. Bleicher's bait and switch Craigslist ad belies his frugal arguments. The ad states Flava Works would pay $25 an hour for ten to twenty hours per week. I worked two months for Mr. Bleicher's pornographic slave-ring. According to his own ad, Mr. Bleicher would have expected to pay

for 100 to 200 hours of work during that time. However, my $500 reduced invoice equates to only 20 hours of work, while my $1,000 actual invoice equals 40 hours. The truth of the matter is that Mr. Bleicher thought he could take advantage of me, as he does with his "models." However, as this response demonstrates, Mr. Bleicher has seriously miscalculated the situation. Therefore, Mr. Bleicher's allegations regarding my $500 invoice are without merit.

E. I was Required or Allowed to Withdraw Representation Without Mr. Bleicher's "Knowledge" or "Permission" for Half a Dozen Reasons, including his Use of My Services to Perpetrate a Crime or Fraud

Mr. Bleicher states "unbeknownst to me and without permission," I filed a motion to withdraw. This is the only true statement contained in Mr. Bleicher's complaint. However, neither advance notice nor "permission" were required. Mr. Bleicher is not familiar with Florida Rule of Professional Conduct 4-1.16, which requires an attorney to "withdraw from the representation of a client if the representation will result in violation of the Rules of Professional Conduct or law." Fla. R. Pro. Cond. 4-1.16(a)(1). Rule 4-1.16 also permits an attorney to withdraw if:

(1) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent; (2) the client has used the lawyer's services to perpetrate a crime or fraud; (3) a client insists upon pursuing an objective that the lawyer considers repugnant or imprudent; (4) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services . . . ; (5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client . . . .

Fla. R. Pro. Cond. 4-1.16(b)(1–6) (emphasis added). However, "[w]hen

ordered to do so by a tribunal, a lawyer shall continue representation." Fla. R. Pro. Cond. 4-1.16(c).

I was ethically required to withdraw because my continued representation would have resulted in violation of the Rules of Professional Conduct and the law. Additionally, I was permitted to withdraw for several reasons. First, Mr. Bleicher persisted in a course of action involving my services that I reasonably believed was criminal and fraudulent. Second, Mr. Bleicher used my services to perpetrate a crime and fraud. Third, Mr. Bleicher insisted on pursuing an objective that I considered imprudent. Fourth, Mr. Bleicher failed substantially to fulfill his obligations to me in regards to my services. Fifth, continued representation had been rendered unreasonably difficult by Mr. Bleicher and continued representation without pay would have caused me to suffer an unreasonable financial burden. Unfortunately, the Court denied my motion to withdraw. *See* Doc. No. 92. Consequently, I was still required to attend and did attend the November 20 hearing.

Mr. Bleicher also takes issue with the substantive statements in my motion to withdraw. He actually claims my statement that he refused to follow my advice is false. He also claims I "offer[] (and cannot prove) no emails [sic] or phone communications where we refused to follow his advice . . . ." He also cites a lack of evidence to support my claim that "a conflict of interest" precluded further representation. However, at the time, I felt it would not have been proper to "offer" the above details. Once again, Mr. Bleicher attempts to use my kindness against me. Now however, I am more than happy to shed light on Mr. Bleicher's criminal and unethical behavior.

Mr. Bleicher asked me to take actions intended solely to disrupt the tribunal. *See* Fla. R. Pro. Cond. 4-3.5(c) ("A lawyer shall not engage in conduct intended to disrupt a tribunal."). Mr. Bleicher and Ms. Shambee asked me to engage in dilatory practices that would have brought "the administration of

justice into disrepute" for "the purpose of frustrating an opposing party's attempt to obtain rightful redress or repose." Fla. R. Pro. Cond. 4-3.2 (emphasis added). As I explained to them, "[r]ealizing financial or other benefit from otherwise improper delay in litigation is not a legitimate interest of the client." *Id.* (emphasis added).

Rule 4-3.3 requires candor towards tribunals and proscribes attorneys from taking many of the actions Mr. Bleicher requested or expected me to do. These included, "mak[ing] a false statement of material fact or law to a tribunal," "fail[ing] to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client," and "permit[ing] any witness . . . to offer testimony or other evidence that the lawyer knows to be false." Fla. R. Pro. Cond. 4-3.3(a)(1); (2); (4). Mr. Bleicher does not understand, "[a] lawyer may refuse to offer evidence that the lawyer reasonably believes is false." Fla. R. Pro. Cond. 4-3.3(c).

Mr. Bleicher asked me to take actions contrary to Rule 4-3.4, which requires attorneys to deal fairly with opposing counsel. To that end, "[a] lawyer shall not unlawfully obstruct another party's access to evidence or otherwise unlawfully alter, destroy, or conceal a document or other material that the lawyer knows or reasonably should know is relevant to a pending . . . proceeding; nor counsel or assist another person to do any such act." Fla. R. Pro. Cond. 4-3.4(a) (emphasis added). "A lawyer shall not fabricate evidence, counsel or assist a witness to testify falsely . . . ." Fla. R. Pro. Cond. 4-3.4(b) (emphasis added). "A lawyer shall not knowingly disobey an obligation under the rules of a tribunal . . . ." Fla. R. Pro. Cond. 4-3.4(c) (emphasis added). "A lawyer shall not intentionally fail to comply with a legally proper discovery request by an opposing party." Fla. R. Pro. Cond. 4-3.4(d) (emphasis added).

Finally, Mr. Bleicher asked me to take actions contrary to Rule 4-4.1, which

requires attorneys to be truthful in statements made to others. Consequently, a lawyer shall not knowingly "make a false statement of material fact or law to a third person" or "fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client . . . ." Fla. R. Pro. Cond. 4-4.1(a); (b). Therefore, Mr. Bleicher's assault on my motion to withdraw is without merit.

F. The November 20, 2015 Hearing: Mr. Bleicher Commits Perjury with Reckless Abandon

Mr. Bleicher states he "was requesting to review what [I] was going to discuss with Judge Goodman and to make sure he was prepared for the hearing." The fact Mr. Bleicher admits he wanted to "review" my in-court oral arguments is in line with his obsessive oversight and interference with the professional opinion of the attorneys he hires. *See* Fla. R. Pro. Cond. 4-5.4(d). To begin with, contrary to Mr. Bleicher's assertions, he attends most if not all hearings in his cases. In any event, since I did not want to be sanctioned and (at the time) I did not want Mr. Bleicher to be sanctioned, my main goal following the October 19 telephonic hearing was to obtain the outstanding discovery, provide it as required by court order, and in doing so avoid the November 20 hearing.

Mr. Bleicher knew about the possibility of the November 20 hearing via correspondence from me on October 19. Mr. Bleicher stated to me during a conversation that he would personally attend the hearing if it went forward. I now know Mr. Bleicher never had any intention of providing discovery, so he knew since October 19 that the hearing would be taking place. Even assuming Mr. Bleicher bought a plane ticket "last minute," he does not submit anything to support it, that decision was intentional. I have since come to learn that Mr. Bleicher lives an extravagant lifestyle and routinely spends thousands of dollars on a daily basis. In addition to being false, it is

absurd that this wealthy individual, who stiffed me out of $500, was in any way damaged by purchasing a plane ticket to perjure himself in Federal Court. Finally, Mr. Bleicher intentionally filed the Lawsuit in Florida. Mr. Bleicher's feigned outrage over being required to travel to Florida to prosecute a case he filed in Florida defies belief.

Mr. Bleicher's recitation of the November 20 hearing is pure fiction in its entirety. This includes the false and wildly implausible allegations regarding statements made by the Court and myself. At no point did I say I was unfamiliar with the case. Rather, I recall saying something to effect that "I did not know what I was getting into." As stated, the "what" I was referring to was a client that not only would refuse to follow my advice but also seek to use my services to perpetuate a crime and fraud. At no point was I "chastised" by the Magistrate, nor did he ever state my "actions border on malpractice." I also urge you to obtain the transcript.

Of the multitude of blatantly false, defamatory, and imaginary allegations spewed by this hateful man, Mr. Bleicher's claim that I "was ill-prepared" for the hearing might bother me the most. Preparedness was not the problem; rather there was no valid legal reason for not providing the discovery, consisting largely of bank statements and internal company documents, which had been outstanding for several months by the date of the hearing. *See* Fla. R. Pro. Cond. 4-3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous . . . .") (emphasis added). Again, Mr. Bleicher was told this multiple times in advance of the hearing.

Mr. Bleicher did do a lot of speaking at the hearing. However, he did so on his own volition and because he fancies himself an attorney. I believe hijacking the hearing was Mr. Bleicher's intention all along. If I had known this in advance, I would have told him not to offer false testimony. Quite frankly, if I

had known in advance that he intended to steal the microphone,"Kanye West" me, and perjure himself in open court, I would not have driven down to Miami and wasted half a day for a fraudulent shyster like Mr. Bleicher. I again note that the Court stated in advance that sanctions would be imposed against both Mr. Bleicher and I as counsel if it ruled in Mr. Bradley's favor. At the conclusion of the hearing, the Court followed through and once again sanctioned Mr. Bleicher. *See* Doc. No. 94. Interestingly, the Court did not sanction me. *Id.*

G. Mr. Bleicher has Confused My Certificates of Service with his Tax Returns but Unlike his Falsified Returns, my Certificates hold up to an Audit

For someone who has cheated the IRS out of millions of dollars in taxes, tricked schools out of millions of dollars in funds, infected dozens of people with HIV, and fabricated evidence in Federal Court, Mr. Bleicher is surprisingly liberal with his use of the word "fraud" and referring to things as "false." Federal Rule of Civil Procedure 5(a)(1)(d) provides that "a written motion," "must be served on every party." Rule 5(b)(1) provides in turn, "[i]f a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party." Rule 5(b)(2) states "[a] paper is served under this rule by . . . sending it by electronic means if the person consented in writing . . . ." Finally, anyone registered with a CM/ECF account must consent in writing to service by electronic transmission.

First, the Court did not order service be made on Mr. Bleicher directly. Second, Mr. Bleicher has been repeatedly made aware by several courts in different states that a corporation must be represented by counsel. Third, Mr. Bradley represents the defendants. Fourth, Mr. Bradley is registered with a CM/ECF account thereby consenting to electronic service. Consequently, the only individual entitled to notice in the Lawsuit at the time of any of my

filings was Mr. Bradley. Moreover, service was allowed, and made, by electronic means. Finally, even if we assumed Mr. Bleicher were correct, which the above conclusively demonstrates is not the case, he neither alleges nor has he suffered any prejudice by the alleged failure to serve him with copies of pleadings. Therefore, Mr. Bleicher's attack against the validity of my certificate of services is without merit.

H. Mr. Bleicher Mistakenly Believes that a Prior Counsel's Continued Inclusion on a Service List Triggers an "Obligation to Notify the Bar of Ethical Issues with Other Attorneys"

Florida Rule of Professional Conduct 4-8.3 states, "[a] lawyer having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the appropriate professional authority." Fla. R. Pro. Cond. 4-8.3(a). Contrary to Mr. Bleicher's delusions otherwise, other than Ms. Shambee, no Florida attorney involved in the Lawsuit did anything to justify such action.

For a man who habitually avoids his obligations and then blames others for the consequences that result, Mr. Bleicher is obsessed with the supposed "obligations" of others. Mr. Bleicher's final perjurious allegation is that I failed my "obligation to notify the bar of ethical issues with other attorneys." What is the supposed "ethical issues with other attorneys" Mr. Bleicher speaks of? Ms. Jackson's "failure" to remove herself from the Lawsuit's service list after being "fired." In other words, Mr. Bleicher is upset that Ms. Jackson continued to receive electronic notifications regarding court filings after representation was terminated. Once again, Mr. Bleicher neither alleges nor has he suffered any prejudice by Ms. Jackson's continued receipt of electronic service. However, more importantly, Ms. Jackson's continued receipt of filings is not an ethical violation. Therefore, Mr. Bleicher's

allegations that I did not notify the Bar of "ethical issues" with other attorneys is without merit.

In conclusion, it should be abundantly clear that Mr. Bleicher is either (1) lying under oath or (2) delusional. I respectfully submit that given his well-documented history of fraud, deceit, and deception, the former is the correct proposition. Like me, you are probably wondering why Mr. Bleicher is not currently in a Federal penitentiary. I hope that one of the agencies included in this correspondence can correct that. In full disclosure, since he forced me to do the necessary investigation and compile the facts and evidence needed to do so, once these slanderous allegations are dispatched with, I will be filing suit against Mr. Bleicher and Ms. Shambee. Regardless, please do not hesitate to contact me with other questions concerning this matter. Thank you for your attention.

Sincerely,

*s/ Michael Gulisano*

Michael Gulisano, Esquire

enc.

cc: Flava Works, Inc. c/o Philip Bleicher, Juneitha Shambee
John Francis Bradley, Esquire
Ursula Jackson, Esquire
Matthew Zukowsky, Esquire
Joshua Sheskin, Esquire
Chicago Department of Public Health (under separate cover)
Rahm Emanuel, Major of Chicago (under separate cover)
Miami Department of Code Enforcement (under separate cover)
Tomas Regalado, Major of Miami (under separate cover)

Federal Bureau of Investigations (under separate cover)
Internal Revenue Service (under separate cover)
D.L. Campbell, Revenue Officer, Internal Revenue Service (under separate cover)
United States Department of Justice (under separate cover)
Loretta Lynch, United States Attorney General (under separate cover)
Lisa Madigan, Illinois Attorney General (under separate cover)
Pamela Bondi, Florida Attorney General (under separate cover)
Jamie Alistair Gonzalez, JAGGED Press (under separate cover)
Miami Herald (under separate cover)
Chicago Sun-Times (under separate cover)

# EXHIBIT B-1

## Unredacted Doxing Block — Not Publicly Filed

*Bleicher v. Gulisano*

*Cited at Complaint ¶ 50*

## Contents

| | |
|---|---|
| **Part 1** | **Full, unredacted text of the June 2024 Doxing Block**<br>The unredacted Doxing Block contains Plaintiff's home address, personal cellular telephone number, and personal email address — personal identifying information protected from public filing under Fed. R. Civ. P. 5.2 and this Court's privacy procedures. The unredacted text is maintained by Plaintiff's counsel and will be furnished to the Court under seal upon request. The redacted text appears at Complaint ¶ 51 and Exhibit A. |

# EXHIBIT C

## Defendant's Notice of Attorney's Charging Lien (Doc. 99) — Claims $1,000

*Bleicher v. Gulisano*

*Cited at Complaint ¶¶ 22, 27*

### Contents


| | |
|---|---|
| **Part 1** | **Notice of Attorney's Charging Lien filed December 15, 2015**<br>Filed at Doc. 99 in Flava Works, Inc. v. Roy, et al., No. 1:14-cv-23208-JAL (S.D. Fla.), over the signature of "MICHAEL GULISANO, ESQUIRE, Fla. Bar No. 87573." Defendant represented to the federal court that Plaintiff owed him "one thousand dollars ($1,000)" in unpaid attorney's fees. Offered as evidence of Defendant's first sworn fee representation in the Underlying Case. |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

FLAVA WORKS, INC.,

CASE NO.: 1:14-cv-23208-JAL

Plaintiff,

v.

A4A RESEAU, INC. ET AL.,

Defendants.

_____________________________________________/

**NOTICE OF ATTORNEY'S CHARGING LIEN**

The undersigned counsel hereby gives notice of the imposition of a charging lien against the fee, if any, received by Plaintiff, Flava Works, Inc. (the "Plaintiff") and states as follows:

1. The undersigned agreed to represent the Plaintiff on an hourly fee basis.

2. As of the date of this notice, the undersigned has incurred fees of $1,000.

3. As of the date of this notice, the Plaintiff has refused to pay the undersigned.

4. "The charging lien is an equitable right to have costs and fees due an attorney for services in the suit secured to him in the judgment or recovery in that particular suit." *Naftzger v. Elam*, 41 So. 3d 944, 946 (Fla. 2d DCA 2010) (quotation omitted).

