**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Phillip Bleicher, an individual,<br><br>Plaintiff,<br><br>v.<br><br>Michael Gulisano, an individual,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br>Case No. 1:26-cv-06287<br><br>Hon. John F. Kness<br><br>Magistrate Judge Young B. Kim |

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS (ECF NO. 12)

Plaintiff Phillip Bleicher respectfully submits this response in opposition to Defendant Michael Gulisano's Motion for Sanctions (ECF No. 12), and states as follows:

## INTRODUCTION

The movant is a lawyer who, by his own admission to a state bar, knowingly made a false statement to a tribunal; who was suspended for one year from a federal court and fined $40,000 for "unreasonably and vexatiously" multiplying proceedings; whose Rule 11 conduct a federal district court called "both frivolous and dishonest," in a judgment the Eleventh Circuit affirmed after holding that he "violated his duty of candor"; and who — on his sworn application to appear before this Court — concealed that discipline and misdescribed the record. He now asks this Court to sanction Plaintiff for pleading a well-grounded complaint. The monetary sanction Defendant seeks against Plaintiff is barred in part by Rule 11(c)(5)(A); the balance of the demand fails under Rule 11(c)(4) and *Kay v. Ehrler,* 499 U.S. 432 (1991); and the motion fails on the merits because the Complaint is well-grounded and Defendant's own Exhibit 1 refutes the "frivolous" label he pins on it; and it should be denied outright because the movant has repeatedly misrepresented the record to this Court — including on his own website, which

contradicts the very filing he now swears to. Plaintiff respectfully requests that the motion be denied and that he be awarded his reasonable expenses in opposing it under Rule 11(c)(2).

## LEGAL STANDARD

Rule 11 sanctions are proper only where a filing is presented for an improper purpose or asserts claims without a reasonable basis in law or fact; the test is objective. Fed. R. Civ. P. 11(b), (c); *Fries v. Helsper,* 146 F.3d 452, 458 (7th Cir. 1998). Rule 11 is "not a fee-shifting statute," *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 932 (7th Cir. 1989) (en banc), quoted in *Divane v. Krull Elec. Co.,* 319 F.3d 307, 314 (7th Cir. 2003); its central purpose is deterrence, not compensation. A sanction "must be limited to what suffices to deter repetition," and any payment to the movant is confined to "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). Two textual limits control here: a court "must not" impose a monetary sanction against a represented party for a violation of Rule 11(b)(2), Fed. R. Civ. P. 11(c)(5)(A); and a Rule 11 motion "must be made separately" and served 21 days before filing, Fed. R. Civ. P. 11(c)(2).

## ARGUMENT

### I. Rule 11(c)(5)(A) Bars the Monetary Demand Against Plaintiff on the Legal-Sufficiency Theory.

Rule 11(c)(5)(A) provides that the Court "must not impose a monetary sanction … against a represented party for violating Rule 11(b)(2)." Much of Defendant's motion is a Rule 11(b)(2) attack on the legal sufficiency of the claims — that they are "not warranted by existing law." To that extent, the $75,000 monetary demand against Plaintiff, a represented party, is barred outright. Defendant also invokes Rule 11(b)(3), contending the factual contentions lack evidentiary support; Rule 11(c)(5)(A) does not reach that theory, and Plaintiff meets it on the

merits in Sections III and IV below — the Complaint's factual allegations are supported by documents, many of them Defendant's own.

Defendant served this motion on May 31, 2026 and filed it, unchanged, on August 7, 2026. He therefore had twenty-one days in which to consider the defects identified below — including the fact that his own Exhibit 1 refutes the accusations he swore to — and elected to file it anyway. That choice bears on whether the motion was presented for a proper purpose. Fed. R. Civ. P. 11(b)(1).

