# EXHIBIT INDEX

Plaintiff's Response to Defendant's Motion for Sanctions (ECF No. 12)

Bleicher v. Gulisano, No. 1:26-cv-06287 (N.D. Ill.)


| Exhibit | Description | Page |
|---|---|---|
| **Ex. 1** | RFA No. 24-12445 closing letter (closed on timeliness, not merits) | **2** |
| **Ex. 2** | TFB No. 2018-50,205(17E) - Report of Minor Misconduct | **4** |
| **Ex. 3** | TFB No. 2018-50,205(17E) - Admission of Minor Misconduct | **9** |
| **Ex. 4** | Gulisano v. Burlington, 34 F.4th 935 (11th Cir. 2022) - opinion | **11** |
| **Ex. 5** | Article capture, Aug. 17, 2026 ($500 statement, authenticated) | **30** |
| **Ex. 6a** | Sanctions motion AS SERVED (May 31, 2026) - compare to ECF 12 | **34** |
| **Ex. 6b** | Sanctions motion AS FILED, ECF No. 12 (Aug. 7, 2026) | **50** |
| **Ex. 7** | Cassling Order, In re Flava Works, Inc. (Bankr. N.D. Ill. 21-08585, Dkt. 86) | **66** |
| **Ex. 8** | August 20, 2026 email ("your pedophile client") | **75** |
| **Ex. 9** | Article capture, Aug. 22, 2026 ("underage" solicitation) with CMS timestamp | **76** |


10 Exhibits | 78 Total Pages | Assembled August 28, 2026

# The Florida Bar

651 East Jefferson Street
Tallahassee, FL 32399-2300

Joshua E. Doyle
Executive Director

850/561-5600
www.FLORIDABAR.org


May 31, 2024

Mr. Phillip Bleicher
2705 West Fulton Street
Chicago, IL 60612

Re: Michael Gulisano; RFA No. 24-12445

Dear Mr. Bleicher:

I have reviewed your Request for Assistance, and since it appears that the matter giving rise to your inquiry is greater than six years old, the Attorney/Consumer Assistance Program of The Florida Bar is unable to be of assistance to you. Pursuant to Rule 3-7.16 of the Rules of Discipline of The Florida Bar, all complaints must be presented within six years from the time the matter giving rise to the complaint is discovered or, with due diligence, should have been discovered. A copy of that rule is enclosed for your review.

In light of the foregoing, this matter is being closed effective May 30, 2024. Pursuant to the Bar's records retention schedule, the computer record and file will be disposed of one year from the date of closing.

Sincerely,

Richard W. Coombs, Bar Counsel
Attorney Consumer Assistance Program
ACAP Hotline 866-352-0707

Enclosure - Copy of Rule 3-7.16

cc: Mr. Michael Gulisano (with enclosure)

## RULE 3-7.16 LIMITATION ON TIME TO OPEN INVESTIGATION

**(a) Time for Initiating Investigation of Complaints and Re-opened Cases.**

(1) Initial Complaint or Investigation. A complainant must make a written inquiry to The Florida Bar within 6 years from the time the matter giving rise to the inquiry or complaint is discovered or, with due diligence, should have been discovered. The Florida Bar must open an investigation initiated by The Florida Bar within 6 years from the time the matter giving rise to the investigation is discovered or, with due diligence, should have been discovered.

(2) Re-opened Investigations. A re-opened disciplinary investigation is not time barred by this rule if the investigation is reopened within 1 year after the date on which the matter was closed, except that a re-opened investigation based on a deferral made in accordance with bar policy and as authorized elsewhere in these Rules Regulating The Florida Bar is not barred if re-opened within 1 year after actual notice of the conclusion of the civil, criminal, or other proceedings on which the deferral was based.

(3) Deferred Investigations. A disciplinary investigation which began with the opening of a discipline file and bar inquiries to a respondent within the 6-year time period as described in this rule and RRTFB August 1, 2022 was then deferred in accordance with bar policy and the Rules Regulating The Florida Bar, is not time barred under this rule if a grievance committee finds probable cause and the bar files its formal complaint within 1 year after actual notice of the conclusion of the civil, criminal, or other proceedings on which deferral was based.

**(b) Exception for Theft or Conviction of a Felony Criminal Offense.** There is no limit on the time in which to present, reopen, or bring a matter alleging theft or conviction of a felony criminal offense by a member of The Florida Bar.

**(c) Tolling Based on Fraud, Concealment, or Misrepresentation.** The limitation of time in which to bring or reopen a complaint within this rule is tolled where it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the matter giving rise to the inquiry or complaint.

**(d) Constitutional Officers.** Inquiries raised or complaints presented by or to The Florida Bar about the conduct of a constitutional officer who is required to be a member in good standing of The Florida Bar must be commenced within 6 years after the constitutional officer vacates office. Added July 20, 1995 (658 So.2d 930).

Amended effective March 23, 2000 (763 So.2d 1002); December 20, 2007, effective March 1, 2008 (SC06-736) (978 So.2d 91), amended November 9, 2017, effective February 1, 2018.
RULE 3-7.17 VEXATIOUS CONDUCT AND LIMITATION ON FILINGS

IN THE SUPREME COURT OF FLORIDA
(Before a Grievance Committee)

| | |
|---|---|
| THE FLORIDA BAR,<br><br>Complainant,<br><br>v.<br><br>MICHAEL GULISANO,<br><br>Respondent.<br><br>_______________________________/ | The Florida Bar File<br>No. 2018-50,205(17E) |

**REPORT OF MINOR MISCONDUCT**

I. COMMITTEE RECOMMENDATION: Pursuant to Rule 3-7.4 of The Rules Regulating The Florida Bar, the committee accepts respondent's tendered admission of minor misconduct and recommends that respondent receive an admonishment. The admonishment should be administered by service of this report. Respondent shall attend The Florida Bar's Ethics School as detailed below.

II. SUMMARY OF MISCONDUCT AND RULE VIOLATIONS FOUND:

Respondent represented debtors in a bankruptcy proceeding. Sometime after the bankruptcy petition was filed, one of the debtors informed respondent about a potential claim for breach of contract. This claim was not included in the petition for bankruptcy and the debtor had not made the respondent aware of this potential claim before the bankruptcy petition was filed. After the debtors received a discharge in bankruptcy, the trustee learned about the potential claim and the court

granted the trustee's motion to reopen the bankruptcy case. It was during these subsequent proceedings that the bankruptcy court issued its final judgment making the determination that respondent had unreasonably and vexatiously multiplied the proceedings and sanctioned respondent's conduct by suspending respondent for one year from practicing before the U.S. Bankruptcy Court for the Southern District of Florida and imposing a $40,000.00 monetary sanction.

Respondent admits to having violated R. Regulating Fla. Bar: 4-3.3(a)(1) [ A lawyer shall not knowingly:(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer]; 4-3.4(a) [A lawyer must not: (a) unlawfully obstruct another party's access to evidence or otherwise unlawfully alter, destroy, or conceal a document or other material that the lawyer knows or reasonably should know is relevant to a pending or a reasonably foreseeable proceeding; nor counsel or assist another person to do any such act]; 4-3.4(c) [knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists]; and 4-8.4(a) [A lawyers shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another.].

III. COMMENT ON MITIGATING, AGGRAVATING OR EVIDENTIARY MATTERS: The committee believes that the following comment on mitigating,

aggravating and evidentiary matters will be helpful in considering acceptance of the report. Respondent was admitted to the bar in 2011. Respondent has submitted an admission of minor misconduct in this matter which is attached as Exhibit A to this report. The committee notes that while respondent's conduct was not ideal and must be addressed, there are some unusual circumstances in this case that when taken together with the mitigating factors result in the committee's recommendation to accept respondent's admission of minor misconduct. First, respondent received a substantial suspension and monetary sanction from the bankruptcy court for his conduct. Respondent has completed the suspension and the trustee filed a notice of compliance with the bankruptcy court stating that respondent complied fully with the payment/monetary obligations. Second, respondent appears to recognize that he may not have effectively communicated his expression of remorse for his actions to the court and the opposing party. Third, by stating in his admission that he wants to take part in The Florida Bar's Ethics School, respondent appears to recognize that he would benefit from more training on the Rules of Professional Conduct. In addition, based on the review of this matter and respondent's admission, the committee submits that the following mitigating factors are present – 9.32(a) absence of prior disciplinary record; 9.32(f) inexperience in the practice of law; 9.32(k) imposition of other penalties or sanctions; and 9.32(l) remorse.

IV. ADMONISHMENT: Michael Gulisano, your actions in this case were not in accordance with the high standards expected of a member of the legal profession. The privilege to practice law carries responsibilities and you must be mindful of the ethical duties that you are expected to uphold as member of the legal profession. In this instance, your actions have discredited the legal profession of the State of Florida. Such conduct cannot be tolerated by your fellow lawyers and should not be tolerated by you. Pride in your profession demands that you not violate the Rules of Professional Conduct again. If you do, your present misconduct will be considered in future disciplinary proceedings.

V. COSTS: The cost of these proceedings is assessed against respondent as follows:

| | | |
|---|---|---|
| Administrative Costs | $1,250.00 | |
| TOTAL | | $1,250.00 |

FEES: The following program is recommended, and respondent shall pay the fee of this matter which is as follows: Respondent shall attend The Florida Bar's Ethics School within six months of the service of this recommendation upon respondent and/or respondent's counsel.

| | | |
|---|---|---|
| The Florida Bar's Ethics School | $750.00 | |
| TOTAL | | $750.00 |

**Costs are due The Florida Bar within 30 days from acceptance of this minor misconduct recommendation.**

Pursuant to Rule 1-3.6(c) of The Rules Regulating The Florida Bar, any person now or hereafter licensed to practice law in Florida shall be deemed a delinquent member if the member fails to pay the costs assessed in diversion or disciplinary cases within 30 days after the disciplinary decision or diversion recommendation becomes final, unless such time is extended by the board of governors for good cause shown. Delinquent members shall not engage in the practice of law in Florida nor be entitled to any privileges and benefits accorded to members of The Florida Bar in good standing.

Dated this 20 day of February, 2020.

Seventeenth Judicial Circuit Grievance
Committee "E"

BY ______________________
Geoffrey Adam Lottenberg, Chair

**IN THE SUPREME COURT OF FLORIDA**
**(Before a Grievance Committee)**

THE FLORIDA BAR, TFB File No.: 2018-50,205(17E)

Complainant,

v.

MICHAEL GULISANO,

Respondent.

_______________________________________/

**ADMISSION OF MINOR MISCONDUCT PURSUANT TO RULE 3-5.1(b)(5)**

Respondent says:

1. I am aware that Rule 3-5.1(b)(3) reads in part,

> [I]f the respondent admits guilt of minor misconduct and the committee concurs, the grievance committee will file its report recommending an admonishment, the manner of administration, the taxing of costs, and an assessment or administrative fee in the amount of $1,250 against the respondent. The report recommending an admonishment will be forwarded to staff counsel and the designated reviewer for review. If staff counsel does not return the report to the grievance committee to remedy a defect in the report, or if the report is not referred to the disciplinary review committee by the designated reviewer ... the report will then be served on the respondent by bar counsel. The report and finding of minor misconduct becomes final unless rejected by the respondent within 15 days after service of the report.

2. Pursuant to Rule 3-5.1(b)(5), I tender this Admission of Minor Misconduct.

3. If this Admission is accepted by the Committee and the Committee report is approved by the Florida Bar, this Admission shall be in full force and effect, and I shall pay any costs incurred in the proceeding including a $1,250.00 administrative cost.

4. I am aware that the Board of Governors of the Florida Bar may order me to appear before it for administration of an Admonishment.

5. If this Admission is not accepted by the Committee or an Admonishment is not approved, this tendered Admission will be null and void, and no part of the Admission may be used as evidence bearing upon the complaint.

6. The following allegations form the basis of my Admission of Minor Misconduct:

> Respondent represented the debtors in a bankruptcy case. The bankruptcy court issued a final judgment on September 26, 2017. After making a determination that Respondent had "... unreasonably and vexatiously multiplied the proceedings ....", the bankruptcy court issued an order sanctioning Respondent pursuant to 28 U.S.C.§ 1927 and 11 U.S.C. §105. On September 6, 2017 the

bankruptcy court issued an order of sanctions against Respondent and suspended Respondent for one year from practicing before the U.S. Bankruptcy Court for the Southern District of Florida and imposed a $40,000.00 monetary sanction against Respondent.

7. Respondent admits that by reason of the foregoing, he has violated the following Rules Regulating the Florida Bar: Rule 4-3.3(a)(1); Rule 4-3.4(a); Rule 4-3.4(c), and Rule 4-8.4(a).

8. Although one of the excluding factors listed in Rule 3-5.1(b)(1)(E) is present, Rule 3-5.1(b)(2) provides, "A grievance committee may recommend an admonishment for minor misconduct or diversion to a practice and professionalism enhancement program when unusual circumstances are present, despite the presence of 1 or more of the criteria described in subpart (1) of this rule."

9. Respondent believes there are mitigating circumstances that may justify a reduction in the degree of discipline to be imposed as follows. Respondent is remorseful. Respondent was admitted to practice law in 2011 and has no prior disciplinary history. Respondent did not possess a dishonest or selfish motive during the above conduct and made received no financial gain from that conduct. Respondent made a full and free disclosure to the Bar and had a cooperative attitude towards Bar proceedings. Additionally, the Bankruptcy Court already imposed a suspension and sanctions against the Respondent. Respondent complied with the terms and conditions of the sanctions, completed the suspension, and was readmitted to the Bankruptcy Court.

10. Respondent agrees to complete the Florida Bar's Ethics School within one year from the date of acceptance of this Admission of Minor Misconduct, and be responsible for payment of this workshop fee.

DATED October 10, 2019.

Michael Gulisano, Esquire
Florida Bar No. 87573

The Law Offices of Michael Gulisano, PLLC
5645 Coral Ridge Drive, Suite 207
Coral Springs, FL 33076
954-947-3972
954-947-3910 (fax)
michael@gulisanolaw.com

# EXHIBIT J

## 11th Circuit Opinion — Gulisano v. Burlington, No. 20-12660 (May 12, 2022)

*Bleicher v. Gulisano*

*Cited at Complaint ¶¶ 5, 20, 75*

### Contents


| | |
|---|---|
| **Part 1** | **Published opinion of the United States Court of Appeals for the Eleventh Circuit**<br>Opinion affirming the imposition of Federal Rule of Civil Procedure 11 sanctions against Defendant Michael Gulisano. The Eleventh Circuit expressly found that Defendant "violated his duty of candor" and "acted in bad faith." Offered as evidence of Defendant's independently-adjudicated pattern of dishonesty in federal court. |

[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

____________________

No. 20-12660

____________________

MICHAEL GULISANO,

Interested Party-Appellant,

CATHY COHEN,

Plaintiff,

*versus*

BURLINGTON, INC.,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:18-cv-81420-BB

---

Before JORDAN, JILL PRYOR, and MARCUS, Circuit Judges.

JILL PRYOR, Circuit Judge:

When attorney Michael Gulisano represented a client in a negligence action in the Southern District of Florida, he obtained a default judgment against a non-existent entity, "Burlington, Inc." He added an unrelated entity, Burlington Coat Factory Direct Corporation, as a judgment debtor on the resulting writ of execution. He used the writ of execution to levy funds from another entity, Burlington Stores, Inc. After Burlington Stores, Inc. and Burlington Coat Factory Warehouse Corporation protested and sought to quash the writ, Gulisano asked the district court in the Southern District of Florida to amend its default judgment order and name Burlington Stores, Inc. and Burlington Coat Factory Warehouse Corporation as judgment debtors. The district court denied the motion and, finding it to be legally and factually frivolous, imposed sanctions under Federal Rule of Civil Procedure 11. It also denied Gulisano's motion for reconsideration of the sanctions order. After careful review and with the benefit of oral argument, we affirm.