5. "A summary proceeding in the original action represents the preferred method of enforcing an attorney's charging lien in Florida." *Santini v. Cleveland Clinic*, 65 So. 3d 22, 35 (Fla. 4th DCA 2011) (quotation omitted).

6. Therefore, "notice of the charging lien must be filed or the lien pursued in the action before entry of a final judgment or dismissal of the case." *Naftzger*, 41 So. 3d at 946.

7. "So long as the notice of lien is filed before the case goes to final judgment or is dismissed, 'The lien is chargeable against any person who, at the time notice of intent to claim a lien

is given, holds monies or property which become proceeds of a judgment to be entered in the future.'" *Gordon C. Brydger, P.A. v. Wolfe*, 847 So. 2d 1074, 1076 (Fla. 4th DCA 2003) (quotation omitted).

8. Finally, this notice is also intended to inform defense counsel of the charging lien. If an opposing party who has notice of a charging lien settles with the party charged with the lien and the party charged subsequently fails to pay, the lien may be enforceable against the opposing party as well. *Gaebe, Murphy, Mullen & Antonelli v. Bradt*, 704 So. 2d 618, 619 (Fla. 4th DCA 1997).

**WHEREFORE**, the undersigned provides notice to all parties and their counsel that he is imposing a charging lien against the fee, if any, received by the Plaintiff for $1,000 or the quantum meruit value of his services rendered and any additional or alternative relief the Court deems just and proper.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on December 15, 2015 on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing and to all pro se parties, if any, via U.S. mail.

Respectfully submitted by:

s/Michael Gulisano

MICHAEL GULISANO, ESQUIRE
Fla. Bar No. 87573
5613 NW 117th Ave.
Coral Springs, FL 33076
561-271-1678
gulisanomichael@gmail.com

# EXHIBIT D

## Defendant's Sworn Response (Doc. 117) — Admits Only $500 Was Requested

*Bleicher v. Gulisano*

*Cited at Complaint ¶¶ 24, 27*

### Contents

| | |
|---|---|
| **Part 1** | **Sworn pleading filed March 11, 2016**<br>Filed at Doc. 117 in Flava Works, Inc. v. Roy, et al., No. 1:14-cv-23208-JAL (S.D. Fla.). At paragraph 7, Defendant expressly states: "the undersigned only requested $500 instead of the $1,000 actually incurred." Offered alongside Exhibit D as evidence that Defendant made two materially different sworn fee representations to the same federal court in the same case. |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

FLAVA WORKS, INC., CASE NO.: 1:14-cv-23208-JAL

Plaintiff,

v.

A4A RESEAU, INC. ET AL.,

Defendants.
_______________________________________/

**RESPONSE TO MOTION TO RECONSIDER AND REQUEST FOR SANCTIONS**

The undersigned counsel, Michael Gulisano, Esquire, pursuant to Federal Rule of Civil Procedure 11 and Local Rule 7.1(a)(3), responds to the Motion to Reconsider (Doc. No. 116) filed by Plaintiff, Flava Works, Inc. (the "Plaintiff") and requests sanctions as follows:

1. At the outset, the undersigned apologizes for the Plaintiff's unashamed misuse of the Court's time. The undersigned assures the Court he would rather devote time to other matters but the false statements made by the Plaintiff cannot go unanswered.

2. *Interestingly, the Plaintiff does not cite any harm that would be caused by the undersigned's continued inclusion on the service list in this matter.* This is not surprising since the only consequence of such is the receipt of Notices of Electronic Filing generated by CM/ECF.

3. As stated in the undersigned's prior response (Doc. No. 113), the Plaintiff attempted to blackmail the undersigned by threatening to make false and defamatory allegations to the Florida Bar unless he paid the Plaintiff $7,500. The demand was later increased to $10,000.

4. *Including the undersigned, the Plaintiff made identical threats to at least three of its four former attorneys in this matter. See* Flavawork's Blackmail Attempts attached as Exhibit A.

5. Since that time, the Plaintiff's CEO, Philip Bleicher ("Mr. Bleicher") has carried

through with its threats and filed frivolous complaints with the Florida Bar against the undersigned, Matthew Zukowsky, and Ursula Jackson.

6. Those complaints are still pending. However, once the perjurious and defamatory complaint made against the undersigned is resolved, he now intends to file a motion to intervene in this matter in order to make a claim against the Plaintiff and its counsel. Failing that, the undersigned will initiate a new action against the Plaintiff.

7. Additionally as stated in the undersigned's prior response (Doc. No. 113), the Plaintiff refused to pay him for two months' worth of work in this matter for which the undersigned only requested $500 instead of the $1,000 actually incurred.

8. However, what was not stated in that response is that the undersigned terminated his representation of the Plaintiff because, among other reasons, the Plaintiff, *and its current counsel Juneitha Shambee ("Ms. Shambee")*: (a) persisted in a course of action involving the undersigned's services that he reasonably believed was criminal or fraudulent; (b) used the undersigned's services to perpetrate a crime or fraud; and (c) insisted upon pursuing an objective that the undersigned considered repugnant or imprudent.

9. The allegations in Mr. Bleicher's affidavit are false and should be disregarded by the Court. *Committing perjury and manufacturing evidence is nothing new for Mr. Bleicher.*

10. For example, as the Northern District of Illinois determined in *Flava Works, Inc. v. Momient*, 1:11-cv-06306 (Ill. N.D. 2011), *Mr. Bleicher forged the defendant's signature on a contract in order to defeat a counterclaim brought against him*. *See* Order attached as Exhibit B.

11. Mr. Bleicher then had his attorney *submit the forgery to the Court as evidence*. *See* Ex. B. Referring to Mr. Bleicher's conduct, the Court stated, "*[w]hat we have, then, is the most egregious fraud on the court that this Court has encountered in its nearly 33 years on the bench.*" *Id.*

(emphasis added). "*Fortunately courts are rarely called upon to consider fraud on-the-court conduct of the type engaged in by Flava.*" *Id.* (emphasis added).

12. This is the just the latest instance of fraud by Mr. Bleicher in a long and distinguished history of such conduct.

13. For example, in 2006, *Mr. Bleicher was charged by the Illinois Attorney General with operating a fraudulent charity that bilked schools nationwide out of millions of dollars*. *See* Fraudulent Charity Allegedly Collected More Than $3 Million; Used Proceeds to Make Purchases for International Travel and at a Liposuction Clinic attached as Exhibit C.

14. Finally, like most of the Plaintiff's motions filed in this matter, the instant motion fails to comply with Local Rule 7.1(a)(3), which requires counsel for the movant to confer with all parties or non-parties who may be affected by the relief sought *prior* to filing any motion in a civil case.

15. A review of the docket shows that the Plaintiff has already been admonished for failure to heed this requirement.

16. Additionally, since no harm has been alleged (nor could be in good faith), there is no *none* frivolous basis for the Plaintiff's request. *See* Fla. R. Pro. Cond. 4-3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, *unless there is a basis for doing so that is not frivolous* . . . .") (emphasis added).

17. Therefore, in considering all of the above, the Court should impose sanctions against the Plaintiff and/or Ms. Shambee pursuant to Rule 11 and Local Rule 7.1(a)(3) requiring them to pay the undersigned his expenses incurred, including a reasonable attorney fee of $1,000.

**WHEREFORE**, the undersigned respectfully requests the Court deny the Plaintiff's motion for reconsideration (Doc. No. 116), impose sanctions against the Plaintiff and/or Ms. Shambee

pursuant to Rule 11 and Local Rule 7.1(a)(3) for $1,000 payable to the undersigned, and grant any additional or alternative relief the Court deems just and proper.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on March 11, 2016 on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing and to all pro se parties, if any, via U.S. mail.

Respectfully submitted by:

s/ Michael Gulisano

MICHAEL GULISANO, ESQUIRE
Fla. Bar No. 87573
5613 NW 117th Ave.
Coral Springs, FL 33076
561-271-1678
gulisanomichael@gmail.com

# EXHIBIT E

## Email Evidence Compilation (2015–2019)

*Bleicher v. Gulisano*

*Cited at Complaint ¶¶ 14–16, 21, 23, 26, 30–34, 61–62*

## Contents


| | | |
|---|---|---|
| **Part 1** | **Chronological compilation of email evidence (2015–2019)** The compilation previously filed with the original Complaint at ECF No. 1-1 (PageID ##101–106): the substitution and withdrawal correspondence, the February 2016 demand and threat emails, the March 2016 Open Letter transmittal, and the February 2019 invoice exchange. |
| **Part 2** | **The itemized invoice referenced at Complaint ¶ 21(a)** Defendant's invoice "INVOICE FOR FLAVA WORKS FOR OCTOBER, NOVEMBER," stating "TOTAL: 20 Hours = $500.00," transmitted by Defendant as "Gulisano Invoice - FlavaWorks.pdf." |

# EXHIBIT E

## Compilation of Email Correspondence — Plaintiff and Defendant (2015–2019)

*Bleicher v. Gulisano*

*Cited at Complaint ¶¶ 14–17, 23, 26, 30–33, 38*

## Contents


| | |
|---|---|
| **Part 1** | **Chronological compilation of evidentially significant email exchanges**<br>Email correspondence between Plaintiff (phil@flavaworks.com) and Defendant (gulisanomichael@gmail.com), recovered from Plaintiff's Gmail account, including: (i) October 9, 2015 — Defendant's admission to opposing counsel that he had "not completely familiarized" himself with the file; (ii) February 1, 2016 — "Can't wait to show you what a real lawyer can do"; (iii) February 2, 2016 — demand for $500; (iv) February 24, 2016 — "Federal Bureau of Investigations" email; (v) March 11, 2016 — "represent the other attorneys victimized by you"; (vi) March 22, 2016 — mass email to approximately ninety (90) government and press recipients; and (vii) February 21, 2019 — inconsistent $1,000/$500 exchange. |

# Key Email Evidence from Gmail

Direct Correspondence with Michael Gulisano

*Compiled May 16, 2026 — Bleicher v. Gulisano Matter*

This document collects, in chronological order, the most evidentially significant email exchanges between Mr. Bleicher (phil@flavaworks.com) and Michael Gulisano (gulisanomichael@gmail.com), recovered from Mr. Bleicher's Gmail. Each email is reproduced from the original Gmail thread, with sender, recipient, date, and subject metadata preserved as it appeared in Gmail. Full thread IDs are noted at the head of each entry for retrieval purposes.

## Highlights:

- February 1, 2016 — In response to Phillip's settlement demand, Gulisano writes, “Can't wait to show you what a real lawyer can do.” Direct evidence of personal animus and retaliatory motive contemporaneous with the start of the campaign.
- February 2, 2016 — Gulisano demands, “If I do not receive $500 for the work I performed in this matter by the end of the week, I will be opposing your motion to remove me from the docket.” Followed by, “QUOTE ME ON THIS, if I am named a defendant in a meritless 'malpractice' complaint... I will IMMEDIATELY add you as a defendant end of story... You guys tried to scam the wrong attorney.” Direct evidence of retaliatory intent against both Phillip and Juneitha Shambee.
- February 24, 2016 — Gulisano writes Phillip and Juneitha Shambee announcing, “the Federal Bureau of Investigations, the Internal Revenue Service, and other state and federal governmental entities will now be alerted to your criminal activities... To speed up the process, I will be cc'ing those authorities to my response. You made your bed and now you must lie in it.” Direct evidence of retaliatory intent and contemplated mass dissemination of false accusations.
- March 22, 2016 — Gulisano emails approximately 90 federal and state government addresses (DOJ, FBI, IRS, FL Attorney General, IL Attorney General, Miami-Dade officials, Chicago officials, Miami Herald, Chicago Sun-Times), attaching his “Open Letter” and falsely accusing Mr. Bleicher of “tax evasion, mail fraud, forgery, fraud, and perjury.” A complete and contemporaneous record of Gulisano's defamatory mass-mailing campaign.
- February 21, 2019 — This exchange directly refutes the blog narrative that Phillip “stiffed me out of $500.” Phillip asks if any invoices are outstanding. Gulisano replies that the balance is $1,000, but he will accept $500 if paid within 20 days. Phillip insists on paying the full $1,000 and asks for a detailed invoice. Gulisano never sends one. This single exchange establishes that (a) Phillip volunteered to pay the full claimed amount, (b) Gulisano discounted his own claim, and (c) Gulisano failed to send a detailed invoice in response to a written request — refuting his blog's foundational complaint.

### EMAIL 1 — February 1, 2016 — “Can't Wait to Show You What a Real Lawyer Can Do”

**Gmail thread ID:** 1529acf10ac61982

**From:** Michael Gulisano <gulisanomichael@gmail.com>

**To:** phil@flavaworks.com, shambeelaw@gmail.com, jb@bradlegal.com, joanna@bradlegal.com, jhs@sheskinlaw.com, ujacksonlaw@aol.com

**Date:** Monday, February 1, 2016 at 3:55 PM (UTC)

**Subject:** Re: Settlement Demand

*Body (verbatim, in response to Mr. Bleicher's earlier "Consider it filed. See you in court."):*

> *Can't wait to show you what a real lawyer can do.*

Significance: This single-line response, from a member of the Florida Bar, to a former client following a settlement demand, captures the personal animus that drives the campaign documented in Emails 2–5 below. It is contemporaneous, in writing, and reflects precisely the state of mind needed to establish actual malice.

### EMAIL 2 — February 2, 2016 — The $500 Demand and "Scam the Wrong Attorney" Threat

**Gmail thread ID:** 153137171b671b1d

**2a — Gulisano's initial $500 demand**

**From:** Michael Gulisano <gulisanomichael@gmail.com>

**To:** Juneitha Shambee <shambeelaw@gmail.com>, Phillip Bleicher

**Date:** Tuesday, February 2, 2016 at approximately 1:36 PM (UTC)

**Subject:** Re: Activity in Case 1:14-cv-23208-JAL Flava Works, Inc. v. A4A Reseau, Inc. et al Motion to Strike

> *Dear Juneitha and Philip: If I do not receive $500 for the work I performed in this matter by the end of the week, I will be opposing your motion to remove me from the docket. I have spoken to the other attorneys that have been wronged by both of your actions and we intend to work together if you proceed with your frivolous claims against any one of us. Additionally, Philip after consulting with the other attorneys, it would appear the ONLY potential negligence in this action was by your co-conspirator Juneitha. Specifically, her decision to dismiss and then days later refile the same complaint (likely at your direction) either without knowledge or in spite of knowledge that doing so would likely subject Flavaworks to liability for the defendant's costs under Rule 41(d). Sincerely, Michael Gulisano*

**2b — Gulisano's escalation, same date**

**Date:** Tuesday, February 2, 2016 (later same day)

> *Juneitha: You and Philip make false defamatory allegations and threats about us and then feign offense when we call you out!! I am not afraid of you or Philip. We are not barking up the "wrong tree" and we hope you "come hard." Instead of trying to intimidate me, which I assure you 'aint going happen, you could try and talk sense into your partner. QUOTE ME ON THIS, if I am named a defendant in a meritless "malpractice" complaint (such as the wholly legally insufficient one prepared by Philip) I will IMMEDIATELY add you as a defendant end of story. I don't believe a word you say but I will listen to your testimony when I take your deposition. You guys tried to scam the wrong attorney. Michael Gulisano*

Significance: This pair of emails establishes (a) a direct quid-pro-quo demand — "$500 or I oppose your motion to remove me" — which is itself problematic; (b) Gulisano's stated intent to take retaliatory action ("QUOTE ME ON THIS") against Phillip and Shambee; and (c) Gulisano's repeated direct

accusations of "defamatory allegations," "intimidation," and "scam," all without any factual basis later established in any tribunal.