**II. The $75,000 Demand Exceeds What Rule 11(c)(4) Permits, and Defendant Has No Recoverable Fees.**

Defendant asks for "$75,000.00 … for their violations and the fees and costs incurred." (ECF No. 12 at 16.) That request exceeds what Rule 11 permits. Under Rule 11(c)(4), a sanction must be "limited to what suffices to deter repetition," and an award payable to the movant is confined to "the reasonable attorney's fees and other expenses directly resulting from the violation." A flat penalty untethered to expenses is payable into court, not to Defendant. Defendant identifies no expenses and offers no basis for the figure. Moreover, Defendant represents himself. Although *Kay v. Ehrler,* 499 U.S. 432, 435–38 (1991), arose under 42 U.S.C. § 1988, its reasoning applies with equal force here: a self-represented litigant, even a lawyer, incurs no attorney's fees and so has none "directly resulting from" any violation. Defendant's fee demand therefore fails on its own terms.

**III. The Complaint Is Well-Grounded in Fact and Law.**

The Complaint pleads seven causes of action arising from a documented, years-long campaign of defamation and doxing. Defendant himself concedes that the lead count — under the Illinois Civil Liability for Doxing Act, 740 ILCS 195 — is "the only claim … not clearly

barred by the statute of limitations." (ECF No. 13 at 12.) A complaint that the movant concedes states a timely claim is not "frivolous." The remaining counts rest on well-pleaded facts, including the June 2024 doxing block, the at-least-599 harassing contacts (Compl. ¶ 56), and the August 2026 republications. Reasonable inquiry supported every allegation.

**A. Defendant's own authority confirms the Complaint is well grounded.**

Defendant relies on *D'Ambrosio v. Meta Platforms, Inc.,* No. 25-2231 (7th Cir. May 15, 2026), the first construction of the Doxing Act by the Court of Appeals. That decision supports the Complaint rather than undermining it. As Defendant's own quotation reflects, the phrase "death, bodily injury, or stalking" appears in the Act's mental-state requirement, 740 ILCS 195/10(a)(1) — what the publisher must know or recklessly disregard — while the cognizable harms are separately enumerated in Section 10(a)(2): "significant economic injury or emotional distress or … fear [of] serious bodily injury or death," or, alternatively, "a substantial life disruption." Defendant's argument that "the only remaining harm under the Doxing Act would be stalking" (ECF No. 12 ¶ 48) collapses those two elements into one. Plaintiff pleads the Section 10(a)(2)(i) harms — significant economic injury and emotional distress, and fear of serious bodily injury — and does not rely on the separate substantial-life-disruption prong.

D'Ambrosio is also distinguishable on precisely the facts that decided it. The Seventh Circuit held that the plaintiff's Doxing Act claim failed because "[n]one of the posts … contain a call to action, much less a call to action for the Group's members or anyone else to harm" the plaintiff, and because the plaintiff "never alleged that he was actually stalked or subjected to bodily injury, nor that anyone attempted to do so." Slip op. at 16. This case is the opposite on both points: Defendant published Plaintiff's name together with his home address, unlisted cellular number, and email address beneath an invitation to "directly contact" him about claimed

"harassment," and at least 599 harassing communications to that unlisted number followed. The very elements the *D'Ambrosio* plaintiff lacked are pleaded here, and a complaint supported by an express invitation to contact and by hundreds of resulting contacts is not one that lacks evidentiary support.

**B. The single-publication rule does not make the Complaint frivolous.**

Illinois has adopted the Uniform Single Publication Act, 740 ILCS 165/1, and the Seventh Circuit has predicted that the Illinois Supreme Court would apply it to Internet publications. *Pippen v. NBCUniversal Media, LLC,* 734 F.3d 610, 615 (7th Cir. 2013). Plaintiff does not contend that leaving unchanged material online restarts any limitations period. Plaintiff alleges that Defendant composed and published new matter on new dates: the Doxing Block in June 2024, the statements imputing pedophilia on or about August 11, 2026, and a photograph of Plaintiff on or about August 17, 2026. New matter is a new publication. Defendant himself concedes that the Doxing Act count is "the only claim … not clearly barred by the statute of limitations" (ECF No. 13 at 12) — a concession that the claim is timely, and therefore not frivolous.