## I. FACTS[1]

While Cathy Cohen was shopping at a Burlington Coat Factory store in Royal Palm Beach, Florida, she looked at a set of tables on display. When Cohen attempted to inspect the tables, they fell on her knee. Cohen jumped back to avoid the falling tables, injuring her neck and back.

Cohen hired Gulisano as her attorney. He filed a civil action on her behalf in federal court in the Southern District of Florida. The complaint Gulisano drafted alleged that defendant "Burlington, Inc."[2] had been negligent and was liable for damages to Cohen. Gulisano served a summons and a copy of the complaint on CT Corporation System, ostensibly the registered agent of "Burlington, Inc." After "Burlington, Inc." failed to file an answer or otherwise respond to the lawsuit, the district court clerk entered a default. Following a hearing on damages, the district court entered a default judgment, awarding Cohen $677,774.75. The district court's final judgment named "Burlington, Inc." as the sole defendant.

To collect on the default judgment, Gulisano requested that the court issue a writ of execution naming "Burlington, Inc. a/k/a

[1] Because we write for the parties, we recount only the facts necessary to explain our decision.

[2] Gulisano referred to the defendant as both "Burlington Inc." and "Burlington, Inc." For the sake of consistency, this opinion will use "Burlington, Inc."

Burlington Coat Factory Direct Corporation" as the judgment debtor. The court issued the writ.

Seeking to execute the writ, Gulisano used employer identification numbers ("EIN")[3] to perform an asset search to find bank accounts from which he could levy funds. But, instead of using the EIN number of the judgment debtor, "Burlington, Inc."—which did not exist—he used the EIN numbers of two other entities: Burlington Stores, Inc. ("BSI") and Burlington Coat Factory Direct Corporation ("BCFDC"). BSI is the parent company of the entities that operate Burlington Coat Factory stores, including BCFDC and Burlington Coat Factory Warehouse Corporation ("BCFWC"), which operates the Florida stores. After locating bank accounts in New Jersey that belonged to BSI, Gulisano registered the judgment in the District of New Jersey. The New Jersey district court then issued a writ of execution against "Burlington, Inc." The United States Marshals Service delivered the writ to BSI's bank. The bank withdrew the amount of the judgment award, plus costs, from BSI's account.

Once they discovered the withdrawal, BSI and BCFWC filed a motion in the New Jersey district court to vacate the levy, quash the writ of execution, and vacate the default judgment. They pointed out that the writ of execution was based on a default

[3] An EIN number is the nine-digit tracking number that the Internal Revenue Service assigns to the tax accounts of businesses.

judgment entered against "Burlington, Inc.," but the judgment was levied on BSI, an unrelated entity not named in the Florida action.

Gulisano opposed the motion. He asserted that "Burlington, Inc." was a registered fictitious name or a misnomer that was similar enough to the correct name that it gave BSI and BCFWC—which he collectively referred to as "Burlington"—notice of the action.

The day after he filed his response in the New Jersey district court, Gulisano filed in the Florida district court a "Motion to Amend Final Default Judgment to Remove Any Ambiguity of the Correct Defendant's Identity." In this motion, Gulisano asked the district court to amend the default judgment so that all references to the defendant "Burlington, Inc." would become "Burlington, Inc. a/k/a Burlington Stores, Inc. a/k/a Burlington Coat Factory Warehouse Corporation." Doc. 33 at 6 (internal quotation marks omitted).[4] Gulisano requested this change in order to "remove any alleged ambiguity that 'Burlington, Inc.' is *not* the same entity as" BSI and BCFWC. *Id.* (emphasis in original). He contended that "Burlington, Inc." properly referred to BSI and BCFWC because the company went by multiple names, all of which included the word "Burlington." He argued that BSI and BCFWC were the same entity, operating under the fictitious name "Burlington, Inc." He also argued that he had served "Burlington" via its registered

[4] "Doc." numbers refer to the district court's docket entries.

agent, and that service on "Burlington, Inc." was effective service on BSI.

BSI and BCFWC opposed the motion to amend. They acknowledged that there were multiple entities that together owned and operated the retail stores known as Burlington Coat Factory, but stated that "Burlington, Inc." was not one of those entities. Nor was it a fictitious name for BSI or another Burlington Coat Factory entity. Therefore, they argued, the judgment against "Burlington, Inc.," a completely unrelated entity, was improperly levied on BSI. Noting that the New Jersey district court had granted their motion to quash the writ of execution, BSI and BCFWC asked the Florida district court to deny the motion to amend the judgment.

In the Florida district court, BSI and BCFWC also moved for sanctions under Federal Rule of Civil Procedure 11, asserting that the motion to amend was frivolous because Gulisano could not have reasonably believed that BSI and BCFWC used the fictitious name "Burlington, Inc." They also asserted that Gulisano had misrepresented to the court that effective service had been made on "Burlington, Inc."

The district court denied the motion to amend. It observed that, although Gulisano now argued that he had sued BSI and BCFWC under their purported fictitious name, the complaint had not alleged that the defendant used a fictitious name. And, despite many opportunities, Gulisano never sought to amend the complaint to add that allegation, nor did he attempt to voluntarily

dismiss the action without prejudice and initiate a new action against the intended entities. The district court found no support for his claims that "Burlington, Inc." was the same entity as or the fictitious name of BSI or BCFWC: "Appallingly, the Court has not identified a single piece of evidence . . . that substantiates the use of 'Burlington, Inc.' as the proper entity to be named in this action, either as a fictitious name or as a company authorized to conduct business in Florida." Doc. 50 at 9. The court observed that Gulisano's motion to amend failed to explain why the default judgment named "Burlington, Inc." but the writ of execution named BCFDC. It concluded, "Like the motion for writ of execution, it is clear that the instant Motion to Amend Judgment is a back-door attempt to correct an improperly named party and recover a $677,774.75 default judgment plus costs from the intended, but unnamed, entities without having to litigate the matter any further." *Id.* at 11.

In the same order, the court granted the motion for sanctions. It found that Gulisano had "add[ed] an independent and distinct legal entity to a motion for writ of execution that was neither referenced at any point in the litigation nor explicitly listed in the Court's Final Judgment" and had "attempt[ed] to conflate various distinct corporate entities in order to recover an award of damages obtained through a default judgment against a non-existent corporate entity." *Id.* at 13–14. The court found this conduct to be "both frivolous and dishonest." *Id.* at 13. It stated that a brief investigation would have revealed the proper entities to sue, but Gulisano's pre-suit investigation was "woefully deficient," and his post-judgment

investigation was done in bad faith. *Id.* at 14. Because of his "serious fraudulent conduct," the court granted the motion for Rule 11 sanctions against Gulisano. *Id.* at 18. It ordered him to pay attorney's fees and costs and referred him to the Florida Bar for appropriate disciplinary action.

Gulisano filed under Federal Rule of Civil Procedure 59 a motion for reconsideration of the court's order imposing sanctions. After a hearing, the court denied his motion, concluding that it merely disagreed with the court's reasoning and failed to establish a clear error of law or manifest injustice. It ordered him to pay $19,549.12 in sanctions.

Gulisano filed this appeal of the order granting sanctions and the order denying reconsideration.

## II. STANDARD OF REVIEW

We review a district court's imposition of Rule 11 sanctions for abuse of discretion. *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003). We must affirm unless we find that the court applied the wrong legal standard or based its ruling on a clearly erroneous assessment of the evidence. *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 694 (11th Cir. 1995).

We review for abuse of discretion a district court's denial of a motion for reconsideration under Rule 59. *Am. Home Assurance Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1238–39 (11th Cir. 1985).

## III. ANALYSIS

There are two issues before us on appeal: (1) whether the district court abused its discretion in granting BSI and BCFWC's motion for sanctions, and (2) whether the district court abused its discretion when it denied Gulisano's motion for reconsideration of the sanctions order. We see no abuse of discretion in the first issue and deem the second issue abandoned.

### A. The District Court Acted Within Its Discretion in Imposing Sanctions on Gulisano.

Federal Rule of Civil Procedure 11 authorizes a district court to impose sanctions against an attorney who files frivolous pleadings or motions. Fed. R. Civ. P. 11(b), (c).[5] Rule 11 sanctions are

[5] Rule 11 provides in pertinent part:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

warranted when a party files a pleading or motion that "(1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose." *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1314 (11th Cir. 2021) (internal quotation marks omitted).

Rule 11 imposes an affirmative duty on an attorney to conduct a reasonable inquiry into both the facts and the law before filing a pleading or motion. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991); *Mike Ousley Prods., Inc. v. WJBF-TV*, 952 F.2d 380, 382 (11th Cir. 1992). When deciding whether to impose sanctions under Rule 11, a district court must conduct a two-step inquiry, determining "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). A factual claim is frivolous when it has no reasonable factual

---

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

(c) Sanctions.

(1) In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

basis. *See id.* A legal claim is frivolous when it has no reasonable chance of succeeding. *See id.* When the attorney's evidence is "merely weak," but supports a claim under existing law after a reasonable inquiry, sanctions are unwarranted. *Id.* Sanctions are warranted, however, when the attorney exhibits "a deliberate indifference to obvious facts." *Id.* (internal quotation marks omitted).

If the attorney failed to make a reasonable inquiry, then "the court must impose sanctions despite the attorney's good faith belief that the claims were sound." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). The reasonableness of the inquiry depends on the circumstances of the case. *See id.*

In addition, an attorney's obligations with respect to the contents of pleadings or motions are not measured solely as of the time when the pleading or motion is initially filed with the court, but also at the time when the attorney, having learned the claims lack merit, reaffirms them to the court. *Turner v. Sungard Bus. Sys., Inc.*, 91 F.3d 1418, 1422 (11th Cir. 1996) (citing Fed. R. Civ. P. 11(b) advisory committee's note to 1993 amendment). "That the contentions contained in the complaint were not frivolous at the time it was filed does not prevent the district court from sanctioning [the attorney] for his continued advocacy of them after it should have been clear that those contentions were no longer tenable." *Id.*

The district court did not abuse its discretion when it determined that Gulisano's claim that the default judgment against "Burlington, Inc." allowed him to collect damages from BSI and BCFWC was objectively frivolous. That claim was undergirded by

two arguments. First, Gulisano argued that "Burlington, Inc." was the fictitious name of BSI and BCFWC. That argument was frivolous because there were no facts to support it. Second, he argued that a judgment entered against a corporation's fictitious name could bind multiple distinct corporate entities. That argument was frivolous because it ignored basic principles of corporations law.

First, there was no factual support for Gulisano's claim that "Burlington, Inc." was the fictitious name of BSI and BCFWC. It is true that Gulisano attached hundreds of pages to the motion to amend to illustrate that BSI used the name "Burlington," including pictures from the website, pictures of the interiors of Burlington stores, the federal trademark registration of the Burlington logo, and BSI's SEC 10-K Form. But he presented no evidence that BSI or any other Burlington entity used the name "Burlington, Inc." Nor did he show that "Burlington, Inc." was a corporate entity in Florida or anywhere else. Eventually Gulisano admitted to the district court that "Burlington, Inc." did not exist.

Nor was "Burlington, Inc." a fictitious name. In Florida, a corporation engaging in business under a fictitious name must first register the name with the State. Fla. Stat. § 865.09(3)(a). State records show that "Burlington, Inc." was not a registered fictitious name. BSI stated that neither it nor any other Burlington entity used the name. Gulisano provided evidence that BCFWC applied for two fictitious names in Florida, "Burlington" and "Burlington Coat Factory." But he produced no evidence revealing use or registration of the fictitious name "Burlington, Inc." Without this

evidence, he failed to support the factual contention made in the motion to amend that he had sued BSI and BCFWC under their fictitious name.

Second, there was no legal support for Gulisano's argument that his judgment against "Burlington, Inc." entitled him to collect monies from BSI or BCFWC. In Florida, a corporation must be sued under its corporate name. *RHPC, Inc. v. Gardner*, 533 So. 2d 312, 314 (Fla. Dist. Ct. App. 1988). A corporation operating under a fictitious name has no independent legal existence. *Osmo Tec SACV Co. v. Crane Env't, Inc.*, 884 So. 2d 324, 327 (Fla. Dist. Ct. App. 2004). "In pleadings, the corporate name must be strictly used." *RHPC, Inc.*, 533 So. 2d at 314. The district court explained that, when suing an entity under its fictitious name, the plaintiff should state the entity's true name, the designation "d/b/a" or "doing business as," and the fictitious name. Thus, even if "Burlington, Inc." had been the registered fictitious name of BSI or BCFWC, Gulisano should have included those proper corporate names in the complaint. He failed to do so. Instead, he named only "Burlington, Inc." without including a d/b/a designation.

The district court denied the motion to amend and rejected Gulisano's argument that "Burlington, Inc." was a fictitious name. On appeal, Gulisano argues that "Burlington, Inc." was a typographical error—he had accidentally omitted "Stores" from the party's name on the complaint and repeated the error throughout the suit. It hardly matters whether Gulisano intentionally chose to use a fictitious name or inadvertently repeated a mistake. He tried

to use a judgment against a non-existent party to collect from an unrelated non-party and persisted in his attempts well past the time when he learned of his error. We agree with the district court's conclusion that "the factual and legal contentions asserted [in the motion were] objectively frivolous." Doc 50. at 14.[6]

We turn now to the question whether Gulisano should have known that his arguments were legally and factually frivolous. Our answer is yes. Gulisano should have known that the motion to amend was frivolous because "even the most minimal investigation would have alerted" him that there was no such entity as "Burlington, Inc." *McGreal*, 87 F.3d at 1255. The district court found that a search of registered corporations in Florida would have revealed proper Burlington Coat Factory entities that he could have sued. And we know that Gulisano could have performed such an investigation because, after obtaining the default judgment against "Burlington, Inc.," he used the EIN numbers of BSI and BCFDC to locate their assets. He failed to mention whether he performed an asset search on "Burlington, Inc." or what, if anything, he found. That he had to identify other entities from which to collect the

[6] Gulisano said that he effected service on BSI through its registered agent. The agent said that it sent Gulisano a letter rejecting service on "Burlington, Inc." Gulisano said that he never saw the letter. BSI and BCFWC said that neither BSI, nor any related entity, ever received notice of the complaint. The district court explicitly declined to resolve or rely on the notice issue. Because we, like the district court, need not resolve the issue to decide that sanctions were warranted, we do not address it further.

judgment should have informed him that the named judgment debtor did not exist.

Even if Gulisano had failed to discover that "Burlington, Inc." was non-existent and unrelated to the other Burlington entities, he learned these facts from BSI and BCFWC's motion to quash the writ and opposition to the motion to amend. Though BSI and BCFWC had "alerted [him] to the potential impropriety of his collection efforts," Gulisano persisted in claiming that he could collect the award from BSI, BCFWC, or BCFDC, despite failing to name any of them as parties to the default judgment. Doc. 50 at 15. The district court properly concluded, "[I]t is abundantly clear that Mr. Gulisano should have known, and seemingly did know, that the claims he asserted during these proceedings were objectively and patently frivolous." *Id.* at 15. Gulisano violated his duty of candor by "insisting upon a position after it [was] no longer tenable." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (internal quotation marks omitted). And, because "[a] finding of bad faith is warranted where . . . a frivolous argument is knowingly or recklessly raised," the district court correctly determined that Gulisano acted in bad faith. *Johnson*, 9 F.4th at 1314 (alteration adopted) (internal quotation marks omitted). We thus conclude that the district court acted well within its discretion in imposing sanctions on Gulisano.