### EMAIL 3 — February 24, 2016 — "You Made Your Bed and Now You Must Lie in It"

**Gmail thread ID:** 153137171b671b1d

**From:** Michael Gulisano <gulisanomichael@gmail.com>

**To:** shambeelaw@gmail.com

**Cc:** phil@flavaworks.com, jb@bradlegal.com, joanna@bradlegal.com, jhs@sheskinlaw.com, ujacksonlaw@aol.com, matthew.zukowsky@gmail.com

**Date:** Wednesday, February 24, 2016 at 1:21 PM (UTC)

**Subject:** Re: Activity in Case 1:14-cv-23208-JAL Flava Works, Inc. v. A4A Reseau, Inc. et al Motion to Strike

*Body (verbatim):*

> *Dear Ms. Shambee and Mr. Bliecher: Unfortunately you went ahead and made false and slanderous allegations about us to the Florida Bar. As you probably failed to realize, our responses are public records. Consequently, the Federal Bureau of Investigations, the Internal Revenue Service, and other state and federal governmental entities will now be alerted to your criminal activities, including tax evasion, concealment of assets, perjury, mail fraud, and extortion. To speed up the process, I will be cc'ing those authorities to my response. You made your bed and now you must lie in it. Thank you, Michael Gulisano*

Significance: This email predates the mass-mailing of March 22, 2016 (Email 4) by approximately one month. It demonstrates (a) Gulisano's express intent to retaliate for the Florida Bar complaint by alerting federal authorities to fabricated accusations; (b) his understanding that his "responses" would become "public records" — the foundation of his later argument that publishing on his blog is somehow privileged; and (c) the personal hostility and retaliatory motive ("You made your bed and now you must lie in it") that satisfies the actual-malice element of any defamation claim.

### EMAIL 4 — March 22, 2016 — Gulisano's Mass Email to ~90 Government Agencies and Press

**Gmail thread ID:** 1539c3a7d3cf3c48

**From:** Michael Gulisano <gulisanomichael@gmail.com>

**To:** (approximately 90 recipients including Press@usdoj.gov, Loretta.lynch@usdoj.gov, Civil.Feedback@usdoj.gov, lmadigan@atg.state.il.us, pam.bondi@myfloridalegal.com, Miami@ic.fbi.gov, Chicago@ic.fbi.gov, d.l.campbell@irs.gov, Rahm.Emanuel@cityofchicago.org, tregalado@miamigov.com, mrvasquez@miamiherald.com, spatterson@suntimes.com, healthychicago@cityofchicago.org, oag.civil@myfloridalegal.com, and ~75 additional government, FBI, and press addresses)

**Cc:** phil@flavaworks.com, JHS@sheskinlaw.com, joanna@bradlegal.com, jb@bradlegal.com, matthew.zukowsky@gmail.com, ujacksonlaw@aol.com

**Date:** Tuesday, March 22, 2016 at 2:49 AM (UTC)

**Subject:** Information Regarding State and Federal Crimes Committed by PHILLIP BLEICHER

**Attachment:** "Open Letter to Governmental Agencies Concerning Phillip Bleicher's Criminal Activities.pdf"

*Body (verbatim):*

> *Hello: I write to each of you in hope that one of you can stop the ongoing criminal activities being perpetuated by PHILLIP BLEICHER and his company FLAVA WORKS in Florida and Illinois, including, tax evasion, mail fraud, forgery, fraud, and perjury. Please see the attached correspondence, which describes just some of the state and federal crimes being committed by PHILLIP BLEICHER. If any of you are interested in investigating PHILLIP BLEICHER, I have bank statements, tax returns, and contradictory sworn statements, which I will happily provide upon request. Thank you, Michael Gulisano, Esquire*

Significance: Gulisano transmitted his "Open Letter" (the source content for the blog post) directly to approximately 90 federal and state law-enforcement, regulatory, and press recipients — including the U.S. Attorney General, FBI field offices, the IRS, multiple state Attorneys General, and the Miami Herald and Chicago Sun-Times. None of those agencies have ever charged, indicted, sued, or otherwise acted against Mr. Bleicher in response. This email demonstrates (a) Gulisano's intent to disseminate his accusations to the widest possible audience and (b) Gulisano's knowledge that mere accusation, not adjudication, was his goal.

### EMAIL 5 — February 21, 2019 — The Invoice Exchange That Refutes the Blog's Foundational Claim

**Gmail thread ID:** 168c5f0faff32eb7

**5a — Phillip's inquiry (February 6, 2019)**

**From:** Phillip B <phil@flavaworks.com>

**To:** gulisanomichael@gmail.com

**Date:** Wednesday, February 6, 2019 at 10:15 PM (UTC)

**Subject:** Flava Outstanding Invoice

**Attachment:** "Gulisano Invoice - FlavaWorks.pdf"

> *Could you please tell me if there are any outstanding invoices open? I show the attached invoice has not been paid, is this correct? Phillip Bleicher / Flava Works, Inc.*

**5b — Gulisano's reply**

**From:** Michael Gulisano <gulisanomichael@gmail.com>

**To:** phil@flavaworks.com

**Date:** Thursday, February 21, 2019 at 11:00 AM (UTC)

**Subject:** Re: Flava Outstanding Invoice

> *Hello: According to my notes, the outstanding balance is $1,000. However, if you were to send payment within 20 days or by March 13, 2019, I would accept $500 in full satisfaction of the invoice. Thank you, Michael Gulisano*

**5c — Phillip's reply: he insists on paying the full amount and requests a detailed invoice**

**Date:** Thursday, February 21, 2019 at 11:45 AM (UTC)

*OK thank you, however we prefer to pay what is owed, so the $1,000.00 is fine. Please send me a detailed invoice and I will send payment. All I was able to locate is the attached invoice which I believe is not paid. Thank you. Phillip Bleicher / Flava Works, Inc.*

**5d — Phillip's follow-up on March 7, 2019 (Gulisano never responded)**

**Date:** Thursday, March 7, 2019 at 9:11 AM (UTC)

*Do you have an update on this email? Phillip Bleicher / Flava Works, Inc.*

Significance: This exchange directly contradicts the central narrative of the gulisanolaw.com blog post, which states that Phillip "refused to pay me the $500 I billed him." In fact: Phillip, on his own initiative, asked whether any invoices were outstanding and offered to pay (Feb 6, 2019). Gulisano, not Phillip, was the one who proposed accepting a discount ($500 instead of the $1,000 he claimed was due). Phillip explicitly declined the discount, stating: "we prefer to pay what is owed, so the $1,000.00 is fine." Phillip requested a detailed invoice — Gulisano never sent one. Phillip followed up 14 days later — Gulisano never responded. The foundational "he stiffed me out of $500" premise of the blog post is therefore false on its face.

## Gmail Thread IDs To Print (4 unique threads)

The five emails above live in four unique Gmail threads. To produce the actual Gmail originals as PDFs, log into phil@flavaworks.com and open each of the following threads by pasting the URL into Gmail's address bar (replacing <THREAD-ID>):

*https://mail.google.com/mail/u/0/#all/<THREAD-ID>*

- Thread 1 — 1529acf10ac61982 — Feb 1, 2016 — "Can't wait to show you what a real lawyer can do."
- Thread 2 — 153137171b671b1d — Feb 2, 2016 + Feb 24, 2016 — $500 demand / "QUOTE ME ON THIS" / "You made your bed." (Emails 2 and 3 are part of the same Gmail thread.)
- Thread 3 — 1539c3a7d3cf3c48 — Mar 22, 2016 — Mass email to ~90 government & press recipients.
- Thread 4 — 168c5f0faff32eb7 — Feb 6 – Mar 7, 2019 — Invoice exchange that refutes the blog narrative.

# Michael Gulisano, Esquire

5613 NW 117th Ave., Coral Springs, FL 33076
561-271-1678 · 561-998-9272 (fax) · gulisanomichael@gmail.com


**INVOICE FOR FLAVA WORKS**
**FOR OCTOBER, NOVEMBER**

| **Date** | **Description of Work Performed** | **Time** |
|---|---|---|
| 10/9/15 | Drafted and filed Motions for Substitution of Counsel and proposed orders | 1 |
| 10/10/15 – 11/19/15 | Reviewed numerous pleadings and motions already filed | 3 |
| 10/10/15 – 11/19/15 | Multiple correspondence with Defendant’s counsel, Court, Co-Counsel, and Client | 11 |
| 10/23/15 | Prepared and served subpoena’s for outstanding discovery requests, communicated with subpoenaed organizations regarding discovery | 2 |
| 11/20/15 | Attended Court hearing on Defendant’s Motion to Compel | 3 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**TOTAL: 20 Hours**
**= $500.00**

Sincerely,

Michael Gulisano, Esquire

# EXHIBIT F

## Florida Bar Closure Letter — RFA No. 24-12445

*Bleicher v. Gulisano*

*Cited at Complaint ¶¶ 48–50*

### Contents


| | |
|---|---|
| **Part 1** | **Florida Bar closure correspondence, May 31, 2024**<br>Florida Bar transmittal documenting closure of disciplinary inquiry RFA No. 24-12445, filed by Plaintiff against Defendant on May 20, 2024 in connection with the Article. The Bar transmitted Plaintiff's complaint papers — which included Plaintiff's home address, unlisted cellular telephone number, and personal email address — to Defendant pursuant to Rule 3-7.4. Offered to establish how Defendant obtained the personally identifiable information later published in the Doxing Block. |

# The Florida Bar

651 East Jefferson Street
Tallahassee, FL 32399-2300

Joshua E. Doyle
Executive Director

850/561-5600
www.FLORIDABAR.org

May 31, 2024

Mr. Phillip Bleicher
[redacted]

Re: Michael Gulisano; RFA No. 24-12445

Dear Mr. Bleicher:

I have reviewed your Request for Assistance, and since it appears that the matter giving rise to your inquiry is greater than six years old, the Attorney/Consumer Assistance Program of The Florida Bar is unable to be of assistance to you. Pursuant to Rule 3-7.16 of the Rules of Discipline of The Florida Bar, all complaints must be presented within six years from the time the matter giving rise to the complaint is discovered or, with due diligence, should have been discovered. A copy of that rule is enclosed for your review.

In light of the foregoing, this matter is being closed effective May 30, 2024. Pursuant to the Bar's records retention schedule, the computer record and file will be disposed of one year from the date of closing.

Sincerely,

Richard W. Coombs, Bar Counsel
Attorney Consumer Assistance Program
ACAP Hotline 866-352-0707

Enclosure - Copy of Rule 3-7.16

cc: Mr. Michael Gulisano (with enclosure)

## RULE 3-7.16 LIMITATION ON TIME TO OPEN INVESTIGATION

**(a) Time for Initiating Investigation of Complaints and Re-opened Cases.**

(1) Initial Complaint or Investigation. A complainant must make a written inquiry to The Florida Bar within 6 years from the time the matter giving rise to the inquiry or complaint is discovered or, with due diligence, should have been discovered. The Florida Bar must open an investigation initiated by The Florida Bar within 6 years from the time the matter giving rise to the investigation is discovered or, with due diligence, should have been discovered.

(2) Re-opened Investigations. A re-opened disciplinary investigation is not time barred by this rule if the investigation is reopened within 1 year after the date on which the matter was closed, except that a re-opened investigation based on a deferral made in accordance with bar policy and as authorized elsewhere in these Rules Regulating The Florida Bar is not barred if re-opened within 1 year after actual notice of the conclusion of the civil, criminal, or other proceedings on which the deferral was based.

(3) Deferred Investigations. A disciplinary investigation which began with the opening of a discipline file and bar inquiries to a respondent within the 6-year time period as described in this rule and RRTFB August 1, 2022 was then deferred in accordance with bar policy and the Rules Regulating The Florida Bar, is not time barred under this rule if a grievance committee finds probable cause and the bar files its formal complaint within 1 year after actual notice of the conclusion of the civil, criminal, or other proceedings on which deferral was based.

**(b) Exception for Theft or Conviction of a Felony Criminal Offense.** There is no limit on the time in which to present, reopen, or bring a matter alleging theft or conviction of a felony criminal offense by a member of The Florida Bar.

**(c) Tolling Based on Fraud, Concealment, or Misrepresentation.** The limitation of time in which to bring or reopen a complaint within this rule is tolled where it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the matter giving rise to the inquiry or complaint.

**(d) Constitutional Officers.** Inquiries raised or complaints presented by or to The Florida Bar about the conduct of a constitutional officer who is required to be a member in good standing of The Florida Bar must be commenced within 6 years after the constitutional officer vacates office. Added July 20, 1995 (658 So.2d 930).

Amended effective March 23, 2000 (763 So.2d 1002); December 20, 2007, effective March 1, 2008 (SC06-736) (978 So.2d 91), amended November 9, 2017, effective February 1, 2018.
RULE 3-7.17 VEXATIOUS CONDUCT AND LIMITATION ON FILINGS

# EXHIBIT G

## Email from “lilryan10788@gmail.com” Directing Plaintiff to Defendant

*Bleicher v. Gulisano*

*Cited at Complaint ¶ 66*

### Contents

| | |
|---|---|
| **Part 1** | **Email dated April 14, 2026, 11:51 a.m. EDT**<br>Gmail thread 19d8cb0d144beeb0, retrieved from phil@flavaworks.com. The sender — a target of intellectual-property enforcement — responded to a copyright cease-and-desist by writing: “Feel free to contact my lawyer here’s a link. https://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/.” Offered as direct, contemporary evidence that adverse parties continue to weaponize the Article against Plaintiff. |

# EXHIBIT 1

*Email from lilryan10788@gmail.com directing Plaintiff to Defendant Gulisano*

**From:** lilryan10788@gmail.com

**To:** phil@flavaworks.com

**Date:** Tuesday, April 14, 2026 at 11:51 AM EDT (15:51 UTC)

**Subject:** Lawyer Contact Info

---

Feel free to contact my lawyer here’s a link.

https://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/

---

*Source: Gmail thread 19d8cb0d144beeb0, retrieved from phil@flavaworks.com on May 18, 2026. The sender, "lilryan10788@gmail.com," is a target of intellectual-property enforcement. This email is a response to a cease-and-desist demand and explicitly directs Plaintiff to Defendant Gulisano's law-firm website article at gulisanolaw.com — the same website that publishes Plaintiff's home address, unlisted cellular telephone number, and personal email address.*

# EXHIBIT H

## Reddit r/askgaybros Thread — Coordinated Doxing (May 2026)

*Bleicher v. Gulisano*

*Cited at Complaint ¶¶ 67–71*

### Contents


| | |
|---|---|
| **Part 1** | **Screenshots of the r/askgaybros discussion thread**<br>Captures of public posts and replies by Reddit users ‘kjs0705,’ ‘V3Qn117x0UFQ,’ and ‘JeanLeBon65’ — occurring within a seven-day window contemporaneous with the filing of this Complaint — in which the Article is circulated, Plaintiff’s photograph and name are solicited, and Plaintiff is publicly identified for the express purpose of harassment. Offered as direct, real-time evidence that the Article is being actively weaponized. |

r/askgaybros · 7d ago
XOneAIByst

# Is gay-torrents.org down?

Is gay-torrents.org down? It's been down for a few days now and nothing when i search about it.??

14 86 Share

Sort by: Best  Search Comments

**kjs0705** · 6d ago

Flava Works makes mediocre content and can't compete with others and fan sites. They basically go around suing and extorting money from people to survive. The site is the latest target. It wouldn't be surprising if they uploaded their own content and then sued. Their owner is a long time crook.
https://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/

3 Reply Award Share ···

**V3Qn117x0UFQ** · 4d ago

> It wouldn't be surprising if they uploaded their own content and then sued. Their owner is a long time crook.

dude on the left : https://commons.wikimedia.org/wiki/File:Blatinoawards.jpg

so pathetic

3 Reply Award Share ···

**V3Qn117x0UFQ** · 4d ago

scum bag as fuck too - they would allow file downloads with tracing inside and then use it to blackmail high profile execs : https://torrentfreak.com/porn-producer-says-hell-prove-that-amc-tv-exec-is-a-bittorrent-pirate-170818/

3 Reply Award Share ···

**LoyalteeMeOblige** · 6d ago

FW is also trying to get money out of gaytor too.