**C. Busse and Cooney do not make the privacy counts frivolous.**

Defendant relies on *Busse v. Motorola, Inc.,* 813 N.E.2d 1013, 1017 (Ill. App. Ct. 2004), and *Cooney v. Chicago Public Schools,* 943 N.E.2d 23, 32 (Ill. App. Ct. 2010), for the proposition that names, telephone numbers and addresses are not private facts. Those cases involved the inadvertent disclosure of identifying data, with no invitation to act upon it. Plaintiff does not contend that a name or address is invariably private. He alleges that Defendant aggregated his otherwise-unlisted contact channels — a cellular number registered on the National Do Not Call Registry since July 2, 2003, a residence not publicly identified as his

home, and a personal email address — into a single block, published them beneath the heading "Criminial, Conman, and Liar," and directed readers to use them. Whether that aggregation and invitation state a claim is a merits question for a motion to dismiss. Reasonable minds may differ on it, and a position on which reasonable minds may differ is not sanctionable. Fed. R. Civ. P. 11(b)(2).

**IV. Defendant's Own Exhibit 1 Refutes the "Frivolous" Label — and He Has Sworn a Falsehood It Does Not Support.**

Defendant's motion rests on the premise that Plaintiff's allegations of falsity are baseless because his statements are "all true." His own Exhibit 1 — his 2016 "Open Letter" — shows the opposite. Every headline he pins on Plaintiff collapses, on his own document, into a corporate, civil, dropped, or unadjudicated matter: the "$3 million" charity matter was a civil suit that, by his account, "was later dropped"; the "AIDS" headline rests on a company HIV/syphilis public-health report; the "brothels" claim is a civil zoning dispute; the "fraud on the court" finding names the corporation (Flava Works) in *Flava Works, Inc. v. Momient*; and the "tax" claim rests on a corporate return and a conceded IRS settlement. Across seventeen pages and fourteen exhibits, Defendant never asserts that Plaintiff was arrested, charged, indicted, or convicted of anything — while telling this Court he is a "career criminal."

Worse, Defendant swears in this motion that Plaintiff's company produces pornography "featuring African-American and Hispanic men and occasionally minors. See Ex. 1." (ECF No. 12 ¶¶ 2–3; accord ECF No. 13-2 ¶ 3.) Exhibit 1 says no such thing. Its only reference of that kind is a section heading — "Exploits Minorities" — concerning race, not age; the only references to "children" in the exhibit are to "families with young children" in a zoning matter and to a charity that helps "children learn." The word "minors," in the sense Defendant swore to, appears

nowhere in the exhibit he cited for it. A party who submits a sworn, source-less accusation of child exploitation to a federal court, and cites an exhibit that refutes it, cannot be heard to seek Rule 11 sanctions against his opponent.

## V. The Motion Should Be Denied Because the Movant Has Repeatedly Misrepresented the Record — Including on His Own Website.

A party who invokes Rule 11 must himself satisfy its command of candor and factual support. Fed. R. Civ. P. 11(b)(1), (b)(3). Defendant does not.

A. He falsely represented that the Florida Bar found his conduct meritorious. In his motion and in his sworn declaration, Defendant states that "The Florida Bar found no merit to Bleicher's allegations" — twice. (ECF No. 12 ¶ 6; ECF No. 13 ¶ 6; ECF No. 13-2 ¶¶ 5, 9.) The Bar made no such finding. His 2024 complaint (RFA No. 24-12445) was closed on May 31, 2024 solely because the Bar deemed the matter more than six years old under Rule 3-7.16 — a timeliness decline, not a merits finding. His 2016 complaint produced no disciplinary finding of any kind. Defendant's sworn "no merit" statements are false.

B. He concealed his own discipline on his sworn pro hac vice application. Doc 11 asks whether the applicant has been "censured, suspended, disbarred, or otherwise disciplined by any court." Defendant described a 2018 matter as a mere failure "not seeking approval from the trustee" for a "$1,000" settlement from which he "gained no financial benefit." Two separate bodies acted. First, the U.S. Bankruptcy Court for the Southern District of Florida found that Defendant had "unreasonably and vexatiously multiplied the proceedings" (28 U.S.C. § 1927), and by order of September 6, 2017 "suspended Respondent for one year from practicing before the U.S. Bankruptcy Court for the Southern District of Florida and imposed a $40,000.00 monetary sanction." (Ex. 2, Report of Minor Misconduct; Ex. 3, Admission ¶ 6.) Second, and

later, the Florida Bar grievance committee accepted Defendant's tendered admission and recommended an admonishment, attendance at Ethics School, and a $1,250 administrative fee. In that admission Defendant conceded violating Rule 4-3.3(a)(1) — knowingly making a false statement of fact or law to a tribunal — together with Rules 4-3.4(a), 4-3.4(c), and 4-8.4(a), and acknowledged that "one of the excluding factors listed in Rule 3-5.1(b)(1)(E) is present." (Ex. 3 ¶¶ 7–8.) Defendant's application to this Court disclosed neither the one-year suspension, nor the $40,000 sanction, nor the Rule 4-3.3(a)(1) admission.