Gulisano's arguments against the sanctions order are unpersuasive. He asserts that the court improperly punished his conduct throughout the litigation rather than looking solely at the challenged motion. But to determine whether the motion to amend

judgment warranted sanctions, the court had to examine whether Gulisano conducted a reasonable inquiry before filing the motion. It thus was required to look beyond the four corners of the motion to the attorney's conduct. *See McGreal*, 87 F.3d at 1254–55 (affirming sanctions on an attorney who accepted his client's assertions without questioning the client about damages, obtaining or examining any data, or contacting a third party who could shed light on the claim's validity). The district court properly considered Gulisano's reasonable-inquiry conduct preceding the filing of the motion to amend judgment.

Gulisano also argues that the sanctions motion flouted Rule 11's safe harbor provision. The safe harbor provision requires the moving party to serve the motion for sanctions on the nonmoving party and give it 21 days to withdraw the offending pleading before filing the motion with the district court. Fed. R. Civ. P. 11(c)(2). Gulisano does not argue that BSI and BCFWC failed to do that. Rather, he argues that the sanctions were aimed at conduct that had already taken place and could not be withdrawn. Although the district court considered Gulisano's prior conduct, it imposed sanctions based on the motion itself. The court stated, "[C]ontinuing to argue Plaintiff's entitlement to collect the Final Judgment amount from corporate entities not named or involved in the instant action *by filing and defending the instant Motion*[], despite the utter lack of legal or factual support, is precisely the type of conduct subject to Rule 11's duty of candor." Doc. 50 at 16 (emphasis added). Gulisano admits that he could have withdrawn the motion. Thus, the

district court acted within its discretion when it imposed sanctions on a motion that could have been withdrawn under the safe harbor provision.[7]

## B. The District Court Acted Within Its Discretion in Denying Gulisano's Motion for Reconsideration.

Gulisano asked the court to reconsider its decision to impose sanctions. After conducting an evidentiary hearing, the district court denied his motion. Gulisano challenges the denial on appeal, but he has abandoned this challenge. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). He failed to support the claim with arguments and citations to authority. *See id.* at 681. Instead, he merely appended, repeatedly, the same sentence to the end of his arguments against sanctions: "In the alternative, the court abused its discretion by denying the Appellant's Motion for Reconsideration, which raised this issue as grounds for doing so." Appellant's Brief at 39, 43, 47, 52, 54. These appended sentences are mere "passing references" that cannot raise an issue for appellate review. *Sapuppo*, 739 F.3d at 681. We consider the issue abandoned.

---

[7] Gulisano contends that the amount of attorney's fees awarded as sanctions was too high because BSI failed to mitigate its damages. This argument lacks merit. First, it is, at best for Gulisano, unclear whether any duty to mitigate damages was owed. Second, BSI asked Gulisano to withdraw the motion to amend judgment, and Gulisano refused, forcing BSI to incur attorney's fees in defending against the motion. So, it seems to us that Gulisano himself prevented BSI from mitigating its damages.

Were we to reach the merits, however, we would affirm the district court's denial of the Rule 59(e) motion for reconsideration. The court found that the motion "amount[ed] to no more than disagreement with the Court's reasoning and ultimate conclusions." Doc. 70 at 10. It failed to establish a clear error of law or manifest injustice as required. Because the motion merely "relitigate[d] old matters," the district court was within its discretion to deny it. *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005).

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's order imposing sanctions and its denial of the motion for reconsideration.

**AFFIRMED.**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

PHILLIP BLEICHER, Plaintiff, v. MICHAEL GULISANO, Defendant.
Case No. 1:26-cv-06287 (Hon. John F. Kness; Mag. J. Young B. Kim)

---

## DECLARATION AUTHENTICATING WEB-PAGE CAPTURE (28 U.S.C. § 1746)

I, Phillip Bleicher, declare under penalty of perjury under the laws of the United States that the following is true and correct:

1. I am the Plaintiff in the above-captioned action and have personal knowledge of the facts stated herein.

2. On August 17, 2026, the web page located at https://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/ (the "Page"), which is published on a website operated by Defendant Michael Gulisano (Gulisano Law, PLLC), was accessed and captured through a web browser.

3. At the time of capture, the web server reported a last-modified date and time for the Page of 08/17/2026 18:56:24, indicating the Page had been edited that day.

4. The images attached hereto as Screens 1 through 3 are true and accurate depictions of the Page as it appeared on August 17, 2026, when captured. They have not been altered, edited, or manipulated in any way other than to divide the single web page into sequential screen images for legibility.

5. The SHA-256 cryptographic hash value of each attached image file is listed in the table below. These values allow the integrity of each image to be independently verified.

6. The full page text captured on the same date produced a SHA-256 hash value of 8e15f1e9afd1f8c0b193ac989c6ba0ccd6b812f52719d1c40597070cf4d1b06a.

| Attached image | SHA-256 |
|---|---|
| 01 Top - Lady Justice + headline + photo (Aug 17).jpg | bf4b3cb7da3012877984d5741ea7803840ba0bc9916381f9ff060e7aed3852b5 |
| 02 Re-added photo + headline + $500 billed statement (Aug 17).jpg | e8ca7b5f472351bb7c092d6bbb81ff5b12f6e9c7540410f89f10e6c5d7dd199d |
| 03 2026 Update block - Epstein + Motion links + alter-ego expanded (Aug 17).jpg | 93bd2dde43686403242f4b2c9d5b2c69b5ca759b1fef11f16a4522c5d8023422 |

Executed on August ____, 2026.

________________________________

**Phillip Bleicher**

[Counsel note: this declaration authenticates the capture under FRE 901(b)(1) and 28 U.S.C. § 1746. It may be signed by Plaintiff or by any person with knowledge who performed the capture. Fill in the execution date before filing.]

*Screen 1 — Top of the page: masthead, headline "Phillip Bleicher – Criminial, Conman, and Liar," and the re-added photo of Plaintiff.*




Captured Aug 17, 2026 — https://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/ — SHA-256 bf4b3cb7da3012877984d5741ea78038…

*Screen 2 — Re-added photo with caption “only known photo… not been scrubbed,” the sub-headline, and the statement “refused to pay me the $500 I billed him.”*



*This is the only known photo of Phillip Bleicher that has not been scrubbed from the internet.*

## Phillip Bleicher – A Man Who Stole $3 Million from Public Schools, Intentionally Exposes Employees to Aids, Operates Brothels in Residential Homes, Fabricates Evidence in Court, and Evades Taxes

In November 2015, I responded to a Craigslist ad from a company looking for an attorney to assist in its litigation for alleged infringements of its intellectual property. The ad was posted by the world-class scumbag and career-criminal Phillip Bleicher. For about one month, I worked on one of Mr. Bleicher’s numerous frivolous lawsuits, in which he extorts money out of innocent parties by threatening excessive litigation. After I had already done the work, Mr. Bleicher *refused to pay me the $500 I billed him* (a ridiculously small amount for a month’s worth of work). In addition to refusing to pay me anything, it became clear to me that Mr. Bleicher was using my services, and the services of other attorneys via Craigslist, to assist in his ongoing criminal activities. Consequently, I terminated my representation of Mr. Bleicher.

That is when shit got real. Mr. Bleicher attempted to blackmail me, demanding several thousand dollars otherwise he threatened file a bogus bar complaint against me, as well as, defame my name on the internet with slanderous and false allegations.

I made the following counter-offer to Mr. Bleicher: “go fuck yourself and pay me for the work I did.” Mr.

- Cause of Actions
- Civil Litigation
- Civil Procedure
- Contracts
- Debt Collection
- Employment
- Evidence
- Legal News
- Legal Theories
- Miscellaneous
- Personal Injury

**CONTACT INFORMATION**

GULISANO LAW PLLC

**Address**
1489 W. Palmetto Park Road, Suite 500
Boca Raton, FL 33486

**Phone**
954-947-3972

**Fax**
954-947-3910

**Email**
consult@gulisanolaw.com

Legal

Captured Aug 17, 2026 — https://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/ — SHA-256 e8ca7b5f472351bb7c092d6bbb81ff5b…

*Screen 3 — The "2026 Update" block: the "Jeffery Epstein" reference, the "Motion to Dismiss!!! / Motion for Sanctions!!!" links, the "supports his pedophilia" line naming counsel, and the expanded alter-ego passage.*

## 2026 Update

In 2017, one brave American hero had the balls to stand up to Phillip Bleicher's criminal enterprises. This complaint from the historic lawsuit, John Doe v. Phillip Bleicher a/k/a Flava Works, Inc., is a work of art. Although, I was saying this 1 year before it was filed, it completely exposes Bleicher's profiteering by blackmailing homosexual men.

Mr. Bleicher's many victims should also know that, in 2022, he filed bankruptcy in Illinois o escape paying a substantial judgment entered against him and Flava Works. *See Flava Works, Inc. v. A4A Reseau, Inc.*, No. 14-23208-CIV, 2022 U.S. Dist. LEXIS 220758, at *2 (S.D. Fla. Dec. 7, 2022). If Mr. Bleicher alleges claims against you that occurred *prior to* 2022, and such claims were *not* disclosed to the bankruptcy court, then Mr. Bleicher committed fraud on the court.

In 2026, the consummate pipsqueak, Phillip Bleicher, foolishly sued me in Illinois for posting *this article 10 years ago in 2016*!!! I know he's lonely without his friend, Jeffery Epstein, but I'll never back down to their kind. Motion to Dismiss!!! Motion for Sanctions!!!

For anyone being subjected to harassment by one or more of Mr. Bleicher's criminal enterprises, you can contact the current attorney, Corinthia Hicks at corinthia@flavaworks.com, who gladfully accepts Mr. Bleicher's blood money and supports his pedophilia and scams against honest hardworking Americans.

For Mr. Bleicher's many victims, you should know that, at least one court has already held that "Phillip Bleicher is the 'alter ego' of Flava Works, Inc. It is indisputable that Phillip Bleicher qualifies as a 'head of the corporation.'" *Flava Works, Inc. v. A4A Reseau, Inc.*, No. 14-23208-CIV, 2021 U.S. Dist. LEXIS 111014, at *10 (S.D. Fla. June 14, 2021).

This means Phillip Bleicher can no longer hide behind the corporate shield of his criminal enterprises, which are *all* offshoots of Flava Works. If Flava Works or one of Bleicher' other alter ego's sues you, its legally the same as *if* Phillip Bleicher sued you. If you are ever sued by Flava Works or one of its numerous fraudulent subsidiaries, you could assert counterclaims against Phillip Bleicher personally!

Gulisano / / Legal News, Miscellaneous

Captured Aug 17, 2026 — https://gulisanolaw.com/phillip-bleicher-criminial-conman-liar/ — SHA-256 93bd2dde43686403242f4b2c9d5b2c69…

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

PHILLIP BLEICHER, CASE NO.: 1:26-CV-06287

Plaintiff,

v.

MICHAEL GULISANO,

Defendant.
_______________________________________/

**DEFENDANT'S MOTION FOR SANCTIONS AGAINST BLEICHER AND HICKS**

Defendant, Michael Gulisano (the "Defendant"), by and through counsel, pursuant to Fed. R. Civ. P. 11, moves for sanctions against Plaintiff, Phillip Bleicher ("Bleicher") and counsel Corinthia Hicks ("Hicks") for the allegations and claims made in the Complaint (ECF No. 1).

1. On May 28, 2026, Bleicher filed a Complaint, signed by and Hicks, for (1) defamation *per se*; (2) public disclosure of private facts; (3) intrusion upon seclusion; (4) false light invasion of privacy; (5) intentional infliction of emotional distress; (6) tortious interference with prospective economic advantage; and (7) violation of the Doxing Act. *See* ECF No. 1.[1]

2. The Defendant is a Florida attorney who briefly represented Bleicher's criminal enterprise, Flava Works, Inc. ("Flava Works"), for *less than* two (2) months in 2015. *See* Response to Bar Complaint attached as Exhibit 1. Flava Works is a Florida and Illinois corporation, which produces homosexual pornography featuring African-American and Hispanic men and occasionally minors. *See* Ex. 1. Bleicher also derives a large portion of his ill-gotten gains by filing, or threatening to file, frivolous copyright infringement lawsuits and threatening to "out" closeted homosexual man unless they pay him settlements. *See* Ex. 1.

---

[1] All of the claims asserted in the Complaint filed by Hicks consist of "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3. At the outset, the Complaint includes completely irrelevant allegations pertaining to two unrelated cases the Defendant worked on, which Bleicher had no involvement with and clearly has no bearing on any of his claims. Presumably, Bleicher and Hicks included this irrelevant information in a blatant attempt to try and embarrass the Defendant or to prejudice the Court against him.

4. The Complaint also includes an entirely false recitation of the Defendant's representation of Bleicher's criminal enterprise—Flava Works. *See* ECF No. 1 at 5–7, ¶ 13–19. If Hicks had performed even a rudimentary investigation into the claims, she would have known those statements were false. The only accurate statement in the Complaint about the Defendant's representation of Flava Works is that it was brief.

5. The Defendant withdrew from representing Flava Works—he was *not* fired—after Bleicher asked him to *fabricate* evidence in a pending case in the Southern District of Florida so that he could avoid paying sanctions of $10,000.00 imposed against his company. To add insult to injury, Bleicher never compensated the Defendant for the legal services he provided before withdrawal. Bleicher and Hicks knew or should have known the claims in the Complaint—that $1,000 was an "inflated" fee for the Defendant's services—would have no factual support. *See* ECF No. 7–9 at ¶ 20–28.

6. In 2016, Bleicher spitefully filed a frivolous bar complaint against the Defendant and against two (2) other attorneys that represented Flava Works in that case. The Florida Bar found *no* merit to Bleicher's allegations against the Defendant or the two (2) other attorneys. In 2024, Bleicher filed another frivolous bar complaint against the Defendant based on the allegations forming the basis of the claims in the Complaint. The Florida Bar again found *no* merit to Bleicher's allegations.

7. Putting all that aside, the gist of Bleicher's Complaint centers on two (2) factual

allegations. First, it alleges the Defendant posted a "defamatory" blog post concerning Bleicher in 2017. *See* ECF No. 1 at 8, ¶ 25 ("The Article itself—which Defendant has continuously published … since approximately 2017 ….").

8. Shockingly, Hicks omits that the article is actually a *reproduction* of the Defendant's response to the frivolous 2017 bar complaint Bleicher filed against him. *See* Ex. 1. Under Florida law, bar complaints and responses thereto are *public* records. As such, Bleicher has no expectation of privacy concerning the matters in the article whereas the Defendant's speech is protected under the First Amendment and the Constitution of Illinois. *See* Ex. 1.

9. Moreover, Hicks knew or should have known—but shockingly also *omits*—that none of the alleged "defamatory" statements were *not* made by the Defendant. *See* Ex. 1. The statements are citations and quotations to third-party publications and news reports chronicling Bleicher's lifelong egregious criminality and frivolous litigation.[2]

10. Second, the Complaint alleges that the Defendant "updated" the "defamatory" article "[i]n … June 2024 … Defendant materially modified the Article and added a block labeled '2024 Update' that publishes Plaintiff's home address … personal cellular telephone number … and … personal email address (the 'Doxing Block')." ECF No. 1 at 2, ¶ 3.