1 Reply Award Share ···

**Ikeels** · 6d ago

There's none of their content listed on the site.

1 Reply Award Share ···

**LoyalteeMeOblige** · 6d ago

I know, the mods made sure of that but they claim otherwise.

1 Reply Award Share ···

**Street_Anon** · 5d ago

Why I use a Seedbox.

1 Reply Award Share ···

**CdnDadBeef** · 7d ago

This doesn't look good...

https://torrentfreak.com/flavaworks-sues-operator-and-325-users-of-private-torrent-tracker-gay-torrents/

6 Reply Award Share ···

r/askgayb
agb
This is where
men for their
Advice. AskR
ELI5. Everyth
Created N
Public
1.7M
Weekly visitors
USER FLAIR
VisitEx
COMMUNITY I
R/ASKGAYBRO
1 Spam
2 Doxxi
3 Illegal
4 Low-e feedir
5 Reddi
GUIDELINES
This is a self-
Please use re
advantage. U
downvote wh
This is not a
Mod's interfe
is allowed ex
rules.
SORT BY FLAI
Not a questic
AMA St
Shitpost
MODERATORS
u/surpr
u/Autol

# EXHIBIT I

## Declaration of Phillip Bleicher — Doxing-Induced Harassment

*Bleicher v. Gulisano*

*Cited at Complaint ¶¶ 56–59, 84, 97*

### Contents


| | |
|---|---|
| **Part 1** | **Declaration under penalty of perjury, 28 U.S.C. § 1746**<br>Sworn declaration of Plaintiff Phillip Bleicher concerning the volume and character of harassing communications received since Defendant published the Doxing Block in or about June 2024. The declaration documents at least five hundred ninety-nine (599) unique unsolicited telephone numbers blocked on Plaintiff's iPhone since June 2024 and at least fifty-seven (57) preserved harassing voicemails received within the most recent thirty (30)-day window. Plaintiff's home address and unlisted cellular telephone number have been redacted from the body of the declaration; the unredacted information is preserved and available upon Court request. |

# EXHIBIT Q

## Declaration of Phillip Bleicher Concerning Doxing-Induced Harassment

### DECLARATION OF PHILLIP BLEICHER
### PURSUANT TO 28 U.S.C. § 1746

I, Phillip Bleicher, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge:

1. I am the Plaintiff in Bleicher v. Gulisano, the action to which this declaration is attached. I make this declaration of my own personal knowledge.

2. I am a citizen and lifelong resident of the State of Illinois. I reside at [REDACTED]. My personal cellular telephone number is [REDACTED]. That number has been registered on the National Do Not Call Registry since July 2, 2003, and is not listed in any public directory.

3. Until in or about June 2024, my personal cellular telephone received only a small number of unsolicited calls per year — fewer than I could count on one hand in a given month.

4. Beginning in or about June 2024, immediately after Defendant Michael Gulisano modified the article at https://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/ to add a block publishing my home address, my unlisted cellular telephone number, and my personal email address under the headline "For anyone being subjected to Mr. Bleicher's harassment as of June 2024, he allegedly can be directly contacted by mail at," the volume of harassing and unsolicited communications to my cellular telephone increased dramatically and has continued without interruption to date.

5. In response to that increase, I have been required to block harassing phone numbers using my iPhone's call-blocking feature in order to preserve the basic functionality of my own personal telephone. As of the date of this declaration, I have blocked at least five hundred ninety-nine (599) unique unsolicited telephone numbers since June 2024. The block list is preserved on my iPhone and is available for inspection.

6. In addition to the blocked calls, I have preserved on my iPhone at least fifty-seven (57) harassing or unsolicited voicemails received within the last thirty (30) days alone, and additional similar voicemails from earlier in the post-June-2024 period. The voicemails are preserved as audio files on my iPhone and are available for inspection.

7. The harassing communications I have received and continue to receive are the direct, foreseeable, and intended consequence of Defendant's publication of my private cellular telephone number, home address, and personal email address on his publicly accessible law-firm website under the headline labeling me a "Criminial, Conman, and Liar" and inviting third parties to contact me in connection with alleged "harassment."

8. The harassing communications have caused me significant emotional distress, sleep disruption, anxiety, fear of escalation, and ongoing disruption of my ability to use my own personal telephone for legitimate communications. I have been required to engage "Silence Unknown Callers" and other call-screening features that interfere with my ability to receive calls from new business contacts, attorneys, and other legitimate callers who are not yet in my contact list.

9. Carrier call detail records corroborating the foregoing call volume are preserved and are available upon request through my mobile carrier.

10. I have not consented, expressly or impliedly, to the publication of my home address, my unlisted cellular telephone number, or my personal email address by Defendant or by anyone else.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: MAY 28, 2026

At: Chicago, Illinois

**PHILLIP BLEICHER**

Declarant

# EXHIBIT J

## 11th Circuit Opinion — Gulisano v. Burlington, No. 20-12660 (May 12, 2022)

*Bleicher v. Gulisano*

*Cited at Complaint ¶¶ 5, 20, 75*

### Contents


| | |
|---|---|
| **Part 1** | **Published opinion of the United States Court of Appeals for the Eleventh Circuit**<br>Opinion affirming the imposition of Federal Rule of Civil Procedure 11 sanctions against Defendant Michael Gulisano. The Eleventh Circuit expressly found that Defendant “violated his duty of candor” and “acted in bad faith.” Offered as evidence of Defendant’s independently-adjudicated pattern of dishonesty in federal court. |

[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

---

No. 20-12660

---

MICHAEL GULISANO,

Interested Party-Appellant,

CATHY COHEN,

Plaintiff,

*versus*

BURLINGTON, INC.,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:18-cv-81420-BB

---

Before JORDAN, JILL PRYOR, and MARCUS, Circuit Judges.

JILL PRYOR, Circuit Judge:

When attorney Michael Gulisano represented a client in a negligence action in the Southern District of Florida, he obtained a default judgment against a non-existent entity, "Burlington, Inc." He added an unrelated entity, Burlington Coat Factory Direct Corporation, as a judgment debtor on the resulting writ of execution. He used the writ of execution to levy funds from another entity, Burlington Stores, Inc. After Burlington Stores, Inc. and Burlington Coat Factory Warehouse Corporation protested and sought to quash the writ, Gulisano asked the district court in the Southern District of Florida to amend its default judgment order and name Burlington Stores, Inc. and Burlington Coat Factory Warehouse Corporation as judgment debtors. The district court denied the motion and, finding it to be legally and factually frivolous, imposed sanctions under Federal Rule of Civil Procedure 11. It also denied Gulisano's motion for reconsideration of the sanctions order. After careful review and with the benefit of oral argument, we affirm.

## I. FACTS[1]

While Cathy Cohen was shopping at a Burlington Coat Factory store in Royal Palm Beach, Florida, she looked at a set of tables on display. When Cohen attempted to inspect the tables, they fell on her knee. Cohen jumped back to avoid the falling tables, injuring her neck and back.

Cohen hired Gulisano as her attorney. He filed a civil action on her behalf in federal court in the Southern District of Florida. The complaint Gulisano drafted alleged that defendant "Burlington, Inc."[2] had been negligent and was liable for damages to Cohen. Gulisano served a summons and a copy of the complaint on CT Corporation System, ostensibly the registered agent of "Burlington, Inc." After "Burlington, Inc." failed to file an answer or otherwise respond to the lawsuit, the district court clerk entered a default. Following a hearing on damages, the district court entered a default judgment, awarding Cohen $677,774.75. The district court's final judgment named "Burlington, Inc." as the sole defendant.

To collect on the default judgment, Gulisano requested that the court issue a writ of execution naming "Burlington, Inc. a/k/a

[1] Because we write for the parties, we recount only the facts necessary to explain our decision.

[2] Gulisano referred to the defendant as both "Burlington Inc." and "Burlington, Inc." For the sake of consistency, this opinion will use "Burlington, Inc."

Burlington Coat Factory Direct Corporation" as the judgment debtor. The court issued the writ.

Seeking to execute the writ, Gulisano used employer identification numbers ("EIN")[3] to perform an asset search to find bank accounts from which he could levy funds. But, instead of using the EIN number of the judgment debtor, "Burlington, Inc."—which did not exist—he used the EIN numbers of two other entities: Burlington Stores, Inc. ("BSI") and Burlington Coat Factory Direct Corporation ("BCFDC"). BSI is the parent company of the entities that operate Burlington Coat Factory stores, including BCFDC and Burlington Coat Factory Warehouse Corporation ("BCFWC"), which operates the Florida stores. After locating bank accounts in New Jersey that belonged to BSI, Gulisano registered the judgment in the District of New Jersey. The New Jersey district court then issued a writ of execution against "Burlington, Inc." The United States Marshals Service delivered the writ to BSI's bank. The bank withdrew the amount of the judgment award, plus costs, from BSI's account.

Once they discovered the withdrawal, BSI and BCFWC filed a motion in the New Jersey district court to vacate the levy, quash the writ of execution, and vacate the default judgment. They pointed out that the writ of execution was based on a default

[3] An EIN number is the nine-digit tracking number that the Internal Revenue Service assigns to the tax accounts of businesses.

judgment entered against "Burlington, Inc.," but the judgment was levied on BSI, an unrelated entity not named in the Florida action.

Gulisano opposed the motion. He asserted that "Burlington, Inc." was a registered fictitious name or a misnomer that was similar enough to the correct name that it gave BSI and BCFWC—which he collectively referred to as "Burlington"—notice of the action.

The day after he filed his response in the New Jersey district court, Gulisano filed in the Florida district court a "Motion to Amend Final Default Judgment to Remove Any Ambiguity of the Correct Defendant's Identity." In this motion, Gulisano asked the district court to amend the default judgment so that all references to the defendant "Burlington, Inc." would become "Burlington, Inc. a/k/a Burlington Stores, Inc. a/k/a Burlington Coat Factory Warehouse Corporation." Doc. 33 at 6 (internal quotation marks omitted).[4] Gulisano requested this change in order to "remove any alleged ambiguity that 'Burlington, Inc.' is *not* the same entity as" BSI and BCFWC. *Id.* (emphasis in original). He contended that "Burlington, Inc." properly referred to BSI and BCFWC because the company went by multiple names, all of which included the word "Burlington." He argued that BSI and BCFWC were the same entity, operating under the fictitious name "Burlington, Inc." He also argued that he had served "Burlington" via its registered

[4] "Doc." numbers refer to the district court's docket entries.

agent, and that service on "Burlington, Inc." was effective service on BSI.

BSI and BCFWC opposed the motion to amend. They acknowledged that there were multiple entities that together owned and operated the retail stores known as Burlington Coat Factory, but stated that "Burlington, Inc." was not one of those entities. Nor was it a fictitious name for BSI or another Burlington Coat Factory entity. Therefore, they argued, the judgment against "Burlington, Inc.," a completely unrelated entity, was improperly levied on BSI. Noting that the New Jersey district court had granted their motion to quash the writ of execution, BSI and BCFWC asked the Florida district court to deny the motion to amend the judgment.

In the Florida district court, BSI and BCFWC also moved for sanctions under Federal Rule of Civil Procedure 11, asserting that the motion to amend was frivolous because Gulisano could not have reasonably believed that BSI and BCFWC used the fictitious name "Burlington, Inc." They also asserted that Gulisano had misrepresented to the court that effective service had been made on "Burlington, Inc."

The district court denied the motion to amend. It observed that, although Gulisano now argued that he had sued BSI and BCFWC under their purported fictitious name, the complaint had not alleged that the defendant used a fictitious name. And, despite many opportunities, Gulisano never sought to amend the complaint to add that allegation, nor did he attempt to voluntarily

dismiss the action without prejudice and initiate a new action against the intended entities. The district court found no support for his claims that "Burlington, Inc." was the same entity as or the fictitious name of BSI or BCFWC: "Appallingly, the Court has not identified a single piece of evidence . . . that substantiates the use of 'Burlington, Inc.' as the proper entity to be named in this action, either as a fictitious name or as a company authorized to conduct business in Florida." Doc. 50 at 9. The court observed that Gulisano's motion to amend failed to explain why the default judgment named "Burlington, Inc." but the writ of execution named BCFDC. It concluded, "Like the motion for writ of execution, it is clear that the instant Motion to Amend Judgment is a back-door attempt to correct an improperly named party and recover a $677,774.75 default judgment plus costs from the intended, but unnamed, entities without having to litigate the matter any further." *Id.* at 11.

In the same order, the court granted the motion for sanctions. It found that Gulisano had "add[ed] an independent and distinct legal entity to a motion for writ of execution that was neither referenced at any point in the litigation nor explicitly listed in the Court's Final Judgment" and had "attempt[ed] to conflate various distinct corporate entities in order to recover an award of damages obtained through a default judgment against a non-existent corporate entity." *Id.* at 13–14. The court found this conduct to be "both frivolous and dishonest." *Id.* at 13. It stated that a brief investigation would have revealed the proper entities to sue, but Gulisano's presuit investigation was "woefully deficient," and his post-judgment

investigation was done in bad faith. *Id.* at 14. Because of his "serious fraudulent conduct," the court granted the motion for Rule 11 sanctions against Gulisano. *Id.* at 18. It ordered him to pay attorney's fees and costs and referred him to the Florida Bar for appropriate disciplinary action.

Gulisano filed under Federal Rule of Civil Procedure 59 a motion for reconsideration of the court's order imposing sanctions. After a hearing, the court denied his motion, concluding that it merely disagreed with the court's reasoning and failed to establish a clear error of law or manifest injustice. It ordered him to pay $19,549.12 in sanctions.

Gulisano filed this appeal of the order granting sanctions and the order denying reconsideration.

## II. STANDARD OF REVIEW

We review a district court's imposition of Rule 11 sanctions for abuse of discretion. *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003). We must affirm unless we find that the court applied the wrong legal standard or based its ruling on a clearly erroneous assessment of the evidence. *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 694 (11th Cir. 1995).

We review for abuse of discretion a district court's denial of a motion for reconsideration under Rule 59. *Am. Home Assurance Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1238–39 (11th Cir. 1985).

## III. ANALYSIS

There are two issues before us on appeal: (1) whether the district court abused its discretion in granting BSI and BCFWC's motion for sanctions, and (2) whether the district court abused its discretion when it denied Gulisano's motion for reconsideration of the sanctions order. We see no abuse of discretion in the first issue and deem the second issue abandoned.

### A. The District Court Acted Within Its Discretion in Imposing Sanctions on Gulisano.

Federal Rule of Civil Procedure 11 authorizes a district court to impose sanctions against an attorney who files frivolous pleadings or motions. Fed. R. Civ. P. 11(b), (c).[5] Rule 11 sanctions are

---

[5] Rule 11 provides in pertinent part:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

warranted when a party files a pleading or motion that "(1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose." *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1314 (11th Cir. 2021) (internal quotation marks omitted).

Rule 11 imposes an affirmative duty on an attorney to conduct a reasonable inquiry into both the facts and the law before filing a pleading or motion. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991); *Mike Ousley Prods., Inc. v. WJBF-TV*, 952 F.2d 380, 382 (11th Cir. 1992). When deciding whether to impose sanctions under Rule 11, a district court must conduct a two-step inquiry, determining "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). A factual claim is frivolous when it has no reasonable factual

---

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

(c) Sanctions.

(1) In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

basis. *See id.* A legal claim is frivolous when it has no reasonable chance of succeeding. *See id.* When the attorney's evidence is "merely weak," but supports a claim under existing law after a reasonable inquiry, sanctions are unwarranted. *Id.* Sanctions are warranted, however, when the attorney exhibits "a deliberate indifference to obvious facts." *Id.* (internal quotation marks omitted).