C. He omitted the Eleventh Circuit's affirmance of Rule 11 sanctions against him. For a separate 2020 sanction, Defendant told this Court only that "The District Court did not accept my position and granted a motion for sanctions," calling it a "misnomer." That is the same matter the Eleventh Circuit addressed in *Gulisano v. Burlington, Inc.,* 34 F.4th 935 (11th Cir. 2022). The Court of Appeals affirmed the Rule 11 sanctions, holding Defendant's position "legally and factually frivolous," finding that Defendant "violated his duty of candor," and concluding that the district court "correctly determined that Gulisano acted in bad faith." The district court, whose judgment was affirmed, had described the same conduct as "both frivolous and dishonest" and had referred Defendant to the Florida Bar.

D. His own website contradicts the sworn factual premise of this motion. Defendant swears the fee he billed Plaintiff was "$1,000" (ECF No. 12 ¶ 5; ECF No. 13-2 ¶ 4). His own website — the article at issue in this case — states that Plaintiff "refused to pay me the $500 I billed him." His sworn filing and his own publication cannot both be true.

E. His sworn "passive website" representation is false. Defendant swears his website is "a passive website … intended only for Florida residents" and that he "do[es] not sell any

products." (ECF No. 13-2 ¶¶ 12–13.) The site is a commercial law firm that solicits paying clients, advertises "Practice Areas" and "Client Reviews," offers an "Initial Consultation," and discusses its retainer fees. And Defendant has edited the very article at issue at least seven times during the pendency of this action — on or about August 11, 13, 15, 17, 19, 21, and 22, 2026, the last edit recorded by his own content-management system at 2026-08-22T22:26:22Z (Exhibit 9) — which is the antithesis of a "passive" site. Nor is it "intended only for Florida residents": the article rests its accusations on Illinois institutions (the Chicago Department of Public Health, the Illinois Attorney General); asserts that Plaintiff is presently "operating in violation of" a Chicago cease-and-desist order; advises readers holding claims against an Illinois bankruptcy estate that Plaintiff "committed fraud on the court"; reproduces a distribution list addressed to the Mayor of Chicago, the Illinois Attorney General, the Chicago Department of Public Health, and the Chicago Sun-Times; published a Chicago home address and an Illinois cellular number beneath an invitation to "directly contact" Plaintiff; and, in its August 22 edit, solicits Plaintiff's "victims, especially if you were underage at the time," to come forward (Exhibit 9) — an audience Defendant himself locates in Illinois, having told this Court two days later that Plaintiff's alleged conduct "continues to endanger the vulnerable youth of Illinois." (ECF No. 15 ¶ 7.) A sworn "passive website … intended only for Florida residents" cannot be reconciled with content sourced to Chicago agencies, addressed to Illinois officials, and aimed — by its author's own account — at the youth of Illinois.

F. His August 10 "Notice of Filing" presents the record selectively. On August 10, 2026, Defendant filed a "Notice of Filing Judicial Rulings Establishing Bleicher Is the Alter Ego of Flava Works and Committed Bankruptcy Fraud" (ECF No. 14), attaching two orders from *Flava*

*Works, Inc. v. A4A Reseau, Inc.,* No. 14-23208-CIV (S.D. Fla.). The documents he filed do not establish what he tells this Court they establish.