11. By Bleicher and Hicks's own admission, the only thing that changed in June 2024 was the addition of a publicly available address, phone number, and email. However, the alleged "defamatory" statements published in 2017 have never been altered since publication.

[2] As a public figure, Bleicher would ordinarily have to establish actual malice to prevail on a defamation claim. *See, e.g.*, Ex. 1 at 33 (Jagged Press article stating, "Bleicher and his company are also well-known for frivolous lawsuits against detractors or, against those who amplify outside findings and facts, and using underhanded moves, abusing the law …."); Ex. 1 at 37–44 (Chicago Department of Public Health documenting how Bleicher exposed his "performers" to HIV and the shutdown of his illegal brothel); Ex. 1 at 45–46 (Illinois Attorney General documenting how Bleicher's fraudulent charity stole more than $3 million from schools); Ex. 1 at 47–48 (News Bank article noting Miami's attempts to shut down Bleicher's illegal brothel operating out of a residential house).

**General False and Sanctionable Claims in the Complaint**

12. Bleicher and Hicks knew or should have known that they would neither be unable to establish damages of $1,000,000 nor damages in excess of $75,000. *See* ECF No. 1 at 4, ¶ 7; ECF No. 1 at 3, ¶ 6 & 28, ¶ A.

13. Bleicher and Hicks knew or should have known that they would be unable to establish the Defendant is subject to personal jurisdiction in this District. *See* ECF No. 1 at 4, ¶ 9.

14. Bleicher and Hicks knew or should have known that they would be unable to establish the complete diversity jurisdiction necessary to maintain an action under 28 U.S.C. § 1332. *See* ECF No. 1 at 4, ¶ 7.

**The Plaintiff's Defamation *Per Se* Claim has no basis in Law or Fact**

15. In Illinois, defamation actions are subject to a one-year statute of limitations. *See* 735 ILCS 5/13-201 ("Actions for slander, libel or publication … shall be commenced within one year next after the cause of action accrued"); *Peal v. Lee*, 403 Ill. App. 3d 197, 207 (2010) ("The statute of limitations to file a defamation claim is one year"). "[I]n defamation cases the cause of action accrues and the statute of limitations begins to run on the *date of publication* of the defamatory material." *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 334 N.E.2d 160, 161 (Ill. 1975) (emphasis added).

16. Bleicher and Hicks admit in the Complaint that the allegedly "defamatory" statements were published in 2017. Specifically, "[t]he Article itself — which Defendant has *continuously published … since approximately 2017* …." ECF No. 1 at 8, ¶ 25 (emphasis added). Therefore, they knew or should have known that the defamation claim is time-barred because it was filed outside of the applicable one-year statute of limitations, which began to run in 2017, whereas Bleicher filed suit in 2026.

17. In a thinly veiled attempt to avoid the clear bar presented by the statute of

limitations, Bleicher and Hicks claim, "[e]ach modification or republication of the Article—including the addition of the Doxing Block in or about June 2024—constitutes a separate, actionable publication." ECF No. 1 at 25, ¶ 108. They knew or should have known that this statement not only has no basis in law or fact but also directly contradicts Illinois law on this issue. *See Tom Olesker's Exciting World of Fashion, Inc.*, 334 N.E.2d at 161.

18. Moreover, by Bleicher and Hick's own admission, the only thing that changed in June 2024 was the *addition* of Bleicher's personal identifiable information but *not* any changes to the alleged "defamatory" statements published in 2017. *See* ECF No. 1 at 2, ¶ 3. However, any claim for defamation would still be time-barred even *if* the limitations period began in June 2024. Surely, Hicks knew or should have known that a recitation of personal identifiable information is not a "statement" subject to defamation.

19. Further, Bleicher and Hicks knew or should have known that the defamation claim would also fail as a matter of law for *at least* two (2) additional reasons. First, a true or "substantially true" statement cannot form the basis for a defamation claim. *See Moore v. People for the Ethical Treatment of Animals, Inc.*, 402 Ill. App. 3d 62, 71 (2010); *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. App. 2d 381, 402 (2008) ("a statement is not actionable unless it is [both] factual and false"). "Truth is an absolute defense to a defamation action." *Younge v. Berman*, 267 N.E.3d 346, 358 (Ill. App. 2d 2025) (citation omitted). "Under this reasoning, a statement is not actionable if it is substantially true, meaning the 'gist' or 'sting' of the statement at issue is true." *Id.* (citation omitted).

20. Second, "opinions that do not misstate facts are protected not only by Illinois law but also by the First Amendment, and that is so even when the opinions concern one of the five defamation *per se* categories under Illinois law." *Bd. of Forensic Document Exam'rs, Inc. v. ABA*, 922 F.3d 827, 832 (7th Cir. 2019). Thus, statements which "fail to amount to verifiable assertions

of fact" and "lack[] readily understood meaning" are protected statements of opinion that do not give rise to a defamation claim. *Madison v. Frazier*, 539 F.3d 646, 655 (7th Cir. 2008).

21. Here, Bleicher and Hicks knew or should have known that the defamation claim would not be supported by law or fact because: (1) the allegedly defamatory statements are true; and/or (2) the statements consist of the Defendant's subjective opinions about Bleicher's character and are not verifiable statements of fact. *Compare* Ex. 1 *with Younge*, 267 N.E.3d at 358 (emphasis added) ("[W]ith one exception, the information contained in the aforementioned cover letter is substantially true, as shown by the *relevant attachments adjoining the letter*.").

**The Plaintiff's Privacy Claims have no basis in Law or Fact**

22. "Illinois courts recognize four ways to state a cause of action for invasion of privacy: '(1) intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) public disclosure of private facts; and (4) publicity placing another in a false light.'" *Cooney v. Chi. Pub. Schs*, 943 N.E.2d 23, 31–32 (Ill. App. 3d 2010) (quotation omitted).

23. The Complaint asserts three (3) of the four (4) ways to state a cause of action for invasion of privacy under Illinois law. However, privacy actions are subject to a one-year statute of limitations. *See* 735 ILCS 5/13-201 ("Actions for … publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued").

24. Therefore, Bleicher and Hicks knew or should have known that each of the three (3) privacy claims are time-barred because they were filed outside of the applicable one-year statute of limitations, which began to run in 2017, whereas Bleicher filed suit in 2026.

25. By Bleicher and Hick's own admission, the only thing that changed in June 2024 was the addition of Bleicher's personal identifiable information but *not* any changes to the alleged "defamatory" statements published in 2017. *See* ECF No. 1 at 2, ¶ 3. Even *if* the limitations period began to run in June 2024, the privacy claims would still be time-barred.

26. Further, each of Bleicher and Hick's privacy claims are based on the same statements and allegations that form the basis of the defamation claim. *See Osundairo v. Geragos*, 447 F. Supp. 3d 727, 738 (N.D. Ill. 2020) ("Where an unsuccessful defamation *per se* claim is the basis of his false-light claim, plaintiff's false light invasion of privacy claim fails as well."); *Gracia v. SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1062 (7th Cir. 2021) ("[W]hen a false light invasion of privacy claim follows an unsuccessful defamation claim, the false light claim must also fail.").

27. Since defamation and privacy claims rise and fall together, Bleicher and Hicks knew or should have known that each of the privacy claims would fail as a matter of law for the same substantive reasons, identified above, that cause the defamation claim to fail. The remaining privacy claims are equally doomed.

28. "To support the intrusion theory, plaintiffs must allege: (1) an unauthorized intrusion into seclusion; (2) the intrusion would be highly offensive to a reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused the plaintiffs anguish and suffering." *Cooney*, 943 N.E.2d at 32 (citation omitted). "Public disclosure of private facts requires that '(1) publicity was given to the disclosure of private facts; (2) the facts were private, and not public, facts; and (3) the matter made public was such as to be highly offensive to a reasonable person.'" *Id.* (quotation omitted). "While the theories contain different elements, both the intrusion and public disclosure torts require 'private' matters or facts." *Id.*

29. The intrusion upon seclusion claim fails for additional reasons. "Private facts must be alleged. Without private facts, the other three elements of the tort need not be reached. Because the analysis begins with the predicate, private facts, it also ends there if no private facts are involved." *Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1017 (Ill. App. 3d 2004).

30. Under Illinois law, "matters of public record such as names and dates of birth have *not been held* to be private facts." *Cooney*, 943 N.E.2d at 32 (emphasis added). "[N]one of the

"personal" information furnished … *names*, *telephone numbers*, *addresses* or social security numbers-have been held to be private facts." *Busse*, 813 N.E.2d at 1017 (emphasis added).

31. Therefore, to the extent Bleicher and Hicks assert that publishing Bleicher's name, address, phone number, and/or email address are actionable as an "intrusion upon seclusion" or "public disclosure of private facts," they knew or should have known that allegation would not support those claims under Illinois law. *See Cooney*, 943 N.E.2d at 32; *Busse*, 813 N.E.2d at 1017.

32. The disclosure of private facts claim would also fail since the article is a matter of legitimate public concern, which has helped countless people since 2017, being conned and extorted by Bleicher. *See Doe v. TCF Bank Ill.*, 707 N.E.2d 220, 221 (Ill. App. 3d 1999) (adding a fourth element that "the matter published was not of legitimate public concern"). Many have reached out to the Defendant to thank him for making this vital information available.

**The Plaintiff's Intentional Infliction of Emotional Distress Claim has no basis in Law or Fact**

33. In Illinois, there are "three elements necessary to state a cause of action for intentional infliction of emotional distress …. 'First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress.'" *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. App. 2d 2003) (quotation omitted).

34. "[T]he applicable statute of limitations for intentional infliction of emotional distress is two years …." *Feltmeier*, 798 N.E.2d at 85 (citing 735 ILCS 5/13-202). Here, Bleicher and Hicks knew or should have known that the claim for intentional infliction of emotional distress ("IIED") was time-barred because it was filed outside of the applicable two-year statute of limitations, which began to run in 2017, whereas Bleicher filed suit in 2026.

35. Bleicher's IIED claim would also fail as a matter of law. "Illinois case law makes clear that under no circumstances would 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' qualify as outrageous conduct." *Feltmeier*, 798 N.E.2d at 80–81 (quotation omitted). "Rather, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community." *Id.* (citation omitted).

36. Bleicher and Hicks and Hicks knew or should have known that true statements and the Defendant's personal opinions based on those true statements would not support a claim for IIED as a matter of law—let alone—rise to the level as to be "so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community."

37. To the extent Bleicher and Hicks claim that the June 2024 "update" to the allegedly "defamatory" post published in 2017 constitutes IIED, they knew or should have known that posting publically available personal information cannot—as a matter of law—rise to the level as to be "so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community."

**The Plaintiff's Tortious Interference with Prospective Economic Advantage Claim has no basis in Law or Fact**

38. "It is clear from Illinois case law that, in order to state a viable claim of tortious interference with a prospective economic advantage, a defendant must specifically intend to interfere with the same expectancy that is thwarted by their conduct." *Younge*, 267 N.E.3d at 356. *See J. Eck & Sons, Inc. v. Reuben H. Donnelley Corp.*, 572 N.E.2d 1090, 1093 (Ill. App. 3d 1991) ("The requisite intent … is defendant's knowledge of a reasonable business expectancy and defendant's subsequent intentional interference which prevents the expectancy from ripening

into a valid business relationship.").

39. "When considering such a claim, 'the focus is on the conduct of the party interfering with the expectancy.'" *Younge*, 267 N.E.3d at 354 (quotation omitted). "It is insufficient for a plaintiff to merely allege that a defendant indeed interfered with a business expectancy; the plaintiff must instead allege that the defendant 'acted intentionally with the purpose of injuring the plaintiff's expectancy.'" *Id.* (quotation omitted).

40. The statute of limitations for a claim for tortious interference with a prospective economic advantage is five (5) years. *See Colucci v. Chi. Crime Comm'n*, 334 N.E.2d 461, 469–70 (Ill. App. 3d 1975). Bleicher and Hicks knew or should have known that the claim for tortious interference with a prospective economic advantage was time-barred because it was filed outside of the applicable five-year statute of limitations, which began to run in 2017, whereas Bleicher filed suit in 2026.

41. Moreover, Bleicher and Hicks knew or should have known that they would never be able to establish: (1) the necessary intent to support a claim for tortious interference; (2) that the Defendant directly caused any loss of any legitimate business; or (3) that any loss of any legitimate business was *actually* caused by the Defendant's response to Bleicher's 2017 frivolous bar complaint. They also knew or should have known the vast majority of Bleicher's "business" consists of fraud, extortion, and other illegal and illegitimate acts that cannot support a tortious interference claim as a matter of law.

42. To the extent Bleicher and Hicks allege that publishing Bleicher's address, phone number, and email in June 2024 constituted tortious interference with a prospective economic advantage, they knew or should have known that posting publically available personal information cannot—as a matter of law—support such a claim.

**The Plaintiff's Doxing Act Claim has no basis in Law or Fact**

43. Finally, Bleicher brings a claim under the Doxing Act. This is the *only* claim—*out of seven (7)*—not clearly and obviously barred by the statute of limitations. However, Bleicher and Hicks knew or should have known that the Doxing Act claim would fail, as a matter of law, for numerous reasons.

44. The Doxing Act requires that "the information is published with the *intent* that it be used to harm or harass the person whose information is published *and with knowledge or reckless disregard* that the person whose information is published would be reasonably likely to suffer death, bodily injury, or stalking." 740 ILCS 195/10(a)(1) (emphasis added).

> We read a Doxing Act claim to have six elements: (1) intentional publication of personally identifiable information; (2) the published information identifies a person without reliance on extrinsic sources; (3) lack of consent to the publication; (4) intent to harm or harass; (5) knowledge or reckless disregard of a reasonable likelihood of death, bodily injury, or stalking to the person whose information is published; and (6) one or more of the listed harms results.

*D'Ambrosio v. Meta Platforms Inc.*, No. 25-2231, 2026 U.S. App. LEXIS 14045, at *13–14 (7th Cir. May 15, 2026).

45. Bleicher and Hicks knew or should have known that the alleged "doxing" would not be actionable because: (1) the published information relies on extrinsic sources; (2) Bleicher consented to the publication by voluntarily supplying the information in public records; (3) the Defendant published the information to inform the public, not with the intent to harm or harass; (4) the Defendant had no knowledge of nor did he recklessly disregard a reasonable likelihood of death, bodily injury, or stalking; and (5) none of the statutorily listed harms have occurred.

46. In regards to that last point, Bleicher and Hicks allege in conclusory fashion, "Defendant's publication caused Plaintiff significant emotional distress, economic injury, fear of

substantial bodily injury, and substantial life disruption—including without limitation more than 599 harassing telephone calls, text messages, and voicemails to Plaintiff's unlisted cellular telephone number; ongoing anxiety, sleep disruption, and emotional distress; the need to alter daily life and communications routines; and economic injury including increased risk to Plaintiff's personal and professional security." ECF No. 1 at 21, ¶ 84.

47. However, "emotional distress," "*fear* of substantial bodily injury," "harassing telephone calls, text messages, and voicemails," "anxiety, sleep disruption, and emotional distress [actually listed twice]," "alter[ing] daily life and communications routines," and generic "economic injury [also listed twice]" are not enumerated harms under the Doxing Act.

48. Since Bleicher and Hicks concede that neither death nor bodily injury has occurred, the only remaining harm under the Doxing Act would be "stalking." However, the alleged harm is not identified in the Complaint with the specificity required to maintain the claim and any attempt at amendment would be futile.