If the attorney failed to make a reasonable inquiry, then "the court must impose sanctions despite the attorney's good faith belief that the claims were sound." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). The reasonableness of the inquiry depends on the circumstances of the case. *See id.*

In addition, an attorney's obligations with respect to the contents of pleadings or motions are not measured solely as of the time when the pleading or motion is initially filed with the court, but also at the time when the attorney, having learned the claims lack merit, reaffirms them to the court. *Turner v. Sungard Bus. Sys., Inc.*, 91 F.3d 1418, 1422 (11th Cir. 1996) (citing Fed. R. Civ. P. 11(b) advisory committee's note to 1993 amendment). "That the contentions contained in the complaint were not frivolous at the time it was filed does not prevent the district court from sanctioning [the attorney] for his continued advocacy of them after it should have been clear that those contentions were no longer tenable." *Id.*

The district court did not abuse its discretion when it determined that Gulisano's claim that the default judgment against "Burlington, Inc." allowed him to collect damages from BSI and BCFWC was objectively frivolous. That claim was undergirded by

two arguments. First, Gulisano argued that "Burlington, Inc." was the fictitious name of BSI and BCFWC. That argument was frivolous because there were no facts to support it. Second, he argued that a judgment entered against a corporation's fictitious name could bind multiple distinct corporate entities. That argument was frivolous because it ignored basic principles of corporations law.

First, there was no factual support for Gulisano's claim that "Burlington, Inc." was the fictitious name of BSI and BCFWC. It is true that Gulisano attached hundreds of pages to the motion to amend to illustrate that BSI used the name "Burlington," including pictures from the website, pictures of the interiors of Burlington stores, the federal trademark registration of the Burlington logo, and BSI's SEC 10-K Form. But he presented no evidence that BSI or any other Burlington entity used the name "Burlington, Inc." Nor did he show that "Burlington, Inc." was a corporate entity in Florida or anywhere else. Eventually Gulisano admitted to the district court that "Burlington, Inc." did not exist.

Nor was "Burlington, Inc." a fictitious name. In Florida, a corporation engaging in business under a fictitious name must first register the name with the State. Fla. Stat. § 865.09(3)(a). State records show that "Burlington, Inc." was not a registered fictitious name. BSI stated that neither it nor any other Burlington entity used the name. Gulisano provided evidence that BCFWC applied for two fictitious names in Florida, "Burlington" and "Burlington Coat Factory." But he produced no evidence revealing use or registration of the fictitious name "Burlington, Inc." Without this

evidence, he failed to support the factual contention made in the motion to amend that he had sued BSI and BCFWC under their fictitious name.

Second, there was no legal support for Gulisano's argument that his judgment against "Burlington, Inc." entitled him to collect monies from BSI or BCFWC. In Florida, a corporation must be sued under its corporate name. *RHPC, Inc. v. Gardner*, 533 So. 2d 312, 314 (Fla. Dist. Ct. App. 1988). A corporation operating under a fictitious name has no independent legal existence. *Osmo Tec SACV Co. v. Crane Env't, Inc.*, 884 So. 2d 324, 327 (Fla. Dist. Ct. App. 2004). "In pleadings, the corporate name must be strictly used." *RHPC, Inc.*, 533 So. 2d at 314. The district court explained that, when suing an entity under its fictitious name, the plaintiff should state the entity's true name, the designation "d/b/a" or "doing business as," and the fictitious name. Thus, even if "Burlington, Inc." had been the registered fictitious name of BSI or BCFWC, Gulisano should have included those proper corporate names in the complaint. He failed to do so. Instead, he named only "Burlington, Inc." without including a d/b/a designation.

The district court denied the motion to amend and rejected Gulisano's argument that "Burlington, Inc." was a fictitious name. On appeal, Gulisano argues that "Burlington, Inc." was a typographical error—he had accidentally omitted "Stores" from the party's name on the complaint and repeated the error throughout the suit. It hardly matters whether Gulisano intentionally chose to use a fictitious name or inadvertently repeated a mistake. He tried

to use a judgment against a non-existent party to collect from an unrelated non-party and persisted in his attempts well past the time when he learned of his error. We agree with the district court's conclusion that "the factual and legal contentions asserted [in the motion were] objectively frivolous." Doc 50. at 14.[6]

We turn now to the question whether Gulisano should have known that his arguments were legally and factually frivolous. Our answer is yes. Gulisano should have known that the motion to amend was frivolous because "even the most minimal investigation would have alerted" him that there was no such entity as "Burlington, Inc." *McGreal*, 87 F.3d at 1255. The district court found that a search of registered corporations in Florida would have revealed proper Burlington Coat Factory entities that he could have sued. And we know that Gulisano could have performed such an investigation because, after obtaining the default judgment against "Burlington, Inc.," he used the EIN numbers of BSI and BCFDC to locate their assets. He failed to mention whether he performed an asset search on "Burlington, Inc." or what, if anything, he found. That he had to identify other entities from which to collect the

[6] Gulisano said that he effected service on BSI through its registered agent. The agent said that it sent Gulisano a letter rejecting service on "Burlington, Inc." Gulisano said that he never saw the letter. BSI and BCFWC said that neither BSI, nor any related entity, ever received notice of the complaint. The district court explicitly declined to resolve or rely on the notice issue. Because we, like the district court, need not resolve the issue to decide that sanctions were warranted, we do not address it further.

judgment should have informed him that the named judgment debtor did not exist.

Even if Gulisano had failed to discover that "Burlington, Inc." was non-existent and unrelated to the other Burlington entities, he learned these facts from BSI and BCFWC's motion to quash the writ and opposition to the motion to amend. Though BSI and BCFWC had "alerted [him] to the potential impropriety of his collection efforts," Gulisano persisted in claiming that he could collect the award from BSI, BCFWC, or BCFDC, despite failing to name any of them as parties to the default judgment. Doc. 50 at 15. The district court properly concluded, "[I]t is abundantly clear that Mr. Gulisano should have known, and seemingly did know, that the claims he asserted during these proceedings were objectively and patently frivolous." *Id.* at 15. Gulisano violated his duty of candor by "insisting upon a position after it [was] no longer tenable." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (internal quotation marks omitted). And, because "[a] finding of bad faith is warranted where . . . a frivolous argument is knowingly or recklessly raised," the district court correctly determined that Gulisano acted in bad faith. *Johnson*, 9 F.4th at 1314 (alteration adopted) (internal quotation marks omitted). We thus conclude that the district court acted well within its discretion in imposing sanctions on Gulisano.

Gulisano's arguments against the sanctions order are unpersuasive. He asserts that the court improperly punished his conduct throughout the litigation rather than looking solely at the challenged motion. But to determine whether the motion to amend

judgment warranted sanctions, the court had to examine whether Gulisano conducted a reasonable inquiry before filing the motion. It thus was required to look beyond the four corners of the motion to the attorney's conduct. *See McGreal*, 87 F.3d at 1254–55 (affirming sanctions on an attorney who accepted his client's assertions without questioning the client about damages, obtaining or examining any data, or contacting a third party who could shed light on the claim's validity). The district court properly considered Gulisano's reasonable-inquiry conduct preceding the filing of the motion to amend judgment.

Gulisano also argues that the sanctions motion flouted Rule 11's safe harbor provision. The safe harbor provision requires the moving party to serve the motion for sanctions on the nonmoving party and give it 21 days to withdraw the offending pleading before filing the motion with the district court. Fed. R. Civ. P. 11(c)(2). Gulisano does not argue that BSI and BCFWC failed to do that. Rather, he argues that the sanctions were aimed at conduct that had already taken place and could not be withdrawn. Although the district court considered Gulisano's prior conduct, it imposed sanctions based on the motion itself. The court stated, "[C]ontinuing to argue Plaintiff's entitlement to collect the Final Judgment amount from corporate entities not named or involved in the instant action *by filing and defending the instant Motion*[], despite the utter lack of legal or factual support, is precisely the type of conduct subject to Rule 11's duty of candor." Doc. 50 at 16 (emphasis added). Gulisano admits that he could have withdrawn the motion. Thus, the

district court acted within its discretion when it imposed sanctions on a motion that could have been withdrawn under the safe harbor provision.[7]

### B. The District Court Acted Within Its Discretion in Denying Gulisano's Motion for Reconsideration.

Gulisano asked the court to reconsider its decision to impose sanctions. After conducting an evidentiary hearing, the district court denied his motion. Gulisano challenges the denial on appeal, but he has abandoned this challenge. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). He failed to support the claim with arguments and citations to authority. *See id.* at 681. Instead, he merely appended, repeatedly, the same sentence to the end of his arguments against sanctions: "In the alternative, the court abused its discretion by denying the Appellant's Motion for Reconsideration, which raised this issue as grounds for doing so." Appellant's Brief at 39, 43, 47, 52, 54. These appended sentences are mere "passing references" that cannot raise an issue for appellate review. *Sapuppo*, 739 F.3d at 681. We consider the issue abandoned.

---

[7] Gulisano contends that the amount of attorney's fees awarded as sanctions was too high because BSI failed to mitigate its damages. This argument lacks merit. First, it is, at best for Gulisano, unclear whether any duty to mitigate damages was owed. Second, BSI asked Gulisano to withdraw the motion to amend judgment, and Gulisano refused, forcing BSI to incur attorney's fees in defending against the motion. So, it seems to us that Gulisano himself prevented BSI from mitigating its damages.

Were we to reach the merits, however, we would affirm the district court's denial of the Rule 59(e) motion for reconsideration. The court found that the motion "amount[ed] to no more than disagreement with the Court's reasoning and ultimate conclusions." Doc. 70 at 10. It failed to establish a clear error of law or manifest injustice as required. Because the motion merely "relitigate[d] old matters," the district court was within its discretion to deny it. *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005).

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's order imposing sanctions and its denial of the motion for reconsideration.

**AFFIRMED.**

# EXHIBIT K

## Florida Bar Admission of Minor Misconduct — Case No. 201850205

*Bleicher v. Gulisano*

*Cited at Complaint ¶ 74*

## Contents


| | |
|---|---|
| **Part 1** | **Defendant's Admission of Minor Misconduct under Florida Bar Rule 3-5.1(b)(5)**<br>Defendant's 2018 admission that he "unreasonably and vexatiously multiplied the proceedings" while representing defendants in federal litigation. Offered alongside Exhibit S-2 to establish Defendant's documented pattern of professional misconduct. |

**IN THE SUPREME COURT OF FLORIDA**
(Before a Grievance Committee)

THE FLORIDA BAR, TFB File No.: 2018-50,205(17E)

Complainant,

v.

MICHAEL GULISANO,

Respondent.
_______________________________________/

**ADMISSION OF MINOR MISCONDUCT PURSUANT TO RULE 3-5.1(b)(5)**

Respondent says:

1. I am aware that Rule 3-5.1(b)(3) reads in part,

> [I]f the respondent admits guilt of minor misconduct and the committee concurs, the grievance committee will file its report recommending an admonishment, the manner of administration, the taxing of costs, and an assessment or administrative fee in the amount of $1,250 against the respondent. The report recommending an admonishment will be forwarded to staff counsel and the designated reviewer for review. If staff counsel does not return the report to the grievance committee to remedy a defect in the report, or if the report is not referred to the disciplinary review committee by the designated reviewer ... the report will then be served on the respondent by bar counsel. The report and finding of minor misconduct becomes final unless rejected by the respondent within 15 days after service of the report.

2. Pursuant to Rule 3-5.1(b)(5), I tender this Admission of Minor Misconduct.

3. If this Admission is accepted by the Committee and the Committee report is approved by the Florida Bar, this Admission shall be in full force and effect, and I shall pay any costs incurred in the proceeding including a $1,250.00 administrative cost.

4. I am aware that the Board of Governors of the Florida Bar may order me to appear before it for administration of an Admonishment.

5. If this Admission is not accepted by the Committee or an Admonishment is not approved, this tendered Admission will be null and void, and no part of the Admission may be used as evidence bearing upon the complaint.

6. The following allegations form the basis of my Admission of Minor Misconduct:

> Respondent represented the debtors in a bankruptcy case. The bankruptcy court issued a final judgment on September 26, 2017. After making a determination that Respondent had "... unreasonably and vexatiously multiplied the proceedings ....", the bankruptcy court issued an order sanctioning Respondent pursuant to 28 U.S.C.§ 1927 and 11 U.S.C. §105. On September 6, 2017 the

> bankruptcy court issued an order of sanctions against Respondent and suspended Respondent for one year from practicing before the U.S. Bankruptcy Court for the Southern District of Florida and imposed a $40,000.00 monetary sanction against Respondent.

7. Respondent admits that by reason of the foregoing, he has violated the following Rules Regulating the Florida Bar: Rule 4-3.3(a)(1); Rule 4-3.4(a); Rule 4-3.4(c), and Rule 4-8.4(a).

8. Although one of the excluding factors listed in Rule 3-5.1(b)(1)(E) is present, Rule 3-5.1(b)(2) provides, "A grievance committee may recommend an admonishment for minor misconduct or diversion to a practice and professionalism enhancement program when unusual circumstances are present, despite the presence of 1 or more of the criteria described in subpart (1) of this rule."

9. Respondent believes there are mitigating circumstances that may justify a reduction in the degree of discipline to be imposed as follows. Respondent is remorseful. Respondent was admitted to practice law in 2011 and has no prior disciplinary history. Respondent did not possess a dishonest or selfish motive during the above conduct and made received no financial gain from that conduct. Respondent made a full and free disclosure to the Bar and had a cooperative attitude towards Bar proceedings. Additionally, the Bankruptcy Court already imposed a suspension and sanctions against the Respondent. Respondent complied with the terms and conditions of the sanctions, completed the suspension, and was readmitted to the Bankruptcy Court.

10. Respondent agrees to complete the Florida Bar's Ethics School within one year from the date of acceptance of this Admission of Minor Misconduct, and be responsible for payment of this workshop fee.

DATED October 10, 2019.

Michael Gulisano, Esquire
Florida Bar No. 87573

The Law Offices of Michael Gulisano, PLLC
5645 Coral Ridge Drive, Suite 207
Coral Springs, FL 33076
954-947-3972
954-947-3910 (fax)
michael@gulisanolaw.com

# EXHIBIT L

## Florida Bar Report of Minor Misconduct — Case No. 201850205

*Bleicher v. Gulisano*

*Cited at Complaint ¶ 74*

### Contents


| | |
|---|---|
| **Part 1** | **Florida Bar disciplinary report**<br>Florida Bar Report of Minor Misconduct in Discipline Case No. 201850205, the matter in which Defendant tendered the admission contained at Exhibit S-1 and received an admonishment issued March 16, 2020. |

IN THE SUPREME COURT OF FLORIDA
(Before a Grievance Committee)

THE FLORIDA BAR,

Complainant,

v.

MICHAEL GULISANO,

Respondent.

_____________________________/

The Florida Bar File
No. 2018-50,205(17E)

**REPORT OF MINOR MISCONDUCT**

I. COMMITTEE RECOMMENDATION: Pursuant to Rule 3-7.4 of The Rules Regulating The Florida Bar, the committee accepts respondent's tendered admission of minor misconduct and recommends that respondent receive an admonishment. The admonishment should be administered by service of this report. Respondent shall attend The Florida Bar's Ethics School as detailed below.

II. SUMMARY OF MISCONDUCT AND RULE VIOLATIONS FOUND:

Respondent represented debtors in a bankruptcy proceeding. Sometime after the bankruptcy petition was filed, one of the debtors informed respondent about a potential claim for breach of contract. This claim was not included in the petition for bankruptcy and the debtor had not made the respondent aware of this potential claim before the bankruptcy petition was filed. After the debtors received a discharge in bankruptcy, the trustee learned about the potential claim and the court

granted the trustee's motion to reopen the bankruptcy case. It was during these subsequent proceedings that the bankruptcy court issued its final judgment making the determination that respondent had unreasonably and vexatiously multiplied the proceedings and sanctioned respondent's conduct by suspending respondent for one year from practicing before the U.S. Bankruptcy Court for the Southern District of Florida and imposing a $40,000.00 monetary sanction.