First, as to bankruptcy: Defendant represents that his Exhibit 2 "established that Plaintiff, Philip Bleicher filed bankruptcy in this District in 2022" and "thereby commit[ted] fraud on the court." The exhibit says only that "Bleicher submitted a notice to the court, attaching a voluntary petition for bankruptcy which was filed in the Northern District of Illinois," and that "[t]he bankruptcy case was dismissed on August 2, 2022." (ECF No. 14-2.) It identifies no debtor, states no filing date, and contains no finding of fraud by anyone. The official record of this District's Bankruptcy Court is to the contrary: the debtor was the corporation, not Plaintiff — *In re Flava Works, Inc.,* No. 21 B 08585 (Bankr. N.D. Ill.) (Cassling, J.) — and "[t]he Debtor filed a Chapter 11 petition on July 17, 2021." The petition was filed in 2021, not 2022; August 2, 2022 is the date of dismissal, not filing.

Second, as to alter ego: Defendant omits that a judge of this District considered the very finding he invokes and declined to give it preclusive effect. In the *Flava Works* bankruptcy, Judge Cassling held that "[a]bsent an adequate showing … the doctrine of collateral estoppel is not properly applied here," and that the movant "ha[d] not met its burden to establish that the prior litigation involved the same issue or that such issue was essential to the final judgment entered by the Florida federal court." He further found "no facts to suggest that Phillip Bleicher engaged in a sham transaction when he formed the Debtor as a corporation," and observed that the Florida magistrate judge's alter-ego reference "did not transform the Debtor into a sole proprietorship," because that court expressly held the Debtor "is a corporation" and applied the rules for service upon corporations. Defendant filed the Florida report; he did not disclose the ruling of this District's court on the same question between the same parties.

Third, Defendant's own Exhibit 1 refutes the personal liability he asserts. That report states that “neither the attorney's fees nor the costs may be taxed against Phillip Bleicher as an impleaded third party.” (ECF No. 14-1.) And the impleader order on which the alter-ego reference rests states that impleader “does not in itself establish liability on the part of the impleaded third parties.”

Whatever the merits of these matters, they are not before this Court on a Rule 11 motion, and a party who selectively presents the record while asking for sanctions against his opponent is not well positioned to obtain them.

G. The conflation of the corporation with Plaintiff personally is the same conduct for which Defendant was sanctioned in *Burlington*. Plaintiff is an individual. Flava Works, Inc. is an Illinois corporation. Defendant's submissions repeatedly treat them as interchangeable: the orders he attaches address a corporation's liability to its creditors and the service of process upon a corporation, and the bankruptcy he invokes was filed by the corporation — yet he offers all of it to this Court as proof of what Plaintiff personally did. The same substitution runs through the Article itself, which recasts corporate, civil, dropped, and unadjudicated matters as Plaintiff's personal crimes.

That is not a novel error for this Defendant. In *Gulisano v. Burlington, Inc.,* 34 F.4th 935 (11th Cir. 2022), the district court sanctioned him for “attempt[ing] to conflate various distinct corporate entities in order to recover an award of damages obtained through a default judgment against a non-existent corporate entity,” and found that conduct “both frivolous and dishonest.” The Eleventh Circuit affirmed. Defendant now asks this Court to sanction Plaintiff while engaging in the same species of conflation — this time to attribute a corporation's litigation

history to the individual who is suing him for defamation. A movant seeking Rule 11 sanctions must satisfy Rule 11 himself. Fed. R. Civ. P. 11(b)(1), (b)(3).

**H. Defendant's own authority is a warning to the movant himself.** The single authority on which Defendant builds his Doxing Act argument is a decision in which the Seventh Circuit ordered the appellant and his attorneys to show cause why they should not be sanctioned for a frivolous appeal, and fined counsel for a brief "replete with fictitious quotations and misstatements of law" in its Doxing Act section — errors bearing "the hallmarks of the misuse of generative artificial intelligence" — referring the matter to the Illinois ARDC. *D'Ambrosio,* slip op. at 20–21, 28–31; Fed. R. App. P. 38, 46(c); 28 U.S.C. §§ 1912, 1927. A movant who invokes that decision while himself misdescribing the statute it construes, and while submitting a sworn accusation his own exhibit refutes, is poorly positioned to seek Rule 11 sanctions against his opponent.

## VI. Defendant's Post-Motion Conduct Confirms the Improper Purpose.

Since filing this motion, Defendant has injected the same manufactured accusation into this litigation three more times, escalating it each time, confirming that his purpose is to harass and to defame rather than to vindicate any legitimate interest. Fed. R. Civ. P. 11(b)(1).