49. "[S]talking requires two or more acts in which a *person 'directly, indirectly, or through third parties*, by any action, method, device, or means follows, monitors, observes, surveils, [or makes a true threat of unlawful violence about] … a person, engages in other non-consensual contact, or interferes with or damages a person's property or pet.'" *D'Ambrosio*, 2026 U.S. App. LEXIS 14045 at *15–16 (citations omitted) (emphasis added).

50. However, the Complaint does not allege that the Defendant "stalked" Bleicher. Bleicher and Hicks' attempts to impose liability on the Defendant for phone calls or emails made by *unnamed* third parties is extremely problematic and presents insurmountable evidentiary issues. The Complaint does not allege that the Defendant specifically enlisted these unnamed third parties to "stalk" Bleicher.

51. Moreover, the Complaint "makes no effort to explain how someone could

reasonably infer from [the Defendant's] alleged conduct that []he intended to put him in reasonable fear of death, bodily injury, or stalking. Nor does he explain how posting h[is] impressions of [Bleicher and his response to a 2017 bar complaint] accomplishes that purpose. None of the post[] attributed to [the Defendant] contain a call to action, much less a call to action for … anyone else to harm [Bleicher] or his family." *D'Ambrosio*, 2026 U.S. App. LEXIS 14045 at *17–18.

52. Bleicher and Hicks knew or should have known the allegations in the Complaint actually refute any claim of "stalking" since—in nearly every instance—the alleged "stalker" was *responding* to Bleicher's attempts to extort settlements *from* the alleged "stalker," as is, his modus operandi. *See supra* ¶ 2; ECF No. 1 at 15–18, ¶ 61–72. This at last exposes the real motivation behind the baseless claims Bleicher and Hicks make in the Complaint—Bleicher is angry that some of the individuals that he targeted to defraud saw a 2017 response to a bar complaint and were able to avoid being victimized by him.

53. Thus, Bleicher and Hicks knew or should have known that none of the alleged harm in the Complaint constitutes "stalking" under the Doxing Act. In fact, the *entire* point of the Defendant publishing, in 2017, his response to Bleicher's frivolous bar complaint, as well as, the "update" in June 2024 to include his contact information—was for people to avoid *any* interaction with Bleicher and assist the victims of his rampant criminal acts and vexatious litigation.

54. Bleicher and Hicks also knew or should have known that the Doxing Act claim is not actionable since the alleged conduct is protected by *at least* three (3) exceptions to that law. First, "[i]t is not an offense … for an individual to disseminate the personally identifiable information for the purpose of, or in connection with, the reporting of conduct reasonably believed to be unlawful." 740 ILCS 195/10(b)(2).

55. Second, "[i]t is not an offense … for an individual to provide a person's personally identifiable information in connection with activity protected under the United States … or the Illinois Constitution pertaining to speech …." 740 ILCS 195/10(b)(3). Third, "[n]othing in this Act shall be construed in any manner to prohibit any activity protected under the Constitution of the United States or … Illinois …." 740 ILCS 195/10(c)(3).

56. Bleicher and Hicks knew or should have known that the Doxing Act claim would not be supported by law or fact because: (1) the Defendant was reporting conduct reasonably believed to be unlawful; (2) the Defendant provided the information in connection with activity protected under the Constitutions of the U.S. and Illinois pertaining to speech; and (3) the interpretation of the Doxing Act, as advocated by them, would prohibit activities protected under the Constitutions of the U.S. and Illinois.

**MEMORANDUM OF LAW**

"Rule 11 permits a court to impose sanctions on an attorney who presents to the court a … motion … that contains claims, defenses, and other legal contentions that are not warranted by either existing law or a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *Bautista v. Star Cruises*, 696 F. Supp. 2d 1274, 1277–78 (S.D. Fla. 2010) (citing Fed. R. Civ. P. 11(b)(1)). "Rule 11 also permits the imposition of sanctions if the factual contentions contained in the … motion … do not have evidentiary support." *Id.* at 1278 (citing Fed. R. Civ P. 11(b)(2)).

"The purpose of Rule 11 is to deter baseless filings." *Powrzanas v. Jones Util. & Contracting Co.*, 834 F. App'x 500, 507 (11th Cir. 2020). Specifically, Rule 11 "requires that an attorney … filing a pleading certify that the filing is not presented for any improper purpose." *Id.* (internal quotation marks omitted). *See also, In re Ames*, 993 F.3d 27, 34 (1st Cir. 2021) ("Under Rule 11, a court may impose sanctions on a lawyer 'for advocating a frivolous position,

pursuing an unfounded claim, or filing a lawsuit for some improper purpose.'"). A party's decision to file a frivolous lawsuit for the sole purpose of forcing a settlement may qualify as an improper purpose. *See Scott v. Vantage Corp.*, 64 F.4th 462, 472 (3d Cir. 2023).

> [A] court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous—in view of the facts or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry.

*Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996).

Here, Bleicher and Hicks knew or should have known that the claims made in the Complaint were not warranted by either existing law or a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. Bleicher and Hicks also knew or should have known that the factual contentions contained in the Complaint did not have evidentiary support. As demonstrated above, the claims made by Bleicher and Hicks in the Complaint are objectively frivolous and they were aware or should have aware that the claims were frivolous. To the extent Hicks claims otherwise, she would have been aware that the claims were frivolous had she made a reasonable inquiry before filing the Complaint. In short, the Complaint advocates frivolous positions, pursues unfounded claims, and is a frivolous lawsuit filed for the sole improper purpose of forcing a settlement. Consequently, Bleicher and Hicks have both violated Fed. R. Civ. P. 11 warranting the imposition of sanctions. Therefore, the Court should grant this Motion for Sanctions.

**WHEREFORE**, the Defendant respectfully requests that the Court enter an order imposing sanctions of $75,000.00 against Bleicher and Hicks, jointly and severally, pursuant to Fed. R. Civ. P. 11, for their violations and the fees and costs incurred by the Defendant in this action.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served but not filed, on May 31, 2026, pursuant to Fed. R. Civ. P. 11(c)(2), on Corinthia Hicks, counsel for the Plaintiff, via email to corinthia@flavaworks.com.

Respectfully Submitted By:

Gulisano Law, PLLC
1489 W. Palmetto Park Road, Suite 500
Boca Raton, FL 33486
954-947-3972 – office
michael@gulisanolaw.com – email

s/ Michael Gulisano
Michael Gulisano, Esquire
Florida Bar No.: 87573
(Application for admission *pro hac vice* forthcoming)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

PHILLIP BLEICHER,

CASE NO.: 1:26-CV-06287

Plaintiff,

v.

MICHAEL GULISANO,

Defendant.

_______________________________________/

**DEFENDANT'S MOTION FOR SANCTIONS AGAINST BLEICHER AND HICKS**

Defendant, Michael Gulisano (the "Defendant"), by and through counsel, pursuant to Fed. R. Civ. P. 11, moves for sanctions against Plaintiff, Phillip Bleicher ("Bleicher") and counsel Corinthia Hicks ("Hicks") for the allegations and claims made in the Complaint (ECF No. 1).

1. On May 28, 2026, Bleicher filed a Complaint, signed by and Hicks, for (1) defamation *per se*; (2) public disclosure of private facts; (3) intrusion upon seclusion; (4) false light invasion of privacy; (5) intentional infliction of emotional distress; (6) tortious interference with prospective economic advantage; and (7) violation of the Doxing Act. *See* ECF No. 1.[1]

2. The Defendant is a Florida attorney who briefly represented Bleicher's criminal enterprise, Flava Works, Inc. ("Flava Works"), for *less than* two (2) months in 2015. *See* Response to Bar Complaint attached as Exhibit 1. Flava Works is a Florida and Illinois corporation, which produces homosexual pornography featuring African-American and Hispanic men and occasionally minors. *See* Ex. 1. Bleicher also derives a large portion of his ill-gotten gains by filing, or threatening to file, frivolous copyright infringement lawsuits and threatening to "out" closeted homosexual man unless they pay him settlements. *See* Ex. 1.

---

[1] All of the claims asserted in the Complaint filed by Hicks consist of "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3. At the outset, the Complaint includes completely irrelevant allegations pertaining to two unrelated cases the Defendant worked on, which Bleicher had no involvement with and clearly has no bearing on any of his claims. Presumably, Bleicher and Hicks included this irrelevant information in a blatant attempt to try and embarrass the Defendant or to prejudice the Court against him.

4. The Complaint also includes an entirely false recitation of the Defendant's representation of Bleicher's criminal enterprise—Flava Works. *See* ECF No. 1 at 5–7, ¶ 13–19. If Hicks had performed even a rudimentary investigation into the claims, she would have known those statements were false. The only accurate statement in the Complaint about the Defendant's representation of Flava Works is that it was brief.

5. The Defendant withdrew from representing Flava Works—he was *not* fired—after Bleicher asked him to *fabricate* evidence in a pending case in the Southern District of Florida so that he could avoid paying sanctions of $10,000.00 imposed against his company. To add insult to injury, Bleicher never compensated the Defendant for the legal services he provided before withdrawal. Bleicher and Hicks knew or should have known the claims in the Complaint—that $1,000 was an "inflated" fee for the Defendant's services—would have no factual support. *See* ECF No. 7–9 at ¶ 20–28.

6. In 2016, Bleicher spitefully filed a frivolous bar complaint against the Defendant and against two (2) other attorneys that represented Flava Works in that case. The Florida Bar found *no* merit to Bleicher's allegations against the Defendant or the two (2) other attorneys. In 2024, Bleicher filed another frivolous bar complaint against the Defendant based on the allegations forming the basis of the claims in the Complaint. The Florida Bar again found *no* merit to Bleicher's allegations.

7. Putting all that aside, the gist of Bleicher's Complaint centers on two (2) factual

allegations. First, it alleges the Defendant posted a "defamatory" blog post concerning Bleicher in 2017. *See* ECF No. 1 at 8, ¶ 25 ("The Article itself—which Defendant has continuously published … since approximately 2017 ….").

8. Shockingly, Hicks omits that the article is actually a *reproduction* of the Defendant's response to the frivolous 2017 bar complaint Bleicher filed against him. *See* Ex. 1. Under Florida law, bar complaints and responses thereto are *public* records. As such, Bleicher has no expectation of privacy concerning the matters in the article whereas the Defendant's speech is protected under the First Amendment and the Constitution of Illinois. *See* Ex. 1.

9. Moreover, Hicks knew or should have known—but shockingly also *omits*—that none of the alleged "defamatory" statements were *not* made by the Defendant. *See* Ex. 1. The statements are citations and quotations to third-party publications and news reports chronicling Bleicher's lifelong egregious criminality and frivolous litigation.[2]

10. Second, the Complaint alleges that the Defendant "updated" the "defamatory" article "[i]n … June 2024 … Defendant materially modified the Article and added a block labeled '2024 Update' that publishes Plaintiff's home address … personal cellular telephone number … and … personal email address (the 'Doxing Block')." ECF No. 1 at 2, ¶ 3.

11. By Bleicher and Hicks's own admission, the only thing that changed in June 2024 was the addition of a publicly available address, phone number, and email. However, the alleged "defamatory" statements published in 2017 have never been altered since publication.

---

[2] As a public figure, Bleicher would ordinarily have to establish actual malice to prevail on a defamation claim. *See, e.g.*, Ex. 1 at 33 (Jagged Press article stating, "Bleicher and his company are also well-known for frivolous lawsuits against detractors or, against those who amplify outside findings and facts, and using underhanded moves, abusing the law ...."); Ex. 1 at 37–44 (Chicago Department of Public Health documenting how Bleicher exposed his "performers" to HIV and the shutdown of his illegal brothel); Ex. 1 at 45–46 (Illinois Attorney General documenting how Bleicher's fraudulent charity stole more than $3 million from schools); Ex. 1 at 47–48 (News Bank article noting Miami's attempts to shut down Bleicher's illegal brothel operating out of a residential house).

**General False and Sanctionable Claims in the Complaint**

12. Bleicher and Hicks knew or should have known that they would neither be unable to establish damages of $1,000,000 nor damages in excess of $75,000. *See* ECF No. 1 at 4, ¶ 7; ECF No. 1 at 3, ¶ 6 & 28, ¶ A.

13. Bleicher and Hicks knew or should have known that they would be unable to establish the Defendant is subject to personal jurisdiction in this District. *See* ECF No. 1 at 4, ¶ 9.

14. Bleicher and Hicks knew or should have known that they would be unable to establish the complete diversity jurisdiction necessary to maintain an action under 28 U.S.C. § 1332. *See* ECF No. 1 at 4, ¶ 7.

**The Plaintiff's Defamation *Per Se* Claim has no basis in Law or Fact**

15. In Illinois, defamation actions are subject to a one-year statute of limitations. *See* 735 ILCS 5/13-201 ("Actions for slander, libel or publication … shall be commenced within one year next after the cause of action accrued"); *Peal v. Lee*, 403 Ill. App. 3d 197, 207 (2010) ("The statute of limitations to file a defamation claim is one year"). "[I]n defamation cases the cause of action accrues and the statute of limitations begins to run on the *date of publication* of the defamatory material." *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 334 N.E.2d 160, 161 (Ill. 1975) (emphasis added).

16. Bleicher and Hicks admit in the Complaint that the allegedly "defamatory" statements were published in 2017. Specifically, "[t]he Article itself — which Defendant has *continuously published … since approximately 2017* …." ECF No. 1 at 8, ¶ 25 (emphasis added). Therefore, they knew or should have known that the defamation claim is time-barred because it was filed outside of the applicable one-year statute of limitations, which began to run in 2017, whereas Bleicher filed suit in 2026.

17. In a thinly veiled attempt to avoid the clear bar presented by the statute of

limitations, Bleicher and Hicks claim, "[e]ach modification or republication of the Article—including the addition of the Doxing Block in or about June 2024—constitutes a separate, actionable publication." ECF No. 1 at 25, ¶ 108. They knew or should have known that this statement not only has no basis in law or fact but also directly contradicts Illinois law on this issue. *See Tom Olesker's Exciting World of Fashion, Inc.*, 334 N.E.2d at 161.

18. Moreover, by Bleicher and Hick's own admission, the only thing that changed in June 2024 was the *addition* of Bleicher's personal identifiable information but *not* any changes to the alleged "defamatory" statements published in 2017. *See* ECF No. 1 at 2, ¶ 3. However, any claim for defamation would still be time-barred even *if* the limitations period began in June 2024. Surely, Hicks knew or should have known that a recitation of personal identifiable information is not a "statement" subject to defamation.

19. Further, Bleicher and Hicks knew or should have known that the defamation claim would also fail as a matter of law for *at least* two (2) additional reasons. First, a true or "substantially true" statement cannot form the basis for a defamation claim. *See Moore v. People for the Ethical Treatment of Animals, Inc.*, 402 Ill. App. 3d 62, 71 (2010); *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. App. 2d 381, 402 (2008) ("a statement is not actionable unless it is [both] factual and false"). "Truth is an absolute defense to a defamation action." *Younge v. Berman*, 267 N.E.3d 346, 358 (Ill. App. 2d 2025) (citation omitted). "Under this reasoning, a statement is not actionable if it is substantially true, meaning the 'gist' or 'sting' of the statement at issue is true." *Id.* (citation omitted).