Respondent admits to having violated R. Regulating Fla. Bar: 4-3.3(a)(1) [ A lawyer shall not knowingly:(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer]; 4-3.4(a) [A lawyer must not: (a) unlawfully obstruct another party's access to evidence or otherwise unlawfully alter, destroy, or conceal a document or other material that the lawyer knows or reasonably should know is relevant to a pending or a reasonably foreseeable proceeding; nor counsel or assist another person to do any such act]; 4-3.4(c) [knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists]; and 4-8.4(a) [A lawyers shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another.].

III. COMMENT ON MITIGATING, AGGRAVATING OR EVIDENTIARY MATTERS: The committee believes that the following comment on mitigating,

aggravating and evidentiary matters will be helpful in considering acceptance of the report. Respondent was admitted to the bar in 2011. Respondent has submitted an admission of minor misconduct in this matter which is attached as Exhibit A to this report. The committee notes that while respondent's conduct was not ideal and must be addressed, there are some unusual circumstances in this case that when taken together with the mitigating factors result in the committee's recommendation to accept respondent's admission of minor misconduct. First, respondent received a substantial suspension and monetary sanction from the bankruptcy court for his conduct. Respondent has completed the suspension and the trustee filed a notice of compliance with the bankruptcy court stating that respondent complied fully with the payment/monetary obligations. Second, respondent appears to recognize that he may not have effectively communicated his expression of remorse for his actions to the court and the opposing party. Third, by stating in his admission that he wants to take part in The Florida Bar's Ethics School, respondent appears to recognize that he would benefit from more training on the Rules of Professional Conduct. In addition, based on the review of this matter and respondent's admission, the committee submits that the following mitigating factors are present – 9.32(a) absence of prior disciplinary record; 9.32(f) inexperience in the practice of law; 9.32(k) imposition of other penalties or sanctions; and 9.32(l) remorse.

IV. ADMONISHMENT: Michael Gulisano, your actions in this case were not in accordance with the high standards expected of a member of the legal profession. The privilege to practice law carries responsibilities and you must be mindful of the ethical duties that you are expected to uphold as member of the legal profession. In this instance, your actions have discredited the legal profession of the State of Florida. Such conduct cannot be tolerated by your fellow lawyers and should not be tolerated by you. Pride in your profession demands that you not violate the Rules of Professional Conduct again. If you do, your present misconduct will be considered in future disciplinary proceedings.

V. COSTS: The cost of these proceedings is assessed against respondent as follows:

| | | |
|---|---|---|
| Administrative Costs | $1,250.00 | |
| TOTAL | | $1,250.00 |

FEES: The following program is recommended, and respondent shall pay the fee of this matter which is as follows: Respondent shall attend The Florida Bar's Ethics School within six months of the service of this recommendation upon respondent and/or respondent's counsel.

| | | |
|---|---|---|
| The Florida Bar's Ethics School | $750.00 | |
| TOTAL | | $750.00 |

**Costs are due The Florida Bar within 30 days from acceptance of this minor misconduct recommendation.**

Pursuant to Rule 1-3.6(c) of The Rules Regulating The Florida Bar, any person now or hereafter licensed to practice law in Florida shall be deemed a delinquent member if the member fails to pay the costs assessed in diversion or disciplinary cases within 30 days after the disciplinary decision or diversion recommendation becomes final, unless such time is extended by the board of governors for good cause shown. Delinquent members shall not engage in the practice of law in Florida nor be entitled to any privileges and benefits accorded to members of The Florida Bar in good standing.

Dated this 20 day of February, 2020.

Seventeenth Judicial Circuit Grievance Committee "E"

BY ____________________
Geoffrey Adam Lottenberg, Chair

# EXHIBIT M

## Transcript — November 20, 2015 Discovery Hearing

*Bleicher v. Gulisano*

*Cited at Complaint ¶¶ 18–19*

### Contents


| | |
|---|---|
| **Part 1** | **Court reporter's transcript of proceedings**<br>Transcript of the discovery hearing held November 20, 2015 in Flava Works, Inc. v. Roy, et al., No. 1:14-cv-23208-JAL (S.D. Fla.), before the Honorable Joan A. Lenard. The hearing followed Defendant's eleventh-hour Motion to Withdraw (Doc. 91) filed the prior afternoon. Offered to establish what actually occurred at the hearing and to refute Defendant's narrative of events. |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 14-23208-CIV-LENARD-GOODMAN

FLAVA WORKS, INC.,

Plaintiff,

vs.

Miami, Florida
November 20, 2015
Pages 1-51

A4A RESEAU, INC., *et al.*,

Defendants.

---

TRANSCRIPT OF DISCOVERY HEARING
BEFORE THE HONORABLE JONATHAN GOODMAN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFF:

*The Law Offices of Michael Gulisano, PLLC*
**BY: MICHAEL GULISANO, ESQ.**
5613 Northwest 117th Avenue
Coral Springs, Florida 33076

*Shambee Law Office, LTD*
**BY: JUNEITHA SHAMBEE, ESQ.**
PO Box 91
Evanston, Illinois 60204
(Appearing telephonically)

FOR THE DEFENDANTS:

*Bradley Legal Group, P.A.*
**BY: JOHN BRADLEY, ESQ.**
15 Northeast 13th Avenue
Fort Lauderdale, Florida 33301

PROCEEDINGS RECORDED BY DIGITAL AUDIO RECORDING
TRANSCRIPT PRODUCED BY COMPUTER

**REPORTED BY:** **DAWN M. SAVINO, RPR**
**Official Court Stenographer**
**400 N. Miami Avenue, 10S03**
**Miami, Florida 33128**
**Telephone: 305-523-5598**

P-R-O-C-E-E-D-I-N-G-S

COURTROOM DEPUTY: Calling case 14-23208-civil-Lenard, Flava Works, Inc. versus A4A Reseau, Inc., et al.

The Honorable Jonathan Goodman presiding.

THE COURT: Good afternoon, folks. This is Jonathan Goodman.

And let's have appearances starting first with the Plaintiff.

MR. GULISANO: Michael Gulisano on behalf of the Plaintiff, Your Honor.

MR. BLEICHER: And Phillip Bleicher, B L E I C H E R, the CEO of Flava Works.

THE COURT: Next to you?

MR. BLEICHER: That's me.

THE COURT: Okay. Let me just -- all right. Let me just write this down. How do you pronounce your last name, sir?

MR. BLEICHER: It's pronounced Bleicher.

THE COURT: All right. And you're here from Chicago?

MR. BLEICHER: Yes.

THE COURT: All right. Thank you very much.

And who is here on behalf of the Defendant?

MR. BRADLEY: Thank you, Judge. John Bradley, Bradley

Legal Group, and my paralegal Joanna Lubchanski (ph) is here with us today.

THE COURT: Common spelling?

MR. BRADLEY: As you mentioned a couple weeks ago.

THE COURT: Same joke? Oh my gosh, I got to come up with something different.

MR. BRADLEY: That's a point well-taken.

THE COURT: And I think -- folks, please sit down. And I think we have somebody who is trying to call in, so let's see if that can be accomplished.

Mr. Bleicher, who is it who you think is going to be calling in?

MR. BLEICHER: Her name is Juneitha Shambee.

THE COURT: Oh, yes. She's also from Chicago?

MR. BLEICHER: Yes.

THE COURT: Actually Evanston, I guess.

MR. BLEICHER: Yes.

THE COURT: All right. So she's a Florida Bar member?

MR. BLEICHER: Yes, she is and she's applied for the Southern District and should be getting accepted within a couple of weeks.

THE COURT: All right. Bear with me just a minute. So we'll just wait a little while for Ms. Shambee to phone in. I think that's in the works.

Evanston is where Northwestern is, right?

MR. BLEICHER: Yes.

MS. SHAMBEE: Hello?

THE COURT: Yes. Hi. Is this Ms. Shambee?

MS. SHAMBEE: Yes, it is.

THE COURT: All right. Ms. Shambee, my name is Jonathan Goodman, I'm the United States Magistrate Judge assigned to the case. You are phoning in here now into Federal District Court. We are here with Mr. Bleicher and also his counsel, Michael Gulisano, and also counsel for the defense.

So I understand you're a member of the Florida Bar; is that right?

MS. SHAMBEE: I am, yes.

THE COURT: All right. Very well.

Okay, folks. So we're here for a discovery hearing.

By the way, I note that the other day, Mr. Gulisano, you filed a motion to withdraw as counsel and Judge Lenard denied that without prejudice. Ms. Shambee, is your intent to come into the case and substitute for Mr. Gulisano?

MS. SHAMBEE: Once I get my federal license there, yes.

THE COURT: All right. Once you're admitted to the Southern District of Florida?

MS. SHAMBEE: Yes. I've already submitted my application, I'm just waiting on the signature of the judge.

THE COURT: I understand. All right.

So Mr. Gulisano, I take it that once that happens,

you'll be filing a renewed motion to withdraw?

MR. GULISANO: I believe so, Your Honor. I believe all matters will come out during the hearing, but yes.

THE COURT: I'm sorry?

MR. GULISANO: Yes, Your Honor.

THE COURT: All right. Fair enough. So for the time being, Mr. Gulisano, you're here as counsel for Flava Works, Inc.?

MR. GULISANO: Correct, I'm the attorney of record.

THE COURT: I'm sorry?

MR. GULISANO: I'm the attorney of record, Your Honor, yes.

THE COURT: Yes. I understand.

So I understand we have another discovery dispute, and so why don't you tell me what's happening.

MR. BRADLEY: Thank you, Judge.

Judge, we've been chasing discovery and actually collection of this judgment, we are a judgment creditor -- pardon me. I sound a little bit too loud, at least here.

THE COURT: I can turn the volume down.

MR. BRADLEY: That's all right. If it's okay with you, it's okay with me. I just thought I was going to get feedback.

We've been chasing the judgment since April in this case and the discovery since June. We've had all kinds of antics and failures to reply. We previously had an order from

right here and Mr. Bradley mentioned that we had a conversation. These are one of the reasons that I got a little frustrated and wanted to withdraw because I -- yes, obviously the bank statements should not be redacted.

MR. BLEICHER: The reason for my redacting them, I'm the one that took the initiative because the other attorney, Joshua, had said I should do something like that. Was because they contained the payees -- whenever we would send an ACH, on the bank statement it would say ACH transfer to this person and the payees -- I'm referring to like the models' names, it would being like -- John Doe would be their real name, then their stage name is something different. We were protecting their privacy.

And I understand, it was my mistake, but that's why I have them here and I will turn them over right now.

THE COURT: Have you kept a master set for yourself?

MR. BLEICHER: Yes, I do.

THE COURT: Are those Bates numbered or not?

MR. BLEICHER: No, they're not.

THE COURT: I'm not going to have you turn them over in an unBates way because given the history here, I'm trying to avoid a dispute and I don't want to be in a situation three weeks from now where you say you've turned over a particular bank record and the other side says no, I haven't and there's no way to figure out what was turned over. So I appreciate your

produced one week after the written category by category response, and they will need to be produced with Bates designations. To the extent that you are withholding the documents on the basis of privilege, you will need to produce a privilege log by the same date.

Now, let me make an observation, if I can. Whether or not you're going to have current counsel or counsel in Chicago or some other lawyer representing you, all of these projects, so to speak, that your lawyers will need to be doing over the next few weeks are going to be generating a very significant amount of fees, even at some fairly discounted rate. And I realize that you owe $28,000 but you may soon be incurring close to $28,000 in legal fees having your lawyers do all of these things, and then you're going to be perhaps on the hook for $56,000; $28,000 for the judgment, and then you're going to be owing your lawyers a whole bunch of money. And I am not going to be very patient with another motion for a lawyer to withdraw, I'm not going to be patient about a motion for an extension of time to do any of these assignments that I'm imposing now. There has been significant delay already, and you're going to need to comply, timely, with all of these, in effect, homework assignments.

But it's up to you how you choose to respond to this. One way is simply borrowing money and making the payment of this judgment to stop the bleeding so you don't have to pay your

prevailing party, the rule says fees. That's all.

All right? I think we've covered the hearing in the matters for today. We'll be in recess. Thank you.

MR. BLEICHER: Thank you, Your Honor.

(PROCEEDINGS CONCLUDED)

* * * * *

**C E R T I F I C A T E**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

________________ /s/ Dawn M. Savino

Date DAWN M. SAVINO, RPR

# EXHIBIT N

## Article Edit History — August 11–22, 2026

*Bleicher v. Gulisano*

*Cited at Complaint ¶¶ 137, 141*

## Contents


| | |
|---|---|
| **Part 1** | **Change captures of the Article as edited during this litigation**<br>Dated change captures (changes only) of gulisanolaw.com/phillip-bleicher-criminial-conman-liar/ [sic] as edited on or about August 11, 13, 15, 17, 19, 21, and 22, 2026 — seven server-documented edits, final CMS timestamp 2026-08-22T22:26:22Z — with the WordPress REST API record for post 339 and Plaintiff's authenticating declaration under 28 U.S.C. § 1746. Full dated captures are maintained separately and available on request. |

**August 11, 2026**

**“2026 Update” added: “pedophile[]”/“pedophilia,” Jeffery Epstein, web host “supports pedophiles and con-artists like Phillip Bleicher,” attack on counsel; Doxing Block still present**



# Phillip Bleicher – Criminial, Conman, and Liar

## Phillip Bleicher – A Man Who Stole $3 Million from Public Schools, Intentionally Exposes Employees to Aids, Operates Brothels in Residential Homes,

**BLOG CATEGORIES**

- Appeals
- Bankruptcy
- Cause of Actions
- Civil Litigation
- Civil Procedure
- Contracts
- Debt Collection
- Employment
- Evidence

## 2026 Update

Apparently, Bluehost supports pedophiles and con-artists like Phillip Bleicher, over its own customers of 10+ years. Mr. Bleicher whined like the baby he is and Bluehost has made it clear to me that it stands with the Jeffery Epstein class and against the victims of human trafficking.

As such, for anyone being subjected to harassment by one or more of *Mr. Bleicher's criminal enterprises*, as of June 2024, you can directly contact those criminal enterprises by mail at: 2705 West Fulton St., Chicago, IL 60612-2003; by phone at: 312-498-5815; and by email at: phil@lukebaby.com.

Alternatively, you can contact the current attorney, Corinthia Hicks at corinthia@flavaworks.com, who gladfully accepts Mr. Bleicher's blood money and supports his pedophilia and scams against honest hardworking Americans.

For Mr. Bleicher's many victims, you should know that, at least one court has already held that "Phillip Bleicher is the 'alter ego' of Flava Works, Inc. It is indisputable that Phillip Bleicher qualifies as a 'head of the corporation.'" *Flava Works, Inc. v. A4A Reseau, Inc.*, No. 14-23208-CIV, 2021 U.S. Dist. LEXIS 111014, at *10 (S.D. Fla. June 14, 2021).

Mr. Bleicher's many victims should also know that he filed bankruptcy in Illinois in 2022 to escape paying a substantial judgment entered against him and Flava Works. *See Flava Works, Inc. v. A4A Reseau, Inc.*, No. 14-23208-CIV, 2022 U.S. Dist. LEXIS 220758, at *2 (S.D. Fla. Dec. 7, 2022). If Mr. Bleicher alleges claims against you that occurred *prior to* 2022, and such claims were *not* disclosed to the bankruptcy court, then Mr. Bleicher committed fraud on the court.