On Thursday, August 20, 2026 at 4:13 p.m., Defendant emailed Plaintiff's counsel — ostensibly to propose a briefing schedule — and in the body of that email referred to Plaintiff as "your pedophile client." (Exhibit 8.) On Monday, August 24, 2026, Defendant filed a two-page "Proposed Briefing Schedule" (ECF No. 15) that, though it needed only to propose dates, branded Plaintiff a "homosexual kiddie-porn kingpin" (¶ 3) engaged in "rampant homosexual pedophilia, which continues to endanger the vulnerable youth of Illinois" (¶ 7).

On August 25, 2026 — the day Plaintiff moved to strike — Defendant filed a motion to strike Plaintiff's briefing-schedule statement (ECF No. 18) and escalated further still. “Occasionally minors” became “occasionally underage boys” (¶ 2), again cited to ECF Nos. 13 and 13-1, which contain no such statement. Defendant then asserted, with no declaration, name, date, or exhibit, that “[o]ver the nine (9) years that the article was published” he “has been contacted by multiple victims of Bleicher who were underage when they were victimized by him and forced to engage in nonconsensual homosexual acts,” and that “[m]ore than one of those underage victims referred to Bleicher as ‘Baby Epstein.’” (¶¶ 6–7.) His own article refutes him: its “2024 Update” told the same purported callers, “I respectfully request that you not contact me. This article states everything I know.” The same four-page motion announces that Defendant “will be seeking to have Hicks disqualified” (¶ 9) and demands that Plaintiff's counsel show cause for filing the briefing-schedule statement this Court's procedures require — invoking a conferral rule Defendant himself bypassed with his own unilateral schedule (ECF No. 15) and again with ECF No. 18, an opposed motion filed with no conferral at all.

The new “victims” allegation is telling for a further reason. Defendant is a member of the Florida Bar and an officer of the court. He now represents that, for nine years, multiple victims of child sexual abuse have been reporting that abuse to him. A lawyer who believed that would have taken it to a prosecutor. Defendant identifies no report to any law-enforcement, prosecutorial, or child-protection agency — not in the nine years he describes, and not in the three weeks since he first told this Court about “minors.” Nor is there anything for such a report to have produced. The Cook County State's Attorney, asked under the Illinois Freedom of Information Act for records of any criminal charge, indictment, information, or prosecution of Plaintiff, reported that a reasonable search identified no such matter at any time in the past

twenty years, and that it "has not located any records" concerning the charity matter that anchors Defendant's "fraudulent charity" accusation. (FOIA Response No. R005603-081226 (Aug. 13, 2026).) The Office of the State Attorney for Miami-Dade County, asked the same question about the Miami residence Defendant calls a "brothel," answered: "We have no responsive public records." (Response to Ch. 119 request, Aug. 12, 2026.) Both responses are in Plaintiff's possession and will be furnished to the Court on request. Either Defendant has for nine years received reports of child sexual abuse, told the reporters not to contact him, and reported nothing to anyone — which is what his own article says he did — or the "victims" do not exist. On either account, the accusation was not presented to this Court for any proper purpose, and it has no evidentiary support. Fed. R. Civ. P. 11(b)(1), (b)(3).

These are not stray words. They are the rungs of a manufactured escalation. Defendant's own Exhibit 1 accuses Plaintiff of exploiting "at-risk youths" — a reference to vulnerability, not age — and in nine years the article never accused Plaintiff of anything involving a minor. Then, in eighteen days of this litigation: "occasionally minors" (ECF No. 12 ¶ 2; ECF No. 13-2 ¶ 3, sworn), which appears nowhere in the exhibit cited for it (Section IV); "pedophilia" on the website (August 11); "your pedophile client" (August 20); a public solicitation of Plaintiff's "victims, especially if you were underage at the time" (August 22, Exhibit 9); "kiddie-porn kingpin" (ECF No. 15 ¶ 3); and "occasionally underage boys," supported by invented and uncited "victims" (ECF No. 18 ¶¶ 2, 6–7). Each rung appeared for the first time mid-litigation, in reaction to a filing or takedown by Plaintiff, and none cites a source.