20. Second, "opinions that do not misstate facts are protected not only by Illinois law but also by the First Amendment, and that is so even when the opinions concern one of the five defamation *per se* categories under Illinois law." *Bd. of Forensic Document Exam'rs, Inc. v. ABA*, 922 F.3d 827, 832 (7th Cir. 2019). Thus, statements which "fail to amount to verifiable assertions

of fact" and "lack[] readily understood meaning" are protected statements of opinion that do not give rise to a defamation claim. *Madison v. Frazier*, 539 F.3d 646, 655 (7th Cir. 2008).

21. Here, Bleicher and Hicks knew or should have known that the defamation claim would not be supported by law or fact because: (1) the allegedly defamatory statements are true; and/or (2) the statements consist of the Defendant's subjective opinions about Bleicher's character and are not verifiable statements of fact. *Compare* Ex. 1 *with Younge*, 267 N.E.3d at 358 (emphasis added) ("[W]ith one exception, the information contained in the aforementioned cover letter is substantially true, as shown by the *relevant attachments adjoining the letter*.").

**The Plaintiff's Privacy Claims have no basis in Law or Fact**

22. "Illinois courts recognize four ways to state a cause of action for invasion of privacy: '(1) intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) public disclosure of private facts; and (4) publicity placing another in a false light.'" *Cooney v. Chi. Pub. Schs*, 943 N.E.2d 23, 31–32 (Ill. App. 3d 2010) (quotation omitted).

23. The Complaint asserts three (3) of the four (4) ways to state a cause of action for invasion of privacy under Illinois law. However, privacy actions are subject to a one-year statute of limitations. *See* 735 ILCS 5/13-201 ("Actions for … publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued").

24. Therefore, Bleicher and Hicks knew or should have known that each of the three (3) privacy claims are time-barred because they were filed outside of the applicable one-year statute of limitations, which began to run in 2017, whereas Bleicher filed suit in 2026.

25. By Bleicher and Hick's own admission, the only thing that changed in June 2024 was the addition of Bleicher's personal identifiable information but *not* any changes to the alleged "defamatory" statements published in 2017. *See* ECF No. 1 at 2, ¶ 3. Even *if* the limitations period began to run in June 2024, the privacy claims would still be time-barred.

26. Further, each of Bleicher and Hick's privacy claims are based on the same statements and allegations that form the basis of the defamation claim. *See Osundairo v. Geragos*, 447 F. Supp. 3d 727, 738 (N.D. Ill. 2020) ("Where an unsuccessful defamation *per se* claim is the basis of his false-light claim, plaintiff's false light invasion of privacy claim fails as well."); *Gracia v. SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1062 (7th Cir. 2021) ("[W]hen a false light invasion of privacy claim follows an unsuccessful defamation claim, the false light claim must also fail.").

27. Since defamation and privacy claims rise and fall together, Bleicher and Hicks knew or should have known that each of the privacy claims would fail as a matter of law for the same substantive reasons, identified above, that cause the defamation claim to fail. The remaining privacy claims are equally doomed.

28. "To support the intrusion theory, plaintiffs must allege: (1) an unauthorized intrusion into seclusion; (2) the intrusion would be highly offensive to a reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused the plaintiffs anguish and suffering." *Cooney*, 943 N.E.2d at 32 (citation omitted). "Public disclosure of private facts requires that '(1) publicity was given to the disclosure of private facts; (2) the facts were private, and not public, facts; and (3) the matter made public was such as to be highly offensive to a reasonable person.'" *Id.* (quotation omitted). "While the theories contain different elements, both the intrusion and public disclosure torts require 'private' matters or facts." *Id.*

29. The intrusion upon seclusion claim fails for additional reasons. "Private facts must be alleged. Without private facts, the other three elements of the tort need not be reached. Because the analysis begins with the predicate, private facts, it also ends there if no private facts are involved." *Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1017 (Ill. App. 3d 2004).

30. Under Illinois law, "matters of public record such as names and dates of birth have *not been held* to be private facts." *Cooney*, 943 N.E.2d at 32 (emphasis added). "[N]one of the

"personal" information furnished … *names*, *telephone numbers*, *addresses* or social security numbers-have been held to be private facts." *Busse*, 813 N.E.2d at 1017 (emphasis added).

31. Therefore, to the extent Bleicher and Hicks assert that publishing Bleicher's name, address, phone number, and/or email address are actionable as an "intrusion upon seclusion" or "public disclosure of private facts," they knew or should have known that allegation would not support those claims under Illinois law. *See Cooney*, 943 N.E.2d at 32; *Busse*, 813 N.E.2d at 1017.

32. The disclosure of private facts claim would also fail since the article is a matter of legitimate public concern, which has helped countless people since 2017, being conned and extorted by Bleicher. *See Doe v. TCF Bank Ill.*, 707 N.E.2d 220, 221 (Ill. App. 3d 1999) (adding a fourth element that "the matter published was not of legitimate public concern"). Many have reached out to the Defendant to thank him for making this vital information available.

**The Plaintiff's Intentional Infliction of Emotional Distress Claim has no basis in Law or Fact**

33. In Illinois, there are "three elements necessary to state a cause of action for intentional infliction of emotional distress …. 'First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress.'" *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. App. 2d 2003) (quotation omitted).

34. "[T]he applicable statute of limitations for intentional infliction of emotional distress is two years …." *Feltmeier*, 798 N.E.2d at 85 (citing 735 ILCS 5/13-202). Here, Bleicher and Hicks knew or should have known that the claim for intentional infliction of emotional distress ("IIED") was time-barred because it was filed outside of the applicable two-year statute of limitations, which began to run in 2017, whereas Bleicher filed suit in 2026.

35. Bleicher's IIED claim would also fail as a matter of law. "Illinois case law makes clear that under no circumstances would 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' qualify as outrageous conduct." *Feltmeier*, 798 N.E.2d at 80–81 (quotation omitted). "Rather, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community." *Id.* (citation omitted).

36. Bleicher and Hicks and Hicks knew or should have known that true statements and the Defendant's personal opinions based on those true statements would not support a claim for IIED as a matter of law—let alone—rise to the level as to be "so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community."

37. To the extent Bleicher and Hicks claim that the June 2024 "update" to the allegedly "defamatory" post published in 2017 constitutes IIED, they knew or should have known that posting publically available personal information cannot—as a matter of law—rise to the level as to be "so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community."

**The Plaintiff's Tortious Interference with Prospective Economic Advantage Claim has no basis in Law or Fact**

38. "It is clear from Illinois case law that, in order to state a viable claim of tortious interference with a prospective economic advantage, a defendant must specifically intend to interfere with the same expectancy that is thwarted by their conduct." *Younge*, 267 N.E.3d at 356. *See J. Eck & Sons, Inc. v. Reuben H. Donnelley Corp.*, 572 N.E.2d 1090, 1093 (Ill. App. 3d 1991) ("The requisite intent … is defendant's knowledge of a reasonable business expectancy and defendant's subsequent intentional interference which prevents the expectancy from ripening

into a valid business relationship.").

39. "When considering such a claim, 'the focus is on the conduct of the party interfering with the expectancy.'" *Younge*, 267 N.E.3d at 354 (quotation omitted). "It is insufficient for a plaintiff to merely allege that a defendant indeed interfered with a business expectancy; the plaintiff must instead allege that the defendant 'acted intentionally with the purpose of injuring the plaintiff's expectancy.'" *Id.* (quotation omitted).

40. The statute of limitations for a claim for tortious interference with a prospective economic advantage is five (5) years. *See Colucci v. Chi. Crime Comm'n*, 334 N.E.2d 461, 469–70 (Ill. App. 3d 1975). Bleicher and Hicks knew or should have known that the claim for tortious interference with a prospective economic advantage was time-barred because it was filed outside of the applicable five-year statute of limitations, which began to run in 2017, whereas Bleicher filed suit in 2026.

41. Moreover, Bleicher and Hicks knew or should have known that they would never be able to establish: (1) the necessary intent to support a claim for tortious interference; (2) that the Defendant directly caused any loss of any legitimate business; or (3) that any loss of any legitimate business was *actually* caused by the Defendant's response to Bleicher's 2017 frivolous bar complaint. They also knew or should have known the vast majority of Bleicher's "business" consists of fraud, extortion, and other illegal and illegitimate acts that cannot support a tortious interference claim as a matter of law.

42. To the extent Bleicher and Hicks allege that publishing Bleicher's address, phone number, and email in June 2024 constituted tortious interference with a prospective economic advantage, they knew or should have known that posting publically available personal information cannot—as a matter of law—support such a claim.

**The Plaintiff's Doxing Act Claim has no basis in Law or Fact**

43. Finally, Bleicher brings a claim under the Doxing Act. This is the *only* claim—*out of seven (7)*—not clearly and obviously barred by the statute of limitations. However, Bleicher and Hicks knew or should have known that the Doxing Act claim would fail, as a matter of law, for numerous reasons.

44. The Doxing Act requires that "the information is published with the *intent* that it be used to harm or harass the person whose information is published *and with knowledge or reckless disregard* that the person whose information is published would be reasonably likely to suffer death, bodily injury, or stalking." 740 ILCS 195/10(a)(1) (emphasis added).

> We read a Doxing Act claim to have six elements: (1) intentional publication of personally identifiable information; (2) the published information identifies a person without reliance on extrinsic sources; (3) lack of consent to the publication; (4) intent to harm or harass; (5) knowledge or reckless disregard of a reasonable likelihood of death, bodily injury, or stalking to the person whose information is published; and (6) one or more of the listed harms results.

*D'Ambrosio v. Meta Platforms Inc.*, No. 25-2231, 2026 U.S. App. LEXIS 14045, at *13–14 (7th Cir. May 15, 2026).

45. Bleicher and Hicks knew or should have known that the alleged "doxing" would not be actionable because: (1) the published information relies on extrinsic sources; (2) Bleicher consented to the publication by voluntarily supplying the information in public records; (3) the Defendant published the information to inform the public, not with the intent to harm or harass; (4) the Defendant had no knowledge of nor did he recklessly disregard a reasonable likelihood of death, bodily injury, or stalking; and (5) none of the statutorily listed harms have occurred.

46. In regards to that last point, Bleicher and Hicks allege in conclusory fashion, "Defendant's publication caused Plaintiff significant emotional distress, economic injury, fear of

substantial bodily injury, and substantial life disruption—including without limitation more than 599 harassing telephone calls, text messages, and voicemails to Plaintiff's unlisted cellular telephone number; ongoing anxiety, sleep disruption, and emotional distress; the need to alter daily life and communications routines; and economic injury including increased risk to Plaintiff's personal and professional security." ECF No. 1 at 21, ¶ 84.

47. However, "emotional distress," "*fear* of substantial bodily injury," "harassing telephone calls, text messages, and voicemails," "anxiety, sleep disruption, and emotional distress [actually listed twice]," "alter[ing] daily life and communications routines," and generic "economic injury [also listed twice]" are not enumerated harms under the Doxing Act.

48. Since Bleicher and Hicks concede that neither death nor bodily injury has occurred, the only remaining harm under the Doxing Act would be "stalking." However, the alleged harm is not identified in the Complaint with the specificity required to maintain the claim and any attempt at amendment would be futile.

49. "[S]talking requires two or more acts in which a *person 'directly, indirectly, or through third parties*, by any action, method, device, or means follows, monitors, observes, surveils, [or makes a true threat of unlawful violence about] … a person, engages in other non-consensual contact, or interferes with or damages a person's property or pet.'" *D'Ambrosio*, 2026 U.S. App. LEXIS 14045 at *15–16 (citations omitted) (emphasis added).

50. However, the Complaint does not allege that the Defendant "stalked" Bleicher. Bleicher and Hicks' attempts to impose liability on the Defendant for phone calls or emails made by *unnamed* third parties is extremely problematic and presents insurmountable evidentiary issues. The Complaint does not allege that the Defendant specifically enlisted these unnamed third parties to "stalk" Bleicher.

51. Moreover, the Complaint "makes no effort to explain how someone could

reasonably infer from [the Defendant's] alleged conduct that []he intended to put him in reasonable fear of death, bodily injury, or stalking. Nor does he explain how posting h[is] impressions of [Bleicher and his response to a 2017 bar complaint] accomplishes that purpose. None of the post[] attributed to [the Defendant] contain a call to action, much less a call to action for … anyone else to harm [Bleicher] or his family." *D'Ambrosio*, 2026 U.S. App. LEXIS 14045 at *17–18.

52. Bleicher and Hicks knew or should have known the allegations in the Complaint actually refute any claim of "stalking" since—in nearly every instance—the alleged "stalker" was *responding* to Bleicher's attempts to extort settlements *from* the alleged "stalker," as is, his modus operandi. *See supra* ¶ 2; ECF No. 1 at 15–18, ¶ 61–72. This at last exposes the real motivation behind the baseless claims Bleicher and Hicks make in the Complaint—Bleicher is angry that some of the individuals that he targeted to defraud saw a 2017 response to a bar complaint and were able to avoid being victimized by him.

53. Thus, Bleicher and Hicks knew or should have known that none of the alleged harm in the Complaint constitutes "stalking" under the Doxing Act. In fact, the *entire* point of the Defendant publishing, in 2017, his response to Bleicher's frivolous bar complaint, as well as, the "update" in June 2024 to include his contact information—was for people to avoid *any* interaction with Bleicher and assist the victims of his rampant criminal acts and vexatious litigation.

54. Bleicher and Hicks also knew or should have known that the Doxing Act claim is not actionable since the alleged conduct is protected by *at least* three (3) exceptions to that law. First, "[i]t is not an offense … for an individual to disseminate the personally identifiable information for the purpose of, or in connection with, the reporting of conduct reasonably believed to be unlawful." 740 ILCS 195/10(b)(2).

55. Second, "[i]t is not an offense … for an individual to provide a person's personally identifiable information in connection with activity protected under the United States … or the Illinois Constitution pertaining to speech …." 740 ILCS 195/10(b)(3). Third, "[n]othing in this Act shall be construed in any manner to prohibit any activity protected under the Constitution of the United States or … Illinois …." 740 ILCS 195/10(c)(3).

56. Bleicher and Hicks knew or should have known that the Doxing Act claim would not be supported by law or fact because: (1) the Defendant was reporting conduct reasonably believed to be unlawful; (2) the Defendant provided the information in connection with activity protected under the Constitutions of the U.S. and Illinois pertaining to speech; and (3) the interpretation of the Doxing Act, as advocated by them, would prohibit activities protected under the Constitutions of the U.S. and Illinois.

**MEMORANDUM OF LAW**

"Rule 11 permits a court to impose sanctions on an attorney who presents to the court a … motion … that contains claims, defenses, and other legal contentions that are not warranted by either existing law or a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *Bautista v. Star Cruises*, 696 F. Supp. 2d 1274, 1277–78 (S.D. Fla. 2010) (citing Fed. R. Civ. P. 11(b)(1)). "Rule 11 also permits the imposition of sanctions if the factual contentions contained in the … motion … do not have evidentiary support." *Id.* at 1278 (citing Fed. R. Civ P. 11(b)(2)).

"The purpose of Rule 11 is to deter baseless filings." *Powrzanas v. Jones Util. & Contracting Co.*, 834 F. App'x 500, 507 (11th Cir. 2020). Specifically, Rule 11 "requires that an attorney … filing a pleading certify that the filing is not presented for any improper purpose." *Id.* (internal quotation marks omitted). *See also, In re Ames*, 993 F.3d 27, 34 (1st Cir. 2021) ("Under Rule 11, a court may impose sanctions on a lawyer 'for advocating a frivolous position,

pursuing an unfounded claim, or filing a lawsuit for some improper purpose.'"). A party's decision to file a frivolous lawsuit for the sole purpose of forcing a settlement may qualify as an improper purpose. *See Scott v. Vantage Corp.*, 64 F.4th 462, 472 (3d Cir. 2023).