**August 15, 2026**

**Doxing Block (address / cell / email) struck through and removed within hours of host enforcement; “pedophilia” content retained**

Phillip Bleicher - Criminial, Conman, and Liar — Gulisano Law, PLLC
Change Detected: 9 hours ago

Visual View | Text Changes

Summary | Changes 6 | Comments 0

Search Changes

- :
- ~~phil@lukebaby.com~~
- ~~, as of June 2024, you can directly contact those cri~~
- ~~Mr. Bleicher's criminal enterprises~~
- ~~For anyone being subjected to harassment by one or~~
- ~~Alternatively~~ For anyone being subjected to harassr

Jump to next

Text Added

Text Deleted

Bleicher's victims since posting this article back in 2016. However, if you are one of Mr. Bleicher's countless victims, I respectfully request that you not contact me. This article states everything I know and I am not willing to discuss issues with Mr. Bleicher.

## 2026 Update

~~Alternatively~~For anyone being subjected to harassment by one or more of Mr. Bleicher's criminal enterprises, you can contact the current attorney, Corinthia Hicks atcorinthia@flavaworks.com, who gladfully accepts Mr. Bleicher's blood money and supports his pedophilia and scams against honest hardworking Americans ~~. phil@lukebaby.com, as of June 2024, you can directly contact those criminal enterprises by mail at: 2705 West Fulton St., Chicago, IL 60612-2003; by phone at: 312-498-5815; and by email at: Mr. Bleicher's criminal enterprisesFor anyone being subjected to harassment by one or more of~~

For Mr. Bleicher's many victims, you should know that, at least one court has already held that "Phillip Bleicher is the 'alter ego' of Flava Works, Inc. It is indisputable that Phillip Bleicher qualifies as a 'head of the corporation.'" *Flava Works, Inc. v. A4A Reseau, Inc.*, No. 14-23208-CIV, 2021 U.S. Dist. LEXIS 111014, at *10 (S.D. Fla. June 14, 2021).

Mr. Bleicher's many victims should also know that he filed

**August 17, 2026**

**Photograph of Plaintiff added for the first time beside the “pedophilia” text;**

**“refused to pay me the $500 I billed him”;**

**capture with authentication declaration and SHA-256 hashes follows**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

PHILLIP BLEICHER, Plaintiff, v. MICHAEL GULISANO, Defendant.
Case No. 1:26-cv-06287 (Hon. John F. Kness; Mag. J. Young B. Kim)

---

## DECLARATION AUTHENTICATING WEB-PAGE CAPTURE (28 U.S.C. § 1746)

I, Phillip Bleicher, declare under penalty of perjury under the laws of the United States that the following is true and correct:

1. I am the Plaintiff in the above-captioned action and have personal knowledge of the facts stated herein.

2. On August 17, 2026, the web page located at https://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/ (the "Page"), which is published on a website operated by Defendant Michael Gulisano (Gulisano Law, PLLC), was accessed and captured through a web browser.

3. At the time of capture, the web server reported a last-modified date and time for the Page of 08/17/2026 18:56:24, indicating the Page had been edited that day.

4. The images attached hereto as Screens 1 through 3 are true and accurate depictions of the Page as it appeared on August 17, 2026, when captured. They have not been altered, edited, or manipulated in any way other than to divide the single web page into sequential screen images for legibility.

5. The SHA-256 cryptographic hash value of each attached image file is listed in the table below. These values allow the integrity of each image to be independently verified.

6. The full page text captured on the same date produced a SHA-256 hash value of 8e15f1e9afd1f8c0b193ac989c6ba0ccd6b812f52719d1c40597070cf4d1b06a.

| Attached image | SHA-256 |
|---|---|
| 01 Top - Lady Justice + headline + photo (Aug 17).jpg | bf4b3cb7da3012877984d5741ea7803840ba0bc9916381f9ff060e7aed3852b5 |
| 02 Re-added photo + headline + $500 billed statement (Aug 17).jpg | e8ca7b5f472351bb7c092d6bbb81ff5b12f6e9c7540410f89f10e6c5d7dd199d |
| 03 2026 Update block - Epstein + Motion links + alter-ego expanded (Aug 17).jpg | 93bd2dde43686403242f4b2c9d5b2c69b5ca759b1fef11f16a4522c5d8023422 |

Executed on August ____, 2026.

________________________________

**Phillip Bleicher**

[Counsel note: this declaration authenticates the capture under FRE 901(b)(1) and 28 U.S.C. § 1746. It may be signed by Plaintiff or by any person with knowledge who performed the capture. Fill in the execution date before filing.]

*Screen 1 — Top of the page: masthead, headline "Phillip Bleicher – Criminial, Conman, and Liar," and the re-added photo of Plaintiff.*




Captured Aug 17, 2026 — https://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/ — SHA-256 bf4b3cb7da3012877984d5741ea78038…

*Screen 2 — Re-added photo with caption “only known photo… not been scrubbed,” the sub-headline, and the statement “refused to pay me the $500 I billed him.”*





*This is the only known photo of Phillip Bleicher that has not been scrubbed from the internet.*

## Phillip Bleicher – A Man Who Stole $3 Million from Public Schools, Intentionally Exposes Employees to Aids, Operates Brothels in Residential Homes, Fabricates Evidence in Court, and Evades Taxes

In November 2015, I responded to a Craigslist ad from a company looking for an attorney to assist in its litigation for alleged infringements of its intellectual property. The ad was posted by the world-class scumbag and career-criminal Phillip Bleicher. For about one month, I worked on one of Mr. Bleicher’s numerous frivolous lawsuits, in which he extorts money out of innocent parties by threatening excessive litigation. After I had already done the work, Mr. Bleicher ***refused to pay me the $500 I billed him*** (a ridiculously small amount for a month’s worth of work). In addition to refusing to pay me anything, it became clear to me that Mr. Bleicher was using my services, and the services of other attorneys via Craigslist, to assist in his ongoing criminal activities. Consequently, I terminated my representation of Mr. Bleicher.

That is when shit got real. Mr. Bleicher attempted to blackmail me, demanding several thousand dollars otherwise he threatened file a bogus bar complaint against me, as well as, defame my name on the internet with slanderous and false allegations.

I made the following counter-offer to Mr. Bleicher: “go fuck yourself and pay me for the work I did.” Mr


**CONTACT INFORMATION**

GULISANO LAW PLLC

**Address**
1489 W. Palmetto Park Road, Suite 500
Boca Raton, FL 33486

**Phone**
954-947-3972

**Fax**
954-947-3910

**Email**
consult@gulisanolaw.com




Captured Aug 17, 2026 — https://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/ — SHA-256 e8ca7b5f472351bb7c092d6bbb81ff5b…

*Screen 3 — The “2026 Update” block: the “Jeffery Epstein” reference, the “Motion to Dismiss!!! / Motion for Sanctions!!!” links, the “supports his pedophilia” line naming counsel, and the expanded alter-ego passage.*

## 2026 Update

In 2017, one brave American hero had the balls to stand up to Phillip Bleicher’s criminal enterprises. This complaint from the historic lawsuit, John Doe v. Phillip Bleicher a/k/a Flava Works, Inc., is a work of art. Although, I was saying this 1 year before it was filed, it completely exposes Bleicher’s profiteering by blackmailing homosexual men.

Mr. Bleicher’s many victims should also know that, in 2022, he filed bankruptcy in Illinois o escape paying a substantial judgment entered against him and Flava Works. *See Flava Works, Inc. v. A4A Reseau, Inc.*, No. 14-23208-CIV, 2022 U.S. Dist. LEXIS 220758, at *2 (S.D. Fla. Dec. 7, 2022). If Mr. Bleicher alleges claims against you that occurred *prior to* 2022, and such claims were *not* disclosed to the bankruptcy court, then Mr. Bleicher committed fraud on the court.

In 2026, the consummate pipsqueak, Phillip Bleicher, foolishly sued me in Illinois for posting *this article 10 years ago in 2016*!!! I know he’s lonely without his friend, Jeffery Epstein, but I’ll never back down to their kind. Motion to Dismiss!!! Motion for Sanctions!!!

For anyone being subjected to harassment by one or more of Mr. Bleicher’s criminal enterprises, you can contact the current attorney, Corinthia Hicks at corinthia@flavaworks.com, who gladfully accepts Mr. Bleicher’s blood money and supports his pedophilia and scams against honest hardworking Americans.

For Mr. Bleicher’s many victims, you should know that, at least one court has already held that “Phillip Bleicher is the ‘alter ego’ of Flava Works, Inc. It is indisputable that Phillip Bleicher qualifies as a ‘head of the corporation.’” *Flava Works, Inc. v. A4A Reseau, Inc.*, No. 14-23208-CIV, 2021 U.S. Dist. LEXIS 111014, at *10 (S.D. Fla. June 14, 2021).

This means Phillip Bleicher can no longer hide behind the corporate shield of his criminal enterprises, which are *all* offshoots of Flava Works. If Flava Works or one of Bleicher’ other alter ego’s sues you, its legally the same as *if* Phillip Bleicher sued you. If you are ever sued by Flava Works or one of its numerous fraudulent subsidiaries, you could assert counterclaims against Phillip Bleicher personally!

Gulisano / / Legal News, Miscellaneous

Captured Aug 17, 2026 — https://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/ — SHA-256 93bd2dde43686403242f4b2c9d5b2c69…

**August 19, 2026**

**Caption rewritten: “recently recovered photo … leaching off his ‘performers’”; FlavaMen Blatino Awards 2009 photograph (Plaintiff’s copyrighted work)**

NEW Set an alert criteria for smarter notifications.




~~This is the only known~~ In a recently recovered photo ~~of~~, Phillip Bleicher ~~that has not been scrubbed from~~ can be seen leaching off his "performers" at the ~~internet~~infamous "FlavaMen Blatino Awards" ceremony held in Atlanta, Georgia on September 5, 2009. "The photo shows (left to right) Phillip Bleicher, Toccara Jones, and Warren Bullock."

~~In a recently recovered~~ This is the only known photo~~,~~ of Phillip Bleicher ~~can be seen leaching off his "performers."~~that has not been scrubbed from the internet.

A total of 21 changes have been detected. View changes




Current




Previous

Open page View changes Settings Pause alert

Summary | Changes 2

Adds a recovered photo caption describing Phillip Bleicher at the FlavaMen Blatino Awards in Atlanta on September 5, 2009, and identifying the people in the image as Phillip Bleicher, Toccara Jones, and Warren Bullock.

Set an alert criteria for smarter notifications.

Was this helpful?



*~~This is the only known~~ In a recently recovered photo ~~of~~, Phillip Bleicher ~~that has not been scrubbed from~~ can be seen leaching off his "performers" at the ~~internet~~infamous "FlavaMen Blatino Awards" ceremony held in Atlanta, Georgia on September 5, 2009. "The photo shows (left to right) Phillip Bleicher, Toccara Jones, and Warren Bullock."*

# Phillip Bleicher – A Man Who Stole $3 Million from Public Schools, Intentionally Exposes Employees to Aids, Operates Brothels in Residential Homes, Fabricates Evidence in Court, and Evades Taxes

In November 2015, I responded to a Craigslist ad from a company looking for an attorney to assist in its litigation for alleged infringements of its intellectual property. The ad was posted by the world-class scumbag and career-criminal Phillip Bleicher. For about one month, I worked on one of Mr. Bleicher's numerous frivolous lawsuits, in which he extorts money out of innocent parties

Jump to next

Text Added

Text Deleted

**August 21, 2026**

**Attack on Plaintiff's counsel reworded: "gladfully accepts Mr. Bleicher's blood money and supports his pedophilia and scams …"**

Phillip Bleicher - Criminial, Conman, and Liar — Gu...
Change Detected: 2 days ago

Visual View | Text Changes

Log in

Summary | Changes 3

Adds a Go to top anchor and a line stating Bleicher accepts blood money and supports scams against honest Americans. Removes a line alleging Bleicher's pedophilia and substitutes it with a broader statement about blood money and scams, affecting the page's portrayal of Bleicher.

Set an alert criteria for smarter notifications.

Was this helpful?

Text Added

Text Deleted

# Gulisano Law, PLLC

Better Legal Talent and Quality Work than the Large Firms. More Focus and Attention to Each Matter than the Small Firms.

Gulisano Law | Meet Michael Gulisano | Practice Areas | Client Reviews | Consultation | Legal Blog



## Phillip Bleicher – Criminial, Conman, and Liar



*In a recently recovered photo, Phillip Bleicher can be seen leaching off his ... Atlanta, Georgia on September 5, 2009. "The photo shows (left to right) Phillip Bleicher, Toccara Jones, and Warren Bullock."*

**Phillip Bleicher – A Man Who Stole $3 Million from Public Schools, Intentionally Exposes Employees to Aids, Operates Brothels in Residential Homes, Fabricates Evidence in Court, and Evades Taxes**

### BLOG CATEGORIES

- Appeals
- Bankruptcy
- Cause of Actions
- Civil Litigation
- Civil Procedure
- Contracts
- Debt Collection
- Employment
- Evidence
- Legal News
- Legal Theories
- Miscellaneous
- Personal Injury

### CONTACT INFORMATION

**Address**
1489 W. Palmetto Park Road, Suite 500
Boca Raton, FL 33486

**Phone**
954-947-3972

**Fax**
954-947-3910

**Email**

Legal

CURRENT: 2026-08-22 | PREVIOUS: 2026-08-20

London: 7:52 pm | New York: 2:52 pm | Hong Kong: 2:52 am

Phillip Bleicher - Criminial, Conman, and Liar — Gu...
Change Detected: 2 days ago

Visual View | Text Changes

Log in

Summary | Changes 3

Search Changes

~~Phillip Bleicher~~

~~This is the only known photo of Phillip Bleicher that~~

, who gladfully accepts Mr. Bleicher's blood money and supports his ~~pedophilia and~~ scams against honest hardworking Americans.

Jump to next

Text Added

Text Deleted

in Illinois o escape paying a substantial judgment entered against him and Flava Works. *See Flava Works, Inc. v. A4A Reseau, Inc.*, No. 14-23208-CIV, 2022 U.S. Dist. LEXIS 220758, at *2 (S.D. Fla. Dec. 7, 2022). If Mr. Bleicher alleges claims against you that occurred *prior to* 2022, and such claims were *not* disclosed to the bankruptcy court, then Mr. Bleicher committed fraud on the court.

In 2026, the consummate pipsqueak, Phillip Bleicher, foolishly sued me in Illinois for posting *this article 10 years ago in 2016*!!! I know he's lonely without his friend, Jeffery Epstein, but I'll never back down to their kind. Motion to Dismiss!!! Motion for Sanctions!!!

For anyone being subjected to harassment by one or more of Mr. Bleicher's criminal enterprises, you can contact the current attorney, Corinthia Hicks at corinthia@flavaworks.com, who gladfully accepts Mr. Bleicher's blood money and supports his ~~pedophilia and~~ scams against honest hardworking Americans.

For Mr. Bleicher's many victims, you should know that, at least one court has already held that "Phillip Bleicher is the 'alter ego' of Flava Works, Inc. It is indisputable that Phillip Bleicher qualifies as a 'head of the corporation.'" *Flava Works, Inc. v. A4A Reseau, Inc.*, No. 14-23208-CIV, 2021 U.S. Dist. LEXIS 111014, at *10 (S.D. Fla. June 14, 2021).

This means Phillip Bleicher can no longer hide behind the corporate shield of his criminal enterprises, which are *all* offshoots of Flava Works. If Flava Works or one of Bleicher' other alter ego's sues you, its legally the same as *if* Phillip Bleicher sued you. If you are ever sued by Flava Works or one of its numerous fraudulent subsidiaries, you could assert counterclaims against Phillip Bleicher personally!



× London: 7:53 pm | New York: 2:53 pm | Hong Kong: 2:53 am

**August 22, 2026**

**Solicitation added: “If you were one of Mr. Bleicher’s countless victims, especially if you were underage at the time, please feel free to contact me.”**

**Server CMS timestamp: post 339 modified 2026-08-22T22:26:22Z**

Phillip Bleicher - Criminial, Conman, and Liar — Gu...
Change Detected: 17 hours ago

Visual View | Text Changes

Log in

Summary | Changes 9

The Bleicher photo caption is rewritten and supplemented with a 2026 update and a victims-contact note. A 'Go to top' anchor is added to the page, and these changes broaden the discussion of Bleicher's alleged activities while improving site navigation.