Defendant's complaint that counsel did not answer his scheduling "overtures" within "96 hours" (ECF No. 15 ¶¶ 4–5) is misleading: the email was sent at 4:13 p.m. on a Thursday, the 96 hours spanned a weekend, and the "overture" was the message calling Plaintiff a "pedophile."

Counsel was under no obligation to negotiate in response to a message defaming her client, and Plaintiff's amendment as of right under Rule 15(a)(1)(B) requires no schedule at all.

A litigant who repeats a sourceless accusation of child sexual exploitation in a scheduling email, a scheduling motion, and a motion to strike a briefing-schedule statement is not litigating; he is using the Court's docket to defame. That conduct confirms the improper purpose that independently warrants denial of his motion and an award of Plaintiff's reasonable expenses. Fed. R. Civ. P. 11(b)(1), (c)(2). Plaintiff's motion to restrict and strike (ECF No. 16) seeks that relief as to ECF No. 12 ¶¶ 2–3, ECF No. 13-2 ¶ 3, and ECF No. 15 ¶¶ 3, 7; the same relief is warranted as to ECF No. 18 ¶¶ 2, 6–7.

**VII. Plaintiff Is Entitled to His Reasonable Expenses in Opposing the Motion.**

Because the motion is legally foreclosed, factually unsupported, and presented for an improper purpose, the Court should award Plaintiff the reasonable expenses, including attorney's fees, that he incurred in opposing it. Fed. R. Civ. P. 11(c)(2).

**CONCLUSION**

For these reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion for Sanctions (ECF No. 12) in its entirety, award Plaintiff his reasonable expenses under Rule 11(c)(2), and grant such further relief as is just. A proposed order is being submitted to chambers by email in accordance with the Court's procedures.

Dated: August 31, 2026.
Respectfully submitted,
/s/ Corinthia Hicks
Corinthia Hicks, Esq.
Counsel for Plaintiff Phillip Bleicher

## CERTIFICATE OF SERVICE

I certify that on August 31, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve all counsel of record.

/s/ Corinthia Hicks

## EXHIBIT INDEX

*Numbered to avoid confusion with Exhibits A-M attached to the Complaint.*

**Exhibit 1.** Florida Bar closing letter, RFA No. 24-12445 (May 31, 2024) — timeliness closure.

**Exhibit 2.** Florida Bar Report of Minor Misconduct, TFB No. 2018-50,205(17E) — reciting the U.S. Bankruptcy Court's order suspending Defendant for one year from practice before that court and imposing a $40,000.00 monetary sanction, and recommending an admonishment and a $1,250 administrative fee.

**Exhibit 3.** Defendant's Admission of Minor Misconduct, TFB No. 2018-50,205 — admitted Rule 4-3.3(a)(1) false statement to a tribunal.

**Exhibit 4.** Gulisano v. Burlington, Inc., 34 F.4th 935 (11th Cir. 2022) — affirming Rule 11 sanctions; the Court of Appeals held Defendant's position "legally and factually frivolous," found he "violated his duty of candor," and affirmed the district court's determination that he "acted in bad faith." The district court, whose judgment was affirmed, described the conduct as "both frivolous and dishonest."

**Exhibit 5.** Capture of gulisanolaw.com/phillip-bleicher-criminial-conman-liar/ (Aug. 17, 2026), with authentication declaration — showing the "$500" statement and the article as edited during this action.

**Exhibit 6.** Defendant's May 31, 2026 served motion and August 7, 2026 filed motion (ECF No. 12), for comparison.

**Exhibit 7.** Order Denying in Part Motion to Dismiss Chapter 11 Case, In re Flava Works, Inc., No. 21 B 08585 (Bankr. N.D. Ill. Jan. 10, 2022) (Cassling, J.), Dkt. No. 86 — declining to give preclusive effect to the Florida alter-ego reference and finding no evidence of a sham transaction.

**Exhibit 8.** Defendant's August 20, 2026, 4:13 p.m. email to Plaintiff's counsel ("… my pending motion for sanctions against you and your pedophile client."), with transmission header.

**Exhibit 9.** Capture of the article as edited August 22, 2026 (the "victims, especially if you were underage" solicitation), with the server content-management-system timestamp (post 339, modified 2026-08-22T22:26:22Z).