> [A] court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous—in view of the facts or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry.

*Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996).

Here, Bleicher and Hicks knew or should have known that the claims made in the Complaint were not warranted by either existing law or a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. Bleicher and Hicks also knew or should have known that the factual contentions contained in the Complaint did not have evidentiary support. As demonstrated above, the claims made by Bleicher and Hicks in the Complaint are objectively frivolous and they were aware or should have aware that the claims were frivolous. To the extent Hicks claims otherwise, she would have been aware that the claims were frivolous had she made a reasonable inquiry before filing the Complaint. In short, the Complaint advocates frivolous positions, pursues unfounded claims, and is a frivolous lawsuit filed for the sole improper purpose of forcing a settlement. Consequently, Bleicher and Hicks have both violated Fed. R. Civ. P. 11 warranting the imposition of sanctions. Therefore, the Court should grant this Motion for Sanctions.

**WHEREFORE**, the Defendant respectfully requests that the Court enter an order imposing sanctions of $75,000.00 against Bleicher and Hicks, jointly and severally, pursuant to Fed. R. Civ. P. 11, for their violations and the fees and costs incurred by the Defendant in this action.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served but not filed, on May 31, 2026, pursuant to Fed. R. Civ. P. 11(c)(2), on Corinthia Hicks, counsel for the Plaintiff, via email to corinthia@flavaworks.com.

Respectfully Submitted By:

Gulisano Law, PLLC
1489 W. Palmetto Park Road, Suite 500
Boca Raton, FL 33486
954-947-3972 – office
michael@gulisanolaw.com – email

s/ Michael Gulisano
Michael Gulisano, Esquire
Florida Bar No.: 87573
(Application for admission *pro hac vice* forthcoming)

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on August 7, 2026 on all counsel of record via transmission of a Notice of Electronic Filing generated by CM/ECF.

Respectfully Submitted By:

Gulisano Law, PLLC
1489 W. Palmetto Park Road, Suite 500
Boca Raton, FL 33486
954-947-3972 – office
michael@gulisanolaw.com – email

s/ Michael Gulisano
Michael Gulisano, Esquire
Florida Bar No.: 87573
(Application for admission *pro hac vice* forthcoming)

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Bankruptcy No. 21 B 08585 |
| FLAVA WORKS, INC., | ) | Chapter 11 |
| | ) | Judge Donald R. Cassling |
| Debtor. | ) | |

**ORDER DENYING IN PART MOTION TO DISMISS CHAPTER 11 CASE (DOCKET NO. 38)**

This matter comes before the Court on the motion filed by creditor A4A Reseau, Inc. ("A4A"), to dismiss this Chapter 11 case. A4A sets forth four grounds upon which it seeks to dismiss the case filed by Flava Works, Inc. (the "Debtor") but only seeks to proceed on two of them: (1) the Chapter 11 case was not filed in good faith and (2) the Debtor is not eligible to file a bankruptcy case because it is a sole proprietorship. For the following reasons, the Court denies A4A's motion with respect to these two arguments.[1]

The Debtor filed a Chapter 11 petition on July 17, 2021, designating itself as an S-corporation and small business debtor under 11 U.S.C. § 101(51D).[2] (Dkt. No. 1.) Because the Debtor's original attorney passed away shortly after filing the petition, the Debtor was

[1] The other two grounds asserted by A4A for dismissal are: (1) the Debtor has no reasonable possibility of rehabilitation and (2) the Debtor is unable to effectuate substantial consummation of a confirmed plan. After A4A filed its motion, the Debtor filed a plan, followed by an amended plan. Both plans provide for payment of 100% of the claims of all creditors, including A4A. A4A points to the Debtor's Schedules and monthly operating reports to argue that the Debtor's revenue has steadily declined and that "[t]here is no indication that the [D]ebtor will have continued business operations sufficient to rehabilitate." (Mot. at p. 5.) In response, the Debtor argues that it was profitable before the Covid-19 pandemic, and that the pandemic was devastating to its business. Now that vaccines and Covid-19 protocols are in place, the Debtor expresses confidence that its profitability will return, that its most recent monthly operating report reflects that improvement, and that it will ultimately be able to fund its 100% plan. (Resp. at p. 2.) Because neither party requested an evidentiary hearing and the evidence available to it is conflicting, the Court deems it premature to address A4A's two remaining arguments regarding confirmability of the Debtor's amended plan. Indeed, A4A appeared to acknowledge as much in footnote 1 of its reply brief, when it stated that, "[w]ith respect to the possibility of rehabilitation, the [D]ebtor filed a Plan after the date of A4A's motion, and indicated at the hearing in this matter this morning that it intends to file an Amended Plan. A4A does not believe the Plan is viable but will wait to review the Amended Plan before deciding whether to object to it." (Reply at p. 2, n. 1.) Given the lack of an evidentiary hearing on A4A's motion, coupled with the conflicting evidence that currently exists on these issues, the Court deems these two arguments premature, and will not address these arguments until more evidence regarding confirmability of the amended plan is available.

[2] The Debtor describes its business as developing "content for several adult entertainment internet web sites which includes subscription to the web site, the producing and selling of videos and DVD's, [sic] and licensing content to third parties." (Dkt. No. 47 at ¶ 5.)

required to find new counsel. On August 17, 2021, the Court granted the Debtor's application to employ Robert J. Adams, Brian C. Pedersen, and Christine B. Adams of the law firm of Robert J. Adams & Associates. (Dkt. No. 21.) After the retention order was entered, the Debtor's counsel filed the required Schedules, Statement of Financial Affairs, and other required documents. (Dkt. Nos. 22, 23, 26, 33, 34, 36, 55, 56, & 76.) On September 14, 2021, the Court granted the Debtor's motion to redesignate the filing as a Chapter 11 case under Subchapter V of the Bankruptcy Code. (Dkt. No. 40.) The United States Trustee appointed Matthew Brash as the Subchapter V Trustee on September 15, 2021. (Dkt. No. 43.) The Debtor's decision to proceed under Subchapter V means both that the Debtor will receive helpful assistance from the Subchapter V Trustee and that this bankruptcy case will proceed on a more expeditious basis than it would under a regular Chapter 11 case.

A4A and the Debtor have been embroiled in protracted litigation over the Debtor's debt to A4A for over six years in federal court in Florida.[3] Two days prior to the filing of this case, Judge Joan A. Lenard of the United States District Court for the Southern District of Florida entered an order (the "Seizure Order") directing the United States Marshal to seize certain intellectual property comprising the Debtor's assets to satisfy a $81,958.72 judgment owed to A4A that had been entered on September 20, 2018. (Mot. at Ex. No. 1.) In the Seizure Order, Judge Lenard adopted the Report and Recommendations on Defendants' Amended Motion for Order of Seizure and Sale (the "Report and Recommendations") made by Magistrate Judge Jonathan Goodman on June 14, 2021. In his Report and Recommendations, Magistrate Judge Goodman made two findings of particular significance to A4A's motion to dismiss: First, he found that the Debtor had "spent . . . two years claiming to be in search of counsel, attempting to relitigate previously-decided issues, and ignoring court orders and deadlines." (Mot. Ex. 2 at p. 23.) Second, he referenced the fact that he had previously found that the Debtor was the alter ego of its principal, Phillip Bleicher. (*Id.* at p. 10.) Neither Bleicher nor the Debtor contested either recommended finding when the Report and Recommendations were presented to Judge Lenard for adoption.

A4A filed the instant motion to dismiss this case on September 13, 2021. (Dkt. No. 38.) Although the parties fully briefed the motion, neither party requested an evidentiary hearing on any of the factual issues raised in the motion. Because "the parties have otherwise placed the relevant facts before the court [and] the court by virtue of having presided over the case is already familiar with those facts, a formal, evidentiary hearing on

[3] A4A provided limited background information in its motion. As a result, the Court was required to carefully review the three exhibits attached to the motion in order to glean most of the litigation history between the Debtor and A4A.

the motion to dismiss . . . the bankruptcy is not necessary." *In re Bartle*, 560 F.3d 724, 729 (7th Cir. 2009).

***Has A4A Met Its Burden of Establishing that the Debtor's Chapter 11 Case Was Filed in Bad Faith?***

The bankruptcy court has broad discretion to dismiss a Chapter 11 case for "cause" under 11 U.S.C. § 1112(b). *In re Woodbrook Assocs.,* 19 F.3d 312, 316 (7th Cir. 1994). Good faith is recognized as a "threshold prerequisite" to filing a bankruptcy case under Chapter 11, *In re Madison Hotel Assocs.,* 749 F.2d 410, 426 (7th Cir. 1984), even though not specifically provided for under Section 1112(b), *In re Local Union 722 Int'l Bhd. of Teamsters*, 414 B.R. 443, 448 (Bankr. N.D. Ill. 2009). *See also Fruehauf Corp. v. Jartran, Inc. (In re Jartran)*, 886 F.2d 859, 867 (7th Cir. 1989) (stating that "courts have sensibly considered [the uncodified ground of] bad faith to be an acceptable basis for conversion or dismissal"). Indeed, lack of good faith constitutes "cause" sufficient for dismissal. *Madison Hotel,* 749 F.2d at 426.

In determining whether the Debtor lacked the good faith necessary to seek bankruptcy relief, the Court must examine the totality of the circumstances. *In re Tekena USA, LLC*, 419 B.R. 341, 346 (Bankr. N.D. Ill. 2009). Courts have typically considered the following fourteen factors in conducting this analysis: (1) Did the debtor have few or no unsecured creditors; (2) Had the debtor or a related entity filed a previous bankruptcy petition; (3) Had the debtor engaged in improper pre-petition conduct; (4) Did the petition allow the debtor to evade court orders; (5) Are there few debts to those creditors not moving for dismissal; (6) Was the petition filed on the eve of foreclosure: (7) If so, was the foreclosed property the sole or major asset of the debtor; (8) Did the debtor have an ongoing business or employees; (9) Is there is no possibility of reorganization; (10) Is the debtor's income insufficient to operate; (11) Is there any pressure to dismiss the case from non-moving creditors; (12) Does the debtor's reorganization essentially involve the resolution of a two-party dispute; (13) If the debtor is a corporation, was the debtor formed and did it receive title to its major assets immediately before the petition; and (14) Did the debtor file the Chapter 11 case solely to invoke the automatic stay. *Id.*

A4A argues that the Debtor's bad faith in filing this case is demonstrated mainly by its "years-long pre-filing dilatory tactics" in the Florida litigation between the parties. (Mot. at ¶ 12.) A4A's evidence of this conduct is the following findings from the Report and Recommendations of Magistrate Judge Goodman: The Debtor "spent . . . two years claiming to be in search of counsel, attempting to relitigate previously-decided issues, and ignoring court orders and deadlines" and "has gone to great lengths to avoid paying the court-ordered judgment and to delay these proceedings." (Mot. Ex. 2 at pp. 23 & 26.) In the view of A4A, the Debtor's filing of this bankruptcy petition is just "another step in that course of conduct." (Mot. at ¶ 10.)

This Court accepts the Florida court's findings and conclusions that the Debtor engaged in dilatory conduct in that lawsuit. Principles of comity and collateral estoppel require no less. The question for this Court is whether that conclusion alone is sufficient to justify dismissal of this bankruptcy case as having been filed in bad faith.

Certainly, while filing a bankruptcy petition on the eve of foreclosure may be a factor in the good-faith determination, the mere fact that the Debtor filed this case on the eve of enforcement of the Seizure Order entered by the Florida federal court does not inherently render the Debtor's bankruptcy case a bad faith filing. *See In re Lake Mich. Beach Pottawattamie Resort LLC*, 547 B.R. 899, 907 (N.D. Ill. 2016) (filing on the eve of a foreclosure sale does not establish a bad faith filing); *In re Eclair Bakery Ltd.*, 255 B.R. 121, 137 (Bankr. S.D.N.Y. 2000) (same); *In re PEM Thistle Landing TIC 23, LLC*, No. 13-13273(KG), 2014 WL 1319183 at, *3 (Bankr. D.Del. Apr. 2, 2014) (same).

But to be fair to A4A, that does not appear to be what it is arguing. Instead, it is arguing that the Debtor's bankruptcy filing was not brought for proper bankruptcy purposes but was instead brought simply to waste more time and cause more delay, as it had done in the Florida litigation.

It is unquestionably true that a debtor's prepetition bad-faith conduct is a factor that the Court can and should consider in deciding whether to dismiss a bankruptcy case. However, it is just one of over a dozen factors that the Court should consider in making that determination. None of the cases cited by A4A relied on a debtor's bad-faith prepetition conduct as the sole ground for dismissing the bankruptcy case. Each of those cases relied on numerous factors, including, but not limited to, bad-faith prepetition conduct to justify dismissal.

Moreover, neither party requested an evidentiary hearing to establish the Debtor's purpose and intent in filing the case. As a result, the Court must make that determination by examining the Debtor's conduct in this case in addition to its prepetition behavior in the Florida litigation. What does that examination reveal?

First, it reveals that, at least in this Court, the Debtor has not been dilatory and has not ignored the requirements which the Bankruptcy Code and Rules place upon it: The Debtor filed its initial plan of reorganization on October 8, 2021 and then filed an amended plan on December 13, 2021 (Dkt. Nos. 53 & 77). The Debtor has also filed all of the documents required by the Bankruptcy Code and Rules. While the Court cannot rule out the possibility that the Debtor filed this case for the sole purpose of avoiding or delaying the Seizure Order, A4A did not ask for an evidentiary hearing to prove that fact and its reference to the Florida federal courts' Report and Recommendations and Seizure Order does not establish that fact. While the determinations regarding the Debtor's conduct in that litigation are certainly binding upon the Debtor, neither Magistrate Judge Goodman

nor District Judge Lenard ever addressed whether the Debtor's filing of and conduct in this bankruptcy case have been in bad faith.

Second, both the initial plan and the amended plan provide for payment in full to all creditors, including A4A. (*Id.*) Unless it is obvious that there is no reasonable possibility that the plan is feasible,[4] then filing a 100% plan is at least some evidence that the Debtor filed its bankruptcy case to give it a "breathing spell" to accomplish an efficient and orderly reorganization and not to unreasonably deter and frustrate the rights of A4A. *See In re Bovino*, 496 B.R. 492, 507 (Bankr. N.D. Ill. 2013).

Third, this is not a two-party dispute. There are other creditors with significant claims, including the IRS. If the Debtor's 100% plan does prove to be feasible, then dismissal at this juncture would ill serve the other creditors.

"In determining whether a petition has been filed in bad-faith, the court is primarily concerned with the underlying question of whether reorganization is the proper course of action in a particular . . . case." *In re 801 S. Wells St. Ltd. P'ship*, 192 B.R. 718, 727 (Bankr. N.D. Ill. 1996) (internal quotation omitted). "[T]he Court must be careful not to deny the protection of the Bankruptcy Code to a debtor whose legitimate efforts at financial rehabilitation may be hidden among derivative benefits (such as the delay of creditors resulting from the automatic stay) that, if viewed alone, might suggest bad faith." *In re Strug-Div., LLC*, 375 B.R. 445, 449 (Bankr. N.D. Ill. 2007).