Set an alert criteria for smarter notifications.

Was this helpful?

Text Added

Text Deleted

# Gulisano Law, PLLC

Better Legal Talent and Quality Work than the Large Firms. More Focus and Attention to Each Matter than the Small Firms.

Gulisano Law | Meet Michael Gulisano | Practice Areas | Client Reviews | Consultation | Legal Blog



## Phillip Bleicher – Criminial, Conman, and Liar



*Phillip Bleicher, in an ill-fitting suit at least 2 sizes too big, can be seen* his

*ceremony held in Atlanta, Georgia on September 5, 2009. According to Wikipedia, "The photo shows (left to right) Phillip Bleicher, Toccara Jo*) *Phillip Warren Bullock."*

## Phillip Bleicher – A Man Who Stole $3 Million from Public Schools, Intentionally Exposes Employees to Aids, Operates ...sidential Homes, Fabricates Evidence in Court, and Evades Taxes

BLOG CATEGORIES

- Appeals
- Bankruptcy
- Cause of Actions
- Civil Litigation
- Civil Procedure
- Contracts
- Debt Collection
- Employment
- Evidence
- Legal News
- Legal Theories
- Miscellaneous
- Personal Injury

CONTACT INFORMATION


Address
1489 W. Palmetto Park Road, Suite 500
Boca Raton, FL 33486

Phone
954-947-3972

Fax
954-947-3910

Email


Legal

CURRENT: 2026-08-23

PREVIOUS: 2026-08-22

London: 7:51 pm | New York: 2:51 pm | Hong Kong: 2:51 a

personally!

As of 2026, in light of his relentless obsession to harass me for opposing pedophilia, I have reconsidered my prior stance on this matter. If you were one of Mr. Bleicher's countless victims, especially if you were underage at the time, please feel free to contact me. Mr. Bleicher and his criminal enterprises must be held accountable for the injuries he caused you.

Go to top

---

**Authentication**

**28 U.S.C. § 1746 declaration for the August 11, 2026 captures follows.**

**[An omnibus declaration covering all seven dates will be executed by Plaintiff before filing.]**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

PHILLIP BLEICHER, Plaintiff,
v.
MICHAEL GULISANO, Defendant.
Case No. 1:26-cv-06287 (Hon. John F. Kness)

# EXHIBIT F

Declaration authenticating Exhibits A–E (28 U.S.C. § 1746; Fed. R. Evid. 901(b)(1))

Offered in support of Plaintiff's First Amended / Supplemental Complaint and related motions.

**Authentication**

**Declaration of Phillip Bleicher under 28 U.S.C. § 1746 follows, authenticating all captures in this Exhibit.**

**DECLARATION OF PHILLIP BLEICHER AUTHENTICATING EXHIBIT N**

**(28 U.S.C. § 1746)**

I, Phillip Bleicher, declare as follows on personal knowledge:

1. I am the Plaintiff in Bleicher v. Gulisano, No. 1:26-cv-06287 (N.D. Ill.). I make this declaration to authenticate Exhibit N to the First Amended and Supplemental Verified Complaint, which compiles change captures of the web page at gulisanolaw.com/phillip-bleicher-criminial-conman-liar/ (the "Article") as it was edited on or about August 11, 13, 15, 17, 19, 21, and 22, 2026.

2. The screen captures compiled in Exhibit N were made by me, or at my direction, from the live Article and from automated change-detection alerts delivered to my email by the Visualping monitoring service to which I subscribe. Each capture is a true and accurate copy of what appeared on my screen on the date reflected on its face.

3. The August 17, 2026 capture set within Exhibit N includes the authentication statement and SHA-256 hash values generated at the time of capture. The August 22, 2026 material includes the output of Defendant's own website content-management system (the WordPress REST API for post 339), retrieved on August 23, 2026, recording the Article's last modification as 2026-08-22T22:26:22Z and its original publication date as April 19, 2017.

4. The full-page dated captures from which these change excerpts are drawn are maintained in my files in unaltered form, together with hash manifests where generated, and are available to the Court and to Defendant on request.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 28, 2026, at Chicago, Illinois.

________________________________

Phillip Bleicher

# EXHIBIT S

## Email from Michael Gulisano to Corinthia Hicks, Esq. — August 20, 2026, 4:13 p.m.

*Bleicher v. Gulisano*

*Cited at Complaint ¶ 139*

### Contents

| | |
|---|---|
| **Part 1** | **Excerpt of the forwarded message (highlighting added)**<br>Defendant’s August 20, 2026 email describing his pending motion as one “against you and your pedophile client.” Filed as an excerpt of the forwarded message; highlighting added; forwarding counsel’s signature block omitted from the excerpt. The complete unaltered original is available to the Court and to Defendant on request. |

---------- Forwarded message ---------
From: **Michael** <michael@gulisanolaw.com>
Date: Thu, Aug 20, 2026 at 4:13 PM
Subject: Briefing Scehdule - 1:26-CV-06287
To: <corinthia@flavaworks.com>

Hicks:

I am contacting you in reference to a briefing schedule on my pending motion for sanctions against you and your pedophile client.

I propose 14 days for your response and 7 days for my reply. Please advise if we cannot agree on a briefing schedule so I may inform the court as such.

Thank you,

Michael Gulisano, Esquire

GULISANO LAW PLLC

1489 W. Palmetto Park Road, Suite 500

Boca Raton, FL 33486

954-947-3972

954-947-3910 (Fax)

# EXHIBIT T

## Certificate of Registration TX 7-145-774

*Bleicher v. Gulisano*

*Cited at Complaint ¶¶ 159–160*

## Contents


| | |
|---|---|
| **Part 1** | **U.S. Copyright Office Certificate of Registration**<br>Registration No. TX 7-145-774 — FlavaMen Magazine, Vol. 5, No. 3 (Fall 2009); effective April 26, 2010; claimant Flava Works, Inc. Copyright now owned by Phillip Bleicher by assignment recorded with the U.S. Copyright Office as Document No. V15032D534 (recorded February 14, 2025). |

**Registration Number**

# TX 7-145-774

**Effective date of registration:**

April 26, 2010

## Title

**Title of Work:** FlavaMen Magazine

**Volume** 5 **Number** 3 **Date on Copies** Fall 2009

**Frequency of publication** Quarterly

## Completion/Publication

**Year of Completion:** 2009

**Date of 1st Publication:** December 1, 2009 **Nation of 1st Publication:** United States

## Author

- **Author:** Flava Works, Inc.

**Author Created:** collective work which may include text, editing, compilation, and contribution(s) in which copyright has been transferred to the claimant

**Work made for hire:** Yes

**Citizen of:** United States **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Flava Works, Inc.

2610 N Miami Ave, Suite B, Miami, FL 33127, United States

## Rights and Permissions

**Organization Name:** Flava Works, Inc.

**Name:** Phillip Bleicher

**Email:** support@flavaworks.com **Telephone:** 305-438-9450

**Address:** 2610 N Miami Ave

Suite B

Miami, FL 33127 United States

## Certification

**Name:** Phillip Bleicher

**Date:** April 19, 2010

---

**Copyright Office notes:** Regarding title information: On copy: No. 3.

# EXHIBIT U

## Defendant’s DMCA Counter-Notification — served August 25, 2026

*Bleicher v. Gulisano*

*Cited at Complaint ¶¶ 163, 183*

## Contents


| | |
|---|---|
| **Part 1** | **Counter-notification and accompanying letter (host ref. ABUF-23018)**<br>Defendant’s counter-notification served on the web host on August 25, 2026, signed under penalty of perjury, asserting among other things that the Photograph “is not protected by any copyright,” together with the accompanying letter and the attachments Defendant included. |

# **Counter Notification:**
## Request to Restore Access to Posted Material

I hereby request that Bluehost a/k/a Newfold Digital, Inc. restore access to the following material:
One image referenced in ABUF-23018 as allegedly infringing on copyrights

,

which was posted at URL Where Material is Posted
https://gulisanolaw.com/wp-content/uploads/Blatinoawards.jpg

.

Under penalty of perjury, I have a good faith belief that this material was removed or disabled as a result of mistake or misidentification.
For the reasons stated in my response dated August 25, 2026. The allegedly infringing photo are not protected by any copyright. Even if they were, they are being permissibly used for non-commercial purposes pursuant to the "Fair Use" exception to copyright protections.

I may be contacted at 1489 W. Palmetto Park Road, Suite 500, Boca Raton, FL 33486
,
954-947-3972, or michael@gulisanolaw.com.

◉ I hereby consent to the jurisdiction of the federal district court for the judicial district in which I reside, and will accept service of process from the person who submitted the takedown notification under 17 U.S.C. § 512(c)(1)(C), or their agent.

○ (Or, if located outside the U.S.:) I hereby consent to the jurisdiction of the federal district court for the judicial district in which Online Service Provider is headquartered.

Michael Gulisano, Esquire on behalf of Gulisano Law, PLLC

*Name*

/s Michael Gulisano

*Physical or electronic signature*

GULISANO LAW PLLC
1489 W. Palmetto Park Road, Suite 500
Boca Raton, FL 33486
954-947-3972—954-947-3910 (fax)
gulisanolaw.com—michael@gulisanolaw.com

August 25, 2026

**VIA E-MAIL (CASES@SUPPORT.BLUEHOST.COM; LEGAL@BLUEHOST.COM)**

Newfold Digital, Inc.
Attn: Copyright Agent
5335 Gate Pkwy
Jacksonville, FL 32256

Re: *ABUF-23018– Response Disputing Alleged Copyright Infringement*

Dear Bluehost:

Please accept this response to the notice of copyright infringement under the Digital Millennium Copyright Act ("DMCA"), which was presented to you by Phillip Bleicher. The alleged copyright claim is without merit subjecting the complainant to liability for a DMCA "Bad Faith" lawsuit (§ 512(f) claims). The complaint includes no proof of any actual copyright.

This is significant since the allegedly infringing photo is *not* protected by any copyright. Even if they were, they are being permissibly used for non-commercial and educational purposes pursuant to the "Fair Use" exception to copyright protections.

In regards to the first photo, it appears on Wikipedia and can be accessed by the following link.

https://commons.wikimedia.org/wiki/File:Blatinoawards.jpg.

A copy of that article is attached hereto as Exhibit 1. According to that article, "[t]his work is *free and may be used by anyone for any purpose*." Under "licensing," the article states, "[t]his file is licensed under the Creative Commons Attribution-Share Alike 3.0 Unported license" and as such "*You are free: To share – to copy, distribute and transmit the work*."

Finally, the article states, "[t]he Wikimedia Foundation has received an e-mail confirming that the copyright holder *has approved publication under the terms mentioned on this page*."

Moreover, Bleicher is in the photo but he did not take it. According to the U.S. Copyright Office, "[i]f you are in the photo but did not take the photo, you are most likely not the copyright owner

and in that case could not send a takedown notice under section 512 to have the photo removed." https://www.copyright.gov/512/

The picture is also archived on the Wayback Machine and can be accessed by the following link.

https://web.archive.org/web/20260819033458/https://commons.wikimedia.org/wiki/File:Blatinoawards.jpg.

In light of the above, the allegations of copyright infringement have no merit and they are being presented by Phillip Bleicher in bad faith. I consent to the jurisdiction of the U.S. District Court for the Southern District of Florida if Phillip Bleicher has the stupidity to file another frivolous lawsuit suit and expose himself to sanctions and a bad-faith counter-claim.

Please contact me if you have any questions regarding this matter. Thank you for your prompt consideration.

Sincerely,

**s/ Michael Gulisano**

Michael Gulisano, Esquire

Enc.

WIKIMEDIA COMMONS

# File:Blatinoawards.jpg



Size of this preview: 478 × 672 pixels.

Original file (478 × 672 pixels, file size: 63 KB, MIME type: image/jpeg)

Open in Media Viewer

File information | Structured data

**Captions** Edit

English Add a one-line explanation of what this file represents

**This media file has been nominated for deletion since 20 May 2026.**
To discuss it, please visit **the nomination page**.

*Do not remove this tag until the deletion nomination is closed.*

**Reason for the nomination:** *Courtesy deletion requested under COM:IDENT and COM:SCOPE. File is orphaned (description page confirms "There are no pages that use this file") and has had no encyclopedic use since the related article was deleted years ago. The nominator is one of the identifiable subjects of the photograph and objects to continued hosting under COM:IDENT; the file recently came to the nominator's attention in connection with off-wiki misuse. No countervailing educational or encyclopedic value given the orphaned status. The historical license is not contested; this request is solely under COM:IDENT subject-objection grounds.*

**Show further instructions**

**In other languages** [Expand]

# Summary

| | |
|---|---|
| **Description** | **English:** FlavaMen Blatino Awards ceremony, Atlanta, Georgia, Sept. 5, 2009. The photo shows (left to right) Phillip Bleicher, Toccara Jones, and Warren Bullock. |
| **Date** | 5 September 2009 |
| **Source** | www.blatinoawards.com |
| **Author** | FlavaMen magazine |
| **Permission** (Reusing this file) | This work is free and may be used by anyone for any purpose. If you wish to **use this content**, you do not need to request permission as long as you follow any licensing requirements mentioned on this page. The Wikimedia Foundation has received an e-mail confirming that the copyright holder has approved publication under the terms mentioned on this page. This correspondence has been reviewed by a Volunteer Response Team (VRT) member and stored in our permission archive. The correspondence is available to trusted volunteers as **ticket #2009102010082393**. If you have questions about the archived correspondence, please use the VRT noticeboard. Ticket link: https://ticket.wikimedia.org/otrs/index.pl?Action=AgentTicketZoom&TicketNumber=2009102010082393 Find other files from the same ticket: |

# Licensing

This file is licensed under the Creative Commons Attribution-Share Alike 3.0 Unported license.

You are free:

- **to share** – to copy, distribute and transmit the work
- **to remix** – to adapt the work

Under the following conditions:

- **attribution** – You must give appropriate credit, provide a link to the license, and indicate if changes were made. You may do so in any reasonable manner, but not in any way that suggests the licensor endorses you or your use.
- **share alike** – If you remix, transform, or build upon the material, you must distribute your contributions under the same or compatible license as the original.

# File history

Click on a date/time to view the file as it appeared at that time.

| | Date/Time | Thumbnail | Dimensions | User | Comment |
|---|---|---|---|---|---|
| current | **22:03, 20 October 2009** |  | 478 × 672 (63 KB) | GBataille (talk \| contribs) | Deleted company logo. |
| | 21:57, 20 October 2009 |  | 498 × 750 (63 KB) | GBataille (talk \| contribs) | {{Information \|Description= {{en\|1=FlavaMen Blatino Awards ceremony, Atlanta, Georgia, Sept. 5, 2009. The photo shows (left to right) Phillip Bleicher, Toccara, and Warren Bullock.}} \|Source=www.blatinoawards.com \|Author=FlavaMen magazine \|Date=Sept. 5, 20 |

You cannot overwrite this file.



Exhibit 1

## File usage on Commons

There are no pages that use this file.

## Metadata

This file contains additional information such as Exif metadata which may have been added by the digital camera, scanner, or software program used to create or digitize it. If the file has been modified from its original state, some details such as the timestamp may not fully reflect those of the original file. The timestamp is only as accurate as the clock in the camera, and it may be completely wrong.

| | |
|---|---|
| Exposure time | 1/80 sec (0.0125) |
| F-number | f/8 |
| ISO speed rating | 400 |
| Lens focal length | 18 mm |

Retrieved from "https://commons.wikimedia.org/w/index.php?title=File:Blatinoawards.jpg&oldid=1217289265"



Exhibit 1