In short, the Court is not convinced that A4A has yet met its burden of establishing that the Debtor filed this case in bad faith, notwithstanding the Debtor's dilatory conduct in the Florida federal litigation. That conclusion could certainly change if it becomes apparent that the Debtor's plan is not feasible or if the Debtor starts to engage in the type of dilatory behavior it displayed in the Florida litigation. Because events proceed more rapidly in a Subchapter V case than in a regular Chapter 11 case, it will not take long for evidence regarding those issues to appear, one way or the other. But at least at this early stage of the bankruptcy proceedings, the Court finds that A4A has not met its burden of establishing by a preponderance of the evidence that cause exists to dismiss this case. *See In re Draiman*, 450 B.R. 777, 826 (Bankr. N.D. Ill. 2011).

***Has A4A Met its Burden of Establishing that the Debtor is Ineligible to File a Bankruptcy Case?***

A4A also argues that this case should be dismissed because the Debtor is not eligible to file a Chapter 11 petition, notwithstanding that the Debtor registered as a corporation in the State of Illinois and indicated that it was an S-corporation on its petition.

[4] As previously noted, it is premature at this stage of the case to determine whether the Debtor's plan is feasible.

(Mot. at ¶ 15 & Dkt. Nos. 1 & 47 at ¶ 4.) The factual basis for A4A's argument is a finding recommended by the Florida Magistrate Judge and adopted by the District Judge that the Debtor's president, Phillip Bleicher, is the alter ego of the Debtor. A4A argues that this factual finding, binding upon this Court through collateral estoppel, makes the Debtor a sole proprietorship under Illinois law, and therefore ineligible for Chapter 11 relief.[5]

A4A points to the Report and Recommendations of Magistrate Judge Goodman, which were made on A4A's motion for an order of seizure and sale of the Debtor's assets in order to satisfy the judgment entered in favor of A4A. In the Report and Recommendations, Magistrate Judge Goodman noted that a Motion for Proceedings Supplementary and to Implead Phillip Bleicher had been granted by Judge Lenard, in part, "on the argument that he is an 'alter ego' of Flava Works, Inc. [ECF No. 190, pp. 5-6]." (Mot. at Ex. No. 2, p. 2 fn. 2.) On the other hand, Magistrate Judge Goodman also made the following recommended findings:

> Flava Works, Inc. is a corporation. Process against a corporation may be served "[o]n the president or vice president, or other head of the corporation." § 48.081(1)(a). Phillip Bleicher, in front of the Undersigned, has held himself out as "the CEO of Flava Works." [ECF No. 123]. Further, Flava Works, Inc. has previously filed motions "by and through its Owner and CEO, Phillip Bleicher. . . ." [ECF Nos. 25; 184]. *This Court has also already made a finding that Phillip Bleicher is the "alter ego" of Flava Works, Inc.* It is indisputable that Phillip Bleicher qualifies as a "head of the corporation."

(*Id.* pp. 9-10) (emphasis added).

A4A did not provide this Court with any other documents from the Florida litigation between it and the Debtor. The failure to provide this Court with a fuller record of the

---

[5] The Bankruptcy Code clearly defines who may be a debtor in Section 109. Under that section, any "person" who may be a debtor under Chapter 7 may also be a debtor under Chapter 11. 11 U.S.C. § 109(d). A "person" is defined to include individuals, partnerships, and corporations, with certain exceptions not applicable here. 11 U.S.C. § 101(41). In order to be eligible to file a Chapter 11 case, such "person" must also reside or have a "domicile, a place of business, or property in the United States. . . ." 11 U.S.C. § 109(a).

Courts have held that a sole proprietorship is not a "person" for purposes of the Bankruptcy Code because it is neither an individual, nor a partnership, nor a corporation. *See Gilliam v. Speier (In re KRSM Props., LLC)*, 318 B.R. 712, 717 (9th Cir. BAP 2004). Because it is not a "person," a sole proprietorship is ineligible to be a debtor in bankruptcy. *Id.*; *In re CA Fin. Sols.*, No. 19-00676 (RJF), 2019 WL 2869566, at *6 (Bankr. D. Haw. July 1, 2019); *In re Know Thy Self, Inc.*, No. 06-62628, 2006 WL 6589908, at *3 (Bankr. N.D. Ga. Mar. 17, 2006); *In re Christenberry*, 336 B.R. 353, 356 (Bankr. E.D. Tenn. 2005); *In re T.W. Koeger Trucking Co.*, 105 B.R. 512, 515 (Bankr. E.D. Mo. 1989).

findings and conclusions from that court regarding its alter ego finding fatally undermines A4A's argument that the Debtor is not eligible to file a Chapter 11 petition.

Collateral estoppel or issue preclusion prevents a party from relitigating issues that were resolved in a prior action. *In re Calvert*, 913 F.3d 697, 701 (7th Cir. 2019). The party invoking the doctrine must demonstrate that "(1) the issue sought to be precluded [was] the same as that involved in the prior litigation, (2) the issue [was] actually litigated, (3) the determination of the issue [was] essential to the final judgment, and (4) the party against whom estoppel is invoked [was] fully represented in the prior action." *Id.* (quoting *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 649 F.3d 539, 547 (7th Cir. 2011)).

In order to determine whether the Florida federal court litigation involved the same issue before this Court, the first step is to "determine with precision what matters actually were decided" in the prior litigation. *Calvert,* 913 F.3d at 701 (internal quotation omitted). That determination is grounded in the actual findings and analysis of the Florida federal court. *See id.*

Based on the record submitted by A4A, it is unclear whether the determination that Phillip Bleicher was the alter ego of the Debtor was essential to the final judgment entered by the Florida federal court on September 20, 2018. A4A has only submitted a post-judgment Report and Recommendations regarding an order for seizure and sale of assets. That document merely references a prior finding that Phillip Bleicher had previously been found to be the alter ego of the Debtor and therefore "head of the corporation." (Mot. at Ex. No. 2, p. 10.) However, none of the Florida court's findings with respect to the entry of the final judgment against the Debtor has been provided to this Court. Absent an adequate showing of what evidence was submitted to the Florida court and the detailed findings of fact and conclusions of law from that proceeding, the doctrine of collateral estoppel is not properly applied here. That is because detailed findings of fact from the earlier proceeding are necessary to enable this Court to determine which facts were actually proven, which issues were decided, and what was essential to the Florida court's judgment.

In short, this Court cannot assess the applicability of issue preclusion without a more precise record of what was actually decided by the Florida federal court. Thus, A4A has not met its burden to establish that the prior litigation involved the same issue or that such issue was essential to the final judgment entered by the Florida federal court.[6]

However, even if the Court were to accept without more the argument that collateral estoppel requires the Court to find that Phillip Bleicher is the alter ego of the Debtor, that

[6] Because the Court has found that the first and third elements of issue preclusion have not been met, it need not discuss the remaining two elements.

would not end the analysis. The Court is not convinced that A4A is correct in arguing that a finding that Phillip Bleicher is the alter ego of the Debtor means that the Debtor is automatically transformed from a corporation to a sole proprietorship. The three cases cited by A4A do not stand for this proposition and therefore are not persuasive.

For example, in *Vernon v. Schuster*, 688 N.E.2d 1172 (Ill. 1997), the Illinois Supreme Court did not even discuss the alter ego doctrine. Rather, the issue presented was whether an individual succeeded to the liability of a predecessor sole proprietorship for breach of contract and breach of warranty claims. *Id.* at 1173. The court addressed the rule of successor corporate nonliability and the four exceptions to that general rule. *Id.* at 1175-76.

Similarly, the court in *Phipps v. Peoples Nat'l Bank, NA (In re Phipps)*, Bankr. No. 08-40685, Adv. Nos. 08-4077, 08-4078, 2008 WL 5606175 (Bankr. S.D. Ill. Dec. 10, 2008) never mentioned the alter ego doctrine. Instead, the bankruptcy court was asked to determine whether a creditor's security interest attached to all equipment of a debtor's businesses or whether it was limited to the business equipment that was purchased with the loan proceeds. *Id.* at *1. The court based its decision not on alter ego grounds, but rather on the provisions of the Illinois Uniform Commercial Code and, in particular, the issue of sufficiency of collateral descriptions in security agreements. *Id.* at * 2-6.

Finally, the court in *Sullivan v. Cozzi*, No. 95 C 3227, 1997 WL 392248 (N.D. Ill. July 8, 1997) did address the alter ego doctrine, but in a manner utterly inconsistent with the factual situation presented in the case at bar. In *Cozzi*, District Judge Shadur was faced with the issue of whether a newly formed corporation was liable for an arbitration award previously entered against its previous incarnation as a sole proprietorship. Specifically, John Cozzi had previously been doing business as Cozzi & Son Plumbing Co., a sole proprietorship. Soon after an arbitration award was entered against him, Cozzi ceased doing business under that name and began doing business through a new corporate entity, F & D Industries, Inc. *Id.* at *1. Plaintiff argued that the incorporation of F & D was a sham transaction designed to avoid the arbitrator's award, arguing that F & D was merely the alter ego of Cozzi & Son. Judge Shadur agreed, noting that when F & D was formed, the principals retained the same assets, employees, and location as the previous business. *Id.* at *1. With few exceptions, the court noted that the newly formed corporation was a "carbon copy" of the earlier sole proprietorship, and therefore liable for the judgment. *Id.* at *3.

The *Cozzi* case can therefore easily be distinguished from the matter at hand. Here, the Court has no facts to suggest that Phillip Bleicher engaged in a sham transaction when he formed the Debtor as a corporation. None of Judge Shadur's grounds for finding an

alter ego relationship apply to the facts of this case. But even if the Court were to apply Judge Shadur's reasoning in the *Cozzi* case, the result of finding that Phillip Bleicher was the alter ego of the Debtor would not be to conclude that the Debtor was a sole proprietorship; it would be to conclude that the Debtor should be treated as an individual—Phillip Bleicher. Because an individual can file a bankruptcy petition, A4A's argument fails even if the Court applies Judge Shadur's analysis to this matter.

There are additional reasons why A4A's "sole proprietorship" argument fails. Generally, courts use an alter ego theory as a means of "piercing the corporate veil" for liability purposes. *Big Shoulders Cap. LLC v. San Luis & Rio Grande R.R., Inc.*, 13 F.4th 560, 572 (7th Cir. 2021). That is, the main change effected by an alter ego finding is to broaden the target of a corporation's creditors to the principals of that corporation. Determination that a principal of a corporation is the alter ego of that corporation changes the relationship of the principal to the corporation's creditors. *See Howard Johnson Co. v. Detroit Loc. Joint Exec. Bd., Hotel & Rest. Emps. & Bartenders Int'l Union*, 417 U.S. 249, 259 n.5 (1974) (explaining that alter ego allegations assert that one entity "is in reality the same employer and is subject to all the legal and contractual obligations of" the other entity); *Peetoom v. Swanson*, 778 N.E.2d 291, 295 (Ill. App. Ct. 2002) (stating that "[t]his doctrine fastens liability on the individual or entity that uses a corporation merely as an instrumentality to conduct that person's or entity's business.").

In addition, Magistrate Judge Goodman's Report and Recommendations recognized that his alter-ego finding did not transform the Debtor into a sole proprietorship when he stated that the Debtor "is a corporation" and took care to specify that all of the rules requiring proper service of process upon corporations had been met. (Mot. Ex. No. 2 at p. 9.)

For the foregoing reasons, the Court denies A4A's motion to dismiss the Debtor's case based on the arguments that this case was not filed in good faith and that the Debtor is not eligible to file a bankruptcy case because it is in fact a sole proprietorship.

**ENTERED:**

**DATE: January 10, 2022**

Donald R. Cassling

**Donald R. Cassling**
**United States Bankruptcy Judge**

Fwd: Briefing Scehdule - 1:26-CV-06287 Inbox ×

**Corinthia Hicks**
to me

Thu, Aug 20, 5:15 PM (3 days ago)

Corinthia Hicks, Esq.
Illinois Bar No. 6352965
Counsel for Plaintiff FlavaWorks Entertainment, Inc.
2705 W Fulton St, Suite #3N, Chicago, IL 60612-2003
Tel: 305-438-9450 | Fax: 305-438-9470
Corinthia@FlavaWorks.com

---------- Forwarded message ---------
From: **Michael** <michael@gulisanolaw.com>
Date: Thu, Aug 20, 2026 at 4:13 PM
Subject: Briefing Scehdule - 1:26-CV-06287
To: <corinthia@flavaworks.com>

Hicks:

I am contacting you in reference to a briefing schedule on my pending motion for sanctions against you and your pedophile client.

I propose 14 days for your response and 7 days for my reply. Please advise if we cannot agree on a briefing schedule so I may inform the court as such.
Thank you,
Michael Gulisano, Esquire

GULISANO LAW PLLC
1489 W. Palmetto Park Road, Suite 500
Boca Raton, FL 33486
954-947-3972
954-947-3910 (Fax)
michael@gulisanolaw.com
gulisanolaw.com

Reply | Forward | Share in chat (New) | Get link

# EXHIBIT 9

Change captures — the Article as edited August 22, 2026
(“victims, especially if you were underage … contact me” solicitation)
with server CMS timestamp: post 339, modified 2026-08-22T22:26:22Z
(full dated capture maintained and available on request)

*Bleicher v. Gulisano, No. 1:26-cv-06287 (N.D. Ill.)*

*Plaintiff's Response in Opposition to Motion for Sanctions (ECF No. 12)*

Phillip Bleicher - Criminial, Conman, and Liar — Gu...
Change Detected: 17 hours ago

Visual View | Text Changes

Log in

Summary | Changes 9

The Bleicher photo caption is rewritten and supplemented with a 2026 update and a victims-contact note. A 'Go to top' anchor is added to the page, and these changes broaden the discussion of Bleicher's alleged activities while improving site navigation.

Set an alert criteria for smarter notifications.

Was this helpful?

Text Added

Text Deleted

GULISANO LAW PLLC

## Gulisano Law, PLLC

Better Legal Talent and Quality Work than the Large Firms. More Focus and Attention to Each Matter than the Small Firms.

Gulisano Law | Meet Michael Gulisano | Practice Areas | Client Reviews | Consultation | Legal Blog



# Phillip Bleicher – Criminial, Conman, and Liar



*Phillip Bleicher, in an ill-fitting suit at least 2 sizes too big, can be seen* ...his *ceremony held in Atlanta, Georgia on September 5, 2009. According to* *Wikipedia, "The photo shows (left to right) Phillip Bleicher, Toccara Jo*... *) Phillip Warren Bullock."*

## Phillip Bleicher – A Man Who Stole $3 Million from Public Schools, Intentionally Exposes Employees to Aids, Operates ...sidential Homes, Fabricates Evidence in ...Court, and Evades Taxes

**BLOG CATEGORIES**

- Appeals
- Bankruptcy
- Cause of Actions
- Civil Litigation
- Civil Procedure
- Contracts
- Debt Collection
- Employment
- Evidence
- Legal News
- Legal Theories
- Miscellaneous
- Personal Injury

**CONTACT INFORMATION**

GULISANO LAW PLLC


**Address**
1489 W. Palmetto Park Road, Suite 500
Boca Raton, FL 33486

**Phone**
954-947-3972

**Fax**
954-947-3910

**Email**


Legal

CURRENT: 2026-08-23 | PREVIOUS: 2026-08-22

London: 7:51 pm | New York: 2:51 pm | Hong Kong: 2:51 a

personally!

As of 2026, in light of his relentless obsession to harass me for opposing pedophilia, I have reconsidered my prior stance on this matter. If you were one of Mr. Bleicher's countless victims, especially if you were underage at the time, please feel free to contact me. Mr. Bleicher and his criminal enterprises must be held accountable for the injuries he caused you.

Go to top